*170*

# IN THE UNITED STATES DISTRICT COURT
# FOR THE SOUTHERN DISTRICT OF TEXAS
# BROWNSVILLE DIVISION

United States District Court
Southern District of Texas
FILED

MAY 0 7 2002

Michael N. Milby
Clerk of Court

| | | |
|---|---|---|
| IN RE THE COMPLAINT AND | § | |
| PETITION FOR BROWN WATER | § | |
| TOWING I, INC., AS OWNER AND | § | |
| BROWN WATER MARINE | § | |
| SERVICE, INC., AS BAREBOAT | § | C.A. No. B-01-157 |
| CHARTERERS, OF THE BROWN | § | (Subject to Rule 9(h) |
| WATER V, ITS ENGINES, TACKLE, | § | of the Federal Rules |
| ETC., IN A CAUSE OF | § | of Civil Procedure) |
| EXONERATION FROM OR | § | Admiralty |
| LIMITATION OF LIABILITY | § | |
| | § | |
| IN RE THE COMPLAINT AND | § | Consolidated With |
| PETITION OF AMERICAN | § | |
| COMMERCIAL LINES LLC, AS | § | |
| OWNER and AMERICAN\ | § | C.A. No. B-02-004 |
| COMMERCIAL BARGE LINES, | § | Admiralty |
| LLC, AS CHARTERER, OF THE | § | |
| BARGES NM-315, VLB-9182, ACL- | § | |
| 9933B, VLB-9173, IN A CAUSE OF | § | |
| EXONERATION FROM OR | § | |
| LIMITATION OF LIABILITY | § | |

## ECONOMIC DAMAGE CLAIMANTS' RESPONSE (AND BRIEF
## IN SUPPORT) TO MOTIONS FOR SUMMARY JUDGMENT

# TABLE OF CONTENTS

TABLE OF CONTENTS ............................................................................................. i

INDEX OF AUTHORITIES ................................................................................... iii

I.    BACKGROUND ................................................................................... 2

II.   STATEMENT OF NATURE AND STAGE OF PROCEEDING ................ 2

III.  STATEMENT OF ISSUES TO BE RULED UPON BY THE
      COURT ................................................................................................ 2

IV.   SUMMARY JUDGMENT EVIDENCE ...................................................... 3

V.    UNDISPUTED SUMMARY JUDGMENT FACTS ................................... 4

VI.   SUMMARY OF ARGUMENT ................................................................. 5

VII.  ARGUMENT ........................................................................................ 7

      A.   Movants' motions for summary judgment are fatally
           flawed because they never address the threshold question
           of whether federal maritime law, or state law, applies in
           determining whether the Economic Damage Claimants
           may recover here. ............................................................................ 7

      B.   Texas law would afford a recovery to the Economic
           Damage Claimants under the circumstances of this case. ............... 10

      C.   Federal maritime law does not preempt Texas law in this
           case, and because Texas law affords the Economic Damage
           Claimants a recovery, the motions for summary judgment
           must be denied. .............................................................................. 13

           1.   The First and Ninth Circuits have addressed—in a
                manner consistent with Fifth Circuit jurisprudence—
                the precise question presented here: whether the
                economic loss rule precluding recovery of purely
                economic damages under federal maritime law
                preempts conflicting state law that would permit a
                recovery. ............................................................................ 14

2.   Under the governing preemption analysis, Texas law is not preempted here, and its application compels the denial of Movants' motions for summary judgment. ...................................................................... 18

a.   Allowing recovery for pure economic injury does not contravene the essential purpose of an act of Congress...................................................... 19

b.   Allowing recovery for pure economic injury does not work material prejudice to a characteristic feature of the general maritime law............................ 19

c.   Allowing recovery for pure economic injury does not interfere with the proper harmony and uniformity of the general maritime law..................... 21

D.   Alternatively, even if this Court concludes that the economic loss rule in *TESTBANK* controls here, the Economic Damage Claimants are entitled to proceed with their claims. ........................ 22

1.   As demonstrated above, Texas law affords recovery for the Economic Damage Claimants. .................................... 23

2.   *TESTBANK* does not defeat recovery by the Economic Damages Claimants. ............................................. 23

VIII.   CONCLUSION............................................................................................25

CERTIFICATE OF SERVICE ......................................................................................26

# INDEX OF AUTHORITIES

## Cases

*American Dredging Co. v. Miller*,
   510 U.S. 443, 114 S.Ct. 981, 127 L.Ed. 2d 285 (1994) .................................... 18, 20

*Ballard Shipping Co. v. Beach Shellfish*,
   32 F.3d 623 (1st Cir. 1994) ...................................................................14-16, 18-22

*Blome v. Aerospatiale Helicopter Corp.*,
   924 F. Supp. 805 (S.D. Tex. 1996) ........................................................................ 7

*In re Exxon Valdez*,
   270 F.3d 1215 (9th Cir. 2001) ...................................................................... 6, 16-22

*Jerome B. Grubart, Inc. v. Great Lakes Dredge & Dock Co.*,
   513 U.S. 527, 115 S.Ct. 1043, 130 L.Ed. 2d 1024 (1995) ..................................... 13

*Moragne v. States Marine Lines, Inc.*,
   398 U.S. 375, 90 S.Ct. 1772, 26 L.Ed. 2d 339 (1970) ........................................... 21

*Robins Dry Dock & Repair Co. v. Flint*,
   275 U.S. 303, 48 S.Ct. 134, 72 L.Ed. 290 (1927) ................................................. 14

*Sekco Energy, Inc. v. M/V Margaret Chouest*,
   820 F. Supp. 1008 (E.D. La. 1993) ........................................................................ 24

*Southern Pacific v. Jensen*,
   244 U.S. 205, 37 S.Ct. 524, 61 L.Ed. 1086 (1917) ........................................... 18-21

*State of Louisiana ex rel. Guste v. M/V TESTBANK*,
   752 F.2d 1019 (5th Cir. 1985) (*en banc*), cert. denied,
   477 U.S. 903 (1986) ............................................................... 3, 5, 9, 13, 20

*Texas & P. Ry. Co. v. Mercer*,
   90 S.W.2d 557 (Tex. 1936) .................................................................. 6, 11, 12, 23

*The Sea Gull*,
   21 F.Cas. 909 (C.C.Md. 1865) (Chase, C.J.) ........................................................ 22

*Yamaha Motor Corp. v. Calhoun*,
   516 U.S. 199, 116 S.Ct. 619, 133 L.Ed. 2d 578 (1996) ................................. 6, 9, 22

iii

**Other Authorities**

David W. Robertson, The Application of State Law in Maritime Cases After
    *Yamaha Motor Corp. v. Calhoun*, 21 TUL. MAR. L.J. 81 (1996) ...................... 8, 10

Major B. Harding, Judicial Decision-Making Analysis of Federalism Issues in
    Modern United States Supreme Court Maritime Cases, 75 TUL. L. REV.
    1517 (2001) ........................................................................................................... 8

iv

*170*

IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF TEXAS
BROWNSVILLE DIVISION

United States District Court
Southern District of Texas
FILED

MAY 0 7 2002

Michael N. Milby
Clerk of Court

| | | |
|---|---|---|
| IN RE THE COMPLAINT AND | § | |
| PETITION FOR BROWN WATER | § | |
| TOWING I, INC., AS OWNER AND | § | |
| BROWN WATER MARINE | § | |
| SERVICE, INC., AS BAREBOAT | § | **C.A. No. B-01-157** |
| CHARTERERS, OF THE BROWN | § | **(Subject to Rule 9(h)** |
| WATER V, ITS ENGINES, TACKLE, | § | **of the Federal Rules** |
| ETC., IN A CAUSE OF | § | **of Civil Procedure)** |
| EXONERATION FROM OR | § | **Admiralty** |
| LIMITATION OF LIABILITY | § | |
| | § | |
| IN RE THE COMPLAINT AND | § | **Consolidated With** |
| PETITION OF AMERICAN | § | |
| COMMERCIAL LINES LLC, AS | § | |
| OWNER and AMERICAN\ | § | **C.A. No. B-02-004** |
| COMMERCIAL BARGE LINES, | § | **Admiralty** |
| LLC, AS CHARTERER, OF THE | § | |
| BARGES NM-315, VLB-9182, ACL- | § | |
| 9933B, VLB-9173, IN A CAUSE OF | § | |
| EXONERATION FROM OR | § | |
| LIMITATION OF LIABILITY | § | |

**ECONOMIC DAMAGE CLAIMANTS' RESPONSE (AND BRIEF IN SUPPORT)
TO MOTIONS FOR SUMMARY JUDGMENT**

TO THE HONORABLE JUDGE OF SAID COURT:

COME NOW, the Economic Damage Claimants, and, pursuant to Federal Rule of

Civil Procedure 56(c), file this their Response (and Brief in Support) to Petitioners Brown

Water Marine Service, Inc.'s and Brown Water Towing I, Inc.'s Motion for Summary

Judgment and to "Claimants with Injury to Person or Property's" Motion for Summary

Judgment.

