IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF TEXAS
BROWNSVILLE DIVISION

United States District Court
Southern District of Texas
ENTERED

MAY 0 9 2002

Michael N. Milby, Clerk of Court
By Deputy Clerk

| | | |
|---|---|---|
| IN RE THE COMPLAINT AND PETITION § | | |
| OF BROWN WATER TOWING I, INC., § | | |
| AS OWNER, AND BROWN WATER § | | |
| MARINE SERVICE INC., AS BAREBOAT § | CIVIL ACTION NO. B-01-157 | |
| CHARTERERS, OF THE BROWN § | | |
| WATER V, ITS ENGINES, TACKLE, § | Consolidated with | |
| ETC., IN A CAUSE OF EXONERATION § | | |
| FROM OR LIMITATION OF LIABILITY § | | |
| § | | |
| IN THE MATTER OF AMERICAN § | CIVIL ACTION NO. B-02-004 | |
| COMMERCIAL LINES LLC AS OWNER § | | |
| and AMERICAN COMMERCIAL BARGE § | Admiralty | |
| LINE LLC AS CHARTERER OF THE § | | |
| BARGES NM-315, VLB-912, ACL-9993B, § | | |
| VLB-9173, PRAYING FOR EXONERATION § | | |
| FROM AND/OR LIMITATION OF LIABILITY § | | |

## ORDER

BE IT REMEMBERED that on May 9, 2002, the Court considered Petitioners Brown Water Marine Service, Inc.'s and Brown Water Towing I, Inc.'s Motion for Summary Judgment on the Purely Economic Damage Claims Asserted by Certain Claimants Who Received No Personal Injury or Property Damage [Dkt. No. 113], Certain Personal Injury Claimants' and Property Damage Claimants' Motion and Brief in Support of Petitioners' Motion for Summary Judgment as to Purely Economic Claims [Dkt. No. 128] and the Economic Damage Claimants' Response [Dkt. No. 170]. For the following reasons, the Motions for Summary Judgment are **GRANTED**.

I.  **Factual And Procedural Background**

In the early morning hours of September 15, 2001, the Brown Water V, a tugboat owned by Brown Water Towing, Inc. and barges owned by American Commercial Lines, LLC, allided with a span of the Queen Isabella Causeway near Port Isabel, Texas. The span collapsed and several individuals were killed or injured when the vehicles they occupied fell into the channel. The Causeway provided the primary

means of access to South Padre Island and its subsequent closure for repairs lasted several months.

On September 15, 2001, Petitioners Brown Water Marine Service, Inc. and Brown Water Towing I, Inc. (hereinafter collectively referred to as "Brown Water") filed their cause of Exoneration from or Limitation of Liability, Civil and Maritime [Dkt. No. 1] in this Court. American Commercial Lines filed its cause of Exoneration from or Limitation of Liability, Civil and Maritime [Dkt. No. 1 in C.A. No. B-02-004] on January 11, 2002, and this Court consolidated both actions on February 1, 2002 [Dkt. No. 47]. Brown Water and American Commercial Lines both disclaim any negligence in the operation and maintenance of the vessels. They assert that they are entitled to exoneration from or limitation of liability under Sections 4282 to 4289, inclusive, of the Revised Statutes of the United States, Rule F of the Supplementary Rules for Certain Admiralty and Maritime Claims of the Federal Rules of Civil Procedure and any and all Acts of Congress that may apply.

To this end, Petitioners filed Letters of Undertaking which set the value of Petitioners' interests in the vessels [see Dkt. No. 3 in C.A. No. B-01-157 and Dkt. No. 3 in C.A. No. B-02-004]. On September 24, 2001, the Court issued an Order Directing all Claimants to File and Make Proof of Claims, and Directing the Issuance of Monition and Restraining Prosecution of Claims [Dkt. No. 13]. The Order required all potential claimants to file their claims in this Court by March 14, 2002 and required Petitioners to publish notice of the action in the Brownsville Herald and Valley Morning Star once a week for four successive weeks before March 14, 2002. In the period that followed, the Court reset the initial pretrial conference to April 22, 2002 in order to allow for any potential claimants to file. On April 22, the Court held the initial pretial conference and issued default judgment against all non-appearing claimants [Dkt. No. 155].

