181

**IN THE UNITED STATES DISTRICT COURT**
**FOR THE SOUTHERN DISTRICT OF TEXAS**
**BROWNSVILLE DIVISION**

United States District Court
Southern District of Texas
FILED

MAY 2 0 2002

Michael N. Milby
Clerk of Court

| | | |
|---|---|---|
| IN RE THE COMPLAINT AND | § | C.A. NO. B-01-157 |
| PETITION FOR BROWN WATER | § | (Subject to Rule 9(h) |
| TOWING, I, INC., AS OWNER AND | § | of the Federal Rules of |
| BROWN WATER MARINE SERVICE, | § | Civil Procedure) |
| INC., AS BAREBOAT CHARTERERS, | § | Admiralty |
| OF THE BROWN WATER V, ITS | § | |
| ENGINES, TACKLE, ETC., IN A | § | |
| CAUSE OF EXONERATION FROM | § | |
| OR LIMITATION OF LIABILITY | § | |
| | § | Consolidated With |
| | § | |
| IN RE THE COMPLAINT AND | § | |
| PETITION OF AMERICAN | § | C.A. NO. B-02-004 |
| COMMERCIAL LINES LLC, AS | § | Admiralty |
| OWNER, and AMERICAN/ | § | |
| COMMERCIAL BARGE LINES, LLC, | § | |
| AS CHARTERER, OF THE BARGES | § | |
| NM-315, VLB-9182, ACL-9933B, | § | |
| VLB-9173, IN A CAUSE OF | § | |
| EXONERATION FROM OR | § | |
| LIMITATION OF LIABILITY | § | |

## MICHAEL SLACK'S BRIEF ON RULE 11 SANCTIONS

SLACK & DAVIS, L.L.P.
MICHAEL L. SLACK
State Bar No. 18476800
Federal ID No. 30906
8911 Capital of Texas Highway
Building Two, Suite 2110
Austin, Texas 78759
(512) 795-8686 (Telephone)
(512) 795-8787 (Telecopier)

ATTORNEY IN CHARGE FOR
ECONOMIC DAMAGE CLAIMANTS

# TABLE OF CONTENTS

TABLE OF CONTENTS ........................................................................................ i

TABLE OF AUTHORITIES .................................................................................. ii

I.      INTRODUCTION .................................................................................... 1

        A.      Michael Slack has not violated the "inquiry" element of Rule 11(b)(2).
                The legal arguments made in the Economic Damage Claimants Response
                (and Brief in Support) to Motions for Summary Judgment are warranted
                by existing law or by a non-frivolous argument for the extension of
                existing law or the establishment of new law. Based on an existing case,
                the Yamaha case, the Economic Damage Claimants made a plausible
                argument to extend Yamaha to an issue beyond Testbank that the Fifth
                Circuit has not yet addressed – the right of non-seafaring, economic
                damage claimants to relief under Texas state law for damages arising from
                an alision in Texas state territorial waters................................................ 1

        B.      Michael Slack has not violated the "purpose" element of Rule 11(b)(1).
                The attorneys for the economic damage claimants did not present any
                pleadings, motions, or other papers to the Court for any improper purpose,
                including delay. Michael Slack filed the pleadings and motions at issue
                because those papers were necessary to fully represent his clients in a
                complex case. ............................................................................................. 1

II.     THE LANGUAGE OF RULE 11 ............................................................. 1

III.    MICHAEL SLACK HAS NOT VIOLATED THE "INQUIRY" ELEMENT OF
        RULE 11(b)(2). ........................................................................................ 2

        A.      THE STANDARD FOR DETERMINING VIOLATION OF THE
                INQUIRY ELEMENT. ................................................................. 2

        B.      MICHAEL SLACK COMPILED WITH THE "INQUIRY" STANDARD. .......... 3

IV.     MICHAEL SLACK HAS NOT VIOLATED THE "PURPOSE" ELEMENT OF
        RULE 11(b)(1) ......................................................................................... 5

V.      CONCLUSION ........................................................................................ 7

CERTIFICATE OF SERVICE ............................................................................ 8

i

# TABLE OF AUTHORITIES

**Federal Cases**

Allison v. Dugan,
   951 F.2d 828 (7th Cir. 1991) ................................................................... 5

Blome v. Aero Spatiale Helicopter Corp.,
   924 F.Supp. 805 (S.D. Tex. 1996) ......................................................... 4

CJC Holdings, Inc. v. Wright & Lato, Inc.,
   989 F.2d 791 (5th Cir. 1993) ................................................................... 3

Danese v. City of Roseville,
   757 F.Supp. 827 (E.D. Mich. 1991) ...................................................... 5

Edwards v. General Motors,
   153 F.3d 242 (5th Cir. 1998) ................................................................... 6

F.D.I.C. v. Calhoun, 34 F.3d 1291 (5th Cir. 1994) ..................................... 3, 6

In re Aircrash Off Point Mugu California,
   145 F.Supp. 1156 (N.D. Cal. 2001) ...................................................... 4

In re Amtrak "Sunset Limited" Train Crash in Bayou Canot,
   Alabama, on September 22, 1993, 121 F.3d 1421 (11th Cir. 1997) ....... 5

Kelly v. Best Enterprises Production Co.,
   17 F.Supp.2d 591 (E.D. La. 1998); ....................................................... 4

Mars Steel Corp. v. Continental Bank,
   880 F.2d 928 (7th Cir. 1989) ................................................................... 5

Pease v. Pakhoed Corp.,
   980 F.2d 995 (5th Cir. 1993) ................................................................... 3

Sheets v. Yamaha Motors Corp.
   U.S.A., 891 F.2d 533 (5th Cir. 1990) ................................................... 6

Thomas v. Capital Securities Services,
   836 F.2d 866 (5th Cir. 1988) ............................................................... 3, 6

United States v. Alexander,
   981 F.2d 250 (5th Cir. 1993) ................................................................... 6

