*184*

IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF TEXAS
BROWNSVILLE DIVISION

United States District Court
Southern District of Texas
FILED

MAY 2 8 2002

Michael N. Milby
Clerk of Court

| | | |
|---|---|---|
| IN RE THE COMPLAINT AND PETITION OF BROWN WATER TOWING I, INC., AS OWNER, AND BROWN WATER MARINE SERVICE, INC., AS BAREBOAT CHARTERER, OF THE BROWN WATER V, ITS ENGINES, TACKLE, ETC. IN A CAUSE OF EXONERATION FROM OR LIMITATION OF LIABILITY | § § § § § § § § § § § | C. A. No. B-01-157 Admiralty<br><br><br><br>Consolidated with |
| IN RE THE COMPLAINT AND PETITION OF AMERICAN COMMERCIAL LINES LLC AS OWNER, AND, and AMERICAN COMMERCIAL BARGE LINES, LLC, AS CHARTERER OF THE BARGES NM-315,VLB-9182,ACL-9933B, VLB-9173, IN A CAUSE OF EXONERATION FROM OR LIMITATION OF LIABILITY | § § § § § § § § § § | C. A. No. B-02-004 Admiralty |

PETITIONERS BROWN WATER MARINE SERVICE, INC.'S AND BROWN WATER
TOWING I, INC.'S MOTION FOR SUMMARY JUDGMENT ON
CLAIMS ASSERTED BY CERTAIN CLAIMANTS WHO
SUSTAINED NO PHYSICAL INJURY OR IMPACT

TO THE HONORABLE JUDGE OF THIS COURT:

Pursuant to Rule 56 of the Federal Rules of Civil Procedure, Petitioners, Brown Water

Towing I, Inc. and Brown Water Marine Service, Inc. (collectively as "Brown Water"), file this their

Motion for Summary Judgment on the claims asserted by certain claimants who sustained no

significant physical injury or impact, and show as follows:

## I. INTRODUCTION

1. This action was brought against Brown Water by numerous claimants following the

partial collapse of the Queen Isabella Causeway on September 15, 2001.

2. The claims that are the subject of this Motion for Summary Judgment were brought against Brown Water by Rolando Lee Moya, Alberta Leroy Moya, Antonio Salinas, Jr., and Roberto Espericueta (collectively as "Claimants") and were filed as a single Proof of Claim and Answer on or about March 13, 2002.

3. These Claimants allege that they are entitled to recover damages for emotional injuries from Brown Water that they allegedly sustained after they witnessed the partial collapse of the causeway, witnessed automobiles fall into the water from the partially collapsed causeway, and participated in efforts to rescue survivors from the water.

4. Brown Water files this Motion for Summary Judgment on Claimants' action because their claims for purely emotional injuries, unaccompanied by significant physical injury or impact, are not cognizable under the general maritime law. Brown Water asserts that there is no evidence to support the Claimants' actions.

## II. STANDARD OF REVIEW

5. Summary judgment is proper if the pleadings, depositions, answers to interrogatories, and/or admissions on file, together with any affidavits filed in support of the motion, show that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law. *See Racal Survey U.S.A., Inc. v. M/V Count Fleet*, 231 F.3d 183, 186-87 (5th Cir. 2000); *see also* FED. R. CIV. P. 56(c).

6. The summary judgment evidence is reviewed in the light most favorable to the non-movant. *See id.* at 187. If the moving party meets its initial burden of showing that there is no genuine issue, then the burden shifts to the non-movant to set forth specific facts showing the existence of a genuine issue. *See id.*; *see also* FED. R. CIV. P. 56(e). The non-movant cannot satisfy his summary judgment burden with conclusory allegations, unsubstantiated assertions, or only a

scintilla of evidence. *See id.* If the non-movant fails to respond, then summary judgment, if appropriate, shall be entered against that party. *See id.*; *see also* FED. R. CIV. P. 56(e).

### III. ARGUMENT & AUTHORITIES

**No Evidence to Support Claimants' Action**

7. There is no evidence to support Claimants' action and there is no genuine issue as to any material fact in this case relative to Claimants' action. *See Celotex Corp. v. Catrett*, 477 U.S. 317, 322-23, 327 (1986); *M/V Count Fleet*, 231 F.3d at 186-87. Therefore, Brown Water is entitled to judgment as a matter of law as to Claimants' action. *See id.*

8. In Claimants' action, they are seeking to recover damages for emotional injuries allegedly sustained as a result of witnessing the partial collapse of the causeway, witnessing several automobiles fall into the water after the collapse, and participating in efforts to rescue survivors.

9. However, because they are unable to produce any evidence nor otherwise establish that they sustained any significant physical injury or impact, under the general maritime law, the claims asserted by Claimants for purely emotional injuries are not cognizable against Brown Water.

**Physical Injury or Impact Rule**

10. The following three Fifth Circuit decisions support Brown Water's Motion for Summary Judgment on Claimants' action: *Gough v. Natural Gas Pipeline Co. of America*, 996 F.2d 763 (5th Cir. 1993); *Ainsworth v. Penrod Drilling Corp.*, 972 F.2d 546 (5th Cir. 1992); *Plaisance v. Texaco, Inc.*, 966 F.2d 166 (5th Cir. 1992) (*en banc*).

11. In *Plaisance*, the plaintiff, a tug boat captain, filed an action against his employer after he witnessed the barge his tug was towing strike an underwater gas pipeline and cause an explosion and fire. *See Plaisance*, 966 F.2d at 167. The fire spread to the rear of the barge and another tug that

was tied to the rear of the barge. *See id.* The plaintiff backed his tug to the barge and the other tug and rescued the respective crews. *See id.* The fire was subsequently extinguished and no one was injured. *See id.* Further, the explosion did not damage the plaintiff's tug and the fire did not spread to it from the barge or other tug. *See id.*

12. The plaintiff nevertheless received psychiatric treatment and was diagnosed with post-traumatic stress disorder because of his belief that he or someone else could have been killed in the explosion and fire. *See Plaisance*, 966 F.2d at 168. After he filed his suit to recover damages for his emotional injuries, the district court granted the employer's summary judgment. *See id.*

13. On appeal, the Fifth Circuit, sitting *en banc*, re-affirmed its adoption of the "physical injury or impact rule." *See id.* at 168. This rule permits recovery for emotional injuries provided there is some physical contact. *See id.*

14. However, because the plaintiff in *Plaisance* sustained no physical injury nor physical impact, the Fifth Circuit held that he could not maintain his action against his employer for his purely emotional injuries. *See id.* at 168-69.

15. The Court reached the same result in *Ainsworth*. In *Ainsworth*, the plaintiff witnessed a helicopter crash and explode on the deck of a jack-up rig. *See* 972 F.2d at 547. At the time of the accident, the plaintiff and other crew members were in the rig's control room awaiting the helicopter's arrival so that it could transport them ashore after dropping off a new crew. *See id.*

16. Following the accident, the plaintiff brought an action alleging that as a result of the accident and the crew's attempt to rescue any survivors, he sustained damages for "fright, fear, and mental anguish." *See id.* He also alleged that following the accident, he had thrown up, suffered

headaches, and pulled a shoulder muscle. *See id.* The district court granted summary judgment and dismissed the complaint with prejudice. *See id.*

17. On appeal, the plaintiff attempted to fit his claim under the physical injury or impact rule, which permits recovery if the emotional injury results from some physical contact. *See Ainsworth*, 972 F.2d at 547. The Court noted that the record plainly established, however, that, in witnessing the accident and in participating in the rescue efforts, the plaintiff suffered no physical contact or impact. *See id.* Moreover, any physical injuries that the plaintiff may have experienced, for example, an upset stomach, headaches, or a pulled muscle, were "trivial" and will not support recovery. *See id.* Accordingly, the Court affirmed the district court's summary judgment. *See id.* at 547-48.

18. Lastly, in *Gough*, the Court explained and again re-affirmed the physical injury or impact rule. *See* 996 F.2d at 765. The Court noted that "beyond question," emotional injuries will be compensated when plaintiffs satisfy the "physical injury or impact rule." *See id.* However, "either a physical injury or physical impact has traditionally been required." *See id.*

19. The Court stated that the physical impact or injury rule is an arbitrarily stated rule with important functions. *See id.* One purpose is "to provide courts with an objective means of ensuring that the alleged mental injury is not feigned." *See id.*

20. Second, a more important purpose of the rule is to provide a principled basis for limiting liability. *See id.* Traumatic events may cause foreseeable emotional distress through a broad range of time and space. *See id.* The Court observed that jurisdictions that apply expansive recovery rules such as the "bystander theory" must depend upon proximate cause to define the boundary of liability. *See id.* Rejecting such theories, the Court stated "[w]e are wary of such ad hoc

adjudication and prefer predictable rules for the determination of liability." *See Gough*, 996 F.2d

at 766. The bright line impact or injury rule performs such a function. *See id.*; *see also Anselmi v.*

*Penrod Drilling Corp.*, 813 F.Supp. 436, 439-41 (E.D. La. 1993); *Grace v. Keystone Shipping Co.*,

805 F.Supp. 436, 444-45 (E.D. Tex. 1992).

21. In the case at bar, the Claimants are complaining of purely emotional injuries or

insignificant physical injuries. Interpreted liberally, they allege in their complaint that they sustained

these emotional injuries from witnessing a portion of the causeway collapse, witnessing automobiles

fall into the water from the collapsed causeway, and from participating in efforts to rescue any

survivors from the water. However, the Claimants are unable to produce any evidence nor otherwise

establish that they sustained any significant physical injury or impact to either themselves or their

property.

22. In their answers to Brown Water's interrogatories, the Claimants each set forth the same

version of events following the partial collapse of the causeway. True and correct copies of relevant

portions of the Claimants' answers to interrogatories are attached hereto and adopted and

incorporated herein as if fully set forth. *See* **Exhibits A-1, A-2, A-3,** and **A-4.** In their respective

answers to Interrogatory Number 7, each Claimant states that he "witnessed many truly horrifying

things." *See* **Exhibits A-1, A-2, A-3,** and **A-4.** Claimants also state that they are experiencing

mental anguish and have been diagnosed with Post Traumatic Stress Syndrome. *See* **Exhibits A-1,**

**A-2, A-3,** and **A-4.** However, there being no evidence of physical impact or significant injury to the

Claimants caused by the partial collapse of the causeway, claims for these kind of purely emotional

injuries are not cognizable under the general maritime law. *See Gough*, 996 F.2d at 765-66.

23. In their answers to Interrogatory Number 7, Claimants state that as they approached the causeway after the collapse, their boat was rocked violently, which resulted in the Claimants feeling a "physical impact" to their "arms, knees, back, groin, stomach and shoulders." *See* **Exhibits A-1, A-2, A-3, and A-4**. Claimants also state that they used flares to get the attention of drivers on the causeway and that by handling the flares they received burns and scarring from sparks from the flares. *See* **Exhibits A-1, A-2, A-3, and A-4**. Lastly, Claimants state that they received cuts and bruises as a result of their efforts in assisting EMS personnel. *See* **Exhibits A-1, A-2, A-3, and A-4**.

