*197*

# IN THE UNITED STATES DISTRICT COURT
## FOR THE SOUTHERN DISTRICT OF TEXAS
### BROWNSVILLE DIVISION

United States District Court
Southern District of Texas
FILED

JUN 2 1 2002

Michael N. Milby
Clerk of Court

| | |
|---|---|
| IN RE THE COMPLAINT AND PETITION OF BROWN WATER TOWING I, INC., AS OWNER, AND BROWN WATER MARINE SERVICE, INC., AS BAREBOAT CHARTERER, THE BROWN WATER V, ITS ENGINES, TACKLE, ETC., IN A CAUSE OF EXONERATION FROM OR LIMITATION OF LIABILITY | § § § § § § § § § § § | CIVIL ACTION NO. B- 01-157 ADMIRALTY |
| | § § § | CONSOLIDATED WITH |
| IN RE THE COMPLAINT AND PETITION OF AMERICAN COMMERCIAL LINES LLC AS OWNER, AND AMERICAN COMMERCIAL BARGE LINES, LLC, AS CHARTERER OF THE BARGES NM-315, VLB-9182, ACL-9933B, VLB-9173, IN A CAUSE OF EXONERATION FROM OR LIMITATIONOF LIABILITY | § § § § § § § § § § § | CIVIL ACTION NO. B-02-004 ADMIRALTY |

---

## RESCUER-CLAIMANTS' RESPONSE AND BRIEF IN OPPOSITION TO PETITIONERS BROWN WATER MARINE SERVICE, INC.'S AND BROWN WATER TOWING I, INC.'S MOTION FOR SUMMARY JUDGMENT

---

**LAW OFFICES OF FRANK ENRIQUEZ**
**State Bar No. 06630500**
**Federal Bar No. 3734**
**4200-B North Bicentennial**
**McAllen, Texas 78504**
**(956) 686-5291 Telephone**
**(956) 618-5064 Fax**


**ATTORNEYS FOR RESCUER-CLAIMANTS**

# TABLE OF CONTENTS

Page

INTRODUCTION…………………………………………………………...…1

STATEMENT OF THE ISSUES……………………………….………………...2

STATEMENT OF NATURE AND STAGE OF THE PROCEEDING…..……………....2

STATEMENT OF FACTS…………………………………………………………3

SUMMARY OF THE ARGUMENT……………………………………………5

IMPACT OR INJURY RULE………………………………………….…………6

ZONE OF DANGER………....………………………………..…………11

THE RESCUE DOCTRINE……………………………………....…...……16

CONCLUSION………………………………………………...…………18

PRAYER..………………………………………………………………...19

CERTIFICATE OF SERVICE…..………………………………………..20

# INDEX OF AUTHORITIES

Page

CASES:

Adams v. CSX Transp., Inc.,
  899 F2d 536 (CA6 1990).......................................................................11

Ainsworth v. Penrod Drilling Corp.,
  972 F.2d 546 (Fifth Cir. 1992)..........................................................6,9

Anselmi v. Penrod Drilling Corp.,
  813 F.Supp. 436 (E.D.La. 1993)........................................................14

Blome v. Aerospatiale Helicopter Corp.,
  924 F.Supp. 805 (S.D.Tex. 1996) affirmed 114 F.3d 1184 (Fifth Cir. 1997)......17

Chan v. Society Expeditions, Inc.,
  39 F.3d 1398 (9th Cir.1994)...........................................................13

Consolidated Rail Corp. v. Gottshall,
  512 U.S. 532, 114 S.Ct. 2396, 129 L.Ed.2d 427 (1994)...............6,7,8,10,11,12

Diagle v. Phillips Petroleum Co.,
  893 S.W.2d 121 (Tex.App.-Houston[1[st] Dist.] 1995, writ dism'd by agmt).....6,16

Elliott v. Norfolk & Western R. Co.,
  910 F.2d 1224 (CA4 1990)...............................................................11

Erie Railroad Co. v. Caldwell
  (C.C.A.6) 264 F. 947......................................................................17

Frederick v. Mobil Oil Corp.,
  765 F.2d 442 (Fifth Cir. 1985)..........................................................17

Gaston v. Flowers Transp.,
  866 F.2d 816 (5th Cir. 1989).........................................................10,11

Gough v. Natural Gas Pipeline Company of America,
  996 F.2d 763 (Fifth Cir. 1993)........................................................5,6,8,9

Hutton v. Norwegian Cruise Line Ltd.,
  144 F.Supp.2d 1325 (S.D.Fla. 2001)....................................................14

In re Complaint of Clearsky Shipping Corp.,
  1998 WL 560347.............................................................................12

Miles v. Apex Marine Corp.,
    489 U.S. 119, 115 S.Ct. 313 (1990)……….…………………………...….…..13

Plaisance v. Texaco, Inc.,
    966 F.2d 166 (Fifth Cir. 1992) (en banc)…..….…………..……………6,8,9,10

Pullman v. Bouchard Transportation Co., Inc.,
    2000 WL 1818503 (E.D.La)………………………………...…………………15

Ray v. Consolidated Rail Corp.,
    938 F.2d 704 (CA7 1991) cert. Denied, 502 U.S. 1048, 112 S.Ct. 914, 116
    L.Ed.2d 813 (1992)………………………………………………………………11

Ricardo N., Inc. v. Turcios De Argueta,
    907 S.W.2d 423 (Tex. 1995)……………………………….…………………18

Sandri v. Byram,
    (C.C.A.6) 30 F.2d 784……………………………………………...……….17

Sanford Bros. Boats, Inc. v. Vidrine,
    412 F.2d 958 (Fifth Cir. 1969)………………………………….…………..18

Wagner v. International Railway Co. (Cardozao, C.J.),
    232 N.Y. 176, 133 NE 437, 19 A.L.R. 1……………………….………..17

Yballa v. Sea-Land Services, Inc.,
    919 F.Supp. 1428 (D.Haw.1995)………...…………………….…………13

IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF TEXAS
BROWNSVILLE DIVISION

| | | |
|---|---|---|
| IN RE THE COMPLAINT AND | § | |
| PETITION OF BROWN WATER | § | |
| TOWING I, INC., AS OWNER, AND | § | |
| BROWN WATER MARINE SERVICE, | § | |
| INC., AS BAREBOAT CHARTERER, | § | |
| THE BROWN WATER V, ITS | § | CIVIL ACTION NO. B- 01-157 |
| ENGINES, TACKLE, ETC., IN A | § | ADMIRALTY |
| CAUSE OF EXONERATION FROM | § | |
| OR LIMITATION OF LIABILITY | § | |
| | § | |
| | § | CONSOLIDATED WITH |
| | § | |
| IN RE THE COMPLAINT AND | § | |
| PETITION OF AMERICAN | § | |
| COMMERCIAL LINES LLC AS | § | |
| OWNER, AND AMERICAN | § | CIVIL ACTION NO. B-02-004 |
| COMMERCIAL BARGE LINES, LLC, | § | ADMIRALTY |
| AS CHARTERER OF THE BARGES | § | |
| NM-315, VLB-9182, ACL-9933B, | § | |
| VLB-9173, IN A CAUSE OF | § | |
| EXONERATION FROM OR | § | |
| LIMITATIONOF LIABILITY | § | |

## RESCUERS-CLAIMANTS' RESPONSE AND BRIEF IN OPPOSITION TO PETITIONERS BROWN WATER MARINE SERVICE, INC.'S AND BROWN WATER TOWING I, INC.'S MOTION FOR SUMMARY JUDGMENT

**TO THE HONORABLE JUDGE OF SAID COURT:**

NOW COME, Claimants Rolando Lee Moya, Alberto Leroy Moya, Antonio Salinas Jr. and Roberto Espericueta and file this Response and Brief in Opposition to Petitioners Brown Water Marine Service, Inc.'s and Brown Water Towing I, Inc.'s Motion for Summary Judgment and as grounds therefor would show as follows:

## I. INTRODUCTION

1. From the beginning Brown Water has sought to limit its liability. First, by filing this litigation which it describes as a "CAUSE OF EXONERATION FROM OR

LIMITATION OF LIABILITY". Next, it asserted in its pleadings the spurious position that despite the death, damage and destruction it caused, its liability was limited to $270,000.00. It then took the position that despite the obvious damage suffered by business owners on both South Padre Island and Port Isabel, it had no liability to them. Apparently adopting a policy of non-responsibility and a strategy of chipping away at the block, Brown Water now takes the position that the rescuers, who were placed in harm's way by the destruction Brown Water created, did not legally suffer any "significant physical injury or impact" and, therefore, should not recover for their damages.

2. Under the law, these Rescuer-Claimants have suffered sufficient impact or injury such that the law allows for the recovery of their injuries. Even if the law does not recognize the physical impact or injuries they suffered, there are theories of law, which allow recovery under the circumstances.

## II. STATEMENT OF THE ISSUES

3. The question is whether Summary Judgment should be granted against Rescuer-Claimants in their claims for damages as a result of injuries suffered by them because of the collapse of the Port Isabel – South Padre Island Causeway.

## III. STATEMENT OF NATURE AND STAGE OF THE PROCEEDING

4. This case arises from damages resulting from the collapse of the Port Isabel – South Padre Island Causeway as a result of an allision by the Brown Water V Tug and four barges with the bridge. The case was instituted by the owners of the Brown Water V and the barges under separate cause numbers as a cause of exoneration from or limitation of liability. The cases were consolidated. Claims were filed and this Court granted Summary Judgment against the claims of Claimants with solely economic damages.

