IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF TEXAS
BROWNSVILLE DIVISION

| | | |
|---|---|---|
| IN RE THE COMPLAINT AND | § | |
| PETITION OF BROWN WATER | § | C.A. NO. B-01-157 |
| TOWING I, INC., AS OWNER, AND | § | (Subject to Rule 9(h) |
| BROWN WATER MARINE SERVICE, | § | of the Federal Rules |
| INC., AS BAREBOAT CHARTERER, OF | § | of Civil Procedure) |
| THE BROWN WATER V, ITS ENGINES, | § | Admiralty |
| TACKLE, ETC. IN A CAUSE OF | § | |
| EXONERATION FROM OR | § | |
| LIMITATION OF LIABILITY | § | |

Consolidated with:

United States District Court
Southern District of Texas
FILED

JUL 2 9 2002

Michael N. Milby
Clerk of Court

| | | |
|---|---|---|
| IN THE MATTER OF AMERICAN | § | |
| COMMERCIAL LINES LLC AS OWNER | § | |
| and AMERICAN COMMERCIAL BARGE | § | C.A. NO. B-02-004 |
| LINE LLC AS CHARTERER OF THE | § | (Subject to Rule 9(h) |
| BARGES NM-315, VLB-9182, | § | of the Federal Rules |
| ACL-9933B, VLB-9173, PRAYING | § | of Civil Procedure) |
| FOR EXONERATION FROM AND/OR | § | Admiralty |
| LIMITATION OF LIABILITY | § | |

**CLAIMANTS' FIRST MOTION TO COMPEL DISCOVERY
FROM AMERICAN COMMERCIAL BARGE LINES, LLC
AND AMERICAN COMMERCIAL LINES, LLC**

The undersigned Claimants[1] file CLAIMANTS' FIRST MOTION TO

---

[1]The Movers include all claimants whose claims remain pending in these consolidated cases. In particular, the Movers include: Jacqueline Paddock Individually and as Next Friend of William B. Welch and as Representative of the Estate of Chelsea Welch; Gustavo Morales; Bigo's International, L.L.C.; Rene Mata; Frank Mata; Hector Martinez, Sr.; Lydia Zamora Individually and as Representative of the Estate of Hector Martinez, Jr., Deceased; Bridgette Goza; Anita Harris, Individually and as Next Friend of Victor Justin Harris, and Representative of the Estate of Robert V. Harris; Esteban F. Rivas and Maria Miriam Rivas Individually and as Representative of the Estate of Stvan F. Rivas; J. Antonio Mireles, as Personal Representative of the Estate of Julio Cesar Mireles, Juan Antonio Mireles, and Soledad Gonzales Mireles; Laguna Madre Water District; Southwestern Bell Telephone Company; Raquel Teran Hinojosa, Individually and on behalf of the

COMPEL DISCOVERY FROM AMERICAN COMMERCIAL BARGE LINES, LLC AND AMERICAN COMMERCIAL LINES, LLC, pursuant to Rule 37(a) of the Federal Rules of Civil Procedure, and would show the following:

## I.
## BACKGROUND

Petitioners American Commercial Barge Lines, LLC and American Commercial Lines, LLC's (collectively ACBL) served their Answers to Interrogatories and Responses to Requests for Production on June 7, 2002. (Copies are attached to the Appendix to this motion, at Tabs "1" and "2.") Unfortunately, ACBL objected to virtually every interrogatory and request for documents,[2] and more importantly, failed to provide full and complete responses.

The Court is already familiar with this case. Accordingly, Claimants will

---

Estate of Gaspar Hinojosa, Deceased, Clarissa Hinojosa, Omar Hinojosa and Gaspar Hinojosa, III, each Individually; Martin D. Hinojosa and Rita S. Hinojosa, Individually and as heirs of the Estate of Gaspar Hinojosa, Deceased; Richard Leavell and Carol Leavell, Individually and as Representatives of the Estate of Roby Faye Leavell, Deceased; Rolando Lee Moya, Alberto Leroy Moya, Antonio Salinas, Jr. and Roberto Espericueta; William Morris Welch; and the State of Texas. By joining in this motion, the State of Texas does not consent to jurisdiction or waive its sovereign immunity; on the contrary, as it has from the time when it filed its initial answers and claims in these consolidated cases, the State of Texas expressly reserves its rights under the Eleventh Amendment of the United States Constitution. The economic damage claimants, whose claims have been dismissed on summary judgment and severed into a separate action (Rec. Docs. 176 and 188) are not included among the Movers.

[2]ACBL makes two (2) pages of general objections, applicable to all interrogatories, and three (3) pages of general objections to requests for production. Additionally, only one (1) request for production (number 10 seeking blueprints and general arrangement drawings of the barges) is answered without specific objections. All interrogatories are answered subject to specific objections.

discuss the factual background only as it applies to this motion. Counsel have worked diligently to resolve these discovery disputes without Court intervention.[3] These efforts culminated in an extended telephone conference call on July 10, 2002 between Claimants' counsel, Eddie Medrano and S. Mark Strawn, and ACBL's attorney, Glenn Goodier[4]. Unfortunately these discussions resulted only in the assurance that ACBL's counsel would "ask ACBL" and "revisit . . . with ACBL." ACBL has neither supplemented their original responses, nor committed to do so.

The Claimants began taking depositions of Petitioners' employees during the week of July 15, 2002. As a result of these depositions, the Claimants have identified numerous responsive documents in ACBL's possession which have not been produced. The Claimants again requested that ACBL provide these additional documents,[5] but have not received a reply.

The Claimants are continuing to schedule the depositions of ACBL employees in order to prepare for the September mediation of this case. Unfortunately these

---

[3]On July 3, 2002 Claimants' counsel sent a facsimile letter to ACBL's counsel, requesting supplemental discovery responses, and attaching an earlier draft of this motion. (A copy is attached to the Appendix of this motion at TAB 3.) ACBL's counsel responded with his letter of July 5, 2002, making himself available to discuss these issues on July 10, 2002. (A copy of this letter is attached at Appendix, Tab 4.)

[4]This conference call was memorialized in two faxes on July 11, 2002 from opposing counsel. (Copies of these two letters are attached at Appendix, Tab 5 and 6, respectively.)

[5]See, Claimants' counsel's letter of July 24, 2002, at Appendix, Tab 7.

3

depositions are proceeding without the benefit of full and complete discovery responses from ACBL. It has become clear that ACBL is systematically avoiding its discovery obligations in order to gain tactical advantage. The Claimants have exhausted all reasonable efforts to achieve voluntary compliance with their discovery requests, and must now seek Court intervention.

## II.
## SCOPE OF DISCOVERY

The Claimants are entitled to discovery of any matter, not privileged, that is relevant to any claim or defense. *Rule 26(b)(1)*. Relevant information need not be admissible if it appears reasonably calculated to lead to the discovery of admissible evidence. *Id.*

In general, ACBL has limited their responses *geographically, by time, and by towing company*, as follows:

> **Geographically** - Some of the Claimants' requests are restricted to the area approaching the causeway. However, where appropriate and relevant other requests seek information relating to all ACBL activities nationwide. In general ACBL has limited their responses to the area of the allision.

> **Time** - In some areas (for example, the identity of officers, directors, and managers) the Claimants have sought information for the period from 1992 to the present. ACBL has responded with information limited to September 15, 2001.

4

> **Towing companies** - Some requests seek information regarding ACBL's activities with companies other than Brown Water Marine. ACBL has limited its responses to its work with Brown Water Marine.

If such limited responses can *ever* be justified, they certainly cannot be in the context of a Limitation of Liability proceeding. ACBL is seeking to limit its liability by claiming that even if ACBL's negligence and the unseaworthiness of its barges caused the allision, and ACBL is therefore liable, ACBL should nevertheless be entitled to limit its liability because its negligence and unseaworthiness occurred without its *"privity and knowledge."* This inquiry mandates far-reaching discovery because of the inherent nature of the issue presented by ACBL's claim of lack of privity and knowledge. The knowledge and privity inquiry will necessarily involve not only the identity and knowledge of specific employees, agents and managers, but also a more searching inquiry into how the company operates in terms of the formation of policy and the discretion and autonomy it affords these employees, agents and managers.[6] ACBL seeks to limit discovery to a snapshot of the company, a snapshot that includes only the time, location, and specific circumstances of this allision. ACBL's decision to seek the protection of limitations necessitates a much deeper inquiry into the company.

---

[6]*See generally*, *In Re Hellenic Inc.*, 252 F.3d 391, 395-96 (5th Cir. 2001) (regarding the fact-intensive nature of the court's decision to impute knowledge to the corporate petitioner).

# III.
## SPECIFIC DISCOVERY RESPONSES

**A.    Interrogatories**

**1.    Response to Interrogatories 2 and 3:**

Claimants move the Court to compel complete answers to interrogatories 2 and 3. Interrogatory 2 seeks the identity of Officers and Directors of ACBL from 1992 to the present. Interrogatory number 3 seeks the identity of all persons who have had managerial responsibility in specific relevant areas with ACBL from 1992 through the present.

With respect to each of these interrogatories ACBL has restricted its answer to the time of the allision. ACBL makes nearly identical objections regarding relevance, vagueness, materiality, and burdensomeness. These objections are clearly unfounded. The requested material is not only relevant, it will go to the heart of the limitation issues of knowledge and privity, and whether this knowledge and privity can be imputed to the corporation. The corporation has knowledge only through its managers, officers and directors. It will be impossible for claimants to establish the state of knowledge of the corporation at any given time, without knowing the identity of its managers, officers and directors. More importantly, it will be impossible to determine if the knowledge of any given individual should be "imputed" to the

6

corporation without knowing the lines of communication and authority within the company. Finally, it cannot be unduly burdensome to produce the names of managers, officers and directors for a period of ten (10) years. No burden has been shown in ACBL's discovery responses; however, even if the burden were substantial it would not be an *undue* burden because this is the burden that ACBL accepted when it sought limitations. It will be ACBL's burden to establish lack of privity and knowledge. The requested material is essential to begin the process of discovering the facts surrounding ACBL's claimed lack of knowledge and privity.

In ACBL's counsel's letter of July 11, 2002[7] ACBL agrees to amend their answers to these interrogatories, "if they had records." ACBL has yet to respond further. This is clearly a delaying tactic. The corporation must have records identifying the requested individuals, but even if it does not, surely the current officers, directors, and employees of ACBL know who their predecessors were. ACBL is obliged make a diligent effort to answer these interrogatories. To date ACBL has made no effort.

### 2.      Interrogatories 19, 20, and 21:

In response to these interrogatories ACBL has restricted its answers to its relationship with Brown Water Marine and/or limited its answers as to time.

---

[7]*See* App. Tab 6.

Interrogatory number 19 asks whether ACBL is aware of any allisions, collision or other marine casualties involving the vessels which it hired to transit the area in question from 1992 through the present. ACBL makes its usual objections to relevancy, vagueness, materiality, and burdensomeness; and limits its answer to ACBL's information regarding Brown Water owned vessels. The requested material goes directly to the core issue of ACBL's knowledge of the hazards of the waterway in question, as well as the seaworthiness of the vessels hired to transit that area, and the competency of their crews. Claimants request ACBL be required to answer the interrogatory, as written, including information regarding all vessels.

Interrogatory 21 seeks information for the past 20 years regarding every incident in which an ACBL barge struck a bridge or other fixed structure. After making its usual objections to relevancy, vagueness, and burdensomeness, ACBL responds by restricting its answer to a ten (10) year period, and *only to the incidents involving Brown Water Marine*. The requested information is clearly relevant. Incidents involving other towing companies may directly affect the issue of ACBL's knowledge of the dangers of the conditions which caused this allision. For example, in their Responses to Requests for Production, ACBL claims that they have no documents regarding the danger of under-powered tugs. Claimants should have discovery of other casualties to show that ACBL is aware of such dangers.

In their counsel's letter of July 11, 2002[8] ACBL acknowledges their intention not to respond to these interrogatories.[9]  Based upon the recently obtained depositions, and the limited documents already produced, Claimants have learned that ACBL has numerous, responsive documents and computer records that have not been produced.  Patrick Hoessel, the ACBL dispatcher, testified that an electronic "Barge Incident Notification" is generated whenever an ACBL barge is damaged (i.e. in any collision or allision), and that this document is e-mailed to all of the ACBL dispatchers.[10]  The Vessel Management Guide produced by ACBL indicates that a report is required for every accident and near miss, and that after the "facts have been carefully analyzed" an "all-boat e-mail message" regarding the event is sent to all ACBL vessels.  All of these electronic documents are relevant, fall with the scope of the request, and have not been produced.  ACBL has not demonstrated why it would be unduly burdensome to produce these electronic documents.  Mr. Hoessel testified that the company has employees in charge of their  computer system.  Claimants request the Court order ACBL to produce the above referenced electronic documents and any other documents responsive to this request.

---

[8]*See,* App. Tab 6.

[9]There is apparently a typographical error on the top of page two of the letter in question. Interrogatory 20 appears twice, and interrogatory 21 is not discussed.  It is believed that counsel intended to address interrogatories 19 and 21 together.

[10]Transcripts of depositions are currently unavailable.

### 3.    Interrogatories 4, 7, 8, 16, 17 and 22.

The above referenced interrogatories have been answered by ACBL. Unfortunately, the answers are subject to lengthy objections, including vagueness, which leave open the possibility that ACBL will later claim that they did not understand the interrogatories, or somehow should not be bound by their answers. Accordingly, although claimants acknowledge that ACBL has answered these interrogatories, claimants move that ACBL's objections be overruled so that claimants may rely upon the answers.

### B.    Requests for Production

### 1.    Responses to Requests for Production 5 and 11:

Request for Production 5 seeks documents relating to ACBL's policies for selecting and investigating towing companies for safety, experience and competency. Request for production 11 seeks safety audits, questionnaires, policies or other documents that ACBL used to monitor Brown Water, and its vessels. In response to both requests ACBL has produced an audit of Brown Water Marine. Claimants request the Court order ACBL to produce any audits in its possession regarding other towing sub-contractors. These materials, if any, are obviously relevant regarding ACBL's decision to hire Brown Water rather than other available towing companies.

In ACBL's counsel's letter of July 11, 2002 counsel agrees to "discuss" the

10

production of additional audits with ACBL. Again, this is simply a delaying tactic.

Also, during the deposition of ACBL dispatcher, Patrick Hoessel, Claimants learned that the Distribution Department at ACBL maintains a vendor file regarding Brown Water Marine and the other vendors who provide towing services to ACBL in the area of the allision. None of these files have been produced. They are clearly relevant and within the scope of these and other requests for production. Claimants request the Court order the production of all vendor files for companies providing towing services to ACBL in the "Western Canal" region.

**2.    Responses to Request for Production number 13:**

Response to request for Production 13 seeks insurance agreements and policies, including endorsements, declarations, etc. ACBL has lodged numerous objections to this request. Subject to these objections they have noted that their counsel has provided a letter setting out the available insurance coverage, and also stating that ACBL and ACL's insurance policies will be available for inspection at their offices in Jeffersonville, Indiana. ACBL has not provided the other insurance related documents that were requested, and their response makes no provision for producing documents other than the insurance policies.

ACBL's numerous objections to producing these materials are frivolous. For example, ACBL indicates that the request would include the health and disability

11

insurance of their employees. Such documents are not within the scope of the Claimants' request. The request clearly states that it is seeking insurance related documents that may provide coverage for Brown Water and/or ACBL and/or their employees, "for any claims asserted <u>against them in connection with the allision</u>." (Emphasis added.) ACBL also misrepresents Federal Rule of Evidence 411, claiming that it "limits the type of information which may be obtained regarding insurance and does not expressly permit discovery of other facts concerning ACBL's insurance coverages." Of course, Federal Rule of Evidence 411 simply states the general rule, and exceptions regarding the inadmissability of insurance. It has nothing to do with discoverability. Clearly, this is simply another attempt on ACBL's part to delay producing material that is clearly discoverable.

In counsel's letter of July 11, 2002 ACBL agrees to provide the requested documents after redacting information on the insurance premiums and sending a confidentiality agreement. Counsel has yet to forward this material, and is again delaying production.

**3.    Request for Production 18:**

Request for Production 18 seeks the following documents:

12

> Any and all **documents** reflecting the corporate structure
> of **ACBL** or the exact nature of the relationship (*ie.* record
> owner, charterer, etc.) between **you**, the **barges**, the Brown
> Water V and/or **Brown Water.**

ACBL again enters a number of objections including ambiguity, relevancy, etc. Clearly the materials are relevant, given the nature of limitations, and the need to establish the lines of authority and reporting within the corporation.

Subject to its objections, ACBL has produced a limited number of documents, including its Certificate of Formation, and the Certificates of Documentation of the barges, as well as charters for two of the barges. None of the material produced reflects the corporate structure of ACBL, as requested. In counsel's letter of July 11, 2002 ACBL agrees to "put something together." At this time no responsive documents have been received. Claimants move the court enter an order compelling ACBL to produce the requested documents.

**4.     Responses to Request for Production 22:**

Request for production 22 seeks:

> All lawsuits, claims, or other **documents** relative to any
> other allisions and/or collisions in which any vessels
> owned, operated, crewed, or controlled by **ACBL** have
> been involved during the period from 1992 to the present.

Again, ACBL enters a number of objections which have been dealt with previously. ACBL limits their responses to incidents in which Brown Water was

13

towing ACBL barges. Obviously, documents regarding all collisions and allisions are relevant within the context of a limitation proceeding in which ACBL denies knowledge of the dangerous conditions which caused this casualty. As previously noted, depositions and discovery obtained thus far, indicate that a number of documents are customarily generated and distributed throughout the company whenever ACBL tugs and/or barges are involved in casualties. *See,* discussion of requests for production 5 and 11, *Supra.* These documents are also responsive to this request. Claimants request that ACBL be ordered to produce the requested material.

