United States District Court
Southern District of Texas
FILED

AUG 1 9 2002

Michael N. Milby
Clerk of Court

# IN THE UNITED STATES DISTRICT COURT

## FOR THE SOUTHERN DISTRICT OF TEXAS

### BROWNSVILLE DIVISION

| | | |
|---|---|---|
| IN RE THE COMPLAINT AND | § | |
| PETITION OF AMERICAN | § | C. A. NO. B-02-004 |
| COMMERCIAL LINES LLC AS | § | Admiralty |
| OWNER, and AMERICAN | § | |
| COMMERCIAL BARGE LINES, LLC, | § | |
| AS CHARTERER OF THE BARGES | § | |
| NM-315, VLB-9182, ACL-9933B, | § | |
| VLB-9173, IN A CAUSE OF | § | Consolidated with |
| EXONERATION FROM OR | § | |
| LIMITATION OF LIABILITY | | |

| | | |
|---|---|---|
| IN RE THE COMPLAINT AND | § | |
| PETITION OF BROWN WATER | § | C. A. NO. B-01-157 |
| TOWING I, INC., AS OWNER, and | § | Admiralty |
| BROWN WATER MARINE SERVICE, | § | |
| INC., AS BAREBOAT CHARTERER OF | § | |
| THE BROWN WATER V, ITS ENGINES, | § | |
| TACKLE, ETC. IN A CAUSE OF | § | |
| EXONERATION FROM OR | § | |
| LIMITATION OF LIABILITY | § | |

## MEMORANDUM OF ACBL AND ACL IN OPPOSITION TO CLAIMANTS' FIRST MOTION TO COMPEL DISCOVERY

**MAY IT PLEASE THE COURT:**

## TABLE OF CONTENTS

Table of Authorities . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . iii

Introduction/Nature and Stage
of Proceedings . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 1

Pure Towage and Independent
Contractor Doctrines . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 3

Background to Motion to Compel . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 4

Proper Scope of Interrogatories/Requests for Production . . . . . . . . . . . . . . . . . . . . . . . . 6

Interrogatories 1 and 2 . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 9

Interrogatories 19, 20 and 21 . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 9

Deposition of Mr. Hoessle, ACBL Dispatcher . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 15

Interrogatories 4, 7, 8, 16, 17 and 22 . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 16

Requests for Production 5 and 11 . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 17

Request for Production 13 . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 18

Request for Production 18 . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 20

Request for Production 2 . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 20

Request for Production 4 . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 21

Requests for Production 6, 7, 19, 21 and 23 . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 22

Conclusion . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 23

## TABLE OF AUTHORITIES

Amcast Indus. Corp. v. Detrex Corp.,
138 F.R.D. 115, 120-121 (N.D. Ind. 1991) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 7, 8

Bartholomew v. CNG Producing Co.,
832 F.2d 326, 329 (5th Cir. 1987) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 4

Forstater v. State Farm Mutual Automobile Insurance Company,
Civ. A. No. 91-6539, 1992 WL 68294 (E.D. Pa. 1992) . . . . . . . . . . . . . . . . . . . . . . . . . 8

Fountain v. L&M Botruck Rental, Inc.,
Civ. A. No. 93-0379, 1995 WL 664782 (E.D.La. 1995) . . . . . . . . . . . . . . . . . . . . . . . . . 8

In Re: IBM Peripheral EDP Devices Anti-Trust Litigation,
77 F.R.D. 39 (N.D. Cal. 1997) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 8

Lincoln Plaza Associates v. The Dow Chemical Company,
Civ. A No. 85-362, 1985 WL 3409 (E.D. Pa. 1985) . . . . . . . . . . . . . . . . . . . . . . . . . . . . 8

Lawrence v. First Kansas Bank & Trust Co.,
169 F.R.D. 657, 661-662 (D.Kan. 1996) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 6, 7

Stevens v. The White City,
285 U.S. 195, 52 S.Ct. 347, 76 L.Ed. 699 (1932) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 3

Sturgis v. Boyer,
65 U.S. (24 How.) 110, 16 L.Ed. 591 (1860) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 4

The Eugene F. Moran,
212 U.S. 466, 29 S.Ct. 339, 53 L.Ed. 600, (1909)) . . . . . . . . . . . . . . . . . . . . . . . . . . . . 4

The Vulcan,
60 F.Supp. 158 (E.D.La. 1945) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 4

Wallace v. Oceaneering International, Inc.,
727 F.2d 427, 437 (5th Cir. 1984) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 4

## OTHER AUTHORITIES

Civil Discovery and Mandatory Disclosure:
A Guide to Efficient Practice, (2d Ed. 1994) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 7

F. Maraist and T. Galligan,
Admiralty in a Nutshell (West 4th ed. 2001) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 3

T. Schoenbaum,
Admiralty and Maritime Law (West 3d ed. 2001) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 3, 4

Wright, Miller & Marcus,
Federal Practice & Procedure:  Civil 2d (West 1994) . . . . . . . . . . . . . . . . . . . . . . . . . . . . 8

Civil Justice Reform Act,
28 U.S.C. § 473 . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 8

## INTRODUCTION/NATURE AND STAGE OF PROCEEDINGS

American Commercial Barge Lines, L.L.C. (hereafter "ACBL") and American Commercial Lines, L.L.C. (hereafter "ACL") request that the Motion to Compel Discovery be denied.

Petitioners ACBL and ACL are completely separate companies and are the petitioners in Civil Action B-02-004. There is no trial date.

ACBL bareboat charters approximately 5,000 river barges and over 200 towboats. These barges and towboats move on all of the major inland waterways of the United States and their tributaries. ACL is the parent of ACBL and is the owner of record of the majority of the barges and towboats. ACBL uses its towboats to tow its barges and the barges of others, but in many instances contracts with independent towage contractors to provide towage services. This is what occurred in the instant case.

ACBL contracted with Brown Water Marine Service, an independent towage contractor, to tow certain unmanned river barges with no motive power [1] with a tugboat selected, owned, operated and crewed by Brown Water. ACBL and ACL have no ownership interest in Brown Water nor is there any corporate relationship between ACL/ACBL and Brown Water or its vessels.

---

[1]These river barges are approximately 200 feet in length and 35 feet in width. Much like a railroad box car, they simply carry cargo and can only move with the assistance of a tug just as the box car is moved with a locomotive.

- 1 -

As an independent towage contractor, Brown Water's personnel were solely responsible for selecting and deploying the towboat known as the M/V BROWN WATER V.[2]  Brown Water's personnel and tug master alone controlled and decided all aspects of the towage, including the number of barges to be taken by the tug, the configuration of the tow of barges, the building of the tow, and the navigation of the tug and tow.  No personnel from ACL or ACBL were present on the tug or tow during this process or during the trip in question.

ACBL had approximately ten years experience with Brown Water, which had a good record of safety and performance.  ACL did not select or contract with Brown Water and had absolutely no involvement with the towage arrangements that were made.

During the early morning hours of September 15, 2001, a collision occurred between the lead barge in the M/V BROWN WATER V's tow and the Queen Isabella Causeway.  The M/V BROWN WATER V's tow consisted of four standard, covered river barges, each of which had on board cargo of third parties which the third parties had loaded onto the barges.[3]  The barges (i.e., the "tow") had no motive power and were under the exclusive care, custody and control of BROWN WATER's tug, which was under the command of a licensed master employed by Brown Water.

---

[2]The M/V BROWN WATER V is an inland towboat owned by Brown Water I, Inc. and bareboat chartered/operated by Brown Water Marine Service, Inc.  It is a steel hull, twin screw, 800 horsepower towboat documented by the U. S. Coast Guard.

[3]Prior to the collision, ACBL actually believed that the tug boat was towing only three barges, not four, and it was only advised that there were four barges in the tow after the collision.

## PURE TOWAGE AND INDEPENDENT CONTRACTOR DOCTRINES

Under maritime towage law and maritime independent contractor law there is no legal basis to impose liability upon either ACBL or ACL for the collision:

> ... Liability to third persons for collision damages depends upon the nature of the towage. **If the tow is a "dumb" (unmanned) barge, or is otherwise under the control of the tug, liability for negligence will be imposed upon the tug (the "dominant mind" in the venture), but not upon the tow.**

Admiralty in a Nutshell p. 126 (West 4th ed. 2001) (emphasis added).

Towage is defined as a service rendered by one vessel to aid the propulsion and expedite the movement of another vessel.  The vessel that supplies the power in such an arrangement is typically called the tug.  Stevens v. The White City, 285 U.S. 195, 52 S.Ct. 347, 76 L.Ed. 699 (1932); T. Schoenbaum, Admiralty and Maritime Law §10-1, p. 722 (West 3d ed. 2001).  It is also well recognized that:

> **When damage is caused by a casualty involving the tow or by the whole flotilla, the courts employ the concept of "dominant mind" to place liability on the tug and to absolve the tow from liability.  This doctrine holds that only that vessel is liable whose people are actually in control of the operation, even though the whole flotilla causes the damage.**

Admiralty and Maritime Law, at §10-7, p. 736 (citations omitted.)  (emphasis added.)  Professor Schoenbaum further notes:

> If the tug and the tow are separately owned, the negligence of the tug cannot be imputed to the tow, and there is neither in personam or in rem liability on the part of the tow.  Consequently, the third

- 3 -

> party has no maritime lien on the tow unless the fault of the tow is
> independently established or unless an agency relationship exists
> between the tug and the tow.

Schoenbaum at §10-8, p. 737 (citing the principle of <u>Sturgis v. Boyer</u>, 65 U.S. (24 How.) 110,

16 L.Ed. 591 (1860), and <u>The Eugene F. Moran</u>, 212 U.S. 466, 29 S.Ct. 339, 53 L.Ed. 600 (1909)).

<u>The Vulcan</u>, 60 F.Supp. 158 (E.D.La. 1945), citing <u>Sturgis</u> and <u>The Eugene F. Moran</u>, states:

**"Where as here the tugboat supplying the power is in control and the tow inert and helpless,**

**the towing vessel alone is liable for fault and errors in navigation."** <u>Id.</u> at 162. (emphasis added.)

A principal is not liable for negligent acts committed by an independent contractor while the

independent contractor is performing its assigned duties.  See <u>Wallace v. Oceaneering International,</u>

<u>Inc.</u>, 727 F.2d 427, 437 (5th Cir. 1984), and <u>Bartholomew v. CNG Producing Co.</u>, 832 F.2d 326, 329

(5th Cir. 1987).  A principal who hires an independent contractor over whom he exercises no

operational control has no legal duty to discover or to remedy any hazards created by the independent

contractor.  <u>Wallace</u>, 727 F.2d at 437.

## BACKGROUND TO MOTION TO COMPEL

In April 2002 all counsel entered into a Joint Discovery/Case Management Plan.  The

Claimants agreed to serve ACL and ACBL a consolidated set of 25 interrogatories and 25 requests

for production of documents, including subparts. On Friday, May 10, 2002, shortly before the close

of business, the Claimants hand delivered to undersigned counsel's office Interrogatories and

Request for Production of Documents, which, counting sub-parts, vastly exceeded the 25 number

- 4 -

limitation. (See Exhibits 1 and 2.) Each discovery request is compound, complex and multi-part and the Interrogatories and Requests for Production of Documents contain a rambling preamble of confusing and needless definitions and verbiage. For example, the Claimants "defined" ACL and ACBL to be one company, when they are not, and to include "each of their parent companies, related companies, affiliates, subsidiaries, and all of each of their predecessors, successors, assigns, agents, attorneys, owners, operators, officers, directors, shareholders, managers, agents, employees, and any other person acting on their behalf." We attach a copy of Claimants' Interrogatories and Requests for Production, which includes various "Definitions," as Exhibits 1 and 2. ACL and ACBL timely responded to these and forwarded responses and all accompanying documents by Federal Express to all counsel of record on June 7, 2002. Over 1,280 pages of documents were initially produced in an orderly, sequential fashion, with a full set of documents delivered by Federal Express to each counsel. Copying and Federal Express charges absorbed by ACL and ACBL for this one production exceed $4,600.00. We have since produced an additional 800 plus pages.

As permitted by the Federal Rules of Civil Procedure, ACL and ACBL lodged certain objections to Interrogatories and Requests for Production and then, subject to and without waiving their objections, provided full and complete discovery responses and disclosures to relevant and proper areas of discovery. ACL and ACBL have also made arrangements for the production of various witnesses that Claimants wanted to depose and have cooperated fully in discovery.

Just before the close of business on Wednesday, July 3, 2002, Claimants' counsel, Mr. Strawn, sent the attached letter and a draft motion to compel to the attention of undersigned counsel, stating he would be filing a motion to compel on Monday, July 8th.  (Exhibit 3.) Undersigned counsel was out of town and had so informed opposing counsel that he would be on a family trip. Upon his return to the office on July 5th, undersigned counsel immediately attempted to contact Mr. Strawn.  Mr. Strawn was unavailable and so the letter attached as Exhibit 5 was sent to Mr. Strawn and all other counsel of record.  On July 11, 2002, undersigned counsel had an extensive discovery conference with Claimants' counsel and in a good faith effort to attempt to try to resolve particular items of inquiry not specifically articulated in the very broadly worded interrogatories and requests for production.  Several agreements were reached and we have forwarded the attached correspondence and supplemental discovery responses, Exhibits 6, 7, 8 and 9, which are discussed below.

## PROPER SCOPE OF INTERROGATORIES AND REQUESTS FOR PRODUCTION

The interrogatories and requests for production of documents are compound, multi-part questions and do not satisfy the basic requirements of the Federal Rules of Civil Procedure.  The Federal Rules are not designed to open the floodgates for uncontrolled, excessively time consuming searches of documents simply because a lawsuit has been filed.  See, e.g., Lawrence v. First Kansas Bank & Trust Co., 169 F.R.D. 657, 661-662 (D.Kan. 1996).

- 6 -

In <u>Lawrence</u>, the court described the proper format of an interrogatory:

> Each interrogatory should consist of a brief, simple, direct, and unambiguous question, dealing with one point only. The question should be objective and non-argumentative. They should not seek narrative answers or attempt to argue, cross-examine, or impeach. They should be written so that the question and the expected answer can be understood easily when read at trial.... Whenever a decision is made to propound interrogatories, counsel should have clearly in mind what information he seeks and what he intends to do with it. Interrogatories should be targeted at discreet issues, rather than blanketing the case, and should be few in number.

*    *    *

> A particular problem is the use of definitions of the term "identify" which attempt to force an opponent to provide information about every document, witness or event referred to the interrogatory answers. Such sweeping definitions tend to be ineffective and invite objections -- often legitimate -- that they are too burdensome, rendering the entire set of interrogatories useless. <u>See</u> <u>id</u>. citing William Schwarzer, et al., <u>Civil Discovery and Mandatory Disclosure: A Guide to Efficient Practice</u>, 4-5 to 4-7 (2d Ed. 1994).

169 F.R.D. at 661-662.

Requests for production are also required to follow the same guidelines. Rule 34(b) states that a request for production must "set forth . . . the items to be inspected and describe each with reasonable particularity." A party who serves interrogatories and requests for production that are overly broad on their face in light of the subject matter of the action has not served a proper interrogatory or request for production of documents. <u>Amcast Indus. Corp. v. Detrex Corp.</u>, 138 F.R.D. 115, 120-121 (N.D. Ind. 1991).

The Civil Justice Reform Act also mandates that the Court "...identify and limit the volume of discovery available to avoid unnecessary or unduly burdensome or expensive discovery...." 28 U.S.C. §473(a)(3)(C)(i). It is well established that discovery that amounts to a "fishing expedition" is not allowed. As shown below, the Claimants here have gone well beyond a "fishing expedition" and are attempting to engage in what some courts have referred to as "an effort to 'drain the pond and collect the fish from the bottom.'" Amcast, 138 F.R.D. at 121 (quoting In Re: IBM Peripheral EDP Devices Anti-Trust Litigation, 77 F.R.D. 39, 41-42 (N.D. Cal. 1997))

Courts have consistently refused to require a broad or general search for inspection of voluminous records. Fountain v. L&M Botruck Rental, Inc., Civ. A. No. 93-0379, 1995 WL 664782 (E.D.La. 1995); Wright, Miller & Marcus, Federal Practice and Procedure: Civil 2d, § 2211 (1994). A request for production of documents which is extremely general and all inclusive renders the request meaningless and patently over burdensome so that production should not be allowed. Lincoln Plaza Associates v. Dow Chemical Company, Civ. A No. 85-362, 1985 WL 3409 (E.D. Pa. 1985).

Claimants are seeking discovery and it is their burden to establish that the information they seek is relevant. Forstater v. State Farm Mutual Automobile Insurance Company, Civ. A. No. 91-6539, 1992 WL 68294 (E.D. Pa. 1992). Nevertheless, even relevant discovery need not be produced if to do so it would be unreasonably burdensome to ACBL, especially as here where the information is of little relevance. Id.

- 8 -

Attached is the Affidavit of Mr. Krohn, Senior Risk Analyst of ACBL, which establishes the irrelevant, onerous and unreasonable nature of the few remaining discovery items in dispute. (Exhibit 10.)

## Interrogatories 1 and 2

These have been satisfied. Claimants counsel advised undersigned counsel what they actually wanted and the information was provided. A complete listing of corporate officers and other information has been provided. (Exhibit 6, pp. 2-8.) Undersigned counsel also prepared and produced a corporate organizational chart, specifically addressing the information requested by Claimants, to satisfy these items.

## Interrogatories 19, 20 and 21

These interrogatories must be read in connection with Interrogatory 18, about which Claimants do not complain, which states:

> From the period of 1992 to the present describe all vessels that have been used by ACBL to move barges in the area where the collision occurred (i.e. the area between the Long Island swing bridge and the Causeway), including in your response the name, official number, length, breadth, depth, gross tonnage, net tonnage and horsepower of each vessel.

In response, ACL and ACBL provided five pages of information and identified approximately 70 vessels and/or independent contractor towing companies. We also identified tugs that may have been owned by ACL and bareboat chartered and operated by ACBL or Delaware

- 9 -

Marine and tugs that were neither owned nor operated by ACBL or ACL (i.e. third party independent contractor towboats).

Interrogatory 19 provides that for each of the vessels identified in response to Interrogatory 18 to "Please state whether, to your knowledge, the vessel has, since 1992, been involved in any other allision and/or any collision, grounding, sinking, fire, pollution incident or other maritime casualty? If so, describe and state the date and location of each such casualty, state the identity of all persons and entities and vessels involved, and describe any claims, demands, lawsuits or Coast Guard action that resulted from any such casualties." The overbroadness and lack of relevance of this request is obvious. It is not restricted by date (10 years is onerous and arbitrary), location, party, or type of incident. For instance, why is it relevant to the issues in this case if an ACBL tug or third party contracted tug caught fire on the Illinois River in 1992 or if an ACBL barge leaked oil in the Ohio River in 1995?

Subject to its objections, ACBL and ACL responded with respect to Brown Water owned vessels because this would be the only relevant inquiry for this particular case since Brown Water is the independent towage contractor that was engaged here. Claimants have not explained how or why it could be relevant that any of the 70 vessels identified in response to Interrogatory 18 had been involved in "Any other allision and/or collision, grounding, sinking, fire, pollution incident or other marine casualty . . ." for a 10 year period. The fact that any other vessel at any other time since 1992 had been involved in a collision, grounding, sinking, fire, pollution incident or other marine casualty

- 10 -

is completely irrelevant and immaterial and is unrestricted. Claimants have cited no authority which permits this type of overly broad and irrelevant discovery and ignore the unreasonable burden that such requests place on ACBL.

As shown in the attached affidavit of Mr. Krohn (Exhibit 10), ACBL does not possess the resources or personnel sufficient to embark upon a search for documents and information sought by Interrogatories 19, 20, 21 and corresponding requests for production. For ACBL to even attempt to respond to this would require an inordinate and extraordinary amount of effort and expense by the ACBL Risk Management Department.

ACBL's Risk Management Department is based in Jeffersonville, Indiana and has four risk analysts[4] who are responsible for handling claim matters for over 5,000 barges and 200 towboats that are owned and/or operated by ACL/ACBL as well as terminals, fleets and shipyards owned by ACL and/or its subsidiaries. The Risk Management Department maintains and handles files regarding various accidents involving ACL/ACBL towboats and barges as well as terminals, fleets and shipyards. This includes collisions, groundings, sinkings, cargo damage, fire, pollution, personal injury, death, strandings, shipyard accidents, terminal incidents, barge breakaways, incidents involving fleets, workers' compensation claims, automobile accidents, etc. These files are not electronically maintained and exist in paper form only. (See Exhibit 10.)

---

[4]     One of these four is currently based in Harahan, Louisiana.

The filing system used by the Risk Management Department generally identifies files involving vessels by a vessel name or barge number, date of incident, and if a third-party is involved, the name of the third-party and perhaps the identity of the third-party's vessel. The filing system usually <u>does</u> <u>not</u> identify the location, type of accident or incident involved or the cause of accident or incident. The only way to ascertain this information is to manually review each file.    (<u>See</u> Exhibit 10.)

In addition to the files maintained by the Risk Management Department, if ACL/ACBL equipment is damaged and no file is opened by the Risk Management Department because of the nature of the damage, the amount of the damage or other circumstances, information in files regarding such an incident would be handled by the boat or barge maintenance departments, which are separate departments within ACBL. The type of information requested by Claimants may also be located in files for each of the 5,000 barges and over 200 towboats which may give no reference as to location of incident, type of incident or cause of incident.    (<u>See</u> Exhibit 10.)

