United States District Court
Southern District of Texas
FILED

DEC 1 8 2002

Michael N. Milby
Clerk of Court

# IN THE UNITED STATES DISTRICT COURT
## FOR THE SOUTHERN DISTRICT OF TEXAS
### BROWNSVILLE DIVISION

| | | |
|---|---|---|
| IN RE THE COMPLAINT AND PETITION | § | C.A. No. B-01-157 |
| OF BROWN WATER TOWING I, INC., | § | |
| AS OWNER, AND BROWN WATER MARINE | § | |
| SERVICE, OF THE BROWN WATER V, ITS | § | |
| ENGINES, TACKLE, *ETC.* IN A CAUSE OF | § | |
| EXONERATION FROM OR LIMITATION OF | § | |
| LIABILITY | § | |
|     and | § | **Consolidated with** |
| IN RE THE COMPLAINT AND | § | |
| PETITION OF AMERICAN COMMERCIAL | § | |
| LINES LLC AS OWNER, and AMERICAN | § | |
| COMMERCIAL BARGE LINES, LLC, AS | § | C.A. No. B-02-004 |
| CHARTERER OF THE BARGES NM-315, | § | |
| VLB-9182, ACL-9933B, and VLB-9173, IN A | § | |
| CAUSE OF EXONERATION FROM OR | § | |
| LIMITATION OF LIABILITY | § | |
|     and | § | |
| IN RE THE COMPLAINT AND PETITION | § | |
| OF DEERE CREDIT, INC. (FORMERLY | § | |
| SENSTAR FINANCE COMPANY), AS | § | |
| OWNER OF THE BARGE NM-315, and | § | |
| STATE STREET BANK AND TRUST | § | C.A. No. B-02-125 |
| COMPANY OF CONNECTICUT, | § | |
| NATIONAL ASS'N, AS OWNER TRUSTEE | § | |
| OF THE BARGE ACL-9933B and NOT IN ITS | § | |
| INDIVIDUAL CAPACITY, and GENERAL | § | |
| ELECTRIC CAPITAL CORPORATION, AS | § | |
| BENEFICIAL OWNER OF THE BARGE | § | |
| ACL-9933B, PRAYING FOR EXONERATION | § | |
| FROM AND/OR LIMITATION OF LIABILITY | § | |

## STATE OF TEXAS' MOTION TO DISMISS ON THE BASIS OF SOVEREIGN IMMUNITY AND THE ELEVENTH AMENDMENT AND BRIEF IN SUPPORT

COMES NOW the State of Texas (the "State") and respectfully moves for dismissal from these proceedings under Fed. R. Civ. P. 12(b)(1). In accordance with this court's rules a Table of Contents and Table of Authorities are provided.

## TABLE OF CONTENTS

TABLE OF CONTENTS ........................................................................................ i

TABLE OF AUTHORITIES ................................................................................ iii

MOTION TO DISMISS ....................................................................................... 2

BRIEF IN SUPPORT OF MOTION TO DISMISS ........................................... 2

FACTS ................................................................................................................... 2

STATEMENT OF THE ISSUES TO BE RULED UPON BY THE COURT ............................. 5

SUMMARY OF ARGUMENT ............................................................................. 5

ARGUMENT AND AUTHORITIES .................................................................. 6

    I.     The State of Texas cannot be subjected to the Limitation Act and is Entitled to
           Dismissal from these Proceedings as the Limitation Act does not
           Abrogate its Sovereign Immunity or its Eleventh Amendment Rights ................. 6

    II.    None of the Exception to State Sovereign Immunity Recognized in
           Constitutional Jurisprudence Apply in this Case .................................................. 8

          A.     The Limitation Act Contains No Clear Expression of Congressional
                 Intent to Abrogate the States' Immunity ..................................................... 9

          B.     The Limitation Act Does Not Constitute a Valid Exercise of Congress'
                 Abrogation Power ..................................................................................... 10

    III.   Contrary Cases Do Not Fully or Properly Consider the Important
           Constitutional Issues Raised by this Case ........................................................... 10

          A.     These Limitation Actions Are Suits "Against" the State ......................... 12

          B.     Even if this were not a suit "against" the State, it would still be barred
                 By sovereign immunity because the Supreme Court has repeatedly
                 Rejected arguments seeking to restrict the Eleventh Amendment
                 In its literal text ...................................................................................... 15

    IV.   The Counterclaims/Cross-Claims Filed Against the State are Clearly Barred
           by Sovereign Immunity and the Eleventh Amendment ....................................... 21

CONCLUSION ................................................................................................................ 22

CERTIFICATE OF SERVICE ................................................................................... 24

## TABLE OF AUTHORITIES

**Cases**

*Alden v. Maine*, 527 U.S. 706, 119 S.Ct. 2240,
144 L.Ed.2d 636 (1999) ............................................................................ 7, 11, 15-19, 21

*Blatchford v. Mative Village of Noatak*,
510 U.S. 775, 111 S.Ct. 2578, 115 L.Ed.2d 686 (1991) ...................................... 18, 19, 21

*Bouchard v. Transp. Co., Inc. v. Updegraff*,
147 F.3d 1344 (11th Cir. 1998) .................................................. 11, 12, 14, 15, 20

*California v. Deep Sea Research, Inc.*,
523 U.S. 491, 118 S.Ct. 1464, 140 L.Ed.2d 626 (1998) ........................................... 20, 21

*Chisholm v. Georgia*, 2 U.S. 419, 1 L.Ed 440 (1793) ...................................... 15, 16, 17

*College Savs. Bank v. Fla. Prepaid Postsecondary Educ. Expense Bd.*,
527 U.S. 666, 119 S.Ct. 2219, 144 L.Ed.2d 605 (1999) .............................................. 9, 10

*Complaint of Great Lakes Dredge & Dock Co.*,
895 F.Supp. 604 (S.D.N.Y. 1995) .................................................................... 12

*Complaint of Valley Towing Service v. State of Misouri*,
581 F. Supp. 1287 (E.D.Mo. 1984) .................................................................... 21

*Cory v. White*, 457 U.S. 85, 102 S.Ct. 2325, 72 L.Ed.2d 694 (1982) ......................... 8, 13, 14, 21

*Dellmuth v. Muth*, 491 U.S. 223, 109 S.Ct 2397, 105 L.Ed.2d 181 (1989) .................................. 9

*Ex parte New York*, 256 U.S. 490, 41 S.Ct. 588, 65 L.Ed. 1057 (1921) ............................. 8, 18-21

*Federal Maritime Comm. v. South Carolina State Ports Authority*, 535 U.S. 743,
122 S.Ct. 1864, 52 L.Ed.2d 962(2002) ....................................... 7, 8, 11, 12, 15-19, 21

