217

United States District Court
Southern District of Texas
FILED

JAN 0 6 2003

Michael N. Milby
Clerk of Court

**IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF TEXAS
BROWNSVILLE DIVISION**

| | | |
|---|---|---|
| **IN RE THE COMPLAINT AND PETITION OF BROWN WATER TOWING I, INC., AS OWNER, AND BROWN WATER MARINE SERVICE, INC., AS BAREBOAT CHARTERER OF THE BROWN WATER V, ITS ENGINES, TACKLE, ETC., IN A CAUSE OF EXONERATION FROM OR LIMITATION OF LIABILITY** | * | **C. A. NO. B-01-157 Admiralty** |
| | * | **Consolidated with** |
| **IN RE THE COMPLAINT AND PETITION OF AMERICAN COMMERCIAL LINES, LLC AS OWNER, AND AMERICAN COMMERCIAL BARGE LINE, LLC AS CHARTERER OF THE BARGES NM-315, VLB-9182, ACL-9933B, VLB-9173, IN A CAUSE OF EXONERATION FROM OR LIMITATION OF LIABILITY** | * | **C. A. No. B-02-004 Admiralty** |
| | * | **and** |
| **IN RE THE COMPLAINT AND PETITION OF DEERE CREDIT, INC., (FORMERLY SENSTAR FINANCE COMPANY), AS OWNER OF THE BARGE NM-315 AND STATE STREET BANK AND TRUST COMPANY OF CONNECTICUT, NATIONAL ASSOCIATION, AS OWNER TRUSTEE OF THE BARGE ACL-9933B AND NOT IN ITS INDIVIDUAL CAPACITY, AND GENERAL ELECTRIC CAPITAL CORPORATION, AS BENEFICIAL OWNER OF THE BARGE ACL-9933B PRAYING FOR EXONERATION FROM AND/OR LIMITATION OF LIABILITY** | * | **C. A. NO. B-02-125 Admiralty** |

## TABLE OF CONTENTS

Table of Authorities . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . iii

Memorandum in Opposition . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 1

Introduction/Nature and Stage of Proceedings . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 2

Law and Argument . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 5

1. An exoneration/limitation action is a special maritime proceeding and is legally not considered a "suit against a state" for purposes of the Eleventh Amendment . . . . . . . . . . . . . . . . . . . . . . . . . 5

2. By filing a claim in the limitation/exoneration proceeding, the state has waived Eleventh Amendment immunity limited to a counterclaim or ancillary demand asserted defensively for the purpose of defeating or diminishing the state's recovery . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 8

3. Waiver of Immunity . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 9

Conclusion . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 11

# TABLE OF AUTHORITIES

## CASES

Bouchard Transportation Company, Inc. v. Updegraff,
147 F.3d 1344 (11th Cir. 1998), cert. denied, 525 U.S. 1140 (1999) . . . . . . . . . . . . . . . . . . 1,5-7

California v. Deep Sea Research, Inc.,
523 U.S. 491, 118 S.Ct. 1464, 149, L.Ed. 2d 626 (1998) . . . . . . . . . . . . . . . . . . . . . . . . . . . 5,6

County of Cameron v. Brown,
80 S.W. 3d 549 (No. 00-1020, S.Ct. Tx. 5/23/02) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 2,10

Fort Fetterman v. South Carolina State Hwy. Dept.,
261 F.2d 563 (4th Cir. 1958) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 8

Gunter v. American Coastline R.R. Co.,
200 U.S. 273, 26 S.Ct. 252, 50 L.Ed. 477 (1906) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 8

In Re: Central Gulf Lines, Inc.,
204 F.R.D. 87 (E.D. La. 2001) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 9

In re: Sand Bar I, Inc.,
1992 WL 84277, 1993 AMC 1312 (E.D. La. 1992) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 1,7,8

In re: Abaco Treasure Ltd.,
1993 AMC 1976 (S.D. Fla. 1993). . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 1,8

Lewis v. Lewis & Clark Marine, Inc.,
531 U.S. 438, 121 S.Ct. 993, 148 L.Ed. 2d 931 (2001) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 4

