*218*

United States District Court
Southern District of Texas
FILED

JAN 0 7 2003

Michael N. Milby
Clerk of Court

# IN THE UNITED STATES DISTRICT COURT
## FOR THE SOUTHERN DISTRICT OF TEXAS
### BROWNSVILLE DIVISION

| | | |
|---|---|---|
| IN RE THE COMPLAINT AND | § | |
| PETITION OF BROWN WATER | § | C. A. NO. B-01-157 |
| TOWING I, INC., AS OWNER, AND | § | Admiralty |
| BROWN WATER MARINE SERVICE, | § | |
| INC., AS BAREBOAT CHARTERER, OF | § | |
| THE BROWN WATER V, ITS ENGINES, | § | |
| TACKLE, ETC. IN A CAUSE OF | § | |
| EXONERATION FROM OR | § | |
| LIMITATION OF LIABILITY | § | |
| | § | Consolidated with |
| | § | |
| IN RE THE COMPLAINT AND | § | |
| PETITION OF AMERICAN | § | C. A. NO.  B-02-004 |
| COMMERCIAL LINES LLC AS | § | Admiralty |
| OWNER, AND, and AMERICAN | § | |
| COMMERCIAL BARGE LINES, LLC, | § | |
| AS CHARTERER OF THE BARGES | § | |
| NM-315,VLB-9182,ACL-9933B, | § | |
| VLB-9173, IN A CAUSE OF | § | and |
| EXONERATION FROM OR | § | |
| LIMITATION OF LIABILITY | § | |
| | § | |
| IN RE THE COMPLAINT AND PETITION OF | § | C.A. NO. B-02-125 |
| DEERE CREDIT, INC., (FORMERLY | § | Admiralty |
| SENSTAR FINANCE COMPANY), AS | § | |
| OWNER OF THE BARGE NM-315 AND | § | |
| STATE STREET BANK AND TRUST | § | |
| COMPANY OF CONNECTICUT, | § | |
| NATIONAL ASSOCIATION, AS OWNER | § | |
| TRUSTEE OF THE BARGE ACL-9933B AND | § | |
| NOT IN ITS INDIVIDUAL CAPACITY, AND | § | |
| GENERAL ELECTRIC CAPITAL | § | |
| CORPORATION, AS BENEFICIAL OWNER | § | |
| OF THE BARGE ACL-9933B PRAYING FOR | § | |
| EXONERATION FROM AND/OR | § | |
| LIMITATION OF LIABILITY | § | |

49477:1041528.1:010303

**BROWN WATER MARINE SERVICE, INC. AND
BROWN WATER TOWING I, INC.'S RESPONSE TO
<u>STATE OF TEXAS' MOTION TO DISMISS</u>**

TO THE HONORABLE JUDGE OF THIS COURT:

Pursuant to Rule 12b of the Federal Rules of Civil Procedure, Petitioners Brown

Water Marine Service, Inc. and Brown Water Towing I, Inc. ("Brown Water") file this

Response to the Motion to Dismiss filed by the State of Texas ("State") in the above-styled

and numbered cause.

# TABLE OF CONTENTS

Table of Contents  . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . ii

Table of Citations  . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . iii

Statement of the Nature and Stage of the Proceeding  . . . . . . . . . . . . . . . . . . . . . . . . . . . . 1

Statement of the Issues to be Ruled Upon  . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 1

Summary of the Argument  . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 2

 A. Limitation of Liability Proceeding and Sovereign Immunity  . . . . . . . . . . . . . 2

 B.  Counter-Claim against the State and Sovereign Immunity  . . . . . . . . . . . . . . 2

Argument and Authorities  . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 3

 A. Limitation of Liability Proceeding and Sovereign Immunity  . . . . . . . . . . . . . 3

 B.  Counter-Claim against the State and Sovereign Immunity  . . . . . . . . . . . . . . 12

Conclusion  . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 15

Prayer  . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 16

Certificate of Service  . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 18

## TABLE OF CITATIONS

**Cases**

*Bouchard Transp. Co., Inc. v. Environmental Protection Agency,*
 *State of Florida*, 147 F.3d 1344 (11ᵗʰ Cir. 1998), *cert. denied*,
 525 U.S. 1140, 119 S.Ct. 1030, 143 L.Ed.2d 39 (1999) . . . . . . . . . . . . . . . . . . 5-7

*California v. Deep Sea Research*, 523 U.S. 491, 118 S.Ct. 1464,
 140 L.Ed.2d 626 (1998) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 6-7

*Cory v. White*, 457 U.S. 85, 102 S.Ct. 2325 (1982) . . . . . . . . . . . . . . . . . . . . . . . . . . 8

*County of Cameron v. Brown*, 80 S.W.3d 549 (Tex. 2002) . . . . . . . . . . . . . . . . . . 12-13

