United States District Court
Southern District of Texas
FILED

JAN 2 7 2003

Michael N. Milby
Clerk of Court

## IN THE UNITED STATES DISTRICT COURT
## FOR THE SOUTHERN DISTRICT OF TEXAS
## BROWNSVILLE DIVISION

| | | |
|---|---|---|
| IN RE THE COMPLAINT AND PETITION | * | C.A. No. B-01-157 |
| OF BROWN WATER TOWING I, INC., | * | |
| AS OWNER, AND BROWN WATER MARINE | * | |
| SERVICE, AS BAREBOAT CHARTERER OF | * | |
| THE BROWN WATER V, ITS ENGINES, | * | |
| TACKLE, *ETC.* IN A CAUSE OF EXONERATION | * | |
| FROM OR LIMITATION OF LIABILITY | * | Consolidated with |
| And | * | |
| IN RE THE COMPLAINT AND PETITION | * | C.A. No. B-02-004 |
| OF AMERICAN COMMERCIAL LINES LLC | * | |
| AS OWNER, and AMERICAN COMMERCIAL | * | |
| BARGE LINES, LLC, AS CHARTERER OF | * | |
| THE BARGES NM-315, VLB-9182, ACL-9933B, | * | |
| And VLB-9173, IN A CAUSE OF EXONERATION | * | |
| FROM OR LIMITATION OF LIABILITY | * | |
| And | * | |
| IN RE THE COMPLAINT AND PETITION | * | C.A. No. B-02-125 |
| OF DEERE CREDIT, INC.(FORMERLY SENSTAR | * | |
| FINANCE COMPANY), AS OWNER OF THE | * | |
| BARGE NM-315, and STATE STREET BANK AND | * | |
| TRUST COMPANY OF CONNECTICUT, | * | |
| NATIONAL ASS'N,   AS OWNER TRUSTEE OF | * | |
| THE BARGE ACL-9933B and NOT IN ITS | * | |
| INDIVIDUAL CAPACITY, and GENERAL | * | |
| ELECTRIC CAPITAL CORPORATION, AS | * | |
| BENEFICIAL OWNER OF THE BARGE | * | |
| ACL-9933B, PRAYING FOR EXONERATION | * | |
| FROM AND/OR LIMITATION OF LIABILITY | * | |

### REPLY BRIEF IN SUPPORT OF THE STATE OF TEXAS'
### MOTION TO DISMISS ON THE BASIS OF SOVEREIGN IMMUNITY
### AND THE ELEVENTH AMENDMENT

COMES NOW the State of Texas (the "State") and files this Reply Brief in

support of its Motion to Dismiss on the Basis of Sovereign Immunity and the Eleventh

Amendment.  In accordance with this Court's rules, a Table of Contents and Table of

Authorities are provided.

TABLE OF CONTENTS

TABLE OF CONTENTS .......................................................................... i

TABLE OF AUTHORITIES ................................................................. iii

REPLY BRIEF IN SUPPORT OF THE STATE OF TEXAS' MOTION TO DISMISS
ON THE BASIS OF SOVEREIGN IMMUNITY AND THE ELEVENTH
AMENDMENT ................................................................................. 2

ARGUMENT AND AUTHORITIES ....................................................... 2

 I. The Limitation Act Cannot Be Constitutionally Applied to the State ... 2

  A. Petitioners' arguments regarding the maritime nature of a
   limitation action are of no constitutional significance because
   there is no "maritime commerce" exception to state sovereign
   immunity ............................................................................. 3

  B. Petitioners' argument that a limitation action is not a suit
   "against" the State fails in two respects ............................. 5

   1. These limitation proceedings are suits "against"
    the State ......................................................................... 6

   2. Even if through an exercise in semantics, these actions are
    not considered suits "against" the State, they are still
    barred by sovereign immunity, which extends beyond the
    literal wording of the Eleventh Amendment .............. 8

 II. Petitioners' counterclaims and cross-claims violate the State's
  sovereign immunity and must be dismissed ................................ 9

  A. The State has not voluntarily waived its sovereign immunity with
   respect to the counterclaims/cross-claims .......................... 10