## I.    BACKGROUND

Petitioners Brown Water Towing I, Inc. and Brown Water Marine Service, Inc. ("Brown Water") filed a Motion for Summary Judgment asking this Court to dismiss the claims of the 67 Economic Damage Claimants. The "Claimants with Injury to Person or Property" ("Other Claimants") filed a motion and brief in support of Brown Water's motion, asking this Court to dismiss the claims of 66 of the 67 Economic Damage Claimants—all claims except those of Bigo's International, L.L.C. The undersigned counsel represents 62 of the Economic Damage Claimants and files this response in opposition on their behalf, respectfully requesting this Court to deny those motions.

## II.    STATEMENT OF NATURE AND STAGE OF PROCEEDING

This is a suit filed by Brown Water and others seeking exoneration from or limitation of liability in connection with the partial collapse of the Queen Isabella Causeway as a result of an allision with the BROWN WATER V. The Economic Damage Claimants seek recovery for economic damages sustained as a result of the allision.

This proceeding is in its initial stages. However, Brown Water and the Other Claimants filed motions for summary judgment seeking to dismiss the Economic Damage Claimants' claims. This is the Economic Damage Claimants' Response to the motions for summary judgment filed by Brown Water and the Other Claimants.

## III.    STATEMENT OF ISSUES TO BE RULED UPON BY THE COURT

The issue to be ruled upon by the Court is whether the Economic Damage Claimants are prohibited from pursuing their claims beyond the summary judgment stage

2

by the economic loss rule set forth in *State of Louisiana ex rel. Guste v. M/V TESTBANK*, 752 F.2d 1019 (5th Cir. 1985) (*en banc*), *cert. denied*, 477 U.S. 903 (1986), and related cases. This issue turns on (1) whether federal maritime law, or state law, is applicable to the claims by the Economic Damage Claimants, and (2) even if federal maritime law were applicable, whether *TESTBANK* bars recovery under the circumstances of this case.

## IV.    SUMMARY JUDGMENT EVIDENCE

In support of this Response, the Economic Damage Claimants rely upon the following:

A.    <u>Pleadings</u>

1.    Complaint and Petition of Brown Water Towing I, Inc., as Owner, and Brown Water Marine Service, Inc., as Bareboat Charterer, of the Brown Water V, its Engines, Tackle, etc. in a Cause of Exoneration From or Limitation of Liability, Civil and Maritime (referred to herein as "Brown Water Petition").

2.    Claimants' Claims and Joint Answer to Petitioners' Verified Complaint and Petition for Exoneration From and/or Limitation of Liability (referred to herein as "Economic Damage Claimants' Claims and Answer").

B.    <u>Affidavits</u>

1.    Affidavit of Edmund K. Cyganiewicz (attached hereto as Exhibit "A" and referred to herein as "Cyganiewicz Aff.");

2.    Affidavit of Eddie Hernandez (attached hereto as Exhibit "B" and referred to herein as "Hernandez Aff.");

3.    Affidavit of Raymond H. Kendall (attached hereto as Exhibit "C" and referred to herein as "Kendall Aff.");

4.    Affidavit of Paul Y. Cunningham, Jr. (attached hereto as Exhibit "D" and referred to herein as "Cunningham Aff.").

5.    Affidavit of Michael L. Slack (attached hereto as Exhibit "E" and referred to herein as "Slack Aff.").

These pleadings and affidavits are on file and are incorporated for all purposes.

## V.    UNDISPUTED SUMMARY JUDGMENT FACTS

Of perhaps greater significance than what is disputed by the parties here is what is not. No one disputes that:

1.    The Economic Damage Claimants in fact sustained genuine, calculable damages as a direct result of the BROWN WATER V's allision with the Queen Isabella Causeway. Cyganiewicz Aff. p. 2, ¶ 5; Brown Water Petition pp. 1-3 and Ex. A to that Petition; Economic Damage Claimants' Claims and Answers pp. 1-2 and Ex. A to those Claims.

2.    Fifty six of the 62 Economic Damage Claimants represented by the undersigned counsel are businesses operating on South Padre Island and the remaining claims are based on lost income of businesses operating on the Island. Slack Aff. pp. 1-2, ¶¶ 2-6; Cyganiewicz Aff. pp. 1-2, ¶¶ 3-8; Brown Water Petition pp. 1-3 and Ex. A to that Petition; Economic Damage Claimants' Claims and Answers pp. 1-2 and Ex. A to those Claims.

3.    The Causeway provides the sole means of ingress and egress of vehicular traffic to the Island. Cyganiewicz Aff. p. 2, ¶¶ 7-8.

4

4. The Economic Damage Claimants are dependent upon the Causeway for their commercial survival—the Causeway effectively operates as the common, exclusive driveway to these businesses. Cyganiewicz Aff. p. 2, ¶¶ 7-8.

5.   The allision had the practical effect of blocking or severing the driveway to these businesses. Cyganiewicz Aff. pp. 1-2, ¶¶ 3-8.

6.   The unique situation of these businesses sets them well apart from the general public's use of or dependence on the Causeway. Cyganiewicz Aff. pp. 1-3, ¶¶ 3-8, 10.

7.   The allision occurred in the territorial waters of the State of Texas.[1]

## VI.   SUMMARY OF ARGUMENT

By their Motions, Movants seek to have this Court deny the Economic Damage Claimants their right to pursue their claims for economic damages they suffered as a result of the collapse of the Queen Isabella Causeway.

In support of their argument, Movants rely solely upon a line of cases represented by the Fifth Circuit's opinion in *State of Louisiana ex rel. Guste v. M/V TESTBANK*, 752 F.2d 1019 (5th Cir. 1985) *(en banc) (cert. denied)*, 477 U.S. 903 (1986) which confirmed

---

[1] *See* Submerged Lands Act, 43 U.S.C. § 1312 (establishing the "seaward boundary of each original coastal state as a line three geographical miles distant from its coastline..." or greater "if it was so provided by its [the State's] Constitution or laws prior to or at the time such State became a member of the Union..."); *United States v. Louisiana*, 363 U.S.1, 80 S.Ct. 961, 997, 4 L.Ed. 2d 1025 (1960) (establishing the boundary of Texas territorial waters at "three leagues from its coast" based on Congress' approving of that seaward boundary provided for in the 1848 Treaty of Guadalupe Hidalgo); *see also Blome v. Aerospatiale Helicopter Corp.*, 924 F. Supp. 805, 809-14 (S.D. Tex. 1996) (discussing the pertinent law on this point); TEX. NAT. RES. CODE ANN. § 11.012 (Vernon's 2001) (codifying seaward boundary of Texas); *Employers Mut. Cas. Co. v. Samuels*, 407 S.W.2d 839, 842 (Tex. App.—San Antonio, writ ref'd n.r.e.) (recognizing that the seaward boundary of Texas is three marine leagues, or nine nautical miles, from the Texas coastline). Here, of course, the accident did not occur even beyond the Texas coastline—by any measure, it occurred well within the nine-nautical-mile boundary of Texas' territorial waters.

5

that under admiralty law, plaintiffs cannot ordinarily recover on claims for economic losses absent physical damage to a proprietary interest. Movants, however, ignore the fact that state law, not admiralty law, applies in this case, and urge too restrictive a reading of the *TESTBANK* opinion, in any event.