Currently before the Court are two Motions for Summary Judgment, one filed by the Petitioners, Brown Water [Dkt. No. 113], and the second filed by certain personal injury claimants and property damage claimants [Dkt. No. 128].[1] These Motions seek

---

[1] The Claimants with injury to person or property include: Jaqueline Paddock, Individually and as Next Friend of William B. Welch and as Representative of the Estate of Chelsea Welch; Gustavo Morales; Lydia Zamora Individually and as Representative of the Estate of Hector Martinez, Jr., Deceased; Bridgette Goza; Anita Harris, Individually and as Next Friend of Victor Justin Harris, and as Representative of the Estate of Robert V. Harris; Esteban F. Rivas and Maria

the dismissal with prejudice of Economic Damage Claimants – businesses and individuals who claim to have suffered only economic loss in connection with the allision.[2] Also before the Court is the Economic Damage Claimants' Response [Dkt. No. 170].[3]

---

Miriam Rivas Individually and as Representative of the Estate of Stvan F. Rivas; J. Antonio Mireles, as Personal Representative of the Estate of Julio Cesar Mireles, Juan Antonio Mireles, and Soledad Gonzales Mireles; Raquel Teran Hinojosa, Individually and on behalf of the Estate of Gaspar Hinojosa, Deceased, Clarissa Hinojosa, Omar Hinojosa and Gaspar Hinojosa, III, each Individually; Martin D. Hinojosa and Rita S. Hinojosa, Individually and as heirs of the Estate of Gaspar Hinojosa, Deceased; Richard Leavell and Carol Leavell, Individually and as Representatives of the Estate of Roby Fay Leavell, Deceased; Rolando Lee Moya, Alberto Leroy Moya, Antonio Salinas, Jr. and Roberto Espericueta; William Morris Welch; William E. Kimball; Rene Mata; Frank Mata; Southwestern Bell Telephone, L.P. and the State of Texas.

[2]   These include the following sixty-two Claimants, all of who are represented by Michael L. Slack of Slack and Davis, L.L.P.: 202 Bayside Bar & Grill; A-1 Taxi & A-1 Limousine; Amberjack's Bar and Grill, Inc.; Charlie Armendariz; BK's Beach to Bay Enterprises, Inc. d/b/a/ BK's Carpet & Upholstery Cleaning; Rodolfo Barrera; Rick and Brenda Bays; Bubba's Bayside Bar-B-Que Restaurant; Buena Suerte Sport Fishing Charters; Cactus Flower Interiors; Capt. Thomas Charter Fishing; Casa de Siesta Bed & Breakfast; Dolly Castillo; Coffey Construction; Rae Dejur; Designer's Discount Showroom; Edelstein's Better Furniture and Show Case; Fedigan Construction; Adrian Flandes; Furcron Realtors; Pedro Garcia, III; Ghilain, Inc.; Risa Ann Ghilain; Mark A. Guillot; Joe Gutierrez, III; Adam and Marcela Hancock; Island Market; Island Pharmacy; J.W. Properties, Inc.; J.W. Restaurants, Inc.; Jim Reynolds Hair Design; Jim's Pier, Inc.; Joseph's Restaurant; Kelly's Irish Pub; Kohnami Restaurant; La Jaiba Seafood Restaurant and Lounge; La Vina's Natural Nail Care; Michael and Judy Lemmons; Marina Village, Inc.; Massage & Healing Arts Center; Andrew L. Minkler; Miramar Resort; Padre Island Brewing Co., Inc.; Glen and Joyce Pfeil; Pro-Fit Gym; Property Management Co.; Richard Stockton Photography; Sangria Condominium, Inc.; Sea Ranch Enterprises, Inc.; South Padre Island Fishing Center Joint Venture; SPI Management d/b/a Radisson Resort SPI; SPI Security; SPI Texas Enforcement Group, Inc. d/b/a Mail Boxes Etc. #4075; Lee Roy Summerlin; T-Brent; Ted's Restaurant, Inc.; Texas Beach House; The Coastal Current; The Town of South Padre Island; Uncle Buggies Beach Buggy Rentals; Gilbert Vela; and Ybarra's Tire Busters. The remaining Economic Damage Claimants are: Robert and Virginia Fandrich, John and Mary McCoy, and Dimas Mora.
   Brown Water's Motion for Summary Judgment lists two other Economic Damage Claimants, neither of which are part of this Order. First, the Independent Plumbers of South Texas is not included as it has not filed a claim in this matter. Second, Bigo's International, L.L.C. is not included in the list of Economic Damage Claimants as it has properly alleged damage to its property [see Dkt. Nos. 17 and 73 and Dkt. No. 128 at 2-3].