Wigod v. Chicago Mercantile Exchange,
   981 F.2d 1510 (7th Cir. 1992) ............................................................... 5

335352

Yamaha Motor Corp. v. Calhoun,
    516 U.S. 199, 116 S.Ct. 619, 133 L.Ed.2d 578 (1996)...................................................... 4

**Rules and Treatises**

F. R. Civ. P. 11................................................................................................................. passim

5A C.A. Wright & A.R. Miller,
    Federal Practice and Procedure, § 1335 (1990 & Supp. Pamp. 2002) ............... 2, 3, 4

5A C.A. Wright & A.R. Miller,
    Federal Practice and Procedure, §§ 1331-1339 (1990  Supp. Pamp. 2002) ............ 2

iii

335352

## I.     INTRODUCTION

The Court should not impose Rule 11 sanctions under the facts and circumstances of this case because:

A.     <u>Michael Slack has not violated the "inquiry" element of Rule 11(b)(2).</u>  The legal arguments made in the Economic Damage Claimants Response (and Brief in Support) to Motions for Summary Judgment are warranted by existing law or by a non-frivolous argument for the extension of existing law or the establishment of new law.  Based on an existing case, the <u>Yamaha</u> case, the Economic Damage Claimants made a plausible argument to extend <u>Yamaha</u> to an issue beyond <u>Testbank</u> that the Fifth Circuit has not yet addressed – the right of non-seafaring, economic damage claimants to relief under Texas state law for damages arising from an alision in Texas state territorial waters.

B.     <u>Michael Slack has not violated the "purpose" element of Rule 11(b)(1).</u>  The attorneys for the economic damage claimants did not present any pleadings, motions, or other papers to the Court for any improper purpose, including delay.  Michael Slack filed the pleadings and motions at issue because those papers were necessary to fully represent his clients in a complex case.

These arguments are supported by the Affidavits of Michael L. Slack and Douglas W. Alexander.  These Affidavits are submitted to the Court at the same time this Brief is submitted to the Court.

## II.     THE LANGUAGE OF RULE 11

Rule 11 of the Federal Rules of Civil Procedure grants the Court discretionary power to impose sanctions if "the Court determines that Subdivision (b) has been violated."  F. R. C. P. 11(c).  Subdivision (b) of Rule 11 provides:

**(b) Representations to Court.**  By presenting to the court . . . a pleading, written motion, or other paper, an attorney . . . is certifying that to the best of the person's knowledge, information, and belief, formed after an inquiry reasonable under the circumstances, –

(1)    it is not being presented for any improper purpose, such as to harass or to cause unnecessary delay or needless increase in the cost of litigation;

(2)    the claims, defenses, and other legal contentions therein are warranted by existing law or by a non-frivolous argument for the extension, modification, or reversal of existing law or the establishment of new law;

F.R.C.P. 11(b); 5A C.A. Wright & A.R. Miller, Federal Practice and Procedure, §§ 1331-1338, at § 1335, p. 58 (1990) (Supp. Pamp. 2002) (hereinafter "Wright & Miller")(referring to the Rule 11(b)(1) standard as the "purpose element" and the Rule 11(b)(2) standard as the "inquiry element").

### III.    MICHAEL SLACK HAS NOT VIOLATED THE "INQUIRY" ELEMENT OF RULE 11(b)(2).

A.    THE STANDARD FOR DETERMINING VIOLATION OF THE INQUIRY ELEMENT.

Under the law of any circuit, the standard for imposing sanctions under Rule 11(b)(2) is a strict standard. Wright & Miller § 1335. Wright & Miller discussed the standard as follows:

> The . . . rule also requires a reasonable inquiry into the law . . . Not surprisingly, sanctions have been imposed when the party's position is groundless under existing law, there is a failure to cite controlling law, or there is a misstatement as to the content of existing law. Sanctions are not likely to be imposed, however, on a matter of first impression, even if there is contrary authority in other courts, or when the law is not clear. In order to avoid the feared "chilling effect" of rule 11 becoming a reality, many federal courts have been quite tolerant of novel theories as long as they are not completely lacking in merit.

* * *

> Many courts agree with the Second Circuit, which has said that Rule 11 is violated "only when it is 'patently clear that a claim has absolutely no chance of success'" and that all doubts should be resolved in favor of the

2

signer. Thus, the fact that a complaint is dismissed for legal insufficiency or does not produce a triable issue does not necessarily mean that a sanction is appropriate. Many courts seem to believe that Rule 11 should be applied only when the document is lacking in plausibility or is frivolous.

Wright & Miller § 1335 at p. 69-70 n. 27-34; p. 88 n. 109-112 (footnotes omitted).

The Fifth Circuit uses similar language to describe legal arguments that justify Rule 11 sanctions. F.D.I.C. v. Calhoun, 34 F.3d 1291, 1298 (5th Cir. 1994)("we find the . . . argument not to be implausible, unreasonable, or otherwise frivolous"); Pease v. Pakhoed Corp., 980 F.2d 995, 1001 (5th Cir. 1993)("although we agree that Pease's . . . claims are unavailing, we conclude that his contentions are not so abusive or frivolous as to violate Rule 11."); CJC Holdings, Inc. v. Wright & Lato, Inc., 989 F.2d 791, 793 (5th Cir. 1993)("indicia of reasonable inquiry into the law include the plausibility of the legal argument espoused and the complexity of the issues raised."); See Thomas v. Capital Securities Services, 836 F.2d 866 (5th Cir. 1988)(seminal Fifth Circuit case on Rule 11 sanctions).

B.    MICHAEL SLACK COMPILED WITH THE "INQUIRY" STANDARD.

In the Court's May 9, 2002 Order, the Court states:

More seriously, in the Response, the attorney argues that these Claimants have a proprietary interest in the Queen Isabella Causeway [Dkt. 170 at 24-25]. This argument does not appear to have any grounding in fact or law. Further, the Court is concerned that the Economic Damage Claimants failed to fully discuss the rationale for the holdings of Ballard Shipping and Exxon Valdez and also that they failed to note the contrary holding of In re Amtrak at all. In sum, the Court is of the opinion that, under the circumstances, a reasonable attorney would know that his actions are not factually and legally justified. Therefore, counsel for the Economic Damage Claimants must SHOW CAUSE why Rule 11 sanctions should not be imposed.