24. Significantly, however, it appears that all the above injuries were sufficiently minor that they required no medical treatment. As indicated in Claimants' answers to Interrogatory number 7, the only treatment they received for their "injuries" was from a psychiatrist and spiritual counseling from a Reverend from a church in Port Isabel. *See* **Exhibits A-1, A-2, A-3, and A-4**. There is no evidence that Claimants received any medical treatment for any physical injuries. Thus, it is clear that the Claimants sustained no significant physical injury at impact.

25. The Claimants' allegation that their boat "rocked violently" or that they sustained minor injuries, are merely efforts to evade the clearly applicable law. The alleged injuries are not significant enough to support a claim against Brown Water under the general maritime law. Allegations of similar physical impact or injuries have been previously rejected and found to be insufficient to support a claim for emotional injuries under the general maritime law. *See Ainsworth*, 972 F.2d at 547.

26. As noted above, in *Ainsworth*, the plaintiff witnessed a helicopter crash and explode on the deck of a jack-up rig. *See* 972 F.2d at 547. At the time of the accident, the plaintiff and other crew members were in the rig's control room awaiting the helicopter's arrival so that it could

transport them ashore after dropping off a new crew. *See id.* The plaintiff brought an action alleging that as a result of the accident and the crew's attempt to rescue survivors, he sustained damages for "fright, fear, and mental anguish." *See id.* He also alleged that following the accident, he had thrown up, suffered headaches, and pulled a shoulder muscle. *See id.*

27. The district court granted summary judgment and dismissed the plaintiff's complaint with prejudice. *See id.* On appeal, the plaintiff attempted to fit his claim under the physical injury or impact rule, which permits recovery if the emotional injury results from some physical contact. *See Ainsworth*, 972 F.2d at 547. The Court noted that any physical injuries that the plaintiff may have experienced, for example, an upset stomach, headaches, or a pulled muscle, were "trivial" and will not support recovery. *See id.* Thus, the Fifth Circuit Court of Appeals affirmed the district court's summary judgment. *See id.* at 547-48.

28. Likewise, in this case, Claimants' physical injuries for cuts, bruises and minor burns from flares that may have resulted from their efforts to rescue survivors and *not* from the partial collapse of the causeway are not significant enough to justify a recovery. *See Ainsworth*, 972 F.2d at 547. As indicated above, apparently, no medical treatment for any physical injuries was rendered to these Claimants.

29. Further, in their responses to Brown Water's request for production, Claimants provided copies of written statements they each provided to the Texas Department of Public Safety–Texas Ranger Division. True and correct copies of the respective statements are attached and incorporated herein by reference as if fully set forth. The statements are identified herein as **Exhibits B-1, B-2, B-3 and B-4** and were provided by Claimants in response to Request for Production Number 8. These statements were taken from the Claimants on the morning of the partial collapse of the Queen

49477:1011957.1:052402                          -8-  .

Isabella Causeway–i.e., September 15, 2001–between approximately 8:00 a.m. and 9:15 a.m. *See* **Exhibits B-1, B-2, B-3,** and **B-4.**

30. In their respective statements, the Claimants detail their version of events following the partial collapse of the causeway, including their efforts to rescue victims from the water. *See* **Exhibits B-1, B-2, B-3,** and **B-4.** However, there is simply nothing contained in the statements to suggest that the Claimants suffered any physical injury or impact as a result of the partial collapse of the Queen Isabella Causeway. *See* **Exhibits B-1, B-2, B-3,** and **B-4.** Consequently, there is a complete absence of any factual basis to support Claimants' action against Brown Water under the general maritime law. *See Celotex Corp.*, 477 U.S. at 322-23, 327.

31. Accordingly, Brown Water is entitled to judgment as a matter of law on Claimants' action. *See Gough*, 996 F.2d at 547-48; *Ainsworth*, 972 F.2d at 765-66; *Plaisance*, 966 F.2d at 168-69. There is no evidence to support Claimants' action nor any genuine issue of any material fact in this case. *See Celotex Corp.*, 477 U.S. at 322-23, 327; *M/V Count Fleet*, 231 F.3d at 186-87; *see also* FED. R. CIV. P. 56(c).

## IV. CONCLUSION

32. This action was brought against Brown Water by several claimants following the partial collapse of the Queen Isabella Causeway. The claims brought against Brown Water by the Claimants identified in this Motion for Summary Judgment are for emotional injuries that the Claimants allegedly sustained after they witnessed the partial collapse of the causeway, witnessed automobiles falling into the water from the partially collapsed causeway, and from participating in efforts to rescue any survivors. However, because the Claimants are unable to produce any evidence nor otherwise establish that they sustained any significant physical injury or impact, their claims are

not cognizable against Brown Water under the general maritime law. Therefore, Brown Water is entitled to judgment as a matter of law on the claims alleged by Claimants.

WHEREFORE, PREMISES CONSIDERED, Brown Water prays that this Motion for Summary Judgment be set for hearing, and that upon full and final hearing, Summary Judgment be granted in Brown Water's favor and that the Claimants' action be dismissed with prejudice. Brown Water also seeks all other and further relief at law, in equity, or in admiralty, to which it may be justly entitled.

Respectfully submitted,

Will W. Pierson
State Bar No. 16003100
Federal ID No. 1931
1700 Wilson Plaza West
606 N. Carancahua
Corpus Christi, Texas 78476
(361) 884-8808
(361) 884-7261 (facsimile)
**ATTORNEY-IN-CHARGE
FOR PETITIONERS BROWN WATER
TOWING I, INC. AND BROWN WATER
MARINE SERVICE, INC.**

OF COUNSEL:

Keith N. Uhles
State Bar No. 20371100
Federal ID No. 1936
ROYSTON, RAYZOR, VICKERY & WILLIAMS, L.L.P.
55 Cove Circle
P. O. Box 3509
Brownsville, Texas 78523-3509
Telephone: (956) 542-4377
Telecopier: (956) 542-4370

49477:1011957.1:052402                    -10-

## CERTIFICATE OF SERVICE

I certify that the foregoing was mailed by certified mail return receipt requested to the below

listed persons on this **24TH** day of May, 2002.

## SERVICE LIST

Mr. Jack F. Gilbert
Office of the Attorney General
Transportation Division
Post Office Box 12548
Austin, Texas 78711-2548

Mr. James B. Manley
Attorneys at Law
3616 Preston Road
Pasadena, Texas 77505

Mr. Ray R. Marchan
WATTS & HEARD, L.L.P.
1926 E. Elizabeth
Brownsville, Texas 78520

John David Franz
The Law Offices of John David Franz
400 N. McColl
McAllen, Texas 78501

J. Chad Gauntt
Gauntt & Kruppstadt, L.L.P.
9004 Forest Crossing Drive, Suite C
The Woodlands, Texas 77381

William Q. McManus
Steve Q. McManus
McManus & Crane, L.L.P.
209 West Juan Linn
Post Office Box 2206
Victoria, Texas 77902-2206

Mr. Heriberto Medrano
Law Offices of Heriberto Medrano
1101 West Tyler
Harlingen, Texas 78550

Ms. Veronica Farias
Law Office of Veronica Farias
2854 Boca Chica Blvd.
Brownsville, Texas 78521

Mr. Raymond Thomas/Mr. Andres Gonzalez
Kittleman, Thomas, Ramirez & Gonzales
4900-B N. 10th Street
McAllen, Texas 78504

Thomas R. Ajamie
S. Mark Strawn, Esq.
Schirrmeister Ajamie, L.L.P.
Pennzoil Place-South Tower
711 Louisiana Street, Suite 2150
Houston, Texas 77002

Jim S. Hart
Nejd Yaziji
Williams Bailey Law Firm, L.L.P.
8441 Gulf Freeway, Suite 600
Houston, Texas 77017

Frank Enriquez
Robert Puente
Law Offices of Frank Enriquez
4200-B North Bicentennial
McAllen, Texas 78504

Richard Leo Harrell
The Edwards Law Firm, L.L.P.
802 N. Carancahua, Suite 1400 (78470)
P.O. Box 480
Corpus Christi, Texas 78403-0480

Julian Rodriguez, Jr.
Law Office of Julian Rodriguez, Jr.
100 W. Pecan
McAllen, Texas 78501

Thomas E. Quirk
Aaron & Quirk
901 N.E. Loop 410, Suite 903
San Antonio, Texas 78209-1307

Mr. J,A. Magallanes
Magallanes, Hinojosa & Mancias, P.C.
1713 Boca Cica
P.O. Box 4901
Brownsville, Texas 78520

Mr. Geoffrey Amsel
SBC Management Services
1010 N. St. Mary's, Room 1403
San Antonio, Texas 78215

Lamoine Holland
Law Office of W. Lamoine Holland
1920 Nacogdoches Rd., # 100
San Antonio, Texas 78209

Cliff Garrard
Independence Plumbers of South Texas
8602 Robindell Drive
Houston, Texas 77074

Robert and Virginia Fandrich
5101 Verdi Way
Stockton, CA 95207

John and Mary McCoy
514 Brookside Pass
Cedar Park, Texas 78613

Michael L. Slack
Michael Davis
SLACK & DAVIS, L.L.P.
Building Two, Suite 2110
8911 Capital of Texas Highway, North
Austin, Texas 78759

Mr. Les Cassidy
Woolsey & Cassidy, P.C.
1020 Bank of America
500 North Water Street
Corpus Christi, Texas 78471

Glenn G. Goodier
Jones, Walker, Waechter, Poitevent, Carrere
   & Denegre, L.L.P.
201 St. Charles Ave., 48th Floor
New Orleans, LA 70170-5100

Mark J. Spansel
Adams & Reese, L.L.P.
4500 One Shell Square
New Orleans, LA 70139

OF ROYSTON, RAYZOR, VICKERY & WILLIAMS, L.L.P.

**IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF TEXAS
BROWNSVILLE DIVISION**

| | | |
|---|---|---|
| **IN RE THE COMPLAINT AND** | § | |
| **PETITION OF BROWN WATER** | § | |
| **TOWING I, INC., AS OWNER, AND** | § | |
| **BROWN WATER MARINE SERVICE,** | § | |
| **INC., AS BAREBOAT CHARTERER,** | § | |
| **THE BROWN WATER V, ITS** | § | **CIVIL ACTION NO. B- 0l-157** |
| **ENGINES, TACKLE, ETC., IN A** | § | **ADMIRALTY** |
| **CAUSE OF EXONERATION FROM** | § | |
| **OR LIMITATION OF LIABILITY** | § | |
| | § | |
| | § | **CONSOLIDATED WITH** |
| | § | |
| **IN RE THE COMPLAINT AND** | § | |
| **PETITION OF AMERICAN** | § | |
| **COMMERCIAL LINES LLC AS** | § | |
| **OWNER, AND AMERICAN** | § | **CIVIL ACTION NO. B-02-004** |
| **COMMERCIAL BARGE LINES, LLC,** | § | **ADMIRALTY** |
| **AS CHARTERER OF THE BARGES** | § | |
| **NM-315, VLB-9182, ACL-9933B,** | § | |
| **VLB-9173, IN A CAUSE OF** | § | |
| **EXONERATION FROM OR** | § | |
| **LIMITATIONOF LIABILITY** | § | |

**CLAIMANT ROBERTO ESPERICUETA'S RESPONSES
TO PETITIONERS' MASTER SET OF INTERROGATORIES
AND MASTER SET OF REQUEST FOR PRODUCTION**

TO:    ALL ATORNEYS IN CHARGE FOR PETITIONERS

Comes now Roberto Espericueta, Claimant in the above-styled and numbered cause and submits his Responses to Petitioner's Master Set of Interrogatories and Petitioner's Master Set of Request for Production as provided by the Joint Discovery/Case Management Plan and the Federal Rules of Civil Procedure.