2

Brown Water alone files this Motion for Summary Judgment directed against Rescuer-

Claimants.

## IV. STATEMENT OF FACTS

5. In relevant part, the answer of Rescuer-Claimants to the Interrogatory Number

7 referred to by Brown Water in its motion is as follows:

> As a result of the collapse of the Port Isabel Causeway
> and because of our rescue efforts, we suffered physical injury
> in that we received cuts, bruises and burns. Initially, the barges
> and tug, when they first hit the Causeway, caused a first
> terrible collapse and a huge splash. When we heard the sound
> we were several hundred yards away. Within seconds a car
> came over the break in the causeway and tumbled into the
> Laguna Madre. We were shocked and horrified. However, we
> determined not to run but to try to rescue the passenger or
> passengers of that first vehicle. As we approached in the boat
> we saw other vehicles fall into the water, vehicle after vehicle.
> The noise and smell of gas was immense. As we approached
> the area where the vehicles fell, we heard another, second,
> blow to the causeway and more of the causeway fell, almost on
> top of our boat. We saw the causeway sway. The debris had it
> fallen on us would have sunk the boat and crushed us. As it
> was, it rocked the boat violently, tossing us around and almost
> overturning it.  I felt the physical impact of this action and
> parts of the boat hit me around my arms, knees, back, groin,
> stomach and shoulders.
>
> At first we thought that the magnitude of the break must
> have been visible to the cars traveling on the bridge. However,
> we saw more cars going off the bridge into the Laguna Madre.
> It became clear that they could not see the break because they
> did not step on the brakes until they were in the air and it was
> too late. That is, the brake lights did not go on until the
> vehicles were in the air. Also, although we were screaming to
> try to get the attention of the drivers before they went over, it
> became clear that they could not hear us. I guess the bridge was
> too high for our voices to carry. As we went toward the bridge
> we decided to try to get drivers attention by flashing our
> spotlight on the windshield of the oncoming cars. We also had
> flares in the boat and we lit and waved them. We had to pass
> the flares around because they gave off great amounts of sparks
> and they burned our skin. By passing them around we were
> able to avoid greater burns than we did suffer. Two of us

3

suffered some scarring. Roland Moya has a scar on his arms. Robert Espericueta has a scar on his upper leg where sparks burned through his clothes and on his arms. Albert Leroy Moya has scars on his right arm.

Although we had cellular phones with us and immediately called 911 to report the catastrophe, still we were alone at the scene for almost an hour. During that time many terrible things happened and we were able to save three people from drowning and dying in the Laguna Madre. We saw floating pieces of vehicles being carried by the current. Sometimes the pieces would strike the boat and would knock us down. We saw the lights of the vehicles under water. We saw heavy electrical wires sticking into the water. We saw a man trapped in his vehicle waving at us for help, not speaking, just waving.

We also used great effort in the successful rescue of the people we did, and subsequently assisting the Coast Guard. We also participated in the rescue efforts of the Port Isabel Fire Department in their subsequent attempts to rescue their chief, one of the victims. We did so because our boat was the only one able and willing to get close enough to the scene, because of its small size. Also, none of the other boats wanted to get near because there were exposed electrical wires from the bridge in the water and no one knew if they were live. We heard crackling sounds like electricity. But the Port Isabel Fire Department was desperate to get near to where their chief had fallen to try to save him. We were willing to go in since we had been there before and had not been electrocuted, so we volunteered to take the Fire Department divers to the scene. We were shocked to hear one of the scuba divers say they had found a body pinned behind the steering column of the vehicle. We also ferried victims to the Coast Guard boat and later to the Coast Guard station on the Island so they could receive medical attention. We assisted EMS on the island with two survivors, picking them up off the floor, holding IV bags and lighting. As can be expected from such efforts we suffered cuts and bruises. We experienced physical impact and injury from the collapse and our subsequent rescue efforts.

At the time we witnessed many truly horrifying things. We saw the bridge collapse. At first we thought that it was a bombing incident somehow connected to the World Trade tragedy just a few days earlier. We saw people die and terribly injured. We heard frightening noises. We were soaked and cold. We were, for what seemed like forever, alone. These and other things touched our soul and remain with us today and I have no doubt will remain with me for the rest of my life.

4

Reverend Hyde from Port Isabel immediately counseled me, recognizing the anguish I suffered in witnessing these terrible things and in being in danger. I have had flashbacks and nightmares and mental anguish. Because of what I went through I have recently been diagnosed with Post Traumatic Stress Syndrome.

We are fortunate to be alive and we are fortunate and honored to have participated in the rescue effort.

6. Additionally, attached as Exhibit 1 to the Appendix hereto and incorporated herein by reference, is the affidavit of Robert Espericueta indicating that when they delivered to EMS the victims of Brown Water that they saved from death in the Laguna Madre, the Rescuer-Claimants asked EMS for treatment of their burns and cuts. EMS, whose attention was justifiably focused on the victims rescued, nevertheless provided cold packs and medicinal creams that Rescuer-Claimants could apply to their wounds. After applying these, the Rescuer-Claimants returned to the scene of the tragedy to render further valuable assistance.

## V. SUMMARY OF THE ARGUMENT

7. There are three distinct theories of law that allow Rescuer-Claimants recovery. First, the general rule Brown Water would have this Honorable Court adopt is that an impact *or* injury is sufficient to allow recovery. The primary case cited by Brown Water in this area is *Gough v. Natural Gas Pipeline Company of America,* 996 F.2d 763 (Fifth Cir. 1993). However, *Gough, supra,* and the other cases cited by Brown Water are probably no longer authoritative for the restrictive rule they state. Nevertheless, Rescuer-Claimants qualify even under that restrictive rule because they have experienced impact and have suffered tangible injuries. Second, even in the absence of physical impact or injury, if the Resucer-Claimants were in the zone of danger, then they are entitled to

5

recover. *Consolidated Rail Corp. v. Gottshall,* 512 U.S. 532, 114 S.Ct. 2396, 129 L.Ed.2d 427 (1994). Although *Gottshall* is a FELA case, it has been applied in Admiralty Law settings. The third rule of law applicable is the Rescue Doctrine. *Daigle v. Phillips Petroleum Co.,* 893 S.W.2d 121 (Tex.App.-Houston[1st Dist.] 1995, writ dism'd by agmt).* As a matter of public policy the Rescue Doctrine applies to the heroic efforts of those who rush into danger to save others from peril.

## VI. THE IMPACT OR INJURY RULE

8. In opposing a Rescuer-Claimants recovery Brown Water cites a trilogy of cases: *Gough v. Natural Gas Pipeline Company of America,* 996 F.2d 763 (Fifth Cir. 1993); *Ainsworth v. Penrod Drilling Corp.,* 972 F.2d 546 (Fifth Cir. 1992); and *Plaisance v. Texaco, Inc.,* 966 F.2d 166 (Fifth Cir. 1992)(*en banc*). *Brown Water Motion page 3, paragraph 10.* An analysis of these cases shows that they do not support Brown Water's assertion. Rather, they support Rescuer-Claimants.

9. The core of Brown Water's opposition to recovery and its statement of the rule it would like this Honorable Court to follow lies in paragraph 9 of its Motion, which reads as follows: "However, because they are unable to produce any evidence nor otherwise establish that they sustained any *significant physical injury or impact,* under the general maritime law, the claims asserted by claimants for purely emotional injuries are not cognizable against Brown Water." (emphasis added). The way Brown Water phrases it, *"significant injury or impact",* it leads one to believe that the law requires a significant injury *or a significant impact.* However, a correct reading of the rule allows recovery if a Rescuer-Claimant can "establish that he had suffered a physical impact or a significant physical injury." *Gough v. Natural Gas Pipeline Company of America,* 996

F.2d 763, 766 (Fifth Cir. 1993). Indeed the Supreme Court in analyzing the various rules stated that, "Under the physical impact test, a plaintiff seeking damages for emotional injury stemming from a negligent act must have contemporaneously sustained a physical impact (no matter how slight) or injury due to the defendant's conduct." *Consolidated Rail Corp. v. Gottshall,* 512 U.S. 532, at 547, 114 S.Ct. 2396, 129 L.Ed.2d 427 (1994).

10. *IMPACT TEST.* Undoubtedly, Rescuer-Claimants, as shown by Interrogatory 7 and the affidavit of Roberto Espericueta, have established that they received physical impacts. Their boat was almost capsized by the violence of the waves caused by portions of the collapsing causeway. This severe rocking of the boat caused them to be hit on various portions of their bodies. Floating debris from the destroyed vehicles again shook their boat causing further impacts on their bodies. Burning sparks from their use of flares to get the attention of and save the vehicles continuing on the causeway, was further impact. Additionally, they were sprayed and soaked both from the various large splashes caused by falling debris and from water from the huge broken water main spilling onto them. They suffered contusions, burns and bruises. They feared for their lives.

11. Focusing on the impact prong of the rule, clearly, they suffered impacts as would entitle them to maintain an action against Brown Water. Neither *Gough, Plaisance,* nor *Ainsworth,* supra, support Brown Water's position. For example, the Court in *Gough, supra,* found a physical impact.