### 5.    Request for Production 2:

This request seeks incident reports, witness statements, and other documents regarding any other allisions or collisions of vessels or barges owned, crewed, or controlled by ACBL from 1992 through the present. After numerous objections, ACBL claims that it does not have such material regarding the allision at issue in this suit. ACBL does not respond with respect to other allisions or collisions. As stated previously, this material is clearly relevant, in fact it is key, to establishing ACBL's knowledge that conditions such as those present in this case have caused other casualties. Claimants have previously discussed the documents identified in the recent deposition of the ACBL dispatcher, Patrick Hoessel and those which the ACBL Management Guide requires to be generated following accidents and near

misses.  *See,* discussion of requests for production 5 and 11, *Supra.*  These documents are also responsive to this request.  ACBL should be ordered to produce the requested material.

### 6.    Request for Production 4:

This request seeks copies of operations manuals, safety manuals, and other procedures in a number of areas.  After numerous objections, ACBL has produced the <u>current</u> manuals  applicable to its towing vessels.  Claimants request that ACBL be required to respond fully, providing documents as requested from 1992 through the present.  At the recent deposition of Norman Stanley Ivey, the Claimants learned that the Operations Department of ACBL put together safety and operations manuals prior to Mr. Ivey's retirement in 1995.  ACBL should produce these manuals which will reflect the state of its knowledge at the time.

During the deposition of Patrick Hoessel, Claimants also learned that the Distribution Department currently maintains an operations manual, and that the "24 hour Planning Center" (within the Distribution Department) also has an operations manual and written procedures.  None of these manuals and procedures from the Distribution Department have been produced.  They are clearly responsive to the Claimants' requests.  These documents are particularly important since the 24 hour Planning Center is staffed by "planners" who are above dispatchers in the corporate

hierarchy.

**7.     Response to Request for Production 6, 7, 19, 21, 23:**

ACBL's responses to the above referenced requests are made "subject to" lengthy objections.  In some cases ACBL has indicated that it has no responsive documents and in others it has produced a small number of documents.  ACBL's objections are unfounded and claimants request they be overruled so that claimants know that ACBL has conducted a diligent search and produced all responsive documents, or that none exist.

**IV.**
**REQUEST FOR EXPEDITED CONSIDERATION**

The Claimants are attempting to schedule further depositions of ACBL employees commencing on August 1, 2002.  ACBL has not made a good faith attempt to comply with the Claimants' discovery requests, but has instead sought to delay responding to the Claimants' requests so that Claimants will be forced to take depositions without complete discovery.  Claimants request expedited consideration of this motion.

Wherefore, premises considered, the undersigned claimants request the Court enter the attached order compelling ACBL to produce responsive documents, and for such other and further relief as to which claimants may show themselves justly

entitled.

Respectfully submitted,

\* *Mikal Watts*
_____

Mikal Watts
State I.D. No. _____
Federal I.D. No. _____
Ray R. Marchan
State I.D. No. 12969050
Federal I.D. No. 9522
1926 E. Elizabeth
Brownsville, TX  78520
Phone:  956.544.0500
Fax:  956.541.0255
*Attorneys for Claimants Lydia Zamora, Individually and as Representative of the Estate of Hector Martines, Jr., Gustavo Morales, Bigo's International, L.L.C.; Jacqueline Paddock, Individually and as Representative of the Estate of Chelsea Welch and as Next Friend of William B. Welch and Bridgette Goza*


\* *Eddie Medrano*
_____

Heriberto Medrano
State I.D. No. 13897800
Federal I.D. No. 5952
1101 West Tyler
Harlingen, TX  78550
Phone:  956.428.2412
Fax:  956.428.2495

17

*Attorney for Claimant Anita Harris, Individually, as Next Friend of Victor Justin Harris and as Representative of the Estate of Robert V. Harris*

\*                    *John David Franz*

John David Franz
State I.D. No. 07389200
Federal I.D. No. 1190
400 North McColl
McAllen, TX  78501
Phone:  956.686.3300
Fax:  956.686.3578
*Attorney for Claimants Esteban Rivas and Miriam Rivas, Individually and as Representatives of the Estate of Stvan F. Rivas*

Thomas R. Ajamie
State I.D. No. 00952400
Federal I.D. No. 6165
S. Mark Strawn
State I.D. No. 19374325
Federal I.D. No. 9996
Pennzoil Place – South Tower
711 Louisiana, Suite 2150
Houston, TX  77002
Phone: 713.860.1600
Fax:  713.860.1699

18

*Attorneys for Claimants J. Antonio Mireles, as Representative of the Estate of Julio Cesar Mireles, Juan Antonio Mireles and Soledad Gonzales Mireles*

\*  *Juan A. Magallanes*

Juan A. Magallanes
State I.D. No. 12879500
Federal I.D. No. 2258
Carlos Escobar
State I.D. No. 24025351
1713 Boca Chita
P.O. Box 4901
Brownsville, TX  78520
Phone:  956.544.6571
Fax: 956.544.4290
*Attorney for Laguna Madre Water District of Port Isabel*

\*  *Geoffrey Amsel*

Geoffrey Amsel
State I.D. No. _____
Federal I.D. No. _____
Southwestern Bell Telephone Company
1010 N. St. Mary's Street
Room 1403
San Antonio, TX  78215
Phone:  210.886.4805
Fax:  210.222.7194
*Attorney for Southwestern Bell Telephone Company*

19

*     _Raymond L. Thomas_

Raymond L. Thomas
State I.D. No. _____
Federal I.D. No. _____
Kittleman Thomas et al.
4900-B North Tenth Street
Suite 204
McAllen, TX  78504-1416
Phone:  956.686.8797
Fax:  956.630.5199
*Attorney for Rene Mata and Frank Mata*


*     _Jim Hart_

Jim Hart
State I.D. No. _____
Federal I.D. No. _____
Williams Bailey
8441 Gulf Fwy
Suite 600
Houston, TX  77017-5001
Phone:  713.230.2312
Fax:  713.643.6226
*Attorney for Hector Martinez, Sr.*


*     _Julian Rodriguez_

Julián Rodriguez, Jr.
State I.D. No. 17146770
Federal I.D. No. 15112
100 W. Pecan
McAllen, TX  78501
Phone: 956.682.8801
Fax:  956.682.4544
*Attorney   for   Raquel   Teran   Hinojosa,*

*Individually and on behalf of the Estate of Gaspar Hinojosa; Clarissa Hinojosa, Omar Hinojosa, Gaspar Hinojosa, III, each individually; Claimants Martin D. Hinojosa and Rita S. Hinojosa, Individually and as Heirs of the Estate of Gaspar Hinojosa*

\* _Steve Q. Mc Manus_

Steve Q. McManus
State I.D. No. 13784700
Federal I.D. No. 5889
William Q. McManus
State I.D. No. 24008619
209 West Juan Linn
P.O. Box 2206
Victoria, TX 77902-2206
Phone: 361.575.6764
Fax: 361.575.8454
*Attorneys for Claimants Ricky Leavell and Carol Leavell, Individually and as Representatives of the Estate of Robin Raye Leavell*

\* _Frank Enriquez_

Frank Enriquez
State I.D. No. 06630500
Federal I.D. No. 3734
Robert Puente
4200-B North Bicentennial
McAllen, TX 78504
Phone: 956.686.5291
Fax: 956.618.5064
*Attorney for Claimants Roberto Espericueta, Albert Leroy Moya, Rolando Lee Moya and*

21

*Antonio Salinas, Jr.*

\*    _James B. Manley_
James B. Manley
State I.D. No. 12915000
Federal I.D. No. 3286
3616 Preston Road
Pasadena, TX  77505
Phone:  713.947.1670
Fax:  713.947.6956
*Attorney for Claimant William Morris Welch*


JOHN CORNYN
Attorney General of Texas
HOWARD G. BALDWIN, JR.
First Assistant Attorney General
JEFFREY S. BOYD
Deputy Attorney General for Litigation
GRADY CLICK
Assistant Attorney General
Chief, Transportation Division


\*    _Jack F. Gilbert_
JACK F. GILBERT
Assistant Attorney General
Attorney-in-Charge
Texas Bar No. 00786946
Federal Bar No. 16701
Office of the Attorney General
Transportation Division
P.O. Box 12548
Austin, TX  78711-2548
Phone:  512.463.2004
Fax:  512.472.3855

22

OF COUNSEL:

MICHAEL RATLIFF
Assistant Attorney General
Texas Bar No. 16564300

AND

MARGIE MANZANO CORBETT
Assistant Attorney General
Texas Bar No. 24001927
Federal Bar No. 22121
Office of the Attorney General
Transportation Division
P.O. Box 12548
Austin, TX  78711-2548
Phone:  512.463.2004
Fax:  512.472.3855

AND OF COUNSEL:

ADAMS AND REESE LLP

MARK J. SPANSEL
Louisiana Bar No. 12314
EDWIN C. LAIZER, APLC
Louisiana Bar No. 17014
4500 One Shell Square
New Orleans, LA  70139
Phone:       504.581.3234
Fax:   504.566.0210

*Attorneys for Claimant State Of Texas*


*        SIGNED BY PERMISSION

## Certificate of Conference

I hereby certify that I discussed the subject matter of the foregoing Motion to Compel with opposing counsel, and we were unable to agree.

S. Mark Strawn

## Certificate of Service

I hereby certify that a true and correct copy of the foregoing Motion to Compel has been served upon all Petitioners' Counsel by certified mail, return receipt requested and on all other counsel of record, by regular US mail on the 26th day of July, 2002.

S. Mark Strawn

IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF TEXAS
BROWNSVILLE DIVISION

IN RE THE COMPLAINT AND          §
PETITION OF BROWN WATER          §          C.A. NO. B-01-157
TOWING I, INC., AS OWNER, AND    §          (Subject to Rule 9(h)
BROWN WATER MARINE SERVICE,      §          of the Federal Rules
INC., AS BAREBOAT CHARTERER, OF  §          of Civil Procedure)
THE BROWN WATER V, ITS ENGINES,  §          Admiralty
TACKLE, ETC. IN A CAUSE OF       §
EXONERATION FROM OR              §
LIMITATION OF LIABILITY          §

Consolidated with:

IN THE MATTER OF AMERICAN        §
COMMERCIAL LINES LLC AS OWNER    §
and AMERICAN COMMERCIAL BARGE    §          C.A. NO. B-02-004
LINE LLC AS CHARTERER OF THE     §          (Subject to Rule 9(h)
BARGES NM-315, VLB-9182,         §          of the Federal Rules
ACL-9933B, VLB-9173, PRAYING     §          of Civil Procedure)
FOR EXONERATION FROM AND/OR      §          Admiralty
LIMITATION OF LIABILITY          §

**APPENDIX TO CLAIMANTS' FIRST MOTION TO COMPEL**

DOCUMENT                                                        TAB

AMERICAN COMMERCIAL LINES, LLC
AND AMERICAN COMMERCIAL BARGE
LINES, LLC'S ANSWERS TO INTERROGATORIES ..................... 1

AMERICAN COMMERCIAL LINES, LLC
AND AMERICAN COMMERCIAL BARGE
LINES, LLC'S RESPONSE TO REQUEST FOR
PRODUCTION OF DOCUMENTS (without attachments) ................. 2

LETTER OF JULY 3, 2002 FROM S.
MARK STRAWN TO GLENN G. GOODIER . . . . . . . . . . . . . . . . . . . . . . . . . . . 3

LETTER OF JULY 5, 2002 FROM GLENN
G. GOODIER TO S. MARK STRAWN . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 4

LETTER OF JULY 11, 2002 FROM S.
MARK STRAWN TO GLENN G. GOODIER . . . . . . . . . . . . . . . . . . . . . . . . . . . 5

LETTER OF JULY 11, 2002  FROM GLENN
G. GOODIER TO S. MARK STRAWN . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 6

LETTER OF JULY 24, 2002 FROM S. MARK STRAWN
TO GLENN G. GOODIER . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 7

IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF TEXAS
BROWNSVILLE DIVISION

IN RE THE COMPLAINT AND          §
PETITION OF AMERICAN             §        C. A. NO. B-02-004
COMMERCIAL LINES LLC AS          §        Admiralty
OWNER, and AMERICAN              §
COMMERCIAL BARGE LINES, LLC,     §
AS CHARTERER OF THE BARGES       §
NM-315, VLB-9182, ACL-9933B,     §
VLB-9173, IN A CAUSE OF          §        Consolidated with
EXONERATION FROM OR              §
LIMITATION OF LIABILITY          §


IN RE THE COMPLAINT AND          §
PETITION OF BROWN WATER          §        C. A. NO.  B-01-157
TOWING I, INC., AS OWNER, and    §        Admiralty
BROWN WATER MARINE SERVICE,      §
INC., AS BAREBOAT CHARTERER OF   §
THE BROWN WATER V, ITS ENGINES,  §
TACKLE, ETC. IN A CAUSE OF       §
EXONERATION FROM OR              §
LIMITATION OF LIABILITY          §


**AMERICAN COMMERCIAL LINES, LLC AND AMERICAN COMMERCIAL BARGE
LINES, LLC'S
ANSWERS TO INTERROGATORIES**

NOW INTO COURT, through undersigned counsel, come  American Commercial Lines

LLC and American Commercial Barge Lines LLC, who submit the following answers and

objections to the Interrogatories and aver as follows:

### GENERAL OBJECTION

ACBL objects to these Interrogatories on the grounds that they are irrelevant, vague, immaterial, over-broad, unduly burdensome and not reasonably calculated to lead to the discovery of admissible evidence. Further, due to the over-breadth and vagueness, the Interrogatories also call for documents expressly covered under the attorney/client privilege, work product doctrine or which were prepared in anticipation of litigation and thereby are not discoverable. Additionally, the Interrogatories are unnecessarily cumulative and duplicative, and in some cases overlap the information they request. Finally, the Interrogatories are complex and multi-part, so as to necessitate detailed instructions which unduly burden the respondent.

Specifically, the terms "identify", "identity", and "identification" with respect to people are defined differently from "identify", "identity" and "identification" with respect to documents. In many cases, the interrogatory is not clear as to whether it refers to a document or a person. Each definition of those terms requires at least four types of information to be provided if the term is used and is put in "bold". The use of such all inclusive definitions requiring specific pieces of information, constitute individual interrogatories in and of themselves; therefore, the definition makes many of the interrogatories compound and multi-part. Additionally, the definition, with respect to documentation, is improper as it seeks to obtain actual copies of documents which is an improper usage of interrogatories.

The term "ACBL", "you" or "your" is defined as "any parent companies, related companies, affiliates, subsidiaries, and all or each of their predecessors, successors, assigns, agents, attorneys, owners, operators, officers, directors, shareholders, managers, agents, employees and any other person acting on their behalf." Obviously, the term is extremely over broad, unduly burdensome, vague, ambiguous, and all inclusive. The definition seeks information from barely defined entities who are not parties to this case or represented by

undersigned counsel. The definition also references the attorneys for ACBL, which, in many instances in the particular Interrogatories below, directly call for productions of information which is clearly covered by the attorney client privilege or the work-product doctrine or was created in anticipation of litigation. Additionally, such an all inclusive definition clearly calls for information which could not possibly be relevant or material and which involves information which is outside the scope of this case and could not lead to admissible evidence. The definition seeks information regarding a wide range of entities such that each usage of the term "ACBL" in the Interrogatories is actually a compound, multi-part question and is an attempt to get around the limitations that the Federal Rules of Civil Procedure and the agreed Case Management Order have set on numerosity of interrogatories. As such, the term "ACL" will be effective for American Commercial Lines, L.L.C. and "ACBL" for American Commercial Barge Lines, L.L.C.

If the term "barges" is in bold, the instructions include a reference to four barges: NM-315, VLB-9182, ACBL-9933 and VLB-9173. If the term "barges" is not in bold then the definition refers to any and all barges. Each interrogatory referencing the term "barges" contains a compound, multi-part inquiry and quickly exceed the number of interrogatories allowed under the Federal Rules of Civil Procedure and the Case Management Order.

The term "allision" sets forth a statement of the facts of this case which are still at issue and under investigation. By responding to the Interrogatories below, ACL and ACBL are not assenting to the definition of the "allision" as stated in the definition portion of the interrogatories. ACL and ACBL by use of the term "allision" refer to the incident of September 15, 2001 when the M/VBROWN WATER V pushed the Barge NM 315 into the Queen Isabella Causeway.

## INTERROGATORY NO. 1:

Please identify the specific cargoes that each of the barges was carrying at the time of the allision, including in your response the identity of the owner of the cargo, the identity of the customer for whom you were moving the cargo (if different from the cargo's owner), and all contracts, charter agreements or other documents that applied or arguably may have applied to the movement of the cargoes and the barges, or the hiring of the BROWN WATER V.

## ANSWER TO INTERROGATORY NO. 1:

ACL and ACBL reurge their objections to the definitions of "identify", "barges", and "allision". ACL is simply an owner of two of the barges listed below which bareboat chartered its barges to ACBL, which is the owner pro hac vice and bareboat charterer of those barges. As such, ACL would have no customers and no information to respond to this interrogatory.

ACBL does not know the specific owner of the cargo laden in the barges listed below, if different from ACBL's customer. ACBL contracted with Brown Water to tow these four barges as an independent towing contractor pursuant to a verbal contract of towage.

The Barges VLB-9182, ACBL-9933B, and NM-0315 were loaded with a cargo of hot rolled steel coils, pursuant to a Contract of Affreightment dated September 4, 2001 between ACBL and Monarch Steel, 4389 Martin Avenue, Cleveland, Ohio 44127. (This Contract of Affreightment is attached in response to request for production of documents). The Barge VLB-9178 was loaded with a cargo of phosphate, pursuant to a Confidential Barge Transportation Agreement, as amended, dated July 1, 2000 between ACBL and IMC Phosphates Company, MP, Inc., 100 S. Saunders Road, Suite 300, Lake Forest, Illinois 60045-2561. (This agreement is a confidential agreement. ACBL will not produce this agreement unless the appropriate Confidentiality Agreement is signed by all parties receiving a copy of the agreement).

**INTERROGATORY NO. 2:**

Please identify all person(s) who have been officers and/or directors of ACBL, at any time from 1992 to the present.