Furthermore, ACBL's offices only maintain current open files. All closed files are sent to an offsite storage warehouse facility that is owned and operated by a third-party record storage company. ACBL is not permitted to enter the premises to look into any of the boxes which are stored nor does the record storage facility provide any space for ACBL to review files at the storage facility. The boxes containing claim information of the type sought by the Claimants would be among the 4,000 plus boxes ACBL has in storage. As attested to by Mr. Krohn, it is estimated that

- 12 -

approximately one-third of these boxes (or 1,000 plus boxes) would contain claim/damage files. The cost ACBL is required to pay to the storage company to retrieve boxes from storage and to return the boxes into storage is $45.00 per box; therefore, at a minimum, the cost will be at least $45,000.00 to retrieve the boxes. (See Exhibit 10.)

Moreover, the storage company would have to deliver the boxes to a location designated by ACBL. Unfortunately, ACBL does not have the facilities to store the 1,000 plus boxes and ACBL would also have to depend upon the storage company's schedule to go into storage, select the boxes requested, pull the boxes from storage and then truck them to a location where they would be held pending a manual search of each box to retrieve claim/damage files. (See Exhibit 10.)

ACBL does not have sufficient personnel to undertake the task of reviewing the boxes to locate the claim files. As shown in the Affidavit of Mr. Krohn, each of the 1,000 plus boxes in storage would have to be opened, reviewed, and claim files removed. The files would then have to be reviewed by a Risk Analyst (only four in the Department) to determine if they are responsive to the request, and then by a lawyer to determine if they are privileged documents. Any given claim or damage file might contain an accident report or report to the U. S. Coast Guard, damage supports, related correspondence, expert reports, and if counsel is involved, various correspondence, reports and opinions prepared by counsel, much of which would be privileged information or attorney work product which is not subject to discovery and would have to be removed. In the event privileged information appears, a privilege log would have to be prepared. (See Exhibit 10.)

- 13 -

The above process would interfere and disrupt the daily operations and normal business function of the Risk Management Department.  It could take months to complete at a substantial cost.  Given the enormity and impossibility of responding to the discovery items related to claims and other accidents, it is respectfully submitted that ACL and ACBL's objections should be maintained.  Claimants have clearly embarked on a fishing expedition.

Interrogatory 21 is even more overbroad and irrelevant than Interrogatories 19 and 20.  It states:

> In the last twenty (20) years, please describe each and every incident in which a barge owned, operated, chartered, or controlled by ACBL struck a bridge or other fired [fixed] structure and, for each such incident, indicate when and where the allision occurred, the identities of all parties and vessels involved, and, if litigation resulted, the case name, court, docket number, and outcome.

ACBL properly and timely objected, noting, *inter alia*, that this interrogatory spans a 20 year period and is once again not limited to a specific geographic location or to the company towing barges at the time of the accident relative to this dispute.  ACBL further provided information related to barges operated by ACBL which were towed by vessels either owned by Brown Water or contracted to Brown Water.  Information was provided regarding three incidents within the approximate ten year period prior to the collision in suit during which Brown Water was contracted to perform independent towing services for ACBL during which Brown Water and/or a Brown. Water towboat or Brown Water contracted towboat damaged ACBL barges or grounded an ACBL barge.

- 14 -

As attested to by Mr. Krohn in his Affidavit (Exhibit 10 at pp. 3-4) ACBL does not maintain records for twenty years.[5]  As explained above, the files of the Risk Management Department of ACBL are not maintained in such a manner that the file name would indicate the type of incident that was involved.  Accordingly, all files contained in storage (as well as open files) would have to be manually retrieved and reviewed in the manner described above.  It is respectfully submitted that the Court deny the Motion to Compel with respect to these items.

### Deposition of Mr. Hoessle, ACBL Dispatcher

Contrary to Claimants' contention, the deposition of Mr. Hoessle did not reveal the existence or identity of any documents that Claimants had requested which ACBL did not produce. Furthermore, the documents identified by Mr. Hoessle, although not requested by Claimants in discovery, have been produced by ACBL along with other information requested by Claimants.  (See attached correspondence of August 7, 2002 to Mr. Strawn and all other counsel, Exhibit 8.)

During his deposition, Mr. Hoessle referred to a booklet containing various computer codes. (This is referred to at pages 234, 235, 291 and 292 of Mr. Hoessle's deposition, a copy of these pages are attached as Exhibit 11.).  Mr. Hoessle explained that this book contained codes and abbreviations that are used in conjunction with certain computer programs.  This book is not within the scope of Claimants' discovery. Yet, after the deposition, this booklet was investigated further and a copy was furnished to Claimants along with other information  (Exhibit 8.)

_____

[5]    Claimants have verbally stated that they would accept ten years of records.

- 15 -

Claimants' Memorandum also erroneously suggests that ACL and ACBL should have produced "Barge Incident Notification-e-mails"[6] and all boat "e-mail messages." All relevant documents pertaining to the instant case that were requested were timely produced. As attested to by Mr. Krohn (Exhibit 10 at pp. 4-5), e-mail messages are only maintained for 30 days and are then deleted from the system and cannot be retrieved. Any paper copies of these types of documents which may pertain to a particular claim or damage incident and which someone may have printed and placed into a claim file might be contained in the 1000 plus boxes that are in storage and/or in the current open claim files maintained in ACBL's Jeffersonville, Indiana office. (Exhibit 10, p. 5.) However, the procedures for reviewing the files outlined above would have to be followed. Here again Claimants are completely misdirected and have not even attempted to explain or show why these unspecified documents are even relevant. Claimants' statement at p. 9 of their Memorandum that "All of these electronic documents are relevant, fall within the scope of the requests, and have not been produced" is simply not accurate and is a distortion of reality.

### Interrogatories 4, 7, 8, 16, 17 and 22

Claimants freely admit that these interrogatories "have been answered by ACBL" (Memorandum, p. 10). Accordingly, there is nothing to be compelled. Claimants' state at p. 10 that ACL and ACBL have made objections and comment that this "leaves open the possibility that ACBL

---

[6]These items are generated each time a barge develops and problem and are sent to many different ACBL departments. They would include such things as reports of leaking barges, hatch cover condition, damaged and/or inoperable hatch covers, problems with deck fittings, etc.

will later claim they did not understand the interrogatories, or somehow should not be bound by their

answers." Claimants have not addressed the specific objections lodged. They have produced no

evidence that ACBL contends that it did not understand the answers it gave or should not be bound

by its answers.

## Request for Production 5 and 11

Request for Production 5 states:

> For the period from 1992 to the present, all **documents** that
> explain or govern the considerations, programs, rules, policies,
> procedures, or guidelines used by **ACBL** to determine what towing
> companies and what specific towing vessels would be used to tow
> barges owned, operated, controlled by or under contract to **ACBL**,
> specifically including, but not limited to all **documents** used to
> investigate, determine or verify the safety record, experience and
> competence of a particular towing company and of the crews of
> particular towing vessels, as well as all **documents** used to
> investigate, determine or verify the particular characteristics,
> sufficiency and seaworthiness of particular towing vessels.

ACBL and ACL timely objected, but and subject to objections, stated: "ACL has none.

ACBL has no documents as described that it uses to determine what independent contractor third-

party towing companies would be used to tow its barges (See Answer to Interrogatory Nos. 7 and

10 which describe ACBL's procedures in selecting those companies.) ACBL does not select the

towboats; those are selected by the independent contractor towing companies. With reference to

Brown Water, see the Safety Audit attached." Furthermore, after discussion with counsel ACBL

produced other safety audits of other companies.  (See Exhibit 7, pp. 9-10).  Accordingly, Request for Production 5 and 11 are satisfied.

With reference to the deposition of Mr. Hoessle (p. 11 of Memorandum), he testified that he has never seen what the Claimants refer to as the "vendor" file regarding Brown Water Marine nor did Claimants ever request any vendor files.  ACBL did produce the only file it had for Brown Water Marine.  Claimants ignore what they have sought in their Interrogatories and Requests for Production of Documents, and erroneously state that the "vendor" files for other vendors were requested or are even relevant.  Claimants cannot seek a motion to compel for documents they did not request. Additionally, they have not shown the relevance for "vendor" files for companies providing towage services to ACBL in the "Western Canal" Region.

In particular, Mr. Hoessle testified that he had no experience with the Brown Water file but only knew that the company kept a file.  (Exhibit 11, Hoessle dep. p. 251, line 24 to page 252, line 21.)  Mr. Hoessel further testified that he has never contributed anything to any vendor file and that "I've never contributed, really, anything to any vendor file.  I'm not tasked with maintaining or doing anything with that...."  (Exhibit 11, Hoessle dep. p. 252, lines 11-14).

## Request for Production 13

This request for production is not as simply drafted as Claimants represent.  It states:

> Any insurance agreements or policies (including both primary and
> excess, regardless of limits), endorsements, declarations, schedules,
> terms, conditions, clauses, forms, warranties, notices, exclusions,
> certificates, memoranda of insurance, or other similar documents that

- 18 -

> may arguably provide Brown Water and/or ACBL and/or their
> employees coverage for any claims asserted against them in
> connection with the allision; that arguably provided coverage of any
> kind or nature to or on behalf of Brown Water or ACBL or their
> employees on that date; that verify or reflect the existence of
> insurance coverage in favor of Brown Water or ACBL or their
> employees on that date; that explain, describe or summarize the
> insurance portfolio in place for Brown Water or ACBL or their
> employees as of that date; or that identify any agents, brokers,
> producers, or other persons or entities that were involved in placing
> au  attempting to place any insurance coverage for or on behalf of
> Brown Water or ACBL or their employees from 2000 to the present.

ACBL has made full disclosure of its insurance policies and coverages and has made

arrangements for the production of the insurance policies.  The insurance policies were made

available for inspection to Claimants' counsel in Louisville, Kentucky on two occasions when we

were scheduled to appear there for depositions of ACBL witnesses.  However, Claimants cancelled

these depositions.  Furthermore, on July 17th undersigned counsel forwarded a Confidentiality

Agreement to Claimants' counsel and informed counsel that upon receipt of the executed agreement

that the policies would be produced.  (See Exhibit 5, p. 3 "Once the Confidentiality Agreement is

signed and returned to me, I will forward the insurance documents to Mr. Medrano as agreed." See

also Exhibit 6.)  Claimants did not sign the Confidentiality Agreement, which is very standard, and

have only themselves to blame in this situation.  Counsel was advised that once the agreement was

signed and returned, a copy of the policies would be furnished, with agreed information redacted.

(Exhibit 5, p. 3 under "Request for Production No. 13.")  Claimants have dropped their request for

any additional information beyond the policies, which would be totally irrelevant anyway.

- 19 -

Claimants conveniently seek to ignore the wording of Request for Production No. 13. This is not just limited to the collision in suit and specifically states that it seeks insurance coverage "that arguably provided coverage of any kind or nature to or on behalf of Brown Water or ACBL or their employees on that date." Claimants have not fully quoted this request for production to the Court. Furthermore, ACBL has not misrepresented Federal Rule of Evidence 411 and its objection states:

> Federal Rule of Evidence 411 limits the type of information which may be obtained regarding insurance and does not expressly permit discovery of other facts concerning ACBL's insurance coverages. The issues in this case do not involve the placing of coverages or the identity of brokers or agents, all of which is totally irrelevant.

### Request for Production 18

This item has been satisfied. ACBL provided an organizational chart to Claimants' counsel after they explained what they really meant by this request. This request sought documents reflecting the "corporate structure" of ACBL and its relationship with Brown Water. In response, ACBL timely produced its Certificate of Formation and various certificates of documentation for the barge. ACBL, at page 20 of its response, also described its relationship with Brown Water. It has fully responded to this item.

### Request for Production No. 2

This seeks, for the period of 1992 to the present, documents (including accident reports, diagrams, photographs, video tapes, audio tapes, charts, etc.) related to other collisions in which any vessels or barges owned, operated, crewed or controlled by ACBL have had. As discussed above,

- 20 -

with respect to the Interrogatories, this request is irrelevant, immaterial, overly broad and unduly burdensome. We refer the Court to the Affidavit of Mr. Krohn. Claimants have not explained why this information is either relevant or material to any issue in this case. It is a fishing expedition.

### Request for Production 4

Request for Production No. 4 seeks, for the period of 1992 to the present, "any and all operations manuals, safety manuals, other manuals, procedures, books, pamphlets, programs, memos, training materials, check lists ... providing, explaining, discussing or critiquing:  the rules, policies or procedures governing the selection, loading, unloading, operation or navigation of your barges ... of vessels used to tow your barges ... or your hiring and safety programs." ACBL and ACL objected and then fully responded. ACL responded that it has none. ACBL responded that with respect to towboats owned and operated by independent contractor towing companies, see response to Interrogatory No. 4. ACBL also produced various manuals applicable to its bareboat-chartered and operated towboats which were in effect at the time of the collision. Furthermore, ACBL located and produced a version of its "Boat Operations Manual," which <u>was</u> <u>not</u> in effect at the time of collision and had been superceded by the previously produced documents. (Exhibit 9.) Claimants have made no showing whatsoever of the relevancy or materiality or the breadth of this request.

During the deposition of Mr. Hoessle, a computer booklet of codes was identified which has been produced. This is not a written policy manual but was a book used for making entries into the computer system. It is captioned "The Barging System User Guide." It was not an item that was

- 21 -

requested by the Claimants. However, once Claimants did request it we provided them with a copy. (Exhibit 8 and excerpt from booklet included therewith.) This booklet is the document that the Claimants call the "Distribution Department Operations Manual."

Claimants mention in their memorandum that Mr. Hoessle testified that the "24 Hour Planning Center" has an operations manual and written procedures. This is a misstatement of his testimony. Mr. Hoessle testified that he did not work in the planning center and that he did not specifically know what type of manuals they might have other than "spill reporting procedures" and that he had never seen these manuals. (Exhibit 11, pp. 298-299.)

After the deposition of Mr. Hoessle, a further check was made to determine whether there were any operation manuals or written procedures in the 24 Hour Planning Center. As confirmed by undersigned counsel's letter (Exhibit 8, p. 2) and as attested to by Mr. Krohn (Exhibit 10, p. 5) the only other publication that might possibly qualify as a manual in the 24 Hour Planning Center is the U. S. Coast Guard "CHRIS Code" publication. This is not a company manual but is a Coast Guard/Government publication not responsive to any requests of Claimants. It identifies chemicals that may be transported on barges. Details concerning this government publication have been provided to Claimants.

### Requests for Production 6, 7, 19, 21 and 23

Like previous Interrogatories 4, 7, 8, 16, 17 and 22, ACBL has fully answered these items Claimants do not complain about the responses and do not address any of the objections we have made which speak for themselves and are valid.

## CONCLUSION

For the above and foregoing reasons, it is respectfully submitted that the Motion to Compel should be denied in all respects.

Respectfully submitted,

GLENN G. GOODIER, Attorney-in-Charge
Admitted *Pro Hac Vice*
By Order Entered 4/23/02
Jones, Walker, Waechter, Poitevent,
  Carrère & Denègre, L.L.P.
201 St. Charles Avenue - 48th Floor
New Orleans, Louisiana 70170-5100
Telephone:  (504) 582-8174
Facsimile:   (504) 582-8010

LES CASSIDY
State Bar Number 03979270
Federal Identification Number 5931
1020 Bank of America
500 North Water Street
Corpus Christi, Texas  78471
Telephone:  (361) 887-2969
Facsimile:  (361) 886-3299

OF COUNSEL:

WOOLSEY & CASSIDY, P.C.
1020 Bank of America
500 North Water Street
Corpus Christi, Texas  78471
Telephone:  (361) 887-2969
Facsimile:  (361) 886-3299

Counsel for Petitioners,
American Commercial Lines LLP and
American Commercial Barge Line LLC

- 23 -

## CERTIFICATE OF SERVICE

I hereby certify that a copy of the foregoing has been properly mailed to all known potential parties and/or their counsel on this 16th day of August, 2002.

_____
GLENN G. GOODIER

**IN THE UNITED STATES DISTRICT COURT**
**FOR THE SOUTHERN DISTRICT OF TEXAS**
**BROWNSVILLE DIVISION**

| | | |
|---|---|---|
| **IN RE THE COMPLAINT AND** | § | |
| **PETITION OF AMERICAN** | § | **C. A. NO. B-02-004** |
| **COMMERCIAL LINES LLC AS** | § | **Admiralty** |
| **OWNER, and AMERICAN** | § | |
| **COMMERCIAL BARGE LINES, LLC,** | § | |
| **AS CHARTERER OF THE BARGES** | § | |
| **NM-315, VLB-9182, ACL-9933B,** | § | |
| **VLB-9173, IN A CAUSE OF** | § | **Consolidated with** |
| **EXONERATION FROM OR** | § | |
| **LIMITATION OF LIABILITY** | § | |

| | | |
|---|---|---|
| **IN RE THE COMPLAINT AND** | § | |
| **PETITION OF BROWN WATER** | § | **C. A. NO. B-01-157** |
| **TOWING I, INC., AS OWNER, and** | § | **Admiralty** |
| **BROWN WATER MARINE SERVICE,** | § | |
| **INC., AS BAREBOAT CHARTERER OF** | § | |
| **THE BROWN WATER V, ITS ENGINES,** | § | |
| **TACKLE, ETC. IN A CAUSE OF** | § | |
| **EXONERATION FROM OR** | § | |
| **LIMITATION OF LIABILITY** | § | |

**INDEX TO EXHIBITS SUBMITTED BY ACL AND ACBL**
**AS PART OF THEIR MEMORANDUM IN OPPOSITION**
**TO CLAIMANTS' FIRST MOTION TO COMPEL DISCOVERY**

Exhibit 1.    Claimants' Interrogatories to ACL and ACBL, including "Definitions."

Exhibit 2.    Claimants' Request for Production of Documents to ACL and ACBL, including "Definitions."

Exhibit 3.    Correspondence from Mr. Strawn dated July 3, 2002.

Exhibit 4.    Correspondence to Mr. Strawn dated July 5, 2002.

Exhibit 5.    Correspondence to Mr. Strawn dated July 11, 2002.

Exhibit 6.    Correspondence of July 17, 2002 forwarding Confidentiality Agreement related to insurance policies. (Claimants' counsel never executed this document.)

Exhibit 7.    Supplemental Responses to Interrogatories and Request for Production of Documents of ACL and ACBL dated August 7, 2002 together with letter of transmittal.

Exhibit 8.    Correspondence August 7, 2002 to Mr. Strawn forwarding additional informational documents including booklet identified by Mr. Hoessle. Copy of first pages of "Barging System Guide" bearing identification A-1399 to A-1404 are attached. Document bears identification A-1399 to A-1618 and a full copy will be furnished to the Court if the Court so requires.

Exhibit 9.    Second Supplemental Responses to Requests for Production of ACBL dated August 14, 2002 together with letter of transmittal. Document captioned "American Commercial Barge Line Boat Operations Manual" bearing identification A-1630 to A-1966 is attached to original along with a copy of "Safety Rule Handbook" bearing identification A-1968 to A-2004. Copies of these documents will be furnished to the Court if the Court so requires.

Exhibit 10.    Affidavit of Duane A. Krohn, Senior Risk Analyst of ACBL, dated August 14, 2002.

Exhibit 11.    Excerpts from deposition of Patrick Hoessle, ACBL Dispatcher.

2

Respectfully submitted,

GLENN G. GOODIER, Attorney-in-Charge
Admitted *Pro Hac Vice*
By Order Entered 4/23/02
Jones, Walker, Waechter, Poitevent,
  Carrère & Denègre, L.L.P.
201 St. Charles Avenue - 48th Floor
New Orleans, Louisiana 70170-5100
Telephone:  (504) 582-8174
Facsimile:    (504) 582-8010

LES CASSIDY
State Bar Number 03979270
Federal Identification Number 5931
1020 Bank of America
500 North Water Street
Corpus Christi, Texas  78471
Telephone:  (361) 887-2969
Facsimile:  (361) 886-3299

OF COUNSEL:

WOOLSEY & CASSIDY, P.C.
1020 Bank of America
500 North Water Street
Corpus Christi, Texas  78471
Telephone:  (361) 887-2969
Facsimile:  (361) 886-3299

Counsel for Petitioners,
American Commercial Lines LLP and
American Commercial Barge Line LLC

3

## CERTIFICATE OF SERVICE

I hereby certify that a copy of the foregoing has been properly mailed to all known potential parties and/or their counsel on this __16th__ day of August, 2002.

4

**IN THE UNITED STATES DISTRICT COURT**
**FOR THE SOUTHERN DISTRICT OF TEXAS**
**BROWNSVILLE DIVISION**

| | | |
|---|---|---|
| IN RE THE COMPLAINT AND | * | C.A. NO. B-01-157 |
| PETITION OF BROWN WATER | * | |
| TOWING I, INC., AS OWNER, AND | * | |
| BROWN WATER MARINE SERVICE, | * | |
| INC., AS BAREBOAT CHARTERER, | * | |
| OF THE BROWN WATER V, ITS | * | |
| ENGINES, TACKLE, *ETC.* IN A | * | **Consolidated with** |
| CAUSE OF EXONERATION FROM | * | |
| OR LIMITATION OF LIABILITY | * | |

| | | |
|---|---|---|
| IN RE THE COMPLAINT AND | * | C.A. NO. B-02-004 |
| PETITION OF AMERICAN | * | **Admiralty** |
| COMMERCIAL LINES LLC AS | * | |
| OWNER, AND, AMERICAN | * | |
| COMMERCIAL BARGE LINES LLC, | * | |
| AS CHARTERER OF THE BARGES | * | |
| NM-315, VLB-9182, ACL-9933B, AND | * | |
| VLB-9173, IN A CAUSE OF | * | |
| EXONERATION FROM OR | * | |
| LIMITATION OF LIABILITY | * | |

## INTERROGATORIES

**TO:**  American Commercial Lines, L.L.C. and
American Commercial Barge Lines, L.L.C.
Through their counsel of record:
Glenn G. Goodier
Jones, Walker
201 St. Charles Avenue
48th Floor
New Orleans, LA, 70170-5100

NOW COME the Claimants in the captioned matter, and, pursuant to the Amended Joint

Discovery/Case Management Plan entered herein, collectively propound the following

Interrogatories, <u>to be answered and signed by petitioners, American Commercial Lines, L.L.C. and</u>

<u>American Commercial Barge Lines, L.L.C. (collectively "ACBL"), under oath, within the time</u>

<u>delays allowed by law.</u>   These interrogatories are propounded pursuant to Rules 26 and 33 of the

Federal Rules of Civil Procedure and are hereby expressly made continuing so that supplemental



answers are promptly required whenever **ACBL**, directly or indirectly, obtains further information of the nature sought herein between the time these interrogatories are served and the time of trial.