*Ford Motor Co. v. Dept. of Treasury of Indiana*,
323 U.S. 459, 65 S.Ct. 347, 89 L.Ed. 389 (1945) ............................................................ 7

*Hans v. Louisiana*, 134 U.S. 1, 10 S.Ct. 504, 33 L.Ed. 842 (1890) ................ 6, 15, 17, 18, 19, 21

*In re Abaco Treasure, Ltd.*, 1993 A.M.C. 1976 (S.D.Fla. 1993) ................................ 11, 12, 14, 15

*In re Ayers*, 123 U.S. 443, 8 S.Ct. 164, 31 L.Ed. 216 (1887) ........................................ 19

*In re Complaint of Cameron Boat Rentals, Inc.,*
    683 F.Supp. 577 (W.D.La. 1988) ...................................................................................... 12

*Kimel v. Florida*, 528 U.S. 62, 120 S.Ct. 631, 145 L.Ed.2d 522 (2000) ............................. 7, 9, 16

*Matter of Hill*, 935 F.Supp. 710 (E.D.N.C. 1996) ......................................................... 12

*Matter of Williamson Towing Co., Inc., v. State of Illinois*,
    534 F.2d 758 (7th Cir. 1976) .......................................................................................... 21

*Nelson v. LaCrosse County District Attorney*,
    301 F.3d 820 (7th Cir. 2002) .......................................................................................... 10

*Pennhurst State Sch. & Hosp. v. Halderman*,
    465 U.S. 89, 104 S.Ct. 900, 79 L.Ed.2d 67 (1984) .............................................................. 6

*Pennsylvania v. Union Gas Co.*,
    491 U.S. 1, 109 S.Ct. 2273, 105 L.Ed.2d 1 (1989) .......................................................... 10

*Principality of Monaco v. Mississippi*,
    292 U.S. 313, 54 S.Ct. 745, 78 L.Ed. 1282 (1934) ............................................... 18, 19, 21

*Puerto Rico Aqueduct & Sewer Authority v. Metclaf & Eddy, Inc.*,
    506 U.S. 139, 113 S.Ct. 684, 121 L.Ed.2d 605 (1993) ...................................................... 7

*Sand Bar I, Lim. Procs.*, 1993 A.M.C. 1312 (E.D. La. 1993) ................................. 11, 12, 14, 15

*Seminole Tribe of Florida v. Florida*,
    517 U.S. 44, 116 S.Ct. 1114, 134 L.Ed.2d 252 (1996) ............................................ 6, 9, 10

*Smith v. Reeves*, 178 U.S. 436, 20 S.Ct. 919, 44 L.Ed. 1140 (1990) ............................... 18, 19, 21

*Welch v. Texas*, 483 U.S. 468, 107 S.Ct. 2947, 97 L.Ed.2d 389 (1987) ................................ 10, 21

**Constitutional Provisions, Statutes, and Rules**

Fed. R. Civ. P. 12(b)(1) ..................................................................................................... 2

Limitation of Shipowner's Liability Act of 1851
    46 U.S.C.A. 181 (1994 & Supp. II 1996) ........................................................................... 3

## MOTION TO DISMISS

COMES NOW the State and respectfully moves for dismissal from these proceedings under Fed. R. Civ. P. 12(b)(1) on the basis of sovereign immunity and the Eleventh Amendment. Based on the law and arguments set forth below in this combined Motion and Brief In Support, the State respectfully requests an order:

      (1)    Recognizing the State's entitlement to sovereign immunity from the Limitation Act and from these consolidated limitations actions;

      (2)    Dismissing the State from these consolidated limitation actions;

      (3)    Dissolving, as respects the State, the injunctions that are included in the monition orders so the State can proceed with the lawsuit that it has on file in state court in Cameron County; and,

      (4)    Dismissing the counterclaims and cross-claims that have been filed against the State by the petitioners in these consolidated limitation actions.

## BRIEF IN SUPPORT OF MOTION TO DISMISS

## FACTS

1.    These consolidated cases arise out of the allision of the BROWN WATER V and her tow with the Queen Isabella Causeway ("Causeway") in the early morning hours of September 15, 2001. The Causeway is owned by the State and is the only bridge connecting South Padre Island to the mainland. The allision caused several 80-foot segments of the Causeway to collapse into the Laguna Madre Channel and it also damaged other portions of the bridge and its supports. In the moments following the allision, a number of vehicles plummeted off the collapsed Causeway into the Channel. Several deaths occurred, and the other occupants claim significant injuries. All of the injured parties in these vehicles were Texas citizens.

2.     As a result of the allision, the State of Texas sustained damage totaling in excess of sixteen million dollars.  In addition to the costs of assessing the damage and repairing the Causeway and its supporting structures on an expedited basis, the State's damages include amounts spent for emergency response, search and rescue, salvage, recovery, engineering, investigation and cleanup operations.  During the time that the Causeway was being repaired, the State had to provide temporary transportation systems to move people and vehicles to and from South Padre Island. To accommodate the ferries and vehicles, the State had to construct docking facilities on the mainland and on the Island.

3.     Seeking to protect its citizens and its treasury and to hold the negligent parties responsible, just a few days after the allision, the State filed suit against Brown Water in state district court in Cameron County.[1]  The Cameron County suit seeks a jury trial, and is saved to suitors under the United States Constitution.

4.     Meanwhile, apparently only hours after the allision, Brown Water filed the first of what are now three consolidated limitation actions.[2]  The basis for their comaplint is the Limitation of Shipowner's Liability Act of 1851, 46 U.S.C. App. 181-196 (1994 & Supp. II 1996) (hereafter referred to as the "Limitation Act").[3]  As is standard procedure in limitation actions, Brown Water

---

[1]  Brown Water Towing I, Inc. is the owner of the BROWN WATER V and Brown Water Marine Services, Inc. is the operator of the vessel - referred to collectively as "Brown Water."  The State's suit is styled *The State of Texas v. Brown Water Towing I, Inc. et al;* Cause No. 2001-09-4137-A, 107th Judicial District Court for Cameron County, Texas. This suit is sometimes referred to as the "Cameron County suit."

[2]  Brown Water's limitation complaint bears C.A. B-01-157 and is Rec. Doc. No. 1.