Maryland Port Administration v. S/S AMERICAN LEGEND,
453 F.Supp. 584 (D. Md. 1978) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 1,8

## STATUTES

The Eleventh Amendment . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . passim

Limitation of Vessel Owner's Liability Act,
46 USC §181 et seq. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . passim

Rule 13 of the Federal Rules of Civil Procedure . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 4,8,9

Rule F of the Supplemental Rule
for Certain Admiralty and Maritime Claims . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 3,4

TEX. CIV. PRAC. & REM. CODE §101.02(2) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 1,9,10

**OTHER AUTHORITIES**

Vol. 3 Moore's Federal Practice,
¶ 13.19(2) (2d Ed. 1974) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 8

217

United States District Court
Southern District of Texas
FILED
JAN 06 2003
Michael N. Milby
Clerk of Court

**MEMORANDUM IN OPPOSITION TO STATE OF TEXAS MOTION TO DISMISS ON THE BASIS OF SOVEREIGN IMMUNITY AND THE 11TH AMENDMENT SUBMITTED ON BEHALF OF AMERICAN COMMERCIAL LINES, LLC AND OTHERS**

**MAY IT PLEASE THE COURT:**

American Commercial Lines, LLC and American Commercial Barge Line LLC, Petitioners and Claimants, and Deere Credit, Inc. (formerly Senstar Finance Company), as Owner of the Barge NM-315, State Street Bank and Trust Company of Connecticut, N.A., as Owner/Trustee of the Barge ACL-9933B and Not in its Individual Capacity, and General Electric Capital Corporation, as Beneficial Owner of the Barge ACL-9933B, Petitioners, respectfully request that the Court deny the State of Texas' motion. This litigation consists solely of admiralty exoneration/limitation proceedings, which legally are not the same as an ordinary lawsuits or civil actions against the state. See Bouchard Transportation Company, Inc. v. Updegraff, 147 F.3d 1344 (11th Cir. 1998), cert. denied, 525 U.S. 1140 (1999); In re: Sand Bar I, Inc., 1992 WL 84277, 1993 AMC 1312 (E.D. La. 1992); In re: Abaco Treasure Ltd., 1993 AMC 1976 (S.D. Fla. 1992).

Further, the claims that have been asserted against Texas by these parties do not seek monetary or compensatory damages against the State as a "defendant" but are ancillary demands for contribution and/or indemnity and/or set-off or recoupment which are required to be filed as counterclaims and cross-claims under the procedural dictates of Rule 13 of the Federal Rules of Civil Procedure. Accord Maryland Port Administration v. S/S AMERICAN LEGEND, 453 F.Supp. 584 (D. Md. 1978). Finally, it is suggested that the State of Texas has waived immunity on the basis of the Texas Tort Claims Act's waiver for "personal injury and death so caused by a condition or use of tangible personal or real property...." TEX. CIV. PRAC. & REM. CODE §101.02(2), and the

dictates of the Texas Supreme Court's decision in County of Cameron v. Brown, 80 S.W.3d 549 (No. 00-1020, Sup. Ct. of Texas 5/23/02), which involved a vehicular accident on the Queen Isabella Causeway and non-functioning street lights.

## INTRODUCTION/NATURE AND STAGE OF PROCEEDINGS

American Commercial Barge Lines, L.L.C. (hereafter "ACBL") and American Commercial Lines, L.L.C. (hereafter "ACL") are completely separate companies and are the petitioners in Civil Action B-02-004. There is no trial date.

ACBL bareboat charters approximately 5,000 river barges and over 200 towboats. These barges and towboats move on all of the major inland waterways of the United States and their tributaries. ACL is the parent of ACBL and is the owner of record of the majority of the barges and towboats. ACBL uses its towboats to tow its barges and the barges of others, but in many instances contracts with independent towage contractors to provide towage services. This is what occurred in the instant case.

ACBL contracted with Brown Water Marine Service, an independent towage contractor, to tow certain unmanned river barges with no motive power [1] with a tugboat selected, owned, operated and crewed by Brown Water. ACBL and ACL have no ownership interest in Brown Water nor is there any corporate relationship between ACL/ACBL and Brown Water or its vessels.