*Ex Parte Green*, 286 U.S. 437, 52 S.Ct. 602 (1932) . . . . . . . . . . . . . . . . . . . . . . . . . . 9

*Fitzgerald v. Unidentified Wrecked and Abandoned Vessel,*
 866 F.2d 16 (1ˢᵗ Cir. 1989) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 8

*Florida Dep't of State v. Treasure Salvors, Inc.*, 458 U.S. 670,
 1983 AMC 144, 157 (1982) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 11

*Ford Motor Co. v. Treasury Department*, 323 U.S. 459 (1945) . . . . . . . . . . . . . . . . . . 10

*Gunter v. American Coastline R.R. Co.*, 200 U.S. 273,
 26 S.Ct. 252, 50 L.Ed. 477 (1906) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 14

*In the Matter of Abaco Treasure Ltd*, 1993 A.M.C. 1976
 (S.D. Fla. 1993) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 10-11

*In the Matter of Kristie Leigh Enterprises, Inc.,*
 *as Owner of M/V Kristie Leigh*, 168 F.3d 206 (5ᵗʰ Cir. 1999) . . . . . . . . . . . . . . . 5

*In the Matter of Sandbar I and F & L Towing*, 1993 A.M.C. 1312,
 1992 U.S. Dist. LEXIS 5353 (E.D. La. 1992) . . . . . . . . . . . . . . . . . . . . . . . . . 7-10

*Just v. Chambers*, 312 U.S. 383, 61 S.Ct. 687, 85 L.Ed. 903 (1941) . . . . . . . . . . . . . . 3

*Langnes v. Green*, 282 U.S. 531, 51 S.Ct. 243 (1931) . . . . . . . . . . . . . . . . . . . . . . . . . 9

*Maryland Port Admin. v. SS American Legend*, 453 F.Supp. 584
 (D. Md. 1978) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 14-15

*Petition of A/S J. Ludwig Mowinckels Rederi*, 268 F.Supp. 682
    (S.D. N.Y. 1967), *aff'd*, 422 F.2d 728 (2d Cir. 1970) . . . . . . . . . . . . . . . . . . 4, 7-8

**Statutes, Rules, and other Authority**

46 U.S.C. § 183 . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 3, 5, 11

TEX. CIV. PRAC. & REM. CODE §§ 101.001(3)(A)-(B), 101.025 . . . . . . . . . . . . . . . . . . 12

Martin J. Norris, *The Law of Maritime Personal Injuries* § 7:7 (1990) . . . . . . . . . . . . . . 9

## STATEMENT OF THE NATURE AND STAGE OF THE PROCEEDING

1. This is an admiralty case that arose following the allision of a tug and four barges with the Queen Isabella Causeway in September 2001.

2. Following the allision, pursuant to federal statute, the tug and barges initiated limitation of liability proceedings in this Court seeking to limit their respective liability, if any, for any damages that may have been incurred as a result of the allision.

3. Several claims and lawsuits were subsequently filed against the tug and barges. One of the claimants is the State of Texas, the owner of the Queen Isabella Causeway. In response to the State's claim and lawsuit against the tug ("Brown Water"), a counter-claim was filed by Brown Water against the State.

4. The State has now filed a motion to dismiss the limitation of liability proceeding and the counter-claim. The State makes two contentions. First, the State contends that the limitation of liability proceeding filed by Brown Water should be dismissed as to the State because of the State's sovereign immunity under the Eleventh Amendment. Second, the State contends that the counter-claim filed by Brown Water against the State should be dismissed because of the State's sovereign immunity under the Eleventh Amendment.

## STATEMENT OF THE ISSUES TO BE RULED UPON

5. There are two issues before the Court: (a) whether a state's sovereign immunity under the Eleventh Amendment bars a limitation of liability proceeding in admiralty, and (b) whether a state may assert sovereign immunity to bar a counter-claim that was filed in

response to the state's claim that arose from the same event and that was filed only as a defensive measure to defeat or diminish the state's claim.

### SUMMARY OF THE ARGUMENT

#### A. Limitation of Liability Proceeding and Sovereign Immunity

6.  The limitation of liability proceeding initiated by Brown Water in this Court is not a suit against the State.  It is merely a procedural device provided by federal statute to place reasonable limits on what may be multiple claims made against a ship owner as a result of a maritime casualty as a prospective defendant.  The action seeks no affirmative relief from the State or any other party.  Therefore, as all the case law that address this precise issue clearly hold, a limitation of liability proceeding is not barred by a state's sovereign immunity under the Eleventh Amendment.