  B. The Texas Tort Claims Act does not constitute a waiver of
   sovereign immunity as respects claims filed in federal court,
   nor does it waive sovereign immunity for contribution
   claims ............................................................................... 12

CONCLUSION ......................................................................... 15

CERTIFICATE OF SERVICE ............................................................ 19

## TABLE OF AUTHORITIES

**Cases**

*Alden v. Maine,* 527 U.S. 706, 119 S.Ct. 2240, 144 L.Ed.2d 636 (1999) ............. 10

*Blatchford v. Native Village of Noatak,* 510 U.S. 775, 111 S.Ct. 2578, 115 L.Ed.2d
    686 (1991) ............................................................................... 10

*Bouchard v. Transp. Co., Inc. v. Updegraff,* 147 F.3d 1344 (11ᵗʰ Cir. 1998), *cert.
    den'd* 525 U.S. 1140 (1999) ............................................................. 7

*City of La Porte v. Barfield,* 898 S.W.2d 288 (Tex. 1995) ................................ 15

*College Sav. Bank v. Florida Prepaid Postsecondary Educ. Expense Bd.,* 527 U.S.
    666, 119 S.Ct. 2219, 144 L.Ed.2d. 605 (1999) ............................... 12, 16

*Complaint of Valley Towing Service v. State of Missouri,* 581 F. Supp. 1287
    (E.D. Mo. 1984) ......................................................................... 13

*Cory v. White,* 457 U.S. 85, 102 S.Ct. 2325, 72 L.Ed.2d 694 (1982) .................. 8

*County of Cameron v. Brown,* 80 S.W.3d 549 (Tex. 2002) ............................... 13

*Duhart v. State,* 610 S.W.2d 740 (Tex. 1980) ............................................... 15

*Ex Parte New York, No. 1,* 256 U.S. 490, 41 S.Ct. 588, 65 L.Ed. 1057 (1921) .. 5, 10

*Federal Maritime Comm. v. South Carolina State Ports Authority,* 535 U.S. 743,
    122 S.Ct. 1864, 152 L.Ed.2d 962 (2002) ............................................. 5

*Hans v. Louisiana,* 134 U.S. 1, 10 S.Ct. 504, 33 L.Ed.2d 842 (1890) ................ 10

*Hencerling v. Tex. A&M Univ.,* 986 S.W.2d 373
    (Tex. App.—Houston [1st Dist.] 1999, pet. denied)............................. 16

*In re Abaco Treasure, Ltd.,* 1993 A.M.C. 1976 (S.D. Fla. 1993). ...................... 7

*Kerrville State Hosp. v. Fernandez,* 28 S.W.3d 1 (Tex. 2000) .......................... 15

*Lowe v. Tex. Tech Univ.,* 540 S.W.2d 297 (Tex. 1976) .................................. 16

*Maryland Port Administration v. SS American Legend,* 453 F.Supp. 584
    (D. Md. 1978) ........................................................... 11, 12, 13, 14

iv

*Matter of Williamson Towing Co. Inc. v. State of Illinois.*
    534 F.2d 758 (7th Cir. 1976). . ........................................................ 13

*Principality of Monaco v. Mississippi,*
    292 U.S. 313, 54 S.Ct. 745, 78 L.Ed.2d 1282 (1934) ............................ 10

*Sand Bar I, Lim. Procs.,* 1993 A.M.C. 1312 (E.D. La. 1993) ............................ 7

*Smith v. Reeves,* 178 U.S. 436, 20 S.Ct. 919, 44 L.Ed. 1140 (1900) ................... 10

*Tex. Dep't of Transp. v. Able,* 35 S.W.3d 608 (Tex. 2000) ............................... 16

*Tex. Dep't of Transp. v. City of Floresville Elec. Power & Light Sys.,* 53 S.W.3d 447
    (Tex. App.—San Antonio 2001, no pet.)............................................... 16

*Welch v. Texas Dept. of Highways and Public Transp.,* 483 U.S. 468,
    107 S.Ct. 2941, 97 L.Ed.2d 389 (1987) ........................................ 5, 14

**Constitutional Provisions, Statutes, and Rules**

Eleventh Amendment, United States Constitution..............3, 4, 6, 7, 8, 9, 10, 13, 14