While this case falls within the Court's admiralty jurisdiction, the exercise of such jurisdiction "'does not result in automatic displacement of state law.'" *Yamaha Motor Corp. v. Calhoun*, 516 U.S. 199, 116 S.Ct. 619, 623, 133 L.Ed. 2d 578 (1996) (citations omitted). In order to determine whether federal or state law applies, this Court must perform a balancing test. *See, e.g., In re Exxon Valdez*, 270 F.3d 1215, 1250 (9th Cir. 2001). Under that test, Texas state law applies, and under Texas law, the Economic Damage Claimants are entitled to proceed with their claims for economic damages because they suffered special economic harm as the result of the BROWN WATER V's allision with the Causeway. *See Texas & P. Ry. Co. v. Mercer*, 90 S.W.2d 557 (Tex. 1936). Therefore, Movants' motions should be denied.

Moreover, even if this Court were to conclude that federal maritime law applies in this case, Movants urge too restrictive a reading of the *TESTBANK* opinion. The Economic Damage Claimants—a naturally limited group of claimants who depend upon the Causeway as *the driveway* that provides the sole vehicular access to and from their business interests—have the requisite proprietary interest in the Causeway entitling them to proceed with their claims in this case. For this alternative reason, Movants' motions should be denied.

## VII.  ARGUMENT

**A.    Movants' motions for summary judgment are fatally flawed because they never address the threshold question of whether federal maritime law, or state law, applies in determining whether the Economic Damage Claimants may recover here.**

It is undisputed that this case falls within the Court's admiralty jurisdiction.  But that does not answer the question of which law—federal maritime or Texas law—should apply in deciding whether the Economic Damage Claimants may recover in this case.  By citing only federal maritime decisions, and completely ignoring Texas law, both Movants' motions proceed on the unsupported assumption that federal law, not state law, automatically applies to the various issues in this case.

This assumption is particularly ironic with respect to the Other Claimants, given that (1) the application of federal maritime law to *their* claims could afford them *substantially less recovery* than the application of state law, *see Blome v. Aerospatiale Helicopter Corp.*, 924 F. Supp. 805, 807-08 (S.D. Tex. 1996) ("if federal law governs the Plaintiffs' [death and survivor] claims, the recovery available to them is substantially less than the recovery available under state law"), and (2) this decision would grant the Other Claimants the benefit of the more generous recovery under state law, since the allision at issue here undisputedly occurred within the territorial waters of Texas.  *See id.* at 810 ("the Texas wrongful death and survival statutes apply if the crash that killed the Plaintiff's decedent occurred in state territorial waters.").  Alternatively, if the Other Claimants are not arguing for the automatic application of federal maritime law in this case, it would be inconsistent for them to assert that *they* should have the benefit of Texas

7

law, while at the same time asking this Court *not even to consider* whether Texas law is applicable to the claims of the Economic Damage Claimants.

Whatever their ultimate positions, Movants ask this Court to decide their motions for summary judgment by citing this Court only to decisions applying federal maritime law, without addressing the threshold issue of whether state law is preempted here. This is not an illusory issue. To the contrary, one admiralty and maritime law scholar has observed that "[t]he applicability of state law in maritime cases is a *pervasive issue* in American admiralty and maritime law." *See* David W. Robertson, The Application of State Law in Maritime Cases After *Yamaha Motor Corp. v. Calhoun*, 21 TUL. MAR. L.J. 81, 81 (1996) (emphasis added). And, even more notable "is the recent trend moving steadily in the direction of upholding state law." *Id.* at 95. Indeed, Professor Robertson observes that, with one exception not applicable here, "*the [Supreme] Court's maritime federalism decisions of the past three decades have all validated state law.*" *Id.* at 96 (emphasis added). In a similar vein, a respected admiralty and maritime law jurist, after discussing a series of high court decisions, recently observed: "The recent United States Supreme Court maritime federalism cases . . . demonstrate a *definite tendency to allow state law to prevail except where clearly preempted by federal law.*" Major B. Harding, Judicial Decision-Making Analysis of Federalism Issues in Modern United States Supreme Court Maritime Cases, 75 TUL. L. REV. 1517, 1555 (2001) (emphasis added).

A relatively recent decision from the United States Supreme Court makes clear just how critical this threshold inquiry as to which law—state or federal—should apply is to cases falling within a federal district court's admiralty jurisdiction. More particularly,

this decision demonstrates that merely because a case falls within admiralty's domain does not mean that federal maritime law, as opposed to state law, automatically applies:

> Because this case involves a watercraft collision on navigable waters, it *falls within admiralty's domain.* 'With admiralty jurisdiction,' we have often said, 'comes the application of substantive admiralty law.' *The exercise of admiralty jurisdiction, however, 'does not result in automatic displacement of state law.'*

*Yamaha Motor Corp. v. Calhoun*, 516 U.S. 199, 206, 116 S.Ct. 619, 623, 133 L.Ed. 2d 578 (1996) (emphasis added; citations omitted).

In *Yamaha*, the defendant proceeded on the same assumption that Movants make here—that because the accident in question occurred on navigable waters, federal maritime law would necessarily apply to the exclusion of state law. *Yamaha*, 116 S.Ct. at 621. The Supreme Court disagreed, concluding that state substantive law, rather than federal maritime law, applied in determining the remedies available to the claims at issue there—wrongful death claims. *Id.* The Supreme Court thus upheld the Third Circuit's reversal of the district court, which had erroneously granted partial summary judgment on the grounds that federal maritime law displaced state remedies. *Id.* Despite this, Movants invite this Court to render a dispositive judgment, dismissing an entire class of claimants, *without even considering* the critical threshold question of which law should apply in evaluating the remedies available to these claimants.

*Yamaha*, decided 11 years after the Fifth Circuit's decision in *TESTBANK*—upon which Movants principally rely, *see State of Louisiana ex rel. Guste v. M/V TESTBANK*, 752 F.2d 1019 (5th Cir. 1985) (*en banc*), *cert. denied*, 477 U.S. 903 (1986)—marked a substantial shift in the Supreme Court's jurisprudence on conflicts between federal

9

maritime law and state law.   As Professor Robertson recognized: "The United States Supreme Court's latest maritime federalism decision, *Yamaha Motor Corp. v. Calhoun*, has surprised many observers in its degree of deference to state law.  * * *  [T]he *Yamaha* decision has great potential impact.   The holding confirms the Court's recent trend toward upholding state law.   By reaching its decision in a case that arose in a federal admiralty court, the Court lends emphasis to that confirmation."   Robertson, *supra*, 21 TUL. MAR. L.J. at 97, 99.

This backdrop demonstrates that the potential for state law to apply to claims asserted in federal admiralty court rises far above being a mere possibility; it is the acknowledged "definite trend."   Movants essentially ask this Court to render a superficial judgment by issuing a decision without even considering the critical threshold question of which law should apply.   Given the stakes, with the substantial claims of some 66 claimants hanging in the balance, this Court should reject Movants' invitation to this Court to render a less than fully reasoned judgment.

### B.   Texas law would afford a recovery to the Economic Damage Claimants under the circumstances of this case.

Both Movants' motions are dedicated to a single task: persuading this Court that the Fifth Circuit's decision in *TESTBANK*, and its progeny, preclude a recovery of purely economic damages.   Whether *TESTBANK*, embodying federal maritime law, would preclude a recovery by the Economic Damage Claimants here, however, is beside the point if Texas law applies.   As demonstrated below, Texas would afford a recovery here.