[3]   The Economic Damage Claimants filed their Motion for Extension of Time in Which to Reply [Dkt. No 125] on April 15, 2002. This document claimed that "distinguishing characteristics" of each individual claimant's circumstances as well as certain depositions they needed justified extending the recovery 100 days, to August 1, 2002. Id. at 2. The Economic Damage Claimants noted that this extension would permit them to participate fully in the mediation tentatively planned for mid-June, but claimed that the extension of time was "not being sought solely for purposes of delay." Id. at 2-3. In the alternative, they suggested a Reply date of June 1, 2002. Id. at 2. The Court denied this Motion [Dkt. No. 132], but agreed at the initial pretrial

-3-

## II. Summary Judgment Standard

Summary judgment is appropriate when, viewing the evidence and all justifiable inferences in the light most favorable to the non-moving party, "the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue of material fact and that the moving party is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(c). See Hunt v. Cromartie, 526 U.S. 541, 552 (1999). The party making a summary judgment motion has the initial burden of informing the court of the basis for their motion and identifying those portions of the pleadings and discovery documents which demonstrate the absence of a genuine issue of material fact. See Celotex Corp. v. Catrett, 477 U.S. 317, 323 (1986); Colson v. Grohman, 174 F.3d 498, 506 (5th Cir. 1999). If the moving party meets this burden, the non-movant then must designate specific facts showing there is a genuine issue for trial to survive summary judgment. See Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 252 (1986); Little v. Liquid Air Corp., 37 F.3d 1069, 1075 (5th Cir. 1994).

## III. Analysis

There is no factual dispute.[4] The only issue currently before the Court is a question of law: whether general maritime law permits recovery of purely economic damages arising from a maritime tort where there is no personal or physical injury to property in which the Claimant has an interest.

The general principle addressing this issue was expressed by the United States Supreme Court in its 1927 decision Robins Dry Dock & Repair Co. v. Flint, 275 U.S.

---

conference to extend the Reply date to May 7, 2002, with the Court's ruling to follow on May 9, 2002.

[4] None of the Economic Damage Claimants allege any physical injury caused by the allision. They do, however, allege a proprietary interest in the Causeway [Dkt. 170 at 24-25]. Claimants argue that they have an ownership interest in the Causeway because it was their "driveway" – that the Causeway "was constructed to serve as the sole vehicular access to and from [their] businesses." Id. at 24. This argument is completely meritless. The Queen Isabella Causeway is public property of the State of Texas and these Claimants have no proprietary interest in public property.