3

May 9, 2002 Order at p. 9.

The affidavits of Michael L. Slack and Douglas W. Alexander detail the research that Mr. Slack and Mr. Alexander did on the substantive issue before the court: in the Fifth Circuit, are economic damage claimants entitled to recover under Texas state law for damages arising from a alision in Texas state territorial waters.

These affidavits establish that both Mr. Slack and Mr. Alexander made a reasonable inquiry into the law.[1]  These affidavits also establish that the economic damage claimants' arguments are plausible: after the Yamaha case, and under at least two federal district court cases in the Fifth Circuit, Texas state law applies to the claims of the Economic Damage Claimants. Yamaha Motor Corp. v. Calhoun, 516 U.S. 199, 116 S.Ct. 619, 133 L.Ed.2d 578 (1996); Blome v. Aero Spatiale Helicopter Corp., 924 F.Supp. 805 (S.D. Tex. 1996); Kelly v. Best Enterprises Production Co., 17 F.Supp.2d 591, 597 (E.D. La. 1998); see also, In re Aircrash Off Point Mugu California, 145 F.Supp. 1156 (N.D. Cal. 2001).   Although the court does not agree with this argument, the argument is "plausible" under the above cases. See, CJC Holdings, Inc. v. Wright & Lato, Inc., 989 F.2d at 793.  Moreover, the questions in this case are "complex" questions of federal maritime law. Id. Under both the main "indicia of reasonable inquiry into the law" in the Fifth Circuit, this Court should therefore not impose sanctions. Id.

---

[1] The affidavits also establish that Mr. Slack and Mr. Alexander have been practicing law for many years and have not been sanctioned by any court. See Wright & Miller, § 1335 at p. 63 n. 17("in determining whether the standard has been transgressed, courts have taken into consideration whether the putative offender has a history of violating the rule . . ..").

In its Order, the Court analyzes this failure to note the <u>In re Amtrak "Sunset Limited" Train Crash in Bayou Canot, Alabama, on September 22, 1993</u>, 121 F.3d 1421 (11th Cir. 1997) case.  First, as Mr. Alexander presents in his affidavit, this case is distinguishable.  <u>Wigod v. Chicago Mercantile Exchange</u>, 981 F.2d 1510, 1522-23 (7th Cir. 1992)("failure to address" distinguishable case is not an adequate basis for sanctions.)  Second, even if the <u>In re Amtrak</u> case is not distinguishable, it is from another circuit and is not binding authority in this circuit.  <u>See</u>, <u>Danese v. City of Roseville</u>, 757 F.Supp. 827, 830 (E.D. Mich. 1991)(court refused to impose Rule 11 sanctions: "regarding defendants' arguments about the effect of fifth circuit case law, such law does not present binding authority in this Court or in the Court of Appeals for the Sixth Circuit, therefore, plaintiffs' failure to succumb to dictates of <u>Partridge and Gagnee</u> does not amount to an unreasonable practice."); <u>See also</u>, <u>Allison v. Dugan</u>, 951 F.2d 828, 834 (7th Cir. 1991).[2]

## IV.    MICHAEL SLACK HAS NOT VIOLATED THE "PURPOSE" ELEMENT OF RULE 11(b)(1)

The May 9, 2002 Order states:

> In the present case, the attorney for Economic Damage Claimants has represented to the Court that "distinguishing characteristics" of each individual claimant's circumstances as well as certain depositions they

---

[2] In this comparable case, the Seventh Circuit held:

> [W]e refuse to affirm the imposition of Rule 11 sanctions. The district court sanctioned Allison because "[he] ignore[d] the controlling case law and instead . . . pretended that potentially dispositive authority against [his] position does not exist. . . . "<u>Id.</u> at 1051. We will reverse a decision regarding sanctions only if the district court abused its discretion. <u>Mars Steel Corp. v. Continental Bank</u>, 880 F.2d 928, 930 (7th Cir. 1989). In the instant case, though Allison's arguments were undoubtedly weak, we do not detect the kind of <u>callous disregard for governing law</u> or the procedures of the court that usually justifies the imposition of Rule 11 sanctions.

951 F.2d at 834 (emphasis added).

335352

needed justified extending the recovery 100 days, to August 1, 2002. [Motion to Extend Time to Reply, Dkt. No. 125 at 2]. However, nothing in the Response [Dkt. No. 170] suggests that any distinguishing characteristics would have any effect on the Response to the Motions for Summary Judgment. rather, despite the *pro forma* disclaimer that the extension of time was "not being sought solely for the purposes of delay" [Id. at 2-3], the extension appears to be deliberately timed to delay the Response until the economic Damages Claimants could participate in mediation.

May 9, 2002 Order at p. 9.

The Fifth Circuit will find a violation of the "purpose" element in "unusual circumstances" only:

> The district court also found that the claim was filed for impermissible reasons, i.e., to delay the proceedings or to avoid liability. It is true that mere legal factual support will not rescue a pleading filed for an impermissible reason. Sheets v. Yamaha Motors Corp. U.S.A., 891 F.2d 533, 538 (5th Cir. 1990). Still, where the filing enjoys reasonable factual and legal support, it is not sanctionable absent "unusual circumstances."

United States v. Alexander, 981 F.2d 250, 253 (5th Cir. 1993); accord, F.D.I.C. v. Calhoun, 34 F.3d at 1300. Filing a motion to request additional time to gather more supporting evidence is not filing a pleading for an impermissible reason.