Respectfully submitted,

LAW OFFICES OF FRANK ENRIQUEZ
4200-B North Bicentennial
McAllen, Texas 78504
Tel.  (956)  686-5291
Fax  (956)  618-5064

By:    _____
Francisco J. Enriquez
State Bar No.: 06630500
Roberto D. Puente
State Bar No.: 24013359

ATTORNEY FOR CLAIMANT

**INTERROGATORY NO. 7:**
Please describe the injury you claim to have sustained as a result of the incident made the basis of this suit and give complete details of all medical care and treatment received since the date of the alleged accident involved in this case. In providing the details of medical care and treatment, identify each doctor or medical care provider, the date or dates of care and treatment, and the amounts paid for care and treatment.

**ANSWER:**     As a result of the collapse of the Port Isabel Causeway and because of our rescue efforts, we suffered physical injury in that we received cuts, bruises and burns. Initially, the barges and tug, when they first hit the Causeway, caused a first terrible collapse and a huge splash. When we heard the sound we were several hundred yards away. Within seconds a car came over the break in the causeway and tumbled into the Laguna Madre. We were shocked and horrified. However, we determined not to run but to try to rescue the passenger or passengers of that first vehicle. As we approached in the boat we saw other vehicles fall into the water, vehicle after vehicle. The noise and smell of gas was immense. As we approached the area where the vehicles fell, we heard another, second, blow to the causeway and more of the causeway fell, almost on top of our boat. We saw the causeway sway. The debris had it fallen on us would have sunk the boat and crushed us. As it was, it rocked the boat violently, tossing us around and almost overturning it. I felt the physical impact of this action and parts of the boat hit me around my arms, knees, back, groin, stomach and shoulders.

At first we thought that the magnitude of the break must have been visible to the cars traveling on the bridge. However, we saw more cars going off the bridge into the Laguna Madre. It became clear that they could not see the break because they did not step on the brakes until they were in the air and it was too late. That is, the brake lights did not go on until the vehicles were in the air. Also, although we were screaming to try to get the attention of the drivers before they went over, it became clear that they could not hear us. I guess the bridge was too high for our voices to carry. As we went toward the bridge we decided to try to get drivers attention by flashing our spotlight on the windshield of the oncoming cars. We also had flares in the boat and we lit and waved them. We had to pass the flares around because they gave off great amounts of sparks and they burned our skin. By passing them around we were able to avoid greater burns than we did suffer. Two of us suffered some scarring. Roland Moya has a scar on his arms. Robert Espericueta has a scar on his upper leg where sparks burned through his clothes and on his arms. Albert Leroy Moya has scars on his right arm.

Although we had cellular phones with us and immediately called 911 to report the catastrophe, still we were alone at the scene for almost an hour. During that time many terrible things happened and we were able to save three people from drowning and dying in the Laguna Madre. We saw floating pieces of vehicles being carried by the current. Sometimes the pieces would strike the boat and would knock us down. We saw the lights of the vehicles under water. We saw heavy electrical wires sticking into the water. We saw a man trapped in his vehicle waving at us for help, not speaking, just waving.

We also used great effort in the successful rescue of the people we did, and subsequently assisting the Coast Guard. We also participated in the rescue efforts of the Port Isabel Fire Department in their subsequent attempts to rescue their chief, one of the victims. We did so because our boat was the only one able and willing to get close

enough to the scene, because of its small size. Also, none of the other boats wanted to get near because there were exposed electrical wires from the bridge in the water and no one knew if they were live. We heard crackling sounds like electricity. But the Port Isabel Fire Department was desperate to get near to where their chief had fallen to try to save him. We were willing to go in since we had been there before and had not been electrocuted, so we volunteered to take the Fire Department divers to the scene. We were shocked to hear one of the scuba divers say they had found a body pinned behind the steering column of the vehicle. We also ferried victims to the Coast Guard boat and later to the Coast Guard station on the Island so they could receive medical attention. We assisted EMS on the island with two survivors, picking them up off the floor, holding IV bags and lighting. As can be expected from such efforts we suffered cuts and bruises. We experienced physical impact and injury from the collapse and our subsequent rescue efforts.

At the time we witnessed many truly horrifying things. We saw the bridge collapse. At first we thought that it was a bombing incident somehow connected to the World Trade tragedy just a few days earlier. We saw people die and terribly injured. We heard frightening noises. We were soaked and cold. We were, for what seemed like forever, alone. These and other things touched our soul and remain with us today and I have no doubt will remain with me for the rest of my life. Reverend Hyde from Port Isabel immediately counseled me, recognizing the anguish I suffered in witnessing these terrible things and in being in danger. I have had flashbacks and nightmares and mental anguish. Because of what I went through I have recently been diagnosed with Post Traumatic Stress Syndrome.

We are fortunate to be alive and we are fortunate and honored to have participated in the rescue effort.


I received treatment from the following:

Dr. Fructuoso Irigoyen
1400 S. 6th Street
McAllen, Texas 78501
(956) 631-0344
Psychiatrist
Date of treatment was April 30, 2002
Amount paid was $400.00

Reverend Stephen Hyde
Lighthouse Assembly of God Church
10 Port Road
Port Isabel, Texas 78578
(956) 943-5372
Spiritual and mental counseling
Date:  September 15, 2002

## VERIFICATION

THE STATE OF TEXAS          §
                            §
COUNTY OF HIDALGO           §

BEFORE ME, the undersigned authority, this day personally appeared Roberto Espericueta, known to me, after first being duly sworn under oath, stated that he has read and reviewed the foregoing; and that the facts stated in the answers are within his personal knowledge and are true and correct.

_____
Roberto Espericueta

SUBSCRIBED AND SWORN TO BEFORE ME this ___ day of May 2002 to certify which witness my hand and seal of office.

_____
Notary Public- State of Texas

# IN THE UNITED STATES DISTRICT COURT
## FOR THE SOUTHERN DISTRICT OF TEXAS
### BROWNSVILLE DIVISION

| | | |
|---|---|---|
| IN RE THE COMPLAINT AND PETITION OF BROWN WATER TOWING I, INC., AS OWNER, AND BROWN WATER MARINE SERVICE, INC., AS BAREBOAT CHARTERER, THE BROWN WATER V, ITS ENGINES, TACKLE, ETC., IN A CAUSE OF EXONERATION FROM OR LIMITATION OF LIABILITY | § § § § § § § § § § § | CIVIL ACTION NO. B- 0l-157 ADMIRALTY |
| | § | CONSOLIDATED WITH |
| IN RE THE COMPLAINT AND PETITION OF AMERICAN COMMERCIAL LINES LLC AS OWNER, AND AMERICAN COMMERCIAL BARGE LINES, LLC, AS CHARTERER OF THE BARGES NM-315, VLB-9182, ACL-9933B, VLB-9173, IN A CAUSE OF EXONERATION FROM OR LIMITATIONOF LIABILITY | § § § § § § § § § § § § | CIVIL ACTION NO. B-02-004 ADMIRALTY |

### CLAIMANT ROBERTO ESPERICUETA'S RESPONSES TO PETITIONERS' MASTER SET OF INTERROGATORIES AND MASTER SET OF REQUEST FOR PRODUCTION

TO:    ALL ATORNEYS IN CHARGE FOR PETITIONERS

Comes now Roberto Espericueta, Claimant in the above-styled and numbered cause and submits his Responses to Petitioner's Master Set of Interrogatories and Petitioner's Master Set of Request for Production as provided by the Joint Discovery/Case Management Plan and the Federal Rules of Civil Procedure.



Respectfully submitted,

LAW OFFICES OF FRANK ENRIQUEZ
4200-B North Bicentennial
McAllen, Texas 78504
Tel. (956) 686-5291
Fax (956) 618-5064

By: 

Francisco J. Enriquez
State Bar No.: 06630500
Roberto D. Puente
State Bar No.: 24013359

ATTORNEY FOR CLAIMANT

**REQUEST FOR PRODUCTION NO. 6:**
Please produce any and all photographs, videotapes or drawings representing the alleged injuries suffered by the decedent (for wrongful death claimants) or you (for personal injury claimants) after the alleged incident.

**RESPONSE:** None.

**REQUEST FOR PRODUCTION NO. 7:**
Please produce any and all photographs, videotapes or drawings representing the scene of the incident made the basis of this lawsuit, the equipment, or the materials involved.

**RESPONSE:** Will supplement according to the Federal Rules of Civil Procedure. Without waiving same, please see Exhibit "D".

**REQUEST FOR PRODUCTION NO. 8:**
Please produce any and all documents reflecting any law enforcement department or other governmental entity's investigation of, or participation in, the incident made the basis of this lawsuit.

**RESPONSE:** Please see Exhibit "E".

**REQUEST FOR PRODUCTION NO. 9:**
Please produce the decedent's (for wrongful death claimants) or you (for personal injury claimants) income tax returns for the years 1991 to present.

**RESPONSE:** Please see Exhibit "A".

**REQUEST FOR PRODUCTION NO. 10:**
Please produce the decedent's (for wrongful death claimants) or your (for personal injury claimants) earnings record for the years 1991 to present.

**RESPONSE:** Please see Exhibit "A".

**REQUEST FOR PRODUCTION NO. 11:**
Please produce the executed original Social Security Administration request for detailed earning information attached to these requests.

**RESPONSE:** Please see Exhibit "F".

Exhibit "E"

TEXAS DEPARTMENT OF PUBLIC SAFETY
TEXAS RANGER DIVISION

## VOLUNTARY STATEMENT

THE STATE OF TEXAS

COUNTY OF CAMERON

Before me the undersigned authority in and for said County and State, on this day, Saturday, September 15, 2001, personally appeared, Robert Espericueta, address is RR25, Box1170, Mission, TX 78572, phone number is 519-8382, who, after being by me duly sworn, deposes and says:

My name is Robert Espericueta and I am 22 years of age, my date of birth is April 21, 1979. My address is RR22, Box 170, Mission, TX, 78572. I am currently self-employed as a developer/contractor.

On this date, September 15, 2001, early in the morning hours, myself, two cousins, Rolanda Moya and Leroy Moya and Tony Salinas were in my boat in the Laguna Madre about 150 to 200 yards north of the Queen Isabella Causeway. I heard what sounded like thunder. At the time we were facing south. I looked in the direction that the noise came from. We saw a cloud of what looked like mist in the water. Through the mist I saw a beacon pointing up at the causeway. What seemed like immediately the tail lights of two cars cut through the mist and landed in the water.

We assumed there had been an accident on top of the causeway and the cars had gone over. We cut anchor and gunned the throttle and went to where the cars had hit the water.

As were were headed toward the spot I saw another car traveling on the causeway and without braking dived into the water. I couldn't tell what color the cars were or any type of description. The only thing I saw was headlights, taillights and splashes.