> Captain Gough was located in the pilot house when the steamer collided with NGP's pipeline. Within seconds, flames spread towards Captain Gough. He could feel the heat, and immediately after he left the pilot house fire engulfed it. To avoid the flames, Captain Gough had to jump overboard into the Gulf of Mexico. Even in the water, the heat was unbearable, and Captain Gough inhaled fumes from the fire. He also ingested

7

> salt water, as another victim of the disaster pulled him
> underwater. Besides being submerged in the ocean,
> Captain Gough suffered multiple contusions. Finally,
> some testimony suggests that Captain Gough suffered
> from minor burns, although no medical record
> confirmed these opinions.
>
> Keeping in mind its purpose, these facts meet
> the impact test.

*Gough v. Natural Gas Pipeline Company of America,* 996 F.2d 763, 766 (Fifth Cir.

1993). The *Gough* Court further noted as an example that an impact described as a "jolt"

and being thrown in the water met the test. *Id.* It also pointed out that the impact test had

been met in another case where the plaintiff had been drenched in chemicals.

> Our precedent also supports the conclusion that Captain
> Gough has suffered the requisite impact. In *Hagerty,*
> the seaman was drenched with toxic and carcinogenic
> chemicals. At the time, he felt dizziness, leg cramps,
> and stinging in his extremities. As a result of this
> accident, he developed cancerphobia. We held that
> drenching with chemicals constituted a sufficient
> impact to support the recovery of emotional distress
> damages. *Hagerty,* 788 F.2d at 318 n. 1.

*Id.* This is consistent with the Supreme Court's analysis that an impact, however slight,

meets the test. *Consolidated Rail Corp. v. Gottshall,* 512 U.S. 532, at 547, 114 S.Ct.

2396, 129 L.Ed.2d 427 (1994).


12. *Plaisance v. Texaco, Inc.,* 966 F.2d 166 (Fifth Cir. 1992), cited by Brown

Water does not support its position. It did not involve physical impact or injury.

> The crews from the flotilla and other vessels that had
> responded to the fire extinguished the fire in less than
> thirty minutes. Mr. Plaisance did not personally
> participate in fighting the fire. The explosion did not
> damage the TOMMY CROSBY, and the fire did not
> spread to it from the barge or the other tug. Mr.
> Plaisance was never in danger and, fortunately, no one

8

was injured by the fire.

*Id.* at 167. It simply does not apply to the facts experienced by the Rescuer-Claimants.

13. Likewise, *Ainsworth v. Penrod Drilling Corp.,* 972 F.2d 546 (Fifth Cir. 1992) relied upon by Brown Water does not support its position. As noted by the Court, "The record plainly establishes, however, that, in witnessing the accident and in participating in the rescue efforts, Mr. Ainsworth suffered no physical contact or impact." *Id.* At 547.

14. *INJURY TEST.* Focusing on the injury prong of the rule, the Rescuer-Claimants suffered sufficient physical injuries as would entitle them to maintain an action against Brown Water. Once again, neither *Gough, Plaisance,* nor *Ainsworth, supra,* support Brown Water's position. The Court in *Gough, supra,* found a physical injury where Captain Gough "suffered multiple contusions" and the testimony *suggested* that he "suffered from minor burns, although no medical records confirmed these opinions." *Gough v. Natural Gas Pipeline Company of America,* 996 F.2d 763, 766 (Fifth Cir. 1993). In analyzing the injuries under the significant physical injury test it equated "significant" with "tangible", thereby finding that Captain Gough likewise met that test. *Id.* In *Plaisance v. Texaco, Inc.,* 966 F.2d 166 (Fifth Cir. 1992), as noted above, "no one was injured . . . ." *Id.* at 167. Finally, in *Ainsworth v. Penrod Drilling Corp.,* 972 F.2d 546 (Fifth Cir. 1992) it was pointed out that the injuries complained of were trivial in that they consisted of an upset stomach, headaches or pulled muscle. *Id.* at 547. As stated by the Court, "Mr. Ainsworth's deposition testimony demonstrates that the helicopter crash neither threatened him with physical harm nor caused him to fear that it would harm him." *Id.* at 548. The physical injuries suffered by Rescuer-Claimants are qualitatively more severe than those alleged in *Ainsworth.*

15.  Summarizing thus far, Rescuer-Claimants meet both prongs of the impact or injury test. The rule simply requires some physical impact, no matter how slight, or some tangible physical injury.

16.  *DOUBTFUL AUTHORITY.*  There is a further reason why Brown Water's reliance on the *Gough, Plaisance,* and *Ainsworth,* trilogy is misplaced. If Brown Water claims that those cases stand for the proposition that there must be significant physical impact or significant physical injury before a recovery can be had for emotional injuries, they are probably no longer authoritative. They all either discuss or rely explicitly on the case of *Gaston v. Flowers Transp.,* 866 F.2d 816, 817 (5th Cir.1989) (holding that a bruised elbow was a "trivial physical injury" in a suit for purely emotional injuries). For example, in *Plaisance, supra,* the Court stated, "To avoid any possible confusion that our decision to review this case en banc may cause, we emphasize that *Gaston v. Flowers Transp., 866 F.2d 816 (5th Cir.1989),* continues to represent the law of this circuit." *Plaisance v. Texaco, Inc.,* 966 F.2d 166, 169 (Fifth Cir. 1992). What Brown Water fails to point out is that in 1994, a date after all the cases it cites as authoritative, the Supreme Court of the United States adopted the zone of danger test for the recovery of purely emotional injuries in the context of FELA. *Consolidated Rail Corp. v. Gottshall,* 512 U.S. 532, 114 S.Ct. 2396, 129 L.Ed.2d 427 (1994).  The importance of *Gottshall, supra,* is pointed out in its explanation of granting certiorari, where it refers to *Gaston.*

> We granted certiorari, 510 U.S. 912, 114 S.Ct. 299, 126 L.Ed.2d 247 (1993), to resolve a conflict among the Courts of Appeals concerning the threshold standard that must be met by plaintiffs bringing claims for negligent infliction of emotional distress under FELA. [FN1]

> FN1. Compare the decisions below
> with *Ray v. Consolidated Rail Corp.,*
> 938 F.2d 704 (CA7 1991), cert.
> denied, 502 U.S. 1048, 112 S.Ct.
> 914, 116 L.Ed.2d 813 (1992); *Elliott*
> *v. Norfolk & Western R. Co.,* 910
> F.2d 1224 (CA4 1990); *Adams v.*
> *CSX Transp., Inc.,* 899 F.2d 536
> (CA6 1990); *Gaston v. Flowers*
> *Transp.,* 866 F.2d 816 (CA5 1989).

*Id.* at 540 and 541. Consequently, it is extremely doubtful that *Gaston* and the trilogy of cases relied on by Brown Water, *Gough, Plaisance,* and *Ainsworth,* are still authoritative.

## VII. THE ZONE OF DANGER.

17.  The zone of danger test does not require *any* physical impact or injury as a prerequisite to the recovery for purely emotional injuries. Consequently, if this Honorable Court believes, as Brown Water would have it, that the impact or injury rule requires a *significant* injury or *significant* impact, then the zone of danger test provides an alternate ground of recovery for Rescuer-Claimants. Brown Water fails to discuss this rule of recovery.

18.  In *Consolidated Rail Corp. v. Gottshall,* 512 U.S. 532, 114 S.Ct. 2396, 129 L.Ed.2d 427 (1994), the Supreme Court of the United States announced the applicability of the zone of danger rule for the recovery of emotional damages in an FELA case. In discussing the history of the test the court said,

> It came into use at roughly the same time as the physical impact test, and had been adopted by several jurisdictions at the time FELA was enacted. See Throckmorton, *supra,* at 264-265, and n. 28.. . . . See also Bohlen, Right to Recover for Injury Resulting from Negligence Without Impact, 50

11

> Am.L.Reg. 141, and nn. 3-5 (1902).  Perhaps based
> on the realization that "a near miss may be as
> frightening as a direct hit," Pearson, U.Fla.L.Rev.,
> at 488, the zone of danger test limits recovery for
> emotional injury to those plaintiffs who sustain a
> physical impact as a result of a defendant's
> negligent conduct, or who are placed in immediate
> risk of physical harm by that conduct.    That is,
> "those within the zone of danger of physical impact
> can recover for fright, and those outside of it
> cannot." *Id.,* at 489.

*Id.* at 547 and 548. (footnotes omitted).


19.    *Gottshall, supra,* is important in the Brown Water case because FELA

concepts are incorporated into the Jones Act and are instructive in general admiralty law

cases. A recent case which is similar to Brown Water and which has called upon the U.S.

District Judge to review many of the same issues this Honorable Court has or will pass

upon is *In re Complaint of Clearsky Shipping Corp.,* 1998 WL 560347. In ruling that

zone of danger is the test, it discussed *Gottshall.*

> After reviewing the various common law tests in
> this area, the Court settled on a "zone of danger"
> test, permitting recovery not only by those plaintiffs
> who sustain a physical impact as a result of a
> defendant's negligent conduct but also those who
> are placed in immediate risk of physical harm by
> that conduct. [FN11]


> FN9. *Consolidated Rail Corp. v.*
> *Gottshall,* 512 U.S. 532, 114 S.Ct.
> 2396, 129 L.Ed.2d 427 (1994).


> FN10. *Id.* at 550, 114 S.Ct. at 2408.


> FN11. *Id.* at 2410-11.