**ANSWER TO INTERROGATORY NO. 2:**

ACBL and ACL object to this interrogatory on the grounds that it is irrelevant, vague, immaterial, over-broad, unduly burdensome and not reasonably calculated to lead to the discovery of admissible evidence. ACBL and ACL reurge its objections to the definition of "identify" and "ACBL" stated above. The request seeks information for a ten year period of ACL and ACBL operations which would require an unduly burdensome recreation of records which are not kept in the ordinary course of business and which, in many cases, either have not been retained and may not exist. The ten year period requested is also over-broad and will not lead to relevant information. The "identity" of officers and/or directors of ACBL ten years before this incident is not relevant to the subject-matter of this suit and the information has been requested only for the purpose of harassment of ACL and ACBL. Without waiving any of their objections, including relevance, ACL and ACBL set forth the "identity" of those officers and/or directors of ACL and the officers of ACBL for September 15, 2001, the time period which is relevant to this suit, below. All of the individuals listed below can be and are only appropriately contacted through undersigned counsel and at their business address at the offices of: ACL and ACBL, Post Office Box 610 Jeffersonville, Indiana, 47131-0610; Telephone (812) 288-1621.

With respect to ACL: Michael C. Hagan, R. Barry Uber, James J. Wolff, Michael A. Khuri, James F. Farley, Paul S. Besson, Norb Whitlock, Robert P. Herre, Martin K. Pepper, David H. Baggs, L. & M. Fitzsimmons, Paul R. Goodwin, Ernest A. Haberli, Richard E. Mayberry, Jr., James P. Peter, and David F. Thomas.

With respect to ACBL (ACBL is a limited liability corporation which has no Board of Directors):  Michael C. Hagan, Barry Uber, James J. Wolff, Paul S. Besson, James F. Farley, Michael A. Khuri, W. N. Whitlock, Christer Brinkop, L. Stephens Baird, Robert G. Burns, Paul F. Brotzge, Edward T. Donaldson, C. William Kinzeler, II, and M. E. Kleopfel.

**INTERROGATORY NO. 3:**

Please identify all persons who have who have held any managerial position with ACBL. from 1992 to the present and, for each such person, describe his or her specific area(s) of responsibility. Your response should include, but not be limited to, all persons with any managerial responsibility in the following areas:

- Personnel (hiring, firing, personnel evaluation and other personnel functions);

- Health, Safety and/or Environmental (formulating or implementing safety policies and procedures, training programs, etc.);

- Operations (formulating or implementing operational policies, procedures and training; crewing, supplying and maintaining vessels and barges; assigning vessels and barges to particular jobs; dispatching vessels and barges; determining what vessels to use to perform particular tows; determining how to build and configure tows; and providing information to vessels regarding jobs, weather conditions, etc.);

- Sales (seeking jobs for the vessels and barges and negotiating the terms, conditions and contracts pursuant to which the vessels and barges work);

- Industry and Regulatory compliance (dealing with the Coast Guard and other governmental agencies on licensing, documentation, inspection and other regulatory issues, filing CG-2692 forms, dealing with industry associations, obtaining required permits, etc.) and;

- Insurance and risk management (placing insurance coverage, providing insurance certificates to customers, handling claims and lawsuits).

## ANSWER TO INTERROGATORY NO. 3:

ACL and ACBL object to this interrogatory on the grounds that it is irrelevant, vague, immaterial, overly broad, unduly burdensome and not reasonably calculated to lead to the admissibility of evidence. ACL and ACBL reurge their objections to the definition of "identify" and "your" set forth above. This interrogatory is also compound and multi-part in that it request the "identity" of any person holding a managerial position in six broadly defined areas. As such the interrogatory is over-broad and vague. The interrogatory is also over-broad and overly burdensome in that the information is requested for a ten year period and is intended to harass ACL and ACBL. Additionally, the term "managerial" is not defined and its reference becomes vague and diluted in the descriptive paragraphs following the interrogatory. Additionally the term "managerial" may have a legal connotation which is entirely different from a title of "manager", given by ACL or ACBL to an officer or employee of either company. Therefore, this interrogatory calls for a legal conclusion and not factual information and as such is objected to. The term "etc." is vague and ambiguous and where used is objected to. Without waiving their objections, ACL and ACBL provide the following information for individuals employed on or about September 15, 2001 who ACL and ACBL consider to be corporate "managers" and in the specific area of inquiry. All of the individuals listed below can be contacted through undersigned counsel or through ACL or ACBL at the business address listed in response to Interrogatory No. 2.

For ACL:

1.    Michael C. Hagan- President & Chief Executive Officer.

2.    R. Barry Uber - Division President & Chief Operating Officer, ACBL.

3.    James J. Wolff - Senior Vice-President, Finance & Administration.

4.    Michael A. Khouri - Senior Vice-President, Transportation Services.

5.   James F. Farley - Senior Vice-President, Marketing Services.

6.   Paul S. Besson - Senior Vice-President, Human Resources and Corporate Services.

7.   W. N. Whitlock - Senior Vice-President, Logistic Services.

8.   Robert P. Herre - Division President, Chief Operating Officer, Jeffboat.

9.   Martin K. Pepper - Senior Vice-President, International Development.

10.  R. G. Burns - General Counsel & Secretary.

11.  J. L. Adams - Assistant Vice-President.

For ACBL:

1.   Michael C. Hagan - Chairman.

2.   Barry Uber - Division President & Chief Operating Officer.

3.   James J. Wolff - Manager, Senior Vice-President & Chief Financial Officer.

4.   Paul S. Besson - Manager & Senior Vice-President Human Resources and Corporate Services.

5.   James F. Farley - Senior Vice-President, Marketing Services.

6.   Michael A. Khouri - Senior Vice-President, Transportation Services.

7.   W. N. Whitlock - Senior Vice-President, Logistic Services.

8.   Christer Brinkop - Vice-President, Gulf Coast Operations.

9.   L. Stephens Baird - Vice-President & Treasurer.

10.  Robert G. Burns - General Counsel & Secretary.

11.  Paul F. Brotzge - Vice President & Controller.

12.  Edward T. Donaldson - Vice-President, Purchasing.

13.  C. William Kinzeler, II - Vice-President, River Operations.

14.    M. E. Kleopfel - Vice-President, Technology.

15.    Steve Brooks - Assistant Vice-President, Sales.

16.    David Jahnke - Assistant Vice-President, Sales & Logistics.

17.    Dan Jaworski - Assistant Vice-President, Liquid Sales.

18.    Ann Adams - Vice-President, Fleet Operations.

19.    Pete Kazunas - Assistant Vice-President, Logistic Services.

20..    Bill Schmidt – Assistant Vice-President, Logistic Services-Fleet.

21.    Douglas C. Ruschman – Assistant Vice-President, Corporate Safety & Risk Management.

## INTERROGATORY NO. 4:

Since 1992, please describe all operating and/or safety rules, regulations, policies, procedures, etc. that ACBL has required of or suggested to the towing companies and/or particular tugs that tow ACBL barges.

## ANSWER TO INTERROGATORY NO. 4:

ACBL reurges it objection to the definition of "ACBL" as set forth above. The interrogatory is also vague, over-broad and unduly burdensome in that it requests information for a ten year period, as it requests information regarding any tug or towing company that tows any ACBL barge where such time period and expansive location is irrelevant.

ACL does not contract with towing companies to tow barges it may own. Any barge it owns is bareboat chartered to ACBL.

ACBL, as bareboat charterer and owner pro hac vice of dumb, unmanned barges, contracts from time to time with qualified third-party independent towage companies. These companies are required by law to provide towage services in a safe, prudent and workmanlike

9

manner. ACBL has not "required" or "suggested" any specific "safety rules, regulations,

policies, or procedures, etc." and relies upon the expertise of these independent contractor towing

companies.

With respect to towboats which may be owned by ACBL and towing ACBL barges, see

documents produced in response to request for production of documents which contains "safety

rules, regulations, policies and procedures."

## INTERROGATORY NO. 5:

During the time period from four hours before the allision to four hours after the allision,

describe any radio, telephone, or other communications that took place to or from ACBL

regarding the allision, including but not limited to communications with any office of Brown

Water; the BROWN WATER V; any other vessels; any docks, bridge tenders, or other shore

bases; the United States Coast Guard; any other governmental entities; any rescuers; any victims;

or any other person or entity. For each communication listed in your response, identify all

persons who participated in, overheard, or otherwise have knowledge of the communication, and

all documents that reflect the communication.

## ANSWER TO INTERROGATORY NO. 5:

ACL and ACBL reurge their objection to the definitions of "allision", "ACBL", "your" and

"identify" set forth above. Without waiving their objection, ACL and ACBL respond as follows:

ACL is not aware of any such communications.

ACBL is unaware of and has no records of any conversations with Brown Water or

anyone else listed in this interrogatory during the period of time four hours prior to the allision,

regarding the allision or any other matter. ACBL was advised within four hours after the allision

that the M/V BROWN WATER V had been involved in an allision with the Port Isabella Bridge

and that this involved the Barge NM-315. The report was that there did not appear to be any

damage to the barge.  Chad Chapman of Brown Water, Post Office Box 2269, Rockport, Texas,

gave this information by telephone to Glenn W. Jones of ACBL.

## INTERROGATORY NO. 6:

Please state how and why you contend that the allision occurred.

## ANSWER TO INTERROGATORY NO. 6:

This interrogatory is a contention interrogatory and is premature, as discovery is ongoing

and the facts and circumstances of this case are not fully known.  ACL and ACBL further object

on the grounds that it continues to investigate this matter.  Further, it is vague, overly broad,

unduly burdensome and non-specific in that it potentially calls for disclosure of information that

is protected by the attorney/client privilege and/or work product doctrine and/or information that

was developed in anticipation of litigation.  ACL and ACBL reurge the objections noted

previously with regard to the definitions of "you" and "allision".  Without waiving their

objections, ACL and ACBL's information with respect to the specifics of the allision are

contained in exhibits to and testimony at the United States Coast Guard hearing and documents

provided by other parties to these proceedings.  At this time, it appears as if the allision occurred

as a result of the relief captain of the M/V BROWN WATER V improperly navigating his

towing vessel.

## INTERROGATORY NO. 7:

For the period from 1992 to the present, describe all efforts that you contend were made

by ACBL to determine what towing companies and what specific towing vessels would be used

to tow barges owned, operated, controlled by or under contract to ACBL, specifically including,

but not limited to all efforts made to investigate, determine or verify the safety record,

experience and competence of particular towing companies and of the crews of particular towing

vessels, as well as all efforts made to investigate, determine or verify the particular

characteristics, sufficiency and seaworthiness of particular towing vessels.

## ANSWER TO INTERROGATORY NO. 7:

ACL and ACBL object to this interrogatory on the grounds that it is irrelevant, vague,

immaterial, overly broad, unduly burdensome, not reasonably calculated to lead to the discovery

of admissible evidence, and is unnecessarily cumulative and duplicative. and is a contention

interrogatory.  The time period within which this response as framed requests information for a

ten year period, which is unreasonable, irrelevant, immaterial, overly broad and unduly

burdensome.  Additionally, the request is not limited to the specific geographical area involved

in this case and purports to request such information for ACBL's operations nationwide.  Such

an over-broad and unduly burdensome request is clearly irrelevant to the subject matter of this

case and is intended to harass ACBL.  The request is also compound and multi-part because it

requests several different types of information regarding ACBL's hiring, investigation and

verification of towing companies, crews and vessels.  Without waiving the foregoing objection,

ACL and ACBL answer as follows.

ACL, as owner of barges, does not contract with towing companies.  ACL bareboat

charters all of its barges to ACBL.

ACBL researches which companies hold themselves out as competent third-party towing

contractors.  It gathers information from knowledgeable marine sources that may have

knowledge of the third-party towing contractor.  ACBL relies upon its own experience with

specific third-party towing contractors over time, and their record of towage for ACBL.  It may,

from time to time, have an independent audit done of the independent towing contractor.  ACBL

relies upon the expertise and competence of its towing contractors to perform towage services in

a safe and responsible manner, and it is the responsibility of the independent towing contractor to

ensure that the crews that it hires are competent and properly licensed and, further, to ensure the characteristics, sufficiency and seaworthiness of the vessel that the independent contractor towing company may use to tow ACBL barges.

**INTERROGATORY NO. 8:**

For the period from 1992 to the present, describe all efforts that you contend were made by ACBL to determine what specific dangers or concerns might be posed by local wind, weather, current, bottom, or other conditions present in areas where barges owned, operated, controlled by or under contract to ACBL would be operating, specifically including, but not limited to all efforts made to investigate, determine or verify the conditions in the area between the Long Island Swing Bridge and the Causeway.

**ANSWER TO INTERROGATORY NO. 8:**

ACL and ACBL reurge their objections to the definitions stated above for "ACBL" and "barge." The time period within which this response is framed requests information for a ten year period, which is unreasonable, irrelevant, immaterial, overly broad and unduly burdensome and is a contention interrogatory. Additionally, this request seeks information for any vessel ever owned, operated, controlled by or under contract to ACBL at any location. Again, such a limitless request is unreasonable, irrelevant, immaterial, overly broad and unduly burdensome. Without waiving their objections, ACL and ACBL answer as follows:

ACL does not operate any vessels or barges and, as such, does not obtain any information.

With respect to ACBL barges being towed by third-party independent contractor towing companies, ACBL would rely on those towing companies to determine the information requested.

With respect to ACBL barges being towed by towboats operated by ACBL, ACBL would rely on the appropriate charts of the specific area prepared by governmental agencies, would rely on information provided by the appropriate governmental agencies with respect to applicable weather, current, bottom or other conditions. Additionally, ACBL would rely on the expertise of its captains and crew of its towboats and information gathered from other knowledgeable marine sources.

**INTERROGATORY NO. 9:**

With respect to the voyage during which the allision occurred, please describe the characteristics of each barge (i.e.- length, width, draft empty and loaded, whether rake or box hull configuration, whether equipped with bow thrusters, steering assists, etc.); where each barge was picked up; the destination and scheduled arrival time for each barge; all scheduled pickups and drops; all actual pickups and drops; how each barge was loaded in terms of cargo, weight and draft; the order in which the tow was built; and the exact manner and configuration in which the barges were made up, including an indication as to the type of rigging used and as to whether each barge was positioned stern first or bow first in the string.

**ANSWER TO INTERROGATORY NO. 9:**

ACL and ACBL reurge their objections to the definition of "ACBL", "barge" and "allision" noted above. This interrogatory is compound and multi-part, containing at least seven separate inquiries regarding four separate barges. The term "etc." is vague and ambiguous and where used is objected to. Without waiving their objections, ACL and ACBL respond as follows:

The four barges were each typical and standard dumb, unmanned covered hopper barges with no crew, motive power, bow thrusters, steering assist, etc. The barges rely solely on the

towing vessel to provide their motive power and the crew of the towing vessel to provide the means of their transport.

ACBL does not load the barges but, rather, presents a dumb, unmanned barge, to its customer for loading and ACBL usually has no one present during the loading operations nor is it required to have anyone present during such time. It is assumed that the cargo of steel coils was loaded by crane and that the cargo of phosphate was loaded by a similar loading method. When the barges are loaded and the covers are closed, they are presented to ACBL for transport.

With respect to the barges, ACBL provides the following information: (The term "draft . . . loaded" is ambiguous in that there is no specific definition of the extent that the barge is loaded, and, accordingly, this information cannot be given):

VLB-9173 -    typical inland river covered hopper box barge - 200 feet in length by 35 feet in width by 12.0 feet in depth. The barge's draft when empty is approximately 1 foot, 5.5 inches. At the time of the accident, the barge was loaded to the approximate depth of 9.0 feet, with approximately 1660 tons of phosphate.

VLB-9182 -    typical inland river covered hopper box barge - 200 feet in length by 35 feet in width by 12.0 feet in depth. The barge's draft when empty is approximately 1 foot, 5.5 inches. At the time of the accident, the vessel was loaded to approximately 9.0 feet, with approximately 1600 tons of hot rolled steel coils.

NM-315 -    typical inland river covered rake barge - approximately 195 feet in length by 35 feet in width by 12.0 feet in depth. The barge's draft when empty is approximately 1 foot, 8 inches. At the time of the accident, the vessel was

loaded to a draft of approximately 9 feet, with approximately 1483 tons of hot rolled steel coils.

ACBL-9933B -a typical inland river covered hopper box barge - approximately 200 feet in length by 35 feet in width by 13 feet in depth. The barge's draft when empty is approximately 1 foot, six inches. At the time of the accident, the barge was loaded to a draft of approximately 9 feet, with approximately 1663 tons of hot rolled steel coils.

The VLB-9173 was picked up at Bolivar Fleet, approximately Mile 343.70 West Canal on September 9, 2001 and the voyage was to terminate at Port Harlegen, approximately Mile 669.50 West Canal. There was no scheduled time of arrival for the barge. There were no stops scheduled by ACBL. The barge arrived at Port Harlegen on September 9, 2001. ACBL is aware that the barge stopped as a result of the allision.

The Barge VLB-9182 was picked up on September 15, 2001 at Brownsville, Texas, approximately Mile 682.60 West Canal and the voyage was to terminate at Bolivar Fleet, approximately Mile 343.70 West Canal. There was no scheduled time of arrival for the barge. ACBL did not schedule any stops for this barge. The barge arrived at Bolivar Fleet on September 26, 2001. ACBL is aware that the barge stopped as a result of the allision.

Barge ACBL-9933B was picked up at Brownsville, Texas, approximately Mile 682.60 West Canal on September 15, 2001 and was to be delivered to the Bolivar Fleet, approximately Mile 343.70 West Canal. There was no scheduled time of arrival for the barge. The barge arrived at Bolivar Fleet on September 26, 2001. ACBL had no scheduled stops for the barge. ACBL is aware of the fact that the barge stopped as a result of the allision.

The Barge NM-315 was picked up on September 15, 2001 at Brownsville, Texas, at approximately Mile 682.60 West Canal and was to be delivered to Bolivar Fleet, approximately

343.70. There was no scheduled time of arrival for the barge. The barge was delivered to Bolivar Fleet on September 26, 2001. ACBL had no scheduled stops for the barge. ACBL is aware of the fact the barge stopped as a result of the allision.