## DEFINITIONS

In the following interrogatories:

The term "**document**" or "**documents**" includes writings, drawings, graphs, charts, maps, records, photographs, phono records, tape recordings, computer data compilations, or other data compilations transferable, through detection devices, into usable form.

The terms "**identify**," "**identity**," or "**identification**," when used with respect to an individual or other entity, means to state his or its full name, present or last known home address and business address, and present or last known home telephone number and business telephone number.

The terms "**identify**," "**identity**," or "**identification**," when used with reference to a **document**, means to **identify** the custodian of and the location of the **document**, and to state the title or type of **document** (*i.e.*, lease, memorandum, contract, chart, *etc.*), and its date, or otherwise provide some means of **identifying** the **document**. In lieu thereof, **you** may attach to **your** answers a copy of each such **document**.

The terms "**ACBL**," "**you**" or "**your**" mean American Commercial Lines, L.L.C. and American Commercial Barge Lines, L.L.C., as well as all of each of their parent companies, related companies, affiliates, subsidiaries and all of each of their predecessors, successors, assigns, agents, attorneys, owners, operators, officers, directors, shareholders, managers, agents, employees and any other persons acting on their behalf.

The term "**Brown Water**," means Brown Water Marine Services, Inc. and Brown Water Towing I, Inc., as well as all of each of their parent companies, related companies, affiliates, subsidiaries, and all of each of their predecessors, successors, assigns, attorneys, owners, operators, officers, directors, shareholders, managers, agents, employees and any other persons acting on their behalf.

The term "**Causeway**" means the Queen Isabella Causeway that connects Port Isabel, Texas with South Padre Island.

When bolded, the term "**barges**" means the NM-315, VLB-9182, ACBL-9933B and VLB-9173. Otherwise, the term refers generically to any barges.

The term "**allision**" means the September 15, 2001 event in which the T/V BROWN WATER V was towing the **barges** in navigable waters in or near Port Isabel, Texas, when the flotilla struck one of the supports of the **Causeway**, causing several 80-foot sections of the **Causeway** to collapse into the Laguna Madre Channel.

- 2 -



<u>INTERROGATORY NO. 1</u>:

Please **identify** the specific cargoes that each of the **barges** was carrying at the time of the **allision**, including in **your** response the **identity** of the owner of the cargo, the **identity** of the customer for whom you were moving the cargo (if different from the cargo's owner), and all contracts, charter agreements or other **documents** that applied or arguably may have applied to the movement of the cargoes and the **barges**, or the hiring of the BROWN WATER V.

<u>INTERROGATORY NO. 2</u>:

Please **identify** all person(s) who have been officers and/or directors of **ACBL** at any time from 1992 to the present.

INTERROGATORY NO. 3:

Please **identify** <u>all</u> persons who have who have held <u>any</u> managerial position with **ACBL** from 1992 to the present and, for each such person, describe his or her specific area(s) of responsibility. **Your** response should include, but not be limited to, <u>all</u> persons with <u>any</u> managerial responsibility in the following areas:

- Personnel (hiring, firing, personnel evaluation and other personnel functions);
- Health, Safety and/or Environmental (formulating or implementing safety policies and procedures, training programs, *etc.*);
- Operations (formulating or implementing operational policies, procedures and training; crewing, supplying and maintaining vessels and barges; assigning vessels and barges to particular jobs; dispatching vessels and barges; determining what vessels to use to perform particular tows; determining how to build and configure tows; and providing information to vessels regarding jobs, weather conditions, *etc.*);
- Sales (seeking jobs for the vessels and barges and negotiating the terms, conditions and contracts pursuant to which the vessels and barges work);
- Industry and Regulatory compliance (dealing with the Coast Guard and other governmental agencies on licensing, documentation, inspection and other regulatory issues, filing CG-2692 forms, dealing with industry associations, obtaining required permits, *etc.*) and;
- Insurance and risk management (placing insurance coverage, providing insurance certificates to customers, handling claims and lawsuits).

- 5 -

INTERROGATORY NO. 4:

Since 1992, please describe all operating and/or safety rules, regulations, policies, procedures, *etc.* that **ACBL** has required of or suggested to the towing companies and/or particular tugs that tow **ACBL** barges.



**INTERROGATORY NO. 5:**

During the time period from four hours before the **allision** to four hours after the **allision**, describe any radio, telephone, or other communications that took place to or from **ACBL** regarding the **allision**, including but not limited to communications with any office of **Brown Water**; the BROWN WATER V; any other vessels; any docks, bridge tenders, or other shore bases; the United States Coast Guard; any other governmental entities; any rescuers; any victims; or any other person or entity. For each communication listed in **your** response, **identify** all persons who participated in, overheard, or otherwise have knowledge of the communication, and all **documents** that reflect the communication.

## INTERROGATORY NO. 6:

Please state how and why **you** contend that the **allision** occurred.

<u>INTERROGATORY NO. 7:</u>

For the period from 1992 to the present, describe all efforts that **you** contend were made by **ACBL** to determine what towing companies and what specific towing vessels would be used to tow barges owned, operated, controlled by or under contract to **ACBL**, specifically including, but not limited to all efforts made to investigate, determine or verify the safety record, experience and competence of particular towing companies and of the crews of particular towing vessels, as well as all efforts made to investigate, determine or verify the particular characteristics, sufficiency and seaworthiness of particular towing vessels.

- 9 -



**INTERROGATORY NO. 8:**

For the period from 1992 to the present, describe all efforts that **you** contend were made by **ACBL** to determine what specific dangers or concerns might be posed by local wind, weather, current, bottom, or other conditions present in areas where barges owned, operated, controlled by or under contract to **ACBL** would be operating, specifically including, but not limited to all efforts made to investigate, determine or verify the conditions in the area between the Long Island Swing Bridge and the **Causeway**.

<u>INTERROGATORY NO. 9</u>:

With respect to the voyage during which the **allision** occurred, please describe the characteristics of each **barge** (*i.e.*- length, width, draft empty and loaded, whether rake or box hull configuration, whether equipped with bow thrusters, steering assists, *etc*.); where each **barge** was picked up; the destination and scheduled arrival time for each **barge**; all scheduled pickups and drops; all actual pickups and drops; how each **barge** was loaded in terms of cargo, weight and draft; the order in which the tow was built; and the exact manner and configuration in which the **barges** were made up, including an indication as to the type of rigging used and as to whether each **barge** was positioned stern first or bow first in the string.

- 11 -

<u>INTERROGATORY NO. 10</u>:

With respect to the voyage during which the **allision** occurred, please **identify** all persons who were involved in selecting **Brown Water** in general, and the BROWN WATER V in particular, to tow the **barges**, and describe all of the factors that were considered in making that determination.



<u>INTERROGATORY NO. 11</u>:

In **your** Claim and Answer in Civil Action No. 01-CV-157, **you** allege that "nothing that [**ACBL**] did or failed to do in any way caused or contributed to the [**allision**]... nor were any of the **barges** unseaworthy..." Please state in specific detail each and every fact upon which **you** base each of these contentions, **identifying** all persons or entities who have knowledge or information of any kind regarding these contentions and any **documents** that are relevant to these contentions.

- 13 -

<u>INTERROGATORY NO. 12</u>:

In **your** Claim and Answer in Civil Action No. 01-CV-157, **you** allege that the **allision** was "caused by the negligence of the M/V BROWN WATER V" and you deny that **Brown Water** is entitled to exoneration or limitation of liability in connection with the **allision**.

Please state in specific detail each and every fact upon which **you** base each of these contentions, **identifying** all persons or entities who have knowledge or information of any kind regarding these contentions and any **documents** that are relevant to these contentions.

- 14 -

INTERROGATORY NO. 13:

If **you** contend that the **allision** was caused by the fault (*i.e.*- negligence, statutory violations, or unseaworthiness) of any person or entity other than **ACBL**, or any vessel other than the **barges**, please **identify** each person, entity or vessel that **you** contend was at fault and, for each person or entity **you identify**, state in specific detail each and every fact on which **you** base these contentions, **identifying** all persons or entities who have knowledge or information of any kind regarding these contentions and any **documents** that are relevant to these contentions.

<u>INTERROGATORY NO. 14:</u>

Please explain the complete corporate structure of **ACBL**, including in **your** response a description of the exact nature of the relationship (*i.e.*, record owner, charterer, operator, *etc.*) of American Commercial Lines, L.L.C., American Commercial Barge Lines, L.L.C., and Houston Fleet, L.L.C. to each of the **barges** and to the BROWN WATER V, as well as a description of the exact nature of **your** relationship with **Brown Water**, and state with specificity the facts upon which **your** response is based.   As part of **your** response, please **identify** all persons having knowledge of, and all **documents** reflecting, the structure and relationships that **you** describe.



<u>INTERROGATORY NO.15</u>:

Please state when and where each of the **barges** was constructed and **identify** the designer and the builder of each **barge**.  If any of the **barges** have ever been modified or reconstructed, please provide the same information with respect to each modification/reconstruction.



<u>INTERROGATORY NO. 16</u>:

At the time when **Brown Water** in general, and the BROWN WATER V in particular, were selected to perform the tow of the **barges** for the voyage during which the **allision** occurred, please describe all information and **documentation** that was know to **ACBL** with respect to the safety record and competence of **Brown Water**, the safety record, experience and competence of the crew that would be manning the BROWN WATER V during the voyage, and the condition, sufficiency and seaworthiness of the BROWN WATER V and her equipment.

- 18 -



## INTERROGATORY NO. 17:

With respect to the **allision** and any damages allegedly caused by the **allision**, have **you** entered into any compromise settlement agreements, covenants not to sue, "hold harmless" agreements, indemnity agreements, "Mary Carter" agreements, joint defense agreements, or any other similar agreements or arrangements with any other person or entity?   If so, **identify** the persons or entities with which **you** have reached an agreement or arrangement and state the specific terms of each agreement or arrangement.

- 19 -

## INTERROGATORY NO. 18:

For the period from 1992 to the present, describe all vessels that have been used by **ACBL** to move barges in the area where the **allision** occurred (*i.e.*- the area between the Long Island Swing Bridge and the **Causeway**), including in **your** response the name, official number, length, breadth, depth, gross tonnage, net tonnage, and horsepower of each vessel.



## INTERROGATORY NO. 19

For each vessel listed in **your** response to Interrogatory No. 18, please state whether, to **your** knowledge, the vessel has, since 1992, been involved in any other allision and/or any collision, grounding, sinking, fire, pollution incident or other marine casualty?  If so, describe and state the date and location of each such casualty, state the **identity** of all persons, entities and vessels involved, and describe any claims, demands, lawsuits or Coast Guard action that resulted from any such casualties.



<u>INTERROGATORY NO. 20</u>:

In addition to **Brown Water,** please **identify** all other towing companies that had the capability of moving barges through the area between the Long Island Swing Bridge and the **Causeway** on September 15 - 16, 2001.



<u>INTERROGATORY NO. 21</u>:

In the last twenty (20) years, please describe each and every incident in which a barge owned, operated, chartered or controlled by **ACBL** struck a bridge or other fixed structure, and, for each such incident, indicate when and where the allision occurred, the **identities** of all parties and vessels involved, and, if litigation resulted, the case name, court, docket number, and outcome.

INTERROGATORY NO. 22:

Please state whether **ACBL** has ever had in place any rules, regulations, policies, procedures, guidelines, *etc.* to govern the horsepower that should or must be used in towing **ACBL** barges, whether in general or with respect to specific areas and/or conditions, and, if so, please describe all such rules, regulations, policies, procedures, guidelines, *etc.*, explain what definition **ACBL** uses for "horsepower" in the context of evaluating or determining the horsepower of vessels that will be used to tow **ACBL** barges, and **identify** any documents that reflect the rules, regulations, policies, procedures, guidelines, *etc.* referenced in **your** response.



## INTERROGATORY NO. 23:

Have **you** or any other person on **your** behalf taken a statement, whether oral or written, from any person, (including, but not limited to any individual Claimant, or any employee or representative of any Claimant) who allegedly has knowledge of any disputed fact, circumstance, claim or defense which is alleged with particularity in the pleadings of these consolidated suits?  If so, please **identify** each person or entity whose statement was taken and indicate when, where and by whom each statement was taken and all persons present when each statement was taken.

 INTERROGATORY NO. 24:

For the period from 1992 to the present, please list every industry association, organization or committee that **ACBL** has held membership in or been involved with (for example, American Waterways Operators, American Inland Mariners Association, Coast Guard Towing Safety Advisory Committee, Greater New Orleans Barge Fleeting Association, *etc.*) and **identify** the people within **ACBL** who are most familiar with each such association, organization or committee.

- 26 -

<u>INTERROGATORY NO. 25:</u>

At the time of the **allision**, please describe all rules, policies and/or procedures that **ACBL** had in effect that related in any way to the safe operation of **ACBL** vessels and barges (including tugs owned directly by **ACBL**), and **identify** any **documents** reflecting such rules, policies and/or procedures. If there have been any changes to any of the rules, policies and/or procedures that are described in **your** response, describe all such changes, **identify** any **documents** reflecting each change, and state why, when, and by whom each such change was made.

PROPOUNDED THIS 10th DAY OF MAY, 2002.

Respectfully submitted,

RAY R. MARCHAN
State I.D. No. 12969050
Federal I.D. No. 9522
WATTS & HEARD, L.L.P.
1926 E. Elizabeth
Brownsville, TX 78520
Phone: 956.544.0500
Fax:    956.541.0255
*Attorney for Claimants Lydia Zamora, Individually and as Representative of the Estate of Hector Martines, Jr., Gustavo Morales, Bigo's International, L.L.C.; Jacqueline Paddock, Individually and as Representative of the Estate of Chelsea Welch and as Next Friend of William B. Welch and Bridgette Goza*

- 27 -

HERIBERTO MEDRANO
State I.D. No. 13897800
Federal I.D. No. 5952
1101 West Tyler
Harlingen, TX 78550
Phone: 956.428.2412
Fax:    956.428.2495
*Attorney for Claimant Anita Harris, Individually, as Next Friend of Victor Justin Harris and as Representative of the Estate of Robert V. Harris*


JOHN DAVID FRANZ
State I.D. No. 07389200
Federal I.D. No. 1190
400 North McColl
McAllen, TX 78501
Phone: 956.686.3300
Fax:    956.686.3578
*Attorney for Claimants Esteban Rivas and Miriam Rivas, Individually and as Representatives of the Estate of Stvan F. Rivas*


THOMAS R. AJAMIE
State I.D. No. 00952400
S. MARK STRAWN
State I.D. No. 19374325
SCHIRRMEISTER AJAMIE, L.L.P.
Pennzoil Place – South Tower
711 Louisiana, Suite 2150
Houston, TX 77002
Phone: 713.860.1600
Fax:    713.860.1699
*Attorneys for Claimants J. Antonio Mireles, as Representative of the Estate of Julio Cesar Mireles, Juan Antonio Mireles and Soledad Gonzales Mireles*

- 28 -

JUAN A. MAGALLANES
State I.D. No. 12879500
Federal I.D. No. 2258
Mr. Carlos Escobar
State I.D. No. 24025351
MAGALLANES, HINOJOSA & MANCIAS, P.C.
1713 Boca Chita
P.O. Box 4901
Brownsville, TX  78520
Phone: 956.544.6571
Fax:    956.544.4290
*Attorney for Laguna Madre Water District of Port Isabel*


JULIAN RODRIGUEZ, JR.
State I.D. No. 17146770
Federal I.D. No. 15112
100 W. Pecan
McAllen, TX  78501
Phone: 956.682.8801
Fax:    956.682.4544
*Attorney for Raquel Teran Hinojosa, Individually and on*
*behalf of the Estate of Gaspar Hinojosa; Clarissa Hinojosa,*
*Omar Hinojosa, Gaspar Hinojosa, III, each individually;*
*Claimants Martin D. Hinojosa and Rita S. Hinojosa,*
*Individually and as Heirs of the Estate of Gaspar Hinojosa*


STEVE Q. MCMANUS
State I.D. No. 13784700
Federal I.D. No. 5889
WILLIAM Q. MCMANUS
State I.D. No. 24008619
MCMANUS & CRANE, L.L.P.
209 West Juan Linn
P.O. Box 2206
Victoria, TX  77902-2206
Phone: 361.575.6764
Fax:    361.575.8454
*Attorneys for Claimants Ricky Leavell and Carol Leavell,*
*Individually and as Representatives of the Estate of Robin*
*Raye Leavell*

- 29 -



FRANK ENRIQUEZ
State I.D. No. 06630500
Federal I.D. No. 3734
ROBERT PUENTE
4200-B North Bicentennial
McAllen, TX 78504
Phone: 956.686.5291
Fax:    956.618.5064
*Attorney for Claimants Roberto Espericueta, Albert Leroy*
*Moya, Rolando Lee Moya and Antonio Salinas, Jr.*


JAMES B. MANLEY
State I.D. No. 12915000
Federal I.D. No. 3286
3616 Preston Road
Pasadena, TX 77505
Phone: 713.947.1670
Fax:    713.947.6956
*Attorney for Claimant William Morris Welch*


J. CHAD GAUNTT
State I.D. No. 07765990
Federal I.D. No. 14125
GAUNTT & KRUPPSTADT, L.L.P.
9004 Forest Crossing Drive, Suite C
The Woodlands, TX 77381
Phone: 281.367.6555
Fax:    281.367.3705
*Attorney for Claimants, Esteban Rivas and*
*Miriam Rivas, Individually and as Representatives of the*
*Estate of Stevan F. Rivas*


GEOFFREY AMSEL
State I.D. No. 01161570
SCB MANAGEMENT SERVICES
1010 N. St. Mary's, Room 1403
San Antonio, TX 78209
Phone: 210.886.4805
Fax:    210.222.7194
*Attorney for Claimant Southwestern Bell Telephone*


- 30 -

VERONICA FARIAS
2854 Boca Chica Blvd.
Brownsville, TX  78521
Phone: 956.546.1537
Fax:    956.546.2234
*Attorney for minor Claimant, William Welsh*


W. LAMOINE HOLLAND
State I.D. No. 09856000
1920 Nacogdoches Road, Suite 100
San Antonio, TX  78209
Phone: 210.824.7474
Fax:    210.824.8141
*Attorney for Claimant, Dimas Mora*


THOMAS E. QUIRK
State I.D. No. 16437700
Federal I.D. No. 29509
AARON & QUIRK
901 N.E. Loop 410, Suite 903
San Antonio, TX  78209-1307
Phone: 210.820.0211
Fax:    210.820.0214
*Attorney for Claimant, Allstate Insurance Company*


RAYMOND L. THOMAS
Federal I.D. No. 10715
ANDRES H. GONZALEZ, JR.
Federal I.D. No. 22196
KITTLEMAN, THOMAS, RAMIREZ & GONZALES,
PLLC
4900-B North 10th Street
McAllen, TX  78504
Phone: 956.686.8797
Fax:    956.630.5199
*Attorneys for Claimants, Rene Mata and Frank Mata*

- 31 -

JIM S. HART
State I.D. No. 09147400
Federal I.D. No. 14548
NEJD YAZIJI
State I.D. No. 24029914
WILLIAMS BAILEY LAW FIRM, L.L.P.
8441 Gulf Freeway, Suite 600
Houston, TX 77017
Phone: 713.230.2312
Fax:    713.643.6226
*Attorney for Claimant, Hector Martinez, Sr.*


RICHARD LEO HARRELL
State I.D. No. 09041320
THE EDWARDS LAW FIRM
Post Office Box 480
Corpus Christi, TX 78403
Phone: 361.698.7600
Fax:    361.698.7615
*Attorney for Claimant, William E. Kimbrell, as Surviving
Father of Chelsea Louise Welch*

- 32 -

JOHN CORNYN
Attorney General of Texas

HOWARD G. BALDWIN, JR.
First Assistant Attorney General

JEFFREY S. BOYD
Deputy Attorney General for Litigation

GRADY CLICK
Assistant Attorney General
Chief, Transportation Division

JACK F. GILBERT
Assistant Attorney General
Attorney-in-Charge
Texas Bar No. 00786946
Federal Bar No. 16701
Office of the Attorney General
Transportation Division
P.O. Box 12548
Austin, TX  78711-2548
Phone:  512.463.2004
Fax:  512.472.3855


OF COUNSEL:

MICHAEL RATLIFF
Assistant Attorney General
Texas Bar No. 16564300

And

MARGIE MANZANO CORBETT
Assistant Attorney General
Texas Bar No. 24001927
Federal Bar No. 22121
Office of the Attorney General
Transportation Division
P.O. Box 12548
Austin, TX  78711-2548
Phone:  512.463.2004
Fax:  512.472.3855

- 33 -



AND OF COUNSEL:

ADAMS AND REESE LLP

DARYL G. DURSUM
Texas Bar No. 06287900
Federal Bar No. 6198
4400 One Houston Center
1221 McKinney
Houston, TX 77010
Phone: 713.652.5151
Fax: 713.652-5152

MARK J. SPANSEL
Louisiana Bar No. 12314
EDWIN C. LAIZER, APLC
Louisiana Bar No. 17014
4500 One Shell Square
New Orleans, LA 70139
Phone: 504.581.3234
Fax: 504.566.0210

*Attorneys for Claimant State Of Texas*

## CERTIFICATE OF SERVICE

I certify that the foregoing was served by the means indicated to the counsel listed below on this ___10ᵗʰ___ day of May 2002.