[3]  The Limitation Act allows a shipowner to limit his or her liability with respect to claims arising out of a vessel casualty to the post-accident value of the ship plus "her freight then pending." 46 U.S.C. App. 183(a). Paragraph (1) of Rule F of the Supplemental Rules for Certain Admiralty and Maritime Claims (Rule F) provides that, within six months of receiving a claim in writing, "any vessel owner may file a complaint in the appropriate district court, as provided in subdivision (9) of this rule, for limitation of liability pursuant to statute." Paragraph (2) of Rule F provides that "[t]he complaint shall set forth the facts on the basis of which the right to limit liability is asserted and all facts necessary to enable the court to determine the amount to which the owner's liability shall be limited." If the vessel owner complies with the requirements for timely filing of a complaint, "all claims and proceedings against the owner or the owner's property with respect to the matter

offered a letter of undertaking for the alleged value of the BROWN WATER V and her pending freight.[4] Brown Water also provided the court with a proposed monition order approving the letter of undertaking, enjoining all claimants from prosecuting claims against Brown Water in any other forum, and setting a deadline to file claims in this proceeding – all on penalty of default.

5.      On September 24, 2001, this court signed the monition order, setting March 15, 2002 as the claim deadline.[5] The State later timely filed its claim reserving and asserting its sovereign immunity and its rights under the Eleventh Amendment.

6.      Following Brown Water's lead, on January 11, 2002, ACBL filed the second limitation action relating to the allision.[6] Again, as per the normal procedure in limitation cases, ACBL offered a letter of undertaking for the alleged value of the barges and their pending freight.[7] ACBL also provided the Court with a proposed monition order. This order was signed on January 31, 2002, setting March 14, 2002 as the claim deadline.[8]

7.      The monition orders specifically enjoin the State from prosecuting its state suit against Brown Water, ACBL, and the other ACBL entities (the "Petitioners").[9] The orders also required

_____

in question shall cease." Rule F(3).

[4] The Letter of Undertaking is Rec. Doc. No. 3.

[5] The monition order is Rec. Doc. No. 13.

[6] American Commercial Lines LLC was alleged to be the owner of the barges: the NM-315, VLB-9182, ACL-9933B and VLB-9173 (the "Barges"). American Commercial Barge Line LLC was alleged to be the charterer of the Barges. American Commercial Lines LLC and American Commercial Barge Line LLC are hereinafter collectively referred to as "ACBL." ACBL's limitation complaint bears C.A. B-02-004.

[7] The Letter of Undertaking is Rec. Doc. No. 3 in C.A. B-02-004.

[8] The monition order is Rec. Doc. No. 9 in C.A. B-02-004. By a February 1, 2002 order (Rec. Doc. No. 11 in C.A. B-02-004), the Petitioners', Brown Water and ACBL, limitation actions are now consolidated.

[9] Curiously, although ACBL had alleged in its original limitation pleadings that American Commercial Lines LLC was the owner of all of the Barges, on June 10, 2002, a third limitation proceeding was filed by several other entities affiliated with ACBL, each of which claimed an ownership in one or more of the Barges. The action was assigned C.A. B-02-125 and was filed by Deere Credit, Inc. (formerly Senstar Finance Company), the alleged record owner of the barge NM-315; State Street Bank and Trust Company of Connecticut, National Association, the alleged owner trustee of the barge ACL-9933B, and General Electric Corporation, as the alleged beneficial owner of the barge ACL-9933B. The Complaint is Rec. Doc. No. 1 in C.A. B-02-125. The petitioners in C.A. B-02-125 are hereinafter collectively referred to as the "other ACBL entities." The new

the State to either appear against its will in this federal court proceeding, or be defaulted on its claims against Brown Water, ACBL and the other ACBL entities. The State was served with the monition orders.[10] As noted before, the State has continually asserted that it is entitled to the protections afforded by sovereign immunity and the Eleventh Amendment.[11]

8.     Brown Water and ACBL recently filed cross-claims/counterclaims against the State in these consolidated cases.[12]     These cross-claims/counterclaims further violate the State's sovereign immunity and Eleventh Amendment rights.

### STATEMENT OF THE ISSUES TO BE RULED UPON BY THE COURT

9.     This motion presents purely legal issues of major constitutional significance: the relationship between the states and the federal government. The primary issue is whether the constitutional grant of sovereign immunity prohibits application of the Limitation Act against the State of Texas. Also presented is the issue of whether the counterclaims/cross-claims violate the State's sovereign immunity.

### SUMMARY OF ARGUMENT

10.     Because of states' sovereign immunity, which predates the U.S. Constitution, and their Eleventh Amendment rights, the State must be dismissed from these limitation actions. The Limitation Act cannot constitutionally be applied against the State. Under the United States Constitution, a federal court cannot enjoin and prohibit the sovereign State of Texas from pursing

---

action was consolidated with the earlier filed cases on June 17, 2002. On July 26, 2002, a monition order was issued approving the letter of undertaking submitted by these other ACBL entities, enjoining any other actions against them, and requiring all claims against them to be brought in this proceeding. That order is Rec. Doc. No. 203.

[10] Petitioners made service on the State by mailing copies of the Notices to Claimants, as per Rule F (4) of the Supplemental Rules for Certain Admiralty and Maritime Claims.

[11] The State's answer and claim against ACBL and the other ACBL entities is Rec. Doc. No. 67. The State's answer and claim against Brown Water is Rec. Doc. No. 68.

[12] Brown Water's counterclaims/cross-claims are Rec. Doc. Nos. 209 and 210. ACBL's counterclaim/cross-claim is Rec. Doc. No. 214.

its claims against Brown Water, ACBL and the other ACBL entities in the state courts of Texas, nor can the State be forced, without its consent and on penalty of default, to pursue its claims in federal court. The State also cannot constitutionally be subjected to a statute that could deprive it of a jury trial or limit its ability to obtain full recovery from those responsible for the allision. Additionally, the State cannot be constitutionally subjected to a counterclaim or cross-claim in federal court by Petitioners Brown Water, ACBL or the ACBL entities.

## ARGUMENTS AND AUTHORITIES

**I.    The State of Texas cannot be subjected to the Limitation Act and is Entitled to Dismissal from these Proceedings as the Limitation Act does not Abrogate its Sovereign Immunity or its Eleventh Amendment Rights**

11.    The Eleventh Amendment to the United States Constitution prohibits suits in federal court against a state, regardless of the nature of the relief sought, unless the state unequivocally consents. *Pennhurst State Sch. & Hosp. v. Halderman*, 465 U.S. 89, 104 S.Ct. 900, 908, 79 L.Ed.2d 67 (1984). The Eleventh Amendment to the United States Constitution provides:

> The Judicial power of the United States shall not be construed to extend to any suit in law or equity, commenced or prosecuted against one of the United States by Citizens of another State, or by Citizens or Subjects of any Foreign State.