As an independent towage contractor, Brown Water's personnel were solely responsible for

---

[1]These river barges are approximately 200 feet in length and 35 feet in width. Much like a railroad box car, they simply carry cargo and can only move with the assistance of a tug just as the box car is moved with a locomotive.

selecting and deploying the towboat known as the M/V BROWN WATER V.[2] Brown Water's personnel and tug master alone controlled and decided all aspects of the towage, including the number of barges to be taken by the tug, the configuration of the tow of barges, the building of the tow, and the navigation of the tug and tow. No personnel from ACL or ACBL were present on the tug or tow during this process or during the trip in question.

ACBL had approximately ten years experience with Brown Water, which had a good record of safety and performance. ACL did not select or contract with Brown Water and had no involvement with the towage arrangements that were made by ACBL.

On September 15, 2001, a collision occurred between the lead barge in the M/V BROWN WATER V's tow and the Queen Isabella Causeway. The M/V BROWN WATER V's tow consisted of four standard, covered river barges, each of which had on board cargo of third parties which the third parties had loaded onto the barges.[3] The barges (i.e., the "tow") had no motive power and were under the exclusive care, custody and control of BROWN WATER's tug, which was under the command of a licensed master employed by Brown Water.

Brown Water Towing I and Brown Water Marine Service are the Petitioners in Civil Action B-01-157 and seek to be exonerated or alternatively have their liability limited to the value of the M/V BROWN WATER V in accordance with the Limitation of Vessel Owner's Liability Act, 46 USC §181 et seq. and Rule F of the Supplemental Rules for Certain Admiralty and Maritime

---

[2]The M/V BROWN WATER V is an inland towboat owned by Brown Water I, Inc. and bareboat chartered/operated by Brown Water Marine Service, Inc. It is a steel hull, twin screw, 800 horsepower towboat documented by the U. S. Coast Guard.

[3]Prior to the collision, ACBL actually believed that the tug boat was towing only three barges, not four, and it was only advised that there were four barges in the tow after the collision.

Claims. Rule F describes the procedural steps required of a vessel owner seeking limitation of liability under the statute, including the posting of a bond or other security, a description of the voyage for which exoneration/limitation of liability is sought, notice to claimants, publication, and the restraining, by injunction issued by the federal court, of all other claims in all other courts against the vessel owner.

The United States Supreme Court recently commented on the Limitation Act in Lewis v. Lewis & Clark Marine, Inc., 531 U.S. 438, 121 S.Ct. 993, 148 L.Ed. 2d 931 (2001), and noted that it is one of the admiralty law's unique and special procedures, 121 S.Ct. at 1000, and was designed to encourage shipbuilding and to induce capitalists to invest in shipping.

The State of Texas filed separate claims and answers in the exoneration/limitation proceedings filed by Brown Water and ACBL. See Record Documents 68 and 67. The State alleges that it is the owner of the Queen Isabella Causeway, the only bridge connecting South Padre Island to the mainland. (Doc. 68 at page 12 and Doc. 67 at pages 13-14.) The State alleges that Brown Water and/or ACBL are liable for the collision and alleges maritime remedies[4] and seeks recovery for damages to the bridge as well as other items of expense and/or losses.

ACBL, ACL and others were required by Rule 13 of the Federal Rules of Civil Procedure to assert (in their capacities as "Petitioners" seeking exoneration/limitation of liability) their compulsory counterclaim against the State of Texas and as "Claimants" in the Brown Water limitation their cross-claim against the State of Texas, a co-party (i.e. also a "Claimant" in limitation).

---

[4]The State of Texas also did not sue ACL or ACBL in Texas state court for this collision.

## LAW AND ARGUMENT

1. **An Exoneration/Limitation Action is a special maritime proceeding and is legally not considered a "suit against a state" for purposes of the Eleventh Amendment.**

The State of Texas' motion begs the essential question: Is an exoneration/limitation action the same as an ordinary civil lawsuit brought against the State or is it a special maritime procedure where there are no true "defendants" and the vessel owner claims the right to be exonerated from liability or alternatively to have its liability limited? None of the cases relied upon by the State are exoneration/limitation actions or pure admiralty and maritime claims. Maritime precedents confirm that an exoneration/limitation action is not a suit against the state.