#### B. Counter-Claim against the State and Sovereign Immunity

7.  The counter-claim filed by Brown Water against the State is not barred by sovereign immunity under the Eleventh Amendment.  The State has waived its sovereign immunity under the Texas Tort Claims Act because the State's acts and omissions in maintaining the premises–i.e., the Queen Isabella Causeway–created an unreasonably dangerous condition.  Consequently, under such circumstances, a governmental unit's sovereign immunity is waived pursuant to Texas statute.  Further, by filing a claim against Brown Water as a result of the allision, the State has waived its sovereign immunity from a counter-claim filed by Brown Water arising out of the same event.  Because Brown Water's

counter-claim arises out the same event that gave rise to the State's claim, and is only defensive in nature, the State has waived its sovereign immunity and Eleventh Amendment protection.

## ARGUMENT & AUTHORITIES

### A. Limitation of Liability Proceeding and Sovereign Immunity

8. The limitation of liability proceeding filed in this case by Brown Water, provided by federal statute enacted by the Congress in 1851 ("Act"), is not barred by the State's sovereign immunity under the Eleventh Amendment. *See* 46 U.S.C. § 183.

9. The statutory provision for limitation of liability, enacted in the light of the maritime law of modern Europe and of legislation in England, has been broadly and liberally construed in order to achieve its purpose to encourage investments in shipbuilding and to afford an opportunity for the determination of claims against the vessel and its owner. *Just v. Chambers*, 312 U.S. 383, 385, 61 S.Ct. 687, 690, 85 L.Ed. 903 (1941).

10. The Act looks to a complete disposition of what may be a "many cornered controversy," thus applying to proceedings *in rem* against the ship as well as to proceedings *in personam* against the owner, the limitation extending to the owner's property as well as to his person. *Id.* at 386, 61 S.Ct. at 690. It applies to cases of personal injury and death, as well as to cases of injury to property. *Id.*, 61 S.Ct. at 690.

11. Notably, when the jurisdiction of the court in admiralty has attached through a petition for limitation, the jurisdiction to determine claims is not lost merely because the

shipowner fails to establish his right to limitation. *Id.*, 61 S.Ct. at 690. Rather, the Supreme Court holds "that the court of admiralty in such a proceeding acquires the right to marshal all claims, whether of strictly admiralty origin or not, and to give effect to them by the apportionment of the *res* and by judgment *in personam* against the owner, so far as the court may decree." *Id.*, 61 S.Ct. at 690. And that, if Congress has this constitutional power, it necessarily follows, as incidental to that power, that it may furnish a complete remedy for the satisfaction of those claims by distribution of the *res* and by judgments *in personam* for deficiencies against the owner, if he is not released by virtue of the statute. *Id.*, 61 S.Ct. at 690.

12.    While it is recognized that the equitable rule for retaining jurisdiction in order completely to dispose of a cause does not usually apply in admiralty, the proceeding for limitation of liability is different from the ordinary admiralty suit and, by reason of the statute and rules governing it, the court of admiralty has authority to grant an injunction and thus bring litigants into the admiralty court. *Id.* at 386-87, 61 S.Ct. at 690-91. There is thus jurisdiction to fulfill the obligation to do equity to claimants by furnishing them a complete remedy even if limitation is later refused. *Id.* at 387, 61 S.Ct. at 690-91.

13.    Lastly, "[a] limitation proceeding is a defensive action of a unique sort; it is equitable in nature, partaking 'in a way of the features of a bill to enjoin a multiplicity of suits . . . .'" *Petition of A/S J. Ludwig Mowinckels Rederi*, 268 F.Supp. 682, 688 (S.D. N.Y. 1967), *aff'd*, 422 F.2d 728 (2d Cir. 1970).

14. In its motion to dismiss, the State contends that it is immune from the effect of 46 U.S.C. § 183–the Act–because of its sovereign immunity under the Eleventh Amendment.

15. The effect of sovereign immunity on a limitation of liability proceeding has been addressed by other courts. While acknowledging these decisions in its motion, the State dismisses them and generally assails their respective analyses. However, there is not a single reported decision that resolves this issue in the manner the State advocates in its motion. Further, the State's criticism of the only decisions that address this issue is merely fanciful and sophomoric.

16. The first significant decision that addresses the precise issue raised by the State in its motion to dismiss is *Bouchard Transp. Co., Inc. v. Environmental Protection Agency, State of Florida*, 147 F.3d 1344 (11th Cir. 1998), *cert. denied*, 525 U.S. 1140, 119 S.Ct. 1030, 143 L.Ed.2d 39 (1999). Notably, while the State represents to this Court in its motion that the *Bouchard* decision was not appealed to a higher court, it was appealed to a higher court–*i.e.*, the Supreme Court of the United States–but was essentially affirmed on appeal.[1] In *Bouchard*, the Court held that a limitation of liability action is not barred by by a state's sovereign immunity under the Eleventh Amendment. *See Bouchard Transp. Co.*, 147 F.3d at 1349.