Limitation of Shipowner's Liability Act of 1851
    46 U.S.C.A. 181-196 (1994 & Supp. II 1996) .................................. 3

Texas Tort Claims Act ,TEX.CIV.PRAC &REM. CODE §§101.001,et.seq.   11, 13, 15,16

TEX. CIV. PRAC. & REM. CODE §§101.021, .024, .025 .................................. 16

## REPLY BRIEF IN SUPPORT OF THE STATE OF TEXAS'
## MOTION TO DISMISS ON THE BASIS OF SOVEREIGN IMMUNITY
## AND THE ELEVENTH AMENDMENT

The State's motion to dismiss presents two issues for decision.[1]    The primary issue is whether the constitutional grant of sovereign immunity prohibits application of the Limitation of Shipowner's Liability Act of 1851 (the "Limitation Act") against the State.[2]    The secondary issue is whether the counterclaims/cross-claims that have been filed against the State by limitation petitioners Brown Water and ACBL ("Petitioners") violate the State's sovereign immunity.[3]

Petitioners have each filed a memorandum in opposition to the State's motion.[4] None of the other parties to these consolidated cases have taken any position on the issues presented here.  The State now files this reply memorandum in order to respond to the arguments raised by both Petitioners.

## ARGUMENT AND AUTHORITIES

### I.    The Limitation Act Cannot Be Constitutionally Applied to the State

In its original motion, the State demonstrated that these limitation actions must be dismissed.    Specifically,  the  State  showed  that  Congress  did  not  include

---

[1] The State's original motion is Rec. Doc. No. 216.

[2] 46 U.S.C. §§ 181-196 (1994 & Supp. II 1996).

[3] "Brown Water" refers collectively to Brown Water Marine Towing I, Inc. and Brown Water Marine Services, Inc., the limitation petitioners in C.A. No. B-01-157.  "ACBL" refers collectively to American Commercial Lines LLC and American Commercial Barge Line LLC, the limitation petitioners in C.A. No. B-02-004, together with Deere Credit, Inc. and State Street Bank and Trust Company of Connecticut, National Association, the limitation petitioners in C.A. No. B-02-125.

[4] Brown Water's opposition is Rec. Doc. No. 218.  ACBL's opposition is Rec. Doc. No. 217.

unmistakably clear language in the Limitation Act abrogating the sovereign immunity of the states, and further showed that the State has not waived its sovereign immunity. Because these are the only two recognized exceptions to the fundamental constitutional guarantee of state sovereign immunity, and neither is applicable here, the constitutional inquiry is ended. The Limitation Act cannot be constitutionally applied to the State of Texas.

Petitioners do not contest the fact that the Limitation Act does not abrogate state sovereign immunity. Petitioners also do not contest the fact that the State has not consented to suit under the Limitation Act or to suit in federal court. Instead, Petitioners seek to avoid a proper constitutional analysis by first arguing that a limitation action is a special admiralty proceeding that should be treated differently from other actions. Petitioners then maintain that a limitation proceeding is not a "suit against the State" and, therefore, falls outside the protection afforded the State by literal wording of the Eleventh Amendment. As demonstrated below, both of these arguments are flawed.

### A. Petitioners' arguments regarding the maritime nature of a limitation action are of no constitutional significance because there is no "maritime commerce" exception to state sovereign immunity

Petitioners suggest that a limitation proceeding is a "special admiralty proceeding" that is different from "an ordinary civil lawsuit" and is exempted from the reach of sovereign immunity principles.[5] But, the maritime nature of a limitation

---

[5] See, e.g., ACBL's brief at page 5.

proceeding is of no constitutional significance, as because the Supreme Court has squarely rejected the existence of a "maritime commerce" exception to sovereign immunity.

In *Welch v. Texas Dept. of Highways and Public Transp.*, Id., 483 U.S. 468, 107 S. Ct. 2941, 97 L.Ed.2d 389 (1987), the United States Supreme Court held that the constitutional guarantee of sovereign immunity prohibited a Texas state employee who was injured while working on a state owned vessel from bringing a Jones Act claim in federal court against the State of Texas. In reaching this conclusion, the Supreme Court cited *Ex Parte New York, No. 1,* 256 U.S. 490, 41 S.Ct. 588, 65 L.Ed. 1057 (1921) for the proposition that sovereign immunity "...prohibits admiralty suits against a State, ... unless the State expressly waives its immunity and consents to suit in federal court." *Welch*, 483 U.S. at 468, 107 S.Ct. at 2943. Thus, sovereign immunity applies to a federal court admiralty action just as it applies to any other action.