10

Under Texas law, plaintiffs in the position of the Economic Damage Claimants would be permitted recovery for their damages. In *Texas & P. Ry. Co. v. Mercer*, 90 S.W.2d 557 (Tex. 1936), the Texas Supreme Court permitted recovery of economic damages in almost identical circumstances. In *Mercer*, the plaintiff, a dairy and vegetable farmer, sued a railway company when the railway company completely blocked a public highway that constituted the farmer's sole reliable route into the town where he sold his products. *Id.* at 558. The blockage, caused when the railway company performed work to lower the grade on which its track was laid, prevented the plaintiff from transporting his products to market in the City of Sherman. *Id.* The only other feasible route was a dirt road, some distance from the highway, which was often impassable and which, when passable, was so rough that it caused plaintiff to be late with his deliveries and/or ruined his products altogether. *Id.* Many merchants in Sherman regularly purchased plaintiffs' products, and plaintiff was able to dispose of all of his products there. *Id.* at 559. As a result of the blockage, plaintiff's business as a dairy man was "practically destroyed" because his customers turned to other suppliers, and, because he could not get them to market, his vegetables were lost as well. *Id.* Plaintiff sued the railway company for the unauthorized blockage of the highway. *Id.*

The *Mercer* Court held that the plaintiff, who was conducting an established business that he was forced to suspend for approximately four months while the road was blocked was "entitled to recover the profits which he would have earned during that period." *Mercer*, 90 S.W.2d at 559. The Court noted that "'loss of profits of an established business has frequently been held to be an item for recovery where the

11

evidence shows that the loss has resulted from an obstruction of a public street giving access to the premises, or the obstruction of an entrance to the plaintiff's place of business.'" *Id.* (quoting 13 TEX. JUR. p. 214); *see also* 43 Tex.Jur.3d, Highways & Streets, § 152 ("Recovery may . . . be had for loss of profits to an established business by reason of a temporary obstruction [of a public highway or street]."). The Court held that plaintiff was entitled to recover not only the retail price of the products he was unable to sell while the road was blocked but also damages for injury to the goodwill of his business. *Id.* at 560. Notably, Plaintiff was entitled to recover notwithstanding the absence of any evidence that his place of business was physically damaged as a result of the blockage of the highway. Simply put, this factor which is critical to the analysis under *TESTBANK*, is foreign to the analysis under the Texas Supreme Court's decision in *Mercer*.

Like the plaintiff in *Mercer*, the Economic Damage Claimants here suffered economic harm in the form of lost profits to their established businesses as the result of damage to a public road, the Causeway, which served as the sole means of meaningful access to Claimants' businesses. These lost-profit damages distinguish, in bright-line fashion, the harm suffered by the Economic Damage Claimants from any damage that might have been suffered by the public generally. In sum, Texas law would afford the Economic Damage Claimants a recovery here. Whether general maritime law as articulated in *TESTBANK* would afford a recovery—the *sole* focus of Movants' summary judgment motions—is immaterial if Texas law applies here. As demonstrated below, Texas law does apply.

12

**C.    Federal maritime law does not preempt Texas law in this case, and because Texas law affords the Economic Damage Claimants a recovery, the motions for summary judgment must be denied.**

Since the *Yamaha* decision, the Fifth Circuit has not undertaken a detailed analysis of whether the economic loss rule embraced in *TESTBANK* would preempt conflicting state law that would permit a recovery. In *TESTBANK*, the Fifth Circuit declined to permit recovery on state law grounds, essentially concluding that federal admiralty law automatically applies when admiralty jurisdiction attaches: "It is well settled that the invocation of federal admiralty jurisdiction results in the application of federal admiralty law rather than state law." *TESTBANK*, 752 F.2d at 1031. This unqualified language, employed by the Fifth Circuit 17 years ago, is directly contrary to the language used in *Yamaha* and more recent United States Supreme Court cases, which now recognize that:

> [E]xercise of federal admiralty jurisdiction *does not result in automatic displacement of state law*. It is true that '[w]ith admiralty jurisdiction comes the application of substantive admiralty law.' But to characterize that law as 'federal rules of decision' is 'a *destructive oversimplification* of the highly intricate interplay of the States and the National Government in their regulation of maritime commerce. It is true that state law must yield to the needs of a uniform federal maritime law when this Court finds inroads on a harmonious system. But this limitation still *leaves the States a wide scope*.

*Jerome B. Grubart, Inc. v. Great Lakes Dredge & Dock Co.*, 513 U.S. 527, 115 S.Ct. 1043, 1054, 130 L.Ed. 2d 1024 (1995) (emphasis added; citations omitted).

Two other circuits—the First and the Ninth—have recognized that pursuant to Supreme Court decisions issued well after *TESTBANK*, federal law does not "automatically displace" state law. Indeed, these circuits have specifically addressed whether the federal maritime economic loss rule upon which Movants rely preempts state

13

law.  Both circuits ultimately concluded that federal maritime law would *not* preempt

conflicting state law that would permit the claimants a recovery.  Moreover, the analysis

in those two decisions comports with how the Fifth Circuit would analyze the question.

>    **1.    The First and Ninth Circuits have addressed—in a manner
>         consistent with Fifth Circuit jurisprudence—the precise
>         question presented here: whether the economic loss rule
>         precluding recovery of purely economic damages under federal
>         maritime law preempts conflicting state law that would permit a
>         recovery.**

The First Circuit addressed this federal-law/state-law conflict issue in *Ballard*

*Shipping Co. v. Beach Shellfish*, 32 F.3d 623 (1st Cir. 1994).  There the Court considered

the claims of a group of shellfish dealers.  The dealers sustained economic losses as the

result of a two-week hiatus in shellfishing activities, arising from the grounding of a

vessel that spilled 300,000 gallons of heating oil into a bay.  *Id.* at 624.  There, as here,

the vessel owner moved to dismiss these claims for economic losses on the basis of the

Supreme Court's decision in *Robins Dry Dock & Repair Co. v. Flint*, 275 U.S. 303, 48

S.Ct. 134, 72 L.Ed. 290 (1927), which held that in certain circumstances compensation

for economic losses standing alone is unavailable in admiralty cases.  *Ballard Shipping*,

32 F.3d at 624-25.  The district court granted the relief Movants ask this Court to grant

here—it granted the motions dismissing the claims for economic losses.  *Id.* at 625.  The

First Circuit reversed.  *Id.* at 631.

The First Circuit's analysis in *Ballard Shipping* comports entirely with how the

Fifth Circuit would approach this question.  First, the Court noted that the First Circuit

14

has "adopted [the] broader reading" of *Robins*, expressly citing the Fifth Circuit's decision in *TESTBANK* as the prime example of a decision adopting this "broader rule":

> *Robins* has generally been taken to establish the broader rule that purely economic losses arising from a tort, but unaccompanied by physical injury to anything in which the plaintiff has a proprietary interest, are not compensable under federal maritime law. *See, e.g., State of Louisiana ex rel. Guste v. M/V Testbank*, 752 F.2d 1019, 1022 (5th Cir. 1985) (*en banc*), *cert. denied*, 477 U.S. 903, 106 S.Ct. 3271, 91 L.Ed. 2nd 562 (1986).

*Ballard Shipping*, 32 F.3d at 625.  Second, the court noted that even under a narrow reading of *Robins*, the shellfish dealer claimants would likely be denied a recovery, *id.*, which actually goes beyond what Movants argue here.  Third, the court noted that none of the recognized exceptions to *Robins* applied.  *Id.*  Thus, the court concluded that the shellfish dealers' "claims for purely economic losses under the general maritime law are barred."  *Id.*  This, of course, is *precisely* what Movants argue here with respect to the claims of the Economic Damage Claimants.  But this conclusion in no sense ended the First Circuit's analysis, just as it should not end this Court's analysis here.

The First Circuit proceeded to engage in the analysis that Movants want this Court to ignore.  The court concluded that the appeal turned upon the extent to which *Robins* bars the states from permitting a different result under *state* law.  *Ballard Shipping*, 32 F.3d at 625.  The court's ensuing analysis, which was central to its ultimate reversal of the district court, is an analysis that is not touched upon in either Movants' motion here.  That omission is fatal to the motions; the First Circuit's analysis is applicable here and compels the conclusion that the Economic Damage Claimants are entitled to recovery.  There is no sound reason to conclude that the Fifth Circuit would reach a different result.

15

The court in *Ballard Shipping* noted that "[a]lthough the Judiciary Act of 1789 vested 'exclusive original cognizance of all civil causes of admiralty and maritime jurisdiction' in the federal courts, the Act added a provision 'saving to suitors, in all cases, the right of a common law remedy, where the common law is competent to give it.' 1 Stat. 76-77." *Ballard Shipping*, 32 F.3d at 625-26. The court further observed that "[t]he modern version of the statute saves 'all other remedies to which [suitors] are otherwise entitled.' 28 U.S.C. § 1333. *The upshot is that an injured party may have claims arising from a single incident both under federal maritime law and under state law, whether legislation or common law.* State remedies under the savings to suitors clause may be pursued in state court or, where there is a basis for federal jurisdiction, in federal court." *Id.* at 626 (emphasis added; citations omitted).