303 (1927). In Robins Dry Dock, the Court stated that "a tort to the person or property of one man does not make the tort-feasor liable to another merely because the injured person was under a contract with that other unknown to the doer of the wrong." Id. at 309. The Fifth Circuit has consistently followed this doctrine, and has noted that "it is the law in this Circuit that a plaintiff in an admiralty case cannot recover negligently inflicted economic losses where there is no physical damage to any property in which the plaintiff has a proprietary interest." Pennzoil Producing Co. v. Offshore Express, Inc., 943 F.2d 1465, 1473 (5th Cir. 1991), citing State of Louisiana ex rel. Guste v. M/V TESTBANK, 752 F.2d 1019, 1023-24, 1026-27 (5th Cir. 1985)(en banc).[5] In TESTBANK, the Fifth Circuit, sitting en banc, explained that, "we are unpersuaded that we ought to drop physical damage to a proprietary interest as a prerequisite to recovery for economic loss. To the contrary, our reexamination of the history and central purpose of this pragmatic restriction on the doctrine of foreseeability heightens our commitment to it." 752 F.2d at 1021.

In their Response, the Economic Damage Claimants argue that the Movants' reliance on Robins Dry Dock and TESTBANK is misplaced. They assert that Texas law, not general maritime law, should apply in this action, and that Texas law would permit recovery for the pure economic loss claims. In support of the proposition that general maritime law does not automatically preempt state law, the Economic Damage Claimants point to decisions of the First and the Ninth Circuits. The First Circuit decision the Economic Damage Claimants rely on is Ballard Shipping Co. v. Beach Shellfish, 32 F.3d 623 (1st Cir. 1994). The Ninth Circuit's decision is In re Exxon Valdez, 270 F.3d 1215 (9th Cir. 2001).[6]

---

[5] The Fifth Circuit has consistently upheld the rule from Robins Dry Dock and TESTBANK. See Reserve Mooring Inc. v. American Commercial Barge Line, LLC, 251 F.3d 1069 (5th Cir.2001); American River Transportation Co. v. KAVO KALIAKRA SS, 206 F.3d 462 (5th Cir.2000); Corpus Christi Oil & Gas Co. v. Zapata Gulf Marine Corp., 71 F.3d 198 (5th Cir.1995); IMTT-Gretna v. Robert E. Lee SS, 993 F.2d 1193 (5th Cir. 1993); Pennzoil, 943 F.2d 1465; and Texas Eastern Transmission Corp. v. McMoran Offshore Exploration Co., 877 F.2d 1214 (5th Cir. 1989).

[6] Claimants also cite Yamaha Motor Corp. v. Calhoun, 516 U.S. 199 (1996). This case is inapposite. The Court notes that unlike the instant case, which involves an allision of a commercial tug and barges with a causeway in navigable waters, Yamaha Motor was a wrongful

Ballard Shipping involved the claims of shellfish dealers who suffered purely economic losses after an oil tanker ran aground in Narrangansett Bay, Rhode Island, causing a massive oil spill. 32 F.3d at 624. These claimants asserted that Rhode Island's Compensation Act, which provides that "owners or operators of seagoing vessels may be held liable for harms arising from negligence," and which contains specific provisions for recovering for economic loss as a result of damage to natural resources, was not preempted by federal maritime law. Id. at 626-27. The First Circuit agreed and permitted the claimants to recover purely economic losses. Id. at 631.

Similarly, in Exxon Valdez the Ninth Circuit addressed the arguments of claimants who suffered purely economic loss as a result of an oil spill. 270 F.3d at 1250-53. Exxon Valdez involved claims brought by commercial fishermen, landowners and others against the corporation that owned an oil tanker that ran aground in Prince William Sound, Alaska, causing a massive oil spill. In that case, Claimants asserted that Alaska's strict liability statute for hazardous substances was not preempted by federal maritime law. Id. at 1250. The Ninth Circuit agreed and permitted the claimants to recover purely economic losses. Id. at 1252-53.