The Fifth Circuit also follows the "snapshot rule." Thomas v. Capital Securities Services, 836 F.2d 874; Edwards v. General Motors, 153 F.3d 242, 245 (5th Cir. 1998). In Thomas, the Fifth Circuit states this rule as follows:

> [W]e believe that a construction of Rule 11 which evaluates an attorney's conduct at the time a "pleading, motion, or other paper" is signed is consistent with the intent of the rulemakers and the plain meaning of the language contained in the rule. Like a snapshot, Rule 11 review focuses upon the instant when the picture is taken—when the signature is placed on the document.

* * *

6

335352

> [T]he advisory committee notes to the amended rule support our conclusion that Rule 11 applies only to the signing of pleadings and imposes a standard of good faith and reasonable investigation as of the date of that signing. Specifically, the committee notes provide that "[t]he court is expected to avoid using the wisdom of hindsight and should test the signer's conduct by inquiring what was reasonable to believe at the time the pleading, motion, or other paper was submitted." Fed. R. Civ. P. 11 advisory committee notes. The rulemakers later comment that in considering the nature and severity of the sanction to be imposed under Rule 11, the court should consider the state of mind of the attorney "when the pleading or other paper was signed." Id.

836 F.2d at 874-75.

Mr. Slack complied with the snapshot rule. As set forth in Michael L. Slack's affidavit, Michael Slack sought more time to reply because he had to gather and check client information and because he needed to research and write his response to the motion for summary judgment in association with Scott, Douglass & McConnico. This was basic work necessary to fully represent his clients in a complex maritime case. At the time Michael Slack filed the motion for extension of time, Mr. Slack believed that his clients' affidavits might show a significant State-based interest in compensating the Economic Damage Claimants. In order to obtain such affidavits, Mr. Slack needed an extension of time. When the court denied the motion for extension, it was no longer possible to present such evidence as part of the summary judgment proceeding. Mr. Slack did not file the motion for the purpose of delay.

## V.     CONCLUSION

For the reasons stated above, Michael L. Slack respectfully requests this court not to impose Rule 11 sanctions

7

335352

Respectfully submitted,

SLACK & DAVIS, L.L.P.
8911 Capital of Texas Highway
Building Two, Suite 2110
Austin, Texas 78759
(512) 795-8686 (Telephone)
(512) 795-8787 (Telecopier)


By _____
On behalf of and with permission of
    MICHAEL L. SLACK
    State Bar No. 18476800
    Federal ID No. 30906

ATTORNEY IN CHARGE FOR
ECONOMIC DAMAGE CLAIMANTS

## CERTIFICATE OF SERVICE

The undersigned hereby certifies that a true and correct copy of the foregoing instrument has been served on all counsel of record on this 16th day of May, 2002 via facsimile or hand delivery.


_____
On behalf of and with permission of
MICHAEL L. SLACK

8

335352

IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF TEXAS
BROWNSVILLE DIVISION

| | | |
|---|---|---|
| IN RE THE COMPLAINT AND | § | |
| PETITION FOR BROWN WATER | § | C.A. NO. B-01-157 |
| TOWING, I, INC., AS OWNER AND | § | (Subject to Rule 9(h) |
| BROWN WATER MARINE SERVICE, | § | of the Federal Rules of |
| INC., AS BAREBOAT CHARTERERS, | § | Civil Procedure) |
| OF THE BROWN WATER V, ITS | § | Admiralty |
| ENGINES, TACKLE, ETC., IN A | § | |
| CAUSE OF EXONERATION FROM | § | |
| OR LIMITATION OF LIABILITY | § | |
| | § | Consolidated With |
| | § | |
| IN RE THE COMPLAINT AND | § | |
| PETITION OF AMERICAN | § | C.A. NO. B-02-004 |
| COMMERCIAL LINES LLC, AS | § | Admiralty |
| OWNER, and AMERICAN/ | § | |
| COMMERCIAL BARGE LINES, LLC, | § | |
| AS CHARTERER, OF THE BARGES | § | |
| NM-315, VLB-9182, ACL-9933B, | § | |
| VLB-9173, IN A CAUSE OF | § | |
| EXONERATION FROM OR | § | |
| LIMITATION OF LIABILITY | § | |

## AFFIDAVIT OF MICHAEL L. SLACK

| | |
|---|---|
| THE STATE OF TEXAS | § |
| | § |
| COUNTY OF TRAVIS | § |

BEFORE ME, the undersigned authority, notary public in and for the State of Texas, appeared Michael L. Slack, known to me to be the person whose signature is affixed to this affidavit and who did state, on his oath, as follows:

1.     My name is Michael L. Slack. I am over the age of 21, of sound mind, have never been convicted of any crime involving moral turpitude, and except for those matters specifically stated to be on information and belief, I have personal knowledge of the matters stated herein, all of which are true and correct.

15165.1

2.      I am the lead counsel in the above-captioned cause for the Economic Damage Claimants and I accept full responsibility for all papers filed in this matter on behalf of my clients. I have been directly involved in all aspects of this case.

3.      I am an attorney-at-law, having been licensed to practice in the State of Texas in 1983. I am managing partner of the law firm of Slack & Davis, L.L.P. in Austin, Texas. My primary practice area is aviation crash litigation. Besides Texas, I have represented clients in federal courts in Alaska, Arkansas, Arizona, Florida, Illinois, Missouri, Montana, New Mexico, Nevada, New York, Oklahoma, Pennsylvania, and Tennessee. I am currently serving as a member of the Plaintiffs' Steering Committee in MDL 1308 arising from the crash of American Airlines Flight 1420 in Little Rock, Arkansas. I have served as a member of the Committee to Revise the Local Court Rules of the Western District of Texas. I am a past president of the Texas Trial Lawyers Association.

4.      During my legal career neither I nor any attorney associated with me has been sanctioned on the basis of a legal argument I made in a brief or in argument to the court. Nor have I ever been sanctioned for any motion that I have signed.

5.      While serving as Legislative Chair of the Texas Trial Lawyers Association in 1995, I was actively involved in support of Senate Bill 31, sponsored by Sen. Eddie Lucio, which imposed much more stringent standards for regulating frivolous lawsuits in Texas state courts. I am aware of the standards regarding the filing of frivolous pleadings in federal and state courts.