By this time we knew that the bridge had fallen. From the time we left the spot where we were fishing to the time we arrived where the accident occurred, five more cars must have gone in. As soon as we knew the causeway was out we began flashing spotlights and I set off three flares. Finally we got one driver's attention and he stopped before falling off the causeway.

We got to the place where everything has happened. I guess it only took us two or three minutes. As we were getting closer, we were yelling and shining the spotlight to get any response form anyone in the water.

This was when I saw the barge hit another pillar on the causeway. Being that we were so close I immediately turned the boat around and full throttled away about 70 yards away so that we wouldn't be hit. That is where we found the first of three people we eventually pulled out of the water.

The first person we pulled out was a female, late 20's, about 5'8", 120-130 pounds. She was conscious and very aware of what occurred. She didn't seem to have anything wrong with her and climbed onto my boat by herself. After we got her in the boat, we heard four other cries.

The closest one to us was a young man, in his early 20's, about 250 pounds. We pulled up next to him and proceeded to pull him into the boat. Once we shined the light on him we could see that he had trauma to his left forhead. We grabbed hold of him.

At this time I saw another man in the water. This man told us he was okay and that he just needed something so that he could stay afloat. He was an older man.

We made the decision to pull the first man into the boat, the one with the head trauma. He told us his name was Rene Mata. As we tried to pull him into the boat he screamed that he had severe pains to his back and to not pull hm into the boat.

We then maneuvered the boat to where the older man was still floating.

Rene kept yelling "Robin is in the water, Robin is in the water." We had seen a woman in the water yelling for help and waving her arms but she had floated away from us and had gone under the water and about ½ a second later she came back up but I lost track of her after that. There was another man in the water almost directly behind her in the water calling for help.

I then saw what appeared to be the undercarriage of a car floating north past us. There were tires and debris everywhere.

By this time we had two on the boat and Rene hanging on the outside of the boat. Since Rene asked not to be moved, we secured him by holding him.

We saw the Coast Guard lights coming and we stopped and waited. When the Coast Guard boat arrived we got the shock of our lives. They were passing cigarettes around and making light of the situation. When we asked them to help us, one of them cried out, "Everything is in the water now, what the hell do you want us to do?" At this point one of them pointed to another vessel on the other side of the accident sight and told his to go to that boat. I said that we knew where other people were in the water and one of the man's reply was, "We don't even have a fuckng spotlight."

I turned east working my way through the channel and made out way to another Coast Guard boat. The employees on the boat again were very rude and unattentive. The seemed too astonished to be of any help.

They unloaded the older man and the woman from our boat onto theirs, only to turn around and give them back to me along with a Goast Guard employee by the name of Cris about 5 minutes only.

I must say that Cris was very helpful and professional and took command. We reached the command center on the Island side. There we unloaded the man and woman again, keeping Rene in the water holding him by the side of my boat. We waited 20 minutes and the EMS ambulance got there, attended to Rene and the older man. Then they reloaded the older man who by this time on a stretcher and Rene onto my boat. A short time later they decided that since I was not EMS trained that I could not transport due to the liability issue and and Rene and the older man were returned to the shore to await transport by helicopter.

Once all of the people we took out of the water were tended to, we went back to the accident site below the causeway. By this time there was pandemonium. Cris was still with us and were returned him to his vessel.

A commander from the fire department were assigned to our boat along with a team of divers. At that point we explained where they were searching was the wrong spot. We pointed out the area where we had seen the survivors floating in the water. We were ignored. After that they took us to the pier and asked us to sit down. We were asked to step aside and let the other workers do their jobs.

I want to add that the channel lights and half of the causeway lights, the ones from Port Isabel to was east of the top of the causeway, were not functioning. We had been making comments all night about how with the causeway lights off the cars traveling the causeway looked as if they were floating. The red lights that mark the

channel and the two red lights hang from the causeway were not working ter. Where we tied up the boat it was very dark.

This is a true statement to be best of my knowledge and memory.

_____          _____
Taken by:                                   Signature of Witness

                                            Date:  9/15/01   Time:  8:14 AM


**SUBSCRIBED AND SWORN TO BEFORE ME THE UNDERSIGNED AUTHORITY,  ON THIS THE 15th DAY OF  September, 2001, A.D.**


                              _____
                              **Notary Public for the
                              State of Texas**

## IN THE UNITED STATES DISTRICT COURT
## FOR THE SOUTHERN DISTRICT OF TEXAS
## BROWNSVILLE DIVISION

IN RE THE COMPLAINT AND §
PETITION OF BROWN WATER §
TOWING I, INC., AS OWNER, AND §
BROWN WATER MARINE SERVICE, §
INC., AS BAREBOAT CHARTERER, §
THE BROWN WATER V, ITS §    CIVIL ACTION NO. B- 0l-157
ENGINES, TACKLE, ETC., IN A §    ADMIRALTY
CAUSE OF EXONERATION FROM §
OR LIMITATION OF LIABILITY §
§
§    CONSOLIDATED WITH
§
IN RE THE COMPLAINT AND §
PETITION OF AMERICAN §
COMMERCIAL LINES LLC AS §
OWNER, AND AMERICAN §    CIVIL ACTION NO. B-02-004
COMMERCIAL BARGE LINES, LLC, §    ADMIRALTY
AS CHARTERER OF THE BARGES §
NM-315, VLB-9182, ACL-9933B, §
VLB-9173, IN A CAUSE OF §
EXONERATION FROM OR §
LIMITATIONOF LIABILITY §

## CLAIMANT ALBERTO LEROY MOYA'S RESPONSES
## TO PETITIONERS' MASTER SET OF INTERROGATORIES
## AND MASTER SET OF REQUEST FOR PRODUCTION

TO:    ALL ATORNEYS IN CHARGE FOR PETITIONERS

Comes now Alberto Leroy Moya, Claimant in the above-styled and numbered
cause and submits his Responses to Petitioner's Master Set of Interrogatories and
Petitioner's Master Set of Request for Production as provided by the Joint
Discovery/Case Management Plan and the Federal Rules of Civil Procedure.



Respectfully submitted,

LAW OFFICES OF FRANK ENRIQUEZ
4200-B North Bicentennial
McAllen, Texas 78504
Tel. (956) 686-5291
Fax (956) 618-5064

By: _____
Francisco J. Enriquez
State Bar No.: 06630500
Roberto D. Puente
State Bar No.: 24013359

ATTORNEY FOR CLAIMANT

South Texas High School for Health Professions
100 Med High Drive
Mercedes, Texas 78570
1997 Graduate

**INTERROGATORY NO. 4:**
Please give complete details of your criminal record, if any and, in addition, for wrongful death claimants only, please give complete details of decedent's criminal record, if any.

**ANSWER:**   Objection, vague and overbroad, not limited in scope, time or type and not relevant and not calculated to lead to the discovery of relevant evidence.

**INTERROGATORY NO. 5:**
Please give complete details of any previous claims (including but not limited to workers' compensation claims) or lawsuits involving personal injuries in which the decedent (for wrongful death claimants only) or you (for personal injury claimants only) were involved.

**ANSWER:**   Objection, vague and overbroad, not limited in scope, time or type and not relevant and not calculated to lead to the discovery of relevant evidence.

**INTERROGATORY NO. 6:**
Please provide the following information for any accidents, injuries, hospitalizations, serious sicknesses or conditions that the decedent (for wrongful death claimants only) or you (for personal injury claimants only) suffered within ten years before and at anytime after the accident made the basis of this lawsuit: the nature of the sickness, injury or condition manifested itself; and the names, addresses, telephone numbers, places of employment, and last known whereabouts of each person having any knowledge or claiming to have knowledge of any such pre-existing or subsequent injury, sickness or condition.

**ANSWER:**   I was involved in an auto accident on December 2001 in McAllen, Texas. I received treatment from Dr. Ernest Roman & Dr. Darshan S. Gill, Disability Medicine Center, 809 East Esperanza, McAllen, Texas 78501.   Danielle Moya, my wife has knowledge of the accident, she was in the vehicle with me at the time of the incident and the Law Office of Orendain & Dominguez is representing us.

**INTERROGATORY NO. 7:**
Please describe the injury you claim to have sustained as a result of the incident made the basis of this suit and give complete details of all medical care and treatment received since the date of the alleged accident involved in this case.   In providing the details of

medical care and treatment, identify each doctor or medical care provider, the date or dates of care and treatment, and the amounts paid for care and treatment.

**ANSWER:**    As a result of the collapse of the Port Isabel Causeway and because of our rescue efforts, we suffered physical injury in that we received cuts, bruises and burns. Initially, the barges and tug, when they first hit the Causeway, caused a first terrible collapse and a huge splash. When we heard the sound we were several hundred yards away. Within seconds a car came over the break in the causeway and tumbled into the Laguna Madre. We were shocked and horrified. However, we determined not to run but to try to rescue the passenger or passengers of that first vehicle. As we approached in the boat we saw other vehicles fall into the water, vehicle after vehicle. The noise and smell of gas was immense. As we approached the area where the vehicles fell, we heard another, second, blow to the causeway and more of the causeway fell, almost on top of our boat. We saw the causeway sway. The debris had it fallen on us would have sunk the boat and crushed us. As it was, it rocked the boat violently, tossing us around and almost overturning it. I felt the physical impact of this action and parts of the boat hit me around my arms, knees, back, groin, stomach and shoulders.

At first we thought that the magnitude of the break must have been visible to the cars traveling on the bridge. However, we saw more cars going off the bridge into the Laguna Madre. It became clear that they could not see the break because they did not step on the brakes until they were in the air and it was too late. That is, the brake lights did not go on until the vehicles were in the air. Also, although we were screaming to try to get the attention of the drivers before they went over, it became clear that they could not hear us. I guess the bridge was too high for our voices to carry. As we went toward the bridge we decided to try to get drivers attention by flashing our spotlight on the windshield of the oncoming cars. We also had flares in the boat and we lit and waved them. We had to pass the flares around because they gave off great amounts of sparks and they burned our skin. By passing them around we were able to avoid greater burns than we did suffer. Two of us suffered some scarring. Roland Moya has a scar on his arms. Robert Espericueta has a scar on his upper leg where sparks burned through his clothes and on his arms. Albert Leroy Moya has scars on his right arm.

Although we had cellular phones with us and immediately called 911 to report the catastrophe, still we were alone at the scene for almost an hour. During that time many terrible things happened and we were able to save three people from drowning and dying in the Laguna Madre. We saw floating pieces of vehicles being carried by the current. Sometimes the pieces would strike the boat and would knock us down. We saw the lights of the vehicles under water. We saw heavy electrical wires sticking into the water. We saw a man trapped in his vehicle waving at us for help, not speaking, just waving.

We also used great effort in the successful rescue of the people we did, and subsequently assisting the Coast Guard. We also participated in the rescue efforts of the Port Isabel Fire Department in their subsequent attempts to rescue their chief, one of the victims. We did so because our boat was the only one able and willing to get close enough to the scene, because of its small size. Also, none of the other boats wanted to get near because there were exposed electrical wires from the bridge in the water and no one knew if they were live. We heard crackling sounds like electricity. But the Port Isabel Fire Department was desperate to get near to where their chief had fallen to try to save

him. We were willing to go in since we had been there before and had not been electrocuted, so we volunteered to take the Fire Department divers to the scene. We were shocked to hear one of the scuba divers say they had found a body pinned behind the steering column of the vehicle. We also ferried victims to the Coast Guard boat and later to the Coast Guard station on the Island so they could receive medical attention. We assisted EMS on the island with two survivors, picking them up off the floor, holding IV bags and lighting. As can be expected from such efforts we suffered cuts and bruises. We experienced physical impact and injury from the collapse and our subsequent rescue efforts.