The *Gottshall* decision is the most important authority for purposes of emotional distress claims in this proceeding because the Jones Act incorporates the liability and causation concepts of FELA and case law thereunder, and rules followed in Jones Act cases are instructive in general maritime law cases. [FN12] Indeed, following the Supreme Court's lead, several lower courts already have applied the zone of danger rule in Jones Act and general maritime law cases. [FN13]

> FN12. *Miles v. Apex Marine Corp.,* 489 U.S. 119, 115 S.Ct. 313 (1990).

> FN13. *See Chan v. Society Expeditions, Inc.,* 39 F.3d 1398, 1409 (9th Cir.1994); *Yballa v. Sea-Land Services, Inc.,* 919 F.Supp. 1428, 1435 (D.Haw.1995).

*Id.* at 2. *Clearsky, supra,* is not unique in applying the zone of danger test in maritime law. Even before *Gottshall* the zone of danger test had been applied.

20. In 1993 a case was decided which had these issues before it. A crane operator on an off shore oil rig heard two explosions on the rig. He was in bed at the time. There were no injuries.

It is undisputed that the plaintiff experienced no physical injuries as a result of the events on November 23, 1989. To this day Mr. Anselmi is, by his own admission, physically capable of doing any type of work. But he claims to be emotionally disabled. One week after the explosions, the plaintiff was reassigned to another Penrod rig; he was unable to complete more than six hours of his new assignment.

13

*Anselmi v. Penrod Drilling Corp.,* 813 F.Supp. 436, 438 (E.D.La. 1993). The Defendant made a motion for summary judgment, placing the issue of pure emotional injuries, with no physical contact or injury, before the Court. "This motion requires the Court to determine whether, under any theory of law, a seaman may recover for purely emotional injuries under the Jones Act and general maritime law if he suffered no physical contact." *Id.* at 439. The Court denied summary judgment.

> Whether all this puts one within "the zone of danger" is a question of fact for the jury, but it is enough for purposes of this motion that the plaintiff has made an evidentiary showing that he felt threatened within an articulable area of actual threat to his well-being. Summary relief is not appropriate on these facts.

*Id.* at 442. Similarly, Brown Water's motion fails.

21. The zone of danger test has been applied as recently as 2000 and 2001 in the maritime law context. One case involved a collision at sea with a cruise ship. It involved the claims of 1744 passengers. The Court applied maritime law, the zone of danger rule and denied summary judgment. *Hutton v. Norwegian Cruise Line Ltd.,* 144 F.Supp.2d 1325 (S.D.Fla. 2001).

> Defendant seeks summary judgment against the named Plaintiff and any other class members who fail to demonstrate a non- trivial physical manifestation of an emotional injury under the "zone of danger" test. Because this Court finds that the Plaintiffs' claims meet all of the elements of the zone of danger test, Defendant's Motion for Summary Judgment is DENIED.

*Id.* at 1326.

22. In the second case, which involved a barge and tow, the Defendants, once again sought summary judgment for "purely emotional injuries", and, once again, the Court denied the motion.

> Defendants seek to dismiss plaintiff Donald Pullman's claims, arguing that, as a matter of law, he may not recover damages for a purely emotional injury under the Jones Act or General Maritime Law. After the Court held a hearing on November 21, 2000, the parties supplemented the record with four depositions. For the following reasons, the Court denies defendants' motion for summary judgment.

*Pullman v. Bouchard Transportation Co., Inc.,* 2000 WL 1818503, page 1 (E.D.La.).

> As the zone of danger is the proper framework of analysis, the Court must determine whether Pullman was in the zone of danger. Pullman does not allege that he suffered any physical injury. Therefore, the inquiry is whether plaintiff was threatened with imminent physical impact. After reviewing the record, the Court finds that Pullman's statements concerning the "buckling," "bowing," and "cracking" of the ceiling of the living quarters and his fears that the roof would cave in on him create a question of material fact concerning whether Pullman faced a threat of imminent physical impact. (Pullman's Mar. 9, 1998 Dep. at 137, 167. *See also* Hanawalt Dep. at 13 ("He pictures the waves, the sea, the hitting, the roof and then he fears that it will cave in.").Therefore, the Court denies defendants' motion for summary judgment.

*Id.* at page 3.

23. In summary on zone of danger, Rescuer-Claimants were at the very center of the danger. Indeed, it is common knowledge that the causeway was rendered so weak by the multiple blows the Brown Water inflicted on the structure that on the subsequent day

another span of the causeway collapsed. The Rescuer-Claimants were within the zone of danger, as they had to be in order to save the lives they did.

## VIII.  THE RESCUE DOCTRINE.

24.  A third basis for recovery, which Brown Water fails to discuss, is the well-known Rescue Doctrine. Its source seems to be state law. Even in the absence of impact or injury the Rescue Doctrine allows for recovery for "purely" mental anguish damages. "The rescue doctrine applies when a defendant negligently creates a situation that necessitates a rescue effort, and the rescuer's subsequent injuries are reasonably foreseeable as a natural and probable result of such negligence." *Daigle v. Phillips Petroleum Co.,* 893 S.W.2d 121, 122 (Tex.Ap.-Houston[1st Dist.] 1995, pet. dism'd by agmt.). Even though the Plaintiff in that case was unable to save anyone, the Court held that as long as the rescuer had a reasonable belief that in the aftermath of the peril there were survivors, the rescue doctrine applies. *Id.* at 123. The Court reversed the trial court's granting of summary judgment and remanded the case for trial. Rescuer-Claimants are in a much better position to rely on the Rescue Doctrine since they were successful in saving people.

25.  Maritime law is not averse to the application of such a doctrine.

> Of course, with "admiralty jurisdiction comes the application of substantive admiralty law." . . . . However, that this case is within the Court's admiralty jurisdiction does not mean, in and of itself, that state law cannot apply.  As in other areas governed by federal law, federal courts sitting in admiralty have frequently borrowed or adopted state law as the rule of decision . . . .   Broadly stated, state law may be applied in admiralty cases unless it conflicts with federal law by "prejudic [ing] the 'characteristic features' of federal maritime law, or

> interfer[ing] with the 'proper harmony and uniformity of that law.' " . . . .

*Blome v. Aerospatiale Helicopter Corp.,* 924 F.Supp. 805, 809 (S.D.Tex. 1996)(citations omitted), affirmed 114 F.3d 1184 (Fifth Cir. 1997). Rescue at sea would seem to be a "characteristic feature" of maritime law. In fact, the Rescue Doctrine has been applied in the context of Maritime Law. In *Frederick v. Mobil Oil Corp.,* 765 F.2d 442, 446 n.3 (Fifth Cir. 1985) the Court noted that when it does not conflict with admiralty law, state law can be applied. The Court then applied the Rescue Doctrine even though it was arguable that the Plaintiff was trying to rescue property, not persons. *Id.* at 447.

26. Also in a tug and barge case, the Court applied the Rescue Doctrine to assist in establishing causation.

> 'But it has long been settled that the chain of causation is not broken by an intervening act which is a normal reaction to the stimulus of a situation created by negligence, and such normal reaction has been held to include the instinct toward self-preservation, Stott v. Shepard, 2 W.Bl. 892 (the lighted squib case), and the equally natural impulse to rush to others' assistance in emergency, <u>Wagner v. International Railway Co. (Cardozo, C.J.), 232 N.Y. 176, 133 N.E. 437, 19 A.L.R. 1</u> (the danger invites rescue doctrine). This rule of causation has been repeatedly recognized by this court. <u>Sandri v. Byram (C.C.A.6) 30 F.2d 784, 786; Erie Railroad Co. v. Caldwell (C.C.A.6) 264 F. 947.</u> * * * To determine whether there was a continuous succession of events leading proximately from fault to injury, the test is not whether the plaintiff was acting in performance of his duty when injured, but whether his act was a normal response to the stimulus of a dangerous situation created by the fault.'

*Sanford Bros. Boats, Inc. v. Vidrine,* 412 F.2d 958, 966 (Fifth Cir. 1969). The Rescue Doctrine does not conflict with Maritime Law. It is very compatible with Maritime Law and has been applied by the Fifth Circuit in that context.

27.    In point of fact there is a doctrine within Maritime Law which closely parallel's the Rescue Doctrine. It is known as the *Marine* Rescue Doctrine and creates a duty by a ship when a person falls overboard. In those circumstances, a ship has a *duty* to search as long as reasonably possible and to use every reasonable means to retrieve. *Ricardo N., Inc. v. Turcios De Argueta,* 907 S.W.2d 423, 426 (Tex. 1995).

28.    The compatibility of the Rescue Doctrine with Admiralty Law is undeniable. The Rescue Doctrine serves as an additional theory of recovery for Rescuer-Claimants.

## IX.  CONCLUSION.

29.    There are at least three doctrines which allow Rescuer-Claimants recovery, the Impact or Injury Rule, the Zone of Danger Test and the Rescue Doctrine. Brown Water, in its motion ignores the Zone of Danger Test and the Rescue Doctrine. This alone is sufficient reason to deny the Motion For Summary Judgment.

30.    The one rule it does address, the Impact or Injury Rule, it phrases in such a deceptive fashion as to lead one to believe that it places the burden on Rescuer-Claimants to show evidence of *significant* impact or *significant* injury. As pointed out, Rescuer-Claimants need only show any impact, no matter how slight, or a tangible injury. This they have done.

31.    Brown Water further fails to point out to the Court that the cases, which rely upon the Impact or Injury Rule, are probably no longer authoritative because of the Supreme Court case of *Gottshall, supra* and its progeny.

18

32. Your Rescuer-Claimants have gone further and shown facts which bring them within the Zone of Danger Test and the Rescue Doctrine.