ACBL and ACL have no independent knowledge of the order in which the tow was built, the exact manner and configuration in which the barges were made up, including the rigging and as to whether each of the barges was positioned stern first or bow first in the tow. ACBL and ACL had no one present at the time the tow was constructed nor during the towage, and on information and belief, the tow was totally constructed by employees or representatives of Brown Water. All determinations as to the configuration of the tow, the rigging to be used, how the barges were to be made up and positioned in tow was the responsibility of Brown Water. The U.S. Coast Guard hearing transcript and exhibits contain information in part on how the tow was constructed and configured, and counsel for claimants is in possession of these documents.

**INTERROGATORY NO. 10:**

With respect to the voyage during which the allision occurred, please identify all persons who were involved in selecting Brown Water in general, and the BROWN WATER V in particular, to tow the barges, and describe all of the factors that were considered in making that determination.

**ANSWER TO INTERROGATORY NO. 10:**

ACL and ACBL reurge their objection to the definition of "allision", "identify", "ACBL" and "barges" as noted above. Additionally, requesting a description of "factors" considered is a vague and ambiguous reference. Without waiving their objection, ACL and ACBL respond as follows:

With respect to ACL, the answer is none. See response to interrogatory 7.

With respect to ACBL, Brown Water was selected by Mr. Denny Hoessle of ACBL. No one from ACBL selected the M/V BROWN WATER V, it was selected by Brown Water.

The factors used by Mr. Hoessle in contracting with Brown Water to tow the barges was the longstanding record of competence and reliable towage provided to ACBL and Brown Water's stated availability to tow the barges.

## INTERROGATORY NO. 11:

In your Claim and Answer in Civil Action No. O1-CV-157, you allege that "nothing that [ACBL] did or failed to do in any way caused or contributed to the [allision ]... nor were any of the barges unseaworthy..." Please state in specific detail each and every fact upon which you base each of these contentions, identifying all persons or entities who have knowledge or information of any kind regarding these contentions and any documents that are relevant to these contentions.

## ANSWER TO INTERROGATORY NO. 11:

This interrogatory requests information which is covered by the attorney/client privilege, work product doctrine or was created in anticipation of litigation to the extent it requests such information is objected to. The request is also premature as discovery is ongoing and the facts and circumstances of the incident which is the subject of this suit is still under investigation and may not yet be known. ACL and ACBL reurge their objections to the definitions of "your", "you", "allision", "ACBL", and "identify" set forth above. This interrogatory is compound and multi-part in that it requests facts upon which particular statements were based, individuals and entities who may have knowledge regarding those facts, as well as documents relevant to those contentions. As such, there are at least five questions stated within this single interrogatory. This interrogatory also impermissibly seeks legal conclusions and admissions which are

improperly placed in an interrogatory. Without waving their objection, ACL and ACBL answer as follows:

The four barges are dumb, unmanned barges which were in all respects fit for towage. The barges were being towed by Brown Water pursuant to an independent contract of towage. Brown Water held itself out as a competent barge tower. Brown Water had a reputation in the industry of being a competent tower. ACBL had years of experience with Brown Water competently towing its barges. Brown Water selected the towing vessel and crew and neither ACL nor ACBL had any employees aboard the M/V BROWN WATER V or the barges at any time during the towage nor were they required to have any one on board. The tow was put together by Brown Water's master and crew, who were solely responsible for selecting the manner and method of towage and all other decisions relative to the towage of the barges and the navigation of the BROWN WATER V and tow. The M/V BROWN WATER V and tow were totally under the care, custody and control of Brown Water and its employees at the time of the accident. Neither ACL or ACBL had any ownership interest in Brown Water or the BROWN WATER V and ACBL's only relationship with Brown Water is that of principal and independent contractor. At this time, it is understood that this accident occurred as a result of the navigational negligence of the operator of the M/V BROWN WATER V.

ACL and ACBL have no information and no one has claimed that there was any defect in the barges causally related to this accident. The barges were inspected after the accident and no defects were found causally related to the accident.

ACL and ACBL do not know "all persons or entities who have knowledge or information of any kind regarding these statements of fact", however, they may rely upon witnesses who are identified by any party hereto in their initial disclosures or in response to discovery. Additionally, they may rely upon expert witnesses, but as yet has not hired any expert witnesses

specifically to testify at the trial will comply with the Court's Orders with respect to the naming of expert witnesses.

ACL and ACBL cannot identify "any documents that are relevant to these contentions", as that term is ambiguous (see stated objections) however, ACL and ACBL rely on the documents produced by it in responses to this discovery, documents produced by Brown Water, and by claimants in response to discovery, and any documents which may have been produced and/or introduced as an exhibit at the United States Coast Guard hearing on the incident.

**INTERROGATORY NO. 12:**

In your Claim and Answer in Civil Action No. 01-CV-157, you allege that the allision was "caused by the negligence of the M/V BROWN WATER V- and you deny that Brown Water is entitled to exoneration or limitation of liability in connection with the allision.

Please state in specific detail each and every fact upon which you base each of these contentions, identifying all persons or entities who have knowledge or information of any kind regarding these contentions and any documents that are relevant to these contentions.

**ANSWER TO INTERROGATORY NO. 12:**

ACL and ACBL object to this interrogatory to the extent it requests information which is covered by the attorney/client privilege, work product doctrine or was created in anticipation of litigation. The request is also a contention interrogatory and premature as discovery is ongoing and the facts and circumstances of the incident which are the subject of this suit are still under investigation and may not yet be known. ACL and ACBL reurge their objections to the definitions of "your", "you", "allision", and "identifying" set forth above. This interrogatory is compound and multi-part in that it requests facts upon which particular statements were based, individuals and entities who may have knowledge regarding those facts, as well as documents relevant to those contentions. The interrogatory seeks legal conclusions and admissions which

are improperly placed in an interrogatory. ACL and ACBL's theories of fault and the reasons why Brown Water is not entitled to limitation are based upon theories developed by counsel, and, as such, are attorney/work product, and if revealed to ACL/ACBL, fall within the attorney/client privilege. Without waving their objection, ACL and ACBL answer as follows:

Under law, in a towage situation, the M/V BROWN WATER V is the dominant mind. Under those situations, there is a presumption of fault against Brown Water as a result of its moving vessel pushing its tow into a fixed object. At the time of the accident, the M/V BROWN WATER V was controlled by Brown Water and crewed by Brown Water. There is information contained in the U. S. Coast Guard hearing transcript and exhibits that the relief captain of the M/V BROWN WATER V improperly navigated the towing vessel at the time of the accident.

Brown Water is only entitled to limit its liability for negligent conduct, and not for any contractual duty such as Brown Water undertook in its towage contract with ACBL. Accordingly, Brown Water is not entitled to limit its liability with respect to any claims made by ACBL.

ACL and ACBL do not know the identity of "all persons who have knowledge or information of any kind regarding these contentions" but believe that those persons identified in disclosures and responses to discovery may have information or knowledge.

ACL and ACBL believe that documents attached to this discovery, documents produced by other parties, or exhibits to the U. S. Coast Guard hearing may have relevance.

**INTERROGATORY NO. 13:**

If you contend that the allision was caused by the fault (i.e.- negligence, statutory violations, or unseaworthiness) of any person or entity other than ACBL, or any vessel other than the barges, please identify each person, entity or vessel that you contend was at fault and for each person or entity you identify, state in specific detail each and every fact on which you base these

contentions, identifying all persons or entities who have knowledge or information of any kind regarding these contentions and any documents that are relevant to these contentions.

## ANSWER TO INTERROGATORY NO. 13:

ACL and ACBL object to this interrogatory insofar as it requests information which is protected from discovery by the attorney/client privilege, work product doctrine or was created in anticipation of litigation. The request is also a contention interrogatory and is premature as discovery is ongoing and the facts and circumstances of the incident which are the subject of this suit are still under investigation and may not yet be known. ACL and ACBL reurge their objections to the definitions of "you", "barges", "allision", "ACBL", "identify" and "identifying" set forth above. This interrogatory is compound and multi-part and requests facts upon which a legal conclusion is based, individuals and entities who may have knowledge regarding those facts, as well as documents relevant to those contentions. Without waving their objections, ACL and ACBL answer as follows.

ACL and ACBL, at the present time, contend that the allision was caused by the navigational negligence of the operator of the M/V BROWN WATER V for whom Brown Water is responsible. Please see ACL and ACBL's response to Interrogatory No. 12 for further answer to ACL and ACBL's contentions as to the negligence of the M/V BROWN WATER V, and Brown Water.

ACL and ACBL are unaware of any person having "knowledge or information of any kind regarding these contentions" other than those persons who have already been identified in Initial Disclosures by ACL and ACBL and other parties to these consolidated actions and/or identified by parties in responses to discovery and/or who may have been identified at the United States Coast Guard hearing. The same holds true for the identity of any "documents".

## INTERROGATORY NO. 14:

Please explain the complete corporate structure of ACBL, including in your response a description of the exact nature of the relationship (i.e., record owner, charterer. operator, etc.) of American Commercial Lines, L.L.C., American Commercial Bare Lines, L.L.C., and Houston Fleet, L.L.C. to each of the barges and to the BROWN WATER V, as well as a description of the exact nature of your relationship with Brown Water, and state with specificity the facts upon which your response is based. As part of your response, please identify all persons having knowledge of, and all documents reflecting, the structure and relationships that you describe.

## ANSWER TO INTERROGATORY NO. 14:

ACL and ACBL object to this interrogatory on the grounds that it is irrelevant, vague, immaterial, and not reasonably calculated to lead to the discovery of admissible evidence. ACL and ACBL reurge their objections to the definitions of "your", "you", "barges", "identify" and "ACBL" set forth above. The term "relationship" is vague and ambiguous and not defined and objected to. The term "etc." is vague and ambiguous and is objected to. This interrogatory is actually numerous interrogatories. The term "complete corporate structure" is ambiguous. Without waiving their objections, ACL and ACBL answer as follows.

ACL is a Delaware limited liability corporation having its principal place of business in Jeffersonville, Indiana. ACBL is a Delaware limited liability corporation having its principal place of business in Jeffersonville, Indiana.

ACBL is the bareboat charterer and owner pro hac vice of the barges in question. ACL is the owner of the Barges VLB-9182 and VLB-9173.

There is no "relationship" between Houston Fleet, LLC and any of the barges.

There is no "relationship" between Houston Fleet, LLC, ACL or ACBL and the M/V

BROWN WATER V. There is no "relationship" between Houston Fleet, LLC and Brown

Water. There is no "relationship" between ACL and Brown Water. The only relationship

between Brown Water and ACBL is that of principal and independent contractor. Brown Water

provides towage services from time to time for ACBL, pursuant to a verbal towage agreement as

an independent contractor.

ACBL and ACL cannot "identify all persons having knowledge", as it could not possibly

have that information. However, the individuals identified by Brown Water in their Initial

Disclosures and in their responses to discovery as employees of Brown Water, probably have

knowledge about Brown Water. The individuals identified in response to discovery by ACL and

ACBL, have knowledge of part or all of the information requested. The documents that reflect

the structure of ACL and ACBL are the documents under which they were created, which are

attached in response to request for production of documents. The ownership of the barges is

shown in the Certificates of Documentation attached in response to request for production of

documents. The charter of barges by ACL to ACBL is a verbal bareboat charter, and,

accordingly, there would be no documents. The charter of the other barges is contained in those

charter agreements which are attached in response to request for production of documents. The

contract of towage between ACBL and Brown Water is a verbal contract of towage, there is no

written contract.

**INTERROGATORY N0.15:**

Please state when and where each of the barges was constructed and identify the designer

and the builder of each barge. If any of the barges have ever been modified or reconstructed,

please provide the same information with respect to each modification/reconstruction.

**ANSWER TO INTERROGATORY NO. 15:**

Without waiving their general objections, ACL and ACBL respond as follows:

ACL and ACBL have no information that any of the barges have ever been "modified" or "reconstructed" since the time of their construction.

The Barge VLB-9182 was constructed and designed by Jeffboat, LLC, Market Street, Jeffersonville, Indiana, in 1991. The Barge VLB-9173 was constructed and designed by Jeffboat, LLC, Market Street, Jeffersonville, Indiana, in 1991. The Barge ACBL-9933B was designed and constructed by Jeffboat, LLC, Market Street, Jeffersonville, Indiana, in 1997. The Barge NM-0315 was constructed by Equitable Shipyards, Madisonville, Louisiana, in 1989. The designer of that barge is not known.

**INTERROGATORY NO. 16:**

At the time when Brown Water in general, and the BROWN WATER V in particular, were selected to perform the tow of the barges for the voyage during which the allision occurred, please describe all information and documentation that was know to ACBL, with respect to the safety record and competence of Brown Water, the safety record, experience and competence of the crew that would be manning the BROWN WATER V during the voyage and the condition, sufficiency and seaworthiness of the BROWN WATER V and her equipment.

**ANSWER TO INTERROGATORY NO. 16:**

ACL and ACBL reurge their objections to the definitions of "barges", and "ACBL" set forth above. Without waiving their objections, ACL and ACBL respond as follows:

ACL did not select or contract with Brown Water or the M/V BROWN WATER V.

With respect to ACBL, see answers to Interrogatories Nos. 7 and 10. ACBL did not select the BROWN WATER V. The documentation regarding Brown Water would be its record with ACBL. Documents regarding prior claims are attached to requests for production. The safety audit of Brown Water is also attached to requests for production.

**INTERROGATORY NO. 17:**

With respect to the allision and any damages allegedly caused by the allision, have you entered into any compromise settlement agreements, covenants not to sue, "hold harmless" agreements, indemnity agreements, "Mary Carter" agreements, joint defense agreements, or any other similar agreements or arrangements with any other person or entity? If so, identify the persons or entities with which you have reached an agreement or arrangement and state the specific terms of each agreement or arrangement.

**ANSWER TO INTERROGATORY NO. 17:**

ACL and ACBL object to the extent this interrogatory seeks information covered under the attorney/client privileged or work product doctrine. ACL and ACBL reurge their objections to the definitions of "allision", "identify" and "you" as set forth above. The term "other similar agreements or arrangements" is vague and ambiguous and objected to. Without waiving their objections, ACL and ACBL have not entered into any agreement described in Interrogatory No. 17 other than a verbal agreement with counsel for Brown Water with respect to the defense of the claimants' damages issues common to both ACL/ACBL and Brown Water. Additionally, ACL and ACBL have produced documents regarding its coverages under policies of insurance issued to Brown Water.

**INTERROGATORY NO. 18:**

For the period from 1992 to the present, describe all vessels that have been used by ACBL to move barges in the area where the allision occurred (i.e. - the area between the Long

Island Swing Bridge and the Causeway), including in your response the name, official number, length, breadth, depth, gross tonnage, net tonnage, and horsepower of each vessel.

## ANSWER TO INTERROGATORY NO. 18:

ACL and ACBL object to this interrogatory on the grounds that it is irrelevant, vague, immaterial, overly broad, unduly burdensome and not reasonably calculated to lead to the discovery of admissible evidence. ACL and ACBL reurge their objections to the definitions of "ACBL", "your" and "allision" set forth above. The interrogatory seeks information for a ten year period which is wholly unreasonable, irrelevant, over-broad and unduly burdensome. Furthermore, the interrogatory seeks information regarding a description of "all vessels" that have been used to move any ACBL barges which is also unreasonable, irrelevant, over-broad, and unduly burdensome. The interrogatory also seeks particular information regarding such vessels, which information is not kept in the regular course of business. The request is compound and multi-part as well because it requests at least eight specific items of information relating to any number of vessels referenced in Interrogatory No. 18. The over-broad and unduly burdensome nature of this request is intended solely to harass ACBL and does not fall within the scope of discovery permitted in the Federal Rules of Civil Procedure. Without waiving their objection, ACL and ACBL respond as follows:

ACL does not engage any vessels to tow its barges. ACL-owned barges are bareboat chartered to ACBL. See response to Interrogatory No. 7.

ACBL can only provide the name, official number, length, breadth, depth, gross tonnage and net tonnage and horsepower of towboats that may have been operated by ACBL and used to move its barges, and does not maintain information with respect to third-party towboats, as requested in this interrogatory. Additionally, ACBL has done its best to determine which towboats may have been used to tow barges in the area in question, but cannot be certain that

there may not be additional towboats which have not been listed because of the period of time in question.