Heriberto Medrano

Will W. Pierson  (By U.S. Mail)
Royston, Rayzor, Vickery & Williams
1700 Wilson Plaza West
606 N. Carancahua
Corpus Christi, TX  78476

Keith N. Uhles  (By U.S. Mail)
Royston, Rayzor, Vickery & Williams
55 Cove Circle
Brownsville, TX  78521

Glenn Goodier  (By Hand)
Jones, Walker
201 St. Charles Avenue
48ᵗʰ Floor
New Orleans, LA  70170-5100

Les Cassidy  (By U.S. Mail)
Woolsey & Cassidy, P.C.
1020 Bank of America
500 North Water Street
Corpus, Christi, Texas  78471

Robert and Virginia Fandrich  (By U.S. Mail)
5101 Berdi Way
Stockton, California  95207

John and Mary McCoy  (By U.S. Mail)
514 Brookside Pass
Cedar Park, Texas  78613

Cliff Garrard  (By U.S. Mail)
Independence Plumbers of South Texas
862 Robindell Drive
Houston, Texas  77074

Mr. Phil Bellamy  (By U.S. Mail)
815 Ridgewood
Brownsville, TX  78520

Ms. Sandra D. Laurel  (By U.S. Mail)
Snow & Laurel, L.L.P.
310 West Sunset
San Antonio, TX  78209

IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF TEXAS
BROWNSVILLE DIVISION

| | | |
|---|---|---|
| IN RE THE COMPLAINT AND | * | C.A. NO. B-01-157 |
| PETITION OF BROWN WATER | * | |
| TOWING I, INC., AS OWNER, AND | * | |
| BROWN WATER MARINE SERVICE, | * | |
| INC., AS BAREBOAT CHARTERER, | * | |
| OF THE BROWN WATER V, ITS | * | |
| ENGINES, TACKLE, *ETC.* IN A | * | Consolidated with |
| CAUSE OF EXONERATION FROM | * | |
| OR LIMITATION OF LIABILITY | * | |
| | | |
| IN RE THE COMPLAINT AND | * | C.A. NO. B-02-004 |
| PETITION OF AMERICAN | * | Admiralty |
| COMMERCIAL LINES LLC AS | * | |
| OWNER, AND, AMERICAN | * | |
| COMMERCIAL BARGE LINES LLC, | * | |
| AS CHARTERER OF THE BARGES | * | |
| NM-315, VLB-9182, ACL-9933B, AND | * | |
| VLB-9173, IN A CAUSE OF | * | |
| EXONERATION FROM OR | * | |
| LIMITATION OF LIABILITY | * | |

## VERIFICATION

BEFORE ME, the undersigned notary public, came and appeared:

_____

who, after first being duly sworn, did testify as follows:

That he/she is of the full age of majority and is otherwise competent to attest to the matters

contained in this Verification;

- 37 -

That he/she is employed by _____ in the position of _____ and has been so employed since _____, as a result of which he/she has personal knowledge of the matters attested to in this Verification;

That he/she is authorized to verify the Interrogatory answers of American Commercial Lines, L.L.C. and American Commercial Barge Lines, L.L.C. (collectively "ACBL"); and

That he/she has read and reviewed ACBL's answers to the Interrogatories and hereby verifies under oath on behalf of ACBL that the answers are complete, full, true and correct.

_____

SWORN AND SUBSCRIBED

BEFORE ME, NOTARY, THIS

_____ DAY OF _____, 2002.

_____
NOTARY PUBLIC
MY COMMISSION EXPIRES: _____

- 38 -

**IN THE UNITED STATES DISTRICT COURT**
**FOR THE SOUTHERN DISTRICT OF TEXAS**
**BROWNSVILLE DIVISION**

| | | |
|---|---|---|
| **IN RE THE COMPLAINT AND** | * | **C.A. NO. B-01-157** |
| **PETITION OF BROWN WATER** | * | |
| **TOWING I, INC., AS OWNER, AND** | * | |
| **BROWN WATER MARINE SERVICE,** | * | |
| **INC., AS BAREBOAT CHARTERER,** | * | |
| **OF THE BROWN WATER V, ITS** | * | |
| **ENGINES, TACKLE,** *ETC.* **IN A** | * | **Consolidated with** |
| **CAUSE OF EXONERATION FROM** | * | |
| **OR LIMITATION OF LIABILITY** | * | |
| | | |
| **IN RE THE COMPLAINT AND** | * | **C.A. NO. B-02-004** |
| **PETITION OF AMERICAN** | * | **Admiralty** |
| **COMMERCIAL LINES LLC AS** | * | |
| **OWNER, AND, AMERICAN** | * | |
| **COMMERCIAL BARGE LINES LLC,** | * | |
| **AS CHARTERER OF THE BARGES** | * | |
| **NM-315, VLB-9182, ACL-9933B, AND** | * | |
| **VLB-9173, IN A CAUSE OF** | * | |
| **EXONERATION FROM OR** | * | |
| **LIMITATION OF LIABILITY** | * | |

## REQUEST FOR PRODUCTION OF DOCUMENTS

**TO:**   American Commercial Lines, L.L.C. and
         American Commercial Barge Lines, L.L.C.
         Through their counsel of record:
         Glenn G. Goodier
         Jones, Walker
         201 St. Charles Avenue
         48th Floor
         New Orleans, LA  70170-5100

NOW COME the Claimants in the captioned matter, and, pursuant to the Amended Joint

Discovery/Case Management Plan entered herein and Rule 34 of Federal Rules of Civil Procedure,

collectively request that petitioners American Commercial Lines, L.L.C. and American Commercial

Barge Lines, L.L.C. (collectively "**ACBL**"), produce for inspection and performing related acts,



including copying, the following **documents**, at the offices of Heriberto Medrano, 1101 West Tyler, Harlingen, Texas, within the time delays allowed by law.

These requests for production are hereby expressly made continuing, and supplemental answers are promptly required whenever **ACBL** directly or indirectly obtains further information of the nature sought herein between the time this request for production of **documents** is served and the time of trial.

Where knowledge, information, or other items in the possession and control of **ACBL** is requested or required, such requests or inquiries shall be deemed to include knowledge or information in the possession or control of **ACBL**, its agents, representatives, underwriters, employees, servants, or others over whom **ACBL** has control, including their attorneys, in addition to **ACBL** individually.

DEFINITIONS

In the following requests for production:

The term **"document"** or **"documents"** includes writings, drawings, graphs, charts, maps, records, photographs, phono records, tape recordings, computer data compilations, or other data compilations transferable, through detection devices, into usable form.

The term **"identify,"** **"identity,"** or **"identification,"** when used with respect to an individual or other entity, means to state his or its full name, present or last known home address and business address, and present or last known home telephone number and business telephone number.

The term **"identify,"** **"identity,"** or **"identification,"** when used with reference to a **document**, means to **identify** the custodian of and the location of the **document**, and to state the title or type of **document** (*i.e.*, lease, memorandum, contract, chart, *etc.*), and its date, or otherwise provide some means of **identifying** the **document**.

The terms **"ACBL,"** **"you"** or **"your"** mean American Commercial Lines, L.L.C. and American Commercial Barge Lines, L.L.C., as well as all of each of their parent companies, related companies, affiliates, subsidiaries and all of each of their predecessors, successors, assigns, agents,

attorneys, owners, operators, officers, directors, shareholders, managers, agents, employees and any other persons acting on their behalf.

The term **"Brown Water,"** means Brown Water Marine Services, Inc. and Brown Water Towing I, Inc., as well as all of each of their parent companies, related companies, affiliates, subsidiaries, and all of each of their predecessors, successors, assigns, agents, attorneys, owners, operators, officers, directors, shareholders, managers, agents, employees and any other persons acting on their behalf.

The term **"Causeway"** means the Queen Isabella Causeway that connects Port Isabel, Texas with South Padre Island.

When bolded, the term **"barges"** means the NM-315, VLB-9182, ACBL-9933B and VLB-9173. Otherwise, the term refers generically to any barges.

The term **"allision"** means the September 15, 2001 event in which the T/V BROWN WATER V was towing the **barges** in navigable waters in or near Port Isabel, Texas, when the flotilla struck one of the supports of the **Causeway**, causing several 80-foot sections of the **Causeway** to collapse into the Laguna Madre Channel.


## REQUEST FOR PRODUCTION NO.1:

All rough logs, smooth logs, scratch pads, notes, billing logs, radio logs, engine room logs, maintenance logs, dispatcher logs, safety meeting reports, tow matrices, inspection reports, requisition forms, permits, and/or any other logs, reports, notes, forms, or other **documents** of any type or description relating to the activities of the **barges** and/or the BROWN WATER V or her crew during the months of August, September and October, 2001.


## REQUEST FOR PRODUCTION NO. 2:

Any and all Coast Guard CG-2692 forms, witness statements, diagrams, notes, reports, CG-2692B forms or other **documents** relating to any post-accident drug or alcohol testing, photographs, video tapes, audio tapes, charts, graphs, survey reports, investigation reports, letters of warning, reprimands, notices, subpoenas, or other **documents** that **you** gave to or received from the United States Coast Guard, the National Transportation Safety Board, or any other governmental entity in connection with this **allision**, as well as any such **documents** pertaining to any other allisions or to any collisions in which any vessels or barges owned, operated, crewed or controlled by **ACBL** have been involved during the period from 1992 to the present.

- 3 -



**REQUEST FOR PRODUCTION NO. 3:**

For the last five years, copies of all corporate income tax returns filed on behalf of **ACBL**, copies of all **ACBL** annual reports, and copies of all financial statements submitted by or on behalf of **ACBL** to any bank, financial institution, court, industry organization, customer, or governmental agency.

**REQUEST FOR PRODUCTION NO. 4:**

For the period from 1992 to the present, complete copies of any and all operations manuals, safety manuals, other manuals, procedures, books, booklets, programs, memos, training materials, checklists, matrices, audit reports, board of directors minutes, or other **documents** providing, explaining, discussing or critiquing: the rules, policies, or procedures governing the selection, loading, unloading, operation or navigation of **your** barges; the rules, policies, or procedures governing the selection, operation or navigation of vessels used to tow **your** barges; or the rules, policies or procedures governing **your** hiring, safety and training programs.

**REQUEST FOR PRODUCTION NO. 5:**

For the period from 1992 to the present, all **documents** that explain or govern the considerations, programs, rules, policies, procedures, or guidelines used by **ACBL** to determine what towing companies and what specific towing vessels would be used to tow barges owned, operated, controlled by or under contract to **ACBL**, specifically including, but not limited to all **documents** used to investigate, determine or verify the safety record, experience and competence of a particular towing company and of the crews of particular towing vessels, as well as all **documents** used to investigate, determine or verify the particular characteristics, sufficiency and seaworthiness of particular towing vessels.

**REQUEST FOR PRODUCTION NO. 6:**

For the period from 1992 to the present, all **documents** that relate to concerns, conditions, or potential dangers posed by underpowered tows and/or by current and wind in general, and/or concerns, conditions or potential dangers posed by specific geographic areas or specific waterways where **your** barges and vessels transit.

- 4 -



REQUEST FOR PRODUCTION NO. 7:

All promotional brochures, specification sheets, surveys, manuals, or other **documents** reflecting the capabilities, dimensions, equipment, horsepower and/or specifications of all vessels that have been used over the last ten (10) years to tow **your** barges in the area where the **allision** occurred (*i.e.*- the area between the Long Island Swing Bridge and the **Causeway**), specifically including, but not limited to all vessels owned, operated or controlled by **Brown Water**.

REQUEST FOR PRODUCTION NO. 8:

With respect to the voyage during which the **allision** occurred, any **documents** that reflect or discuss the characteristics of each **barge** (*i.e.*- length, width, draft empty and loaded, whether rake or box hull configuration, whether equipped with bow thrusters, steering assists, *etc.*); where each **barge** was picked up; the destination and scheduled arrival time for each **barge**; all scheduled pickups and drops; all actual pickups and drops; how each **barge** was loaded in terms of cargo, weight and draft; the order in which the tow was built; and the exact manner and configuration in which the **barges** were made up (*i.e.*- the type of rigging used, where the **barge** was positioned in the string and whether the **barge** was positioned stern first or bow first in the string).

REQUEST FOR PRODUCTION NO. 9:

The entire vessel file of the each of the **barges** including, but not limited to, the certificate of documentation and certificate of inspection, all **documents** relating to dry dockings, maintenance and repairs to the **barges**, all **documents** regarding the actions of the American Bureau of Shipping (ABS), American Waterways Operators (AWO) and/or any other classification society or industry organization relative to the **barges**, all **documents** relating to the actions of the Coast Guard and/or any other governmental agency relative to the vessel, and all other similar **documentation** for the **barges**.

REQUEST FOR PRODUCTION NO. 10:

All blueprints and all outboard profile drawings, general arrangement drawings, and other drawings of the **barges** as originally constructed, as they existed at the time of the **allision**, and as they exist now.

REQUEST FOR PRODUCTION NO. 11:

Any safety audits, questionnaires, policies, or other **documents** that reflect any effort by **ACBL** to monitor the operations, policies and/or safety record of **Brown Water**, its employees, and/or any vessels owned, operated or controlled by **Brown Water**.

- 5 -

**REQUEST FOR PRODUCTION NO. 12:**

Any and all photographs, videotapes, surveys, data compilations, diagrams, charts, graphs, and/or other **documents** or items purporting to show the vessels or structures involved in the **allision**; the condition or value of the involved vessels or structures either before or after the **collision**; and/or the appearance, surface conditions, or bottom conditions of the area where the **allision** occurred (*i.e.*- the area between the Long Island Swing Bridge and the **Causeway**).

**REQUEST FOR PRODUCTION NO. 13:**

Any insurance agreements or policies (including both primary and excess, regardless of limits), endorsements, declarations, schedules, terms, conditions, clauses, forms, warranties, notices, exclusions, certificates, memoranda of insurance, or other similar **documents** that may arguably provide **Brown Water** and/or **ACBL** and/or their employees coverage for any claims asserted against them in connection with the **allision**; that arguably provided coverage of any kind or nature to or on behalf of **Brown Water** or **ACBL** or their employees on that date; that verify or reflect the existence of insurance coverage in favor of **Brown Water** or **ACBL** or their employees on that date; that explain, describe or summarize the insurance portfolio in place for **Brown Water** or **ACBL** or their employees as of that date; or that **identify** any agents, brokers, producers, or other persons or entities that were involved in placing or attempting to place any insurance coverage for or on behalf of **Brown Water** or **ACBL** or their employees from 2000 to the present.

**REQUEST FOR PRODUCTION NO. 14:**

Any and all **documents** of any type or description relative to any settlement agreement, covenant not to sue, indemnity agreement, hold harmless agreement, "Mary Carter" agreement, joint defense agreement, or any other similar agreement which **you** have entered into with any persons or entities in connection with the **allision** or any damages arising therefrom.

**REQUEST FOR PRODUCTION NO. 15:**

Any and all tape recordings, transcripts, written statements, drawings, and/or other **documents** reflecting statements taken from any individual allegedly having information regarding any disputed fact, circumstance, claim or defense which is alleged with particularity in the pleadings of this suit or any consolidated suits, particularly including, but not limited to any which were taken or prepared within 72 hours of the **allision**; any which were turned over to or taken in the presence of any governmental agency, including, but not limited to the United States Coast Guard and/or the National Transportation Safety Board; and, any which were taken in the presence of any person not employed by **you** or acting as **your** representative within the meaning of Rule 26(b)(3) of the Federal Rules of Civil Procedure.

- 6 -

**REQUEST FOR PRODUCTION NO. 16:**

All weather reports, records, or other **documents** that include reference to the visibility, weather, sea, tide, current, wind and/or bottom conditions and/or water depth prevailing at the time of and in the area of the **allision** (*i.e.*- the area between the Long Island Swing Bridge and the **Causeway**).

**REQUEST FOR PRODUCTION NO. 17:**

Any contracts, charter agreements, invoices, job tickets, bills of lading, or other **documents** which state the terms and conditions under which the BROWN WATER V and/or the **barges** were or arguably were working, including any **documents** identifying the customers for whom the **barges** were moving cargo, the delivery schedule for the cargo, the remuneration that **ACBL** was to receive for the movement of the **barges**, and any **documents** reflecting the remuneration that **Brown Water** was to receive from **ACBL** for the tow during which the **allision** occurred.

**REQUEST FOR PRODUCTION NO. 18:**

Any and all **documents** reflecting the corporate structure of **ACBL** or the exact nature of the relationship (i.e., record owner, charterer, operator, etc.) between **you**, the **barges**, the BROWN WATER V, and/or **Brown Water**.

**REQUEST FOR PRODUCTION NO. 19:**

Any audio tapes, video tapes, transcripts, radio logs or other **documents** which reference any communications by, between or among the BROWN WATER V, any office of **Brown Water**, any office of **ACBL**, any other vessels, any docks, bridge tenders, or other shore bases, the United States Coast Guard, any other governmental entity, any rescuers, any victims, or any other person or entity during the time period from four hours before the **allision** to four hours after the **allision**.

**REQUEST FOR PRODUCTION NO. 20:**

An organization chart and job descriptions for all management positions and vessel crew positions at **ACBL**.

**REQUEST FOR PRODUCTION NO. 21:**

From 1992 to the present, all **documents** that mention **Brown Water** or that relate to the work that **Brown Water** does for **ACBL**, or the relationship between **Brown Water** and **ACBL**.

## REQUEST FOR PRODUCTION NO. 22:

All lawsuits, claims, or other **documents** relative to any other allisions, and/or any collisions in which any vessels owned, operated, crewed, or controlled by **ACBL** have been involved during the period from 1992 to the present.

## REQUEST FOR PRODUCTION NO. 23:

Any **documents** of any kind or description that discuss or reflect any changes that have been proposed or adopted with respect to any of **ACBL's** operations, policies, rules or procedures as a result of the **allision**.

## REQUEST FOR PRODUCTION NO. 24:

Any **documents** or tangible things**: identified** or mentioned in any of **your** answers to any of the accompanying interrogatories; **identified** or mentioned in any of **your** Rule 26 initial disclosures; that are in **your** possession, custody or control and are relevant to any disputed facts, circumstances, claims or defenses at issue in these consolidated suits; or that **you** may attempt to introduce as evidence during the trial of this suit and/or any consolidated suits.



REQUEST FOR PRODUCTION NO. 25:

The **barges** and all of their parts and equipment, for inspection at a mutually convenient time and place, in the same condition that she was in immediately following the **allision.** Included in this request is a request for inspection of any plates or other portions of the hull which were removed from the **barges** during repairs following the **allision.**

PROPOUNDED THIS 10th DAY OF MAY, 2002.

Respectfully submitted,

RAY R. MARCHAN
State I.D. No. 12969050
Federal I.D. No. 9522
WATTS & HEARD, L.L.P.
1926 E. Elizabeth
Brownsville, TX 78520
Phone: 956.544.0500
Fax:    956.541.0255
*Attorney for Claimants Lydia Zamora, Individually and as Representative of the Estate of Hector Martines, Jr., Gustavo Morales, Bigo's International, L.L.C.; Jacqueline Paddock, Individually and as Representative of the Estate of Chelsea Welch and as Next Friend of William B. Welch and Bridgette Goza*

HERIBERTO MEDRANO
State I.D. No. 13897800
Federal I.D. No. 5952
1101 West Tyler
Harlingen, TX 78550
Phone: 956.428.2412
Fax:    956.428.2495
*Attorney for Claimant Anita Harris, Individually, as Next Friend of Victor Justin Harris and as Representative of the Estate of Robert V. Harris*

- 9 -

# SCHIRRMEISTER AJAMIE

A REGISTERED LIMITED LIABILITY PARTNERSHIP
PENNZOIL PLACE SOUTH TOWER
711 LOUISIANA, SUITE 2150
HOUSTON, TEXAS 77002
(713) 360-1600
FAX (713) 860-1699
www.salawfirm.com

S. MARK STRAWN
mstrawn@salawfirm.com

197.01                                                                July 3, 2002

**BY FACSIMILE**
504.582.8583

Glenn G. Goodier
Jones Walker
2016 St. Charles Avenue
New Orleans, LA 70170-5100

Re:    *In Re: Brown Water, In Re: American Commercial*, In the United States
       District Court for the Southern District of Texas, Brownsville Division,
       CA No. B-01-157

Dear Mr. Goodier:

I was disappointed in your responses to the Claimants' master set of written discovery. ACBL has objected to virtually every request. For the most part your objections are without merit, and some are clearly frivolous. For example ACBL objected to producing insurance related information, and misrepresented that Rule 411 of the Federal Rules of Evidence addresses the discovery of insurance.

More importantly, and without discussing each discovery request, you have limited your responses to the date of the allision, refused to produce information except as regards ACBL's relationship with Brown Water Marine, and refused to produce any information regarding management personnel other than to identify current corporate officers by title.