12.    The amendment bars suits against states in federal courts not only to actions brought by citizens of another state, but also those brought by citizens of the state involved. *Hans v. Louisiana*, 134 U.S. 1, 10 S.Ct. 504, 33 L.Ed. 842 (1890). The Eleventh Amendment affirms that each state is a sovereign entity and that it is "inherent in the nature of sovereignty not to be amenable to the suit of an individual without its consent." *Seminole Tribe of Florida v. Florida*, 517 U.S. 44, 116 S.Ct. 1114, 1122, 134 L.Ed.2d 252 (1996), *quoting Hans*, 10 S.Ct. At 506.    Accordingly, the Supreme Court has long held that "[t]his express constitutional limitation denies to the federal courts authority to entertain a suit brought by private parties against a state without its consent." *Ford Motor Co. v.*

*Dept. of Treasury of Indiana*, 323 U.S. 459, 65 S.Ct. 347, 351, 89 L.Ed. 389 (1945). *See also Kimel*

*v. Florida,* 528 U.S. 62, 120 S.Ct. 631, 640, 145 L.Ed.2d 522 (2000).

14.     Further, as the United States Supreme Court recently reaffirmed, as more fully discussed

below, the Eleventh Amendment does not spell out the full scope of the states' sovereign immunity.

In the words of the Supreme Court:

> [T]he sovereign immunity of the States neither derives from nor is limited by the
> terms of the Eleventh Amendment. Rather, as the Constitution's structure, and its
> history, and the authoritative interpretations of this Court make clear, the States'
> immunity from suit is a fundamental aspect of the sovereignty which the States
> enjoyed before the ratification of the Constitution, and which they retain today...
> except as altered by the plan of the Convention or certain constitutional
> Amendments.

*Alden v. Maine,* 527 U.S. 706, 119 S.Ct. 2240, 2246-47, 144 L.Ed 2d 636 (1999).

15.     More recently, in *Federal Maritime Comm. v. South Carolina State Ports Authority,* 535

U.S. 743, 122 S.Ct. 1864, 1870, 152 L.Ed.2d 962 (2002) (hereinafter referred to as "*FMC*"), the

Court explained:

> States, upon ratification of the Constitution, did not consent to become mere
> appendages of the Federal Government. Rather, they entered the Union 'with their
> sovereignty intact.' *(Citation omitted).* An integral component of the 'residuary and
> inviolable sovereignty,' The Federalist No. 39, p. 245 (C. Rossiter ed. 1961)(J.
> Madison), retained by the States is their immunity from private suits. ... the
> Convention did not disturb States' immunity from private suits, thus firmly
> enshrining this principle in our constitutional framework. 'The leading advocates
> of the Constitution assured the people in no uncertain terms that the Constitution
> would not strip the States of sovereign immunity.' *(Citations omitted).*

16.     In *FMC* the Court also noted that "the preeminent purpose of state sovereign immunity is

to accord States the dignity that is consistent with their status as sovereign entities." *FMC* 122 S.Ct.

at 1874. *See also Puerto Rico Aqueduct & Sewer Authority v. Metcalf & Eddy, Inc.*, 506 U.S. 139,

113 S.Ct. 684, 121 L.Ed.2d 605 (1993)(Eleventh Amendment immunity not limited to protection

against liability; protects states' dignity interests).

17.    Under this principle of sovereignty a state's sovereign immunity also bars proceedings in admiralty. *See Ex parte New York*, 256 U.S. 490, 41 S.Ct. 588, 589, 65 L.Ed. 1057 (1921)("That a state may not be sued without its consent is a fundamental rule of jurisprudence . . .Nor is admiralty and maritime jurisdiction exempt from the operation of the rule.").

18.    Not only does the Limitation Act contain no language indicating that Congress intended to abrogate the States' constitutionally secured immunity, but to apply it to the states would run afoul of the preeminent purpose of state sovereign immunity, which is to accord the States the dignity that is consistent with their status as sovereign entities. *FMC,* 122 S.Ct. at 1874. This can be seen by considering the impact that the monition orders issued in this case have had on the State. The State has effectively been ordered to appear and assert its claims in federal court against its will and on penalty of default. It may be deprived of a jury trial and could have its recovery limited by a federal statute. Moreover, the State has been enjoined and prohibited from prosecuting its Cameron County suit even though the issuance of such an injunction against a State is prohibited by the Eleventh Amendment on its face. *Cory v. White*, 457 U.S. 85, 102 S.Ct. 2325, 2328, 72 L.Ed. 2d 694 (1982).[13] Subjecting the State of Texas to the Limitation Act would be contrary to the Framers' Constitutional design and would be what *FMC* terms "an impermissible affront to a State's dignity." 122 S.Ct. at 1874.

> **II.    None of the Exceptions to State Sovereign Immunity Recognized in Constitutional Jurisprudence Apply in this Case.**

19.    There are only two recognized exceptions to the fundamental rule of state sovereign immunity. "First, Congress may authorize such a suit in the exercise of its power to enforce the

---

[13] To the extent that this limitation proceeding can be analogized to an interpleader action, *Cory* also makes clear that the Eleventh Amendment does not allow a federal interpleader action that seeks to force a state to pursue its claims in federal court. See paragraphs 34-37.

Fourteenth Amendment -- an Amendment enacted after the Eleventh Amendment and specifically designed to alter the federal-state balance. (Citation omitted). Second, a state may waive its sovereign immunity by consenting to suit." *College Savs. Bank v. Fla. Prepaid Postsecondary Educ. Expense Bd.*, 527 U.S. 666, 119 S.Ct. 2219, 2223, 144 L.Ed.2d 605 (1999).

20.    Starting with the second exception, the State of Texas has not consented to these limitation actions or to suit in federal court. Rather, the State was forced to appear here against its will, on penalty of default, to preserve its claims against the parties responsible for this tragic accident. Since there is no consent or waiver, the constitutional issue is reduced to whether the first exception applies – that is, whether Texas' sovereign immunity was validly abrogated pursuant to section 5 of the Fourteenth Amendment by Congress' passage of the Limitation Act.

21.    Whether Congress has validly abrogated the States' immunity requires a two-step inquiry: 1) whether Congress has "unequivocally expresse[d] its intent to abrogate the immunity" in the Limitation Act; and, 2) if the previous answer is yes, has Congress acted "pursuant to a valid exercise of power." *Seminole Tribe*, 116 S.Ct. at 1123; *Kimel,* 120 S.Ct. at 640.