In Bouchard Transportation Company, Inc. v. Updegraff, 147 F.3d 1344 (11th Cir. 1998), cert. denied, 525 U.S. 1140 (1999), the Eleventh Circuit held that a limitation of liability proceeding does not violate sovereign immunity. In Bouchard Transportation, a collision occurred in Tampa Bay and each of the owners of the vessels involved filed a complaint seeking exoneration/limitation. The State of Florida, like the State of Texas here, filed various claims in the limitation proceeding and then claimed it was entitled to Eleventh Amendment Immunity from the limitation action and that its claim should not be subject to the limitation proceeding. The Eleventh Circuit held that the filing of an exoneration /limitation proceeding pursuant to Admiralty Rule F did not constitute a suit against the state. The Court, relying upon maritime precedents and the Supreme Court's decision in California v. Deep Sea Research, Inc., 523 U.S. 491, 118 S.Ct. 1464, 149, L.Ed. 2d 626 (1998), noted:

> In *Deep Sea Research*, the Supreme Court rejected California's assertion of Eleventh Amendment immunity from an in rem admiralty action. *Id.* The Supreme Court held that the Eleventh Amendment

does not bar an in rem admiralty action where the state does not have actual possession of the res:

> Based on longstanding precedent respecting the federal courts' assumption of in rem admiralty jurisdiction over vessels that are not in the possession of a sovereign, we conclude that the Eleventh Amendment does not bar federal jurisdiction over the Brother Jonathan and, therefore, that the District Court may adjudicate DSR's and the State's claims to the shipwreck.

*Id.* at ______, 118 S. Ct. at 1473.

Although this admiralty limitation proceeding is not an in rem action, it is sufficiently analogous for *Deep Sea Research* to compel the conclusion that Florida is not entitled to sovereign immunity. Like an in rem proceeding, the plaintiffs in the limitation proceeding neither named any specific entities as defendants in their complaints nor formally served process on any defendants. Instead, the plaintiffs posted security bonds with the district court in the amount of their maximum liability and the district court notified potential claimants to make their claims on the res deposited with the district court. As in *Deep Sea Research*, Florida does not have possession of the disputed res--the bonds are part of the record of this case, currently in the possession of the federal judiciary. Accordingly, we hold that Florida is not entitled to Eleventh Amendment immunity from the limitation proceeding.

147 F.3d at 1349 (footnotes omitted). At footnote 5, the Eleventh Circuit further noted:

> Although Rule F(2) requires that the complaint list all law suits pending against the vessel owner, the complaint does not name the plaintiffs in those cases as defendants in the limitation proceeding. Instead, all claimants must enter the limitation proceeding on their own initiative by filing and serving a claim in accordance with Rule F(5).

At footnote 6 the Court opined:

> The Limitation Act substantively alters the claimants' common law and general maritime remedies--upon proof that the Owners are entitled to limit their liability, the Owners are effectively exonerated

> of in personam liability beyond the value of the vessel and pending freight. The Limitation Act therefore preempts all other general maritime and common law causes of action against the Owners outside of this limitation proceeding. Indeed, if Florida were immune from this proceeding, Florida would have no remedy at all for its general maritime and common law claims.

147 F.3d at 1349.

Two other maritime courts also rejected the notion that a state has "immunity" from an exoneration/limitation action and, to our knowledge, no maritime court has ever granted Eleventh Amendment immunity to a State in a limitation proceeding as the State of Texas suggests. These two cases are relied upon by the Court in Bouchard Transportation.