---

[1] The *Bouchard* decision has been cited with approval by the Fifth Circuit Court of Appeals. *See In the Matter of Kristie Leigh Enterprises, Inc., as Owner of M/V Kristie Leigh*, 168 F.3d 206, 209 (5th Cir. 1999) (approving holding that a rule that the limitation of liability fund should be reduced dollar-for-dollar by the amount of a settlement entered into by the shipowner is inconsistent with Supplemental Rule F(8)).

17. The *Bouchard* Court properly framed the issue: "Whether Florida is entitled to Eleventh Amendment immunity from the limitation proceeding." *See id.* at 1348. The Court then began its analysis of the issue by noting that the Eleventh Amendment prevents a suit in federal court against a state by a citizen of that state or any other state. *See id.* (citing *California v. Deep Sea Research*, 523 U.S. 491, 118 S.Ct. 1464, 140 L.Ed.2d 626 (1998)). The Court determined that "it must [first therefore] determine whether the filing of a limitation proceeding . . . constitutes a suit against Florida." *See id.*

18. Although the language of the Eleventh Amendment literally applies only to "any suit in law or equity," the *Bouchard* Court observed that the Supreme Court has interpreted the Amendment's restrictions to include federal maritime jurisdiction. *See id.* (citing *Deep Sea Research*, 523 U.S. at 503, 118 S.Ct. at 1471). The Court specifically noted that the Supreme Court's opinion in *Deep Sea Research* addresses the application of the Eleventh Amendment in the context of an admiralty proceeding. *See id.* (citing 523 U.S. at 494-95, 118 S.Ct. at 1467).

19. As addressed in *Bouchard*, in *Deep Sea Research*, the Supreme Court rejected California's assertion of Eleventh Amendment immunity from an *in rem* admiralty action. *See Bouchard*, 147 F.3d at 1349 (citing *Deep Sea Research*, 523 U.S. at 494-95, 118 S.Ct. at 1467). The Supreme Court expressly held that the Eleventh Amendment does not bar an *in rem* admiralty action where the state does not have actual possession of the *res*:

> Based on longstanding precedent respecting the federal courts' assumption of
> in rem admiralty jurisdiction over vessels that are not in the possession of a

> sovereign, we conclude that the Eleventh Amendment does not bar federal
> jurisdiction over the *Brother Jonathan* and, therefore, that the District Court
> may adjudicate DSR's and the State's claims to the shipwreck.

*Id.* (quoting *Deep Sea Research*, 523 U.S. at 507-08, 118 S.Ct. at 1473).

20. Although, as correctly noted in *Bouchard*, an admiralty limitation proceeding is not an *in rem* action, "it is sufficiently analogous for *Deep Sea Research* to compel the conclusion that [the state] is not entitled to sovereign immunity." *See id.* at 1349. "Like an *in rem* proceeding, the plaintiffs in the limitation proceeding neither named any specific entities as defendants in their complaints nor formally served process on any defendants." *Id.*; *see also A/S J. Ludwig Mowinckels Rederi*, 268 F.Supp. at 688. "Instead, the plaintiffs posted security bonds with the district court in the amount of their maximum liability and the district court notified potential claimants to make their claims on the *res* deposited with the district court." *Id.*

21. As in *Deep Sea Research*, the Court in *Bouchard* concluded that the state "does not have possession of the disputed *res*–the bonds are part of the record of this case, currently in the possession of the federal judiciary." *See id.* at 1349. Accordingly, the Court held that state "is not entitled to Eleventh Amendment immunity from the limitation proceeding." *See id.*

22. The next decision that addresses the precise issue raised by the State in its motion to dismiss is *In the Matter of Sandbar I and F & L Towing*, 1993 A.M.C. 1312, 1992 U.S. Dist. LEXIS 5353 (E.D. La. 1992). "[A] limitation action is simply a procedure by which

the court defines the fund available for recovery in a future lawsuit." *Sandbar I and F & L Towing*, 1993 A.M.C. 1312, 1992 U.S. Dist. LEXIS 5353, at *7. The proceeding is so thoroughly defensive in nature that it falls wholly outside the scope of "suit against a state" as used in the Eleventh Amendment. *See id.*; *A/S J. Ludwig Mowinckels Rederi*, 268 F.Supp. at 688.

23.   In distinguishing other actions that the state sought to analogize to a limitation action, the court in *Sandbar I* stated, "[b]oth interpleader actions and salvage cases more closely resemble an action for declaratory relief than a limitation proceeding." *See id.* at *7-8. In those kind of cases, the court concluded, "the primary adversarial issues were at the heart of the federal cases." *See id.* at *8.