The most emphatic declaration regarding the sovereign immunity of the states in the maritime arena came just last year when the Supreme Court was once again squarely presented with the argument that it should create a "maritime commerce" exception to state sovereign immunity. *See Federal Maritime Comm. v. South Carolina State Ports Authority*, 535 U.S 743, 122 S.Ct. 1864, 1878, 152 L.Ed.2d 962, 982 (2002) (hereinafter "*FMC*") In no uncertain terms, the Court in *FMC* refused to

create such an exception and confirmed that admiralty actions must yield to sovereign

immunity in order to maintain the balance of power embedded in our Constitution:

> The FMC maintains that sovereign immunity should not
> bar the Commission from adjudicating Maritime Services'
> complaint because "[t]he constitutional necessity of
> uniformity in the regulation of maritime commerce limits
> the States' sovereignty with respect to the Federal
> Government's authority to regulate that commerce."
> This Court, however, has already held that the States'
> sovereign immunity extends to cases concerning maritime
> commerce. Moreover, *Seminole Tribe* precludes us from
> creating a new "maritime commerce" exception to state
> sovereign immunity. Although the Federal Government
> undoubtedly possesses an important interest in regulating
> maritime commerce, see U.S. Const., Art. I, § 8, cl. 3,
> we noted in *Seminole Tribe* that "the background principle
> of state sovereign immunity embodied in the Eleventh
> Amendment is not so ephemeral as to dissipate when the
> subject of the suit is an area ... that is under the exclusive
> control of the Federal Government." Thus, "[e]ven when
> the Constitution vests in Congress complete lawmaking
> authority over a particular area, the Eleventh Amendment
> prevents congressional authorization of suits by private
> parties against unconsenting States."

*FMC*, 122 S.Ct. 1864, 1878 (2002)(citations omitted).

Hence, the fact that a limitation action is a maritime proceeding is of no

constitutional significance and does nothing to lessen the State's entitlement to

sovereign immunity.

> **B.    Petitioners' Argument That a Limitation Action Is Not a Suit
> "Against" the State Fails in Two Respects**

The second argument advanced by Petitioners in their effort to escape a proper

constitutional analysis is that a limitation action is not a suit "commenced or prosecuted

against" the State and therefore falls outside the protection of the Eleventh Amendment. As the State anticipated, Petitioners rely on three poorly reasoned decisions in *Bouchard v. Transp. Co., Inc. v. Updegraff*, 147 F.3d 1344 (11th Cir. 1998), *cert. den'd* 525 U.S. 1140 (1999); *Sand Bar I, Lim. Procs.*, 1993 A.M.C. 1312 (E.D. La. 1993); and *In re Abaco Treasure, Ltd.*, 1993 A.M.C. 1976 (S.D. Fla. 1993). In its original motion, the State discussed these three cases and demonstrated not only are they not controlling, but also that they were incorrectly decided as none of the cases conducted a legitimate sovereign immunity analysis. The State will not repeat its discussion of *Bouchard, Abaco and Sand Bar I* yet again, but will briefly address Petitioners' erroneous underlying premise that a limitation action is not a suit "against" the State.

### 1.    These Limitation Proceedings Are Suits "Against" the State

Hoping that the hand is quicker than the eye, Petitioners' argue that because their limitation actions do not label or name the State as a defendant, do not require formal service of process on the State and do not seek money from the State - then their actions are not suits "against" the State.[6] This approach elevates form over substance.

Regardless of how the Petitioners' may try to spin it, ceratin simple facts are readily evident. The limitation actions filed by Petitioners targeted the State inasmuch as they were filed with full knowledge that the State had suffered the largest monetary damage in connection with the Causeway allision. Their limitation actions seek to

---

[6] *See* Brown Water opposition at p. 20.

constrict the State's treasury by limiting the State's ability to recover its full damage and they also seek to deprive the State of a jury trial. The State was served notice of the limitation actions and, against its will, has been compelled to appear and file responsive pleadings in these federal court actions, or be defaulted. `Clearly these are the exact same "threats" that hang over head of any defendant in any type of "ordinary civil lawsuit."