With this legal backdrop, the First Circuit in *Ballard Shipping* concluded that whether federal maritime law preempted state law was the *central issue* in the case. *Id.* It ultimately concluded, applying the proper preemption analysis, that federal maritime law did not preempt state law and that, therefore, the claimants could pursue their claims for economic losses notwithstanding the barrier to such a recovery under *Robins*. *Ballard Shipping*, 32 F.3d at 631. On that basis, the court reversed the district court's conclusion to the contrary. *Id.* The governing analysis compels the same result here.

The Ninth Circuit recently conducted a similar preemption analysis, with the same result, in *In re Exxon Valdez*, 270 F.3d 1215 (9th Cir. 2001). There, the court considered multiple issues arising out of the catastrophic Exxon Valdez oil spill in Alaska. Among these was a cross appeal by "claimants who suffered purely economic injury on account

16

of the oil spill." *Exxon Valdez*, 270 F.3d at 1250.  The district court there granted the same character of judgment that Movants ask this Court to render here:  "The district court granted summary judgment against all claimants who suffered only economic injury on account of the oil spill, unaccompanied by any physical injury to their property or person." *Id.* at 1250.  The district court relied on the same authority Movants rely on here: the Supreme Court's decision in *Robins*, which the Ninth Circuit described—as Movants describe it—as "a case commonly read to hold that economic recovery is unavailable in admiralty cases absent physical harm." *Id.*  Based on its understanding that state law may not conflict with federal maritime law, the district court held that *Robins* preempted an Alaska statute that would permit a recovery of purely economic losses. *Id.*  The Ninth Circuit held, "[i]n light of subsequent Supreme Court decisions," that it was compelled to reverse the district court's ruling. *Id.*

The Ninth Circuit analyzed the question the same way the Fifth Circuit would.  It concluded that whether the economic loss claimants could recover depended on two inquiries: whether state law could control despite *Robins*, and whether state law did indeed allow for recovery.  *Exxon Valdez*, 270 F.3d at 1250.  The court ultimately answered both of these questions in the affirmative, *id.* at 1250-51, 1253, just as this Court should answer the same inquiries here.

These decisions by the First and Ninth Circuits demonstrate that this Court cannot simply ignore the federalism analysis in deciding the motions for summary judgment presented here, as Movants would have this Court do.  To the contrary, these decisions illustrate that this federalism question is *the central issue* requiring resolution by this

17

Court.  As demonstrated below, applying the proper preemption analysis ultimately yields the same result that the First and Ninth Circuits reached: federal maritime law's economic loss rule, as articulated in *Robins* and *TESTBANK*, does not preempt conflicting Texas common law that would permit the Economic Damage Claimants a recovery.  Thus, the motions for summary judgment must be denied.

> **2.    Under the governing preemption analysis, Texas law is not preempted here, and its application compels the denial of Movants' motions for summary judgment.**

Both the First and Ninth Circuits performed a three-step analysis in determining whether federal maritime law concerning the economic loss rule preempted contrary state law.  In their analyses, both courts drew upon a 1994 Supreme Court decision which reaffirmed an earlier decision.  *See American Dredging Co. v. Miller*, 510 U.S. 443, 447, 114 S.Ct. 981, 985, 127 L.Ed. 2d 285 (1994); *reaffirming Southern Pacific v. Jensen*, 244 U.S. 205, 37 S.Ct. 524, 529, 61 L.Ed. 1086 (1917) (cited in *Ballard Shipping*, 32 F.3d at 627; *Exxon Valdez*, 270 F.3d at 1250).  The three-prong test is as follows: "[N]otwithstanding federal admiralty law, a state may 'adopt such remedies…as it sees fit' so long as the state remedy does not (1) 'contravene[ ] the essential purpose expressed by an act of Congress'"; (2) 'work[ ] material prejudice to the characteristic features of general maritime law'; or (3) 'interfere[ ] with the proper harmony and uniformity of that law in its international and interstate relations.'" *Exxon Valdez*, 270 F.3d at 1250; *see also Ballard Shipping*, 32 F.3d at 627.

Applying this three-prong analysis, the First and Ninth Circuits concluded that the economic loss rule incorporated into federal maritime law should pose no barrier to a recovery under contrary state law:

> Whether contrary state law can control despite *Robins* thus depends on whether the denial of recovery for pure economic injury is [1] the 'essential purpose' of an act of Congress, [2] a 'characteristic feature' of admiralty, or [3] a doctrine whose uniform application is necessary to maintain the 'proper harmony' of maritime law. Like the First Circuit, we think it is none of these.

*Exxon Valdez*, 270 F.3d at 1250-51. Applying this same analysis, this Court should reach the same result here.

> ### a.   Allowing recovery for pure economic injury does not contravene the essential purpose of an act of Congress.

The first prong of the preemption analysis is whether the state remedy "contravenes the essential purpose expressed by an act of Congress." *Jensen*, 244 U.S. at 216, 37 S.Ct. at 529. Both the First and Ninth Circuits agreed that this prong is irrelevant to the inquiry here because the economic loss rule does not arise from any act of Congress. *Ballard Shipping*, 32 F.3d at 623 ("Since no act of Congress directly governs our case, the first prong (contravention) is irrelevant to our case."); *Exxon Valdez*, 270 F.3d at 1251 ("The first question is easily disposed of: no act of Congress directly governs our case."). There is no reason for this Court to reach a different result.

> ### b.   Allowing recovery for pure economic injury does not work material prejudice to a characteristic feature of the general maritime law.

The second prong of the preemption analysis is whether the state remedy "works material prejudice to the characteristic features of the general maritime law." *Jensen*, 244

333820

U.S. at 216, 37 S.Ct. at 529. Both the First and Ninth Circuits concluded that the economic loss rule is not a "characteristic feature" of general maritime law. *See Exxon Valdez*, 270 F.3d at 1251; *Ballard Shipping*, 32 F.3d at 627-28.

As the First Circuit observed in *Ballard Shipping* concerning the second ("*material prejudice*") prong, "*American Dredging* gave the famous language a twist that could not easily have been anticipated by the litigants in this case or by the district court." *Ballard Shipping,* 32 F.3d at 627. The same could be said of the Fifth Circuit at the time it issued its decision in *TESTBANK*, almost a decade before *American Dredging*. The First Circuit described this dramatic twist: "*American Dredging*, in its first and most important holding, gives the 'characteristic feature' language a definitive meaning: it reads the phrase to apply—and apparently only to apply—to a federal rule that either 'originated in admiralty' or 'has exclusive application there.'" *Id.* (quoting *American Dredging*, 510 U.S. at 450, 114 S.Ct. at 987).

Both the First and Ninth Circuits concluded that the economic loss rule neither originated in admiralty nor has exclusive application there. *Exxon Valdez*, 270 F.3d at 1251; *Ballard Shipping*, 32 F.3d at 627-28. And both supported their conclusions by expressly relying on *TESTBANK*, in which the Fifth Circuit recognized: "*Robins* broke no new ground but instead applied a principle, then settled both in the United States and England, which refused recovery for negligent interference with 'contractual rights.'" *TESTBANK*, 752 F.2d at 1022 (quoted in *Exxon Valdez*, 270 F.3d at 1251; *Ballard Shipping*, 32 F.3d at 628). Thus, even though *TESTBANK* was decided years before *American Dredging*, its analysis demonstrates that the Fifth Circuit, like the First and

20

Ninth Circuits, would conclude today that the second prong—the "material prejudice" prong—would not support preemption. This Court should conclude likewise.