Both Ballard Shipping and Exxon Valdez drew upon a 1994 Supreme Court decision in utilizing a three-prong analysis in determining whether general maritime law concerning the economic loss rule preempted contrary state law. See American

---

death/product liability case arising from a recreational jet ski accident in territorial waters. A case that bears some significant similarities to the present action, but which the Economic Damage Claimants fail to cite, is In re Amtrack "Sunset Limited" Train Crash in Bayou Canot, Alabama, on September 22, 1993, 121 F.3d 1421 (11th Cir. 1997). This case involved the "allision of a commercial tug and tow with a railroad bridge, that took place in the ordinary course of maritime business, on a waterway subject to heavy commercial traffic." Id. at 1427. Claimants brought wrongful death claims under Alabama's wrongful death statute, claiming that the state statute took precedence over federal maritime law. Id. at 1423-24. The Eleventh Circuit rejected this contention, and also differentiated the instant case from Yamaha Motor by finding first that the facts of the case were so closely related to traditional maritime activity that "the actors in this case are entitled to the application of laws – maritime laws – that have been fitted over the years for just these types of situations." Id. 1426-27. The Court also stated that

> federal maritime law should be applied here because Congress, in passing the Admiralty Extension Act ("Act"), 46 U.S.C. § 740 (1975), made clear its intent that in situations involving an allision between a vessel and a shore object, such as a railroad bridge, state laws should yield to federal maritime law.

Id. at 1427.

Dredging Co. v. Miller, 510 U.S. 443 (1994); reaffirming Southern Pacific v. Jensen, 244 U.S. 205 (1917). As articulated in Exxon Valdez, the test is:

> [N]otwithstanding federal admiralty law, a state may "adopt such remedies . . . as it sees fit" so long as the state remedy does not (1) contravene [ ] the essential purpose expressed by an act of Congress;" (2) "work [ ] material prejudice to the characteristic features of general maritime law;" or (3) "interfere [ ] with the proper harmony and uniformity of that law in its international and interstate relations."

270 F.3d at 1250; see also Ballard Shipping, 32 F.3d at 627. The Economic Damage Claimants argue that the application of this balancing test to the instant case will result in the same outcome as occurred in the First and Ninth Circuits.

They are wrong. What tilted the scales in favor of recovery in both Ballard Shipping and Exxon Valdez was first, the presence of a great state interest in protecting its citizens from pollution in navigable waters and second, state statutes that expressly permitted recovery for pure economic damages in maritime actions.[7] See Ballard Shipping, 32 F.3d at 629-31; Exxon Valdez, 270 F.3d at 1252-53. In both these cases, there were state statutes that dealt specifically with economic loss in cases of damage to natural resources. Both cases also relied heavily on the federal Oil Pollution Act ("OPA")[8] in support of the proposition that the OPA "almost certainly provides for recovery of purely economic damages in oil spill cases." Ballard Shipping, 32 F.3d at 630-31; Exxon Valdez, 270 F.3d at 1252. Neither of the above-mentioned factors is present here. Nor is there a federal law that may permit recovery for economic loss.

Instead, the Economic Damage Claimants assert that Texas' interest here is "ensuring that its citizens are compensated for the losses they sustain" [Dkt. No. 170 at 21.], and they point to the 1936 Texas Supreme Court decision of Texas & P. Ry. Co. v. Mercer,[9] as support for the proposition that they can recover for purely economic damages under state law. Id. at 11. This case involved a suit by a farmer against a

---

[7]   It is worth noting that the Economic Damage Claimants fail to state the nature of the state statutes in either Ballard Shipping or Exxon Valdez, or to mention the federal statute.

[8]   Oil Pollution Act of 1990, 33 U.S.C. §§ 2701-2718 (1990).

[9]   90 S.W.2d 557 (Tex. 1936).

railway company after the railway company blocked a public highway that the farmer used to bring his products to town. Mercer, 90 S.W.2d 558. The farmer brought suit under Texas law – no federal law was involved at all. Id. The Texas Supreme Court allowed the farmer to recover lost profits. Id. at 559.