6.      Shortly before the February 14, 2002, deadline for filing claims, I spoke with Will Pierson, counsel for Brown Water Towing. I advised Mr. Pierson that I had planned on filing all of my clients' claims jointly. I advised him that I would provide him with an advance draft of our filing for his information. During our conversation Mr. Pierson, who already knew that I represented clients with economic damages claims, stated that it was his intention to make his client's insurance proceeds available to all claimants in mediation which he hoped could occur in May or June, 2002. He expressed concern that the insurance policy limits for Brown Water Towing were being diminished by costs of defense and that he wanted to preserve as much of the policy proceeds as he could. Mr. Pierson stated that he wanted to avoid litigation. Mr. Pierson made it quite clear that our clients were welcome to participate in mediation and he did not care how the proceeds were allocated among the various claimants, including my clients. I reported our conversation to my partner, Mike Davis, who was working with me on the matter.

7.     I spoke with Mr. Pierson again around April 3, 2002, a couple of days prior to the parties' joint discovery planning teleconference.  During that conversation, Mr. Pierson again emphasized his concerns that defense costs would diminish the available fund and he reiterated his comments about getting all of the claimants to mediation as soon as possible.

8.     On April 5, 2002, the day of the parties' joint discovery planning teleconference, I received Brown Water's motion for summary judgment which had been sent to us via mail.  This was the first indication I had that Brown Water was contemplating a challenge to our clients' claims.

9.     Following the teleconference, I discussed the unexpected motion for summary judgment with Mike Davis.  We determined that we were going to need additional time to respond.  At that point we had about 10 business days to get a reply pulled together.  We were particularly concerned about the fact that we represented in excess of 60 claimants and the time and effort required if we had to obtain an affidavit from each.  We were also concerned about locating various individuals with knowledge of the disruption to water and utility services and getting their testimony within the limited time constraints.  Some of these individuals were employees of parties with potentially adverse interests to our clients.  We were also concerned about the various types of economic losses among our clients.  There was a question of whether we still represented any fishermen who contacted us.  If we represented the fishermen, the arguments for our fishermen clients might differ from those we would be making for our non-fishermen clients.  This needed to be investigated and evaluated.

10.    We began gathering the authorities cited by Brown Water Towing in their motion.  We also began trying to track down individuals on various issues that we felt were relevant to the summary judgment issues.  We quickly determined that we would not be able to devote the necessary manpower to gather and check client information and also conduct the research and writing necessary for the brief.  On April 8, 2002, I contacted Doug Alexander with the Scott, Douglass & McConnico law firm in Austin about taking over the research and briefing activity while we concentrated on gathering client information and obtaining evidence to support our summary judgment record.

11.    On April 11, 2002, Mike Davis, Doug Alexander and I had a discussion regarding the remaining time before our brief was due and the additional work that was required.  All of us

agreed that we would need to seek an extension from the Court in order obtain all of the necessary affidavits and pursue the necessary legal research in support of our position.

12.    Mike Davis contacted Will Pierson to see if Mr. Pierson would agree to an extension. Mr. Davis met with me after his conversation with Mr. Pierson. Mr. Davis stated that he and Mr. Pierson discussed our need for additional time and why. Mr. Davis reiterated Mr. Pierson's earlier concerns about defense costs reducing the insurance proceeds. Mr. Davis conveyed to me that he and Mr. Pierson discussed an extension beyond the mediation date but that Mr. Pierson could not agree. Mr. Davis advised me that Mr. Pierson would be stating in his mediation request and would likely advise the court that he believed that everybody should be at mediation so that there was an opportunity to get the entire case resolved. At that point we drafted the motion for extension based upon our assessment of the situation. We would have asked for an extension of time irrespective of the upcoming mediation. We filed a motion for extension of time because it was our collective judgment that we did not have sufficient time to research and prepare an appropriate response and to gather the evidence necessary to support our clients' position. We requested time that we felt was appropriate to our needs and was consistent with our prior discussions with Mr. Pierson.

13.    I, along with Mr. Davis and Mr. Alexander, attended the status conference with the Court on April 22, 2002. While I do not have access to the record, it is my recollection that Mr. Pierson expressly stated that he did not oppose some additional time being given to the Economic Damage Claimants to reply to his Motion for Summary Judgment. I do not recall hearing any objections at the status hearing or at any prior time to our request for an extension.

14.    I worked very closely with Mr. Alexander in the preparation of the brief in opposition to the motions for summary judgment. On several occasions, we reiterated our goal of presenting the Court with quality briefing in the time allocated by the Court. The brief went through numerous revisions and received virtually uninterrupted attention by Mr. Alexander, Mr. Davis or me from the time we joined forces until we filed the brief.

15.    In my opinion, Mr. Alexander's affidavit squarely addresses the Court's criticisms of our brief. I will add that I conducted parallel research to Mr. Alexander on the preemption arguments. Like Mr. Alexander, I never encountered the *Amtrak* decision and never saw a citation to it. Since becoming aware of the *Amtrak* case, I conducted additional research and found a district court opinion that I believe illuminates an even broader interpretation of *Yamaha*

than that asserted by the Economic Damage Claimants.  *In re Air Crash Off Point Mugu, California*, 145 F.Supp. 1156, 1165 (N.D. Cal. 2001). This litigation arose from the crash of Alaska Airlines Flight 261.  The defendants sought to apply state law under *Yamaha* while the plaintiffs sought to have admiralty law apply.  The court held that admiralty law should apply but based its decision on an interpretation of Yamaha that "plaintiffs may choose a state remedy, but they are also free to choose a federal one if they wish". *Id.*  The court held that *Yamaha* did not compel application of state law where admiralty jurisdiction exists but afforded the plaintiffs the option of *choosing* state law or admiralty law. *Id.*  The interpretation of *Yamaha* by the Court of the Northern District of California goes well beyond our argument that state law should apply.