At the time we witnessed many truly horrifying things. We saw the bridge collapse. At first we thought that it was a bombing incident somehow connected to the World Trade tragedy just a few days earlier. We saw people die and terribly injured. We heard frightening noises. We were soaked and cold. We were, for what seemed like forever, alone. These and other things touched our soul and remain with us today and I have no doubt will remain with me for the rest of my life. Reverend Hyde from Port Isabel immediately counseled me, recognizing the anguish I suffered in witnessing these terrible things and in being in danger. I have had flashbacks and nightmares and mental anguish. Because of what I went through I have recently been diagnosed with Post Traumatic Stress Syndrome.

We are fortunate to be alive and we are fortunate and honored to have participated in the rescue effort.


I received treatment from the following:

Dr. Fructuoso Irigoyen
1400 S. 6th Street
McAllen, Texas 78501
(956) 631-0344
Psychiatrist
Date: April 30, 2002
Amount paid was $400.00

Reverend Stephen Hyde
Lighthouse Assembly of God Church
10 Port Road
Port Isabel, Texas 78578
(956) 943-5372
Spiritual and mental counseling
Date: September 15, 2002


## INTERROGATORY NO. 8:

If you have applied for and/or received any government, state or federal benefits for unemployment since the date of the occurrence made the basis of this suit, please give complete details concerning each such occasion.

## VERIFICATION

THE STATE OF TEXAS     §
                                       §

COUNTY OF HIDALGO    §

      BEFORE ME, the undersigned authority, this day personally appeared Alberto Leroy Moya, known to me, after first being duly sworn under oath, stated that he has read and reviewed the foregoing; and that the facts stated in the answers are within his personal knowledge and are true and correct.

                                                         _____
                                                         Alberto Leroy Moya

      SUBSCRIBED AND SWORN TO BEFORE ME this 20th day of May 2002 to certify which witness my hand and seal of office.



                                             _____
                                       Notary Public- State of Texas

JORGE HERNANDEZ
NOTARY PUBLIC
STATE OF TEXAS
EXPIRES
2-1-2005

IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF TEXAS
BROWNSVILLE DIVISION

| | | |
|---|---|---|
| IN RE THE COMPLAINT AND | § | |
| PETITION OF BROWN WATER | § | |
| TOWING I, INC., AS OWNER, AND | § | |
| BROWN WATER MARINE SERVICE, | § | |
| INC., AS BAREBOAT CHARTERER, | § | |
| THE BROWN WATER V, ITS | § | CIVIL ACTION NO. B- 0l-157 |
| ENGINES, TACKLE, ETC., IN A | § | ADMIRALTY |
| CAUSE OF EXONERATION FROM | § | |
| OR LIMITATION OF LIABILITY | § | |
| | § | |
| | § | CONSOLIDATED WITH |
| | § | |
| IN RE THE COMPLAINT AND | § | |
| PETITION OF AMERICAN | § | |
| COMMERCIAL LINES LLC AS | § | |
| OWNER, AND AMERICAN | § | CIVIL ACTION NO. B-02-004 |
| COMMERCIAL BARGE LINES, LLC, | § | ADMIRALTY |
| AS CHARTERER OF THE BARGES | § | |
| NM-315, VLB-9182, ACL-9933B, | § | |
| VLB-9173, IN A CAUSE OF | § | |
| EXONERATION FROM OR | § | |
| LIMITATIONOF LIABILITY | § | |

## CLAIMANT ALBERTO LEROY MOYA'S RESPONSES TO PETITIONERS' MASTER SET OF INTERROGATORIES AND MASTER SET OF REQUEST FOR PRODUCTION

TO:   ALL ATORNEYS IN CHARGE FOR PETITIONERS

Comes now Alberto Leroy Moya, Claimant in the above-styled and numbered cause and submits his Responses to Petitioner's Master Set of Interrogatories and Petitioner's Master Set of Request for Production as provided by the Joint Discovery/Case Management Plan and the Federal Rules of Civil Procedure.



Respectfully submitted,

LAW OFFICES OF FRANK ENRIQUEZ
4200-B North Bicentennial
McAllen, Texas 78504
Tel. (956) 686-5291
Fax (956) 618-5064

By: _____
Francisco J. Enriquez
State Bar No.: 06630500
Roberto D. Puente
State Bar No.: 24013359

ATTORNEY FOR CLAIMANT

**REQUEST FOR PRODUCTION NO. 6:**
Please produce any and all photographs, videotapes or drawings representing the alleged injuries suffered by the decedent (for wrongful death claimants) or you (for personal injury claimants) after the alleged incident.

**RESPONSE:** None.


**REQUEST FOR PRODUCTION NO. 7:**
Please produce any and all photographs, videotapes or drawings representing the scene of the incident made the basis of this lawsuit, the equipment, or the materials involved.

**RESPONSE:** Will supplement according to the Federal Rules of Civil Procedure. Without waiving same, please see Exhibit "D".


**REQUEST FOR PRODUCTION NO. 8:**
Please produce any and all documents reflecting any law enforcement department or other governmental entity's investigation of, or participation in, the incident made the basis of this lawsuit.

**RESPONSE:** Please see Exhibit "E".


**REQUEST FOR PRODUCTION NO. 9:**
Please produce the decedent's (for wrongful death claimants) or you (for personal injury claimants) income tax returns for the years 1991 to present.

**RESPONSE:** Please see Exhibit "A".


**REQUEST FOR PRODUCTION NO. 10:**
Please produce the decedent's (for wrongful death claimants) or your (for personal injury claimants) earnings record for the years 1991 to present.

**RESPONSE:** Please see Exhibit "A".


**REQUEST FOR PRODUCTION NO. 11:**
Please produce the executed original Social Security Administration request for detailed earning information attached to these requests.

**RESPONSE:** Please see Exhibit "F".

Exhibit "E"

TEXAS DEPARTMENT OF PUBLIC SAFETY
TEXAS RANGER DIVISION

**VOLUNTARY STATEMENT**

**STATE OF TEXAS**

COUNTY OF CAMERON

My name is Alberto Leroy Moya and my address is 4607 W. University Dr. Edinburg, Texas 78539 and my phone number is 956-287-2140.  I was born in McAllen on 03-05-79.
I am a student at Pan Am University in Edinburg.  I wish to state the following information:

I would like to state that on Friday 09-14-01, my brother Roland Moya, Robert Espricueta, Antonio Salinas and myself went fishing at South Padre Island.  We put our boat in at Fisherman's Pier at approximately 9:30 PM.  We fished at different spots around the Port Isabel and South Padre Island area. I would like to state that the lights to the Causeways Bridge were out from the beginning of the Causeway to halfway and about 200 yards from mid bridge toward the Island. I had come fishing about two weeks ago and the lights were out then.

It was approximately 2:00 AM when we heard a loud boom. We thought it was thunder, we thought it was going to rain on us.  We were approximately 300 to 400 yards on the North side of the Causeways bridge and about 100 yards from the tip of Jim's Pier.  I was facing away from the bridge when I heard the loud boom.  I then turned around to look at the bridge and I saw lights falling from the bridge into the water.  I realized then that it was a car that had fallen off the bridge. I remember seeing the headlights and taillights as the car fell. We started heading toward the area where the car had fallen, as we headed toward the car, we started throwing our fishing rods and tackle into the water to make room for the victims. On our way to rescue the victims, I saw approximately 6 to 10 more cars fall into the water one right after the other.  We initially thought that it was an accident with the first car going into the water, but then we noticed a large gap in the bridge where the cars were falling through.

We tried to get the other cars attention to stop by using flashlights, spotlights and hand flares, but the cars kept coming and falling. Finally a man in pickup stopped when he saw our warning signals. He stopped on the bridge and he started to stop traffic from continuing toward the gap. The cars that were falling were the cars traveling from South Padre to Port Isabel.

We approached the vehicles as they were sticking out of the water, but we were still several yards out. We also saw there was a big barge that was pressed up against the bridge. There were two men standing on the barge just looking at us. We started calling out to see if anyone was still alive. We heard a young girl that called back to us to tell us she was there. We spotted her approximately 200 yards from the wreckage. She was in the water and the current was bringing her toward our direction. We got her into the boat and she was all right except in shock.

We called out again and another victim called to us, we then saw a man that was having problems swimming. He kept on telling us, " I can't swim, I can't swim, please get me out". He had head trauma, it looked like his head was caved in and he had back injuries. We feared to hurt him more as we got him into the boat, but we got him in successfully. The man told us his name was Rene Mata and told us that we needed to find Robin a friend that was with him in the car.

Right after we got Rene into the boat we heard two more voices out in the water. One of them was a man in his mid forties and he was about fifty yards away from us. The other voice was a girl in the water behind us

## TEX DEPARTMENT OF PUBLIC SAF Y
## TEXAS RANGER DIVISION

## VOLUNTARY STATEMENT

**STATE OF TEXAS**

approximately 200 yards away, calling for help. We went to the male victim and picked him up since he was the closest. We asked him if he was okay once we got to him and he said he was. We got him into the boat and then turned around to see if the girl was still around, but we lost her, we called out to her, but she did not respond.

The U.S. Coast Guard arrived with about 10 to 12 guys on the boat. We asked them to help us, but they just stood there not doing anything. We wanted them to take the victim into their boat because our boat was rocking real badly due to the waves. They told us to stay away from the boat. We asked them to go look for the girl that we lost contact with. They told us that they did not have any spotlights to look for her. They told us to take the trauma victim to the other Coast Guard boat that was equipped. to handle the trauma victim, the other Coast Guard boat was on the South side of the Causeways. The young girl in our boat started to loose it, she started screaming and crying, because she did not want to go under the bridge.

We took the victims to the Coast Guard boat on the South side, but they did not want to take them either. They directed us to the Coast Guard Station where we took the victims in our boat.