**PRAYER**

33. Wherefore, Premises Considered, Rescuer-Claimants pray that Brown Water's Motion For Summary Judgment be DENIED, and for general relief.

Respectfully submitted,

LAW OFFICES OF FRANK ENRIQUEZ
4200-B North Bicentennial
McAllen, Texas 78504
Tel. (956) 686-5291
Fax (956) 618-5064

By: _____
Francisco J. Enriquez
State Bar No.: 06630500
Federal Bar No.: 3734
Roberto D. Puente
State Bar No.: 24013359
Federal Bar No.: 24238

ATTORNEY FOR CLAIMANTS

## CERTIFICATE OF SERVICE

I hereby certify that on this the *20th* day of June 2002, a true and correct copy of the foregoing instrument was forwarded to all counsel of record pursuant to the Federal Rules of Civil Procedure.

Will W. Pierson
Royston, Razor, Vickery & Williams
1700 Wilson Plaza West
606 N. Carancahua
Corpus Christi, Texas 78476

Keith N. Uhles
Royston, Razor, Vickery & Williams
55 Cove Circle
P.O. Box 3509
Brownsville, Texas 78523

Glen Goodier
Jones, Walker, Waechter, Poitevent,
Carrere & Denegre, L.L.P.
201 St. Charles Avenue, 48th Floor
New Orleans, Louisiana 70170-5100

Less Cassidy
Woolsey & Cassidy, P.C.
1020 Bank of America
500 North Water Street
Corpus Christi, Texas 78471

Raymond L. Thomas
Kittleman, Thomas, Ramirez & Gonzalez
4900-B North 10th Street
McAllen, Texas 78504

John David Franz
Law Offices of John David Franz
400 N. McColl
McAllen, Texas 78501

Ray R. Marchan
Watts & Heard, L.L.P.
1926 E. Elizabeth
Brownsville, Texas 78520

J. Chad Gauntt
Gauntt & Kruppstadt, L.L.P.
9004 Forest Crossing Dr. Suite C
The Woodlands, Texas 77381

Geoffrey Amsel
SBC Management Services
1010 N. St. Mary's, Room 1403
San Antonio, Texas 78215

Thomas E. Quirk
Law Offices of Aaron & Quirk
901 N.E. Loop 410, Suite 903
San Antonio, Texas 78209-1307

Julian Rodriguez, Jr.
100 W. Pecan
McAllen, Texas 78501

John and Mary McCoy
514 Brookside Pass
Cedar Park, Texas 78613

Juan A. Magallanes
Magallanes, Hinojosa & Mancias, P.C.
1713 Boca Chica Blvd.
Brownsville, Texas 78520

Veronica Farias
Law Office of Veronica Farias
2854 Boca Chica Blvd.
Brownsville, Texas 78521

20

S. Mark Strawn
Schirmeister Ajamie, L.L.P.
711 Louisiana Street, Suite 2150
Houston, Texas 77002

Richard Leo Harrell
The Edwards Law Firm, L.L.P.
802 N. Carancahua, Suite 1400 (78470)
P.O. Box 480
Corpus Christi, Texas 78403-0480

James B. Manley
3616 Preston Road
Pasadena, Texas 77505

Heriberto Medrano
Law Offices of Heriberto Medrano
1101 West Tyler
Harlingen, Texas 78550

Jack F. Gilbert
Office of the Attorney General
Transportation Division
Post Office Box 12548
Austin, Texas 78711-2548

Jim S. Hart
Williams Bailey Law Firm, L.L.P.
8441 Gulf Freeway, Suite 600
Houston, Texas 77017

William Q. McManus
McManus & Crane. L.L.P.
209 West Juan Linn
P.O. Box 2206
Victoria, Texas 77902-2206

Robert and Virginia Fandrich
5101 Verdi Way
Stockton, CA 985207

Mark J. Spansel
Adams & Reese, L.L.P.
4500 One Shell Square
New Orleans, LA 70139

FRANK ENRIQUEZ

IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF TEXAS
BROWNSVILLE DIVISION

| | | |
|---|---|---|
| IN RE THE COMPLAINT AND | § | |
| PETITION OF BROWN WATER | § | |
| TOWING I, INC., AS OWNER, AND | § | |
| BROWN WATER MARINE SERVICE, | § | |
| INC., AS BAREBOAT CHARTERER, | § | |
| THE BROWN WATER V, ITS | § | CIVIL ACTION NO. B- 0l-157 |
| ENGINES, TACKLE, ETC., IN A | § | ADMIRALTY |
| CAUSE OF EXONERATION FROM | § | |
| OR LIMITATION OF LIABILITY | § | |
| | § | |
| | § | CONSOLIDATED WITH |
| | § | |
| IN RE THE COMPLAINT AND | § | |
| PETITION OF AMERICAN | § | |
| COMMERCIAL LINES LLC AS | § | |
| OWNER, AND AMERICAN | § | CIVIL ACTION NO. B-02-004 |
| COMMERCIAL BARGE LINES, LLC, | § | ADMIRALTY |
| AS CHARTERER OF THE BARGES | § | |
| NM-315, VLB-9182, ACL-9933B, | § | |
| VLB-9173, IN A CAUSE OF | § | |
| EXONERATION FROM OR | § | |
| LIMITATIONOF LIABILITY | § | |

APPENDIX TO RESCUER-CLAIMANTS' RESPONSE AND BRIEF
IN OPPOSITION TO PETITIONERS BROWN WATER MARINE
SERVICE, INC.'S AND BROWN WATER TOWING I, INC.'S
MOTION FOR SUMMARY JUDGMENT

LAW OFFICES OF FRANK ENRIQUEZ
State Bar No. 06630500
Federal Bar No. 3734
4200-B North Bicentennial
McAllen, Texas 78504
(956) 686-5291 Telephone
(956) 618-5064 Fax


ATTORNEYS FOR RESCUER-CLAIMANTS

## TABLE OF CONTENTS

Tab

AFFIDAVIT OF ROBERTO ESPERICUETA…………………………………………....…1

IN RE COMPLAINT OF CLEARSKY SHIPPING CORP…………..………………....2

PULLMAN V. BOUCHARD TRANSPORTATION CO., INC…………..…………….....3

CERTIFICATE OF SERVICE…..………………………………………………………....4

## IN THE UNITED STATES DISTRICT COURT
## FOR THE SOUTHERN DISTRICT OF TEXAS
## BROWNSVILLE DIVISION

| | | |
|---|---|---|
| IN RE THE COMPLAINT AND | § | |
| PETITION OF BROWN WATER | § | |
| TOWING I, INC., AS OWNER, AND | § | |
| BROWN WATER MARINE SERVICE, | § | |
| INC., AS BAREBOAT CHARTERER, | § | |
| THE BROWN WATER V, ITS | § | CIVIL ACTION NO. B- 0l-157 |
| ENGINES, TACKLE, ETC., IN A | § | ADMIRALTY |
| CAUSE OF EXONERATION FROM | § | |
| OR LIMITATION OF LIABILITY | § | |
| | § | |
| | § | CONSOLIDATED WITH |
| | § | |
| IN RE THE COMPLAINT AND | § | |
| PETITION OF AMERICAN | § | |
| COMMERCIAL LINES LLC AS | § | |
| OWNER, AND AMERICAN | § | CIVIL ACTION NO. B-02-004 |
| COMMERCIAL BARGE LINES, LLC, | § | ADMIRALTY |
| AS CHARTERER OF THE BARGES | § | |
| NM-315, VLB-9182, ACL-9933B, | § | |
| VLB-9173, IN A CAUSE OF | § | |
| EXONERATION FROM OR | § | |
| LIMITATIONOF LIABILITY | § | |

## AFFIDAVIT OF ROBERTO ESPERICUETA

BEFORE ME, the undersigned authority, on this day, personally appeared ROBERTO ESPERICUETA, who being duly sworn by me, deposed and stated on his oath as follows:

My name is Roberto Espericueta. I live in Mission, Hidalgo County, Texas. I am over the age 21 years and am competent and authorized to make this affidavit.

1. Myself, two cousins, Rolando Lee Moya, Alberto Leroy Moya and Antonio Salinas were in my boat fishing in the Laguna Madre about 200 to 300 or so yards away from the Queen Isabella Causeway, the bridge that connects Port Isabel to South Padre Island. At about 2:00 a.m. we all heard a loud noise that came from the direction of where the bridge is located. We saw a huge splash rise out of the water. We initially thought that there was a horrific accident on top of the bridge which caused several cars to go over the side of the bridge and plummet into the water. We then cut anchor from my boat and began to toss our equipment overboard in the hopes of helping people out of the water. We then proceeded

towards the Queen Isabella Causeway and noticed that there was an enormous part of the bridge missing.

2. At the time I was 22 years of age, Rolando Lee Moya was 24 years of age, Alberto Leroy Moya was 22 years of age, and Antonio Salinas Jr. was 23 years of age. At the time we were doing some weekend fishing as we used to do quite often. At the time I was self-employed as a developer/contractor. Rolando Lee Moya was a student at Pan-Am, Alberto Leroy Moya was a employed by Texas State Bank as a Supervisor, and Antonio Salinas Jr. was employed by Professional Medical Technologies, Inc.

3. When the bridge collapsed and we got near it in order to rescue people, we saw that the huge water line that goes from Port Isabel to South Padre Island was broken. It was spilling water at a great rate and the sound was extremely loud. Because of our location where the bridge collapsed, a lot of water fell on us and soaked us.