With respect to vessels which may have been owned by ACL and bareboat chartered to and operated by ACBL or Delaware Marine, Inc. at the time of towage:

| Vessel Name | Official Number | Length | Breadth | Depth | Gross Tonnage | Net Tonnage | Horsepower |
|---|---|---|---|---|---|---|---|
| M/V DONALD CLARK | 621035 | 81.5 | 28 | 9.5 | 208 | 141 | 1800 |
| JAMES E. PHILPOT | 568630 | 76 | 30 | 8.5 | 214 | 145 | 1800 |
| RUSTY BARRILLEAUX | 566622 | 76 | 30 | 8.5 | 214 | 145 | 1800 |
| D.O. DONHAM | 575251 | 76 | 30 | 8.5 | 214 | 145 | 1800 |
| CHARLES M. | 625777 | 61.2 | 26.1 | 9.9 | 162 | 110 | 1200 |
| JAKE HUFFTY | 630290 | 63 | 24.1 | 9.6 | 137 | 93 | 1200 |
| BOB HELTON | 512615 | 78 | 26.5 | 9.6 | 157 | 90 | 1000 |
| LENWARD STEPHENS | 577475 | 76 | 30 | 8.5 | 214 | 145 | 1800 |
| BILL FORREICH | 570081 | 76 | 30 | 8.5 | 214 | 145 | 1800 |
| REGINA ANN | 623859 | 61 | 26.1 | 9.9 | 162 | 110 | 1200 |
| GENE HUFFTY | 638074 | 61.2 | 26.1 | 9.9 | 162 | 110 | 1350 |

The following tugs were not operated or owned by ACBL or ACL at the time of towage:

1.     A towboat or towboats owned by Gateway Towing, Inc.

2.     Eliz Kelso.

3.     Hazel R.

4.     Porpoise.

5.     El Torro.

6.     Jenny W.

7.     Jackie Lee.

8.     Douglas B.

9.     Uncle Nu.

10.    Walter Blessey.

11.    Abbie C.

12.    Regina Ann.

13.    Tracy Renee.

14.    Audrey.

15.    Towboats owned by Hollywood Marine, Inc.

16.    Big Easy.

17.    Towboats owned or operated by L&T Towing Company, Inc.

18.    Nancy Gisclair.

19.    Jackie Leigh.

20.    Towboats owned by National Marine Service, Inc.

21.    Kristy Leigh.

22.    Regina Ann.

23.    Warsaw.

24.    Captain Jack.

25.    Brown Gulf.

26.    Brown Tide.

27.    Brown Water II.

28.    Brown Tide.

29.    Lamar Hirsh.

30.    R. Eckstein.

31.    P. Salvaggio.

32.    Brown Gulf.

33.    Brown Water VI.

34.    Brown Water VII.

35.    Elissa.

36.    Brown Water V.

37.    Brown Water I.

38.    Brown Water VIII.

39.    R. Salvaggio.

40.    E.M.S. Express.

41.    Stallion.

42.    Cheryl K.

43.    Marsh Runner.

44.    M. Legend.

45.    Karen.

46.    M. Alice.

47.    C. Dobard.

48.    M. Master.

49.    Brown Canal.

50.    Vecturian.

51.    Basin Courage.

52.    Z. M. Deloach.

53.    Carson.

54.    Arlene Garritt.

55.    Lucy Brooks.

56.    K. Faughn.

57.    Sequoia.

## INTERROGATORY NO. 19:

For each vessel listed in your response to Interrogatory No. 18, please state whether, to your knowledge, the vessel has, since 1992, been involved in any other allision and/or any collision, grounding, sinking, fire, pollution incident or other marine casualty? If so, describe and state the date and location of each such casualty, state the identity of all persons, entities and vessels involved, and describe any claims, demands, lawsuits or Coast Guard action that resulted from any such casualties.

## ANSWER TO INTERROGATORY NO. 19:

ACL and ACBL object to this interrogatory on the grounds that it is irrelevant, vague, immaterial, overly broad, unduly burdensome and not reasonably calculated to lead to the discovery of admissible evidence. ACL and ACBL reurge their objections to the definitions of "your" and "identity" set forth above. Furthermore, this interrogatory contains a request for information which is more readily obtainable and properly obtained through other companies which owned or operated third-party towboats. The request is not limited to a reasonable time frame and spans a ten year period seeking information which is irrelevant to the subject-matter of this suit. The request is compound and multi-part in that the first sentence requests additional information regarding Interrogatory No. 18, therefore, the objections contained in that interrogatory are reurged herein. The second sentence is a separate interrogatory requesting at least three separate types of information. This interrogatory is overly broad and unduly burdensome and is purpose is to improperly harass ACL and ACBL. Without waiving the foregoing objections, ACL and ACBL respond as follows. With respect to information ACBL had with respect to BROWN WATER owned vessels, see response to Interrogatory No. 21.

**INTERROGATORY NO. 20:**

In addition to Brown Water, please identify all other towing companies that had the capability of moving barges through the area between the Long Island Swing Bridge and the Causeway on September 15 - 16, 2001.

**ANSWER TO INTERROGATORY NO. 20:**

ACL and ACBL object to this interrogatory on the grounds that it is irrelevant, vague, immaterial, overly broad, unduly burdensome and not reasonably calculated to lead to the discovery of admissible evidence. ACL and ACBL reurge their objections to the definition of "identify" set forth above. The interrogatory seeks information on "towing companies that had the capability of moving barges." The word "capability" is vague and ambiguous. ACL and ACBL do not know "all other" towing companies that had the capability of towing barges in the area described, but assume that any qualified towing company that had a towing vessel available could have towed barges in the area and during the time period described.

**INTERROGATORY NO. 21:**

In the last twenty (20) years, please describe each and every incident in which a barge owned, operated, chartered or controlled by ACBL struck a bridge or other fired structure, and, for each such incident, indicate when and where the allision occurred, the identities of all parties and vessels involved, and, if litigation resulted, the case name, court, docket number, and outcome.

**ANSWER TO INTERROGATORY NO. 21:**

ACL and ACBL object to this interrogatory on the grounds that it is irrelevant, vague, immaterial, over-broad, unduly burdensome and not reasonably calculated to lead to the

discovery of admissible evidence. ACL and ACBL reurge their objections to the definitions of "ACBL" and "identify." Furthermore, this interrogatory spans a 20 year period and is not limited to a specific geographic location or to the company towing the barges at the time of the accident relative to this dispute; therefore, the request seeks information which is irrelevant to the subject matter of this suit, overly broad, unduly burdensome and the purpose of this interrogatory is to harass ACL and ACBL. Furthermore, the interrogatory contains at least four separate areas of inquiry. It would be unduly burdensome for ACBL to review 20 years of voluminous records, if they existed, which are not maintained in such a manner to "identify" the information requested. ACL owns and ACBL operates over 150 towboats and has thousands of barges on the major inland waterways of the United States. Without waiving these objections, ACL and ACBL respond as follows:

With respect to barges operated by ACBL which were towed by vessels either owned by Brown Water or contracted to Brown Water, ACBL has information regarding 3 incidents within the approximate 10 year period prior to the allision during which Brown Water was contracted to perform independent towing services for ACBL in which Brown Water and/or a Brown Water contracted tower damaged ACBL barges or grounded an ACBL barge. Those incidents are as follows:

1.    On September 13, 2001 - Brown Water advised that its vessel BROWN WATER V damaged the NMS-1497

2.    On December 28, 1997 - Brown Water reported that the Barge VL-81272 in tow of the M/V BROWN WATER I had struck a buoy and sustained damage.

3.    On March 19, 2000 - it was reported that the M/V ARLENE GARRITT, a vessel not owned by Brown Water, but towing for Brown Water, had grounded the Barge Chem 235. There was no damage to the barge.

**INTERROGATORY NO. 22 :**

Please state whether ACBL has ever had in place any rules, regulations, policies. procedures, guidelines, etc. to govern the horsepower that should or must be used in towing ACBL barges, whether in general or with respect to specific areas and/or conditions, and, if so, please describe all such rules, regulations, policies, procedures, guidelines, etc., explain what definition ACBL uses for "horsepower" in the context of evaluating or determining the horsepower of vessels that will be used to tow ACBL barges, and identify any documents that reflect the rules, regulations, policies, procedures, guidelines, etc. referenced in your response.

**ANSWER TO INTERROGATORY NO. 22:**

ACL and ACBL object to this interrogatory on the grounds that it is irrelevant, vague, immaterial, overly broad, unduly burdensome, not reasonably calculated to lead to the discovery of admissible evidence, not limited in geographical location or time and is compound and multi-part, given that the interrogatory contains at least four separate interrogatories. ACL and ACBL reurge their objections to the definitions of "ACBL", "identify" and "your" set forth above. Without waiving its objections:

ACL has none. See response to Interrogatory No. 7.

With respect to any towing vessels, other than those operated by ACBL, see ACBL's Answer to Interrogatory No. 4. With respect to ACBL operated towing vessels, ACBL has no rules, guidelines, policies, procedures, or regulations to govern what should or must be used in towing ACBL barges in the Intracoastal Waterway, including the Western Intracoastal Waterway and the area of the allision. With respect to other ACBL guidelines, see documents attached to response to request for production of documents which speak for themselves. The request to

"explain what definition uses for horsepower..." is vague and ambiguous but ACBL uses the engine manufacturer's horsepower rating.

## INTERROGATORY NO. 23:

Have you or any other person on your behalf taken a statement, whether oral or written, from any person, (including, but not limited to any individual Claimant, or any employee or representative of any Claimant) who allegedly has knowledge of any disputed fact, circumstance, claim or defense which is alleged with particularity in the pleadings of these consolidated suits? If so, please identify each person or entity whose statement was taken and indicate when, where and by whom each statement was taken and all persons present when each statement was taken.

## ANSWER TO INTERROGATORY NO. 23:

ACL and ACBL object as this interrogatory calls for documents expressly protected from discovery under the attorney/client privilege or work product doctrine, or which were prepared in anticipation of litigation and thereby are not discoverable. ACBL reurges its objections to the definitions of "you", "identify" and "your" set forth above. Without waiving their objections, ACL and ACBL have not taken any statements nor have they caused any to be taken.

## INTERROGATORY NO. 24:

For the period from 1992 to the present, please list every industry association, organization or committee that ACBL has held membership in or been involved with (for example, American Waterways Operators, American Inland Mariners Association, Coast Guard Towing Safety Advisory Committee, Greater New Orleans Barge Fleeting Association, etc.) and identify the people within ACBL who are most familiar with each such association, organization or committee.

## ANSWER TO INTERROGATORY NO. 24:

ACL and ACBL object to this interrogatory in that it is irrelevant, vague, immaterial, overly broad, unduly burdensome and not reasonably calculated to lead to the discovery of admissible evidence. The request asks for information for ten years which is irrelevant and too long a time period. ACL and ACBL reurge their objections to the definitions of "ACBL"and "identify" set forth above. Furthermore, the vague and ambiguous nature of the interrogatory seeking information on those "within ACBL" who are most "familiar" with certain entities is vague, ambiguous, overly broad, and unduly burdensome. Without waiving the foregoing objections, ACL and ACBL answer as follows:

ACBL is and was at the time of the accident a member of the following:

American Waterways Operators;

Gulf Intracoastal Canal Association;

Texas Waterway Operators Association;

Lower Mississippi River Advisory Committee;

River Industry Advisory Committee;

River Industry Action Committee;

Illinois River Carriers Association;

Ohio River Industry Committee;

River Industry Executive Task Force;

Greater New Orleans Barge Fleeting Association;

National Waterways Conference;

MARC 2000;

Dynamo; and

Waterways Work.

{N0835321.1}

36

The individual who has information about the above is W. N. Whitlock.

## INTERROGATORY NO. 25:

At the time of the allision, please describe all rules, policies and/or procedures that ACBL had in effect that related in any way to the safe operation of ACBL vessels and barges (including tugs owned directly by ACBL), and identify any documents reflecting such rules, policies and/or procedures. If there have been any changes to any of the rules, policies and/or procedures that are described in your response, describe all such changes, identify any documents reflecting each change, and state why, when, and by whom each such change was made.

## ANSWER TO INTERROGATORY NO. 25:

ACL and ACBL object to this interrogatory on the grounds that it is irrelevant, vague, immaterial, over-broad, unduly burdensome, not reasonably calculated to lead to the discovery of admissible evidence, non-specific with regard to time or geographic location, is compound and multi-part and is unnecessarily cumulative and duplicative. ACL and ACBL object to the definition of "ACBL" and "identify" as set forth above. This interrogatory also calls for post-accident remedial measures and is objected to on that basis. Without waiving the foregoing objections, ACL and ACBL respond as follows:

ACL has none. See answer to Interrogatory No. 7.

With respect to towing vessels not operated by ACBL, ACBL has no documents. See ACBL's Answer to Interrogatory No. 4. With respect to tugs operated by ACBL, see documents attached to request for production of documents which contain this information and speak for themselves.

There have been no changes to any rules, policies or procedures of ACL or ACBL described in this response.

Respectfully submitted:

GLENN G. GOODIER (#06130)
Jones, Walker, Waechter, Poitevent,
  Carrere & Denegre, L.L.P.
201 St. Charles Avenue - 48th Floor
New Orleans, Louisiana  70170-5100
Telephone:  (504) 582-8174
Facsimile:  (504) 582-8010


LES CASSIDY
1020 Bank of America
500 North Water Street
Corpus Christi, Texas  78471
Telephone:  (361) 886-3253
Fax:  (361) 886-3299


OF COUNSEL:

WOOLSEY & CASSIDY, P.C.
1020 Bank of America
500 North Water Street
Corpus Christi, Texas  78471
Telephone:  (361) 886-3253
Fax:  (361) 886-3299


## CERTIFICATE OF SERVICE


I hereby certify that a copy of the foregoing has been properly mailed to all known potential parties and/or their counsel on this ___7 ___ day of ___June_____, 2002.

GLENN G. GOODIER

# VERIFICATION

**STATE OF INDIANA**

**COUNTY OF CLARK**

          **BEFORE ME,** the undersigned authority, personally came and appeared:

                    **DUANE A. KROHN**

who, after being duly sworn, did depose and say:

       I am employed by American Commercial Barge Lines, LLC as a Senior Risk Analyst and, as such, was tasked to assist counsel in gathering the necessary information and documents to respond to the interrogatories and requests for production of documents propounded by claimants to American Commercial Lines, LLC. and American Commercial Barge Lines, LLC. With the assistance of counsel, I obtained information to respond from various sources within the two companies. The responses given are true and correct to the best of my information, knowledge and belief.

                               _____
                               DUANE A. KROHN

Sworn to and Subscribed Before

me this _6th_ day of _June_, 2002.

_____
     NOTARY PUBLIC

                CYNTHIA L MCCAIN
           NOTARY PUBLIC STATE OF INDIANA
               CLARK COUNTY
          MY COMMISSION EXP. MAR. 2,2008

IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF TEXAS
BROWNSVILLE DIVISION

| | | |
|---|---|---|
| IN RE THE COMPLAINT AND | § | |
| PETITION OF AMERICAN | § | C. A. NO. B-02-004 |
| COMMERCIAL LINES LLC AS | § | Admiralty |
| OWNER, and AMERICAN | § | |
| COMMERCIAL BARGE LINES, LLC, | § | |
| AS CHARTERER OF THE BARGES | § | |
| NM-315, VLB-9182, ACL-9933B, | § | |
| VLB-9173, IN A CAUSE OF | § | Consolidated with |
| EXONERATION FROM OR | § | |
| LIMITATION OF LIABILITY | | |

| | | |
|---|---|---|
| IN RE THE COMPLAINT AND | § | |
| PETITION OF BROWN WATER | § | C. A. NO. B-01-157 |
| TOWING I, INC., AS OWNER, and | § | Admiralty |
| BROWN WATER MARINE SERVICE, | § | |
| INC., AS BAREBOAT CHARTERER OF | § | |
| THE BROWN WATER V, ITS ENGINES, | § | |
| TACKLE, ETC. IN A CAUSE OF | § | |
| EXONERATION FROM OR | § | |
| LIMITATION OF LIABILITY | § | |

AMERICAN COMMERCIAL LINES, LLC AND AMERICAN COMMERCIAL
BARGE LINES, LLC'S RESPONSE TO REQUEST FOR PRODUCTION OF
DOCUMENTS

NOW INTO COURT, through undersigned counsel comes American Commercial Lines LLC and American Commercial Barge Lines LLC who submit the following answers and objections to the Request for Production of Documents and avers as follows:

{N0835356.1}

## GENERAL OBJECTION

ACL and ACBL object to these Request for Production of Documents on the grounds and to the extent that they are irrelevant, vague, immaterial, over-broad, unduly burdensome, not reasonably calculated to lead to the discovery of admissible evidence and not pertinent to the subject-matter of this suit. Further, due to the overbreadth and vagueness, the Requests for Production also call for documents protected under the attorney/client privilege, work product doctrine or documents prepared in anticipation of litigation and are thereby not discoverable. Additionally, the Request for Production of Documents are unnecessarily cumulative, duplicative, compound and multipart and in some cases overlap with information requested in previous requests.

Additionally, the Request for Production of Documents are complex and multi-part so as to necessitate detailed instruction which unduly burdened the respondent. Specifically, the terms "identify", "identity", and "identification" when in "boldface" and when referring to people are defined differently from the "boldfaced" forms of "identify", "identity" and "identification" with respect to documents. In many cases, the requests are not clear as to whether it refers to a document or a person. Each definition requires at least four types of information to be provided if the term is in boldface. The use of such all inclusive definitions requiring a multitude of specific pieces of information, constitutes individual requests in and of themselves; therefore, the definition makes many of the Request for Production of Documents compound and multi-part.

Further, when in boldface, the terms "ACBL", "you" or "your" is defined as "any parent companies, related companies, affiliates, subsidiaries, and all or each of their predecessors, successors, assigns, agents, attorneys, owners, operators, officers, directors, shareholders, managers, agents, employees and any other person acting on their behalf." Obviously, the term is extremely over broad, unduly burdensome, vague, ambiguous, and all inclusive. The definition seeks information from barely defined entities who are not parties to this case or represented by undersigned counsel. The definition also references

{N0835356.1}

2

the attorneys for ACBL, which, in many instances in the particular Request for Production of Documents below, directly call for production of information which is clearly covered by the attorney client privilege or the work-product doctrine or was created in anticipation of litigation. Additionally, such an all inclusive definition clearly calls for information which could not possibly be relevant, information outside the scope of this case and information which could not lead to admissible evidence. These Requests for Production of Documents are actually compound, multi-part questions and is an attempt to get around the limitations that the Federal Rules of Civil Procedure and the Case Management Order have set on numerosity of Request for Production of Documents. The overbreath of entities which the definition applies to also attempts to have ACBL gather information and conduct investigations it would not otherwise need to obtain in order to conduct plaintiffs case and in order to allow plaintiff to conduct a "fishing expedition" not contemplated by the Federal Rules. As such, the term "ACL" will be interpreted to mean and will mean as used herein American Commercial Lines, L.L.C. and "ACBL", American Commercial Barge Lines, L.L.C only.

If the term "barges" is in bold, the instructions include a reference to four barges: NM-315, VLB-9182, ACBL-9933 and VLB-9173. If the term "barges" is not in bold then the definition refers to any and all barges. Each Request for Production of Document referencing the term "barges" contains a compound, multi-part inquiry and exceeds the number of Request for Production of Documents allowed under the Federal Rules of Civil Procedure and the Case Management Order. Additionally, the use of barges with the intent to include any and all barges owned and/or chartered by ACL/ACBL is so broad, vague and ambiguous as to unduly burden ACBL where no limitations have been put on such reference. This definition is intended to harass ACBL.