This is obviously unacceptable in the context of a limitation of liability proceeding. While it is beyond the scope of this letter to set out all of the deficiencies in your answers, I have attached a draft Motion to Compel which discusses these deficiencies in more detail. Please call me as soon as you receive this letter so that we may discuss supplementation of your discovery responses. In light of our current schedule to begin depositions of ACBL employees on July 15th, if we have not been able to reach an agreement, I intend to file the Motion to Compel on Monday, July 8th.



EXHIBIT
3

SCHIRRMEISTER AJAMIE, L.L.P.

-2-                                                              July 3, 2002


         I look forward to hearing from you at your earliest convenience.  And with best regards I
remain

                                        Very truly yours,


                                        S. Mark Strawn

SMS:dsp
cc:      Michael Watts
         361.887.0055 Fax

         Heriberto Medrano
         956.428.2495 Fax

         Jack F. Gilbert
         512.472.3855 Fax

IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF TEXAS
BROWNSVILLE DIVISION

| | | |
|---|---|---|
| IN RE THE COMPLAINT AND | § | |
| PETITION OF BROWN WATER | § | C.A. NO. B-01-157 |
| TOWING I, INC., AS OWNER, AND | § | (Subject to Rule 9(h) |
| BROWN WATER MARINE SERVICE, | § | of the Federal Rules |
| INC., AS BAREBOAT CHARTERER, OF | § | of Civil Procedure) |
| THE BROWN WATER V, ITS ENGINES, | § | Admiralty |
| TACKLE, ETC. IN A CAUSE OF | § | |
| EXONERATION FROM OR | § | |
| LIMITATION OF LIABILITY | § | |

Consolidated with:

| | | |
|---|---|---|
| IN THE MATTER OF AMERICAN | § | |
| COMMERCIAL LINES LLC AS OWNER | § | |
| and AMERICAN COMMERCIAL BARGE | § | C.A. NO. B-02-004 |
| LINE LLC AS CHARTERER OF THE | § | (Subject to Rule 9(h) |
| BARGES NM-315, VLB-9182, | § | of the Federal Rules |
| ACL-9933B, VLB-9173, PRAYING | § | of Civil Procedure) |
| FOR EXONERATION FROM AND/OR | § | Admiralty |
| LIMITATION OF LIABILITY | § | |

**CLAIMANTS' FIRST MOTION TO COMPEL DISCOVERY
FROM AMERICAN COMMERCIAL BARGE LINES, LLC
AND AMERICAN COMMERCIAL LINES, LLC**

The undersigned Claimants file CLAIMANTS' FIRST MOTION TO COMPEL

DISCOVERY FROM AMERICAN COMMERCIAL BARGE LINES, LLC AND AMERICAN

COMMERCIAL LINES, LLC, pursuant to Rule 37(a) of the Federal Rules of Civil Procedure, and

would show the following:

**I.
BACKGROUND**

The Court is already familiar with this case. Accordingly, Claimants will discuss the factual

background only as it applies to this motion. As instructed by the Court, the parties are scheduling

the depositions of ACBL witnesses during the second and third weeks of July, 2002. The Claimants have now received Petitioners American Commercial Barge Lines, LLC and American Commercial Lines, LLC's (collectively ACBL) Answer to Interrogatories and Responses to Requests for Production. (Copies are attached to the Appendix to this motion, at Tabs "1" and "2".) Unfortunately, ACBL has objected to virtually every interrogatory and request for documents,[1] and when answers are provided they are incomplete and subject to lengthy qualifications.

It should be axiomatic that the Claimants are entitled to a good faith, diligent search for responsive documents, and unqualified interrogatory answers that bind ACBL as of the time they are made. It makes little sense to go forward with depositions until adequate responses are received.

## REQUEST FOR EXPEDITED CONSIDERATION

The parties have tentatively planned to conduct depositions of ACBL witnesses during the week of July 15. Claimants have attempted to resolve these discovery disputes without Court involvement. Attached to the Appendix, at Tab 3 is a letter from claimants counsel to ACBL's counsel regarding supplemental discovery responses. Claimant's counsel has been informed that ACBL's counsel is unavailable during the week of July 1, and accordingly have not been able to discuss this motion formally. Claimants request expedited consideration of this motion, so that responsive documents can be received prior to the depositions currently scheduled to begin on July 15, 2002.

---

[1] ACBL makes two (2) pages of general objections, applicable to all interrogatories, and three (3) pages of general objections to requests for production. Additionally, only one (1) request for production (number 10 seeking blueprints and general arrangement drawings of the barges) is answered without specific objections. All interrogatories are answered subject to specific objections.

2

## III.
## SCOPE OF DISCOVERY

The Claimants are entitled to discovery of any matter, not privileged, that is relevant to any

claim or defense. *Rule 26(b)(1).* Relevant information need not be admissible if it appears

reasonably calculated to lead to the discovery of admissible evidence. *Id.*

In general, ACBL has limited their responses *geographically, by time, and by towing*

*company*, as follows:

**Geographically** - Some of the Claimants' requests seek discovery only related to the
area approaching the causeway where appropriate and relevant; other requests seek
information relating to all ACBL activities, nationwide. In general ACBL has limited
their responses to the area of the allision.

**Time** - In some areas (for example, identity of officers, directors and managers) the
Claimants have sought information for the period from 1992 to the present. ACBL
has responded with information limited to September, 2001.

**Towing companies** - Some requests seek information regarding ACBL's activities
with companies other than Brown Water Marine. ACBL has limited their responses
to work with Brown Water Marine.

If such limited requests can *ever* be justified, they certainly cannot be in the context of a

Limitation of Liability Proceeding. ACBL is seeking to limit its liability by claiming that even if

ACBL's negligence and unseaworthiness of its barges caused the allision, and ACBL is liable,

it should nevertheless be able to limit its liability because its negligence and unseaworthiness

occurred without ACBL's *privity and knowledge*". This inquiry mandates far-reaching discovery

because of the inherent nature of the issue presented by ACBL's claim of lack of lack of privity and

knowledge. The knowledge and privity inquiry will necessarily involve not only the identity and

knowledge of specific employees, agents and managers, but also a more searching inquiry into how

the company operates in terms of the formation of policy and the discretion and autonomy it affords

3

these employees, agents and managers.[2]    ACBL seeks to limit discovery to a snapshot of the company, a snapshot that includes only the time, location, and specific circumstances of this allision. ACBL's decision to seek the protection of limitations necessitates a much deeper inquiry into the company.

### III
## SPECIFIC DISCOVERY RESPONSES

A.    Interrogatories

1. Response to interrogatories 2, 3 and 24:

Claimants move the Court to compel complete answers to interrogatories 2, 3, and 24. Interrogatory 2 seeks the identity of Officers and Directors of ACBL from 1992 to the present. Interrogatory number 3 seeks the identity of all persons with primary managerial responsibility in specific relevant areas with ACBL from 1992 through the present.  Interrogatory number 24 asks ACBL to identify industry associations, organizations, or committees that ACBL has held membership in from 1992 to present.

With respect to each of these interrogatories ACBL has answered only with information as of the time of the allision. ACBL makes nearly identical objections regarding relevance, vagueness, materiality, and burdensomeness.  The requested material is not only relevant, it will go to the heart of the limitation issues of knowledge and privity, and wether this knowledge and privity can be imputed to the corporation.  The corporation only knows things through its managers and officers and it will be impossible for claimants to establish the state of knowledge of the

---

[2]*See generally, In Re Hellenic Inc.*, 252 F.3d 391, 395-96 (5th Cir. 2001) (regarding the fact-intensive nature of the court's decision to impute knowledge to the petitioner).

corporation at any given time, without knowing the identity of its managers, officers and directors. More importantly, it will be impossible to determine if the knowledge of any given individual should be "imputed" to the corporation without knowing the lines of communication and authority within the company. Membership in trade organizations will also reflect the state of knowledge of the corporation. Finally, it cannot be unduly burdensome to produce the names of managers, officers and directors as well as trade organizations that the company has belonged to for a period of ten (10) years. No burden has been shown in ACBL's discovery responses; however, even if the burden were substantial it would not be an *undue* burden because this is a limitation that ACBL accepted when it sought limitations. It will be ACBL's burden to establish lack of privity and knowledge. The requested material is essential to begin the process of uncovering the facts surrounding their claimed lack of knowledge and privity.

    2.    Interrogatories 19, 20 and 21:

In response to these interrogatories ACBL has restricted its answers to its relationship with Brown Water Marine and/or limited its answers as to time. Interrogatory number 19 asks whether ACBL is aware of any allision, collision or other marine casualties involving the vessels which it hired to transit the barges in question from 1992 through the present. ACBL makes its usual objections to relevancy, vagueness, materiality, and burdensomeness; and limits its answer to ACBL's information regarding Brown Water owned vessels. The requested material goes directly to the core issues of ACBL's knowledge of the hazards of the waterway in question, as well as the seaworthiness of the vessels hired to transit that area, and the competency of their crews. Claimants request ACBL be required to answer the interrogatory, as written, including information regarding all vessels.

Interrogatory number 20 asks ACBL to identify all other towing companies that had the capacity of moving barges in area in question on September 15-16, 2001. ACBL has made its usual objection to relevance, vagueness, and burdensomeness and has provided a non-answer, stating that "any qualified towing company that had a towing vessel available could have towed barges in the area during the time period described." The answer is simply a restatement of the question. The claimants are not asking for information that ACBL does not have. If ACBL does not know of any other towing companies in the area they should say so. However, if there are other towing companies operating in the area, which they utilize to push their barges, then they should so state.

Interrogatory 21 seeks information for the past 20 years regarding every incident in which an ACBL barge struck a bridge or other fixed structure. After making its usual objections to relevancy, vagueness, and burdensomeness ACBL responded by limiting its answer to a ten (10) year period, and only to the incidents involving Brown Water Marine. The requested information is clearly relevant. Incidents involving other towing companies may directly effect the issue of ACBL's knowledge of the danger of the condition which caused this allision. For example, in their Responses to Requests for Production, ACBL claims that they have no documents regarding the danger of underwater crossings. Claimants should have discovery of other casualties to show that ACBL is aware of such dangers.

3. Interrogatories 4, 7,8,16,17 and 22.

The above referenced interrogatories have been answered by ACBL. Unfortunately, the answers are subject to lengthy objections, including vagueness, which leave open the possibility that ACBL will later claim that they did not understand the interrogatories, or somehow should not be bound by their answers. Accordingly, although claimants acknowledge that ACBL has answered

6

these interrogatories, claimants move that ACBL's objections be overruled so that claimants may rely upon the answers.

B. Requests for Production

    1. Responses to Request for Production 5, and 11:

    Request for Production 5 seeks documents relating to ACBL's policies for selecting and investigating towing companies for safety, experience and competency. Request for production 11 seeks safety audits, questionnaires, policies or other documents that ACBL used regarding Brown Water, and its vessels. In response to both of these requests, ACBL has produced the five (5) page document attached as App. TAB 4, which ACBL purports to be an audit. As can be readily seen, the document is incomplete consisting of a three (3) page "Summary of Vessel audits," and a one (1) page "Summary of Management Audit." It is unsigned and bears the handwritten date "March 2000". The document appears to be a draft summary, rather than a complete audit. Obviously, ACBL cannot produce partial documents in response to requests for Production. Claimants must assume that this is the only audit of Brown Water in ACBL's possession. Nevertheless, Claimants are entitled to receive the full documents including all of the auditors' field notes, the complete text of the audit report and any drafts or rewrites.

    ACBL's response to Interrogatory 5 is also incomplete because it is limited to the Brown Water audit. In addition to a complete copy of the Brown Water audit, claimants request the Court order ACBL to produce any audits in its possession regarding other towing companies. These materials are obviously relevant regarding ACBL's decision to hire Brown Water rather than other available towing companies.

    2. Responses to Request for Production number 13:

7

Response to request for Production 13 seeks insurance agreements and policies, including endorsements, declarations, etc. ACBL has lodged numerous objections to this request. Subject to these objections they have noted that their counsel has provided a letter setting out the available insurance coverage, and also stating that ACBL and ACL's insurance policies will be available for inspection at their offices in Jeffersonville, Indiana. ACBL has not provided the other insurance related documents that were requested, and their response makes no provision for producing documents other than the insurance policies.

ACBL's numerous objections to producing these documents are frivolous. For example, ACBL indicates that the request would include the health and disability insurance of their employees. This is clearly not called for. The request clearly states that it is seeking insurance related documents that may provide coverage for Brown Water and/or ACBL or any of their employees, "for any claims asserted <u>against them in connection with the allision</u>." (Emphasis added) ACBL also misrepresents Federal Rule of Evidence 411, claiming that it "limits the type of information which may be obtained regarding insurance and *** expressly prohibits discovery of other facts concerning ACBL's insurance coverage." In fact, Federal Rule of Evidence 411 simply states the general rule, and exceptions regarding the admissability of insurance. It has nothing to do with discoverability. Clearly this is simply another attempt on ACBL's part to delay producing material that is clearly discoverable.

    3.  Request for Production 18:

    Request for Production 18 seeks the following documents:

> Any and all **documents** reflecting the corporate structure of **ACBL** or the e x a c t
> nature of the relationship (*ie*. record owner, charter, etc.) between **you**, the **barges**,
> the Brown Water V and/or **Brown Water.**

8

Again ACBL enters a number of objections including ambiguity, relevancy, etc. Clearly the materials are relevant, given the nature of limitations, and the need to establish the lines of authority and reporting within the corporation.

Subject to it's objections, ACBL has produced a limited number of documents including its Certificate of Formation, and the Certificates of Documentation of the barge as well as charters for two of the barges. None of the material produced reflects the corporate structure of ACBL, as requested. Claimants move the court enter an order compelling ACBL to produce the requested documents.

4. Responses to Request for Production 22:

Request for production 22 seeks:

All lawsuits, claims, or other **documents** related to any other allisions and/or collisions in which any vessels owned, operated, crewed, or controlled by **ACBL** have been involved during the period from 1992 to the present.

Again, ACBL enters a number of objections which have been dealt with previously. ACBL limits their responses to instances in which Cleco Water was towing ACBL barges. Obviously, documents regarding all collisions and allisions are relevant within the context of a limitation proceeding in which ACBL denies knowledge of the dangerous conditions which caused this casualty. Claimants request that ACBL be ordered to produce the requested material.

5. Request for Production 2:

This request seeks incident reports, witness statements, and other documents regarding any other allisions or collisions of vessels or barges owned, crewed, or controlled by ACBL from 1992 through the present. After numerous objections, ACBL claims that they do not have such material regarding the allision at issue in this suit. ACBL does not respond with respect to other allisions or

9

collisions. As stated previously, this material is clearly relevant, in fact it is key, to establishing ACBL's knowledge that conditions such as those present in this case have caused other casualties. ACBL should be ordered to produce the requested material.

6. Request for Production 4:

This request seeks copies of operations manuals, safety manuals and other procedures in a number of areas. After numerous objections, ACBL has produced the certain manuals applicable to its towing vessels. Claimants request that ACBL be required to respond fully, to these requests, as requested, from 1992 through the present. Additionally, claimants move the Court overrule ACBL's objections. If ACBL has no responsive documents, other than the manuals which it has produced, then claimants are entitled to have an unambiguous response this effect.

7. Response to Request for Production 6, 7, 10,

ACBL's responses to the above referenced requests are made "subject to" lengthy objections. In some cases ACBL has indicated that it has no responsive documents and in others it has produce a small number of documents. ACBL's objections are unfounded and claimants request they be overruled so that claimants know that ACBL has conducted a diligent search and produced all responsive documents or that none exist.

Wherefore, premises considered, the undersigned claimants request the court enter the attached order compelling ACBL to produce responsive documents, and for such other and further relief as to which claimants may show themselves justly entitled.

Respectfully submitted,

# JONES WALKER

Glenn G. Goodier
Direct Dial 504-582-8174
Fax 504-582-8010
ggoodier@joneswalker.com

July 5, 2002

**VIA TELEFAX NO. (713) 860-1699**

Mr. S. Mark Strawn
Schirrmeister Ajamie
Pennzoil Place - South Tower
711 Louisiana, Suite 2150
Houston, Texas  77002

      Re:    American Commercial Barge Line LLC -
               M/V BROWN WATER V and Tow in
               Collision with Queen Isabela Causeway,
               South Padre Island, Texas
               September 15, 2001
               Our File No.:  94547-00/00775

Dear Mr. Strawn:

       On my return to the office this afternoon I received your letter and draft motion. As you know, I have been out of town.  I tried to call you on my return to discuss this, however, you were not available.  I must be in Chicago on Monday and Tuesday, however, will be available to discuss this with you on Wednesday, July 10, 2002.

       Your letter states that you intend to file your motion on Monday, July 8, 2002. Your motion states that you believe that it "makes little sense" to go forward with the depositions on July 15, 2002 "until complete responses are received".  Are you cancelling the depositions for a third time?  Please let me know immediately so I can notify the two available witnesses.



JONES, WALKER, WAECHTER, POITEVENT, CARRÈRE & DENÈGRE L.L.P.

201 ST. CHARLES AVENUE  NEW ORLEANS, LOUISIANA 70170-5100  504-582-8000 · FAX 504-582-8583 · E-MAIL info@joneswalker.com · www.joneswalker.com

N0848689.1      BATON ROUGE   HOUSTON   LAFAYETTE   MIAMI   NEW ORLEANS   WASHINGTON, D.C.

Mr. S. Mark Strawn
Schirrmeister Ajamie
July 5, 2002
Page 2

      With kindest regards, I remain

                      Very truly yours,

                            Glenn G. Goodier

GGG/dr
cc:    **ALL VIA UNITED STATES MAIL**
      Mr. Ray R. Marchan
      Jack F. Gilbert
      Mark J. Spansel
      Leslie D. Cassidy, III
      Will W. Pierson
      James B. Manley
      John D. Franz
      J. Chad Gauntt
      William Q. McManus
      Veronica Farias
      Raymond Thomas/Andres Gonzalez
      Julian Rodriguez, Jr.
      Thomas E. Quirk
      Cliff Garrard
      Jim S. Hart
      Frank Enriquez
      Richard Leo Harrell
      J. A. Magallanes
      Geoffrey Amsel

**VIA FIRST CLASS MAIL:**

John & Mary McCoy
514 Brookside Pass
Cedar Park, TX  78613

N0848689.1



# JONES WALKER

Glenn G. Goodier
Direct Dial 504-582-8174
Fax 504-582-8010
ggoodier@joneswalker.com

July 11, 2002

## VIA TELEFAX NO. (713) 860-1699

Mr. S. Mark Strawn
Schirrmeister Ajamie
Pennzoil Place - South Tower
711 Louisiana, Suite 2150
Houston, Texas  77002

Re:  American Commercial Barge Line LLC -
M/V BROWN WATER V and Tow in
Collision with Queen Isabela Causeway,
South Padre Island, Texas
September 15, 2001
Our File No.: 94547-00/00775

Dear Mr. Strawn:

I am in receipt of your July 11, 2002 fax with respect to our discussions regarding discovery issues. The purpose of this letter is to comment on the specific discovery issues mentioned in your letter and, in some instances, to correct some misunderstandings.

### INTERROGATORIES

Interrogatory No. 2:   I agreed to ask ACBL if they had records giving this information and, if so, I would amend our answer.

Interrogatory No. 3:   I agreed to ask ACBL if they had records which would provide the information necessary to respond to this interrogatory, beyond the response already given.



**EXHIBIT 5**

JONES, WALKER, WAECHTER, POITEVENT, CARRÈRE & DENÈGRE L.L.P.

201 ST. CHARLES AVENUE · NEW ORLEANS, LOUISIANA 70170-5100 · 504-582-8000 · FAX 504-582-8583 · E-MAIL info@joneswalker.com · www.joneswalker.com

N0851200.1   BATON ROUGE   HOUSTON   LAFAYETTE   MIAMI   NEW ORLEANS   WASHINGTON, D.C.

Mr. S. Mark Strawn
Schirrmeister Ajamie
July 11, 2002
Page 2

**Interrogatories Nos. 19 and 20:**  I agree that we have not reached an agreement. I agree to revisit these two interrogatories with ACBL but have not as yet agreed to produce any additional documents or to amend our answer nor to waive any objections made.

**Interrogatory No. 20:**  I agree to ask ACBL if this information is available, and, if so, I will amend our answer.

**Interrogatory No. 24:**  I am told by ACBL that they have no information beyond that previously provided as to organizations they belong to or may have belonged to for the last ten (10) years.

## REQUEST FOR PRODUCTION OF DOCUMENTS

**Request for Production No. 5:**  I agree to discuss production of additional audits with ACBL.  Once I have had this discussion with ACBL, I will be in a better position to advise whether or not these audits are readily available, if there is a difficulty in searching, etc.

**Request for Production No. 11:**  I have confirmed that the audit by Marine Resources done in March of 2000 which was produced in Request for Production No. 11 is the entirety of the audit report provided by Marine Resources.  ACBL has no other documents regarding this audit.

N0851200.1

Mr. S. Mark Strawn
Schirrmeister Ajamie
July 11, 2002
Page 3

**Request for Production No. 13:**   I will be sending a Confidentiality Agreement with respect to the production of the insurance policies providing coverage for the claims made in this case.  I am in the process of having the premium information redacted from those policies.  Once the Confidentiality Agreement is signed and returned to me, I will forward the insurance documents to Mr. Medrano as agreed. If Mr. Medrano shares the insurance information with any other party, the Confidentiality Agreement will require that the party receiving or reviewing the information will have to also sign.