### A.    The Limitation Act Contains No Clear Expression of Congressional Intent to Abrogate the States' Immunity.

22.    Congress can be found to have expressed its intent to abrogate the States' immunity only if "... its intention is unmistakably clear in the language of the statute." *Kimel*, 120 S.Ct. at 641. The test is stringent in its application. *Dellmuth v. Muth*, 491 U.S. 223, 109 S.Ct 2397, 2400, 105 L.Ed.2d 181 (1989).

23.    The Limitation Act contains no language that Congress intended to abrogate the states' sovereign immunity. The Act does not mention or refer to the Eleventh Amendment or immunity although it was passed well after the adoption of the amendment. Given the stringent standard

required to find a negation of the states' sovereign immunity, the Limitation Act clearly does not authorize suits against States in federal court. Thus, the constitutional inquiry end here. *See Welch v. Texas,* 483 U.S. 468, 107 S.Ct. 2941, 2947 n. 6, 97 L.Ed.2d 389 (1987). But should the court inquire past this point it will find no basis for congressional abrogation.

### B.   The Limitation Act Does Not Constitute a Valid Exercise of Congress' Abrogation Power

24.     In determining whether Congress has the power to abrogate the States' immunity, the question is quite narrow: was the Act passed pursuant to a constitutional provision granting Congress the power to abrogate? *Seminole Tribe*, 116 S.Ct. at 1125. The only source of congressional authority for abrogation of state immunity is section 5 of the Fourteenth Amendment. *College Savs. Bank* 119 S.Ct. at 2223, 144 L.Ed.2d 605 (1999); *Nelson v. LaCrosse County District Attorney*, 301 F.3d 820, 829-30 (7th Cir. 2002). 25. There is no support for an argument that Congress enacted the Limitation Act to protect substantive rights guaranteed by the Fourteenth Amendment. Also, the Limitation Act was enacted in 1851 - some seventeen years before the adoption of the Fourteenth Amendment. Thus, the Act could not have been passed to further interests protected by the Fourteenth Amendment.

26.     Also, the Limitation Act does not identify any violations of substantive rights it is seeking to remedy and protect. At most it was enacted to protect commercial interests of the shipping industry – an Article I power granted to the Congress. The Court in *Seminole Tribe* held that Congress may not abrogate the sovereign immunity of a state for the enforcement of federal law enacted pursuant to its Article I powers. *Seminole Tribe*, 116 S.Ct. at 1125-28 (overruling *Pennsylvania v. Union Gas Co.*, 491 U.S. 1, 109 S.Ct. 2273, 105 L.Ed.2d 1 (1989)). Thus, Congress

could not and did not abrogate the states' sovereign immunity with the passage of the Limitation Act.

### III. Contrary Cases Do Not Fully or Properly Consider the Important Constitutional Issues Raised by this Case

27.    The Petitioners may attempt to persuade this court's analysis by relying on three poorly analyzed and non-controlling cases: *Bouchard v. Transp. Co., Inc. v. Updegraff*, 147 F.3d 1344 (11th Cir. 1998); *Sand Bar I, Lim. Procs.*, 1993 A.M.C. 1312 (E.D. La. 1993); and *In re Abaco Treasure, Ltd.*, 1993 A.M.C. 1976 (S.D. Fla. 1993).

28.    *Bouchard* is a 1998 decision from the 11th Circuit Court of Appeals; *Sand Bar I* is a 1992 decision from the Eastern District of Louisiana; and *Abaco* is a 1993 decision from the Southern District of Florida. None of these decisions were appealed to higher courts. Also, none of the three are controlling on this court and, as this court will readily fathom, none of the decisions properly considered Supreme Court precedent in their analysis of sovereign immunity - apparently because the issues were never properly framed for the courts. Additionally, in light of *Alden* and *FMC* these holdings are truly suspect.

29.    *Bouchard* and *Abaco* discussed the sovereign immunity issues only superficially. Neither case mentioned the Supreme Court's two-part test for determining whether a federal statute can constitutionally be applied against a State. Consequently, neither case discussed waiver of sovereign immunity, nor did either discuss the issue of whether in passing the Limitation Act, Congress intended to abrogate the sovereign immunity of the States. *Sand Bar I* mentioned these issues, correctly finding that the Limitation Act does not abrogate State sovereign immunity and that the State of Mississippi had not waived its sovereign immunity. But, instead of ending the constitutional inquiry there, as it should have, the *Sand Bar I* court slipped into the same errors that

later are found in *Bouchard, Abaco,* and that will likewise infect the arguments of Petitioners in this case. The first of those errors in *Sand Bar I* was the uncritical acceptance of the limitation petitioners' assertion that a limitation action is not a suit "against" a State.

30.    Any assertion that Petitioners' limitation actions are not suits "commenced or prosecuted against" the State and falls outside the scope of the Eleventh Amendment is defective in two critical respects. First, these limitation actions are a suit "against" the State of Texas for constitutional purposes. Second, as it noted in *FMC,* the Supreme Court "has repeatedly held that the sovereign immunity enjoyed by the States extends beyond the literal text of the Eleventh Amendment." *FMC,* 122 S.Ct. at 1871.

### A.    These Limitation Actions Are Suits "Against" the State

31.    Any contention that these limitation actions are not suits "against" the State of Texas is simply engaging in semantics. Consider what has taken place here. Knowing full well that the State had suffered a huge loss and would therefore likely be the largest claimant in connection with the accident that resulted from their negligence, Petitioners used the Limitation Act as a sword rather than a shield, filing these limitation actions in order to avoid facing a Texas jury in Texas state court.[14] These limitation actions were targeted at the State and seek to directly affect the State's rights and its treasury by limiting the State's ability to recover its full damages from the guilty parties.

32.    The State has been specifically served notice of the limitation actions under Supplemental Rule F (4) and, at the urging of Petitioners, has been compelled against its will to appear and file

---

[14]    Courts have recognized that the Act was never intended to be used as a "sword" rather than a "shield." *Matter of Hill,* 935 F.Supp. 710, 711 (E.D.N.C. 1996); *Complaint of Great Lakes Dredge & Dock Co.,* 895 F.Supp. 604, 609 (S.D.N.Y. 1995); *In re Complaint of Cameron Boat Rentals, Inc.,* 683 F.Supp. 577, 582 n. 6 (W.D. La. 1988).

responsive pleadings in these actions, or be defaulted. Thus, the State faces the same perils faced by any "defendant" that has been "formally served" with process in any federal civil proceeding.

33. If there were any question as to whether this is a suit against the State, it is put to rest by the fact that at the request of Petitioners, injunctions have been issued against the State of Texas, enjoining and prohibiting the State from proceeding with the Cameron County suit. The injunctions have the same force and effect as any other federal court injunction and, like any other federal court injunction, can be enforced through contempt proceedings. The issuance of such injunctions against the State violates the Constitution.