In In re: Sand Bar I, Inc., 1992 WL 84277, 1993 AMC 1312 (E.D. La. 1992), a tug and tow struck the Interstate 110 Bridge near Biloxi, Mississippi. The collision caused damage to the bridge, owned by the State of Mississippi, and the tug owners sought exoneration/limitation. The State filed claim in the limitation action and then claimed Eleventh Amendment immunity. The District Court rejected the State's argument and noted that the limitation action was a special maritime procedure that was essentially a defensive action and that it "falls wholly outside the scope of 'suit against the state' as used in the Eleventh Amendment." 1992 WL 84277 at *p. 3, 1993 AMC at 1315. The District Court further noted that although the limitation action provided for an automatic stay of other lawsuits against the vessel owner, "that stay is only temporary to allow the federal court to resolve the limitation issue and perhaps consolidate all claims against the vessel owner in that forum. It does not bar the prospective claimants from collecting after the Court determines limitation fund." Id. at *p. 1, 1993 AMC at 1314. The Sand Bar I Court concluded: "A petition for limitation of liability is nothing more than a statutory procedure to secure a vessel owner's rights in defending a

prospective suit for damages. It is not a suit itself, as contemplated by the Eleventh Amendment, and thus not barred by the Amendment's protection of sovereign immunity. Id. at *p. 3, 1993 AMC at 1317.

Similarly, in In re: Abaco Treasure Ltd., 1993 AMC 1976 (S.D. Fl. 1993), the District Court also recognized that a limitation action was not a suit against a state. After noting that only federal admiralty courts have exclusive jurisdiction over limitation of liability actions, the Court concluded:

> The instant case was not against the State of Florida, nor did the suit seek to recover any damages from the State. The Court finds that the Eleventh Amendment does not bar this suit ....

1993 AMC at 1977. The Court also noted that the purpose of a Limitation Act "is to create a forum through which all claims may be administered....Here, the petitioner was not bringing an action against the State in admiralty, nor was it seeking any damages from the State. Instead, the petitioner sought only to establish whether it was entitled to a limitation of liability as to all claims arising out of the allision" 1993 AMC at 1976-77.

2. **By Filing a Claim in the Limitation/Exoneration Proceeding, the State Has Waived Eleventh Amendment Immunity Limited to a Counterclaim or Ancillary Demand Asserted Defensively for the Purpose of Defeating or Diminishing the State's Recovery.**

In Maryland Port Administration v. S/S AMERICAN LEGEND, 453 F.Supp. 584 (D. Md. 1978), the federal admiralty court recognized that when the state files suit as a plaintiff, it waives the Eleventh Amendment immunity with respect to a counterclaim arising out of the same event which is the subject of the state's claim. 453 F.Supp. at 590 (citing Gunter v. American Coastline R.R. Co., 200 U.S. 273, 284, 26 S.Ct. 252, 50 L.Ed. 477 (1906); Vol. 3 Moore's Federal Practice, ¶ 13.19(2) (2d Ed. 1974)).

The Court went on to note that the type of waiver "is limited to a counterclaim asserted defensively in recoupment, for the purpose of defeating or diminishing a state's recovery, but not to a counterclaim asserted for the purpose of obtaining an affirmative judgment." 453 F.Supp. at 590 (citing Fort Fetterman v. South Carolina State Hwy. Dept., 261 F.2d 563, 569 (4th Cir. 1958)).

ACBL and ACL's Counterclaim is a compulsory counterclaim which was required to be filed. Both the Counterclaim and the Cross-Claim are ancillary demands arising out of the event which is the subject of the State's claim in limitation. Rule 13 of the Federal Rules of Civil Procedure specifically authorizes a cross-claim against a co-party arising out of the transaction or occurrence that is the subject matter of the original action or of a counterclaim therein.

Rule 13 has been interpreted to permit a party seeking limitation to assert a cross-claim against another party in a limitation action. Indeed, the State of Texas and the ACBL and ACL interests are "co-parties" as respects the limitation of Brown Water in that both are claimants in the Brown Water limitation. See In Re Central Gulf Lines, Inc., 204 F.R.D. 87 (E.D. La. 2001) (recognizing that a party in limitation may assert a cross-claim against another party in a limitation where the parties are co-parties and are aligned on one or more issues.) In multi-party litigation, the parties have different alignments depending upon the claim as was noted by the District Court in In Re Central Gulf Lines, Inc.:

> In the present action, the parties have different alignments depending on the claim. Certainly, Waterman/CGL [parties seeking limitation] are adverse to parties in the main limitation action and in the counterclaim. However, regarding the claims of the cargo claimants ... their interest relative to the cargo claimants were aligned. The fact that the interests of Waterman and CGL [parties seeking limitation] were adverse to that of Baron [limitation claimant] in the main demand and the counterclaim does not extinguish Waterman/CGL's right to file a cross-claim against them related to the claims of the

> cargo claimants. The interests of Waterman, CGL and Baron are aligned in the sense that they all sought to defeat the cargo claims.