24.   For example, in *Cory*, the issue was avoiding double taxation by paying both California and Texas estate taxes. *See id.* at *8 (citing *Cory v. White*, 457 U.S. 85, 102 S.Ct. 2325 (1982)). In the salvage cases, the issue was resolving competing claims to a sunken vessel. *See id.* (citing *Fitzgerald v. Unidentified Wrecked and Abandoned Vessel*, 866 F.2d 16 (1st Cir. 1989)).

25.   In contrast, the issue before the court in a limitation proceeding is "whether Petitioner will be able to limit its liability for claims arising out of an accident, and what the limitation fund will be." *See id.* "These are defensive issues which the Petitioner as prospective defendant raises." *Id.*; *see also A/S J. Ludwig Mowinckels Rederi*, 268 F.Supp.

at 688. "[T]he primary adversarial issue between these parties is whether the vessel owner is liable to [the state] in money damages." *Id.*

26.    The court in *Sandbar I* also noted that as further evidence of the defensive nature of a limitation proceeding, a vessel owner may plead the limitation statute as a defense to a suit instead of petitioning for limitation of liability as Petitioners did in this case. *See id.* at *8 (citing Martin J. Norris, *The Law of Maritime Personal Injuries* § 7:7 (1990)). Further, such a defense may be asserted in state court as well as federal court. *See id.* at *9 (citing *Langnes v. Green*, 282 U.S. 531, 51 S.Ct. 243 (1931)).

27.    If, however, the party seeking to recover in state court from the vessel owner challenges the owner's right to limit liability, the limitation issue must be decided in federal court since that issue arises under the federal court's exclusive admiralty jurisdiction. *See id.* at *9. Once the owner's right to limited liability is put into issue, the federal district court has the obligation to decide that issue and the "authorization to resume jurisdiction and dispose of the whole case." *See id.* (citing *Ex Parte Green*, 286 U.S. 437, 440, 52 S.Ct. 602, 603 (1932)).

28.    "Because the vessel owner asserts the same rights under the same statute whether by defense or petition, and never can recover money pursuant to that statute, "[a] petition for exoneration from, or limitation of, liability is always a defensive action." *See id.* (quoting Martin J. Norris, *The Law of Maritime Personal Injuries* § 7:2 (1990)).

29. The court in *Sandbar I* held that the dual availability of limitation rights by answer and by the owner's own petition indicates that a limitation proceeding is not a "suit" against a state. *See id.* at *10.

30. "Regardless of what court determines the issues of liability, it will become apparent in that proceeding that [the state] is the *de facto* plaintiff in this matter." *Id.* The state's "actions and intentions in seeking to recover for the damages it allegedly sustained are the impetus for all legal action arising from the bridge collision." *Id.* The court in *Sandbar I* concluded its holding by stating:

> A petition for limitation of liability is nothing more than a statutory procedure to secure a vessel owner's rights in defending a prospective suit for damages. It is *not a suit* itself, as contemplated by the Eleventh Amendment, and thus *not barred* by that Amendment's protection of sovereign immunity.

*Id.* at *10 (emphasis added).

31. The court in *In the Matter of Abaco Treasure Ltd*, 1993 A.M.C. 1976 (S.D. Fla. 1993) reached the same result. As the other courts addressing this noted, the court in *Abaco Treasure* recognized that, generally, the Eleventh Amendment prohibits actions against states in federal court. *See id.* at *1976. The court agreed with the state in *Abaco Treasure* "that the relevant questions to determine the existence of immunity are whether the action is against the state, and whether the state consented to be sued in federal court." *See id.* (citing *Ford Motor Co. v. Treasury Department*, 323 U.S. 459, 462 (1945)). However, the court determined that it "need only reach the first question as the instant action was not a suit against the state." *See id.*

32. The court stated that the purpose of the limitation of liability act is to create a forum through which all claims may be administered, assuming of course that the petitioner is entitled to said limitation. *See id.* "The state's argument under the Eleventh Amendment is tenuous at best." *Id.* at *1977. In dismissing the state's theory, the district court commented that the theory "seems to be that if liability is limited, the state treasury is affected because the state will have to make repairs to the damaged property." *See id.* However, under such a broad reading of the Eleventh Amendment, the district court found that "the state would never be subject to the jurisdiction of a federal court because the treasury will always be indirectly affected by any suit that is filed." *See id.* (citing *Florida Dep't of State v. Treasure Salvors, Inc.*, 458 U.S. 670, 681, 1983 AMC 144, 157 (1982)).