Moreover, unlike an "ordinary civil lawsuit," at the request of the Petitioners, injunctions have been issued against the State, prohibiting the State from pursuing recovery from the Petitioners in the State's own courts. This lays to rest any doubt about whether this is a suit "against" the State for constitutional purposes, as the issuance of an injunction against a State is barred by the very words of the Eleventh Amendment itself. *Cory v. White,* 457 U.S. 85, 90-91, 102 S.Ct. 2325, 2329-2330, 72 L.Ed.2d 694 (1982).

Interestingly, ACBL never cites or discusses *Cory* in its opposition. Brown Water cites the case at page 8 of its brief, but never addresses or acknowledges *Cory's* holding that the Eleventh Amendment by its terms clearly applies to a suit seeking an injunction. *Cory,* 102 S.Ct. at 2329-2330. Neither Petitioner discusses or acknowledges the constitutional alarm that is sounded when, as here, a federal court issues an injunction against a State.

The Supreme Court's decision in *Cory* is controlling here. Just as the arguably defensive action in *Cory* was a suit "against" the State and violated the Eleventh

Amendment, because it forced the State to appear in federal court against its will and resulted in the issuance of a TRO against the State, these limitation proceedings have the same impact on the State and are therefore also suits "against" the State in violation of the Eleventh Amendment.

> **2.  Even if through an exercise in semantics, these actions are not considered suits "against" the State, they are still barred by sovereign immunity, which extends beyond the literal wording of the Eleventh Amendment**

Since these limitation actions are suits "against" the State of Texas, they are barred by the words of the Eleventh Amendment itself. But, even if the court accepts the Petitioners exercise in semantics as legitimate – that these suits are not "against" the State for Eleventh Amendment purposes – the State has demonstrated at paragraphs 40-54 of its original motion that these limitation actions would still be barred. Sovereign immunity is not constrained by or limited to only the text of the Eleventh Amendment. Instead, as the Supreme Court has repeatedly explained in the many cases cited in the State's original motion, sovereign immunity extends beyond the four corners of the text of the Eleventh Amendment and bars any action that infringes on the dignity to which states are entitled as a result of their status as sovereign entities.

There can be no serious question that the Framers of the Constitution would have considered it to be an unacceptable affront to the State's dignity for the State to be required to appear in federal court against its will on penalty of default, to be potentially deprived by a federal statute of its right to a jury trial and of the opportunity

to recover its full damages from clearly guilty tortfeasors, and perhaps, most importantly, to be enjoined by a federal court from pursuing those tortfeasors in the State's own courts. But when applied against the State, the Limitation Act has all of these effects. Consequently, the Limitation Act cannot be constitutionally imposed on the State.

In their oppositions, Brown Water and ACBL do not acknowledge or discuss the fact that the protections of sovereign immunity exist beyond the literal wording of the Eleventh Amendment. Neither Petitioner cites or discusses *FMC*, *Alden v. Maine*, or any of the other United States Supreme Court cases that are cited in the State's motion.[7] And neither Petitioner makes any attempt to rebut the State's position that notwithstanding whether a limitation action is technically considered to be a suit "against" the State, when applied to the State, the Limitation Act has effects that impermissibly intrude on the State's sovereignty. In short, Petitioners have not and cannot rebut the State's showing that the Limitation Act cannot be constitutionally applied to the State.