> **c.    Allowing recovery for pure economic injury does not interfere with the proper harmony and uniformity of the general maritime law.**

The third prong of the preemption analysis is whether the state law "interferes with the proper harmony and uniformity" of the general maritime law. *Jensen*, 244 U.S. at 216, 37 S.Ct. at 529. Both the First and Ninth Circuits agreed that "[t]he Supreme Court has adopted a balancing test that weighs state and federal interests on a case-by-case basis." *Exxon Valdez*, 270 F.3d at 1251; *Ballard Shipping*, 32 F.3d at 628.

Here, of course, the State of Texas has a legitimate interest in ensuring that its citizens are properly compensated for the losses they sustain. This is particularly so where, as here, it is a mere fortuity that the case is in admiralty court at all—had the Causeway collapsed due to an architectural defect or an explosion of a tanker truck crossing the bridge, for example, admiralty jurisdiction would not be implicated in this essentially land-based case with land-based Economic Damage Claimants.

Moreover, there is no competing compelling federal interest to limit the remedies available to these Texas businesses, much less, as Movants urge, to defeat their recovery altogether. To the contrary, as the Supreme Court observed in another context when faced with conflicting federal and state remedies, "'it better becomes the humane and liberal character of proceedings in admiralty to give than to withhold the remedy, when not required to withhold it by established and inflexible rules.'" *Moragne v. States Marine Lines, Inc.*, 398 U.S. 375, 387, 90 S.Ct. 1772, 1781, 26 L.Ed. 2d 339 (1970)

21

(quoting *The Sea Gull*, 21 F.Cas. 909, 910 (C.C.Md. 1865) (Chase, C.J.)); *see also Yamaha*, 116 S.Ct. at 627. The Supreme Court has made clear that consistent with the "humane and liberal" purpose underlying admiralty law, it is somewhat "ahistorical" to argue, as Movants urge here, that admiralty law places a ceiling, rather than a floor, on recovery. *Yamaha*, 116 S.Ct. at 628.

True to this giving, rather than withholding, feature of admiralty law, both the First and the Ninth Circuits concluded that allowing a recovery for purely economic losses in the cases before those courts would not interfere with the proper harmony and uniformity of the general maritime law. *See Exxon Valdez*, 270 F.3d at 1251-53; *Ballard Shipping*, 32 F.3d at 628-31. This demonstrates that the economic loss rule is not some "inflexible rule" that is "required" to be applied in every case falling within admiralty's domain. In sum, the balance of federal and state interests here clearly weighs in favor of applying state law, which would permit recovery by the Economic Damage Claimants.

Because none of the three prongs of the preemption analysis supports preemption here, and because Texas law would afford a recovery, this Court should deny Movants' motions for summary judgment. Not only does this result comport with the on-point analyses by the First and Ninth Circuits, but also it is evident that the Fifth Circuit would reach this result today as well.

### D.    Alternatively, even if this Court concludes that the economic loss rule in *TESTBANK* controls here, the Economic Damage Claimants are entitled to proceed with their claims.

Even under the economic loss rule of *TESTBANK*, the Economic Damage Claimants are entitled to proceed with their claims because these claimants have a

22

proprietary interest in the continuous operation of the Causeway—their common, exclusive driveway. Thus, their claims survive summary judgment.

1.   **As demonstrated above, Texas law affords recovery for the Economic Damage Claimants.**

As shown above, under Texas law, plaintiffs in the position of the Economic Damage Claimants would be permitted recovery for their damages. *See Mercer*, 90 S.W.2d at 557. Like the plaintiff in *Mercer*, the Economic Damage Claimants here suffered economic harm in the form of lost profits to their established businesses as the result of damage to a public road, the Causeway, which served as the sole means of meaningful access to Claimants' businesses. These lost-profit damages distinguish, in bright-line fashion, the harm suffered by the Economic Damage Claimants from any damage that might have been suffered by the public generally. Indeed, the Economic Damage Claimants have more than a "special interest" in the Causeway; the causeway is *the* driveway that was constructed, at least in part, for the benefit of these Claimants. As such, the Causeway is an essential part of these Claimants' businesses that were harmed. Under these circumstances, the Economic Damage Claimants are entitled to recovery. *TESTBANK* does not change that result.

2.   *TESTBANK* **does not defeat recovery by the Economic Damages Claimants.**

The Economic Damage Claimants do not dispute that if admiralty law governs, *TESTBANK* and its progeny require damage to a proprietary interest in order to recover. But what Movants ignore is the fact that the Economic Damage Claimants suffered just such an injury—damage to their proprietary interest in the use of the Causeway. As a

23

result, they are entitled to maintain their claims for economic damages. In a very similar post-*TESTBANK* case, *Sekco Energy, Inc. v. M/V Margaret Chouest*, 820 F. Supp. 1008 (E.D. La. 1993), the court held that *TESTBANK* did not preclude the owner of a drilling platform from recovering its economic damages despite the fact that it was stipulated that *plaintiff's loss did not result from any physical damage to its drilling platform*. While the platform itself sustained no compensable physical damage, it was temporarily "shut-in," and plaintiff brought suit against defendants for the economic losses it suffered as a result. *Id.*

The *Sekco* court recognized that its decision was controlled by *TESTBANK*, but reasoned that the *TESTBANK* principle "does not function to bar every single economic loss claim that is unaccompanied by physical damage. As with any legal principle, the one at hand must be construed and applied in light of the policy which encouraged its creation in the first place." *Sekco*, 820 F. Supp. at 1011. The court explained that disallowing recovery by the platform owner "would not further the goal of maintaining a definable measure of foreseeability" because the plaintiff's "relationship to the alleged tort is not remote." *Id.* Noting *TESTBANK*'s instruction that the critical factor in these cases is the "nature of the interest harmed," the court reasoned that the plaintiff "owned the offshore oil platform, and its ownership interest *includes the right to use that platform*." *Id.* at 1012 (emphasis added).

*Sekco* permits the very claims brought by the Economic Damage Claimants here. The Causeway, a man-made physical structure that was constructed to serve as the sole vehicular access to and from the Economic Damage Claimants' businesses was indeed an

24

essential part of those businesses—it was their "driveway."  As such, the Economic Damage Claimants have an ownership interest in the Causeway—*the right to use the Causeway*—as much as they have an ownership interest in the businesses themselves. Moreover, the special nature of the Economic Damage Claimants' interest in the Causeway here illustrates why the concerns of the *TESTBANK* court are not present in this case.  The Economic Damage Claimants do not seek to have this court, or any other court, make a case-by-case foreseeability determination.  To the contrary, the "bright line" that the Fifth Circuit found so attractive in *TESTBANK* has already been drawn by the peculiar facts of this case—those entitled to recover are naturally limited to only those individuals and businesses on the Island who have a proprietary interest in the Causeway as an essential part of their business, which business suffered economic harm as a result of the Causeway collapse.

Thus, under the holding in *Sekco*, and the reasoning of *TESTBANK*, the Economic Damage Claimants are therefore entitled to maintain their claims for economic damages in this case.

## VIII.  CONCLUSION

For the reasons set forth above, the Economic Damage Claimants are entitled to pursue their claims for economic loss.  Therefore, the Economic Damage Claimants respectfully request that this Court deny the motions for summary judgment filed by Brown Water and the Other Claimants.

25

Respectfully submitted,

SLACK & DAVIS, L.L.P.
8911 Capital of Texas Highway
Building Two, Suite 2110
Austin, Texas 78759
(512) 795-8686 (Telephone)
(512) 795-8787 (Telecopier)

By _____
MICHAEL L. SLACK
State Bar No. 18476800
Federal ID No. 30906

ATTORNEY IN CHARGE FOR
ECONOMIC DAMAGE CLAIMANTS

## CERTIFICATE OF SERVICE

The undersigned hereby certifies that a true and correct copy of the foregoing instrument has been served on all counsel of record on this 7th day of May, 2002 via regular mail.