Unlike the specific interest in protecting its citizens from pollution in navigable waters addressed in Ballard Shipping and Exxon Valdez, the state's general interest in compensating citizens for losses Claimants propose would completely eviscerate the doctrine of Robins Dry Dock and TESTBANK. Further, unlike the state statutes involved in both Ballard Shipping and Exxon Valdez, the Texas Supreme Court decision relied on by the Economic Damage Claimants does not address maritime law, much less conflicts between state and federal law, and so does not demonstrate that Texas has a specific interest in permitting recovery for purely economic damages in maritime torts.

In short, in balancing the three prongs articulated in American Dredging, the Court finds that the Economic Damage Claimants have failed to articulate a sufficient state interest to justify the "material prejudice to the characteristic features of general maritime law" and the interference to "the proper harmony and uniformity of that law in its international and interstate relations." See American Dredging, 510 U.S. at 446-47. The Fifth Circuit has consistently followed the doctrine of Robins Dry Dock and the Economic Damage Claimants propose a state interest that is so general as to render this doctrine completely meaningless if adopted. The Court declines to deviate from the well-established rule of Robins Dry Dock. While there is no doubt that the Economic Damage Claimants suffered economic losses as a result of the collapse of a section of the Causeway, they fail to meet the personal or property injury prerequisite established by the Robins Dry Dock and TESTBANK rules. The Motions for Summary Judgment are therefore **GRANTED**.

## IV.  Rule 11

Rule 11 of the Federal Rules of Civil Procedure allows a court to impose sanctions upon an attorney or litigant who files a baseless pleading or motion, one that is "presented for any improper purpose, such as . . . to cause unnecessary delay or

needless increase in the cost of litigation" and is not "well grounded in fact and . . . warranted by existing law or a good faith argument for the extension, modification, or reversal of existing law [.]" Fed. R. Civ. P. 11(b)(1) and (2). Even if no motion is made by the parties, the court has power under Rule 11 to impose sanctions *sua sponte* after entering an order describing the specific conduct that allegedly violates Rule 11 and directing the offending party to show cause why it has not violated the rule. Fed. R. Civ. P. 11(c)(2).

In the present case, the attorney for the Economic Damage Claimants has represented to the Court that "distinguishing characteristics" of each individual claimant's circumstances as well as certain depositions they needed justified extending the recovery 100 days, to August 1, 2002. [Motion to Extend Time to Reply, Dkt. No. 125 at 2]. However, nothing in the Response [Dkt. No. 170] suggests that any distinguishing characteristics would have any effect on the Response to the Motions for Summary Judgment. Rather, despite the *pro forma* disclaimer that the extension of time was "not being sought solely for purposes of delay" [Id. at 2-3], the extension appears to be deliberately timed to delay the Response until the Economic Damage Claimants could participate in mediation.

More seriously, in the Response, the attorney argues that these Claimants have a proprietary interest in the Queen Isabella Causeway [Dkt. 170 at 24-25]. This argument does not appear to have any grounding in fact or law. Further, the Court is concerned that the Economic Damage Claimants failed to fully discuss the rationale for the holdings of Ballard Shipping and Exxon Valdez, and also that they failed to note the contrary holding of In re Amtrack at all. In sum, the Court is of the opinion that, under the circumstances, a reasonable attorney would know that his actions are not factually and legally justified. Therefore, counsel for the Economic Damage Claimants must **SHOW CAUSE** why Rule 11 sanctions should not be imposed.

### V. Conclusion

For the reasons set forth in this opinion, the Court

**ORDERS** that the Motions for Summary Judgment [Dkt. Nos. 113 and 128] are hereby **GRANTED**. Further, the Court

**ORDERS** Michael L. Slack of Slack and Davis, L.L.P to appear on 5/20/02 at 2:00 p.m. to **SHOW CAUSE** why sanctions should not be imposed for violations of Rule 11 of the Federal Rules of Civil Procedure as described in Section IV of this Order.

DONE at Brownsville, Texas, this 9th day of May, 2002.

Hilda G. Tagle
United States District Judge