16.    I recognize the Court now disagrees with our clients concerning the issues raised in the summary judgment motions.  I respectfully submit that the motion for extension of time and all of the arguments advanced on behalf of the Economic Damages Claimants were made with the utmost good faith, respect for the Court and the other parties and without any intent or purpose to mislead or deceive anyone.

17.    I have almost twenty years experience of practicing in many federal courts.  I take the responsibilities of being a lawyer very seriously.  I am familiar with the requirements of Fed. R. Civ. P. 11.  I respectfully submit that nothing I did was for an "improper purpose," the arguments I made "are warranted by existing law or by a nonfrivolous argument for the extension, modification, or reversal of existing law or the establishment of new law;" Fed. R. Civ. P. 11(b)(1)(2).

18.    In conclusion, I respectfully plead that nothing I did or did not do deserves the sanctions allowed by Rule 11.  I pray the Court not to impose such sanctions.

"Further affiant sayeth not."

_____
Michael L. Slack

SIGNED  BEFORE ME this 16th day of May, 2002.

ROSIE LACHICO
Notary Public
STATE OF TEXAS
My Comm. Exp. 09 - 28  2005

_____
NOTARY PUBLIC, STATE OF TEXAS

IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF TEXAS
BROWNSVILLE DIVISION

| | | |
|---|---|---|
| IN RE THE COMPLAINT AND PETITION FOR BROWN WATER TOWING, I, INC., AS OWNER AND BROWN WATER MARINE SERVICE, INC., AS BAREBOAT CHARTERERS, OF THE BROWN WATER V, ITS ENGINES, TACKLE, ETC., IN A CAUSE OF EXONERATION FROM OR LIMITATION OF LIABILITY | § § § § § § § § § § § | C.A. NO. B-01-157 (Subject to Rule 9(h) of the Federal Rules of Civil Procedure) Admiralty |
| | § | Consolidated With |
| IN RE THE COMPLAINT AND PETITION OF AMERICAN COMMERCIAL LINES LLC, AS OWNER, and AMERICAN/ COMMERCIAL BARGE LINES, LLC, AS CHARTERER, OF THE BARGES NM-315, VLB-9182, ACL-9933B, VLB-9173, IN A CAUSE OF EXONERATION FROM OR LIMITATION OF LIABILITY | § § § § § § § § § § § | C.A. NO. B-02-004 Admiralty |

## AFFIDAVIT OF DOUGLAS W. ALEXANDER

THE STATE OF TEXAS    §

COUNTY OF TRAVIS    §

BEFORE ME, the undersigned authority, notary public in and for the State of Texas, appeared Douglas W. Alexander, known to me to be the person whose signature is affixed to this affidavit and who did state, on his oath, as follows:

1.    "My name is Douglas W. Alexander. I am over the age of 21, of sound mind, have never been convicted of any crime involving moral turpitude, and except for those matters specifically stated to be on information and belief, I have personal knowledge of the matters stated herein, all of which are true and correct.

334843

2.     "Although my name does not appear on the Economic Damage Claimants' Response to the Motions for Summary Judgment, I was the principal architect of the legal arguments appearing in the Response as well as the attorney principally responsible for drafting the Response. I accept personal responsibility for the preparation of the Response.

3.     "I am an attorney-at-law duly licensed to practice in the State of Texas, and a partner with the Austin law firm of Scott, Douglas & McConnico, L.L.P. I specialize in appellate practice, including the preparation of briefs in connection with dispositive motions in state and federal trial courts. I served as a law clerk to the Hon. John R. Brown, former Chief Judge of the United States Court of Appeals for the Fifth Circuit. I am board certified in Civil Appellate Law by the Texas Board of Legal Specialization, a former member of the Board's Civil Appellate Examination Commission, and a former member of the Appellate Section Council of the State Bar of Texas. I am an adjunct professor of Appellate Advocacy at the University of Texas School of Law and a frequent speaker at Continuing Legal Education programs on topics related to civil appellate practice.

4.     "In my twenty-plus years of practicing law, neither I nor any attorney with whom I have been associated has ever been sanctioned on the basis of a legal argument I asserted in a brief to a court. Neither I nor any attorney with whom I have been associated has ever been sanctioned for any legal work of any kind that I have been responsible for producing. And neither I nor any attorney with whom I have been associated has ever faced any motion for sanctions or, as here, a show cause order based on any legal work of any kind that I have been responsible for producing. Based on my background and experience, including my training with Judge Brown and my teaching of other lawyers and law students, I would never knowingly mislead a court nor assert a legal argument that I perceived to be groundless. I meant no disrespect to this Honorable

2

334843

Court in preparing the Response to the Motions for Summary Judgment here. I feel constrained to address this Court's criticisms of the arguments I made appearing in that Response.

5.   "The principal legal argument appearing in the Response is that state law, not federal maritime law, should apply in determining the remedies available to the Economic Damage Claimants. I believed, and continue to believe, that this assertion is warranted by existing law or at least by a good faith argument for the extension, modification or reversal of existing law.[1]

6.   "In developing the argument that state law should apply to the claims of the Economic Damage Claimants, I researched the case law pertinent to that point. In the course of that research, I found three, and only three, federal circuit court decisions in this country directly addressing the precise issue presented here—whether the bar to the recovery of purely economic damages under *Robins Dry Dock* preempts contrary state law that would permit a recovery. I addressed all three of these decisions in the Response—*State of Louisiana ex rel. Guste v. M/V TESTBANK*, 752 F.2d 1019 (5th Cir. 1985) (*en banc*), *cert. denied*, 477 U.S. 903 (1986); *Ballard Shipping Co. v. Beach Shellfish*, 32 F.3d 623 (1st Cir. 1994); and *In Re Exxon Valdez*, 270 F.3d 1215 (9th Cir. 2001).