_____
Witness

_____
Witness

_____
Signature of Witness

Date:  9/15/01    Time:  8:30 AM

IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF TEXAS
BROWNSVILLE DIVISION

| | | |
|---|---|---|
| IN RE THE COMPLAINT AND | § | |
| PETITION OF BROWN WATER | § | |
| TOWING I, INC., AS OWNER, AND | § | |
| BROWN WATER MARINE SERVICE, | § | |
| INC., AS BAREBOAT CHARTERER, | § | |
| THE BROWN WATER V, ITS | § | CIVIL ACTION NO. B- 0l-157 |
| ENGINES, TACKLE, ETC., IN A | § | ADMIRALTY |
| CAUSE OF EXONERATION FROM | § | |
| OR LIMITATION OF LIABILITY | § | |
| | § | |
| | § | CONSOLIDATED WITH |
| | § | |
| IN RE THE COMPLAINT AND | § | |
| PETITION OF AMERICAN | § | |
| COMMERCIAL LINES LLC AS | § | |
| OWNER, AND AMERICAN | § | CIVIL ACTION NO. B-02-004 |
| COMMERCIAL BARGE LINES, LLC, | § | ADMIRALTY |
| AS CHARTERER OF THE BARGES | § | |
| NM-315, VLB-9182, ACL-9933B, | § | |
| VLB-9173, IN A CAUSE OF | § | |
| EXONERATION FROM OR | § | |
| LIMITATIONOF LIABILITY | § | |

### CLAIMANT ROLANDO LEE MOYA'S RESPONSES TO PETITIONERS' MASTER SET OF INTERROGATORIES AND MASTER SET OF REQUEST FOR PRODUCTION

TO:     ALL ATORNEYS IN CHARGE FOR PETITIONERS

Comes now Rolando Lee Moya, Claimant in the above-styled and numbered cause and submits his Responses to Petitioner's Master Set of Interrogatories and Petitioner's Master Set of Request for Production as provided by the Joint Discovery/Case Management Plan and the Federal Rules of Civil Procedure.



Respectfully submitted,

LAW OFFICES OF FRANK ENRIQUEZ
4200-B North Bicentennial
McAllen, Texas 78504
Tel.  (956)  686-5291
Fax  (956)  618-5064

By:

Francisco J. Enriquez
State Bar No.: 06630500
Roberto D. Puente
State Bar No.: 24013359

ATTORNEY FOR CLAIMANT

My wife Esperanza Moya, Leonardo & Lupita Moya, my parents have knowledge of my knee surgery.

## INTERROGATORY NO. 7:

Please describe the injury you claim to have sustained as a result of the incident made the basis of this suit and give complete details of all medical care and treatment received since the date of the alleged accident involved in this case. In providing the details of medical care and treatment, identify each doctor or medical care provider, the date or dates of care and treatment, and the amounts paid for care and treatment.

**ANSWER:** As a result of the collapse of the Port Isabel Causeway and because of our rescue efforts, we suffered physical injury in that we received cuts, bruises and burns. Initially, the barges and tug, when they first hit the Causeway, caused a first terrible collapse and a huge splash. When we heard the sound we were several hundred yards away. Within seconds a car came over the break in the causeway and tumbled into the Laguna Madre. We were shocked and horrified. However, we determined not to run but to try to rescue the passenger or passengers of that first vehicle. As we approached in the boat we saw other vehicles fall into the water, vehicle after vehicle. The noise and smell of gas was immense. As we approached the area where the vehicles fell, we heard another, second, blow to the causeway and more of the causeway fell, almost on top of our boat. We saw the causeway sway. The debris had it fallen on us would have sunk the boat and crushed us. As it was, it rocked the boat violently, tossing us around and almost overturning it. I felt the physical impact of this action and parts of the boat hit me around my arms, knees, back, groin, stomach and shoulders.

At first we thought that the magnitude of the break must have been visible to the cars traveling on the bridge. However, we saw more cars going off the bridge into the Laguna Madre. It became clear that they could not see the break because they did not step on the brakes until they were in the air and it was too late. That is, the brake lights did not go on until the vehicles were in the air. Also, although we were screaming to try to get the attention of the drivers before they went over, it became clear that they could not hear us. I guess the bridge was too high for our voices to carry. As we went toward the bridge we decided to try to get drivers attention by flashing our spotlight on the windshield of the oncoming cars. We also had flares in the boat and we lit and waved them. We had to pass the flares around because they gave off great amounts of sparks and they burned our skin. By passing them around we were able to avoid greater burns than we did suffer. Two of us suffered some scarring. Roland Moya has a scar on his arms. Robert Espericueta has a scar on his upper leg where sparks burned through his clothes and on his arms. Albert Leroy Moya has scars on his right arm.

Although we had cellular phones with us and immediately called 911 to report the catastrophe, still we were alone at the scene for almost an hour. During that time many terrible things happened and we were able to save three people from drowning and dying in the Laguna Madre. We saw floating pieces of vehicles being carried by the current. Sometimes the pieces would strike the boat and would knock us down. We saw the lights of the vehicles under water. We saw heavy electrical wires sticking into the water. We saw a man trapped in his vehicle waving at us for help, not speaking, just waving.

We also used great effort in the successful rescue of the people we did, and subsequently assisting the Coast Guard. We also participated in the rescue efforts of the Port Isabel Fire Department in their subsequent attempts to rescue their chief, one of the victims. We did so because our boat was the only one able and willing to get close enough to the scene, because of its small size. Also, none of the other boats wanted to get near because there were exposed electrical wires from the bridge in the water and no one knew if they were live. We heard crackling sounds like electricity. But the Port Isabel Fire Department was desperate to get near to where their chief had fallen to try to save him. We were willing to go in since we had been there before and had not been electrocuted, so we volunteered to take the Fire Department divers to the scene. We were shocked to hear one of the scuba divers say they had found a body pinned behind the steering column of the vehicle. We also ferried victims to the Coast Guard boat and later to the Coast Guard station on the Island so they could receive medical attention. We assisted EMS on the island with two survivors, picking them up off the floor, holding IV bags and lighting. As can be expected from such efforts we suffered cuts and bruises. We experienced physical impact and injury from the collapse and our subsequent rescue efforts.

At the time we witnessed many truly horrifying things. We saw the bridge collapse. At first we thought that it was a bombing incident somehow connected to the World Trade tragedy just a few days earlier. We saw people die and terribly injured. We heard frightening noises. We were soaked and cold. We were, for what seemed like forever, alone. These and other things touched our soul and remain with us today and I have no doubt will remain with me for the rest of my life. Reverend Hyde from Port Isabel immediately counseled me, recognizing the anguish I suffered in witnessing these terrible things and in being in danger. I have had flashbacks and nightmares and mental anguish. Because of what I went through I have recently been diagnosed with Post Traumatic Stress Syndrome.

We are fortunate to be alive and we are fortunate and honored to have participated in the rescue effort.

I received treatment from the following:

Dr. Fructuoso Irigoyen
1400 S. 6th Street
McAllen, Texas 78501
(956) 631-0344
Psychiatrist
Date of treatment was April 29, 2002
Amount paid was $400.00

Reverend Stephen Hyde
Lighthouse Assembly of God Church
10 Port Road
Port Isabel, Texas 78578
(956) 943-5372
Spiritual and mental counseling
Date:  September 15, 2002

## VERIFICATION

THE STATE OF TEXAS     §
                             §

COUNTY OF HIDALGO     §

BEFORE ME, the undersigned authority, this day personally appeared Rolando Lee Moya, known to me, after first being duly sworn under oath, stated that he has read and reviewed the foregoing; and that the facts stated in the answers are within his personal knowledge and are true and correct.

_____
Rolando Lee Moya

SUBSCRIBED AND SWORN TO BEFORE ME this 20th____ day of May 2002 to certify which witness my hand and seal of office.

_____
Notary Public- State of Texas

**IN THE UNITED STATES DISTRICT COURT**
**FOR THE SOUTHERN DISTRICT OF TEXAS**
**BROWNSVILLE DIVISION**

| | | |
|---|---|---|
| **IN RE THE COMPLAINT AND** | § | |
| **PETITION OF BROWN WATER** | § | |
| **TOWING I, INC., AS OWNER, AND** | § | |
| **BROWN WATER MARINE SERVICE,** | § | |
| **INC., AS BAREBOAT CHARTERER,** | § | |
| **THE BROWN WATER V, ITS** | § | **CIVIL ACTION NO. B- 0l-157** |
| **ENGINES, TACKLE, ETC., IN A** | § | **ADMIRALTY** |
| **CAUSE OF EXONERATION FROM** | § | |
| **OR LIMITATION OF LIABILITY** | § | |
| | § | |
| | § | **CONSOLIDATED WITH** |
| | § | |
| **IN RE THE COMPLAINT AND** | § | |
| **PETITION OF AMERICAN** | § | |
| **COMMERCIAL LINES LLC AS** | § | |
| **OWNER, AND AMERICAN** | § | **CIVIL ACTION NO. B-02-004** |
| **COMMERCIAL BARGE LINES, LLC,** | § | **ADMIRALTY** |
| **AS CHARTERER OF THE BARGES** | § | |
| **NM-315, VLB-9182, ACL-9933B,** | § | |
| **VLB-9173, IN A CAUSE OF** | § | |
| **EXONERATION FROM OR** | § | |
| **LIMITATIONOF LIABILITY** | § | |

**CLAIMANT ROLANDO LEE MOYA'S RESPONSES**
**TO PETITIONERS' MASTER SET OF INTERROGATORIES**
**AND MASTER SET OF REQUEST FOR PRODUCTION**

TO:    ALL ATORNEYS IN CHARGE FOR PETITIONERS

        Comes now Rolando Lee Moya, Claimant in the above-styled and numbered

cause and submits his Responses to Petitioner's Master Set of Interrogatories and

Petitioner's Master Set of Request for Production as provided by the Joint

Discovery/Case Management Plan and the Federal Rules of Civil Procedure.



Respectfully submitted,

LAW OFFICES OF FRANK ENRIQUEZ
4200-B North Bicentennial
McAllen, Texas 78504
Tel. (956) 686-5291
Fax (956) 618-5064

By: _____
Francisco J. Enriquez
State Bar No.: 06630500
Roberto D. Puente
State Bar No.: 24013359

ATTORNEY FOR CLAIMANT

**REQUEST FOR PRODUCTION NO. 6:**
Please produce any and all photographs, videotapes or drawings representing the alleged injuries suffered by the decedent (for wrongful death claimants) or you (for personal injury claimants) after the alleged incident.

**RESPONSE:** None.


**REQUEST FOR PRODUCTION NO. 7:**
Please produce any and all photographs, videotapes or drawings representing the scene of the incident made the basis of this lawsuit, the equipment, or the materials involved.

**RESPONSE:** Will supplement according to the Federal Rules of Civil Procedure. Without waiving same, please see Exhibit "D".

**REQUEST FOR PRODUCTION NO. 8:**
Please produce any and all documents reflecting any law enforcement department or other governmental entity's investigation of, or participation in, the incident made the basis of this lawsuit.

**RESPONSE:** Please see Exhibit "E".


**REQUEST FOR PRODUCTION NO. 9:**
Please produce the decedent's (for wrongful death claimants) or you (for personal injury claimants) income tax returns for the years 1991 to present.

**RESPONSE:** Please see Exhibit "A".


**REQUEST FOR PRODUCTION NO. 10:**
Please produce the decedent's (for wrongful death claimants) or your (for personal injury claimants) earnings record for the years 1991 to present.

**RESPONSE:** Please see Exhibit "A".


**REQUEST FOR PRODUCTION NO. 11:**
Please produce the executed original Social Security Administration request for detailed earning information attached to these requests.