4. When we delivered the victims to EMS we requested from EMS treatment for our burns and cuts. Although their attention was focused on the victims who fell off the bridge, they provided us with cold packs and creams for our burns and wounds. We applied them to our burns and cuts.

5. On September 15, 2002, I became aware that an additional portion of the bridge collapsed.

FURTHER AFFIANT SAYETH NOT.

ROBERTO ESPERICUETA

SUBSCRIBED AND SWORN TO BEFORE ME this ___19___ day of June 2002

Notary Public
In and for the State of Texas
My Commission Expires: 2-1-2005



(Cite as: 1998 WL 560347 (E.D.La.))

**H**
Only the Westlaw citation is currently available.

United States District Court, E.D. Louisiana.

In re COMPLAINT OF CLEARSKY SHIPPING
CORP., as Owner, and Cosco (H .K.)
Shipping Company Limited, as Owner of the M/V
Bright Field, for Exoneration
from or Limitation of Liability

Nos. Civ.A. 96-4099, Civ.A. 96-4047, Civ.A. 96-
4048, Civ.A. 96-4077, Civ.A. 96-
4090, Civ.A. 96-4097, Civ.A. 96-4098, Civ.A. 96-
4193, Civ.A. 97-89.

Aug. 28, 1998.

### MEMORANDUM AND ORDER

SEAR, Chief J.

*Background*

*1 This admiralty proceeding arises from the allision
of the M/V BRIGHT FIELD with a portion of the
New Orleans riverfront known as the New Orleans
Riverwalk. On December 14, 1996, the M/V
BRIGHT FIELD was traveling downriver on the
Mississippi River, en route to Japan with a cargo of
approximately 60,000 metric tons of grain that had
been loaded in Reserve, Louisiana. After the M/V
BRIGHT FIELD passed underneath the Crescent
City Connection, a bridge over the river, it struck and
damaged parts of a wharf including the Riverwalk
shopping center, One River Place condominium, the
New Orleans Hilton Riverside Hotel, and other
nearby structures.

On December 18, 1996, plaintiff Clearsky Shipping
Corporation, as owner, and COSCO (H.K.) Shipping
Company, Ltd., as manager, of the M/V BRIGHT
FIELD, filed a petition for exoneration from or
limitation of liability in this district, pursuant to 46
U.S.C. § 183 *et seq.* and Rule F of the Supplemental
Rules for Certain Admiralty and Maritime Claims
("Admiralty Rules"). More than 1200 claims for
alleged injuries and property damage have been filed
in the limitation proceeding.

Plaintiffs in limitation move for summary judgment
against certain claimants on grounds that they seek
damages solely for alleged emotional injuries but
have no medical or other evidence of such injuries.
Opposition memoranda have been filed on behalf of
various individual claimants, and a general
opposition has been filed by lead counsel Walter
Leger and Russ Herman.

*Discussion*

Summary judgment should be granted "if the
pleadings, depositions, answers to interrogatories,
and admissions on file, together with the affidavits, if
any, show that there is no genuine issue as to any
material fact and that the moving party is entitled to
judgment as a matter of law." [FN1] This language
"mandates the entry of summary judgment, after
adequate time for discovery and upon motion, against
a party who fails to make a sufficient showing to
establish the existence of an essential element to that
party's case, and on which that party will bear the
burden of proof at trial ." [FN2] A complete failure
of proof on an essential element renders all other
facts immaterial because there is no longer a genuine
issue of material fact. [FN3]

FN1. Fed.R.Civ.P. 56(c).

FN2. *Celotex Corp. v. Catrett,* 477 U.S. 317,
322, 106 S.Ct. 2548, 2552, 91 L.Ed.2d 265
(1986).

FN3. *Id.*

The party moving for summary judgment always
bears the initial responsibility of informing the court
of the basis for its motion and identifying those
portions of the pleadings, deposition, and admissions
on file, together with the affidavits, if any, which it
believes demonstrates the absence of a genuine issue
of material fact. [FN4] The movant may accomplish
this by informing the court of the basis for its motion,
and by identifying portions of the record which
highlight the absence of genuine factual issues. Once
the movant produces such evidence, the nonmovant
must then direct the court's attention to evidence in
the record sufficient to establish that there is a
genuine issue of material fact for trial--that is, the
nonmovant must come forward with evidence
establishing each of the challenged elements of its
case for which the nonmovant will bear the burden of
proof at trial. [FN5]

(Cite as: 1998 WL 560347 (E.D.La.))

FN4. *Id.* at 323, 106 S.Ct. at 2552-53.

FN5. *Matsushita Electric Industrial Co. Ltd. v. Zenith Radio Corp.,* 475 U.S. 574, 106 S.Ct. 1348, 1356, 89 L.Ed.2d 538 (1986).

**\*2** The claims that are the subject of this motion are for negligent infliction of emotional distress and are governed by the general maritime law of the United States. Traditionally, neither the general maritime law nor the Jones Act recognized a right to recover damages for negligent infliction of emotional distress unaccompanied by some physical contact or injury. [FN6] Further, trivial physical complaints were considered insufficient "physical impact" to support recovery for attendant emotional injury. [FN7] More recently, courts have broadened the rule to permit recovery by an individual who was in the "zone of danger" of a physical impact and suffered emotional trauma as a result. [FN8]

FN6. *Plaisance v. Texaco, Inc.,* 966 F.2d 166 (5th Cir.1992) (en banc); *Gaston v. Flowers Transp. Co.,* 866 F.2d 816 (5th Cir.1989).

FN7. *Ainsworth v. Penrod Drilling Corp.,* 972 F.2d 546, 547 (5th Cir.1992) (complaint seeking damages for emotional harm dismissed where worker witnessed accident and participated in rescue, but sustained no physical impact or contact and injuries alleged were trivial ones including upset stomach, headaches, pulled muscle).

FN8. *Anselmi v. Penrod Drilling Co.,* 813 F.Supp. 436 (W.D.La.1993).

The Supreme Court recently addressed this issue in a case brought under the Federal Employees Liability Act ("FELA"). [FN9] In *Consolidated Rail Corp. v. Gottshall,* the Supreme Court recognized that claims for negligent infliction of emotional distress are cognizable under FELA, a statute designed to compensate railroad workers for injuries and deaths caused by the physical perils of their job. [FN10] The Court acknowledged that recognizing such a cause of action raised concerns about fraudulent and trivial claims and unpredictable and nearly infinite liability, and sought to address these concerns by adopting a

limiting test. After reviewing the various common law tests in this area, the Court settled on a "zone of danger" test, permitting recovery not only by those plaintiffs who sustain a physical impact as a result of a defendant's negligent conduct but also those who are placed in immediate risk of physical harm by that conduct. [FN11]

FN9. *Consolidated Rail Corp. v. Gottshall,* 512 U.S. 532, 114 S.Ct. 2396, 129 L.Ed.2d 427 (1994).

FN10. *Id.* at 550, 114 S.Ct. at 2408.

FN11. *Id.* at 2410-11.

The *Gottshall* decision is the most important authority for purposes of emotional distress claims in this proceeding because the Jones Act incorporates the liability and causation concepts of FELA and case law thereunder, and rules followed in Jones Act cases are instructive in general maritime law cases. [FN12] Indeed, following the Supreme Court's lead, several lower courts already have applied the zone of danger rule in Jones Act and general maritime law cases. [FN13]

FN12. *Miles v. Apex Marine Corp.,* 489 U.S. 119, 115 S.Ct. 313 (1990).

FN13. *See Chan v. Society Expeditions, Inc.,* 39 F.3d 1398, 1409 (9th Cir.1994); *Yballa v. Sea-Land Services, Inc.,* 919 F.Supp. 1428, 1435 (D.Haw.1995).

Limitation plaintiffs do not seek summary judgment based on the claimants' inability to show that they were in the zone of danger. [FN14] Rather, limitation plaintiffs argue that they are entitled to summary judgment because these claimants are unable to offer medical or other objective evidence of a significant emotional injury. Limitation plaintiffs urge that this issue was left open by the *Gottshall* court, and also point to several federal and state court authorities they claim support their motion.

FN14. Limitation plaintiffs have attempted to raise the zone of danger issue in a reply

memorandum to one of the claimants' oppositions. Clearly, this was not the original basis for the summary judgment motion and, in any event, I decline to define the zone of danger though piecemeal pretrial rulings.

Limitation plaintiff's approach finds no support in *Gottshall.* The *Gottshall* court specifically rejected an analysis conducted by the Third Circuit that examined, as a threshold matter, the authenticity and seriousness of the plaintiffs' alleged emotional injuries. [FN15] The *Gottshall* court concluded that this genuineness analysis would not assist in separating valid from invalid emotional distress claims because it "would force judges to make highly subjective determinations" about claims that "are far less susceptible to objective medical proof than are their physical counterparts." [FN16]

> FN15. The Third Circuit's analysis focused on the "genuineness" and "foreseeability" of the plaintiffs' emotional injuries. *Gottshall,* 512 U.S. at 532, 551, 114 S.Ct at 2398, 2408.

> FN16. *Id.* at 532, 552, 114 S.Ct. at 2399, 2409. See also *Metro- North Commuter Railroad v. Buckley,* 521 U.S. 424, 117 S.Ct. 2113, 138 L.Ed.2d 560 (1997).