The term "allision" sets forth a statement of the facts of this case which are still at issue and under investigation. By responding to the Interrogatories below, ACL and

ACBL are not assenting to the definition of the "allision" as stated in the definition portion of the Request for Production of Documents.

ACL and ACBL further object to the information and instructions requested at the beginning of the Request for Production of Documents. The instructions command that documents be produced for inspection and "performing related acts" which is vague, ambiguous, over broad and unduly burdensome. The discovery mandates that the requests are continuing and supplemental answers are promptly required if ACBL "directly or indirectly obtains further information of the nature sought herein." The reference is vague and ambiguous as to the intent of the request with regard to the use of the term "indirect" and the phrase "nature sought herein." Further, ACBL objects to the definition of "knowledge, information or other items in the possession or control of ACBL" which is defined to be and includes "knowledge, information in the possession or control of ACBL, its agents, representatives, underwriters, employees, servants or others over whom ACBL has control, including their attorneys, in addition to ACBL individually." The mandate is irrelevant, vague, ambiguous overly broad unduly burdensome and could potentially lead to information which is protected by the attorney/client privilege, work product doctrine or was prepared in anticipation of litigation and is thereby not discoverable. Furthermore, the demand covers individuals whom the undersigned does not represent and whom ACL and ACBL do not control; therefore, the mandate contained in the "directions" to the discovery is inappropriate and objectionable. Additionally, such information may include hearsay evidence and evidence which would have no conceivable bearing on the subject matter of this case. Without waiving the foregoing objections, ACL and ACBL respond as follows:

## REQUEST FOR PRODUCTION NO. 1:

All rough logs, smooth logs, scratch pads, notes, billing logs, radio logs, engine room logs, maintenance logs, dispatcher logs, safety meeting reports, tow matrices, inspection reports, requisition forms, permits, and/or any other logs, reports, notes, forms,

or other **documents** of any type or description relating to the activities of the **barges** and/or the BROWN WATER V or her crew during the months of August, September and October, 2001.

## RESPONSE TO REQUEST FOR PRODUCTION NO. 1:

ACL and ACBL object to the extent that this request is vague, immaterial, overly broad, unduly burdensome and not reasonably calculated to lead to the discovery of admissible evidence. ACL and ACBL further reurge their objection to the definition of "barges". The request is also objectionable in that it seeks scratch pads, notes, other documents of any type or description relating to the activity of the barge, barges or the BROWN WATER V. Such statement is vague, ambiguous, over broad and unduly burdensome. Additionally, the request is also compound and multi-part in that it requires a detailed list of information for four separate barges, a vessel, and the vessel's crew. Without waiving those objections, ACL and ACBL respond as follows:

ACL has no documents.

ACBL attaches herewith the barge history reports for the four barges showing their activity. ACBL has no information with respect to the M/V BROWN WATER V and her crew other than might be reflected in the documents attached to this request and/or the other requests. The United States Coast Guard hearing transcript and the exhibits to that hearing contain certain information which may be responsive to this request. Counsel for claimants have a copy of this information.

## REQUEST FOR PRODUCTION NO. 2:

Any and all Coast Guard CG-2692 forms, witness statements, diagrams, notes, reports, CG-2692B forms or other **documents** relating to any post-accident drug or alcohol testing, photographs, video tapes, audio tapes, charts, graphs, survey reports, investigation reports, letters of warning, reprimands, notices, subpoenas, or other **documents** that **you** gave to or received from the United States Coast Guard, the National Transportation Safety Board, or any other governmental entity in connection

{N0835356.1}

5

with this **allision**, as well as any such **documents** pertaining to any other allisions or to any collisions in which any vessels or barges owned, operated, crewed or controlled by ACBL have been involved during the period from 1992 to the present.

**RESPONSE TO REQUEST FOR PRODUCTION NO. 2:**

ACL and ACBL object to this request calling for production of documents with respect to any other "allisions or collisions in which vessels owned, operated, crewed or controlled by ACBL have been involved during the period from 1992 to present" on the grounds that it is irrelevant, vague, immaterial, overly broad, unduly burdensome and not reasonably calculated to lead to the discovery of admissible evidence. ACL has owned and ACBL has bareboat chartered and operated thousands of barges and hundreds of towboats during the period of time in question on the inland waterways of the United States. ACL and ACBL reurge their objection to the definitions of "you", "allision" and "ACBL" stated above. Additionally, the request seeks information for a ten year period of ACL and ACBL operations which will require unduly burdensome recreation of records which may not be kept in the ordinary course of business and which, in many cases, either have not been retained or may not exist.

Additionally, the request is compound and multi-part in that it separately requests the same information for separate, unrelated incidents in which any vessel, barge owned, operated, crewed or controlled by ACBL had been involved during the period of 1992 to the present. The information has been requested solely for the purpose of harassment of ACBL. Accordingly, without waiving any of their objections, ACL and ACBL respond as follows:

Neither ACL nor ACBL have given to or received from the United States Coast Guard, the National Transportation Board, or any other governmental entity any of the documents requested in connection with the allision.

**REQUEST FOR PRODUCTION NO. 3:**

For the last five years, copies of all corporate income tax returns filed on behalf of **ACBL**, copies of all **ACBL** annual reports, and copies of all financial statements submitted by or on behalf of **ACBL** to any bank, financial institution, court, industry organization, customer, or governmental agency.

**RESPONSE TO REQUEST FOR PRODUCTION NO. 3:**

ACL and ACBL object on the grounds it is irrelevant, vague, immaterial, over broad and unduly burdensome and not reasonably calculated to lead to the discovery of admissible evidence. ACL and ACBL reurge their objection to the definition of "ACBL" stated above. The over breadth of the request is objectionable as it seeks three separate types of information given to "any bank, financial institution, court, industry organization, customer or governmental agency" which represents a breadth and scope of inquiry not contemplated by the federal rules of civil procedure, specifically FRCP 26 and 34. The financial status of ACBL is not at issue in this case. This request is wholly irrelevant as it has no bearing on the subject matter of this case. Accordingly, without waiving any objections, ACL and ACBL respond as follows:

See attached copy of Form 10K for the years 1998-2001 for ACL. (ACBL is a wholly owned subsidiary of ACL).

**REQUEST FOR PRODUCTION NO. 4:**

For the period from 1992 to the present, complete copies of any and all operations manuals, safety manuals, other manuals, procedures, books, booklets, programs, memos, training materials, checklists, matrices, audit reports, board of directors minutes, or other **documents** providing, explaining, discussing or critiquing: the rules, policies, or procedures governing the selection, loading, unloading, operation or navigation of **your** barges; the rules, policies, or procedures governing the selection, operation or navigation of vessels used to tow **your** barges; or the rules. policies or procedures governing **your** hiring, safety and training programs.

## RESPONSE TO REQUEST FOR PRODUCTION NO. 4:

ACL and ACBL object to this request on the grounds that it is irrelevant, vague, immaterial, over broad, unduly burdensome and not reasonably calculated to lead to the discovery of admissible evidence or evidence which is relevant to the subject matter of this case. ACL and ACBL reurge their objections to the definition of "your" stated above. Additionally, the term "barges" is objectionable because it is not limited to the barges which are pertinent to the subject matter in this suit. The term purports to include any barge, anywhere that ACBL has owned, operated, controlled or contracted with, which is vague, over broad, unduly burdensome, ambiguous and not pertinent to the subject matter of this suit.

The ten year period requested is over broad and will not lead to relevant information.

Additionally, requests for "other manuals", "memos", "checklists", "audit reports"," board of director minutes" and "other documents" is vague, ambiguous, overly broad, unduly burdensome and not pertinent to the subject matter of this case.

Additionally, the request is compound and multi-part in that its areas of inquiry are separate and distinct and require three separate responses to the three separate requests. Accordingly, without waiving any of their objections, ACL and ACBL respond as follows:

ACL has none.

ACBL has no documents in response with respect to towboats owned and operated by independent contractor towing companies hired to tow ACBL's barges. (See Answer to Interrogatory No. 4). Continuing its objections as to relevance, materiality and admissibility, ACBL produces its manuals that are applicable to its bareboat chartered towing vessels which were in effect at the time of the allision.

## REQUEST FOR PRODUCTION NO. 5:

For the period from 1992 to the present, all **documents** that explain or govern the considerations, programs, rules, policies, procedures, or guidelines used by **ACBL** to determine what towing companies and what specific towing vessels would be used to tow barges owned, operated, controlled by or under contract to **ACBL**, specifically including, but not limited to all **documents** used to investigate, determine or verify the safety record, experience and competence of a particular towing company and of the crews of particular towing vessels, as well as all **documents** used to investigate, determine or verify the particular characteristics, sufficiency and seaworthiness of particular towing vessels.

## RESPONSE TO REQUEST FOR PRODUCTION NO. 5:

ACL and ACBL object to the definition of "ACBL" as set forth above. Additionally, the term "barges" is objectionable because it is not limited to the barges which are pertinent to the subject matter in this suit and include any barge, anywhere that ACBL has chartered, operated, controlled or contracted, which is vague, over broad, unduly burdensome, ambiguous and not pertinent to the subject matter of this suit. The ten year period requested is also over broad and will not lead to relevant information pertinent to the subject matter of this suit. The intent of this scope of the request is to harass ACBL.

The vagueness and ambiguity of the request is illustrated in seeking "all documents which could explain or govern the considerations" used by ACBL in making certain determinations.

Additionally, the request is compound and multi-part in that it seeks documents in three distinct areas regarding: (1) determination of towing company and vessels; (2) determination safety records, etc. of a towing company and crew; and (3) documents used to verify particular characteristics and seaworthiness of vessels. Accordingly, without waiving the foregoing objections, ACL and ACBL respond as follows:

ACL has none.

ACBL has no documents as described that it uses to determine what independent contractor third-party towing companies would be used to tow its barges (See Answer to Interrogatory Nos. 7 and 10 which describe ACBL's procedures in selecting those companies). ACBL does not select the towboats; those are selected by the independent contractor towing companies. With reference to Brown Water, see the Safety Audit attached.

**REQUEST FOR PRODUCTION NO. 6:**

For the period from 1992 to the present, all **documents** that relate to concerns, conditions, or potential dangers posed by underpowered tows and/or by current and wind in general, and/or concerns, conditions or potential dangers posed by specific geographic areas or specific waterways where **your** barges and vessels transit.

**RESPONSE TO REQUEST FOR PRODUCTION NO. 6:**

ACL and ACBL object to this request on the grounds that it is irrelevant, vague, immaterial, over broad, unduly burdensome and not reasonably calculated to lead to the discovery of admissible evidence. ACL and ACBL reurge their objection to the definition of "your" stated above. The ten year period in question is also over broad and will not lead to relevant information.

The request is not limited to any documents that ACL or ACBL might have but seeks "all documents" and seeks information which is equally obtainable by the individuals propounding the discovery. ACL and ACBL cannot be required to conduct plaintiff's investigation in this case.

Additionally, the request is not limited with regard to geographic location specific to this case and indeed spans any area where any ACBL barge or vessel has ever transited since 1992. Without waiving the foregoing objection, ACL and ACBL respond as follows:

{N0835356.1}

*Should be dangers.*

ACL and ACBL do not have any documents relating to concerns, conditions or potential damages posed by underpowered tows as set out in this request.

With respect to current, winds, concerns, conditions or potential dangers posed by specific, but unspecified, geographic areas and specific, but unspecified, waterways where ACBL vessels transit, this request is overly broad, vague, confusing and ambiguous. Subject to and without waiving objections, we would refer you generally to maps, charts and publications regarding the inland waters of the United States that might be used by the operator of an inland towboat. These are available from marine sources and appropriate governmental entities, such as the United States Army Corps of Engineers, the National Oceanic and Atmospheric Administration, and the United States Coast Guard.

**REQUEST FOR PRODUCTION NO. 7:**

All promotional brochures, specification sheets, surveys, manuals, or other **documents** reflecting the capabilities, dimensions, equipment, horsepower and/or specifications of all vessels that have been used over the last ten (10) years to tow **your** barges in the area where the **allision** occurred *(i.e.-* the area between the Long Island Swing Bridge and the **Causeway**). specifically including, but not limited to all vessels owned, operated or controlled by **Brown Water**.

**RESPONSE TO REQUEST FOR PRODUCTION NO. 7:**

ACL and ACBL object to this request on the grounds that it is irrelevant, vague, immaterial, over broad and unduly burdensome and not reasonably calculated to lead to the discovery of admissible evidence. ACL and ACBL reurge their objections to the definition of "your" and "allision". The ten year period requested is also overly broad and is not reasonably calculated to lead to the discovery information relevant to the subject matter of this suit.

Without waiving the foregoing objections, ACL and ACBL respond as follows:

Neither ACL nor ACBL have any documents that apply to vessels operated by independent contractor towing companies. As to vessels operated by ACBL, see Answer to Interrogatory No. 18 which gives the information requested. Any further documentation with respect to ACL owned and ACBL bareboat chartered vessels will be made available at their offices in Jeffersonville, Indiana.

**REQUEST FOR PRODUCTION NO. 8:**

With respect to the voyage during which the **allision** occurred, any **documents** that reflect or discuss the characteristics of each **barge** *(i.e.* - length, width, draft empty and loaded, whether rake or box hull configuration, whether equipped with bow thrusters, steeling assists, *etc.);* where each **barge** was picked up; the destination and scheduled arrival time for each **barge**; all scheduled pickups and drops; all actual pickups and drops; how each **barge** was loaded in terms of cargo, weight and draft; the order in which the tow was built; and the exact manner and configuration in which the **barges** were made up *(i.e.-* the type of rigging used, where the **barge** was positioned in the string and whether the **barge** was positioned stern first or bow first in the string).

**RESPONSE TO REQUEST FOR PRODUCTION NO. 8:**

ACL and ACBL object to this request on the grounds that it is irrelevant, vague, immaterial, over broad, unduly burdensome and not reasonably calculated to lead to the discovery of admissible evidence. ACL and ACBL reurge their objection to the definition of "allision" and "barge".

This request is compound and multi-part and, as such, adds to the general objection that these requests exceed the allowed number of requests.

Without waiving the foregoing objections, ACL and ACBL respond as follows:

See Answer to Interrogatory No. 9. See United States Coast Guard records attached. See cargo information sheets attached. See Barge Histories attached in response to Request No. 1. The United States Coast Guard Transcript and exhibits have information responsive to this request and counsel for claimants has a copy.

## REQUEST FOR PRODUCTION NO. 9:

The entire vessel file of the each of the **barges** including, but not limited to, the certificate of documentation and certificate of inspection, all **documents** relating to dry dockings, maintenance and repairs to the **barges**, all **documents** regarding the actions of the American Bureau of Shipping (ABS), American Waterways Operators (AWO) and/or any other classification society or industry organization relative to the **barges**, all **documents** relating to the actions of the Coast Guard and/or any other governmental agency relative to the vessel, and all other similar **documentation** for the **barges**.

## RESPONSE TO REQUEST FOR PRODUCTION NO. 9:

ACBL objects to this request on the grounds that it is irrelevant, vague, immaterial, over broad, unduly burdensome and not reasonable calculated to lead to the discovery of admissible evidence. ACBL reurges its objections to the definition of "barges" stated above. The term "other similar documentation for the barges" is ambiguous and cannot be responded to.

Again, this request is an attempt to elaborate a vague, ambiguous, sweeping request with more specific information in order to get around the requirements of the Federal Rules of Civil Procedure in limiting the number of requests and interrogatories which are propounded to any particular party. Accordingly, without waiving the objections set forth above, ACL and ACBL respond as follows:

See responses to Request No. 8 which attaches the Certificates of Documentation. See attached barge maintenance lists. ACL and ACBL have no other documents responsive to this request.

## REQUEST FOR PRODUCTION NO. 10:

All blueprints and all outboard profile drawings, general arrangement drawings, and other drawings of the **barges** as originally constructed, as they existed at the time of the **allision**, and as they exist now.

**RESPONSE TO REQUEST FOR PRODUCTION NO. 10:**

See attached drawings, which are the only drawings in ACL and ACBL's possession. They do not have a copy of any drawings of the Barge NM-315. Drawing No. B-12171 is for both VLB-9182 and VLB-9173, as they are of the same series.

**REQUEST FOR PRODUCTION NO. 11:**

Any safety audits, questionnaires, policies, or other **documents** that reflect any effort by **ACBL** to monitor the operations, policies and/or safety record of **Brown Water**, its employee, and/or any vessels owned, operated or controlled by **Brown Water**.

**RESPONSE TO REQUEST FOR PRODUCTION NO. 11:**

ACL and ACBL reurge their objection to the definition of "ACBL" set forth above. The term "any effort" is vague and ambiguous and objected to. Accordingly, without waiving the foregoing objections, ACL and ACBL respond as follows:

ACL has none.

For ACBL, see Answer to Interrogatory No. 7 and the audit attached to Request No. 5.

**REQUEST FOR PRODUCTION NO. 12:**

Any and all photographs, videotapes, surveys, data compilations, diagrams, charts, graphs, and/or other **documents** or items purporting to show the vessels or structures involved in the **allision**; the condition or value of the involved vessels or structures either before or after the **collision**; and/or the appearance, surface conditions, or bottom conditions of the area where the **allision** occurred (i.e.- the area between the Long Island Swing Bridge and the **Causeway**).

**RESPONSE TO REQUEST FOR PRODUCTION NO. 12:**

ACL and ACBL reurge their objections to the definition of "allision" as set forth above.

Additionally, the term "collision" is set forth in bold which indicates, according to the definition section, that such term may have an expansive and elaborate meaning.

However, as no such definition has been set forth herein, ACL and ACBL will construe the term in accordance with its plain meaning.

Further, this request seems to require production of documents or things not under the control of ACL and ACBL and which should be obtained from other sources and as such are objected to.

Additionally, the request is compound and multi-part in that it contains a minimum of three separate request for production of documents. Without waiving the foregoing objections, ACL and ACBL respond as follows:

ACL has none.