**Request for Production No. 18:**   After you defined what was meant by "corporate structure" of ACBL, I agreed to put something together that responds to your definition of corporate structure.

**Request for Production No. 22:**   I agreed that we have not reached an agreement and that I would discuss this further with ACBL without waiving any objections that we have previously made.

**Request for Production No. 2:**   We have fully responded with respect to Request for Production No. 2 as it relates to the accident in question.  The remainder of Request for Production No. 2 is very similar to Request for Production No. 22 and my response is similar.

N0851200.1

Mr. S. Mark Strawn
Schirrmeister Ajamie
July 11, 2002
Page 4


With respect to the privilege log, as we discussed, my recollection at the time was that the only documents that were not produced were those documents that would be protected by the attorney-client privilege, the attorney-work product privilege, and/or material produced in anticipation of this litigation or as a result of this litigation which, you would not expect to be produced. I will again look at the documents, and if there are any that fall outside of these, I will provide a privilege log.

I am somewhat confused by your statement that if responsive documents are later identified but withheld pursuant to the attorney-client privilege that I should provide a log. I am not sure that I have to provide you with a log of every report that I write to my client. Let's discuss this further.

I thought our conference call was very amicable and we worked diligently to attempt to resolve the issues involving discovery. I look forward to speaking with you further on this.

With kindest regards, I remain

Very truly yours,

Glenn G. Goodier

GGG/dr

cc:    **ALL VIA UNITED STATES MAIL:**

Mr. Ray R. Marchan
Mikal C. Watts
Jack F. Gilbert
Mark J. Spansel
Leslie D. Cassidy, III
Will W. Pierson

N0851200.1

Mr. S. Mark Strawn
Schirrmeister Ajamie
July 11, 2002
Page 5


      James B. Manley
      John D. Franz
      J. Chad Gauntt
      William Q. McManus
      Veronica Farias
      Raymond Thomas/Andres Gonzalez
      Julian Rodriguez, Jr.
      Thomas E. Quirk
      Cliff Garrard
      Jim S. Hart
      Frank Enriquez
      Richard Leo Harrell
      J. A. Magallanes
      Geoffrey Amsel

## VIA UNITED STATES MAIL:

John & Mary McCoy
514 Brookside Pass
Cedar Park, TX  78613


N0851200.1

# JONES WALKER

Glenn G. Goodier
Direct Dial 504-582-8174
Fax 504-582-8010
ggoodier@joneswalker.com

July 17, 2002

Mr. Heriberto (Eddie) Medrano
1101 West Tyler
Harlingen, Texas  78550

   Re: American Commercial Barge Line LLC -
     M/V BROWN WATER V and Tow in
     Collision with Queen Isabela Causeway,
     South Padre Island, Texas
     September 15, 2001
     Our File No.:  94547-00/00775

Dear Mr. Medrano:

   Attached are two copies of the Confidentiality Agreement we discussed.  Please sign both copies, return one to me and retain one.  Please insure that the requirements of this agreement are maintained.  Once I have the signed copy I will send you a copy of the relevant insurance policies.

   This information is truly confidential and proprietary to ACBL.  I am sure you will insure that this information is properly protected.

   With kindest regards, I remain

      Very truly yours,

      Glenn G. Goodier

GGG/dr
Enclosures

**EXHIBIT**
**6**

JONES, WALKER, WAECHTER, POITEVENT, CARRÈRE & DENÈGRE L.L.P.

201 ST. CHARLES AVENUE · NEW ORLEANS, LOUISIANA 70170-5100   504-582-8000   FAX 504-582-8583 · E-MAIL info@joneswalker.com · www.joneswalker.com
N0853811.1  BATON ROUGE  HOUSTON  LAFAYETTE  MIAMI  NEW ORLEANS  WASHINGTON, D.C.

IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF TEXAS
BROWNSVILLE DIVISION

| | | |
|---|---|---|
| IN RE THE COMPLAINT AND | § | |
| PETITION OF AMERICAN | § | C. A. NO. B-02-004 |
| COMMERCIAL LINES LLC AS | § | Admiralty |
| OWNER, and AMERICAN | § | |
| COMMERCIAL BARGE LINES, LLC, | § | |
| AS CHARTERER OF THE BARGES | § | |
| NM-315, VLB-9182, ACL-9933B, | § | |
| VLB-9173, IN A CAUSE OF | § | Consolidated with |
| EXONERATION FROM OR | § | |
| LIMITATION OF LIABILITY | | |
| | | |
| IN RE THE COMPLAINT AND | § | |
| PETITION OF BROWN WATER | § | C. A. NO.  B-01-157 |
| TOWING I, INC., AS OWNER, and | § | Admiralty |
| BROWN WATER MARINE SERVICE, | § | |
| INC., AS BAREBOAT CHARTERER OF | § | |
| THE BROWN WATER V, ITS ENGINES, | § | |
| TACKLE, ETC. IN A CAUSE OF | § | |
| EXONERATION FROM OR | § | |
| LIMITATION OF LIABILITY | § | |
| | | |
| IN THE MATTER OF DEERE CREDIT, | § | C. A. NO. B-02-125 |
| INC. (FORMERLY SENSTAR FINANCE | § | (Subject to Rule 9(h) |
| COMPANY), AS OWNER OF | § | of the Federal Rules |
| THE BARGE NM-315, and STATE | § | of Civil Procedure) |
| STREET BANK AND TRUST COMPANY | § | Admiralty |
| OF CONNECTICUT, NATIONAL | § | |
| ASSOCIATION, AS OWNER | § | |
| TRUSTEE OF THE BARGE ACL-9933B | § | |
| AND NOT IN ITS INDIVIDUAL | § | |
| CAPACITY, AND GENERAL ELECTRIC | § | |
| CAPITAL CORPORATION, AS | § | |
| BENEFICIAL OWNER OF THE BARGE | § | |
| ACL-9933B, PRAYING FOR | § | |
| EXONERATION FROM AND/OR | § | |
| LIMITATION OF LIABILITY | § | |

{N0851427.1}

## CONFIDENTIALITY AGREEMENT

**WHEREAS,** the parties agree that insurance policies and other insuring information produced by American Commercial Lines LLC ("ACL") and American Commercial Barge Line LLC ("ACBL") in the captioned matters encompass confidential and privileged material, and that they wish to ensure that such confidential information is used only in this action, and no other action, and is not disclosed to persons including competitors, the public, or any party who has not signed this Confidentiality Agreement.

IT IS HEREBY AGREED:

I.     DEFINITIONS

Confidential information, as used herein, shall mean any and all insurance policies and other insuring information relating to ACL, ACBL and any of their parent or subsidiary companies, produced or exchanged in this litigation as well as any portion of any pleadings filed or any portion of any recorded testimony given in discovery or at trial of this case discussing or containing information covered by this agreement.

II.    APPLICATION OF THIS AGREEMENT

Confidential information shall be held in confidence by each qualified recipient to whom it is disclosed, shall be used only for purposes of this action, and no other action, shall not be used for any business purpose, and shall not be disclosed to any person who is not a qualified recipient.  All produced confidential information shall be carefully maintained so as to preclude access by persons who are not qualified recipients.

III.    QUALIFIED RECIPIENTS

As used herein, the term "qualified recipients" shall include only the following:

A.    Counsel and law firms for each party and the staff of counsel for each party, as necessary; and

B.    Persons, other than legal counsel, who have been retained by a party as an outside expert witness for purposes of this lawsuit.

Prior to disclosure of any confidential information to any person, counsel shall show each person a copy of this agreement and each such person shall sign a copy of this agreement acknowledging his or her understanding and agreement to comply with its terms.

IV.    DESIGNATION OF CONFIDENTIAL INFORMATION

In the case of documents and the information contained therein, designation of confidential information shall be made by placing the following legend on the face of the document:  CONFIDENTIAL

V.    RESTRICTIONS ON DISCLOSURE

1.    Information and/or material designated as confidential, or pleadings containing such information, or portions of any recorded testimony containing such information or notes regarding any matter contained in the documents shall not be disclosed to any person who is not a qualified recipient.

2.    All persons receiving such confidential material pursuant to this Agreement shall not disseminate said information to anyone, or make public disclosure of

such information, or use such information, except for purposes of this action and as permitted by this agreement of further order of the court.

3.      Any transcribed testimony or evidence, whether at deposition or trial, containing such confidential information may be designated by the parties hereto as confidential information.  Confidential material disclosed in testimony given by deposition, trial or through pleadings filed in this action shall be filed in a sealed pleading or document.

4.      Any confidential material submitted, presented to, or filed with the court prior to trial shall be placed under seal and shall not be made available to persons other than as authorized by this agreement.

5.      Neither the provisions of this agreement nor any designation or failure to designate any particular document or information as confidential thereunder shall, in this action or in any other litigation, constitute a waiver of the parties' assertion of confidentiality with respect to any document or information covered or not covered by this agreement nor shall the provisions of this agreement or any designation or failure to designate any particular documents or things as confidential have any bearing on the admissibility or inadmissibility of evidence offered or objected to at trial.

6.      Any such confidential documents or information shall be used only for the purpose of this action.

7.      Prior to disclosure of confidential material to any qualified recipient, as defined in Part III above, such person shall sign a copy of this agreement as indicated.

8.      At the conclusion of this action, counsel for claimants shall return all confidential information to counsel for ACL and ACBL, without copying or annotation

of any kind.  Any notes containing information with respect to the documents shall be destroyed.

APPROVED:                    _____

HERIBERTO MEDRANO
1101 West Tyler Street
Harlingen, Texas  78550
Telephone:  (956) 428-2412
Telefax:  (956) 428-2495

DATED:                       _____

To be signed by all persons permitted access to confidential documents:

I hereby acknowledge review of or receipt of the information designated as confidential.  I certify my understanding that such information is provided to me pursuant to the foregoing Confidentiality Agreement.  I understand that I am to make no copies of the aforesaid documents and that it is to remain in my personal custody until I have completed my need for the documents, whereupon it and any notes made by me containing any of the said confidential information is to be returned to counsel who provided me with said materials.  I further agree to notify any stenographic or clerical personnel who are required to assist me of the terms of this agreement.

_____  DATE: _____   _____  DATE: _____

_____  DATE: _____   _____  DATE: _____

_____  DATE: _____   _____  DATE: _____

_____  DATE: _____   _____  DATE: _____

_____  DATE: _____   _____  DATE: _____

_____  DATE: _____   _____  DATE: _____

# IN THE UNITED STATES DISTRICT COURT
## FOR THE SOUTHERN DISTRICT OF TEXAS
### BROWNSVILLE DIVISION

| | | |
|---|---|---|
| IN RE THE COMPLAINT AND | § | C. A. NO. B-02-004 |
| PETITION OF AMERICAN | § | Admiralty |
| COMMERCIAL LINES LLC AS | § | |
| OWNER, and AMERICAN | § | |
| COMMERCIAL BARGE LINES, LLC, | § | |
| AS CHARTERER OF THE BARGES | § | |
| NM-315, VLB-9182, ACL-9933B, | § | |
| VLB-9173, IN A CAUSE OF | § | Consolidated with |
| EXONERATION FROM OR | § | |
| LIMITATION OF LIABILITY | § | |
| | | |
| IN RE THE COMPLAINT AND | § | |
| PETITION OF BROWN WATER | § | C. A. NO. B-01-157 |
| TOWING I, INC., AS OWNER, and | § | Admiralty |
| BROWN WATER MARINE SERVICE, | § | |
| INC., AS BAREBOAT CHARTERER OF | § | |
| THE BROWN WATER V, ITS ENGINES, | § | |
| TACKLE, ETC. IN A CAUSE OF | § | |
| EXONERATION FROM OR | § | |
| LIMITATION OF LIABILITY | § | |

## AMERICAN COMMERCIAL LINES, LLC AND AMERICAN COMMERCIAL BARGE LINE LLC'S
## SUPPLEMENTAL ANSWERS TO INTERROGATORIES
## AND RESPONSES TO REQUESTS FOR PRODUCTION OF DOCUMENTS

   **NOW INTO COURT**, through undersigned counsel, comes American Commercial

Barge Line LLC ("ACBL") and American Commercial Lines LLC ("ACL") and who, for

purposes of supplementing its original Answers to Interrogatories, on information and belief,

avers as follows:



{N0859387.1}

**INTERROGATORY NO. 2:**

Please identify all person(s) who have been officers and/or directors of ACBL, at any time from 1992 to the present.

**SUPPLEMENTAL ANSWER TO INTERROGATORY NO. 2:**

Without waiving any objections previously stated, ACL and ACBL amend their answer as follows:

A review of available records reveals that the following individuals served as corporate officers and/or directors of ACL and ACBL (or predecessor companies) during the period of time 1992 to present:

**ACL:**

 **Corporate Officers:**

 H. J. Bobzien, Jr. - Chairman & Chief Executive Officer

 M. C. Hagan - President & Chief Operating Officer

 M. A. Khouri - Senior Vice-President, General Counsel & Secretary

 K. W. Peters - Senior Vice-President

 F. J. Haendiges - Vice-President & Treasurer

 B. A. Slider - Controller

 L. L. Fleming - Assistant Secretary

 J. W. Snow - Chairman

 J. J. Wolff - Senior Vice-President & Chief Financial Officer

 B. A. Dean - Controller

 M. C. Strench - Assistant Secretary

 E. W. Herde - Assistant Secretary

 P. F. Brotzge - Assistant Treasurer

S. G. Lawler - Vice-President & Treasurer

J. L. Adams - Assistant Vice-President

A. P. Beier - Senior Vice-President & Chief Financial Officer

R. G. Burns - Assistant Secretary; General Counsel; Secretary

R. J. Moon - Assistant Secretary

R. B. Uber - Division President

P. S. Besson - Senior Vice-President

R. P. Herre - Division President

J. L. Adams - Assistant Vice-President

S. L. Hendricks - Assistant Secretary

C. B. Maddox - Assistant Secretary


**<u>Board of Directors:</u>**

M. G. Aron

H. J. Bobzien, Jr.

J. Ermer

M. C. Hagan

J. W. Stone

J. W. Snow

P. R. Goodwin

P. S. Besson

D. Baggs

E. Fitsimmons

P. Goodwin

E. A. Haberli

R. L. Huber

R. E. Mayberry, Jr.

D. F. Thomas

D. Wegstaff, III


**ACBL:**

**Corporate Officers:**

H. J. Bobzien, Jr. - Chairman

M. C. Hagan - President & Chief Executive Officer

T. E. Behringer - Senior Vice-President

J. W. Buky - Senior Vice-President

M. L. Harris - Senior Vice-President

M. A. Khouri - Senior Vice-President, General Counsel & Secretary

K. W. Peters - Senior Vice-President

W. N. Whitlock - Senior Vice-President

F. J. Haendiges - Vice-President & Treasurer

R. C. Broman - Vice-President

C. Brinkop - Vice-President

N. S. Ivey - Vice-President

C. R. Whitlatch - Vice-President

B. A. Slider - Controller & Assistant Secretary

B. F. Brotzge - Assistant Treasurer

L. L. Fleming - Assistant Secretary

D. J. Markquitz - Senior Vice-President

J. J. Wolff - Senior Vice-President & Chief Financial Officer

C. Brinkop - Vice-President

J. W. Buky - Vice-President

J. W. Farley - Vice-President

G. L. Fuller - Vice-President

R. B. Greenwell - Vice-President

L. J. Weas - Vice-President

B. A. Dean - Controller & Assistant Secretary

J. M. Fox - Assistant Vice-President

G. N. Hotz - Assistant Vice-President

D. D. Jaworski - Assistant Vice-President

C. W. Kinzeler - Assistant Vice-President

M. C. Strench - Assistant Secretary

E. W. Herde - Assistant Secretary

E. R. Donaldson - Vice-President

R. L. Gardner - Vice-President

S. J. Brooks - Assistant Vice-President

D. D. Jahnke - Assistant Vice-President

D. C. Ruschman - Assistant Vice-President

A. P. Beier - Senior Vice-President, Chief Financial Officer

E. R. Donaldson - Vice-President

M. K. Pepper - Vice-President

A. Y. Adams - Assistant Vice-President

D. D. Jahnke - Assistant Vice-President

R. G. Burns - Assistant Secretary, Vice-President - General Counsel

R. J. Moon - Assistant Secretary

P. S. Besson - Senior Vice-President

C. Brinkop - Vice-President

L. S. Baird - Vice-President & Treasurer

M. E. Kleopjel - Vice-President

S. Brooks - Assistant Vice-President

A. M. Adams - Vice-President

P. Kazunas - Vice-President

B. Schmidt - Assistant Vice-President

S. Henrichs - Assistant Secretary

C. B. Maddox - Assistant Secretary


**<u>Board of Directors:</u>**

H. J. Bobzien, Jr.

M. C. Hagan

M. A. Khouri

K. W. Peters

J. J. Wolff

A. P. Beier

P. B. Besson

## INTERROGATORY NO. 3:

Please identify all persons who have who have held any managerial position with ACBL. from 1992 to the present and, for each such person, describe his or her specific area(s) of responsibility. Your response should include, but not be limited to, all persons with any managerial responsibility in the following areas:

- Personnel (hiring, firing, personnel evaluation and other personnel functions);

- Health, Safety and/or Environmental (formulating or implementing safety policies and procedures, training programs, etc.);

- Operations (formulating or implementing operational policies, procedures and training; crewing, supplying and maintaining vessels and barges; assigning vessels and barges to particular jobs; dispatching vessels and barges; determining what vessels to use to perform particular tows; determining how to build and configure tows; and providing information to vessels regarding jobs, weather conditions, etc.);

- Sales (seeking jobs for the vessels and barges and negotiating the terms, conditions and contracts pursuant to which the vessels and barges work);

- Industry and Regulatory compliance (dealing with the Coast Guard and other governmental agencies on licensing, documentation, inspection and other regulatory issues, filing CG-2692 forms, dealing with industry associations, obtaining required permits, etc.) and;

- Insurance and risk management (placing insurance coverage, providing insurance certificates to customers, handling claims and lawsuits).

## SUPPLEMENTAL ANSWER TO INTERROGATORY NO. 3:

Without waiving its prior objections, and in supplement of its original answer and in agreement with counsel, ACBL provides the attached chart containing information with respect

to its current managers and with respect to those individuals who held the position prior to the current manager during the period requested.

Additionally, counsel has requested those persons involved in barge maintenance and boat maintenance, although not technically included in a corporate "structure" of "managers". They are as follows:

Barge Maintenance - Currently Kyle Watts, whose predecessor was Paul Book.

Boat Maintenance - Butch Barras for the entire time period requested.

## INTERROGATORY NO. 20:

In addition to Brown Water, please identify all other towing companies that had the capability of moving barges through the area between the Long Island Swing Bridge and the Causeway on September 15 - 16, 2001.

## SUPPLEMENTAL ANSWER TO INTERROGATORY NO. 20:

Without waiving its previously stated objections, ACBL supplements its previous answer as follows:

Since ACBL contacted Brown Water first with respect to towage of its barges and since Brown Water agreed to tow its barges, it does not know what other towing companies may have had towboats available to tow barges in the area in question. However, as Mr. Hoessle testified in his deposition, had Brown Water not been available, and since no ACL owned or ACBL operated tugs were available, he may have called Canal Barge Company, Eckstein Marine, Western Towing (Kirby) or Blessey Marine.

## INTERROGATORY NO. 24:

For the period from 1992 to the present, please list every industry association, organization or committee that ACBL has held membership in or been involved with (for example, American Waterways Operators, American Inland Mariners Association, Coast Guard

Towing Safety Advisory Committee, Greater New Orleans Barge Fleeting Association, etc.) and

identify the people within ACBL who are most familiar with each such association, organization

or committee.

**SUPPLEMENTAL ANSWER TO INTERROGATORY NO. 24:**

Without waiving its objections, ACBL supplements its previous answer as follows:

To the best of ACBL's knowledge, the organizations listed in its original answer to this

interrogatory are organizations that ACBL has belonged to at some period of time during the past

ten (10) years.

**SUPPLEMENTAL RESPONSES TO REQUEST
FOR PRODUCTION OF DOCUMENTS**

**REQUEST FOR PRODUCTION OF DOCUMENTS NO. 5:**

For the period from 1992 to the present, all **documents** that explain or govern the

considerations, programs, rules, policies, procedures, or guidelines used by **ACBL** to determine

what towing companies and what specific towing vessels would be used to tow barges owned,

operated, controlled by or under contract to **ACBL**, specifically including, but not limited to all

**documents** used to investigate, determine or verify the safety record, experience and competence

of a particular towing company and of the crews of particular towing vessels, as well as all

**documents** used to investigate, determine or verify the particular characteristics, sufficiency and

seaworthiness of particular towing vessels.

**SUPPLEMENTAL RESPONSE TO REQUEST FOR PRODUCTION OF DOCUMENTS
NO. 5:**

Without waiving its prior objections, ACBL supplements its response by attaching the

following audits done by Marine Resources at the request of ACBL of third-party independent

towers and in ACBL's possession:  Delaware Marine Corporation, ACE Marine Transportation,

Marine Inland Transportation, Eckstein Marine Service, Inc., Capital Towing Corporation, Holly

Marine Towing, Calumet River Fleeting, Inc., Kindra Lake Towing and Hoosier Marine.

Additionally, attached are audit reports done by Marine Resources at the request of Delaware

Marine and Kindra Lake Towing sent by them to ACBL.

## REQUEST FOR PRODUCTION OF DOCUMENTS NO. 18:

Any and all **documents** reflecting the corporate structure of **ACBL** or the exact nature of the relationship (*i.e.*, record owner, charterer, operator, etc.) between **you**, the **barges**, the BROWN WATER V, and/or **Brown Water**.