34. What has happened here is similar to what occurred in *Cory v. White, supra*. There, both Texas and California asserted the right to collect state death taxes from the estate of Howard Hughes. The administrator of the estate filed an interpleader action in federal court under the federal interpleader statute. The administrator also sought and obtained a temporary restraining order from the federal court, prohibiting Texas and California from pursuing claims for recovery of taxes from the Hughes estate in any other forum, including their own state courts.

35. When the case reached the United States Supreme Court, the Court had no difficulty in determining that because of the impact that the action had on California and Texas, it was barred by sovereign immunity. The Supreme Court flatly rejected the estate's argument that the matter fell outside the scope of the Eleventh Amendment because no money judgment was sought from the States, stating:

> It would be a novel proposition indeed to suggest that the Eleventh Amendment does not bar a suit to enjoin the State itself simply because no money judgment is sought... **the Eleventh Amendment by its terms clearly applies to a suit seeking an injunction**, a remedy available only from equity. To adopt the suggested rule, limiting the strictures of the Eleventh Amendment to a suit for a money judgment, would ignore the explicit language and contradict the very words of the Amendment itself.

Page -13-

Cory, 102 S.Ct. at 2329-2330 (*Emphasis added*).

36.    This passage from the Supreme Court's decision in *Cory* effectively disposes of any argument that this limitation action is not a suit "against" the State. Like the original limitation actions here, the interpleader action in *Cory* did not seek a money judgment against the State.[15] Like these limitation actions, the interpleader action in *Cory* was arguably defensive in nature, inasmuch as the estate was trying to avoid double taxation. Like these limitation actions, the states in *Cory* were forced, against their wills, to file and litigate their claims against the estate in the federal court interpleader action. And, like these limitation actions, the interpleader action in *Cory* involved the entry of an injunction (actually a TRO) against the states. Just as the Supreme Court concluded that these factors brought the *Cory* interpleader action within the literal text of the Eleventh Amendment, so, too, do these factors bring these limitation proceedings within the literal text of the Eleventh Amendment. They are therefore constitutionally barred in respect to the State of Texas.

37.    *Bouchard* and *Abaco* did not discuss or even cite *Cory,* and neither case discussed or even acknowledged the constitutional import of a federal limitation court issuing an injunction against an unconsenting state. On the other hand, *Sand Bar I* did cite *Cory*, and noted in passing that the interpleader action involved there is similar to a limitation proceeding; that the Supreme Court found the interpleader action in *Cory* to be a suit against Texas and California; and that *Cory* held that the Eleventh Amendment bars federal courts from issuing injunctions directly against states. *Sand Bar I,* 1993 A.M.C. at 1314. Despite recognizing these points, *Sand Bar I* nevertheless inexplicably reached the wrong result.

---

[15] Now, of course, by virtue of the counterclaims/cross-claims, Petitioners Brown Water and ACBL do seek money judgments against the State, further putting to rest any doubt about whether these actions are suits against the State.

Page -14-

38.    Anyone arguing that this is not a suit "against" the State is engaging in what the Supreme Court referred to as "the type of ahistorical literalism we have rejected in interpreting the scope of the states' sovereign immunity since the discredited decision in *Chisholm.*" *Alden v. Maine*, 119 S.Ct. at 2254.

39.    Once they reached the incorrect conclusion that a limitation action is not a suit against a state, the *Bouchard, Abaco* and *Sand Bar I* courts all compounded their error by ending the analysis there. All three cases failed to recognize that the sovereign immunity enjoyed by the States reaches beyond the literal wording of the Eleventh Amendment.

      **B.**     **Even if this were not a suit "against" the State, it would still be barred by sovereign immunity because the Supreme Court has repeatedly rejected arguments seeking to restrict the Eleventh Amendment to its literal text**

40.    Any argument that these limitation actions are not suits "commenced or prosecuted against" the State is erroneous as is shown above. But, even if these suits were not viewed as being "against" the State, the constitutional analysis would not be over, because the Supreme Court "has repeatedly held that the sovereign immunity enjoyed by the States extends beyond the literal text of the Eleventh Amendment." *FMC*, 122 S.Ct. at 1871.  To determine if the action is barred by the State's sovereign immunity, the question would become, to paraphrase *FMC*, "whether the sovereign immunity embedded in our constitutional structure and retained by the States when they joined the Union extends to [the Limitation Act]." *Id.*, at 1872.  This, in turn, would depend on whether the Framers would have thought that sovereign immunity would apply to proceedings such as these.

41.    None of the three decisions discussed or cited any of the Supreme Court's touchstone opinions on this point.  For example, they did not discuss cases such as *Hans v. Louisiana*, 134 U.S. 1, 10 S.Ct. 504, 33 L.Ed. 842 (1890). And, of course, the *Bouchard, Abaco and Sand Bar I* courts did not have the benefit of the Supreme Court's most recent sovereign immunity decisions-- *Alden*

(1999), *Kimel* (2000), and *FMC* (2002). Thus, none of the cases that Petitioners will likely rely upon engaged in a full or proper consideration of the sovereign immunity issues.

42.    The Supreme Court has consistently held that the sovereign immunity of the States "neither derives from nor is limited by the terms of the Eleventh Amendment." *Alden,* 119 S.Ct. at 2246. Twice in the last four years, in *Alden* and in *FMC*, the Court has recognized sovereign immunity in situations that did not fall within the literal wording of the Eleventh Amendment. In *Alden*, the Court held that sovereign immunity bars Congress from subjecting unconsenting States to the application of federal laws in state courts, notwithstanding the fact that the literal wording of the Eleventh Amendment limits only the "the Judicial power of the United States." *Alden,* 119 S.Ct. at 2254.

43.    Likewise, in *FMC*, after assuming *arguendo* that in adjudicating complaints filed by private parties under the Shipping Act, the Federal Maritime Commission does not exercise "the Judicial power of the United States," the Court held that as applied to South Carolina, such proceedings are nonetheless barred by the State's sovereign immunity. *FMC*, 122 S.Ct. at 1871.