204 F.R.D. at 91. It is therefore respectfully submitted that proper pleading practices have been followed by ACBL, ACL, and others.

3. **Waiver of Immunity.**

It is suggested that the State of Texas has waived immunity on the basis of the Texas Tort Claims Act. In particular, TX. CIV. PRAC. & REM. CODE at § 101.021(2) provides that a governmental unit of the State of Texas is liable for: "Personal injury and death so caused by a condition or use of tangible personal or real property if the governmental unit would, were it a private person, be liable to the claimant according to Texas law."

In County of Cameron v. Brown, 80 S.W.3d 549 (No. 00-1020, S. Ct. of Texas 5/23/02), a vehicular accident occurred on the Queen Isabella Causeway. The plaintiffs allege that a failed block of lights at the end of an elevated section of the causeway constituted a premises defect for which the Texas Tort Claims Act waived immunity. The Supreme Court held that, considering the Causeway's particular characteristics, the large block of non-functioning street lights, and the State's knowledge of the danger to Causeway users, that the pleading did not affirmatively negate the existence of an unreasonably dangerous condition. 80 S.W. 3d at 559. However, because of the plaintiffs' pleading of their lawsuit, the Supreme Court remanded the case to the trial court to provide the plaintiffs the opportunity to amend and affirmed the Court of Appeal's judgment reversing the trial court's dismissal for lack of jurisdiction and for failing to state a claim under the Texas Tort Claims Act.

The ancillary demands filed in this proceeding seek contribution, indemnity setoff and/or recoupment against the State of Texas and were required to be filed. Based upon County of Cameron, ACBL and ACL's ancillary demands are well founded in the event the evidence in this case ultimately establishes a deficient condition in the Queen Isabella Causeway which proximately caused the collision. It is respectfully suggested that the County of Cameron v. Brown decision of the Texas Supreme Court provides another independent basis upon which the State of Texas' motion should be denied. It is noted that this decision and the Texas Tort Claims Act are ignored by the State of Texas in its pending motion.

**CONCLUSION**

For the above and foregoing reasons, it is respectfully submitted that the State of Texas' motion be denied in all respects.

Respectfully submitted,

Glenn G. Goodier, Attorney-in-Charge
By Order Entered 4/23/02
Jones, Walker, Waechter, Poitevent,
Carrère & Denègre, L.L.P.
201 St. Charles Avenue - 48th Floor
New Orleans, Louisiana 70170-5100
Telephone: (504) 582-8174
Facsimile: (504) 582-8010

LES CASSIDY
State Bar Number 03979270
Federal Identification Number 5931
1020 Bank of America
500 North Water Street
Corpus Christi, Texas 78471
Telephone: (361) 887-2969
Facsimile: (361) 886-3299

OF COUNSEL:

WOOLSEY & CASSIDY, P.C.
1020 Bank of America
500 North Water Street
Corpus Christi, Texas 78471
Telephone: (361) 887-2969
Facsimile: (361) 886-3299

Counsel for Petitioners,
American Commercial Lines LLP and
American Commercial Barge Line LLC
and Deere Credit, Inc. (formerly Senstar Finance Company), as Owner of the Barge NM-315, State Street Bank and Trust Company of Connecticut, N.A., as Owner/Trustee of the Barge ACL-9933B and Not in Its Individual Capacity, and General Electric Capital Corporation, as Beneficial Owner of the Barge ACL-9933B

**CERTIFICATE OF SERVICE**

I hereby certify that a copy of the foregoing has been properly mailed to all known potential parties and/or their counsel on this 3rd day of January, 2003.

GLENN G. GOODIER