33. In conclusion, this Court should reach the same conclusion as every other court that has addressed this issue: The Eleventh Amendment does not provide the state with sovereign immunity to bar a limitation of liability proceeding initiated by a ship owner under 46 U.S.C. § 183. A limitation of liability action is merely a procedural device that is entirely defensive in nature. The action does not seek the recovery of any damages against the State, beyond contribution. Indeed, it is Brown Water who is the prospective defendant in the action. Therefore, the action is not a suit against the State for purposes of Eleventh Amendment analysis. The State's arguments to the contrary are supported by no relevant authority and should be rejected.

## B. Counter-Claim against the State and Sovereign Immunity

34. In response to the claim filed by the State against it, Brown Water has filed a counter-claim against the State seeking contribution from the State under Texas law for its own conduct in failing to maintain the lights and fendering system on the Queen Isabella Causeway at the time of the allision.

35. In its motion to dismiss, the State seeks dismissal of Brown Water's counter-claim because of sovereign immunity under the Eleventh Amendment. The State cites two federal cases in an attempt to support its contention. However, neither of the cases address Texas law nor the Texas Tort Claims Act. The Texas Tort Claims Act allows Brown Water to maintain its counter-claim against the State because under the facts and circumstances alleged by Brown Water, the State has waived its sovereign immunity.

36. Generally, the State, its agencies, and subdivisions, such as counties, enjoy sovereign immunity from tort liability unless immunity has been waived. *See County of Cameron v. Brown*, 80 S.W.3d 549, 554 (Tex. 2002) (citing TEX. CIV. PRAC. & REM. CODE §§ 101.001(3)(A)-(B), 101.025). The Tort Claims Act expressly waives sovereign immunity in three general areas: "use of publicly owned automobiles, premises defects, and injuries arising out of conditions or use of property." *See id.*

37. The Act provides that a governmental unit is liable for injury and death caused by a condition of real property "if the governmental unit would, were it a private person, be liable to the claimant according to Texas law." *See id.* With respect to ordinary premises

defects, the Act provides that the governmental duty owes a claimant "the duty that a private person owes to a licensee on private property." *See id.* Thus, a governmental unit may be liable for an ordinary premises defect if a private person would be liable to a licensee under the same circumstances. *See id.*

38.   A claimant asserting a premises-defect claim must generally show that the defendant possessed–that is, owned, occupied, or controlled–the premises where the injury occurred. *See id.* A property possessor must not injure a licensee by willful, wanton, or grossly negligent conduct, and must use ordinary care either to warn a licensee of a condition that presents an unreasonable risk of harm of which the possessor is actually aware and the licensee is not, or to make the condition reasonably safe. *See id.*

39.   Under a premises-defect theory, if the pleadings show that the governmental unit's acts or omissions were the result of willful conduct, wanton conduct or were grossly negligent that resulted in an unreasonably dangerous condition, then under the Texas Tort Claims Act, the claim may not be dismissed because of the State's sovereign immunity because, if proved, the State has waived its sovereign immunity. *See County of Cameron*, 80 S.W.3d at 555-59.[2]

---

[2] The issue in *County of Cameron* was whether the State was entitled to sovereign immunity against allegations by the plaintiffs that the State failed to maintain the street lights on the Queen Isabella Causeway, the same bridge at issue in this case with similar allegations made against the State by Brown Water in its counter-claim. *See* 80 S.W.3d at 552-54. The Texas Supreme Court held that "considering the causeway's particular characteristics, the large block of nonfunctioning streetlights [and the State's] own knowledge of the danger to causeway users" show that jurisdiction of the lawsuit is properly vested in the state district court because, if properly pled, the allegations show
(continued...)

40. As in *County of Cameron*, the allegations made against the State in Brown Water's counter-claim show that the State's failure to maintain the bridge's lights and fendering system created an unreasonably dangerous condition; thus, pursuant to the Texas Tort Claims Act, the State has waived its sovereign immunity provided by the Eleventh Amendment. *See* 80 S.W.3d at 552-54.

41. There is another reason why the State has waived its sovereign immunity as to Brown Water's counter-claim against the State. By filing a claim against Brown Water to recover damages, the State has waived its sovereign immunity. "A state waives its immunity and Eleventh Amendment protection with respect to a counter-claim arising out of the same event which is the subject of the state's claims." *Maryland Port Admin. v. SS American Legend*, 453 F.Supp. 584, 590 (D. Md. 1978) (citing *Gunter v. American Coastline R.R. Co.*, 200 U.S. 273, 284, 26 S.Ct. 252, 50 L.Ed. 477 (1906)). The waiver expressly applies where the counter-claim is asserted defensively in recoupment for the purpose of defeating or diminishing a state's recovery, but not to a counter-claim asserted for the purpose of obtaining an affirmative judgment. *See id.*

42. Here, the State filed a claim against Brown Water affirmatively seeking the recovery of millions of dollars for alleged damages as a result of the allision. The counter-claim asserted against the State by Brown Water is wholly defensive. The counter-claim