## II.    PETITIONERS' COUNTERCLAIMS AND CROSS-CLAIMS VIOLATE THE STATE'S SOVEREIGN IMMUNITY AND MUST BE DISMISSED

The second issue presented by this motion is whether the counterclaims/cross-claims filed by the Petitioners against the State are barred by sovereign immunity

---

[7] *See*, e.g., *Hans v. Louisiana*, 134 U.S. 1, 10 S.Ct. 504, 33 L.Ed.2d 842 (1890); *Smith v. Reeves*, 178 U.S. 436, 20 S.Ct. 919, 44 L.Ed. 1140 (1900); *Ex Parte New York, No. 1, supra*; *Principality of Monaco v. Mississippi*, 292 U.S. 313, 54 S.Ct. 745, 78 L.Ed.2d 1282 (1934); *Blatchford v. Native Village of Noatak*, 510 U.S. 775, 111 S.Ct. 2578, 115 L.Ed.2d 686 (1991); *Alden v. Maine*, 527 U.S. 706, 119 S.Ct. 2240, 144 L.Ed.2d 636 (1999); and *FMC*, *supra*.

principles. Petitioners advance two plainly incorrect arguments in an effort to save

their counterclaims/cross-claims from dismissal. First, ignoring the reality that the

State has been enjoined from proceeding with the suit it filed in Texas state court and

has been forced into this action against its will and on penalty of default. Petitioners

argue that by filing a protective claim in the limitation proceeding, the State has waived

its sovereign immunity as to the Petitioners' counterclaims/cross-claims. Second,

overlooking the facts that the Texas Tort Claims Act[8] only authorizes suits against the

State in Texas state court and does not authorize actions for contribution at all,

Petitioners argue that as to their counterclaims/cross-claims, the Texas Tort Claims Act

constitutes a waiver of the State's sovereign immunity. Each of these arguments is

addressed below.

**A.     The State has not voluntarily waived its sovereign immunity with respect to the counterclaims/cross-claims**

Citing *Maryland Port Administration v. SS American Legend*, 453 F.Supp. 584

(D. Md. 1978), Petitioners argue that by filing claims in these limitation proceedings,

the State has waived sovereign immunity as to Petitioners' counterclaims/cross-claims.

However, *Maryland Port Administration* is inapposite, as it involves a situation in

which the State of Maryland voluntarily elected to institute suit as a plaintiff in federal

court. The holding in *Maryland Port Administration* is simply that when a state

voluntarily chooses to file suit in federal court as a plaintiff, it waives sovereign

immunity with respect to a counterclaim arising out of the same event which is the

---

[8] TEX. CIV. PRAC. & REM. CODE §101.001, *et. seq.*

subject of the state's claim.  In the instant case, the State of Texas did not voluntarily file suit in federal court as a plaintiff.  On the contrary, the State filed suit in state court, but has now been enjoined and prohibited from pursuing its state court suit by virtue of the injunctions issued in these federal court limitation proceedings.  The State's appearance in federal court was made under threat of default, is subject to the State's sovereign immunity defense, and is totally involuntary.

The Supreme Court has made it clear that there can be no waiver of sovereign immunity in a situation like this one.  In *College Sav. Bank v. Florida Prepaid Postsecondary Educ. Expense Bd.*, 527 U.S. 666, 119 S.Ct. 2219, 144 L.Ed.2d 605 (1999), the Court extensively explained the law concerning waiver of state sovereign immunity.  Citing numerous prior Supreme Court decisions, the Court outlined the following principles regarding waiver:

- A state's sovereign immunity is a personal privilege that it can waive at its pleasure;

- The decision to waive sovereign immunity must be "altogether voluntary" on the part of the sovereign;

- Accordingly, the test for determining whether a state has waived sovereign immunity is a stringent one;

- Waiver exists only if the State either voluntarily invokes federal jurisdiction (as in *Maryland Port Administration,* for example) or makes a "clear declaration" that it intends to submit itself to federal jurisdiction (such a declaration must be "unequivocally expressed"); and

- Courts indulge every reasonable presumption against waiver of fundamental constitutional rights.

*College Sav. Bank, 527* U.S. at 675-681, 119 S.Ct. at 2226-2229.

Page -12-

If anything, the instant case is a textbook example of non-waiver. From the outset, the State of Texas has expressly plead that the State's appearance in these limitation proceedings is involuntary and that the State is not waiving its sovereign immunity. This case is not controlled by *Maryland Port Administration*, but by *Matter of Williamson Towing Co. Inc. v. State of Illinois*, 534 F.2d 758 (7th Cir. 1976) and *Complaint of Valley Towing Service v. State of Missouri*, 581 F. Supp. 1287 (E.D. Mo. 1984), as cited by the State in its original motion. The counterclaims/cross-claims filed against the State by the Petitioners are constitutionally impermissible and must be dismissed.