_____
MICHAEL L. SLACK

26

333820

IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF TEXAS
BROWNSVILLE DIVISION

| | | |
|---|---|---|
| IN RE THE COMPLAINT AND | § | |
| PETITION FOR BROWN WATER | § | |
| TOWING I, INC., AS OWNER AND | § | |
| BROWN WATER MARINE | § | |
| SERVICE, INC., AS BAREBOAT | § | C.A. No. B-01-157 |
| CHARTERERS, OF THE BROWN | § | (Subject to Rule 9(h) |
| WATER V, ITS ENGINES, TACKLE, | § | of the Federal Rules |
| ETC., IN A CAUSE OF | § | of Civil Procedure) |
| EXONERATION FROM OR | § | Admiralty |
| LIMITATION OF LIABILITY | § | |
| | § | |
| IN RE THE COMPLAINT AND | § | Consolidated With |
| PETITION OF AMERICAN | § | |
| COMMERCIAL LINES LLC, AS | § | |
| OWNER and AMERICAN\ | § | C.A. No. B-02-004 |
| COMMERCIAL BARGE LINES, | § | Admiralty |
| LLC, AS CHARTERER, OF THE | § | |
| BARGES NM-315, VLB-9182, ACL- | § | |
| 9933B, VLB-9173, IN A CAUSE OF | § | |
| EXONERATION FROM OR | § | |
| LIMITATION OF LIABILITY | § | |

**APPENDIX**

## TABLE OF CONTENTS

**Tab**

Affidavit of Edmund K. Cyganiewicz (p. 3)........................................................................1

Affidavit of Eddie Hernandez (p. 3) .................................................................................2

Affidavit of Raymond H. Kendall  (p. 3) ...........................................................................3

Affidavit of Paul Y. Cunningham, Jr. (p. 4). ......................................................................4

Affidavit of Michael L. Slack (p. 4)..................................................................................5

IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF TEXAS
BROWNSVILLE DIVISION

| | | |
|---|---|---|
| IN RE THE COMPLAINT AND PETITION | § | |
| FOR BROWN WATER TOWING I, INC., | § | |
| AS OWNER AND | § | C.A. No. B-01-157 |
| BROWN WATER MARINE SERVICE, INC., | § | (Subject to Rule 9(h) |
| AS BAREBOAT CHARTERERS, OF THE | § | of the Federal Rules |
| OF THE BROWN WATER V, | § | of Civil Procedure) |
| ITS ENGINES, TACKLE, ETC., | § | Admiralty |
| IN A CAUSE OF EXONERATION FROM | § | |
| OR LIMITATION OF LIABILITY | § | |
| | | Consolidated With |
| IN RE THE COMPLAINT AND | § | |
| PETITION OF AMERICAN | § | |
| COMMERCIAL LINES LLC, AS | § | C.A. NO. B-02-004 |
| OWNER and AMERICAN COMMERCIAL | § | Admiralty |
| BARGE LINES, LLC, AS CHARTERER | § | |
| OF THE BARGES NM-315, VLB-9182, | § | |
| ACL-9933B, VLB-9173, IN A CAUSE OF | § | |
| EXONERATION FROM OR LIMITATION | § | |
| OF LIABILITY | § | |

## AFFIDAVIT OF EDMUND K. CYGANIEWICZ

BEFORE ME, the undersigned Notary Public in and for the State of Texas, personally appeared EDMUND K. CYGANIEWICZ, known to me to be the person whose name is subscribed hereto, who being first duly sworn in the manner provided by law, on oath states as follows:

1.    My name is Edmund K. Cyganiewicz. I am over the age of 21 years and have personal knowledge of, and am competent and authorized to testify to, the facts set forth herein.

2.    I am the Mayor of the Town of South Padre Island ("Town"). I held that position on September 15, 2001.

3.    On that date, barges collided with the Queen Isabella Causeway, causing a section of the bridge to collapse.

4.     The damage to the causeway also severed phone service to the Town, as well as all businesses and residences on South Padre Island.  For a period of time after the causeway collapsed the entire South Padre Island was without phone service.

5.     The Town, along with businesses and individuals, sustained economic damages as a result of the causeway collapse.  The 62 businesses and individuals comprising the "economic damages" claimants were all impacted financially, to one extent or another, by the causeway collapse.

6.     The Town has lost tax revenues as a result of the dramatic reduction of business while the causeway was unusable.

7.     The businesses and individuals who derive their livelihoods from traffic coming to the island consider the causeway to be an economic umbilical.  The causeway is the sole means of access to the Island for cars and trucks.  The overwhelming percentage of business revenues on the Island are generated by vehicular traffic and phone service supplied solely over the causeway.  This has been the case since at least 1974.

8.     The Town, as well as the businesses and individuals whose livelihoods depend on causeway access to the Island, consider the causeway to be our "front driveway".  It is the business lifeline to South Padre Island.  We consider it to be no different than an easement over which someone is permitted to reach a business or residence.  Without the causeway, our Island would not be able to sustain the municipality, businesses and work force which comprise the "economic damages" claimants in this litigation.  Speaking on behalf of the Town, as well as the businesses and work force on the Island, we are collectively and totally dependent on the uses and benefits of the causeway for our economic survival.

9.     The Texas Department of Transportation has been aware, for many years, that the causeway serves the public uses and needs of the Town and Island residents and business by providing the sole access for cars and trucks and carrying essential phone service.

10.     There are a finite number of taxing authorities, businesses and individuals on South Padre Island.   Thus, there is a finite number of entities or persons who could claim economic damages as a result of the causeway collapse.

11.     I have personal knowledge of the statements made herein and they are true and correct.

_____
EDMUND K. CYGANIEWICZ

SWORN TO AND SUBSCRIBED BEFORE me on this 19th day of April, 2002, to certify which witness my hand and seal of office.



**AIDA TERESA LIBBY**
Notary Public, State of Texas
My Commission Expires
**February 21, 2003**

_____
NOTARY PUBLIC, STATE OF TEXAS

14.629                                - 3 -

IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF TEXAS
BROWNSVILLE DIVISION

IN RE THE COMPLAINT AND PETITION §
FOR BROWN WATER TOWING I, INC., §
AS OWNER AND §                           C.A. No. B-01-157
BROWN WATER MARINE SERVICE, INC.,§       (Subject to Rule 9(h)
AS BAREBOAT CHARTERERS, OF THE §         of the Federal Rules
OF THE BROWN WATER V, §                  of Civil Procedure)
ITS ENGINES, TACKLE, ETC., §             Admiralty
IN A CAUSE OF EXONERATION FROM §
OR LIMITATION OF LIABILITY §

                                         Consolidated With

IN RE THE COMPLAINT AND §
PETITION OF AMERICAN §
COMMERCIAL LINES LLC, AS §               C.A. NO. B-02-004
OWNER and AMERICAN COMMERCIAL §          Admiralty
BARGE LINES, LLC, AS CHARTERER §
OF THE BARGES NM-315, VLB-9182, §
ACL-9933B, VLB-9173, IN A CAUSE OF §
EXONERATION FROM OR LIMITATION §
OF LIABILITY §

## AFFIDAVIT OF EDDIE HERNANDEZ

BEFORE ME, the undersigned Notary Public in and for the State of Texas, personally

appeared EDDIE HERNANDEZ, known to me to be the person whose name is subscribed

hereto, who being first duly sworn in the manner provided by law, on oath states as follows:

1.      My name is Eddie Hernandez. I am over the age of 21 years and have personal

knowledge of, and am competent and authorized to testify to, the facts set forth herein.

2.      I am the Manager of the Laguna Madre Water District.

3.      On September 15, 2001 a section of the Queen Isabella Causeway collapsed after

being struck by barges.

4.      A 16 inch diameter water main, which provides water service to businesses and

residences on South Padre Island was severed as a result of the causeway collapse.

5.      Damage to the 16 inch water main caused water service to customers on South Padre Island to be impaired for a period of time after the causeway collapse.

6.      The Texas Department of Transportation and the State of Texas are both aware that the causeway has served a public use in providing water service to South Padre Island since it was built.

7.      I have personal knowledge of the facts stated herein and they are true and correct.

_____
EDDIE HERNANDEZ


SWORN TO AND SUBSCRIBED BEFORE me on this 22nd day of April, 2002, to certify which witness my hand and seal of office.