---

[1] I note parenthetically at the outset that the Wrongful Death Claimants in this case have specifically pleaded for the recovery of damages under Texas state law. *See, e.g.,* Rivas Proof of Claim at 2; Welch Proof of Claim at 2 (pleading for the recovery of "damages under the Survival Statute and the Wrongful Death Statutes of Texas"). I make this point not to seek safety in numbers but rather to demonstrate that the assertion that state law is applicable in this case is not merely an invention by the Economic Damage Claimants.

7.     "I conceded at the outset of the legal argument concerning preemption that the Fifth Circuit's 1985 decision in *TESTBANK* specifically declined to permit recovery on state law grounds.  Response at 13 ("In *TESTBANK*, the Fifth Circuit declined to permit recovery on state law grounds, essentially concluding that federal admiralty law automatically applies when admiralty jurisdiction attaches: 'It is well settled that the invocation of federal admiralty jurisdiction results in the application of federal admiralty law rather than state law.' *TESTBANK*, 752 F.2d at 1031.").  I viewed this as a candid concession of contrary authority necessary to develop a good faith argument.  I then proceeded, however, to argue that the Fifth Circuit today would reach a different conclusion, based upon later decided decisions by the United States Supreme Court. *Id.* Those decisions effected what legal commentators have agreed to be a substantial shift in the Court's approach to preemption, a shift in favor of applying state law.  *See* Response at 7-10.

8.     "I then discussed the two other more recent federal circuit court decisions that have addressed the precise issue presented here—*Ballard Shipping*, decided in 1994, and *Exxon Valdez*, decided in 2001.  Both of those decisions ultimately concluded that, under the facts of those cases, the *Robins Dry Dock* economic loss rule would not preempt contrary state law that would permit a recovery.  I pointed out that both of these courts employed a three-prong analysis in determining whether federal maritime law preempted contrary state law.  Response at 18-19.  And I then systematically addressed each of those three prongs in the context of the case before the Court here.  *Id.* at 19-22.

4

9.    "As I read this Court's opinion, it does not find fault with the two key predicate arguments made by the Economic Damage Claimants with respect to the preemption issue. First, this Court agrees that these claimants in fact suffered economic losses as a result of this accident. Opinion at 8 ("[T]here is no doubt that the Economic Damage Claimants suffered economic losses as a result of the collapse of a section of the Causeway..."). Second, the Court does not appear to take issue with the assertion that were state law to apply here, it would permit the Economic Damage Claimants a recovery. *See* Opinion at 7-8.

10.    "Where this Court takes issue is with the Economic Damage Claimants' argument that state law, not federal law, applies in determining whether these claimants are afforded a recovery in this case. The Court levels two specific criticisms, each of which is addressed below. First, the Court criticizes the Economic Damage Claimants for "fail[ing] to fully discuss the rationale for the holdings of *Ballard Shipping* and *Exxon Valdez*." Opinion at 9. More specifically, the Court faults these claimants for "fail[ing] to state the nature of the state statutes in either *Ballard Shipping* or *Exxon Valdez*, or to mention the federal statute [the Oil Pollution Act]." *Id.* at 7, n.7. This criticism is apt as far as it goes—the Economic Damage Claimants did not mention any of these statutes. But the omission was not intended to mislead the Court.

11.    "My argument accurately articulated the third prong of the preemption analysis—the one to which this particular criticism by the Court is directed—and then developed what I believed to be a cogent argument to satisfy that prong. The prong in question is whether the contrary state law "interferes with the proper harmony and

5

334843

uniformity" of the general maritime law. *Southern Pacific v. Jensen*, 244 U.S. 205, 216, 37 S.Ct. 524, 529, 61 L.Ed. 290 (1927) (quoted in Response at 21). As I pointed out, "[b]oth the First and Ninth Circuits agreed that '[t]he Supreme Court has adopted a balancing test that weighs state and federal interests on a case-by-case basis.' *Exxon Valdez*, 270 F.3d at 1251; *Ballard Shipping*, 32 F.3d at 628." Response at 21. Since these circuits squarely held that the balancing analysis is to be performed on a "*case-by-case* basis," I proceeded to focus on the facts of *our case*. This is a legitimate good faith approach to the key issue in this case. Although the approach was obviously not ultimately persuasive to this Court, I respectfully submit that it does not render the argument sanctionable.

12. "The second specific criticism leveled by this Court at the Economic Damage Claimants' preemption argument is that these claimants "failed to note the contrary holding of *In re Amtrack* at all." Opinion at 9 (citing *In re Amtrak "Sunset Limited" Train Crash in Bayou Canot, Alabama, on September 22, 1993*, 121 F.3d 1421 (11th Cir. 1997)). I did not cite this authority in the Response first and foremost because I never uncovered this decision in the course of my research. In my defense, it is worth noting that neither of the motions for summary judgment cited this authority either. And, moreover, I do not view this case as a "contrary authority" in any event. First, it is an Eleventh Circuit, not a Fifth Circuit, case. Second, and more fundamentally, unlike *Ballard Shipping* and *Exxon Valdez*, *In re Amtrak* never addresses the *Robins Dry Dock* economic loss rule *at all*. At most, that decision demonstrates that in the case specific context of that case, involving an entirely different legal issue (the applicability of a state

6

wrongful death statute), the court determined through its balancing analysis that state law should yield to federal maritime law.