**RESPONSE:** Please see Exhibit "F"


**REQUEST FOR PRODUCTION NO. 12:**

Exhibit "E"

TEXAS DEPARTMENT OF PUBLIC SAFETY
TEXAS RANGER DIVISION

**VOLUNTARY STATEMENT**

THE STATE OF TEXAS

COUNTY OF CAMERON

Before me the undersigned authority in and for said County and State, on this day, Saturday, September 15, 2001, personally appeared, ROLANDO LEE MOYA, DOB 06-01-77, address is 6509 N 8TH #3, phone number is 956-6886480, who, after being by me duly sworn, deposes and says:

On Friday night, at approximately 6:30 p.m., my cousin ROBERT ESPERICUTEA, brother ALBERT LEROY MOYA and my brother in law ANTONIO SALINAS JR., left Edinburg to go fishing in So. Padre Island. We arrived at approximately 9:00 p.m., and docked at a Sea Ranch Fishing Pier on the island. We put our 17' Glaston fishing boat on the bay which is between So. Padre Island and Port Isabel and began to fish. We noticed that the causeways lights were ¾ off, with only ¼ of the lights were on. We also saw that the channel lights were not on.

On Saturday, at approximately 12:45 p.m., we noticed a barge that was traveling north and appeared to be a far distance. At 1:30 a.m., we were about 500 yards from the north side of the causeway, when we heard a big bang and followed by a splash. We turned on spotlights to see what was happening, and noticed a motor vehicle fall off the causeway into the water (bay). We immediately threw our fishing equipment out of the boat and were raising our anchor, when we saw that another vehicle had fallen off the causeway. We also called 911 on my cellular phone. I couldn't understand the 911 male operator so I called three times in a row. We then observe approximately 6 to 10 vehicles falling off the causeway. We traveled to where the vehicles were falling and during that travel time, we were waving flares at the vehicles that were approaching the area where the vehicle had fallen. We had not seen the extent of the damage that the causeway had received, until we got closer. We heard and saw the barge strike the causeway sideways and caused the causeway to sway.

We slowed down and started looking for survivors. We noticed debris everywhere, including car parts floating on the water. We noticed vehicles that had fallen off the causeway semi-afloat and were being carried off by the water current. At that point, we heard a female crying out for help and with our spotlight we found her and carried her out of the water and put her in our boat. The female was yelling that she had made it and thanking us for helping her. We then looked around and heard several voices and we looked them and had a hard time finding them because of the debris. We then saw a male victim with trauma to his head (I later found out that his name was RENE MATA). We got MATA in the front of our boat and noticed another older male (later I found out his name was GUSTAVO) in the water. MATA was telling us about his severe back pain and if we had found his female passenger named ROBIN. With MATA still holding on to our boat, we moved over to GUSTAVO and GASTAVO made it over to the rear of the boat and we help him get on the boat. We saw a female who we believe was ROBIN and another unidentified person in the water in front of us. At that point, we pulled MATA on our boat and gave him a shirt for his head wound and covered him with a towel. We noticed two Coast Guard Ships approach both sides of the Causeway. I told my cousin ROBERT that we needed to get MATA to the Coast Guard ship because of his injuries. The Coast Guard men got to the scene striking up cigarettes, instead of having rescue equipment. They got closer and we told them about Mata's injuries and that there were people in the water. No one move and they continued smoking and looking at the causeway. They then stated that they did not have spotlights and told us to take the victims to the other ship on the other side of the causeway. They wanted us to travel through the damage area. The female survivor that we ¬d on our boat did not want to go through the area that was damage. We started questioning the female and

GUSTAVO about who was with the.... Both female and GUSTAVO stated that they were alone. We traveled onto the other side of the bridge and met the other Coast Guard ship. The Coast Guard took the female and GUSTAVO off the ship and a Coast Guardsman name CHRIS jumped onto our boat and checked on MATA.

About 5 minutes later, the Coast Guard told us that we were going to the Coast Guard Station with CHRIS, so they put the female and GUSTAVO back onto our boat. Before we left, we told the Coast Guard that we had seen two other persons out in the water. We arrived at the Coast Guard station and there were no EMS personnel there. We helped GUSTAVO off our boat and laid him on the dock. EMS arrived and treated GUSTAVO and MATA. The female walked over to a bench and sat down. EMS told advised us that since the causeway was damage, they couldn't transport. So, they put GUSTAVO back onto our boat on a backboard and Coast Guard told us to take him to Port Isabel. EMS told us to leave the victims there because was not a rescue vessel and we told them this people need to go to the hospital. They took GUSTAVO and MATA off my boat and EMS stayed with them.

We then went back to the scene with Coast Guardman CHRIS on our boat; CHRIS then jumped on the Coast Guard vessel. A Port Isabel Fireman jump into our boat and the Fireman requested if we could get closer to the scene because we had a smaller boat. We circle the area once and the Fireman received information that the electricity was off from the causeway and asked to take him back to the Coast Guard boat to get the divers. The divers jumped into the water and swam towards the accident scene and we followed them with the spotlight. As we were making our way to the scene, we observed boats with Border Patrol and State Troopers approaching. We signaled to them about the divers in the water. We then heard the Border Patrol say that the electricity was not off yet and the fireman told the diver that it was their call to stay in the water.

I heard one of the divers say that he had seen a decease victim in a red truck and was pinned. The other two divers said that they needed air tanks and Jaws of Life equipment. All three divers climbed on our boat and we headed to the Port Isabel. We then docked our boat.

We then spoke to a Port Isabel Pastor and a short while later three State Troopers asked us about what had happen. We were also told to stick around because they needed to speak to us.

This statement is true and correct and was given voluntarily to Texas Ranger Rolando Castaneda.

_____          _____
Taken by:                                              Signature of Witness

Date:  9/15/01

Time:  8:20 AM

SUBSCRIBED AND SWORN TO BEFORE ME THE UNDERSIGNED AUTHORITY, ON THIS THE xx DAY OF  month, 1996, A.D.

_____
Notary Public for the
State of Texas

**IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF TEXAS
BROWNSVILLE DIVISION**

| | | |
|---|---|---|
| IN RE THE COMPLAINT AND | § | |
| PETITION OF BROWN WATER | § | |
| TOWING I, INC., AS OWNER, AND | § | |
| BROWN WATER MARINE SERVICE, | § | |
| INC., AS BAREBOAT CHARTERER, | § | |
| THE BROWN WATER V, ITS | § | **CIVIL ACTION NO. B- 0l-157** |
| ENGINES, TACKLE, ETC., IN A | § | **ADMIRALTY** |
| CAUSE OF EXONERATION FROM | § | |
| OR LIMITATION OF LIABILITY | § | |
| | § | |
| | § | **CONSOLIDATED WITH** |
| | § | |
| IN RE THE COMPLAINT AND | § | |
| PETITION OF AMERICAN | § | |
| COMMERCIAL LINES LLC AS | § | |
| OWNER, AND AMERICAN | § | **CIVIL ACTION NO. B-02-004** |
| COMMERCIAL BARGE LINES, LLC, | § | **ADMIRALTY** |
| AS CHARTERER OF THE BARGES | § | |
| NM-315, VLB-9182, ACL-9933B, | § | |
| VLB-9173, IN A CAUSE OF | § | |
| EXONERATION FROM OR | § | |
| LIMITATIONOF LIABILITY | § | |

**<u>CLAIMANT ANTONIO SALINAS JR.'S RESPONSES
TO PETITIONERS' MASTER SET OF INTERROGATORIES
AND MASTER SET OF REQUEST FOR PRODUCTION</u>**

TO:     ALL ATORNEYS IN CHARGE FOR PETITIONERS

Comes now Antonio Salinas Jr., Claimant in the above-styled and numbered

cause and submits his Responses to Petitioner's Master Set of Interrogatories and

Petitioner's Master Set of Request for Production as provided by the Joint

Discovery/Case Management Plan and the Federal Rules of Civil Procedure.



Respectfully submitted,

LAW OFFICES OF FRANK ENRIQUEZ
4200-B North Bicentennial
McAllen, Texas 78504
Tel. (956) 686-5291
Fax (956) 618-5064

By: _____
Francisco J. Enriquez
State Bar No.: 06630500
Roberto D. Puente
State Bar No.: 24013359

ATTORNEY FOR CLAIMANT

**INTERROGATORY NO. 4:**
Please give complete details of your criminal record, if any and, in addition, for wrongful death claimants only, please give complete details of decedent's criminal record, if any.

**ANSWER:**    Objection, vague and overbroad, not limited in scope, time or type and not relevant and not calculated to lead to the discovery of relevant evidence.

**INTERROGATORY NO. 5:**
Please give complete details of any previous claims (including but not limited to workers' compensation claims) or lawsuits involving personal injuries in which the decedent (for wrongful death claimants only) or you (for personal injury claimants only) were involved.

**ANSWER:**    Objection, vague and overbroad, not limited in scope, time or type and not relevant and not calculated to lead to the discovery of relevant evidence.

**INTERROGATORY NO. 6:**
Please provide the following information for any accidents, injuries, hospitalizations, serious sicknesses or conditions that the decedent (for wrongful death claimants only) or you (for personal injury claimants only) suffered within ten years before and at anytime after the accident made the basis of this lawsuit: the nature of the sickness, injury or condition manifested itself; and the names, addresses, telephone numbers, places of employment, and last known whereabouts of each person having any knowledge or claiming to have knowledge of any such pre-existing or subsequent injury, sickness or condition.

**ANSWER:**    None.

**INTERROGATORY NO. 7:**
Please describe the injury you claim to have sustained as a result of the incident made the basis of this suit and give complete details of all medical care and treatment received since the date of the alleged accident involved in this case. In providing the details of medical care and treatment, identify each doctor or medical care provider, the date or dates of care and treatment, and the amounts paid for care and treatment.

**ANSWER:**    As a result of the collapse of the Port Isabel Causeway and because of our rescue efforts, we suffered physical injury in that we received cuts, bruises and burns. Initially, the barges and tug, when they first hit the Causeway, caused a first terrible collapse and a huge splash. When we heard the sound we were several hundred yards away. Within seconds a car came over the break in the causeway and tumbled into the Laguna Madre. We were shocked and horrified. However, we determined not to run but to try to rescue the passenger or passengers of that first vehicle. As we approached in the boat we saw other vehicles fall into the water, vehicle after vehicle. The noise and smell

of gas was immense. As we approached the area where the vehicles fell, we heard another, second, blow to the causeway and more of the causeway fell, almost on top of our boat. We saw the causeway sway. The debris had it fallen on us would have sunk the boat and crushed us. As it was, it rocked the boat violently, tossing us around and almost overturning it. I felt the physical impact of this action and parts of the boat hit me around my arms, knees, back, groin, stomach and shoulders.

At first we thought that the magnitude of the break must have been visible to the cars traveling on the bridge. However, we saw more cars going off the bridge into the Laguna Madre. It became clear that they could not see the break because they did not step on the brakes until they were in the air and it was too late. That is, the brake lights did not go on until the vehicles were in the air. Also, although we were screaming to try to get the attention of the drivers before they went over, it became clear that they could not hear us. I guess the bridge was too high for our voices to carry. As we went toward the bridge we decided to try to get drivers attention by flashing our spotlight on the windshield of the oncoming cars. We also had flares in the boat and we lit and waved them. We had to pass the flares around because they gave off great amounts of sparks and they burned our skin. By passing them around we were able to avoid greater burns than we did suffer. Two of us suffered some scarring. Roland Moya has a scar on his arms. Robert Espericueta has a scar on his upper leg where sparks burned through his clothes and on his arms. Albert Leroy Moya has scars on his right arm.