*\*3 Limitation plaintiffs urge that the controlling issue here was not before the *Gottshall* court because the *Gottshall* plaintiffs' emotional injuries were unquestionably severe. [FN17] I am not persuaded by this argument. Absent any limiting language, the court's rejection of a genuineness analysis must be understood to apply generally to all cases. In its exhaustive exploration of common law tests, the court expressly recognized that "[m]any jurisdictions that follow the zone of danger test also require that a plaintiff demonstrate a 'physical manifestation' of an alleged emotional injury, that is, a physical injury or effect that is the direct result of the emotional injury, in order to recover," yet the court did not incorporate such a requirement. [FN18]

> FN17. Gottshall spent three weeks at a psychiatric institution, was documented as experiencing nausea, insomnia, cold sweats and repetitive nightmares, and was

diagnosed as suffering depression and post traumatic stress disorder; Carlisle suffered insomnia, headaches, depression, weight loss, and a nervous breakdown. *Id.* at 535-40, 114 S.Ct. at 2400-02.

> FN18. 512 U.S. at 549 n. 11, 114 S.Ct. at 2407 n. 11.

Although three dissenting Justices favored the genuineness test and noted in their dissenting opinion that "[t]he Gottshall and Carlisle cases [did] not call for decision of the question whether physical manifestations would be necessary for recovery in every case," [FN19] I think the better conclusion to be drawn from *Gottshall* is that by limiting recovery according to categories such as "physical impact" and "zone of danger," the Court, while clearly not intending to invite claims for any emotional injury no matter how trivial, sought to steer lower courts away from examination of the genuineness of the injury as a basis for liability.

> FN19. *Id.* at 568 n. 3, 114 S.Ct. at 2417 n. 3 (Ginsburg, Blackmun and Stevens, J.)

Limitation plaintiffs point to one post-*Gottshall* case addressing general maritime law claims for emotional distress where the court required proof of physical manifestation of the injury as part of the zone of danger test. In *Williams v. Carnival Cruise Lines, Inc.,* [FN20] the court addressed the emotional distress claims of 207 passengers aboard a cruise ship which was caught in a severe storm allegedly due to the vessel's negligence. While adopting the *Gottshall* "zone of danger" test, the *Williams* court also required plaintiffs to demonstrate a physical manifestation of the emotional distress.

> FN20. 907 F.Supp. 403 (S.D.Fla.1995).

The *Williams* court granted summary judgment dismissing the claims of 141 of the 207 plaintiffs because, although the plaintiffs were in the zone of danger, i.e. placed in immediate risk of physical impact by defendant's conduct, the record was devoid of any evidence of physical manifestation of the alleged emotional injuries. According to the court, plaintiffs' answers to interrogatories revealed that they complained only of "fear and/or seasickness

which in most cases lasted no more than a few days" and "none of [them] had sought medical care, nor [had] they complained that their emotional distress [had] interfered with their daily performances." [FN21]

FN21. *Id.* at 407.

While I have previously expressed concern about the flood of claims that have been filed in this litigation, I am not prepared, without additional authority, to summarily dismiss claims based on lack of medical evidence supporting the alleged emotional distress. In my view, the *Williams* court relied on a method specifically rejected by the *Gottshall* court. The *Williams* court considered the physical manifestation requirement necessary as a "guarantee of genuineness" and to "[limit] the prospects for a flood of fraudulent claims" in emotional distress cases. Yet, these are the very concerns the *Gottshall* court sought to address by adopting the zone of danger test (and rejecting the genuineness test). Whether the zone of danger test in fact serves as an adequate check on emotional distress claims is not before me; I am bound by the Supreme Court's decision.

*4 Limitation plaintiffs also urge me to look at several Louisiana cases that they maintain support their position. While one case, *Hymel v. Tom Alexander Brokerage Co.,* [FN22] does appear to recognize a physical manifestation requirement as part of the zone of danger test, the maritime-but-local doctrine does not permit me to supplement the clear admiralty law with a pre-*Gottshall* state court decision that runs directly counter to the rule followed in *Gottshall.*

FN22. 348 So.2d 104 (La.App. 4th Cir.1977).

The other case cited by limitation plaintiffs, *Lennard v. State Farm Automobile Insurance Co.,* [FN23] does not even stand for the principle urged. There, the appellate court was unwilling to disturb a jury's finding that the plaintiffs sustained no emotional damage, where the only evidence offered was self-serving testimony. Unlike the present situation, however, the *Lennard* court's decision came after a full trial on the merits, and the *Lennard* court simply deferred to the jury's credibilty determination on the emotional damage issue. Claimants correctly urge that *Lennard* does not support summary dismissal of

claims for fear and fright merely because the only evidence is the plaintiff's subjective testimony. Notably, though, claimants correctly concede that after a full trial on the merits the trier of fact may ultimately decide that certain claimants' emotional distress claims fail for lack OF sufficient evidence to be believed. [FN24]

FN23. 649 So.2d 1114 (La.App. 2d Cir.1995).

FN24. Lead Counsel Leger and Herman Memorandum in Opposition at p. 10.

For the foregoing reasons, limitation plaintiffs have failed to demonstrate that they are entitled to judgment as a matter of law.

Accordingly,

IT IS ORDERED that limitation plaintiffs' Motion for Summary Judgment Against Claimants With No Medical or Other Evidence of Emotional Injury IS DENIED.

1998 WL 560347, 1998 WL 560347 (E.D.La.)

END OF DOCUMENT

(Cite as: 2000 WL 1818503 (E.D.La.))

**H**
Only the Westlaw citation is currently available.

United States District Court, E.D. Louisiana.

Donald PULLMAN
v.
BOUCHARD TRANSPORTATION CO., INC., et al.

No. Civ.A.99-3008.

Dec. 12, 2000.

VANCE, J.

*1 The Court vacates the Order and Reasons in the above matter dated December 8, 2000 and substitutes the attached amended Order and Reasons. These corrections do not alter the outcome of this matter.

*ORDER AND REASONS*

Before the Court is a motion for summary judgment pursuant to Federal Rule of Civil Procedure 56 by defendants Bouchard Transportation Co., Inc., B. No. 195 Corp., J. George Betz Corp., and Bouchard Coastwise Management Corp. Defendants seek to dismiss plaintiff Donald Pullman's claims, arguing that, as a matter of law, he may not recover damages for a purely emotional injury under the Jones Act or General Maritime Law. After the Court held a hearing on November 21, 2000, the parties supplemented the record with four depositions. For the following reasons, the Court denies defendants' motion for summary judgment.

I. Background

The events culminating in this lawsuit began on October 1, 1996, when the M/V J. GEORGE BETZ, with the tank barge B. No. 195 in tow, departed Houston, Texas, bound for Garyville, Louisiana. The expected voyage called for the tug and tow to arrive at the Southwest Pass Sea Buoy two days later.

The crew aboard the tank barge consisted of plaintiff Donald Pullman, the barge captain, and Joseph Coerts, his subordinate tankerman. As captain, Pullman's duties included maintaining the barge, running the various equipment aboard the barge, and securing the barge against the elements. His duties

did not include the safe navigation of the tow; that responsibility was entrusted to the tug captain, Jeff Barnhart. The tug captain was also entrusted with the discretion to delay or alter a voyage because of inclement weather.

Before this voyage, Pullman and Barnhart discussed a tropical storm brewing in the Gulf of Mexico. Although Pullman expressed concerns, Barnhart asserted he could "beat" the storm and elected to depart as scheduled. (Pullman Mar. 9, 1998 Dep. at 56.) As the tug and tow transited the Gulf of Mexico, the weather deteriorated and prevented the M/V J. GEORGE BETZ from entering the Southwest Pass when she arrived in the early morning hours of October 4, 1996. Awakening to rough weather the following morning, Pullman decided to secure the hatches and generally prepare the barge for more bad weather, but he kept the aft ventilation hatch open to keep the air conditioning running. While he and Coerts were securing the barge, Pullman noticed the "tug getting further and further away." (*Id.* at 71.) The tug radioed him that the tow cable was broken. By this time the tug and tow were battling fifteen to twenty foot seas and thirty knot winds. Instead of rigging another bowline as Pullman recommended, Barnhart elected to rig an emergency towing hawser, which had been stowed at the stern of the barge. The resulting towing configuration turned the boxy stern of the barge into the seas, causing the barge to "take a pounding." (Pl.'s Mem. Opp'n Mot. Summ. J. at 2.) After the tug began towing the barge by the stern, Pullman told Coerts to secure the aft hatch. While attempting to do so, Coerts was swept into a deck locker by a boarding sea and was injured.

*2 As the storm continued to rage, the situation aboard the barge became untenable. The barge lost its generators; water entered both the port and starboard houses; the electrical outlets began to spark; the life rafts blew away; the VHF radio ceased to operate; and the ceiling of the living quarters buckled under the crashing seas. Pullman said that the "roof of the living quarters looked like they were about to cave in as the seas hit it" and "the whole ceiling kept bowing in on us." (Pullman Mar. 9, 1998 Dep. at 137, 167. *See also id.,* Ex. 2 at 3; Hanawalt Dep. at 13.) Fearing for their lives, Pullman pleaded with Barnhart a dozen times to call the Coast Guard to evacuate them. Pullman says that he does not believe that Barnhart did so. (*Id.* at 130.) Eventually, a Coast Guard helicopter did arrive, but when it attempted to lift Coerts in a basket amid thirty foot seas, seventy-five knot wind gusts, and driving rain, he fell fifteen feet to the deck when the barge suddenly plunged, further injuring him. Pullman saw Coerts land on his back

and helped him back into the basket. Both Coerts and Pullman were ultimately evacuated, but by that time the emergency towing hawser had broken, and the barge had been adrift for over half an hour.