ACBL attaches a survey of the barge and a valuation report on the barges. ACBL also refers to other documents attached in response to other requests which may be responsive to this broad request. The United States Coast Guard hearing transcript and exhibits may contain information responsive to this request and counsel for claimants already have a copy. ACBL also has National Chart 11302 of the National Oceanic and Atmospheric Administration which may be responsive since it does show "conditions" and various other information about the "area". This chart can be easily obtained by claimants.

**REQUEST FOR PRODUCTION NO. 13:**

Any insurance agreements or policies (including both primary and excess, regardless of limits), endorsements, declarations, schedules, terms, conditions, clauses, forms, warranties, notices, exclusions, certificates, memoranda of insurance, or other similar **documents** that may arguably provide **Brown Water** and/or **ACBL** and/or their employees coverage for any claims asserted against them in connection with the **allision;** that arguably provided coverage of any kind or nature to or on behalf of **Brown Water** or **ACBL** or their employees on that date; that verify or reflect the existence of insurance coverage in favor of **Brown Water** or **ACBL** or their employees on that date; that explain, describe or summarize the insurance portfolio in place for **Brown Water** or

ACBL or their employees as of that date; or that **identify** any agents, brokers, producers, or other persons or entities that were involved in placing au- attempting to place any insurance coverage for or on behalf of **Brown Water** or **ACBL** or their employees from 2000 to the present.

## RESPONSE TO REQUEST FOR PRODUCTION NO. 13:

ACBL reurges its objections to the definitions of "ACBL", "allision", and "identify" set forth above. Additionally, the request is over broad with regard to the scope and time that it seeks information.

The request is also outside of the scope of permissible discovery under the Federal Rules and the case law regarding insurance related discovery. The request is further compound and multi-part. First, the request seeks broadly defined insurance-related information, unlimited in time, which "arguably" may cover Brown Water, ACBL, or employees, which would include health insurance, disability insurance, etc. Second, the request seeks the same information in connection with the date of the allision. A third request seeks information which may "verify or reflect" insurance coverage in favor of Brown Water, ACBL, or their employees. The fourth request seeks documents which "describe, explain or summarize" the insurance portfolio in place for Brown Water, ACBL or their employees on the date of the allision. The fifth request seeks the "identity" of individuals involved in placing insurance covered on behalf of Brown Water, ACBL or their employees from 2000 to the present. Federal Rule of Evidence 411 limits the type of information which may be obtained regarding insurance and does not expressly permit discovery of other facts concerning ACBL's insurance coverages. The issues in this case do not involve the placing of coverages or the identity of brokers or agents, all of which is totally irrelevant. Without waiving the foregoing, ACL and ACBL respond as follows:

ACBL has produced two policies of insurance insuring Brown Water which name ACL and ACBL as additional insureds. ACBL produces herewith certificates of

{N0835356.1}

insurance provided to it by Brown Water. ACBL does not have any further documents with respect to Brown Water's insurance and this request should be addressed to Brown Water.

With respect to policies covering ACL and ACBL, ACL and ACBL have provided counsel for claimants with a listing of the policies and coverages and will make them available for inspection at their offices in Jeffersonville, Indiana. None of ACL's or ACBL's policies provide coverage to Brown Water.

**REQUEST FOR PRODUCTION NO. 14:**

Any and all **documents** of any type or description relative to any settlement agreement, covenant not to sue, indemnity agreement, hold harmless agreement, "Mary Carter" agreement, joint defense agreement, or any other similar agreement which **you** have entered into with any persons or entities in connection with the **allision** or any damages arising therefrom.

**RESPONSE TO REQUEST FOR PRODUCTION NO. 14:**

ACL and ACBL object in that much of the information requested would be directly covered by the attorney/client privilege or work product doctrine and is not discoverable. Without waiving the objections, ACL and ACBL respond as follows:

Neither ACL nor ACBL have any documents responsive to this request other than policies of insurance issued to Brown Water naming ACBL an additional insured. See Answer to Interrogatory No. 17.

**REQUEST FOR PRODUCTION NO. 15:**

Any and all tape recordings, transcripts, written statements, drawings, and/or other **documents** reflecting statements taken from any individual allegedly having information regarding any disputed fact, circumstance, claim or defense which is alleged with particularity in the pleadings of this suit or any consolidated suits, particularly including, but not limited to any which were taken or prepared within 72 hours of the **allision**; any which were turned over to or taken in the presence of any governmental

{N0835356.1}

agency, including, but not limited to the United States Coast Guard and/or the National Transportation Safety Board; and, any which were taken in the presence of any person not employed by **you** or acting as **your** representative within the meaning of Rule 26(b)(3) of the Federal Rules of Civil Procedure.

## RESPONSE TO REQUEST FOR PRODUCTION NO. 15:

ACL and ACBL object insofar as this request seeks information covered by the attorney/client privilege, work product doctrine or was prepared in anticipation of litigation and is not discoverable at this point. Additionally, ACL and ACBL reurge their objections to the definitions of "allision", "you", and "your" as set forth above. Additionally, the request is not limited to statements taken by ACL and/or ACBL. Therefore, ACL and ACBL do not purport to respond to this request for a third party. Accordingly, without waiving the foregoing objections, ACL and ACBL respond as follows:

Neither ACL nor ACBL have any documents responsive to this request other than the transcript of the United States Coast Guard hearing and the exhibits to that hearing which are already in the possession of counsel for claimants.

## REQUEST FOR PRODUCTION NO. 16:

All weather reports, records, or other **documents** that include reference to the visibility, weather, sea, tide, current, wind and/or bottom conditions and/or water depth prevailing at the time of and in the area of the allision (i.e.- the area between the Long Island Swing Bride and the **Causeway**).

## RESPONSE TO REQUEST FOR PRODUCTION NO. 16:

ACL and ACBL reurge their objection to the definition of "allision" as set forth above.

The request is so broad in scope as to require ACBL to conduct research and locate documents that it never possessed, used or contemplated and that it never had in its possession, custody or control. The request seeks general information over a variety of

general topics which plaintiff is bound to research if it desires the information. The request seeks information which is equally obtainable by the individuals propounding the discovery and is more readily obtainable through another source. Without waiving the foregoing objections, ACL and ACBL respond as follows:

ACL and ACBL have no documents in response to this request other than the transcript of the United States Coast Guard hearing and the exhibits to that hearing which counsel for claimants already have. The chart referred to in response to Request No. 12 has general information responsive to this request.

**REQUEST FOR PRODUCTION NO. 17:**

Any contracts, charter agreements, invoices, job tickets, bills of lading, or other **documents** which state the terms and conditions under which the BROWN WATER V and/or the **barges** were or arguably were working, including any **documents** identifying the customers for whom the **barges** were moving cargo, the delivery schedule for the cargo, the remuneration that **ACBL** was to receive for the movement of the **barges**, and any **documents** reflecting the remuneration that **Brown Water** was to receive from **ACBL** for the tow during which the **allision** occurred.

**RESPONSE TO REQUEST FOR PRODUCTION NO. 17:**

ACL and ACBL object to this request as ambiguous, vague and overly broad. ACL and ACBL reurge their objection to the definitions of "barges", "ACBL", and "allision" as set forth above. The request is compound and is actually at least five (5) separate requests.

Without waiving the foregoing objections, ACL and ACBL respond as follows:

ACL has none.

ACBL refers to its Answer to Interrogatory No. 1 with respect to its contracts with its customers and attaches the Contract of Affreightment with Monarch Steel but will not produce its contract with IMC Phosphates without the appropriate confidentiality agreement. See attached invoice (ACBL is unable to locate the invoice for the NM-315

at this time. If located, it will be produced). See also documents attached to Request No. 8. Brown Water was remunerated based upon a published Union City Tariff. See attached 7/14/98 letter referencing same and tariff sheets.

**REQUEST FOR PRODUCTION NO. 18:**

Any and all **documents** reflecting the corporate structure of **ACBL** or the exact nature of the relationship (*i.e.*, record owner, charterer, operator, etc.) between **you**, the **barges**, the BROWN WATER V, and/or **Brown Water**.

**RESPONSE TO REQUEST FOR PRODUCTION NO. 18:**

ACL and ACBL reurge their objection to the definitions of "ACBL", "you", and "barges" as set forth above. The term "etc." is vague and ambiguous and is objected to. This request is compound and multi-part in that it request information (1) reflecting the corporation structure of ACBL, (2) the exact nature of the relationship between ACBL and four separate barges, (3) the exact nature of the relationship between ACBL and BROWN WATER V, and (4) the exact nature of ACBL and Brown Water. Furthermore, any documentation related to the "corporate structure" of ACBL is ambiguous and irrelevant to the subject matter of this case. Without waiving the foregoing objections, ACL and ACBL respond as follows:

ACL attaches its certificate of formation. See Certificate of Documentation of the barges attached to Response No. 8. ACBL attaches its certificate of formation. See the Certificate of Documentation of the barges attached to Response No. 8 and charters for two of the barges which are attached. There is no relationship between ACL and Brown Water and/or the M/V BROWN WATER V. There is no relationship between ACBL and the M/V BROWN WATER V. The only relationship between ACBL and Brown Water is that of a principal and independent contractor. See Answer to Interrogatory No. 14.

**REQUEST FOR PRODUCTION NO. 19:**

Any audio tapes, video tapes, transcripts, radio logs or other **documents** which reference any communications by, between or among the BROWN WATER V, any office of **Brown Water,** any office of **ACBL,** any other vessels, any docks, bridge tenders, or other shore bases, the United States Coast Guard, any other governmental entity, any rescuers, any victims, or any other person or entity during the time period from four hours before the **allision** to four hours after the **allision.**

**RESPONSE TO REQUEST FOR PRODUCTION NO. 19:**

ACL and ACBL object to this request on the grounds that it is irrelevant, vague, immaterial, over broad, unduly burdensome and not reasonably calculated to lead to the discovery of admissible evidence. Additionally, ACL and ACBL reurge their objection to the definitions of "ACBL" and "allision" as set forth above.

The request is so broad in scope as to require ACBL to conduct research and locate "communications" that it never possessed, used or contemplated and that it never had in its possession, custody or control. The request also is not limited to the area of the allision. ACBL may have had communications with any number of other vessels, docks, etc. on the numerous waterways its vessels operate on that are not in any way related to this allision. This request is wholly unreasonable and not limited to communications which are relevant to the subject matter of this case.          Without      waiving      the foregoing objections, ACL and ACBL respond as follows:

ACL has no such documents.

ACBL attaches an E-mail referencing the allision generated within four (4) hours after the allision. ACBL has no other documents responsive to this request with respect to the allision. or the area of the allision

**REQUEST FOR PRODUCTION NO. 20:**

An organization chart and job descriptions for all management positions and vessel crew positions at **ACBL.**

**RESPONSE TO REQUEST FOR PRODUCTION NO. 20:**

ACL and ACBL object to this request on the grounds that it is irrelevant, vague, immaterial, over broad, unduly burdensome and not reasonably calculated to lead to the discovery of admissible evidence. Additionally, ACL and ACBL reurge their objection to the definition of "ACBL" as set forth above. The term "management position" is not defined. (See objection to Interrogatory No. 3). There are no ACBL vessel crew implicated in this case and therefore their job descriptions are irrelevant and are objected to. Without waiving the foregoing objections, ACL and ACBL respond as follows:

See Answer to Interrogatory No. 3.

**REQUEST FOR PRODUCTION NO. 21:**

From 1992 to the present all **documents** that mention **Brown Water** or that relate to the work that **Brown Water** does for **ACBL**, or the relationship between **Brown Water** and **ACBL**.

**RESPONSE TO REQUEST FOR PRODUCTION NO. 21:**

ACL and ACBL object to this request on the grounds that it is irrelevant, vague, immaterial, over broad, unduly burdensome and not reasonably calculated to lead to the discovery of admissible evidence. Additionally, ACL and ACBL reurge their objection to the definition of "ACBL" as set forth above.

This request seeks information covering a ten year period of time which is not relevant to the subject matter of this suit. Further, the request seeks (1) documents that "mention" Brown Water, (2) documents that relate to the work Brown Water does for ACBL, and (3) the relationship between Brown Water and ACBL. As such, the request is compound and multi-part as well as overbroad, vague, ambiguous and irrelevant. Furthermore, the request is cumulative and duplicative as that information has already been requested in previous request for production, including Request for Production No. 18, objections thereto are expressly incorporated herein.

This request is so broad as to request information protected from discovery by the attorney/client privilege, the attorney/work product privilege and materials prepared in anticipation of litigation.

The request is so broad in scope as to require ACBL to conduct research and locate documents that it never possessed, used or contemplated and that it never had in its possession, custody or control. The request seeks general information on Brown Water, which information would be more readily obtainable from Brown Water or another source.

Without waiving the foregoing objections, ACL and ACBL respond as follows:

ACL has no documents responsive to this request. ACBL attaches documents in response and refers to other documents in response to other requests which "mention Brown Water". With respect to the relationship of ACL/ACBL to Brown Water, see Answer to Interrogatory No. 14.

## REQUEST FOR PRODUCTION NO. 22:

All lawsuits, claims, or other **documents** relative to any other allisions, and/or any collisions in which any vessels owned, operated, crewed, or controlled by **ACBL** have been involved during the period from 1992 to the present.

## RESPONSE TO REQUEST FOR PRODUCTION NO. 22:

ACL and ACBL object to this request on the grounds that it is irrelevant, vague, immaterial, over broad, unduly burdensome and not reasonably calculated to lead to the discovery of admissible evidence. Additionally, ACL and ACBL reurge their objection to the definition of "ACBL" as set forth above. This request seeks information covering a ten year period of time which is not relevant to the subject matter of this suit. Furthermore, the request is not limited in geographical area. Additionally, the request is objectionable because it pertains to "any vessels owned, operated, crewed, or controlled by ACBL" which is overly broad, unduly burdensome and not related in any way to the subject matter of this suit. ACL owns and ACBL charters thousands of barges and over

{N0835356.1}

150 towboats that operate on the inland waterways of the United States. Plaintiff is not entitled to such an exhaustive search of ACBL's files to conduct a "fishing expedition" not reasonably calculated to lead to information pertinent to this suit. The information requested is improper, and is wholly outside the scope of discovery allowed by the Federal Rules of Civil Procedure. However, without waiving the foregoing objection, ACL and ACBL respond as follows:

With respect to Brown Water's towage of ACBL barges, see documents attached. See also, Answer to Interrogatory No. 21. ACL has none relating to Brown Water.

**REQUEST FOR PRODUCTION NO. 23:**

Any **documents** of any kind or description that discuss or reflect any changes that have been proposed or adopted with respect to any of **ACBL's** operations, policies, rules or procedures as a result of the **allision.**

**RESPONSE TO REQUEST FOR PRODUCTION NO. 23:**

ACL and ACBL object to this request insofar as it calls for "post-accident remedial measures". Additionally, ACL and ACBL reurge their objection to the definitions of "ACBL" and "allision" as set forth above. Without waiving the foregoing objections, ACL and ACBL respond as follows:

There have been no changes made as a result of this allision to any ACL or ACBL policies, operations, rules or procedures as set out in the request and therefore there are no documents.

**REQUEST FOR PRODUCTION NO. 24:**

Any **documents** or tangible things: **identified** or mentioned in any of **your** answers to any of the accompanying interrogatories; **identified** or mentioned in any of **your** Rule 26 initial disclosures; that are in **your** possession, custody or control and are relevant to any disputed facts, circumstances, claims or defenses at issue in these consolidated suits; or that **you** may attempt to introduce as evidence during the trial of this suit and/or any consolidated suits.

## RESPONSE TO REQUEST FOR PRODUCTION NO. 24:

ACL and ACBL object to this request on the grounds that it is irrelevant, vague, immaterial, over broad, unduly burdensome and not reasonably calculated to lead to the discovery of admissible evidence. The request also expressly seeks information covered by the attorney/client privilege, work product doctrine or was prepared in anticipation of litigation and is not discoverable at this point. Additionally, ACL and ACBL reurge their objection to the definitions of "identified", "your" and "you" as set forth above.

This request is compound, multi-part, cumulative and duplicative. It seeks (1) any documents or things identified or mentioned in answers to interrogatories (objections to specific interrogatories are incorporated expressly herein), (2) documents identified and mentioned in Rule 26 Initial Disclosure, (3) documents in your possession, custody and control relevant to disputed facts, circumstances, claims and defenses, and (4) evidence ACBL may attempt to introduce during the trial.

Without waiving the foregoing, ACL and ACBL refer to documents produced and attached hereto and/or that will be produced as indicated in responses hereto. It is premature to determine which documents will be listed as exhibits and introduced at trial. ACL and ACBL will comply with the court's requirements with respect to such documents.

## REQUEST FOR PRODUCTION NO. 25:

The **barges** and all of their parts and equipment for inspection at a mutually convenient time and place, in the same condition that she was in immediately following the **allision**. Included in this request is a request for inspection of any plates or other portions of the hull which were removed from the **barges** during repairs following the **allision**.

## RESPONSE TO REQUEST FOR PRODUCTION NO. 25:

ACL and ACBL reurge their objection to the definitions of "barges" and "allision" as set forth above. Without waiving the foregoing objections, ACL cannot produce the

barges as they are bareboat chartered to ACBL. ACBL cannot produce the barges "in the same condition" immediately after the allision because of the passage of time which may have changed some "condition" of the barge. ACBL does not have any "plates or portions of the hull which were removed from the barges during repair following the allision." The barges are engaged in interstate commerce and do not necessarily move together. ACBL will make them available at a location and time convenient to ACBL and all counsel at one time in accord with the barges' schedules.

Respectfully submitted,

GLENN G. GOODIER
Jones, Walker, Waechter, Poitevent,
  Carrère & Denègre, L.L.P.
201 St. Charles Avenue - 48th Floor
New Orleans, Louisiana 70170-5100
Telephone: (504) 582-8174
Facsimile: (504) 582-8010

LES CASSIDY
1020 Bank of America
500 North Water Street
Corpus Christi, Texas 78471
Telephone: (361) 887-2969
Facsimile: (361) 886-3299

OF COUNSEL:

WOOLSEY & CASSIDY, P.C.
1020 Bank of America
500 North Water Street
Corpus Christi, Texas 78471
Telephone: (361) 887-2969
Facsimile: (361) 886-3299

## CERTIFICATE OF SERVICE

I hereby certify that a copy of the foregoing has been properly mailed to all known potential parties and/or their counsel on this ___7ᵗ___ day of June, 2002.