## SUPPLEMENTAL RESPONSE TO REQUEST FOR PRODUCTION OF DOCUMENTS NO. 18:

Without waiving its prior objections, and in accordance with agreement of counsel ACBL

supplements its answer as follows:  see Answer to Interrogatory No. 3 which shows the corporate

structure of ACBL requested by counsel.

Respectfully submitted:

GLENN G. GOODIER (#06130)
Jones, Walker, Waechter, Poitevent,
 Carrere &  Denegre, L.L.P.
201 St. Charles Avenue - 48th Floor
New Orleans, Louisiana  70170-5100
Telephone:  (504) 582-8174
Facsimile:  (504) 582-8010

LES CASSIDY
1020 Bank of America
500 North Water Street
Corpus Christi, Texas  78471
Telephone:  (361) 886-3253
Fax:  (361) 886-3299

{N0859387.1}                                                10

OF COUNSEL:

WOOLSEY & CASSIDY, P.C.
1020 Bank of America
500 North Water Street
Corpus Christi, Texas  78471
Telephone:  (361) 886-3253
Fax:  (361) 886-3299

## CERTIFICATE OF SERVICE

I hereby certify that a copy of the foregoing has been properly mailed to all known potential parties and/or their counsel on this ___ day of _____, 2002.

GLENN G. GOODIER

# JONES WALKER

Glenn G. Goodier
Direct Dial 504-582-8174
Fax 504-582-8010
ggoodier@joneswalker.com

August 7, 2002

Mr. S. Mark Strawn
Schirrmeister Ajamie
Pennzoil Place - South Tower
711 Louisiana, Suite 2150
Houston, Texas  77002

Re:    American Commercial Barge Line LLC -
M/V BROWN WATER V and Tow in
Collision with Queen Isabela Causeway,
South Padre Island, Texas
September 15, 2001
Our File No.:  94547-00/00775

Dear Mr. Strawn:

I enclose herewith American Commercial Lines, LLC and American Commercial
Barge Line LLC's Supplemental Answers to Interrogatories and Responses to Requests
for Production of Documents in the above-captioned matter.

With kindest regards, I remain

Very truly yours,

Glenn G. Goodier

GGG/dr

Enclosures

JONES, WALKER, WAECHTER, POITEVENT, CARRÈRE & DENÈGRE L.L.P.

201 ST. CHARLES AVENUE · NEW ORLEANS, LOUISIANA 70170-5100 · 504-582-8000 · FAX 504-582-8583 · E-MAIL info@joneswalker.com · www.joneswalker.com
BATON ROUGE    HOUSTON    LAFAYETTE    MIAMI    NEW ORLEANS    WASHINGTON, D.C.
N0860931.1

Mr. S. Mark Strawn
August 7, 2002
Page 2


**ALL VIA UNITED STATES MAIL**

cc (w/encls.): Heriberto (Eddie) Medrano
              Ray R. Marchan
              Jack F. Gilbert
              Mark J. Spansel
              Leslie D. Cassidy, III
              Will W. Pierson
              James B. Manley
              John D. Franz
              J. Chad Gauntt
              William Q. McManus
              Veronica Farias
              Raymond Thomas/Andres Gonzalez
              Julian Rodriguez, Jr.
              Thomas E. Quirk
              Cliff Garrard
              Jim S. Hart
              Frank Enriquez
              Richard Leo Harrell
              J. A. Magallanes
              Geoffrey Amsel
              Lamoine Holland

N0860931.1

# JONES WALKER

Glenn G. Goodier
Direct Dial 504-582-8174
Fax 504-582-8010
ggoodier@joneswalker.com

August 7, 2002

**VIA FEDERAL EXPRESS**

Mr. S. Mark Strawn
Schirrmeister Ajamie
Pennzoil Place - South Tower
711 Louisiana, Suite 2150
Houston, Texas  77002

Re:   American Commercial Barge Line LLC -
      M/V BROWN WATER V and Tow in
      Collision with Queen Isabela Causeway,
      South Padre Island, Texas
      September 15, 2001
      Our File No.:  94547-00/00775

Dear Mr. Strawn:

I enclose herewith a copy of the manual identified by Mr. Hoessle in his deposition containing various codes.  The manual is entitled The Barging System User Guide.  You incorrectly identified it as the Dispatching Operations Manual in your July 24, 2002 letter.  This book is referred to at pp. 234, 235; 291, and 292 of Mr. Hoessle's deposition.

I am providing a copy of this book to you even though it is not within the scope of the documents requested in the discovery propounded to my clients, and, is further being produced without waiving any objections.

Should any of the other counsel involved in this case wish to look at this book, I suggest they contact you for a copy.

You have also made an inquiry with respect to barge incident notifications (E-mails) which were referred to in Mr. Hoessle's deposition.  I am advised by my clients

JONES, WALKER, WAECHTER, POITEVENT, CARRÈRE & DENÈGRE L.

201 ST. CHARLES AVENUE · NEW ORLEANS, LOUISIANA 70170-5100 · 504-582-8000 · FAX 504-582-8583 · E-MAIL info@joneswalker

BATON ROUGE    HOUSTON    LAFAYETTE    MIAMI    NEW ORLEANS    WASHINGTON, D.C.

N0862209.1

EXHIBIT
8

Mr. S. Mark Strawn
August 7, 2002
Page 2

that these E-mails are deleted from the system after thirty (30) days. Accordingly, the only barge incident notifications currently on the ACBL E-mail System are those dating thirty (30) days from the current date. All others have been deleted from the system.

The ACBL "Vendor File" for Brown Water that you also requested in your July 24, 2002 letter has previously been produced.

You also requested "Operations Manuals and Procedures for the 24-hour Planning Guide" allegedly referred to by Mr. Hoessle in his deposition. I am sure you will recall that Mr. Hoessle testified that he had never seen any manual in the Planning Center because he does not work there. (Deposition, pp. 298-299). The Planning Center has no manuals or written procedures written by ACBL. The only material that might qualify as a manual that is maintained and referred to from time to time by the planners is the United States Coast Guard CHRIS Guide (Chemical Hazards Response Information System). This guide contains various information on over 1300 chemicals. You can obtain a copy of this from the United States Coast Guard, it is a public document. This guide is not within the scope of plaintiffs' discovery requests.

Finally, you asked for a list of the approximate 17 to 19 tugboats that ACL/ACBL might have operating in the Western Intracoastal Canal as referred to by Mr. Hoessle at p. 86 of his deposition. The following is a list of those vessels; two only operate in Louisiana and the remainder do not necessarily operate west of Bolivar:

| VESSEL | OPERATOR |
| --- | --- |
| M/V EVAN WHARTON | ACBL |
| M/V SHERYL DOBARD | ACBL |
| M/V JAMES PHILPOTT | DELAWARE MARINE |
| M/V TED EWING | DELAWARE MARINE |
| M/V JAKE HUFTY | DELAWARE MARINE |
| M/V ORLEANS | ACBL |
| M/V DORIS McKINNEY | McKINNEY TOWING |
| M/V RUSTY BARRILEAUX | DELAWARE MARINE |
| M/V DONALD CLARK | DELAWARE MARINE |
| M/V LAURA McKINNEY | McKINNEY TOWING |
| M/V WILLIAM BARNES | ACBL (LIQUIDS) |

N0862209.1

Mr. S. Mark Strawn
August 7, 2002
Page 3

| | |
|---|---|
| M/V D. O. DONHAM | DELAWARE MARINE |
| M/V VECTURIAN | ACBL |
| M/V REGINA ANN | ACBL |
| M/V Z. M. DELOACH | DELAWARE MARINE |
| M/V GENE HUFTY | DELAWARE MARINE |

### LOUISIANA ONLY

| | |
|---|---|
| M/V KENNY FAUGHN | ACBL |
| M/V D. W. CREPPEL | CREPPEL TOWING |

With kindest regards, I remain

Very truly yours,

Glenn G. Goodier

GGG/dr
Enclosure

### ALL VIA UNITED STATES MAIL

cc (w/o encl.):     Heriberto (Eddie) Medrano
                    Ray R. Marchan
                    Jack F. Gilbert
                    Mark J. Spansel
                    Leslie D. Cassidy, III
                    Will W. Pierson
                    James B. Manley
                    John D. Franz
                    J. Chad Gauntt

N0862209.1

Mr. S. Mark Strawn
August 7, 2002
Page 4

William Q. McManus
Veronica Farias
Raymond Thomas/Andres Gonzalez
Julian Rodriguez, Jr.
Thomas E. Quirk
Cliff Garrard
Jim S. Hart
Frank Enriquez
Richard Leo Harrell
J. A. Magallanes
Geoffrey Amsel
Lamoine Holland

N0862209.1

# The Barging System



# INTRODUCTION

The Barging System allows you to view and maintain barge information and to create reports which contain selected information.

If you have any questions or problems with this system or documentation, please call User Support at (812)288-0438 or extension 2438.

## System Guidelines

Please familiarize yourself with the following guidelines before using the Barging System.

*Getting Started*

1.  To access the Barging System, type 1 on the ACBL Online Main Menu Screen.
    The Barging Menu displays.



06-06-91

A-1400

**The Barging System**                                                                    **2**

There are several different masks which you may access in the
Barging System. Each mask is represented by a three-letter code.
The menu lists the code and the mode(s) available for each
masks. Each mask is explained in this manual. The tables near
the end of the manual are to be used as a reference tool for the
other sections.

The command line is the top line of the screen.

> To access a mask, there are three positions in the command
> line which you should fill:

KEY:              CODE:              MODE:

The information which you enter in each of these three fields
determines the information that will be retrieved from the
database.

What you can enter in each of these fields will differ depending
on each particular mask. (This is further explained in each
individual section.)

1.  Enter the data in the KEY: field.

2.  Press the (Tab) key to get to the CODE: field.

3.  Type the three letter code for the particular mask you wish to
    access.
    (The cursor automatically procedes to the MODE: field.)

4.  Type the intial for the mode you wish to access. A-Add,
    D-Delete, I-Inquire, U-Update.

5.  Press the (XMIT) key. (If you are in the Update, Add, or
    Delete mode, the cursor must be in the action-code or
    transmit position).

*Note:*              The action-code and transmit ((XMIT)) positions are at the bottom
                     right of the screen.
                     The action-code position is row 24, column 79.
                     The transmit position is row 24, column 79 or 80.

06-06-91

The transmit key on a personal computer (PC) is the ⌈Scroll Lock⌉ key, which is located near the top right of the keyboard. Therefore, any time you see the words "Press the ⌈XMIT⌉ key," you should use the ⌈Scroll Lock⌉ key if you are working on a PC.

Once you get to the appropriate mask, if you want to use the same mask but specify different data, just enter information in the KEY: and press ⌈XMIT⌉.

If you bring up a mask in the UPDATE mode, but you do not make any changes to the screen and you wish to call up a different screen, you need to tell the computer that you don't really wish to make changes to that screen. To do this, type the new information in the KEY:, *and/or* CODE:, *and/or* MODE: fields, type a B in the action-code position, and press the ⌈XMIT⌉ key.

Hot-expedite barge numbers blink.

No-reload barge numbers are in ▉Reverse Video▉.

Barges which are both no-reload *and* hot-expedite blink *and* they are in ▉Reverse Video▉.

On certain screens, there is a flasher-note indicator (in the F column). If there is a flasher note present on the Barge mask, there will be a blinking character in this column.

*Inquire*        All fields are unprotected on any inquiry screen, therefore, you may access any field (by using the cursor-arrow keys) to make changes. This *does not* actually make changes to the system, but it does make changes to the screen itself. (This may be helpful for screen-printing purposes.)

*Update*        Use the tab key to get to individual fields. The cursor can only be placed on fields which may be changed.

        If you update more than one line at a time and all lines are not all valid updates, the lines which are accepted will be protected (you will not be able to place the cursor on them). The cursor will be on the line which was not accepted.

06-06-91

The Barging System                                                          4

## AVAILABLE MASKS

| CODE | MODE | DESCRIPTION |
|------|------|-------------|
| AAA | IUP | Area Mask |
| AMA | A IU | Automatic Mile point Alpha Mask |
| AVN | IU | Automatic Vendor Number Mask |
| BBB | ADIU | Barge Mask |
| BIN | IU | Boat Information Mask |
| BKA | I | Assigned Booking Mask |
| BKN | A IU | Non-Outside Booking Mask |
| BKO | A IU | Outside Booking Mask |
| BKS | IU | Booking Schedule Mask |
| DQR | Mapper | Dispatcher Queued Report Mask |
| DTO | U | Drop Tow Mask (multiple) |
| DTW | U | Drop Tow Mask (single) |
| EST | IU | Estimated Time to Complete Mask |
| ETA | IU | ETA Speeds & Delays Mask |
| HST | A IU | Barge History Mask -Descending |
| INB | IU | Invoice Approval by Barge Mask |
| LOG | I | Deck Log Mask |
| MSG | A | Message Mask |
| OBP | IU | Outside Boat Position Mask |
| OOO | A IU | Freeform Order Mask |
| OVR | IU | Overrides |
| PBR | U | Pull Barge Report Mask |
| PDX | IUP | P.D.X. Order Mask |
| POS | I | Boat Position Mask |
| PTO | U | Pick-Up Tow Mask |
| REB | IU | Rebill Mask |
| REG | IU | On-Line Equipment Register Mask |
| SCR | U | Start Communications Report Mask |
| SPT | IU | Special Trade Mask |
| TTT | I | Boat Traffic Mask |
| TWH | IU | Tow History Mask |
| TWE | IU | Enroute Barges in Tow Mask |
| TWP | IU | Tow Pickup Mask |
| TWD | I P | Tow Diagram Mask |
| UDT | ADIU | User Definable Table Mask |
| XTO | U | Exchange Tow Mask |

06-06-91

A-1403

The Barging System                                                          5

## AVAILABLE MENUS

| CODE | MENU |
|------|------|
| BEX | BARGE EXPENSE |
| BIF | BOAT INFORMATION |
| BKN | BOOKING |
| BRG | BARGING |
| CRE | CREW DISPATCHING |
| MSC | MISCELLANEOUS |
| RPG | FLEET REPAIR |
| WFN | WFN (Watercom) |

06-06-91

## IN THE UNITED STATES DISTRICT COURT
## FOR THE SOUTHERN DISTRICT OF TEXAS
## BROWNSVILLE DIVISION

| | | |
|---|---|---|
| IN RE THE COMPLAINT AND | § | C. A. NO. B-02-004 |
| PETITION OF AMERICAN | § | Admiralty |
| COMMERCIAL LINES LLC AS | § | |
| OWNER, and AMERICAN | § | |
| COMMERCIAL BARGE LINES, LLC, | § | |
| AS CHARTERER OF THE BARGES | § | |
| NM-315, VLB-9182, ACL-9933B, | § | |
| VLB-9173, IN A CAUSE OF | § | Consolidated with |
| EXONERATION FROM OR | § | |
| LIMITATION OF LIABILITY | § | |
| | | |
| IN RE THE COMPLAINT AND | § | |
| PETITION OF BROWN WATER | § | C. A. NO. B-01-157 |
| TOWING I, INC., AS OWNER, and | § | Admiralty |
| BROWN WATER MARINE SERVICE, | § | |
| INC., AS BAREBOAT CHARTERER OF | § | |
| THE BROWN WATER V, ITS ENGINES, | § | |
| TACKLE, ETC. IN A CAUSE OF | § | |
| EXONERATION FROM OR | § | |
| LIMITATION OF LIABILITY | § | |

## AMERICAN COMMERCIAL BARGE LINE COMPANY'S
## SECOND SUPPLEMENTAL
## RESPONSES TO REQUESTS FOR PRODUCTION OF DOCUMENTS

NOW INTO COURT, through undersigned counsel, comes American Commercial

Barge Line Company and who, for purposes of supplementing its Responses to Request for

Production of Documents, on information and belief, avers as follows:

## REQUEST FOR PRODUCTION OF DOCUMENTS NO. 4:

For the period from 1992 to the present, complete copies of any and all operations

manuals, safety manuals, other manuals, procedures, books, booklets, programs, memos, training

materials, checklists, matrices, audit reports, board of directors minutes, or other **documents**

EXHIBIT
9

providing, explaining, discussing or critiquing: the rules, policies, or procedures governing the selection, loading, unloading, operation or navigation of **your** barges; the rules, policies, or procedures governing the selection, operation or navigation of vessels used to tow **your** barges; or the rules, policies or procedures governing **your** hiring, safety and training programs.

**SECOND SUPPLEMENTAL RESPONSE TO REQUEST FOR PRODUCTION OF DOCUMENTS NO. 4:**

Without waiving any objections previously made, see attached ACBL Boat Operations Manual which was superseded by the manuals previously produced.

Also attached is ACBL's Safety Rules Handbook with respect to crew safety onboard its operated vessels.

Respectfully submitted:

GLENN G. GOODIER (#06130)
Jones, Walker, Waechter, Poitevent,
 Carrere & Denegre, L.L.P.
201 St. Charles Avenue - 48th Floor
New Orleans, Louisiana 70170-5100
Telephone: (504) 582-8174
Facsimile: (504) 582-8010

LES CASSIDY
1020 Bank of America
500 North Water Street
Corpus Christi, Texas 78471
Telephone: (361) 886-3253
Fax: (361) 886-3299

OF COUNSEL:

WOOLSEY & CASSIDY, P.C.
1020 Bank of America
500 North Water Street
Corpus Christi, Texas  78471
Telephone:  (361) 886-3253
Fax:  (361) 886-3299

### CERTIFICATE OF SERVICE

     I hereby certify that a copy of the foregoing has been properly mailed to all known potential parties and/or their counsel on this _14th_ day of _August_ , 2002.

_____
GLENN G. GOODIER

# JONES
# WALKER

Glenn G. Goodier
Direct Dial 504-582-8174
Fax 504-582-8010
ggoodier@joneswalker.com

August 14, 2002

**VIA FEDERAL EXPRESS**

Mr. S. Mark Strawn
Schirrmeister Ajamie
Pennzoil Place - South Tower
711 Louisiana, Suite 2150
Houston, Texas 77002

Re:    American Commercial Barge Line LLC -
       M/V BROWN WATER V and Tow in
       Collision with Queen Isabela Causeway,
       South Padre Island, Texas
       September 15, 2001
       Our File No.: 94547-00/00775

Dear Mr. Strawn:

I enclose herewith American Commercial Barge Line Company's Second
Supplemental Responses to Requests for Production of Documents in the above-
captioned matter.

With kindest regards, I remain

Very truly yours,

Glenn G. Goodier

GGG/dr
Enclosures

JONES, WALKER, WAECHTER, POITEVENT, CARRÈRE & DENÈGRE L.L.P.

201 ST. CHARLES AVENUE · NEW ORLEANS, LOUISIANA 70170-5100 · 504-582-8000 · FAX 504-582-8583 · E-MAIL info@joneswalker.com · www.joneswalker.com
BATON ROUGE    HOUSTON    LAFAYETTE    MIAMI    NEW ORLEANS    WASHINGTON, D.C.

N0864997.1

Mr. S. Mark Strawn
August 14, 2002
Page 2


**ALL VIA UNITED STATES MAIL**

cc (w/encls.): Heriberto (Eddie) Medrano
Ray R. Marchan
Jack F. Gilbert
Mark J. Spansel
Leslie D. Cassidy, III
Will W. Pierson
James B. Manley
John D. Franz
J. Chad Gauntt
William Q. McManus
Veronica Farias
Raymond Thomas/Andres Gonzalez
Julian Rodriguez, Jr.
Thomas E. Quirk
Cliff Garrard
Jim S. Hart
Frank Enriquez
Richard Leo Harrell
J. A. Magallanes
Geoffrey Amsel
Lamoine Holland

N0864997.1

## AFFIDAVIT

**STATE OF INDIANA**

**COUNTY OF CLARK**

**BEFORE ME,** the undersigned authority, personally came and appeared:

### DUANE A. KROHN

who, after first being duly sworn, did depose and say:

I am employed by American Commercial Barge Line Company L.L.C. ("ACBL") as a Senior Risk Analyst. As such, I am familiar with the instant litigation. I was tasked with the responsibility of assisting counsel in responding to various discovery requests propounded by the claimants to ACBL and its parent, American Commercial Lines L.L.C. ("ACL"), and in so doing reviewed various ACBL documents and files and conferred with various ACBL employees.

I have reviewed Claimants' First Set of Interrogatories and Request for Production of Documents and have made extensive efforts and investigation to gather information and documents to assist ACBL/ACL's counsel in responding to this discovery.

ACBL's Risk Management Department is fully engaged in handling the day-to-day activities of the company as they relate to insurance and claim matters. The Risk Management Department is located in Jeffersonville, Indiana and has 4 Risk Analysts who are responsible for handling claim matters for the over 5,000 barges and 200 towboats owned and/or operated by ACL/ACBL, as well as terminals, fleets and shipyards owned by ACL and/or its subsidiaries.

The Risk Management Department maintains and handles files regarding various accidents involving ACL/ACBL towboats and barges as well as terminals, fleets and shipyards. This includes collisions, groundings, sinkings, cargo damage, fire, pollution, personal injury, death, strandings, shipyard accidents, terminal incidents, barge breakaways, incidents involving fleets, workers compensation claims, automobile accidents, etc. These files are not electronically maintained and exist in paper form only.

{N0865438.1}

1

**EXHIBIT**

**10**

The filing system used by the Risk Management Department generally identifies the files involving vessels by a vessel name or a barge number, date of incident, and if a third party is involved, the name of the third party, and perhaps the identity of the third party's vessel. The filing system usually does not identify the location, type of accident or incident involved or the cause of the accident or incident. The only way to ascertain this information is to manually review each file.