44.    In both *Alden* and *FMC*, the Court explained in great detail the history behind the framing of the Constitution and the adoption of the Eleventh Amendment. Particularly in Part I of its opinion in *Alden,* the Court explained that the Eleventh Amendment was ratified and passed in immediate response to the Supreme Court's 1793 decision in *Chisholm v. Georgia,* 2 U.S. 419, 1 L.Ed 440 (1793), which held that Article III authorized a private citizen of another state to sue the State of Georgia without its consent. *Alden,* 119 S.Ct. at 2246-2255. The *Chisholm* decision sent shock waves through the country, and both the States and their citizens responded to the decision with outrage. *Id.*, 119 S.Ct. at 2250. The first proposal to amend the Constitution was introduced in the House of Representatives the day after *Chisholm* was announced. In less than two months, the

Amendment was endorsed by Congress and forwarded to the States for ratification. *Id.* As *Alden* explains, the text of the Amendment reflects the historical context and the congressional objective in endorsing it. Congress chose not to enact language codifying the traditional understanding of sovereign immunity, but instead wrote the Amendment to specifically address the problem raised by *Chisholm. Id.,* 119 S.Ct. at 2251.

45.    In *Alden,* the Supreme Court summarized the proper approach to sovereign immunity analysis as follows:

> This Court has been consistent in interpreting the adoption of the Eleventh Amendment as conclusive evidence 'that the decision in *Chisholm* was contrary to the well-understood meaning of the Constitution,' (citation omitted) and that the views expressed by Hamilton, Madison, and Marshall during the ratification debates, and by Justice Iredell in his dissenting opinion in *Chisholm,* reflect the original understanding of the Constitution (citations omitted). In accordance with this understanding, we have recognized a 'presumption that no anomalous and unheard-of proceedings or suits were intended to be raised up by the Constitution- anomalous and unheard of when the Constitution was adopted  (citation omitted). As a consequence, we have looked to 'history and experience, and the established order of things' rather than 'adhering to the mere letter' of the Eleventh Amendment in determining the scope of the States' constitutional immunity from suit (citations omitted).

*Alden,* 119 S.Ct. at 2253.

46.    For these reasons, the Supreme Court has repeatedly refused to do what Petitioners will presumably urge this court to do - limit the State's sovereign immunity to the four corners of the text of the Eleventh Amendment. Starting with the decision in *Hans* in 1890 and continuing through *FMC* in 2002, the Supreme Court has upheld sovereign immunity claims in many situations that were outside the literal text of the Eleventh Amendment.

47.    In *Hans,* the Court applied sovereign immunity to suits by a State's own citizens under federal question jurisdiction, even though the language of the Eleventh Amendment is limited to only actions "by Citizens of another State." In its opinion, the Supreme Court looked to the history

and practice of state sovereign immunity rather than to the literal text of the amendment. "The suability of a state, without its consent, was a thing unknown to the law. This has been so often laid down and acknowledged by courts and jurists that it is hardly necessary to be formally asserted." *Hans*, 10 S.Ct. at 504.

48.     Following the decision in *Hans*, the Court has continually invoked sovereign immunity insituations that do not fit within and are beyond the literal wording of the 11th amendment. *See, e.g., Smith v. Reeves,* 178 U.S. 436, 20 S.Ct. 919, 44 L.Ed. 1140 (1900)(states are immune from actions brought by federal corporations); *Ex Parte New York.* 256 U.S. 490, 41 S.Ct. 588, 65 L.Ed. 1057 (1921)(applied the Eleventh Amendment to admiralty proceedings to bar actions against states although the amendment is limited to suits "in law or equity"); *Principality of Monaco v. Mississippi,* 292 U.S. 313, 54 S.Ct. 745, 78 L.Ed. 1282 (1934)(state sovereign immunity bars suits by foreign nations); *Blatchford v. Native Village of Noatak,* 510 U.S. 775, 111 S.Ct. 2578, 115 L.Ed.2d 686 (1991)(states have sovereign immunity from suits by Indian tribes).  And, most recently, *Alden* and *FMC* have extended State sovereign immunity to actions that fall outside "the Judicial power of the United States," even though that apparent limitation is written into the wording of the Eleventh Amendment.

49.     For situations like the one involved here, where the federal statute in question did not exist when the Constitution was framed or when the Eleventh Amendment was ratified, the Supreme Court has continued to rely upon the "presumption first explicitly stated  in *Hans . . .*  that the Constitution was not intended to 'rais[e] up' any proceedings against States that were 'anomalous and unheard of when the Constitution was adopted." *FMC*, 122 S.Ct. at 1872(quoting *Hans*, 10 S.Ct. at 508).

50.     In applying this presumption in *FMC*, the Supreme Court attributed "great significance to the fact that States were not subject to private suits in administrative adjudications at the time of the founding or for many years thereafter." *Id.*  Likewise, great significance should be attributed here to the fact that states were not subject to actions under the Limitation Act at the time of the founding or for many years thereafter.  Under *Hans* and *FMC*, the application of the Limitation Act against the States is therefore presumptively unconstitutional.

51.     Continuing its analysis of the Framers' intent, the *FMC* Court explained that the preeminent purpose of State sovereign immunity is to accord States the dignity that is consistent with their status as sovereign entities *FMC*, 122 S.Ct. at 1874. The Court recognized that the Framers would have considered it an impermissible affront to a State's dignity to require the State to appear against its will in a federal administrative proceeding as such an action presented "the indignity of subjecting a State to the coercive process of judicial tribunals at the instance of private parties, regardless of the forum." *Id.,* quoting *In re Ayers,* 123 U.S. 443,505, 8 S.Ct. 164, 31 L.Ed 216 (1887).

52.     The State of Texas respectfully submits that for the same reasons, the Framers would find it to be an equal affront to the State's dignity for the State of Texas to: (1) be forced to appear against its will in a federal court on penalty of default; (2) potentially be deprived by a federal statute of a jury trial and of the opportunity to recover its full damages from tortfeasors who are clearly at fault; and (3) be enjoined by a federal court from pursuing an action in its own state courts with respect to an accident that occurred in Texas and had such a tremendous impact on the State and its citizens.  Like the actions at issue in *Hans, Smith, Ex Parte New York, Principality of Monaco, Blatchford, Alden* and *FMC*, these limitation actions are barred by sovereign immunity because they unconstitutionally infringe on the dignity to which the State of Texas is entitled given its status as a sovereign entity.