---

[2](...continued)

that the State waived its sovereign immunity under the Texas Tort Claims Act by creating an unreasonably dangerous condition. *See id.* at 559.

does not seek any affirmative relief, beyond contribution. Indeed, the counter-claim merely seeks contribution from the State, specifically praying only for "contribution from the State of Texas in the unlikely event that any claimant is successful in establishing a claim against Brown Water . . . ." In other words, the counter-claim was filed only to defeat or diminish the State's claims against Brown Water. *See id.*

43. As a result of the State's decision to file an affirmative claim against Brown Water, the State has waived its sovereign immunity and Eleventh Amendment protection from the counter-claim filed by Brown Water, which counter-claim arose from the same event as the State's claim and was filed only in response to the State's claim as purely a defensive measure. *See Maryland Port Admin.*, 453 F.Supp. at 590.

### CONCLUSION

44. The State's motion to dismiss should be denied. The limitation of liability proceeding initiated by Brown Water in this Court is not a suit against the State. It is merely a procedural device provided by federal statute to place reasonable limits on what may be multiple claims made against a ship owner as a result of a maritime accident, as a prospective defendant. The action seeks no affirmative relief from the State or any other party. Therefore, as all the case law that address this precise issue clearly hold, a limitation of liability proceeding is not barred by a state's sovereign immunity under the Eleventh Amendment.

45. Nor is Brown Water's counter-claim against the State barred by sovereign immunity under the Eleventh Amendment. The State has waived its sovereign immunity under the Texas Tort Claims Act because the State's acts and omissions in maintaining the premises–*i.e.*, the Queen Isabella Causeway–created an unreasonably dangerous condition. Consequently, under such circumstances, a governmental unit's sovereign immunity is waived pursuant to Texas statute. Further, by filing a claim against Brown Water as a result of the allision, the State has waived its sovereign immunity from a counter-claim from Brown Water arising out of the same event. Because Brown Water's counter-claim arises out the same event that gave rise to the State's claim, seeks no affirmative relief and is only defensive in nature, the State has waived its sovereign immunity and Eleventh Amendment protection.

## PRAYER

WHEREFORE, PREMISES CONSIDERED, Petitioners Brown Water Marine Service, Inc. and Brown Water Towing I, Inc., pray that upon final hearing, the State's motion to dismiss be denied in its entirety and that Petitioners be awarded costs and all other relief to which Petitioners may be entitled at law, in equity, or in admiralty.

Respectfully submitted,

Will Pierson
State Bar No. 16003100
Federal I.D. No. 1931
Keith N. Uhles
State Bar No. 20371100
Federal ID No. 1936
1700 Wilson Plaza West
606 North Carancahua
Corpus Christi, TX 78476
(361) 884-8808 office
(361) 884-7261 fax
Attorneys for Petitioners, Brown Water Towing I,
Inc. and Brown Water Marine Service, Inc.

OF COUNSEL:

ROYSTON, RAYZOR, VICKERY & WILLIAMS, L.L.P.

## CERTIFICATE OF SERVICE

I certify that the foregoing was mailed by the means indicated to the counsel listed below on this ⟨6th⟩ day of January, 2003.

**CERTIFIED MAIL,**
**RETURN RECEIPT REQUESTED**
Mr. Jack F. Gilbert
Office of the Attorney General
Transportation Division
Post Office Box 12548
Austin, Texas 78711-2548

Mark J. Spansel
Adams & Reese, L.L.P.
4500 One Shell Square
New Orleans, LA 70139

**REGULAR MAIL**
Mr. Heriberto Medrano
Law Offices of Heriberto Medrano
1101 West Tyler
Harlingen, Texas 78550

Mr. James B. Manley
Attorneys at Law
3616 Preston Road
Pasadena, Texas 77505

Mr. Ray R. Marchan
WATTS & HEARD, L.L.P.
1926 E. Elizabeth
Brownsville, Texas 78520

John David Franz
The Law Offices of John David Franz
400 N. McColl
McAllen, Texas 78501

J. Chad Gauntt
Gauntt & Kruppstadt, L.L.P.
9004 Forest Crossing Drive, Suite C
The Woodlands, Texas 77381

William Q. McManus
Steve Q. McManus
McManus & Crane, L.L.P.
209 West Juan Linn
Post Office Box 2206
Victoria, Texas 77902-2206

Mr. Les Cassidy
Woolsey & Cassidy, P.C.
1020 Bank of America
500 North Water Street
Corpus Christi, Texas 78471

Ms. Veronica Farias
Law Office of Veronica Farias
2854 Boca Chica Blvd.
Brownsville, Texas 78521

Mr. Raymond Thomas/Mr. Andres Gonzalez
Kittleman, Thomas, Ramirez & Gonzales
4900-B N. 10th Street
McAllen, Texas 78504