**B.     The Texas Tort Claims Act does not constitute a waiver of sovereign immunity as respects claims filed in federal court, nor does it waive sovereign immunity for contribution claims**

Petitioners argue that the Texas Tort Claims Act constitutes a waiver of sovereign immunity with respect to their counterclaims/cross-claims. In support of this argument, Petitioners cite *County of Cameron v. Brown*, 80 S.W.3d 549 (Tex. 2002) and chide the State for not citing that case in its original motion. The reason that the State's motion did not discuss *County of Cameron v. Brown*, however, is that it has nothing to do with the issue that is before this Honorable Court.

The *County of Cameron* case involved an automobile accident that occurred on the Queen Isabella Causeway. The issue was whether the State could be sued in a Texas state court under the Texas Tort Claim Act on a claim relating to the alleged lack of roadway lighting on the Causeway. There were no Eleventh Amendment issues

involved in *County of Cameron* because it did not involve a suit in federal court. As
the United States Supreme Court explained in *Welch:*

> '[a] State's constitutional interest in immunity
> encompasses not merely *whether* it may be sued, but
> *where* it may be sued.' *Pennhurst II*, 465 U.S. at 99, 104
> S.Ct., at 907 (emphasis in original). **Thus, a State does
> not waive Eleventh Amendment immunity in federal
> courts merely by waiving sovereign immunity in its
> own courts.** *Id.*, at 99, 104 S.Ct., at 907, n. 9.

*Welch*, 483 U.S. at 473-474, 107 S.Ct. at 2946. (Emphasis added).

Petitioners' arguments mix apples and oranges. The fact that the *County of
Cameron* case has interpreted the Texas Tort Claim Act to potentially allow a tort suit
to be filed against the State in state court does not mean that such a suit is permissible
in federal court. On the contrary, if such a suit is allowed, it can only be filed in state
court, because there is nothing in the Texas Tort Claim Act that even remotely
indicates any intent by the State to allow suits to be filed against it in federal court.
Thus, if Petitioners wish to attempt to pursue claims against the State of Texas in
connection with the Causeway allision, they can only make that attempt in state court.
The counterclaims/cross-claims filed by the Petitioners against the State of Texas in
this Honorable Court must be dismissed.

There is a second reason why the counterclaims/cross-claims must be dismissed.
Realizing that even under *Maryland Port Administration*, their counterclaims/cross-
claims would have to be dismissed on sovereign immunity grounds if they sought an
"affirmative judgment" against the State, Petitioners classify their counterclaims/cross-

claims as being "wholly defensive" claims that seek only contribution. The problem,

however, is that the Texas Tort Claims Act does not waive sovereign immunity for

contribution claims. Thus, even in state court, Petitioners will have no right to pursue

contribution claims against the State.

It is well-established that for a statute to waive so sovereign immunity, the

waiver must be expressed in clear and unambiguous language. *See Kerrville State*

*Hosp. v. Fernandez*, 28 S.W.3d 1, 3 (Tex. 2000); *City of La Porte v. Barfield*, 898

S.W.2d 288, 291 (Tex. 1995); *Duhart v. State*, 610 S.W.2d 740, 742 (Tex. 1980).

Looking to the language of §101.021, it provides:

> A governmental unit in the state is liable for:
>
> (1) property damage, personal injury, and death
> proximately caused by the wrongful act or omission or the
> negligence of an employee acting within the scope of
> employment if:
>
> (A) the property damage, personal injury, or death
> arises from the operation or use of a motor-driven vehicle
> or motor-driven equipment; and
>
> (B) the employee would be personally liable to the
> claimant according to Texas law; [or]
>
> (2) personal injury or death so caused by a condition or
> use of tangible personal or real property if the
> governmental unit would, were it a private person, be
> liable to the claimant according to Texas law.

TEX. CIV. PRAC. & REM. CODE §101.021. Section 101.021's language clearly does not

mention contribution claims.