_____
NOTARY PUBLIC, STATE OF TEXAS

> DOLLY CANTU
> Notary Public, State of Texas
> My Commission Expires 05-19-05

IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF TEXAS
BROWNSVILLE DIVISION

IN RE THE COMPLAINT AND PETITION §
FOR BROWN WATER TOWING I, INC., §
AS OWNER AND §                             C.A. No. B-01-157
BROWN WATER MARINE SERVICE, INC.,§         (Subject to Rule 9(h)
AS BAREBOAT CHARTERERS, OF THE §           of the Federal Rules
OF THE BROWN WATER V, §                    of Civil Procedure)
ITS ENGINES, TACKLE, ETC., §               Admiralty
IN A CAUSE OF EXONERATION FROM §
OR LIMITATION OF LIABILITY §

                                           Consolidated With

IN RE THE COMPLAINT AND §
PETITION OF AMERICAN §
COMMERCIAL LINES LLC, AS §                 C.A. NO. B-02-004
OWNER and AMERICAN COMMERCIAL §            Admiralty
BARGE LINES, LLC, AS CHARTERER §
OF THE BARGES NM-315, VLB-9182, §
ACL-9933B, VLB-9173, IN A CAUSE OF §
EXONERATION FROM OR LIMITATION §
OF LIABILITY §

## AFFIDAVIT OF RAYMOND H. KENDALL

BEFORE ME, the undersigned Notary Public in and for the State of Texas, personally

appeared RAYMOND H. KENDALL, known to me to be the person whose name is subscribed

hereto, who being first duly sworn in the manner provided by law, on oath states as follows:

1.    My name is Raymond H. Kendall.  I am over the age of 21 years and have

personal knowledge of, and am competent and authorized to testify to, the facts set forth herein.

2.    I am the City Manager of the Town of South Padre Island and held that position

on September 15, 2001.

3.    As a result of the collision between the barges and the causeway, a telephone

cable and a 16 inch diameter water main were severed.  Both the telephone cable and the water

main were attached to the causeway and they were severed where the causeway collapsed.

4.    Because the telephone cable was severed, all telephone service to and from South Padre Island was lost for a period of time after the collapse.

5.    I have personal information regarding the statements contained herein and they are true and correct.

RAYMOND H. KENDALL

SWORN TO AND SUBSCRIBED BEFORE me on this _19th_ day of April, 2002, to certify which witness my hand and seal of office.

JOYCE H. ADAMS
MY COMMISSION EXPIRES
April 11, 2005

NOTARY PUBLIC, STATE OF TEXAS

14,627                    - 2 -

IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF TEXAS
BROWNSVILLE DIVISION

IN RE THE COMPLAINT AND PETITION §
FOR BROWN WATER TOWING I, INC., §
AS OWNER AND §
BROWN WATER MARINE SERVICE, INC.,§
AS BAREBOAT CHARTERERS, OF THE §
OF THE BROWN WATER V, §
ITS ENGINES, TACKLE, ETC., §
IN A CAUSE OF EXONERATION FROM §
OR LIMITATION OF LIABILITY §

C.A. No. B-01-157
(Subject to Rule 9(h)
of the Federal Rules
of Civil Procedure)
Admiralty

Consolidated With

IN RE THE COMPLAINT AND §
PETITION OF AMERICAN §
COMMERCIAL LINES LLC, AS §
OWNER and AMERICAN COMMERCIAL §
BARGE LINES, LLC, AS CHARTERER §
OF THE BARGES NM-315, VLB-9182, §
ACL-9933B, VLB-9173, IN A CAUSE OF §
EXONERATION FROM OR LIMITATION §
OF LIABILITY §

C.A. NO. B-02-004
Admiralty

## AFFIDAVIT OF PAUL Y. CUNNINGHAM, JR.

BEFORE ME, the undersigned Notary Public in and for the State of Texas, personally

appeared PAUL Y. CUNNINGHAM, JR., known to me to be the person whose name is

subscribed hereto, who being first duly sworn in the manner provided by law, on oath states as

follows:

1.      My name is Paul Y. Cunningham, Jr.  I am over the age of 21 years and have

personal knowledge of, and am competent and authorized to testify to, the facts set forth herein.

2.      I am an attorney at law and I was formerly the general counsel of the Laguna

Madre Water District ("Water District").

3.      I was serving as general counsel for the Water District, when the Queen Isabella

Causeway was built.  The Texas Department of Transportation and the Water District reached an

agreement that a 16 inch water main to South Padre Island could be suspended under the causeway.

4.    The Texas Department of Transportation required the Water District to pay to run the water main underneath the causeway and this cost was ultimately passed on to the customers of the Water District on South Padre Island.

5.    I have personal knowledge of the facts stated herein and they are true and correct.



PAUL Y. CUNNINGHAM, JR.

SWORN TO AND SUBSCRIBED BEFORE me on this _22nd_ day of April, 2002, to certify which witness my hand and seal of office.

VERONICA ARGUELLES
Notary Public, State of Texas
My Commission Expires
January 20, 2003

_Veronica Arguelles_
NOTARY PUBLIC, STATE OF TEXAS

IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF TEXAS
BROWNSVILLE DIVISION

| | | |
|---|---|---|
| IN RE THE COMPLAINT AND PETITION | § | |
| FOR BROWN WATER TOWING I, INC., | § | |
| AS OWNER AND | § | C.A. No. B-01-157 |
| BROWN WATER MARINE SERVICE, INC., | § | (Subject to Rule 9(h) |
| AS BAREBOAT CHARTERERS, OF THE | § | of the Federal Rules |
| OF THE BROWN WATER V, | § | of Civil Procedure) |
| ITS ENGINES, TACKLE, ETC., | § | Admiralty |
| IN A CAUSE OF EXONERATION FROM | § | |
| OR LIMITATION OF LIABILITY | § | |
| | | Consolidated With |
| IN RE THE COMPLAINT AND | § | |
| PETITION OF AMERICAN | § | |
| COMMERCIAL LINES LLC, AS | § | C.A. NO. B-02-004 |
| OWNER and AMERICAN COMMERCIAL | § | Admiralty |
| BARGE LINES, LLC, AS CHARTERER | § | |
| OF THE BARGES NM-315, VLB-9182, | § | |
| ACL-9933B, VLB-9173, IN A CAUSE OF | § | |
| EXONERATION FROM OR LIMITATION | § | |
| OF LIABILITY | § | |

## AFFIDAVIT OF MICHAEL L. SLACK

BEFORE ME, the undersigned Notary Public in and for the State of Texas, personally appeared MICHAEL L. SLACK, known to me to be the person whose name is subscribed hereto, who being first duly sworn in the manner provided by law, on oath states as follows:

1.    My name is Michael L. Slack.  I am over the age of 21 years and have personal knowledge of, and am competent and authorized to testify to, the facts set forth herein.

2.    My firm represents 62 claimants who have sustained economic damages as a result of the Queen Isabella Causeway collapse on September 15, 2001.

3.    Of the 62 claimants, 56 are businesses ("business claimants") which claim reduction in business revenues on South Padre Island as a direct result of the causeway collapse.

Each of these claimants contend that they are dependent upon the causeway, particularly its ability to bring vehicles to and from the Island, to sustain their businesses.

4.    Of the 62 claimants, one (1) claimant is the Town of South Padre Island ("Town").  The Town sustained economic damages as a result of reduced sales tax revenues. The Town contends that sales tax revenues were decreased as a result of interruption of business and reduction in business revenues on South Padre Island as a direct result of the causeway collapse.

5.    Of the 62 claimants, four (4) claimants are individuals employed by one of the business claimants who claim personal loss of income.  Their claims of personal loss of income are directly tied to the loss of business experienced by their South Padre Island employer after the causeway collapse.  Each of these claimants were terminated because of loss of business after the causeway collapse.

6.    Of the 62 claimants, one (1) claimant is an individual employed by a business which did not file a claim.  Her claim of personal loss of income is directly tied to the loss of business experienced by her South Padre Island employer after the causeway collapse.  This claimant was terminated because of loss of business after the causeway collapse.

7.    I have personal knowledge of the facts stated herein and they are true and correct.

_____
MICHAEL L. SLACK


SWORN TO AND SUBSCRIBED BEFORE me on this 22 day of April, 2002, to certify which witness my hand and seal of office.

ROSIE LACHICO
Notary Public
STATE OF TEXAS
My Comm. Exp. 09 - 28  2005

_____
NOTARY PUBLIC, STATE OF TEXAS