13.    "It is not clear that the Fifth Circuit would necessarily reach the same result, precluding a recovery under state law for the wrongful death of a non-seafarer arising from an allision occurring in state territorial waters. *See Kelly v. Bass Enterprises Production Co.*, 17 F. Supp. 2d 591, 597 (E.D. La. 1998) ("Since the decedent was not a seafarer and his death occurred in the territorial waters of Louisiana, Louisiana law applies.") (citing *Yamaha Motor Corp. v. Calhoun*, 516 U.S. 199, 116 S.Ct. 619, 133 L.Ed. 2d 578 (1996) and *American Dredging Co. v. Miller*, 510 U.S. 443, 114 S.Ct. 981, 127 L.Ed. 2d 285 (1994)).    More particularly, it is unclear that the Fifth Circuit would reach the same result if confronted with the Texas wrongful death statute, given that the *In re Amtrak* decision, as part of its balancing analysis, stressed that the Alabama statute before it was "unique." *In re Amtrak*, 121 F.3d at 1425 ("Here, we have before us a state statute that is unique; the Alabama wrongful death statute is the only one of all the 50 states that provides for punitive damages only, *see Black Belt Wood Co. v. Sessions*, 514 So.2d 1249, 1262 (Ala. 1986) (Maddox, J., concurring) (observing that Alabama is the only state in which wrongful death damages are purely punitive), and allows for the recovery of punitive damages on a showing of mere negligence...").    Finally, it is not clear that *In re Amtrak* would compel the Fifth Circuit to reach a result different from that argued by the Economic Damages Claimants here, given that *In re Amtrak* never touched on the economic loss issue of *Robins Dry Dock*.    For the foregoing reasons, I respectfully

7

submit that the Response's failure to address the *In re Amtrak* case cannot properly give rise to the imposition of sanctions.

14.    "The final criticism leveled by the Court at the Response is aimed at the Economic Damage Claimants' alternative argument—that even if the economic loss rule in *TESTBANK* were to control here, the Economic Damage Claimants are entitled to proceed with their claims. It is evident from the Court's opinion, however, that this Court misperceives the precise nature of this argument: "[I]n the Response, the attorney argues that these Claimants have a proprietary interest in the Queen Isabella Causeway [Dkt. 170 at 24-25]. This argument does not appear to have any grounds in fact or law." Opinion at 9. In fact, the precise argument is that the Economic Damage Claimants "have a proprietary interest in the *continuous operation* of the Causeway." Response at 22-23 (emphasis added). This distinction is material. And the argument is supported by a decision which this Court does not address in its opinion—*Sekco Energy, Inc. v. M/V Margaret Chouest*, 820 F. Supp. 1008 (E.D. La. 1993), in which the court held that *TESTBANK* did not preclude the owner of a drilling platform from recovering its economic damages despite the fact that it was stipulated that the plaintiff's loss did not result from any physical damage to its drilling platform. This argument is therefore also a good faith argument warranted by existing law and should not properly give rise to the imposition of sanctions.

15.    "In conclusion, while it is apparent that the Economic Damage Claimants and this Court disagree on the merits with respect to the Court's resolution of the summary judgment motions, I respectfully submit that the arguments I developed in the

Response do not warrant the imposition of Rule 11 sanctions.

"Further affiant sayeth not."

_Douglas W. Alexander_
Douglas W. Alexander

SIGNED this _13th_ day of _May_, 2002.

_Kennon Welch_
NOTARY PUBLIC IN AND FOR
THE STATE OF TEXAS

KENNON WELCH
Notary Public, State of Texas
My Commission Expires
JANUARY 21, 2003

9

IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF TEXAS
BROWNSVILLE DIVISION

| | | |
|---|---|---|
| IN RE THE COMPLAINT AND | § | C.A. NO. B-01-157 |
| PETITION FOR BROWN WATER | § | (Subject to Rule 9(h) |
| TOWING, I, INC., AS OWNER AND | § | of the federal rules of |
| BROWN WATER MARINE SERVICE, | § | Civil Procedure) |
| INC., AS BAREBOAT CHARTERERS, | § | Admiralty |
| OF THE BROWN WATER V, ITS | § | |
| ENGINES, TACKLE, ETC., IN A | § | |
| CAUSE OF EXONERATION FROM | § | |
| OR LIMITATION OF LIABILITY | § | Consolidated With |
| IN RE THE COMPLAINT AND | § | |
| PETITION OF AMERICAN | § | |
| COMMERCIAL LINES LLC, AS | § | C.A. NO. B-02-004 |
| OWNER and AMERICAN COMMERCIAL | § | Admiralty |
| BARGE LINES, LLC, AS CHARTERER | § | |
| OF THE BARGES NM-315, VLB-9182, | § | |
| ACL-9933B, VLB-9173, IN A CAUSE OF | § | |
| EXONERATION FROM OR LIMITATION | § | |
| OF LIABILITY | | |

## AFFIDAVIT OF MIKE DAVIS

| | |
|---|---|
| THE STATE OF TEXAS | § |
| | § |
| COUNTY OF HARRIS | § |

BEFORE ME, the undersigned authority, on this day personally appeared Mike Davis who, after being duly sworn on his oath, stated as follows:

1.    "My name is Mike Davis.  I am over the age of 21, of sound mind, have never been convicted of any crime involving moral turpitude, and except for those matters specifically stated to be on information and belief, I have personal knowledge of the matters stated herein, all of which are true and correct.

2.    I spoke with Will Pierson, counsel for Brown Water Towing, and told him that we thought we may need to take depositions or secure some affidavits from third parties to further our arguments that our clients had a proprietary interest that was injured.  I also explained that

15109.1

we needed time to evaluate our clients circumstances that might allow us to distinguish TESTBANK. I told him that it would take some time if we had to obtain 60+ client affidavits.

3.       We discussed the problem of Brown Water's liability insurance policy being an eroding policy. I told him I did not want to take depositions prior to mediation if it was going to reduce the insurance proceeds available to settle the cases. I asked him to agree to an extension until after the mediation. Mr. Pierson said that he could not agree at that time.

4.       I asked him if he would agree to a shorter extension, and he said that he could not do so but he suspected that the judge would probably grant some extension.

5.       In talking about the mediation and our extension request, Mr. Pierson said that he had said in his mediation request and would probably tell the court at the pre-trial conference that he believed that everybody should be at mediation so that there was a chance to get the entire case resolved."

Further Affiant sayeth not.

MIKE DAVIS, Affiant

SWORN AND SUBSCRIBED TO BEFORE ME on this the _11c_ th day of _May_, 2002, to certify which, witness my hand and seal of office.

LAUREL A. RYBARSKI
Notary Public, State of Texas
My Commission Expires
FEB. 3, 2005

Notary Public, State of Texas

15109.1