Although we had cellular phones with us and immediately called 911 to report the catastrophe, still we were alone at the scene for almost an hour. During that time many terrible things happened and we were able to save three people from drowning and dying in the Laguna Madre. We saw floating pieces of vehicles being carried by the current. Sometimes the pieces would strike the boat and would knock us down. We saw the lights of the vehicles under water. We saw heavy electrical wires sticking into the water. We saw a man trapped in his vehicle waving at us for help, not speaking, just waving.

We also used great effort in the successful rescue of the people we did, and subsequently assisting the Coast Guard. We also participated in the rescue efforts of the Port Isabel Fire Department in their subsequent attempts to rescue their chief, one of the victims. We did so because our boat was the only one able and willing to get close enough to the scene, because of its small size. Also, none of the other boats wanted to get near because there were exposed electrical wires from the bridge in the water and no one knew if they were live. We heard crackling sounds like electricity. But the Port Isabel Fire Department was desperate to get near to where their chief had fallen to try to save him. We were willing to go in since we had been there before and had not been electrocuted, so we volunteered to take the Fire Department divers to the scene. We were shocked to hear one of the scuba divers say they had found a body pinned behind the steering column of the vehicle. We also ferried victims to the Coast Guard boat and later to the Coast Guard station on the Island so they could receive medical attention. We assisted EMS on the island with two survivors, picking them up off the floor, holding IV bags and lighting. As can be expected from such efforts we suffered cuts and bruises. We experienced physical impact and injury from the collapse and our subsequent rescue efforts.

At the time we witnessed many truly horrifying things. We saw the bridge collapse. At first we thought that it was a bombing incident somehow connected to the

World Trade tragedy just a few days earlier. We saw people die and terribly injured. We heard frightening noises. We were soaked and cold. We were, for what seemed like forever, alone. These and other things touched our soul and remain with us today and I have no doubt will remain with me for the rest of my life. Reverend Hyde from Port Isabel immediately counseled me, recognizing the anguish I suffered in witnessing these terrible things and in being in danger. I have had flashbacks and nightmares and mental anguish. Because of what I went through I have recently been diagnosed with Post Traumatic Stress Syndrome.

We are fortunate to be alive and we are fortunate and honored to have participated in the rescue effort.

I received treatment from the following:

Dr. Fructuoso Irigoyen
1400 S. 6th Street
McAllen, Texas 78501
(956) 631-0344
Psychiatrist
Date:  April 30, 2002
Amount paid was $400.00

Reverend Stephen Hyde
Lighthouse Assembly of God Church
10 Port Road
Port Isabel, Texas 78578
(956) 943-5372
Spiritual and mental counseling
Date:  September 15, 2002

**INTERROGATORY NO. 8:**
If you have applied for and/or received any government, state or federal benefits for unemployment since the date of the occurrence made the basis of this suit, please give complete details concerning each such occasion.

**ANSWER:**    None

**INTERROGATORY NO. 9:**
Please set forth in detail all information concerning any present disability of any type which you claim is the result of the injuries alleged in this lawsuit.  If you suffer any disability not related to the incident made the subject of this suit, please identify the disability, the date of onset, and the physician treating you for the disability

**ANSWER:**    Please see Response to Interrogatory No. 7.

## VERIFICATION

THE STATE OF TEXAS     §
                                 §
COUNTY OF HIDALGO    §

BEFORE ME, the undersigned authority, this day personally appeared Antonio Salinas Jr., known to me, after first being duly sworn under oath, stated that he has read and reviewed the foregoing; and that the facts stated in the answers are within his personal knowledge and are true and correct.


_____
Antonio Salinas Jr.


SUBSCRIBED AND SWORN TO BEFORE ME this 20th day of May 2002 to certify which witness my hand and seal of office.



_____
Notary Public- State of Texas

## IN THE UNITED STATES DISTRICT COURT
## FOR THE SOUTHERN DISTRICT OF TEXAS
## BROWNSVILLE DIVISION

| | | |
|---|---|---|
| IN RE THE COMPLAINT AND PETITION OF BROWN WATER TOWING I, INC., AS OWNER, AND BROWN WATER MARINE SERVICE, INC., AS BAREBOAT CHARTERER, THE BROWN WATER V, ITS ENGINES, TACKLE, ETC., IN A CAUSE OF EXONERATION FROM OR LIMITATION OF LIABILITY | §<br>§<br>§<br>§<br>§<br>§<br>§<br>§<br>§<br>§ | CIVIL ACTION NO. B- 0l-157<br>ADMIRALTY |
| | §<br>§<br>§ | CONSOLIDATED WITH |
| IN RE THE COMPLAINT AND PETITION OF AMERICAN COMMERCIAL LINES LLC AS OWNER, AND AMERICAN COMMERCIAL BARGE LINES, LLC, AS CHARTERER OF THE BARGES NM-315, VLB-9182, ACL-9933B, VLB-9173, IN A CAUSE OF EXONERATION FROM OR LIMITATIONOF LIABILITY | §<br>§<br>§<br>§<br>§<br>§<br>§<br>§<br>§<br>§<br>§ | CIVIL ACTION NO. B-02-004<br>ADMIRALTY |

## <u>CLAIMANT ANTONIO SALINAS JR.'S RESPONSES</u>
## <u>TO PETITIONERS' MASTER SET OF INTERROGATORIES</u>
## <u>AND MASTER SET OF REQUEST FOR PRODUCTION</u>

TO:    ALL ATORNEYS IN CHARGE FOR PETITIONERS

Comes now Antonio Salinas Jr., Claimant in the above-styled and numbered cause and submits his Responses to Petitioner's Master Set of Interrogatories and Petitioner's Master Set of Request for Production as provided by the Joint Discovery/Case Management Plan and the Federal Rules of Civil Procedure.



Respectfully submitted,

LAW OFFICES OF FRANK ENRIQUEZ
4200-B North Bicentennial
McAllen, Texas 78504
Tel. (956) 686-5291
Fax (956) 618-5064

By: _____

Francisco J. Enriquez
State Bar No.: 06630500
Roberto D. Puente
State Bar No.: 24013359

ATTORNEY FOR CLAIMANT

**REQUEST FOR PRODUCTION NO. 6:**
Please produce any and all photographs, videotapes or drawings representing the alleged injuries suffered by the decedent (for wrongful death claimants) or you (for personal injury claimants) after the alleged incident.

**RESPONSE:** None.


**REQUEST FOR PRODUCTION NO. 7:**
Please produce any and all photographs, videotapes or drawings representing the scene of the incident made the basis of this lawsuit, the equipment, or the materials involved.

**RESPONSE:** Will supplement according to the Federal Rules of Civil Procedure. Without waiving same, please see Exhibit "D".


**REQUEST FOR PRODUCTION NO. 8:**
Please produce any and all documents reflecting any law enforcement department or other governmental entity's investigation of, or participation in, the incident made the basis of this lawsuit.

**RESPONSE:** Please see Exhibit "E".


**REQUEST FOR PRODUCTION NO. 9:**
Please produce the decedent's (for wrongful death claimants) or you (for personal injury claimants) income tax returns for the years 1991 to present.

**RESPONSE:** Please see Exhibit "A".


**REQUEST FOR PRODUCTION NO. 10:**
Please produce the decedent's (for wrongful death claimants) or your (for personal injury claimants) earnings record for the years 1991 to present.

**RESPONSE:** Please see Exhibit "A".


**REQUEST FOR PRODUCTION NO. 11:**
Please produce the executed original Social Security Administration request for detailed earning information attached to these requests.

**RESPONSE:** Please see Exhibit "F".

Exhibit "E"

**TEXAS DEPARTMENT OF PUBLIC SAFETY**
**TEXAS RANGER DIVISION**

**VOLUNTARY STATEMENT**

THE STATE OF TEXAS

COUNTY OF Cameron

Before me the undersigned authority in and for said County and State, on this day, Saturday, September 15, 2001, personally appeared, Antonio Salinas, Jr., address is 1216 Hunters Chase Drive, Edinburg, TX 78539, phone number is 956-688-6480, who, after being by me duly sworn, deposes and says:

My name is Antonio Salinas, Jr and I am 23 years of age, my date of birth is 03-19-78. I am currently employed by Profeesional Medical Technology, located in McAllen, as a receptionist. My home phone number is 956-688-6480.

On September 15, 2001, Rolando Moya, Robert Espericueta, Loroy Moya and I were in Robert's fishing boat and were fishing just north of the causeway in the Laguna Madre. It was about 1:30am to 1:45am when I heard a loud rumble that sounded like thunder. Robert was operating the boat. I saw a car go down into the water and thought there was some sort of accident. We headed toward where the car hit the water.

We then saw another car, another car, and then another car, what seemed to be a succession of cars hit the water. We did what anyone would do and headed to where the cars hit the water. Robert took some flares out and Roland called 911 on his cell phone. We were waving spotlights to try to get drivers attention to stop so they wouldn't fall off the bridge. We finally got one man's attention and he stopped.. There was no one else to help, only us, no one else in sight, only us.

We went to try to rescue anyone who was in need of help. We started shouting to try to hear if anyone was out there. The first person we heard was a female voice. We got to her and she got into the boat by herself, apparently unharmed. She was an anglo female, mid 20's, and was skinny build.

We yelled out again and we heard two men's voices. The first one we got to was a man who had a large wound to his head. We got up beside him and as we tried to get him into the boat he screamed a girls name. He said she was his girl friend and that he wanted to get to her. Either Roland or Robert kept hold of him beside the boat. The other voice we heard was an older man and I helped him inside the boat. We couldn't get Rene into the boat because he said he said his back was injured.

About this time we turned in the direction of a woman's voice yelling for help. She went under the water and they came back up only to disappear under the water.

The Goast guard boat arrived and instead of asking what they could do, they asked if we had a lighter so they could light a cigarette. When we told them were the other victims were they told us to go through the scene where the cars were in the water. The woman we had picked up and the older man got onto the C.G. boat but were told to get back on our boat. One of the C.G. employees by the name of Cris did get on our boat and was very professional and helped.

We took Cris and our passengers, includidng Rene who was still being held onto the side of the boat, to the Island emergency site.

Again our passengers were off-loaded, checked by personnel and reloaded, only to be unloaded again because of something about us not being an emergency transport unit.

We left the Island side, taking Cris to his boat that was still at the scene. Cris gets back onto his boat and another man gets on our boat who was an official of some sort. We then picked up some scuba divers and return to the site. It was complete chaos. One of the boats with Border Patrol agents almost ran over one of the divers.

One of the divers went into the water and upon returning to our boat said that there was a man in a pickup that was submerged under the water. The divers needed ozygen to be able to remain under water so we took them back to Port Isabel side. At that point we were told we were no longer needed.

The lights on the bridge from Port Isabel side to past the hight point were not working at the time of the accident, not even the beacon under the bridge was working.

This is a true and correct statement to the best of my knowledge and memory.

_____
Taken by:

_____
Signature of Witness

Date: 9/15/01  Time: 9:06 AM

**SUBSCRIBED AND SWORN TO BEFORE ME THE UNDERSIGNED AUTHORITY, ON THIS THE 15th DAY OF September, 2001, A.D.**

_____
**Notary Public for the
State of Texas**