Although Coerts suffered physical injuries, Pullman did not. Pullman claims, however, that, as a consequence of the trauma he experienced during this voyage, he developed post-traumatic stress disorder with a phobia of working over water. He claims that defendants were negligent in a number of ways, including by towing the barge from the stern, failing to have proper equipment, towing the barge into a storm, and failing to timely rescue the crew.

Defendants now move for summary judgment. Although defendants apparently do not dispute plaintiff's diagnosis with post-traumatic stress disorder, they argue that plaintiff's claim is nothing more than a claim for emotional injury from a storm at sea and that as a matter of law plaintiff may not recover damages.

II. Discussion

A. Summary Judgment Standard

Summary judgment is appropriate when there are no genuine issues as to any material facts, and the moving party is entitled to judgment as a matter of law. See Fed. R. Civ. P. 56(c). See also Celotex Corp. v. Catrett, 477 U.S. 317, 322-23, 106 S.Ct. 2548, 2552 (1986). Accordingly, a court must be satisfied that no reasonable trier of fact could find for the nonmoving party. In other words, "if the evidentiary material of record were reduced to admissible evidence in court, it would be insufficient to permit the nonmoving party to carry its burden." Beck v. Texas State Bd. of Dental Exam'rs, 204 F.3d 629, 633 (5th Cir.2000).

Initially, the moving party bears the burden of establishing that there are no genuine issues of material fact. If the dispositive issue is one for which the nonmoving party will bear the burden of proof at trial, the moving party may satisfy its burden by merely pointing out that the evidence in the record contains insufficient proof concerning an essential element of the nonmoving party's claim. See Celotex, 477 U.S. at 325, 106 S.Ct. at 2554; see also Lavespere, 910 F.2d at 178. The burden then shifts to the nonmoving party, who must, by submitting or referring to evidence, set out specific facts showing that a genuine issue exists. See Celotex, 477 U.S. at 324, 106 S.Ct. at 2553. Summary judgment is mandated if the nonmovant fails to make a showing

sufficient to establish the existence of an element essential on which it bears the burden of proof at trial. See id. at 322, 106 S.Ct. at 2552. The nonmovant may not rest upon the pleadings but must identify specific facts that establish a genuine issue exists for trial. See id. at 325, 106 S.Ct. at 2553-54; Rushing v. Kansas City S. Ry. Co., 185 F.3d 496, 505 (5th Cir.1999).

B. Emotional Injury Absent Physical Contact

*3 Defendants initially moved to dismiss plaintiff's claims, arguing that under Fifth Circuit jurisprudence Pullman may not recover damages for an emotional injury in the absence of any physical impact. Plaintiff countered that defendants failed to cite the controlling case law, which holds that physical injury is not required for recovery. Relying upon the analysis of Consolidated Rail Corp. v. Gottshall in In re Clearsky Shipping Corp., plaintiff argued that the "zone of danger" test permits recovery for emotional injury not only by plaintiffs who sustain physical impact, but also by those placed in immediate risk of harm. See Consolidated Rail Corp. v. Gottshall, 512 U.S. 532, 547-48, 554-55, 114 S.Ct. 2396, 2406, 2410-11 (1994); In re Clearsky Shipping Corp., 1998 WL 560347, at *2 (E.D.La. Aug. 28, 1998).

As plaintiff noted, the United States Supreme Court adopted a zone of danger test for recovery of emotional damages for the purposes of the Federal Employees Liability Act. Gottshall, 512 U.S. at 554-55, 114 S.Ct. at 2410. It found that "a worker within the zone of danger of physical impact will be able to recover for emotional injury caused by fear of physical injury to himself." Id. at 555, 114 S.Ct. at 2410-11. The Supreme Court further observed that "employees thus will be able to recover for injuries--physical and emotional--caused by the negligent conduct of their employers that threatens them imminently with physical impact." Id., 114 S.Ct. at 2411. Although the Fifth Circuit has not discussed the impact of Gottshall on its Jones Act jurisprudence, the Jones Act incorporates FELA by reference, and this Court has previously recognized the zone of danger rule as the appropriate test to analyze claims for emotional injury under the Jones Act. See 46 U.S.C. app. § 688. See also Frazier v. Callais & Sons, Inc., 1999 WL 717666, at *6- 7 (E.D.La. Sept. 13, 1999); Williams v. Treasure Chest Casino, L.L.C., 1998 WL 42586, at *7 (E.D.La. Feb. 3, 1998). Although defendants now concede that Gottshall applies, they posit that, even under the zone of danger test, plaintiff is not entitled to recovery.

As the zone of danger is the proper framework of

(Cite as: 2000 WL 1818503 (E.D.La.))

analysis, the Court must determine whether Pullman was in the zone of danger. Pullman does not allege that he suffered any physical injury. Therefore, the inquiry is whether plaintiff was threatened with imminent physical impact. After reviewing the record, the Court finds that Pullman's statements concerning the "buckling," "bowing," and "cracking" of the ceiling of the living quarters and his fears that the roof would cave in on him create a question of material fact concerning whether Pullman faced a threat of imminent physical impact. (Pullman's Mar. 9, 1998 Dep. at 137, 167. *See also* Hanawalt Dep. at 13 ("He pictures the waves, the sea, the hitting, the roof and then he fears that it will cave in.").)Therefore, the Court denies defendants' motion for summary judgment.

*4 The Court is of course mindful that inclement weather has always been a hazard of life at sea. But the Court is not holding that every seaman who feels fearful during a storm has a Jones Act claim. Rather, the Court reiterates that for plaintiffs such as Pullman to succeed they must allege and prove that their emotional injuries were caused by negligent conduct of their employers that threatened them with imminent physical impact.

III. Conclusion

For the foregoing reasons, the Court denies defendants Bouchard Transportation Co., Inc., B. No. 195 Corp., J. George Betz Corp., and Bouchard Coastwise Management Corp.'s motion for summary judgment.

2000 WL 1818503, 2000 WL 1818503 (E.D.La.)

END OF DOCUMENT

## CERTIFICATE OF SERVICE

I hereby certify that on this the _28th_ day of June 2002, a true and correct copy of

the foregoing instrument was forwarded to all counsel of record pursuant to the Federal

Rules of Civil Procedure.

Will W. Pierson
Royston, Razor, Vickery & Williams
1700 Wilson Plaza West
606 N. Carancahua
Corpus Christi, Texas 78476

Keith N. Uhles
Royston, Razor, Vickery & Williams
55 Cove Circle
P.O. Box 3509
Brownsville, Texas 78523

Glen Goodier
Jones, Walker, Waechter, Poitevent,
Carrere & Denegre, L.L.P.
201 St. Charles Avenue, 48th Floor
New Orleans, Louisiana 70170-5100

Less Cassidy
Woolsey & Cassidy, P.C.
1020 Bank of America
500 North Water Street
Corpus Christi, Texas 78471

Raymond L. Thomas
Kittleman, Thomas, Ramirez & Gonzalez
4900-B North 10th Street
McAllen, Texas 78504

John David Franz
Law Offices of John David Franz
400 N. McColl
McAllen, Texas 78501

Ray R. Marchan
Watts & Heard, L.L.P.
1926 E. Elizabeth
Brownsville, Texas 78520

J. Chad Gauntt
Gauntt & Kruppstadt, L.L.P.
9004 Forest Crossing Dr. Suite C
The Woodlands, Texas 77381

Geoffrey Amsel
SBC Management Services
1010 N. St. Mary's, Room 1403
San Antonio, Texas 78215

Thomas E. Quirk
Law Offices of Aaron & Quirk
901 N.E. Loop 410, Suite 903
San Antonio, Texas 78209-1307

Julian Rodriguez, Jr.
100 W. Pecan
McAllen, Texas 78501

John and Mary McCoy
514 Brookside Pass
Cedar Park, Texas 78613

Juan A. Magallanes
Magallanes, Hinojosa & Mancias, P.C.
1713 Boca Chica Blvd.
Brownsville, Texas 78520

Veronica Farias
Law Office of Veronica Farias
2854 Boca Chica Blvd.
Brownsville, Texas 78521

S. Mark Strawn
Schirmeister Ajamie, L.L.P.
711 Louisiana Street, Suite 2150
Houston, Texas 77002

Richard Leo Harrell
The Edwards Law Firm, L.L.P.
802 N. Carancahua, Suite 1400 (78470)
P.O. Box 480
Corpus Christi, Texas 78403-0480

James B. Manley
3616 Preston Road
Pasadena, Texas 77505

Heriberto Medrano
Law Offices of Heriberto Medrano
1101 West Tyler
Harlingen, Texas 78550

Jack F. Gilbert
Office of the Attorney General
Transportation Division
Post Office Box 12548
Austin, Texas 78711-2548

Jim S. Hart
Williams Bailey Law Firm, L.L.P.
8441 Gulf Freeway, Suite 600
Houston, Texas 77017

William Q. McManus
McManus & Crane. L.L.P.
209 West Juan Linn
P.O. Box 2206
Victoria, Texas 77902-2206

Robert and Virginia Fandrich
5101 Verdi Way
Stockton, CA 985207

Mark J. Spansel
Adams & Reese, L.L.P.
4500 One Shell Square
New Orleans, LA 70139

FRANK ENRIQUEZ