GLENN G. GOODIER

# VERIFICATION

**STATE OF INDIANA**

**COUNTY OF CLARK**

**BEFORE ME,** the undersigned authority, personally came and appeared:

**DUANE A. KROHN**

who, after being duly sworn, did depose and say:

I am employed by American Commercial Barge Lines, LLC as a Senior Risk Analyst and, as such, was tasked to assist counsel in gathering the necessary information and documents to respond to the interrogatories and requests for production of documents propounded by claimants to American Commercial Lines, LLC. and American Commercial Barge Lines, LLC. With the assistance of counsel, I obtained information to respond from various sources within the two companies. The responses given are true and correct to the best of my information, knowledge and belief.

_____
DUANE A. KROHN

Sworn to and Subscribed Before

me this _6th_ day of _June_, 2002.

_____
NOTARY PUBLIC

CYNTHIA L MCCAIN
NOTARY PUBLIC STATE OF INDIANA
CLARK COUNTY
MY COMMISSION EXP. MAR. 2,2008

{N0835173.1}

# SCHIRRMEISTER AJAMIE

A REGISTERED LIMITED LIABILITY PARTNERSHIP
PENNZOIL PLACE - SOUTH TOWER
711 LOUISIANA, SUITE 2150
HOUSTON, TEXAS 77002
(713) 860-1600
FAX (713) 860-1699
www.salawfirm.com

S. MARK STRAWN
mstrawn@salawfirm.com

197.01                                                            July 3, 2002

**BY FACSIMILE**
504.582.8583

Glenn G. Goodier
Jones Walker
2016 St. Charles Avenue
New Orleans, LA 70170-5100

Re:    *In Re: Brown Water, In Re: American Commercial,* In the United States
District Court for the Southern District of Texas, Brownsville Division,
CA No. B-01-157

Dear Mr. Goodier:

I was disappointed in your responses to the Claimants' master set of written discovery. ACBL has objected to virtually every request. For the most part your objections are without merit, and some are clearly frivolous. For example ACBL objected to producing insurance related information, and misrepresented that Rule 411 of the Federal Rules of Evidence addresses the discovery of insurance.

More importantly, and without discussing each discovery request, you have limited your responses to the date of the allision, refused to produce information except as regards ACBL's relationship with Brown Water Marine, and refused to produce any information regarding management personnel other than to identify current corporate officers by title.

This is obviously unacceptable in the context of a limitation of liability proceeding. While it is beyond the scope of this letter to set out all of the deficiencies in your answers, I have attached a draft Motion to Compel which discusses these deficiencies in more detail. Please call me as soon as you receive this letter so that we may discuss supplementation of your discovery responses. In light of our current schedule to begin depositions of ACBL employees on July 15th, if we have not been able to reach an agreement, I intend to file the Motion to Compel on Monday, July 8th.

SCHIRRMEISTER AJAMIE, L.L.P.

-2-                                                        July 3, 2002

      I look forward to hearing from you at your earliest convenience.  And with best regards I remain

                       Very truly yours,

                       S. Mark Strawn

SMS:dsp
cc:   Michael Watts
       361.887.0055 Fax

       Heriberto Medrano
       956.428.2495 Fax

       Jack F. Gilbert
       512.472.3855 Fax

JUL-05-02  17:08  From:                                              T-308  P.01/02  Job-632

# FILE COPY

# JONES
# WALKER

Glenn G. Goodier
Direct Dial 504-582-8174
Fax 504-582-8010
ggoodier@joneswalker.com

July 5, 2002

## VIA TELEFAX NO. (713) 860-1699

Mr. S. Mark Strawn
Schirrmeister Ajamie
Pennzoil Place - South Tower
711 Louisiana, Suite 2150
Houston, Texas  77002

      Re:    American Commercial Barge Line LLC -
              M/V BROWN WATER V and Tow in
              Collision with Queen Isabela Causeway,
              South Padre Island, Texas
              September 15, 2001
              Our File No.: 94547-00/00775

Dear Mr. Strawn:

      On my return to the office this afternoon I received your letter and draft motion. As you know, I have been out of town. I tried to call you on my return to discuss this, however, you were not available. I must be in Chicago on Monday and Tuesday, however, will be available to discuss this with you on Wednesday, July 10, 2002.

      Your letter states that you intend to file your motion on Monday, July 8, 2002. Your motion states that you believe that it "makes little sense" to go forward with the depositions on July 15, 2002 "until complete responses are received". Are you cancelling the depositions for a third time? Please let me know immediately so I can notify the two available witnesses.

JONES, WALKER, WAECHTER, POITEVENT, CARRÈRE & DENÈGRE L.L.P.

201 ST. CHARLES AVENUE · NEW ORLEANS, LOUISIANA 70170-5100 · 504-582-8000 · FAX 504-582-8583 · E-MAIL info@joneswalker.com · www.joneswalker.com

N0848689.1    BATON ROUGE    HOUSTON    LAFAYETTE    MIAMI    NEW ORLEANS    WASHINGTON, D.C.

Mr. S. Mark Strawn
Schirrmeister Ajamie
July 5, 2002
Page 2


With kindest regards, I remain

Very truly yours,

Glenn G. Goodier

GGG/dr

cc:    **ALL VIA UNITED STATES MAIL**
Mr. Ray R. Marchan
Jack F. Gilbert
Mark J. Spansel
Leslie D. Cassidy, III
Will W. Pierson
James B. Manley
John D. Franz
J. Chad Gauntt
William Q. McManus
Veronica Farias
Raymond Thomas/Andres Gonzalez
Julian Rodriguez, Jr.
Thomas E. Quirk
Cliff Garrard
Jim S. Hart
Frank Enriquez
Richard Leo Harrell
J. A. Magallanes
Geoffrey Amsel


**VIA FIRST CLASS MAIL:**

John & Mary McCoy
514 Brookside Pass
Cedar Park, TX  78613

N0848689.1

# SCHIRRMEISTER AJAMIE

A REGISTERED LIMITED LIABILITY PARTNERSHIP
PENNZOIL PLACE - SOUTH TOWER
711 LOUISIANA, SUITE 2150
HOUSTON, TEXAS 77002
(713) 860-1600
FAX (713) 860-1699
www.salawfirm.com

S. MARK STRAWN
mstrawn@salawfirm.com

197.01                                                                July 11, 2002

**BY FACSIMILE**

Glenn Goodier
Jones, Walker, Waechter, Poitevent, Carrere & Denegre, L.L.P.
201 St. Charles Ave., 48th Floor
New Orleans, LA 70170-5100

> Re:   *In Re: Brown Water, In Re: American Commercial*, In the United States
> District Court for the Southern District of Texas, Brownsville Division,
> CA No. B-01-157

Dear Mr. Goodier:

This letter will confirm our conference call this morning between you, Eddie Medrano and myself regarding ACBL's discovery responses. Please let this confirm that we have reached the following understandings with respect to ACBL's responses to the Claimants' master set of written discovery.

**Interrogatory No. 2** - You have agreed to identify the officers and directors of ACBL from 1992 through the present.

**Interrogatory No. 3** - You have agreed to identify the managers of the designated areas for a period of ten years prior to the collision. We understand that managers refer to persons with authority to hire, fire, and implement the policies of the corporation.

**Interrogatories Nos. 19 and 21** - We have not reached agreement. You will talk with ACBL about how much information can be produced in response to interrogatories nos. 19 and 21 regarding other allisions, collisions, groundings, and other major marine casualties involving ACBL tugs and barges.

**Interrogatory No. 20** - ACBL will identify all third-party towing companies that ACBL has used to move its barges in the area of the allision during the six months prior to the allision.

SCHIRRMEISTER AJAMIE, L.L.P.

-2-                                            July 11, 2002

      **Interrogatory No. 24 -** Your answer identifies those organizations that ACBL is currently a member of. You have agreed to check and see if there are other organizations that ACBL is not a current member of, but which it held membership in within the last ten years.

      **Request for Production No. 5 -** You have agreed to produce any audits in ACBL's possession regarding other third-party towing contractors.

      **Request for Production No. 11 –** You have agreed to confirm that the few pages that were produced as the Brown Water audit, by "Marine Resources", with a date of March 2000 is all of the documents regarding this audit that ACBL is in possession of, and to produce any other documents.

      **Request for Production No. 13 -** You have agreed to produce the requested insurance information. It is agreed that you may redact the amount of premiums paid by ACBL, and that you may request a confidentiality agreement prior to disclosing the full insurance documents.

      **Request for Production No. 18 -** You have agreed to produce documents regarding the divisions, and/or operating structure of ACBL, and if necessary create such a document.

      **Request for Production No. 22 -** We have not reached agreement, but you will check with ACBL regarding documentation of other allisions and/or collisions involving ACBL barges and tugs for the past ten years.

      **Request for Production No. 2 -** You have agreed to meet with ACBL and report back on what responsive documents can be produced.

      Based upon your representation that the only attorney/client privileged documents, or work product documents in your file are your own client correspondence and related documents pertaining to this file, we have agreed that you do not need to produce a discovery log identifying this material. However, if responsive documents are later identified, and withheld pursuant to attorney/client privilege, it is agreed that you will promptly provide a discovery log identifying these documents.

      Information and documentation regarding other allisions and/or collisions, groundings and major marine casualties is the main area on which we have not reached agreement. You are promptly contacting ACBL to see if we can reach an agreement on this. It is agreed that we will speak further about this in the immediate future, certainly before we begin the depositions on Monday, July 15.

      I appreciated the opportunity to speak with you regarding the discovery issues, and remain hopeful that we can work out an agreement for the production of the remaining disputed

SCHIRRMEISTER  AJAMIE, L.L.P.

-3-                                                    July 11, 2002

items.  If this letter does not fairly represent our agreements, please immediately notify my self or
Eddie Medrano.

          With best regards, I remain

                                        Very truly yours,

                                        S. Mark Strawn


SMS:clb

cc:      Eddie Medrano
         Michael Watt
         Jack Gilbert
         Tom Ajamie

# JONES WALKER

Glenn G. Goodier
Direct Dial 504-582-8174
Fax 504-582-8010
ggoodier@joneswalker.com

July 11, 2002

## VIA TELEFAX NO. (713) 860-1699

Mr. S. Mark Strawn
Schirrmeister Ajamie
Pennzoil Place – South Tower
711 Louisiana, Suite 2150
Houston, Texas 77002

Re: American Commercial Barge Line LLC –
M/V BROWN WATER V and Tow in
Collision with Queen Isabela Causeway,
South Padre Island, Texas
September 15, 2001
Our File No.: 94547-00/00775

Dear Mr. Strawn:

I am in receipt of your July 11, 2002 fax with respect to our discussions regarding discovery issues. The purpose of this letter is to comment on the specific discovery issues mentioned in your letter and, in some instances, to correct some misunderstandings.

## INTERROGATORIES

**Interrogatory No. 2:**  I agreed to ask ACBL if they had records giving this information and, if so, I would amend our answer.

**Interrogatory No. 3:**  I agreed to ask ACBL if they had records which would provide the information necessary to respond to this interrogatory, beyond the response already given.

---

JONES, WALKER, WAECHTER, POITEVENT, CARRÈRE & DENÈGRE L.L.P.

201 St. Charles Avenue · New Orleans, Louisiana 70170 5100 · 504-582-8000 Fax 504-582-8583 E-mail info@joneswalker.com www.joneswalker.com

N0851200.1     Baton Rouge     Houston     Lafayette     Miami     New Orleans     Washington, D.C.

Mr. S. Mark Strawn
Schirmeister Ajamie
July 11, 2002
Page 2

**Interrogatories Nos. 19 and 20:**  I agree that we have not reached an agreement. I agree to revisit these two interrogatories with ACBL but have not as yet agreed to produce any additional documents or to amend our answer nor to waive any objections made.

**Interrogatory No. 20:**  I agree to ask ACBL if this information is available, and, if so, I will amend our answer.

**Interrogatory No. 24:**  I am told by ACBL that they have no information beyond that previously provided as to organizations they belong to or may have belonged to for the last ten (10) years.

## REQUEST FOR PRODUCTION OF DOCUMENTS

**Request for Production No. 5:**  I agree to discuss production of additional audits with ACBL. Once I have had this discussion with ACBL, I will be in a better position to advise whether or not these audits are readily available, if there is a difficulty in searching, etc.

**Request for Production No. 11:**  I have confirmed that the audit by Marine Resources done in March of 2000 which was produced in Request for Production No. 11 is the entirety of the audit report provided by Marine Resources. ACBL has no other documents regarding this audit.

N0851200.1

Mr. S. Mark Strawn
Schirrmeister Ajamie
July 11, 2002
Page 3

**Request for Production No. 13:**  I will be sending a Confidentiality Agreement
with respect to the production of the insurance
policies providing coverage for the claims made
in this case.  I am in the process of having the
premium information redacted from those
policies.  Once the Confidentiality Agreement is
signed and returned to me, I will forward the
insurance documents to Mr. Medrano as agreed.
If Mr. Medrano shares the insurance
information with any other party, the
Confidentiality Agreement will require that the
party receiving or reviewing the information
will have to also sign.

**Request for Production No. 18:**  After you defined what was meant by
"corporate structure" of ACBL, I agreed to put
something together that responds to your
definition of corporate structure.

**Request for Production No. 22:**  I agreed that we have not reached an agreement
and that I would discuss this further with ACBL
without waiving any objections that we have
previously made.

**Request for Production No. 2:**  We have fully responded with respect to
Request for Production No. 2 as it relates to the
accident in question.  The remainder of Request
for Production No. 2 is very similar to Request
for Production No. 22 and my response is
similar.

N0851200.1

Mr. S. Mark Strawn
Schirrmeister Ajamie
July 11, 2002
Page 4


With respect to the privilege log, as we discussed, my recollection at the time was that the only documents that were not produced were those documents that would be protected by the attorney-client privilege, the attorney-work product privilege, and/or material produced in anticipation of this litigation or as a result of this litigation which, you would not expect to be produced. I will again look at the documents, and if there are any that fall outside of these, I will provide a privilege log.

I am somewhat confused by your statement that if responsive documents are later identified but withheld pursuant to the attorney-client privilege that I should provide a log. I am not sure that I have to provide you with a log of every report that I write to my client. Let's discuss this further.

I thought our conference call was very amicable and we worked diligently to attempt to resolve the issues involving discovery. I look forward to speaking with you further on this.

With kindest regards, I remain

Very truly yours,

Glenn G. Goodier

GGG/dr

cc:   **ALL VIA UNITED STATES MAIL:**

Mr. Ray R. Marchan
Mikal C. Watts
Jack F. Gilbert
Mark J. Spansel
Leslie D. Cassidy, III
Will W. Pierson

N0851200.1

Mr. S. Mark Strawn
Schirrmeister Ajamie
July 11, 2002
Page 5

      James B. Manley
      John D. Franz
      J. Chad Gauntt
      William Q. McManus
      Veronica Farias
      Raymond Thomas/Andres Gonzalez
      Julian Rodriguez, Jr.
      Thomas E. Quirk
      Cliff Garrard
      Jim S. Hart
      Frank Enriquez
      Richard Leo Harrell
      J. A. Magallanes
      Geoffrey Amsel

**VIA UNITED STATES MAIL:**

John & Mary McCoy
514 Brookside Pass
Cedar Park, TX  78613

N0851200.1

# SCHIRRMEISTER AJAMIE

A REGISTERED LIMITED LIABILITY PARTNERSHIP

PENNZOIL PLACE - SOUTH TOWER

711 LOUISIANA, SUITE 2150

HOUSTON, TEXAS 77002

(713) 860-1600

FAX (713) 860-1699

www.salawfirm.com

S. MARK STRAWN

mstrawn@salawfirm.com

197.01

July 24, 2002

**BY CERTIFIED MAIL**
**RETURN RECEIPT REQUESTED**

**BY FACSIMILE**

Glenn Goodier
Jones, Walker, Waechter, Poitevent, Carrere & Denegre, L.L.P.
201 St. Charles Ave., 48th Floor
New Orleans, LA 70170-5100

Re:   *In Re: Brown Water, In Re: American Commercial*, In the United States
      District Court for the Southern District of Texas, Brownsville Division,
      CA No. B-01-157

Dear Mr. Goodier:

Enclosed herewith please find the Claimant's Notices of Depositions of ACBL employees for August 26, 27 and 28, 2002. I am sending these now so that you will have the full 30 days notice for the document requests, but I will be happy to accommodate any reasonable changes in the schedule.

Also, as advised in my prior correspondence, Eddie Medrano is on vacation. During his absence Ray Marchan and myself may set up depositions. This is with the concurrence of the Claimant's Steering Committee. Mr. Medrano will resume as acting liaison for setting depositions upon his return to the office.

With best regards I remain

Very truly yours,

S. Mark Strawn

SCHIRRMEISTER AJAMIE, L.L.P.

-2-                                                                      July 24, 2002

SMS:dsp

Enclosure

cc:    Thomas R. Ajamie (firm)
       Andy Gonzalez (via fax)
       Eddie Medrano (via fax)
       Geoffrey Amsel (via fax)
       Frank Enriquez (via fax)
       John David Franz (via fax)
       J. Chad Gauntt (via fax)
       Jack F. Gilbert (via fax)
       Richard L. Harrell (via fax)
       Jim Hart (via fax)
       J.A. Magallanes (via fax)
       James B. Manley (via fax)
       Ray R. Marchan (via fax)
       Steve Q. McManus (via fax)
       Julian Rodriguez, Jr. (via fax)
       Mark J. Spansel (via fax)
       Edwin C. Laizer
       Michael Watts (via fax)
       Raymond L. Thomas (via fax)
       Will Pierson (via fax)
       Keith Uhles (via fax)
       Les Cassidy (via fax)