In addition to the files maintained by the Risk Management Department, if ACL/ACBL equipment is damaged and there is no claim file open because of the nature of the damage, the amount of the damage or other circumstances, information and files regarding such an incident would be handled by the boat or barge maintenance departments which are separate departments within ACBL, and that information may be located in the maintenance files for each of the 5,000 plus barges and over 200 towboats and may give no reference at all as to location of incident, type of incident, or cause of incident.

The only files maintained at ACL/ACBL's offices are current open files. All closed files are sent to an offsite storage/warehouse facility owned and operated by a third party record storage company. ACBL is not permitted to enter the premises to look into any of the boxes which are stored there nor does the facility provide any "space" for ACBL to look at its files at the storage facility. The boxes possibly containing claim information of the type sought by the claimants would be among the 4,000 plus boxes ACBL has in storage and it is estimated that approximately one-third of these boxes would contain claim/damage files. The cost ACBL is required to pay to the storage company to retrieve boxes from storage and to return the boxes into storage is $45.00 per box.

The storage company would deliver the boxes to a location designated by ACBL. ACBL does not have the facilities to store 1,000 plus boxes. ACBL would have to depend on the storage company's schedule to go into storage, select the boxes requested,

{N0865438.1}

2

pull the boxes from storage, and then truck them to a location where they would be held pending a manual search of each box to retrieve claim/damage files.

Depending on the damage or incident, any given claim or damage file might contain an accident report, a report to the United States Coast Guard, damage supports, related correspondence, expert reports, and if counsel is involved, various correspondence, reports and opinions prepared by counsel, much of which would be privileged information or attorney work product.

Interrogatory No. 19 requests that ACBL provide certain information for the 67 vessels listed in response to Interrogatory No. 18 that have over the past ten years towed ACBL barges in the general area where the collision occurred in this case. The interrogatory asks ACL/ACBL to "Describe and state the date and location of each such casualty, state the identity of all persons, entities and vessels involved, describe any claims, demands, lawsuits or Coast Guard actions that resulted from any such casualties." ACL/ACBL does not own or operate the majority of the vessels listed in response to Interrogatory No. 18 and therefore would not have information responsive, unless those vessels happened to be involved in a casualty with an ACL/ACBL barge or towboat. If ACL/ACBL has information responsive to this request other than in current open files, it would be contained in the over 1,000 boxes in storage and, since the identification of the file does not necessarily contain an identification of the third party vessel involved, each file would have to be reviewed.

Interrogatory No. 21 asks for information for the last twenty years and that ACBL should "Please describe each and every incident in which a barge owned, operated, chartered, or controlled by ACBL struck a bridge or other fixed structure, and for each such incident, indicate when and where the allision occurred, the identities of all parties and vessels involved, and if litigation resulted, the case name, court, docket number and outcome." ACBL does not maintain records for twenty years. As previously stated, the files are not maintained in such a manner that the file name would indicate the type of

incident that was involved and accordingly all files contained in storage would have to be retrieved and reviewed in the manner described herein.

Request for Production No. 22 requests "All lawsuits, claims or other documents relevant to any allisions and/or collisions in which any vessels owned, operated, crewed or controlled by ACBL have been involved in during the period from 1992 to present." As noted above, the filing system is not maintained in such a way that this information can be obtained without going through all of the boxes and all of the files contained in storage.

As noted above, in order to search the 1,000 plus boxes in storage, the storage company would be contacted and to deliver the boxes to ACBL. ACBL does not have sufficient storage space at its offices to accommodate all 1,000 plus boxes and does not have the personnel to undertake the tasks of reviewing the boxes to locate the claim files. Each box would have to be opened, reviewed and claim files removed. The files would then have to be reviewed by a Risk Analyst to determine if they are responsive to the request, and then by a lawyer to determine if there are privileged documents. If there are privileged documents, I am advised by counsel that a privilege log would have to be created. Even if ACBL had sufficient personnel to undertake this enormous task, which it does not, the process would be very expensive and would interfere with the daily operations and normal business function of the Risk Management Department and could take months to complete at a substantial cost.

In Claimants' Memorandum in Support of Motion to Compel Responses to Discovery they state that Mr. Hoessle in his deposition identified an "Operations Manual" for the Distribution Department. I discussed this with Mr. Hoessle and he informed me that the only document that he referred to with respect to the Distribution Department was an outdated book which contained various codes and/or abbreviations to be used in connection with the computer system. This book was not within the scope of any of Claimants' discovery requests. However, I obtained a copy of this book and it was

{N0865438.1}

4

provided to ACL/ACBL's counsel who in turn, as I understand, has now provided it to Claimants' counsel.

In Claimants' memorandum it is stated that Mr. Hoessle in his deposition stated that the 24 Hour Planning Center also had an Operations Manual and written procedures. In discussion with Mr. Hoessle, he told me that he had never seen such documents and had never used such documents. I further conferred with the 24 Hour Planning Center and found that they do not have an Operations Manual and written procedures. The only document that might be considered a "manual" that they do use from time to time is the United States Coast Guard CHRIS Code, a government document which contains information on over 1,300 chemicals which may be shipped by barge or a vessel. This document was not within the scope of any of Claimants' discovery requests.

In Claimants' memorandum they suggest that ACL/ACBL should have produced "barge incident notification e-mails" and "all boat e-mail messages." These documents were also supposedly mentioned in Mr. Hoessle's deposition. I checked with our computer department and was advised that these e-mail messages are maintained for only 30 days and are then deleted from the system and cannot be retrieved. Any paper copies of these documents which may which may pertain to a claim or damage incident and which someone may have printed and placed into a file might be contained in the 1,000 plus boxes in storage and/or in current open claim files maintained in the office. However, the procedures for reviewing the files outlined above would have to be followed.

_Duane A. Krohn_

DUANE A. KROHN

SWORN TO AND SUBSCRIBED BEFORE
ME, NOTARY PUBLIC, THIS __14th__ DAY
OF AUGUST, 2002.

_Karen K Welsh_

NOTARY PUBLIC

{N0865438.1}

KAREN R WELSH
NOTARY PUBLIC STATE OF INDIANA
CLARK COUNTY
MY COMMISSION EXP. DEC. 12,2007

5

**In The Matter Of:**

*THE COMPLAINT AND PETITION OF*
*BROWN WATER TOWING I, INC., AS OWNER,*
*AND BROWN WATER MARINE SERVICE, INC.,*
*AS BAREBOAT CHARTERERS, OF THE*
*BROWN WATER V, ITS ENGINES, TACKLE,*
*ETC., IN A CAUSE OF EXONERATION FROM*
*OR LIMITATION OF LIABILITY*

*AND CONSOLIDATED MATTERS*

Condensed transcript and word index
for the deposition of

**PATRICK D. HOESSLE**

taken on Monday, July 15, 2002

**GAUDET, KAISER & PEPPER, L.L.C.**
Board-Certified Court Reporters
Suite 2003, Pan-American Life Center
601 Poydras Street
New Orleans, Louisiana  USA 70130-6044
Telephone:  (504) 525-9100    Facsimile:  (504) 525-9109
Toll-Free:  (888) 525-9100

EXHIBIT
11

Page 234

1    not moving?
2        A.    That's right. There's --
3    There's cleaning codes, there's repairing
4    codes, and there are various loading and
5    unloading codes. There are codes that
6    set -- that indicate that the customer is
7    being billed for demurrage. So there's
8    demurrages and then codes that take it off
9    demurrage.
10       Q.    Is there a list that explains
11   all these codes so that we can read this
12   intelligently?
13       A.    Yeah. Yeah, we can probably --
14   We can probably get something.
15       Q.    Well, did you -- Is it just
16   called a list of codes, of status codes?
17       A.    It has to -- It has to -- Well,
18   yeah. I guess, yeah, you could ask for it
19   that way, yeah.
20       Q.    Okay.
21       A.    We have a -- a book that's very
22   confusing, and that's part of what
23   Mr. Loughmiller was teaching me when I
24   first started with the company is -- is
25   all these various codes, and it's all

Page 235

1    accounting-driven, and when is it
2    appropriate to use these codes.
3        Q.    What else is in that book?
4    That's a book you have in the dispatch
5    department?
6        A.    Yeah. It's an old -- It's an
7    old book. There's some of them floating
8    around. It has to do with our barging
9    system on -- on updating the barges.
10       Q.    And what's the name of that
11   book?
12       A.    Barge system manual, I'm
13   thinking. I really don't know what the --
14   Barging system manual, I think.
15       THE VIDEOGRAPHER:
16          Guys, I've got to go off the
17   record to change tapes.
18       MR. STRAWN:
19          All right.
20       THE VIDEOGRAPHER:
21          We're off the record, end of
22   tape 2.
23          (Whereupon a brief recess was
24   taken at this time.)
25       THE VIDEOGRAPHER:

Page 236

1          Stand by.
2          We're back on the record,
3    beginning tape 3.
4    EXAMINATION BY MR. STRAWN:
5        Q.    Okay. Mr. Hoessle, I want to
6    continue just briefly with the barge history
7    report. And if we can bring that up, that's
8    Exhibit 6 that we've been talking about.
9          And I see under the column
10   heading "Commodity," that's pretty obvious
11   what that is. I would -- But I want to make
12   sure I'm understanding. Sometimes it'll say
13   X and it'll give the commodity.
14          Does that mean it's been --
15       A.    It's empty.
16       Q.    In other words, it's empty --
17       A.    It's empty.
18       Q.    -- but it had that and needs
19   cleaning?
20       A.    That's right.
21       Q.    Okay.
22       A.    And if you see "MT," that
23   stands for empty but clean.
24       Q.    Okay.
25       A.    So at the very beginning when

Page 237

1    you see "MT/corn," that means it's -- corn
2    was the prior product, and it has been
3    cleaned.
4        Q.    All right. I got you.
5          Now, what -- There's a column
6    here that says -- It's either CD or ST. I
7    can't tell which. And it's got either WCs
8    under there or --
9        MR. GOODIER:
10          Right here. (Indicating)
11   EXAMINATION BY MR. STRAWN:
12       Q.    -- or MCs.
13          What's that? What does that
14   column mean?
15       A.    Oh, that's for the covers, the
16   cover condition.
17       Q.    Oh, with cover or no cover?
18       A.    W means that it -- or that's
19   the -- No. I'm sorry. That's the
20   condition. It means that it's washed. The
21   W means washed. It's -- Because where it
22   says "MT/corn," that means that it's -- corn
23   was the prior and it's clean, and it's been
24   washed, and it has covers, and the covers
25   are closed.

60 (Pages 234 to 237)

IN RE:
BROWN WATER TOWING I, INC.

PATRICK D. HOESSLE
July 15, 2002

Reported By:
M. H. GAUDET, JR., CCR, RMR

Page 250

1 is his title, Transportation Services, which
2 essentially means that river operations,
3 boat maintenance, and barge maintenance fall
4 under his directive.
5     Q.    So when you refer to the
6 operations group --
7     A.    Yes, sir.
8     Q.    -- is that group within
9 Transportation Services?
10     A.    It is.
11     Q.    Yes, sir.
12     A.    And so is maintenance, barge
13 maintenance and boat maintenance.
14     Q.    We were referring to, in
15 Exhibit 5 earlier, if we could put that
16 up --
17     MR. GOODIER:
18         I'll put it up if you tell me
19 what it is, please.
20     MR. SPANSEL:
21         It's the E-mail, I believe,
22 from --
23     MR. GOODIER:
24         Oh.
25     MR. SPANSEL:

Page 251

1         -- Kazunas.
2     MR. GOODIER:
3         If you give me my number, it
4 might help.
5     MR. LAIZER:
6         A-1191.
7     MR. GOODIER:
8         A-1191. I'm going to put this
9 back in the right order.
10     THE WITNESS:
11         Is this the E-mail from
12 Mr. Farley to Mr. Kazunas?
13     EXAMINATION BY MR. SPANSEL:
14     Q.    Right.
15         Now, up in the right-hand
16 corner there's a handwritten note that
17 appears to say "file in Brown Water file."
18         Does the company maintain files
19 on third-party carriers like Brown Water?
20     A.    Yes.
21     Q.    And what -- Would you explain
22 what such a file is and what kind of
23 information is kept in it?
24     A.    I haven't had any experience
25 with these, but I know that they keep a file

Page 252

1 with -- for all vendors, whether it be a
2 tower or a fleet or -- or anybody that we
3 have dealings with. I guess it's --
4     Q.    Okay. Is there a central file?
5     A.    I'm sorry?
6     Q.    Is it a central file that --
7     A.    There --
8     Q.    Excuse me. Let me just finish.
9         -- that various personnel will
10 send information to?
11     A.    I believe so. I've never
12 contributed, really, anything to any vendor
13 file. I'm not tasked with maintaining or
14 doing anything with that.
15         I believe right now that file
16 is being maintained by Allen Hect, the
17 individual who I spoke of who has made
18 the -- some visits to docks in different
19 places. But those files contain just
20 anything that may be pertinent to that --
21 that vendor.
22     Q.    Performance information?
23     A.    Performance information, rates;
24 just anything.
25     Q.    If I wanted to ask for that

Page 253

1 file, to whom would I direct that inquiry at
2 ACBL? Would it be Mr. Hect?
3     A.    I would -- I would say no.
4 That would be Mr. Kazunas or his new
5 successor, Mr. Bob Burns.
6     Q.    Okay. The lawyer that got
7 promoted to --
8     A.    Yeah.
9     Q.    -- operations?
10         Let me show you another
11 document that's a variation of the one we're
12 looking at now. We'll call this one next in
13 sequence. Is it number 8?
14     MR. STRAWN:
15         7.
16     MR. SPANSEL:
17         7.
18     MR. GOODIER:
19         Give me the number -- my number
20 on it.
21     MR. SPANSEL:
22         Your number, Glenn?
23     MR. LAIZER:
24         A-1192.
25     MR. SPANSEL:

601 Poydras Street, Suite 2003
New Orleans, LA 70130-6044

GAUDET, KAISER & PEPPER, L.L.C.
Board-Certified Court Reporters

Telephone: (504) 525-9100
Facsimile: (504) 525-9109

IN RE:                        PATRICK D. HOESSLE                Reported By:
BROWN WATER TOWING I, INC.         July 15, 2002          M. H. GAUDET, JR., CCR, RMR

Page 290

1    MR. GOODIER:
2        It's going to be number 7; is
3    that right?
4    MR. SPANSEL:
5        Number 8.
6    MR. GOODIER:
7        Oh, 8. I'm sorry. I missed
8    one.
9    EXAMINATION BY MR. SPANSEL:
10       Q.    Is the same true for this?
11   You've never seen it, never dealt with it,
12   you don't use it; is that correct?
13       A.    That's correct.
14       Q.    Okay. Let's now look at
15   another document, "Vessel Management Guide,
16   Work Practices." It's A-551.
17   MR. SPANSEL:
18       We're going to mark it as 9.
19   EXAMINATION BY MR. SPANSEL:
20       Q.    You've never seen that, never
21   dealt with it, don't use it in your
22   business; correct?
23       A.    No. I've never seen it, no.
24       Q.    Another document is the "Vessel
25   Management Guide, Vessel Operating

Page 291

1    Standards," A-730.
2    MR. SPANSEL:
3        We're going to mark it as
4    Exhibit 10.
5    EXAMINATION BY MR. SPANSEL:
6        Q.    You've never seen that either;
7    have you?
8        A.    No. (Witness shakes head
9    negatively.)
10       Q.    Okay.) Let me see that one
11   guide again, please.
12       This, I believe, is part of --
13   Yeah -- Vessel Management Guide, Vessel
14   Operating Standards, marked A-790.
15   MR. SPANSEL:
16       We're going to mark it as
17   Exhibit number 11.
18   EXAMINATION BY MR. SPANSEL:
19       Q.    This portion of the guide talks
20   about boat assignment guidelines.
21       You've never seen that either;
22   have you?
23       A.    No.
24       Q.    Okay. You mentioned, sir, that
25   in your business you do have a very old book

Page 292

1    of codes called the barge -- or something to
2    the effect of the barge system manual.
3        If we wanted a copy of that, we
4    could, through your lawyer, make a request
5    to you; is that correct?
6        A.    Yes.
7        Q.    Do you rely on any other
8    manuals, publications, checklists, reference
9    materials in your work?
10       A.    No.
11       I get --
12       Q.    How about on September 15th, if
13   that makes a difference, 2001? Same was
14   true then?
15       A.    Correct.
16       Q.    You were going to say
17   something?
18       A.    Oh. I'm -- I am on the E-mail
19   list for the -- I guess it's the Coast
20   Guard, that when they're dredging or when
21   there's something going on on the canal, I
22   get a notice of it; recently been set up on
23   that -- Those are kind of things that --
24   that used to go, I guess, to the planners
25   and such, and they would send it down to us,

Page 293

1    the dispatchers. But I got on there so I'd
2    get those types of things.
3        Q.    But no ACBL pamphlets or
4    publications or brochures?
5        A.    (Witness shakes head
6    negatively.) No.
7        Q.    If we wanted the names of the
8    17 to 19 ACBL tugs operating on the Western
9    Canal, where could we get that information?
10       A.    I can get you a copy of that.
11   I mean it -- You know, it changes depending
12   upon our business and how -- you know, what
13   type of tow we had. But I mean I can tell
14   you who's over there now, what boats.
15       Q.    Off the top of your head?
16       A.    Probably not right now.
17       Q.    Okay. Well, that's fine.
18   We'll make a request through your lawyer.
19       A.    Okay.
20       Q.    But you would be the one to
21   provide that information?
22   MR. GOODIER:
23       I think some of those boats are
24   operated by a different company called
25   Delaware Marine.

74 (Pages 290 to 293)

IN RE:
BROWN WATER TOWING I, INC.

PATRICK D. HOESSLE
July 15, 2002

Reported By:
M. H. GAUDET, JR., CCR, RMR

**Page 298**

1  A.  I don't know.  I would assume
2  we are, but I don't know for sure.
3  Q.  You don't know?
4  A.  No.
5  Q.  Do you know whether any of your
6  third-party carriers that you listed earlier
7  for the area in question, do you know
8  whether any of those are members of AWO?
9  A.  No.
10  Q.  Who would you expect at ACBL to
11  set guidelines for third-party carriers
12  belonging to an organization like AWO?
13  Would it be Mr. Kazunas again?
14  A.  I would think so, yes.
15  Q.  I think you mentioned earlier
16  that -- about the planning center having
17  various manuals, phone lists, and so forth.
18  A.  Uh-huh (indicating
19  affirmatively).
20  Q.  Could you give us some more
21  detail?  What kind of manuals does the
22  planning center have?
23  A.  Specifically, I don't know.
24  But I mean, you know, they have like
25  procedures that if there's a spill reported,

**Page 299**

1  on who to notify and --
2  Q.  You haven't seen these manuals?
3  A.  No.  Since I don't work in the
4  planning center, I don't have need to or --
5  Q.  Who would be the best person to
6  ask information about the planning center?
7  A.  Well, aside from the guys that
8  worked in there; I mean they're -- again,
9  that --
10  Q.  Who's in charge of it, again?
11  You probably said this earlier.
12  A.  Well, it's -- Those two guys in
13  the planning center, the night planners
14  report to Pete Kazunas.
15  Q.  Okay.  Do you remember what
16  triggered your awareness of the Brown Water
17  audit sometime after this incident?  Do you
18  remember how it came to your attention and
19  why it came to your attention?
20  MR. GOODIER:
21  I think that's been asked and
22  answered.  I think we've got a lot of asked
23  and answered, but go ahead.
24  THE WITNESS:
25  No.

**Page 300**

1  MR. SPANSEL:
2  Pass the witness.
3  Thank you.
4  MR. GAUNTT:
5  I have nothing.
6  MR. MARCHAN:
7  Nothing further.
8  MR. GONZALEZ:
9  Mr. Hoessle, do I need to --
10  MR. GOODIER:
11  I was looking out -- We've
12  already got you.  I was saying there's a
13  familiar face down there, but he's already
14  asked a thousand questions.
15  (Whereupon a discussion was
16  held off the record at this time.)
17  EXAMINATION BY MR. GONZALEZ:
18  Q.  Mr. Hoessle, my name is Andy
19  Gonzalez.  I represent the Mata claimants in
20  this case.  I just have a few follow-up
21  questions.
22  You mentioned earlier that you
23  first found out about that was done of Brown Water by Marine Resources
24  done of Brown Water by Marine Resources
25  after the accident; correct?

**Page 301**

1  A.  That's correct.
2  Q.  And you found this out through
3  a conversation with who, again?
4  A.  It was probably a conversation
5  with my boss, Pete Kazunas.
6  Q.  And when did that conversation
7  take place?
8  A.  I don't remember.
9  Q.  Was it over the telephone or in
10  person?
11  A.  It was in person.
12  Q.  Where did it take place?
13  A.  I'm sure it was in the office.
14  Q.  The office -- Which one?
15  A.  ACBL.
16  Q.  In Indiana?
17  A.  Yes.  Yes.  (Witness nods head
18  affirmatively.)
19  Q.  And how did this conversation
20  end up taking place?  How did it come up?
21  A.  I don't -- I don't really
22  remember.  There was some discussion, and it
23  was brought up that we had -- that we had
24  had this audit done.  And I remember
25  thinking, "Oh, I didn't even know that."  So

76 (Pages 298 to 301)

601 Poydras Street, Suite 2003
New Orleans, LA 70130-6044

GAUDET, KAISER & PEPPER, L.L.C.
Board-Certified Court Reporters

Telephone: (504) 525-9100
Facsimile: (504) 525-9109