Page -19-

53.    Finally, it must be noted that *Bouchard* also erred in a third respect. The holding analogized a limitation proceeding to the *in rem* treasure ownership dispute that was involved in the Supreme Court's decision in *California v. Deep Sea Research, Inc.*, 523 U.S. 491, 118 S.Ct. 1464, 140 L.Ed.2d 626 (1998)(hereinafter"*DSR* ")  In *DSR*, the sunken vessel itself was arrested and was the defendant in the action, the sole purpose of which was to determine ownership of the wreck.  The holding in *DSR* – "that the Eleventh Amendment does not bar the jurisdiction of a federal court over an *in rem* admiralty action where the *res* is not within the State's possession" – is very narrow and is confined to the unique facts presented by that treasure salvage case. Id., 118 S.Ct. at 1467.  *DSR* represents a very limited exception to the general rule adopted by the Supreme Court that the Eleventh Amendment is applicable in admiralty actions in general and to *in rem* admiralty actions in particular.[16]

54.    Despite the limited nature of the holding in *DSR,* the *Bouchard* court equated the limitation action before it to the *in rem* action in *DSR*.  The mistakes in this analysis are quite basic- a limitation proceeding is not an *in rem* action, as even *Bouchard* acknowledged. *Bouchard,* 147 F.3d at 1349.  Moreover, a limitation action is also not a treasure salvage case.  Unlike a treasure salvage *in rem* proceeding, the vessels owned and operated by Petitioners have not been arrested and are not parties in this limitation action.  Unlike a treasure salvage *in rem* proceeding, the State is not claiming or seeking ownership of those vessels.  Unlike the treasure salvage *in rem* action involved in *DSR*, Texas has been forced to appear in this case against its will on penalty of default.  And, unlike the treasure salvage *in rem* action involved in *DSR*, an injunction has been issued against the State of Texas.  These features, which are unique to limitation actions, do not exist in true *in rem*

---

[16] *See, e.g., Ex Parte New York, supra.* This case and other related cases recognize that admiralty actions are subject to a state' claim of sovereign immunity.

proceedings. The issuance of an order forcing an appearance by and enjoining an unconsenting State changes the constitutional analysis entirely and brings the instant proceeding within the ambit of *Cory* and within the four corners of the text of the Eleventh Amendment. In short, the outcome here is controlled not by *DSR*, but by *Cory, Hans, Smith, Ex Parte New York, Principality of Monaco, Blatchford, Alden* and *FMC*.

**IV.    The Counterclaims/Cross-Claims Filed Against the State are Clearly Barred by Sovereign Immunity and the Eleventh Amendment**

55.    Petitioners Brown Water and ACBL have filed counterclaims/cross-claims against the State, seeking to somehow hold the State liable for the fact that the Brown Water/ACBL flotilla smashed into the Causeway causing it to collapse into the Laguna Madre. These claims are clearly barred by sovereign immunity, which, absent waiver, immunizes the State from federal court actions whether brought by its own citizens or by those of another state, including actions brought in admiralty. *See Welch*, 107 S.Ct. at 2945. Since the State of Texas has not waived its immunity in the instant case, the Eleventh Amendment bars the counterclaims/cross-claims of Petitioners.

56.    This was the result reached in *Matter of Williamson Towing Co., Inc. v. State of Illinois,* 534 F.2d 758 (7th Cir. 1976), which arose after a vessel towing a flotilla of barges struck a bridge owned by the State of Illinois. The tug owner filed a limitation proceeding and then attempted to file a third-party demand against Illinois, alleging that the State was negligent in failing to turn on the bridge's navigation lights. The Seventh Circuit had no difficulty in concluding that the third-party demand was barred by sovereign immunity and that the State had not waived its sovereign immunity merely by owning and operating the bridge. The identical result was reached in *Complaint of Valley Towing Service v. State of Missouri,* 581 F.Supp. 1287 (E.D. Mo. 1984), where a very similar third-party demand was dismissed on sovereign immunity grounds. The counterclaims/cross-claims of

Brown Water and ACBL are identical to the claims involved in these cases and must be dismissed as a matter of law.

## CONCLUSION

57.    This motion presents important constitutional issues that impact the basic principals of dual sovereignty upon which this Nation was founded. A full and proper analysis of the Limitation Act will show that it cannot be constitutionally applied against the State of Texas. Clearly, the Petitioners cannot maintain their counterclaims or cross-claims.

58.    The State of Texas has not consented to suit in federal court or to the application of the Limitation Act. In passing the Limitation Act, Congress did not intend nor did it even attempt to abrogate the sovereign immunity afforded to the States. Moreover, the Constitutional Framers could never have conceived of and certainly would not have approved of a situation in which a sovereign State, after having its property destroyed by the negligent acts of others, would then, at the request of the guilty parties, be enjoined by a federal court from proceeding in its own state courts to recover from the wrongdoers, and be forced against its will and on penalty of default to appear in federal court to pursue recovery. Nor would the Framers have approved of applying against a State a statute that could potentially deprive the State of a jury trial or limit the State's ability to recover its full damages from tortfeasors so clearly at fault. These are, however, the effects that the Limitation Act has when applied against the State. This is contrary to the Constitution. It is an impermissible affront to the State's dignity and is an intrusion on its sovereignty. Since the Limitation Act violates the State of Texas' sovereign immunity, it cannot be constitutionally applied against the State.

WHEREFORE, for the reasons set forth above, the State of Texas respectfully requests this court declare that the State of Texas is entitled to sovereign immunity from the Limitation Act and from these limitations actions; that the court enter an order dismissing the State from the present

limitations actions; that the order dissolve the injunctions that have been entered against the State, thus allowing the State of Texas to pursue the Cameron County suit; and that the order also dismiss the counterclaims/cross-claims filed against the State by Brown Water and ACBL.

Respectfully submitted,

GREG ABBOTT
Attorney General of Texas

HOWARD G. BALDWIN, JR.
First Assistant Attorney General

JEFFREY S. BOYD
Deputy Attorney General for Litigation

GRADY CLICK
Assistant Attorney General
Chief, Transportation Division

JACK F. GILBERT
Assistant Attorney General
Attorney-in-Charge
Texas Bar No. 00786946
Federal Bar No. 16701

OF COUNSEL:
MICHAEL RATLIFF
Texas Bar No. 16564300
MARGIE MANZANO CORBETT
Texas Bar No. 24001927
Federal Bar No. 22121

Office of the Attorney General
Transportation Division
P.O. Box 12548
Austin, TX 78711-2548
Phone: 512.463.2004
Fax:    512.472.3855

ADAMS AND REESE LLP

DARYL G. DURSUM
Texas Bar No. 06287900
Federal Bar No. 6198
4400 One Houston Center
1221 McKinney
Houston, Texas 77010
Phone: 713.652.5151
Fax:    713.652-5152

MARK J. SPANSEL
La. Bar No. 12314
Pro Hac Vice
EDWIN C. LAIZER, APLC
La. Bar No 17014
Pro Hac Vice

4500 One Shell Square
New Orleans, Louisiana 70139
Phone: 504.581.3234
Fax:    504.566.0210

### CERTIFICATE OF SERVICE

I hereby certify that a copy of the foregoing pleading has been served accoirding to F.R.C.P. 5, on all counsel of record by placing same in the United States mail, postage prepaid and properly addressed, this 17th day of December 2002.

JACK F. GILBERT