Thomas R. Ajamie
S. Mark Strawn, Esq.
Schirrmeister Ajamie, L.L.P.
Pennzoil Place-South Tower
711 Louisiana Street, Suite 2150
Houston, Texas 77002

Julian Rodriguez, Jr.
Law Office of Julian Rodriguez, Jr.
100 W. Pecan
McAllen, Texas 78501

Thomas E. Quirk
Aaron & Quirk
901 N.E. Loop 410, Suite 903
San Antonio, Texas 78209-1307

Jim S. Hart
Nejd Yaziji
Williams Bailey Law Firm, L.L.P.
8441 Gulf Freeway, Suite 600
Houston, Texas 77017

Frank Enriquez
Robert Puente
Law Offices of Frank Enriquez
4200-B North Bicentennial
McAllen, Texas 78504

Richard Leo Harrell
The Edwards Law Firm, L.L.P.
802 N. Carancahua, Suite 1400 (78470)
P.O. Box 480
Corpus Christi, Texas 78403-0480

Mr. J. A. Magallanes
Carlos Escobar
Magallanes, Hinojosa & Mancias, P.C.
1713 Boca Chica Blvd.
Post Office Box 4901
Brownsville, Texas 78520

Mr. Geoffrey Amsel
SBC Management Services
1010 N. St. Mary's, Room 1403
San Antonio, Texas 78215

Glenn G. Goodier
Jones, Walker, Waechter, Poitevent, Carrere
    & Denegre, L.L.P.
201 St. Charles Ave., 48th Floor
New Orleans, LA 70170-5100

**OF ROYSTON, RAYZOR, VICKERY & WILLIAMS, L.L.P.**

IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF TEXAS
BROWNSVILLE DIVISION

| | | |
|---|---|---|
| IN RE THE COMPLAINT AND | § | |
| PETITION OF BROWN WATER | § | C. A. NO. B-01-157 |
| TOWING I, INC., AS OWNER, AND | § | Admiralty |
| BROWN WATER MARINE SERVICE, | § | |
| INC., AS BAREBOAT CHARTERER, OF | § | |
| THE BROWN WATER V, ITS ENGINES, | § | |
| TACKLE, ETC. IN A CAUSE OF | § | |
| EXONERATION FROM OR | § | |
| LIMITATION OF LIABILITY | § | |
| | § | Consolidated with |
| | § | |
| IN RE THE COMPLAINT AND | § | |
| PETITION OF AMERICAN | § | C. A. NO.  B-02-004 |
| COMMERCIAL LINES LLC AS | § | Admiralty |
| OWNER, AND, and AMERICAN | § | |
| COMMERCIAL BARGE LINES, LLC, | § | |
| AS CHARTERER OF THE BARGES | § | |
| NM-315,VLB-9182,ACL-9933B, | § | |
| VLB-9173, IN A CAUSE OF | § | and |
| EXONERATION FROM OR | § | |
| LIMITATION OF LIABILITY | § | |
| | § | |
| | § | |
| IN RE THE COMPLAINT AND PETITION OF | § | C.A. NO. B-02-125 |
| DEERE CREDIT, INC., (FORMERLY | § | Admiralty |
| SENSTAR FINANCE COMPANY), AS | § | |
| OWNER OF THE BARGE NM-315 AND | § | |
| STATE STREET BANK AND TRUST | § | |
| COMPANY OF CONNECTICUT, | § | |
| NATIONAL ASSOCIATION, AS OWNER | § | |
| TRUSTEE OF THE BARGE ACL-9933B AND | § | |
| NOT IN ITS INDIVIDUAL CAPACITY, AND | § | |
| GENERAL ELECTRIC CAPITAL | § | |
| CORPORATION, AS BENEFICIAL OWNER | § | |
| OF THE BARGE ACL-9933B PRAYING FOR | § | |
| EXONERATION FROM AND/OR | § | |
| LIMITATION OF LIABILITY | § | |

49477:1042383.1:010603

## ORDER

On this _____ day of January, 2003, came on to be considered, in the above-styled and numbererd cause, the State of Texas' Motion to Dismiss the limitation of liability proceeding initiated by Petitioner Brown Water Towing I, Inc. and  Brown Water Marine Service, Inc., and Petitioner Brown Water Towing I, Inc. and Brown Water Marine Service, Inc.'s counter-claim filed against the State of Texas.  After considering the motion and response, the Court finds that the motion should be DENIED.  It is therefore,

**ORDERED, ADJUDGED and DECREED** that the State of Texas' motion to dismiss is **DENIED**.

**SIGNED FOR ENTRY** this _____ day of _____, 2003, at Brownsville, Texas.

_____
**HON. HILDA G. TAGLE**
**United States District Court**