Stated differently, §101.021 has been interpreted to waive sovereign immunity in only three respects: "use of publicly owned automobiles, premises defects, and injuries arising out of conditions or use of property." *Tex. Dep't of Transp. v. Able*, 35 S.W.3d 608, 611 (Tex. 2000); *Lowe v. Tex. Tech Univ.*, 540 S.W.2d 297, 298 (Tex. 1976). A contribution claim is not among these three general areas.

Furthermore, the Tort Claims Act provides for recovery of compensatory damages for personal injury, wrongful death, and damage to property. *See* TEX. CIV. PRAC. & REM. CODE §§101.021, 101.024, 101.025. It does not allow a defendant to recover any financial losses it may incur because of paying more than its proportionate share of a judgment. *See Tex. Dep't of Transp. v. City of Floresville Elec. Power & Light Sys.*, 53 S.W.3d 447, 455–56 (Tex. App.–San Antonio 2001, no pet.) (holding that city electric utility was not entitled to indemnity from governmental unit under §101.021). "Financial losses are not property damages or personal injury damages." *Id.* (citing *Hencerling v. Tex. A&M Univ.*, 986 S.W.2d 373, 375 (Tex. App.–Houston [1st Dist.] 1999, pet. denied)). As there is no statutory waiver for contribution claims against the State, sovereign immunity prevails and Petitioners' counterclaims/cross-claims for contribution are barred as a matter of law.

## CONCLUSION

This motion presents issues that are of great constitutional significance. The courts in the cases that Petitioners rely upon did not fully recognize or address those issues and did not conduct a proper constitutional analysis.

In *College Sav. Bank, supra.*, the United States Supreme Court outlined a two-prong test for determining the applicability of a federal statute against a state. A federal statute cannot be constitutionally applied against a state unless either the statute was clearly intended to abrogate the states' sovereign immunity or the state has waived

its sovereign immunity by consenting to suit. In the present case, there has been no abrogation and there has been no waiver. Moreover, applying the Limitation Act would be an affront to the State's sovereign dignity in the many respects outlined in the State's original motion and in this reply memorandum. Thus, the Limitation Act cannot be constitutionally applied against the State of Texas.

WHEREFORE, for the reasons set forth above and in its original motion and supporting brief, the State of Texas respectfully requests that this Honorable Court declare that the State of Texas is entitled to sovereign immunity from the Limitation Act and from these limitation actions; that the Court enter an order dismissing the State from the present limitation actions; that the order also dissolve the injunctions that have been entered against the State, thus allowing the State of Texas to pursue its state court action against Brown Water and ACBL; and that the order also dismiss the counterclaims/cross-claims filed against the State by Brown Water and ACBL.

Respectfully submitted,

GREG ABBOTT
Attorney General of Texas

BARRY R. McBEE
First Assistant Attorney General

JEFFREY S. BOYD
Deputy Attorney General for Litigation

GRADY CLICK
Assistant Attorney General
Chief, Transportation Division

JACK F. GILBERT
Assistant Attorney General
Attorney-in-Charge

Page -17-

Texas Bar No. 00786946
Federal Bar No. 16701

OF COUNSEL:
MICHAEL RATLIFF
Texas Bar No. 16564300
MARGIE MANZANO CORBETT
Texas Bar No. 24001927
Federal Bar No. 22121

Office of the Attorney General
Transportation Division
P.O. Box 12548
Austin, TX 78711-2548
Phone: 512.463.2004
Fax:    512.472.3855


ADAMS AND REESE LLP

DARYL G. DURSUM
Texas Bar No. 06287900
Federal Bar No. 6198
4400 One Houston Center
1221 McKinney
Houston, TX 77010
Phone: 713.652.5151
Fax:    713.652-5152

MARK J. SPANSEL
(La. Bar No. 12314)
Pro Hac Vice
EDWIN C. LAIZER, APLC
(La. Bar No 17014)
Pro Hac Vice

4500 One Shell Square
New Orleans, LA 70139
Phone: 504.581.3234
Fax:    504.566.0210

*Attorneys for the State Of Texas*


Page -18-

## CERTIFICATE OF SERVICE

I hereby certify that a copy of the foregoing pleading has been served on all counsel of record by placing same in the United States mail, postage prepaid and properly addressed, this 2 4 day of January 2003.

JACK F. GILBERT