United States District Court
South District of Texas
FILED

IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF TEXAS
BROWNSVILLE DIVISION

APR 0 8 2004

Michael N. Milby
Clerk of Court

| | | |
|---|---|---|
| IN RE THE COMPLAINT AND | * | C. A. NO. B-01-157 |
| PETITION OF BROWN WATER | * | Admiralty |
| TOWING I, INC., AS OWNER, AND | * | |
| BROWN WATER MARINE SERVICE, | * | |
| INC., AS BAREBOAT CHARTERER OF | * | |
| THE BROWN WATER V, ITS ENGINES, | * | |
| TACKLE, ETC., IN A CAUSE OF | * | |
| EXONERATION FROM OR | * | |
| LIMITATION OF LIABILITY | * | |
| | * | |
| | * | Consolidated with |
| | * | |
| IN RE THE COMPLAINT AND | * | |
| PETITION OF AMERICAN | * | C. A. No. B-02-004 |
| COMMERCIAL LINES, LLC AS | * | Admiralty |
| OWNER, AND AMERICAN | * | |
| COMMERCIAL BARGE LINES, LLC | * | |
| AS CHARTERER OF THE BARGES | * | |
| NM-315, VLB-9182, ACL-9933B, | * | |
| VLB-9173, IN A CAUSE OF | * | and |
| EXONERATION FROM OR | * | |
| LIMITATION OF LIABILITY | * | |
| | * | |
| | * | |
| IN RE THE COMPLAINT AND PETITION | * | C. A. NO. B-02-125 |
| OF DEERE CREDIT, INC., (FORMERLY | * | Admiralty |
| SENSTAR FINANCE COMPANY), AS | * | |
| OWNER OF THE BARGE NM-315 AND | * | |
| STATE STREET BANK AND TRUST | * | |
| COMPANY OF CONNECTICUT, | * | |
| NATIONAL ASSOCIATION, AS OWNER | * | |
| TRUSTEE OF THE BARGE ACL-9933B AND | * | |
| NOT IN ITS INDIVIDUAL CAPACITY, AND | * | |
| GENERAL ELECTRIC CAPITAL | * | |
| CORPORATION, AS BENEFICIAL OWNER | * | |
| OF THE BARGE ACL-9933B PRAYING FOR | * | |
| EXONERATION FROM AND/OR | * | |
| LIMITATION OF LIABILITY | * | |

N1126075.1

**PETITIONERS' AND CLAIMANTS' AMERICAN COMMERCIAL
LINES, LLC, AMERICAN COMMERCIAL BARGE LINE, LLC,
AND PETITIONERS' DEERE CREDIT, INC., STATE STREET
BANK AND TRUST COMPANY OF CONNECTICUT, AND
GENERAL ELECTRIC CAPITAL CORPORATION'S
MOTION FOR LEAVE TO ASSERT THIRD-PARTY COMPLAINT
AGAINST A.G. HILL POWER, INC.,
a/k/a JHB ENTERPRISES, INC.**

**TO THE HONORABLE JUDGE OF THIS COURT:**

      **COMES NOW**, American Commercial Lines, LLC and American Commercial Barge Line,

LLC, Petitioners and Claimants, and Deere Credit, Inc. (formerly Senstar Finance Company), as

Owner of the Barge NM-315, State Street Bank and Trust Company of Connecticut, N.A., as

Owner/Trustee of the Barge ACL-9933B and Not in Its Individual Capacity, and General Electric

Capital Corporation, as Beneficial Owner of the Barge ACL-9933B, Petitioners, hereafter

collectively referred to as "the Petitioners," who request Leave of Court to assert the attached Third-

Party Complaint and tender pursuant to Rule 14 of the Federal Rules of Civil Procedure, against

A.G. Hill Power, Inc., a/k/a JHB Enterprises, Inc., showing as follows:

**I.**

      The Petitioners initiated Civil Action Nos. B-02-004 and B-02-125, which are

exoneration/limitation of liability proceedings, and Petitioners American Commercial Lines LLC

and American Commercial Barge Line LLC also filed claims in the Brown Water

exoneration/limitation proceedings, Civil Action No. B-01-157, all of which proceedings are

consolidated and arise out of an allision with the Queen Isabella Causeway on September 15, 2001.

## II.

During discovery it has been learned that A.G. Hill Power, Inc., a/k/a JHB Enterprises, Inc. ("Hill"), who is not a party, bears some responsibility for this incident. Specifically, upon information and belief, Hill was responsible for maintaining the navigational and/or street lights on the Queen Isabella Causeway. Discovery obtained to date indicates that these lights were not working on the night of the allision. The failure to maintain or properly operate these lights constitutes negligence and/or negligence *per se*. In addition, under the applicable maritime law, and in accordance with the Pennsylvania Rule, Hill's failure to comply with the law creates presumption of fault or negligence on its behalf. Upon information and belief, the acts or omissions of Hill caused and/or contributed to the allision and/or caused or contributed to several subsequent deaths and personal injuries. In addition, as can be seen by Exhibit A, the Claimants in this proceeding have filed suits against Hill seeking recovery for their damages arising from the allision.

## III.

In the unlikely event that any or all of the Claimants obtain recovery or judgment against any or all of the Petitioners, which is denied, then the Petitioners, as Third-Party Plaintiffs, desire to implead and tender Hill to Claimants pursuant to Rule 14 of the Federal Rules of Civil Procedure. The Petitioners also seek a judgment in like amount over and against Hill, representing contribution and/or indemnification and/or recoupment and/or set-off from and against Hill.

WHEREFORE, PREMISES CONSIDERED, American Commercial Lines, LLC and American Commercial Barge Line, LLC, Petitioners and Claimants, and Deere Credit, Inc. (formerly Senstar Finance Company), as Owner of the Barge NM-315, State Street Bank and Trust Company of Connecticut, N.A., as Owner/Trustee of the Barge ACL-9933B and Not in Its Individual Capacity,

and General Electric Capital Corporation, as Beneficial Owner of the Barge ACL-9933B, Petitioners,

pray that leave of Court be granted them to assert their Third-Party Complaint and tender against

Hill, copy attached.  In addition, the Petitioners request all other relief to which they may be entitled

at law, in equity, or in admiralty.

Respectfully submitted,

GLENN G. GOODIER, Attorney-in-Charge
Admitted *Pro Hac Vice*
By Order Entered 4/23/02
Jones, Walker, Waechter, Poitevent,
   Carrère & Denègre, L.L.P.
201 St. Charles Avenue - 48th Floor
New Orleans, Louisiana 70170-5100
Telephone:   (504) 582-8174
Facsimile:    (504) 582-8010

LES CASSIDY
State Bar Number 03979270
Federal Identification Number 5931
1020 Bank of America
500 North Water Street
Corpus Christi, Texas  78471
Telephone: (361) 887-2969
Facsimile: (361) 886-3299
Counsel for Petitioners,
American Commercial Lines LLP and
American Commercial Barge Line LLC
Deere Credit, Inc. (formerly Senstar Finance Company), as
   Owner of the Barge NM-315
State Street Bank and Trust Company of Connecticut, N.A.,
   as Owner/Trustee of the Barge ACL-9933B and Not in Its
   Individual Capacity, and
General Electric Capital Corporation, as Beneficial Owner of
   the Barge ACL-9933B

## CERTIFICATE OF CONFERENCE

Undersigned counsel for American Commercial Lines, LLC and American Commercial Barge Line, LLC, Petitioners and Claimants, and Deere Credit, Inc. (formerly Senstar Finance Company), as Owner of the Barge NM-315, State Street Bank and Trust Company of Connecticut, N.A., as Owner/Trustee of the Barge ACL-9933B and Not in Its Individual Capacity, and General Electric Capital Corporation, as Beneficial Owner of the Barge ACL-9933B, Petitioners, has conferred with opposing counsel and cannot agree upon the disposition of the Motion. Thus, this Motion is opposed.

GLENN G. GOODIER,  Attorney-in-Charge
Admitted *Pro Hac Vice*
OF JONES, WALKER, WAECHTER, POITEVENT,
CARRERE & DENEGRE, L.L.P.

## CERTIFICATE OF SERVICE

I hereby certify that a copy of the foregoing has been properly mailed to all known potential parties and/or their counsel on this ___7___ day of ___April___, 2004.

GLENN G. GOODIER

N1126075.1

IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF TEXAS
BROWNSVILLE DIVISION

IN RE THE COMPLAINT AND             *        C. A. NO. B-01-157
PETITION OF BROWN WATER             *        Admiralty
TOWING I, INC., AS OWNER, AND       *
BROWN WATER MARINE SERVICE,         *
INC., AS BAREBOAT CHARTERER OF      *
THE BROWN WATER V, ITS ENGINES,     *
TACKLE, ETC., IN A CAUSE OF         *
EXONERATION FROM OR                 *
LIMITATION OF LIABILITY             *
                                    *        Consolidated with
                                    *
IN RE THE COMPLAINT AND             *
PETITION OF AMERICAN                *        C. A. No. B-02-004
COMMERCIAL LINES, LLC AS            *        Admiralty
OWNER, AND AMERICAN                 *
COMMERCIAL BARGE LINES, LLC         *
AS CHARTERER OF THE BARGES          *
NM-315, VLB-9182, ACL-9933B,        *
VLB-9173, IN A CAUSE OF             *        and
EXONERATION FROM OR                 *
LIMITATION OF LIABILITY             *
                                    *
                                    *
IN RE THE COMPLAINT AND PETITION    *        C. A. NO. B-02-125
OF DEERE CREDIT, INC., (FORMERLY    *        Admiralty
SENSTAR FINANCE COMPANY), AS        *
OWNER OF THE BARGE NM-315 AND       *
STATE STREET BANK AND TRUST         *
COMPANY OF CONNECTICUT,        *
NATIONAL ASSOCIATION, AS OWNER      *
TRUSTEE OF THE BARGE ACL-9933B AND  *
NOT IN ITS INDIVIDUAL CAPACITY, AND *
GENERAL ELECTRIC CAPITAL            *
CORPORATION, AS BENEFICIAL OWNER    *
OF THE BARGE ACL-9933B PRAYING FOR  *
EXONERATION FROM AND/OR             *
LIMITATION OF LIABILITY             *

N1126075.1                                              **EXHIBIT B**

## THIRD-PARTY COMPLAINT AGAINST
## A.G. HILL POWER, INC.,
## a/k/a JHB ENTERPRISES, INC.

**TO THE HONORABLE JUDGE OF THIS COURT:**

**COMES NOW**, American Commercial Lines, LLC and American Commercial Barge Line, LLC, Petitioners and Claimants, and Deere Credit, Inc. (formerly Senstar Finance Company), as Owner of the Barge NM-315, State Street Bank and Trust Company of Connecticut, N.A., as Owner/Trustee of the Barge ACL-9933B and Not in Its Individual Capacity, and General Electric Capital Corporation, as Beneficial Owner of the Barge ACL-9933B, Petitioners, hereafter collectively referred to as "the Petitioners," and file this their Third Party Complaint and Tender against A.G. Hill Power, Inc., a/k/a JHB Enterprises, Inc. ("Hill").

### I.

Jurisdiction over this Third Party Complaint exists under the Court's Admiralty and Maritime Jurisdiction, 28 U.S.C. § 1333, and within the meaning of Rule 9(h) of the Federal Rules of Civil Procedure, and alternatively under the Court's Supplemental Jurisdiction, 28 U.S.C. § 1367. The Petitioners further invoke the maritime procedures specified in Rule 14(c) of the Federal Rules of Civil Procedure.

### II.

The Petitioners initiated Civil Action Nos. B-02-004 and B-02-125 proceedings seeking exoneration from and/or alternatively, limitation of liability and also filed claims in the Brown Water exoneration/limitation proceedings, Civil Action No. B-01-157, all of which proceedings are consolidated and arise out of an allision with the Queen Isabella Causeway on September 15, 2001.

Numerous claims have been asserted against the Petitioners and Brown Water Marine Service, Inc. and Brown Water Towing I in these pending actions.

### III.

Made third party defendant is Hill, a Texas corporation and may be served with process by serving its agent for service of process, Mr. Jack B. Bennett at 112 Longshore Drive, Corpus Christi, Texas 78413.

### IV.

During discovery it has been learned that Hill, who is not a party, bears some responsibility for this incident. Specifically, upon information and belief, Hill was responsible for maintaining the navigational and/or street lights on the Queen Isabella Causeway. Discovery obtained to date indicates that these lights were not working on the night of the allision. The failure to maintain or properly operate these lights constitutes negligence and/or negligence *per se*. In addition, under the applicable maritime law, and in accordance with the Pennsylvania Rule, Hill's failure to comply with the law creates presumption of fault or negligence on its behalf. Upon information and belief, the acts or omissions of Hill caused and/or contributed to the allision and/or caused or contributed to several subsequent deaths, personal injuries and property damage.

### V.

This matter cause arises from the allision with the Queen Isabelle Causeway on or about September 15, 2001. American Commercial Lines, LLC, American Commercial Barge Lines, LLC, Deere Credit, Inc., State Street Bank and Trust Company of Connecticut, and General Electric Capital Corporation, seek exoneration from and/or limitation of liability in this proceeding. The Court set a deadline for claimants to appear and file claims against American Commercial Lines,

LLC, American Commercial Barge Lines, LLC, Deere Credit, Inc., State Street Bank and Trust Company of Connecticut, and General Electric Capital Corporation in the limitation proceedings. Subsequently, numerous claims against American Commercial Lines, LLC, American Commercial Barge Lines, LLC, Deere Credit, Inc., State Street Bank and Trust Company of Connecticut, and General Electric Capital Corporation have been filed by or on behalf of Anita Harris, individually and as Next Friend of Victor Justin Harris, and as Representative of the Estate of Robert V. Harris; Raquel Teran Hinojosa, Individually and on behalf of the Estate of Gaspar Hinojosa, Deceased, Clarissa Hinojosa, Omar Hinojosa and Gaspar Hinojosa II, each individually; Martin D. Hinojosa and Rita S. Hinojosa, Individually and as heirs of the Estate of Gaspar Hinojosa, Deceased; Richard "Ricky" Leavell and Carol Leavell, Individually and as Representatives of the Estate of Robin Faye Leavell, deceased; Hector Martinez, Sr.; Lydia Zamora, individually and as Representative of the Estate of Hector Martinez Jr., deceased; J. Antonio Mireles, as personal representative of the Estate of Julio Cesar Mireles, Juan Antonio Mireles and Soledad Gonzalez Mireles; Esteban F. Rivas and Miriam Rivas, Individually and as Representatives of the Estate of Stvan F. Rivas; William E. Kimbrell; Jacqueline Paddock, Individually and as Next Friend of William B. Welch and as Representative of the Estate of Chealsa and Barry Welch; William Morris Welch; Rolando Lee Moya, Alberto Leroy Moya, Antonio Salinas, Jr. and Roberto Espericueta; Bridgette Goza; Rene Mata and Frank Mata; Gustavo Morales and Bigo's International, L.L.C.; Bridgette M. Goza; Laguna Madre Water District; Southwestern Bell Telephone, L.P. and the State of Texas, all of which of the foregoing are hereafter referred to as "Claimants in Exoneration/Limitation."

N1126075.1                                      - 4 -

## IV.

In the event that any or all of Claimants in Exoneration /Limitation seeks recovery or judgment against American Commercial Lines, LLC, American Commercial Barge Lines, LLC, Deere Credit, Inc., State Street Bank and Trust Company of Connecticut, and General Electric Capital Corporation, American Commercial Lines, LLC, American Commercial Barge Lines, LLC, Deere Credit, Inc., State Street Bank and Trust Company of Connecticut, and General Electric Capital Corporation, which is denied, then the Petitioners hereby implead and hereby tender Hill to the Claimants in Exoneration/Limitation herein within the meaning of Rule 14(c) of the Federal Rules of Civil Procedure. The Petitioners, as third party plaintiffs, also seek judgment in like amount over and against Hill, representing contribution and/or indemnification and/or recoupment and/or set-off from and against Hill. Specifically, upon information and belief Hill was responsible for maintaining and operating lights on the Queen Isabella Causeway. Further, upon information and belief, the Lights that Hill was responsible for maintaining and operating were not operating on the day of the incident due to Hill's negligence and/or negligence per se. This negligence and/or negligence per se caused or contributed to the allision and/or caused or contributed to several subsequent deaths and personal injuries. Further, the actions and/or inactions of Hill invoke the presumptions afforded by the Pennsylvania Rule as recognized by the general maritime law of the United States.

WHEREFORE, PREMISES CONSIDERED, American Commercial Lines, LLC and American Commercial Barge Line, LLC, Petitioners and Claimants, and Deere Credit, Inc. (formerly Senstar Finance Company), as Owner of the Barge NM-315, State Street Bank and Trust Company of Connecticut, N.A., as Owner/Trustee of the Barge ACL-9933B and Not in Its Individual Capacity,

and General Electric Capital Corporation, as Beneficial Owner of the Barge ACL-9933B, Petitioners, pray that citation issue and be served upon said Third-Party Defendant in the form and manner required by law, requiring the Third-Party Defendant to appear and answer this Third Party Complaint and the Claims of the Exoneration/Limitation Claimants listed hereinbefore; upon final hearing that they as Petitioners be exonerated from all liability and, alternatively, that their liability be limited as allowed for under the Limitation of Vessel Owner's Liability Act, 46 U.S.C. § 181 *et seq.*, as amended, and under the Supplemental Rules for Certain Admiralty and Maritime Claims. In the event that any recovery or judgment is made against Petitioners/Third-Party Plaintiffs, the Petitioners/Third-Party Plaintiffs pray that they be awarded a judgment in like amount over and against Hill for contribution and/or indemnification, and/or recoupment and/or set-off and/or damages, interest, costs, disbursements and all other relief to which the Petitioners/Third Party Plaintiffs may be entitled at law, in equity or in admiralty.

Respectfully submitted,

GLENN G. GOODIER, Attorney-in-Charge
Admitted *Pro Hac Vice*
By Order Entered 4/23/02
Jones, Walker, Waechter, Poitevent,
  Carrère & Denègre, L.L.P.
201 St. Charles Avenue - 48th Floor
New Orleans, Louisiana 70170-5100
Telephone:  (504) 582-8174
Facsimile:    (504) 582-8010

LES CASSIDY
State Bar Number 03979270
Federal Identification Number 5931
1020 Bank of America
500 North Water Street
Corpus Christi, Texas  78471
Telephone:  (361) 887-2969
Facsimile:  (361) 886-3299
Counsel for Petitioners,
American Commercial Lines LLP and
American Commercial Barge Line LLC
Deere Credit, Inc. (formerly Senstar Finance Company), as
  Owner of the Barge NM-315
State Street Bank and Trust Company of Connecticut, N.A.,
  as Owner/Trustee of the Barge ACL-9933B and Not in Its
  Individual Capacity and
General Electric Capital Corporation, as Beneficial Owner of
  the Barge ACL-9933B

## CERTIFICATE OF SERVICE

I hereby certify that a copy of the foregoing has been properly mailed to all known potential parties and/or their counsel on this 7 12 day of April , 2004.

GLENN G. GOODIER

IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF TEXAS
BROWNSVILLE DIVISION

| | | |
|---|---|---|
| IN RE THE COMPLAINT AND | * | C. A. NO. B-01-157 |
| PETITION OF BROWN WATER | * | Admiralty |
| TOWING I, INC., AS OWNER, AND | * | |
| BROWN WATER MARINE SERVICE, | * | |
| INC., AS BAREBOAT CHARTERER OF | * | |
| THE BROWN WATER V, ITS ENGINES, | * | |
| TACKLE, ETC., IN A CAUSE OF | * | |
| EXONERATION FROM OR | * | |
| LIMITATION OF LIABILITY | * | |
| | * | Consolidated with |
| | * | |
| IN RE THE COMPLAINT AND | * | |
| PETITION OF AMERICAN | * | C. A. No. B-02-004 |
| COMMERCIAL LINES, LLC AS | * | Admiralty |
| OWNER, AND AMERICAN | * | |
| COMMERCIAL BARGE LINES, LLC | * | |
| AS CHARTERER OF THE BARGES | * | |
| NM-315, VLB-9182, ACL-9933B, | * | |
| VLB-9173, IN A CAUSE OF | * | and |
| EXONERATION FROM OR | * | |
| LIMITATION OF LIABILITY | * | |
| | * | |
| | * | |
| IN RE THE COMPLAINT AND PETITION | * | C. A. NO. B-02-125 |
| OF DEERE CREDIT, INC., (FORMERLY | * | Admiralty |
| SENSTAR FINANCE COMPANY), AS | * | |
| OWNER OF THE BARGE NM-315 AND | * | |
| STATE STREET BANK AND TRUST | * | |
| COMPANY OF CONNECTICUT, | * | |
| NATIONAL ASSOCIATION, AS OWNER | * | |
| TRUSTEE OF THE BARGE ACL-9933B AND | * | |
| NOT IN ITS INDIVIDUAL CAPACITY, AND | * | |
| GENERAL ELECTRIC CAPITAL | * | |
| CORPORATION, AS BENEFICIAL OWNER | * | |
| OF THE BARGE ACL-9933B PRAYING FOR | * | |
| EXONERATION FROM AND/OR | * | |
| LIMITATION OF LIABILITY | * | |

N1126075.1

## ORDER

Before the Court is American Commercial Lines, LLC and American Commercial Barge Line, LLC, Petitioners and Claimants, and Deere Credit, Inc. (formerly Senstar Finance Company), as Owner of the Barge NM-315, State Street Bank and Trust Company of Connecticut, N.A., as Owner/Trustee of the Barge ACL-9933B and Not in Its Individual Capacity, and General Electric Capital Corporation, as Beneficial Owner of the Barge ACL-9933B's Motion for Leave to Assert a Third-Party Complaint and Tender Against A.G. Hill Power, Inc., a/k/a JHB Enterprises, Inc. ("Hill"), pursuant to Rule 14 of the Federal Rules of Civil Procedure, and the Court hereby GRANTS American Commercial Lines, LLC and American Commercial Barge Line, LLC, Petitioners and Claimants, and Deere Credit, Inc. (formerly Senstar Finance Company), as Owner of the Barge NM-315, State Street Bank and Trust Company of Connecticut, N.A., as Owner/Trustee of the Barge ACL-9933B and Not in Its Individual Capacity, and General Electric Capital Corporation, as Beneficial Owner of the Barge ACL-9933B's Motion for Leave to File the Third-Party Complaint against Hill which is attached as Exhibit "A" to the Motion for Leave to Assert Third-Party Complaint against Hill. The Court further ORDERS the United States District Clerk to file the Third-Party Complaint attached as Exhibit "A" to the Motion for Leave to Assert Third-Party Complaint against Hill. The Clerk of the Court is to issue service of process to Hill as authorized by law.

Signed this the _____ day of _____, 2004 in Brownsville, Texas.

_____
UNITED STATES DISTRICT JUDGE
HONORABLE HILDA TAGLE

AURORA DE LA GARZA DIST. CLERK

SEP 1 2 2003

CAUSE NO. 2003-09-4622-A DISTRICT COURT OF CAMERON COUNTY TEXAS

| | | |
|---|---|---|
| BRIGETTE GOZA | § | IN THE DISTRICT COURT |
| | § | |
| VS. | § | |
| | § | |
| STATE OF TEXAS DEPARTMENT | § | CAMERON COUNTY, TEXAS |
| OF TRANSPORTATION, COUNTY | § | |
| OF CAMERON, AND A. G. HILL | § | |
| POWER, INC., NOW KNOWN AS | § | |
| JHB ENTERPRISES, INC. | § | |
|              Defendants. | § | _107th_ JUDICIAL DISTRICT |

## PLAINTIFFS' ORIGINAL PETITION

**TO THE HONORABLE JUDGE OF SAID COURT:**

COMES NOW, PLAINTIFF, BRIGETTE GOZA, complain of STATE OF TEXAS DEPARTMENT OF TRANSPORTATION, COUNTY OF CAMERON AND A. G. HILL POWER, INC. NOW KNOWN AS JHB ENTERPRISES, INC. Defendants, and file this, her Original Petition.

### I.

### DISCOVERY LEVEL

1.1    Discovery is intended to be conducted under Discovery Control Plan Level 3 of Texas Rule of Civil Procedure 190.

### II.

### PARTIES

2.1    Plaintiff BRIGETTE GOZA is a resident of Cameron County, Texas. They bring this action individually and in all other capacities permitted by law.

2.4    Defendant, State of Texas Department of Transportation is a governmental entity which may be served with process by serving its general counsel, Mr. Richard Monroe, at 125 East 11th Street, Austin, Texas 78701-2483.



EXHIBIT
A

2.5    Defendant, County of Cameron, is a municipality and may be served with process by servings the County Judge, Mr. Gilberto Hinojosa, at Cameron County Courthouse, 974 E. Harrison, Brownsville, Texas 78520.

2.6    Defendant, A. G. Hill Power, Inc. now known as JHB Enterprises, Inc is a Texas corporation and may be duly served by serving its agent for service, Mr. Jack H. Bennett, at 112 Lakeshore Drive, Corpus Christi, Texas 78413.

### III.

### JURISDICTION AND VENUE

3.1    Jurisdiction and venue is proper in this Court, as the events giving rise to this suit occurred, in whole or in part, in on the land and navigable waters of Cameron County, Texas, and all or a substantial part of the events or omissions giving rise to the Plaintiff's claim occurred in Cameron County, Texas. Plaintiff is seeking damages within this Court's jurisdictional limits.

### IV.

### FACTUAL BACKGROUND

4.1    That on or about September 15, 2001, while in a motor vehicle being driven by Brigette Goza, while traveling along and upon the Queen Isabella Causeway in Port Isabel, Cameron County, Texas was severely injured.

4.2    The Queen Isabella Causeway curves, has narrow shoulders, and rises approximately 109 feet above the bay. Once drivers enter the causeway, a concrete median prevents them from turning around. At the time of this incident, a block of streetlights on the causeway's western section was not functioning. The first part of the bridge was illuminated for traffic heading

2

toward Port Isabel, Texas, but there was no illumination at the scene of the incident.

4.3     The State of Texas alleges that it owns the causeway and its streetlight system.    Cameron County assumes certain maintenance responsibilities over the causeway's streetlight system under an agreement with the Texas Department of Transportation.  Correspondence between TXDOT and the County shows that maintaining the causeway's streetlights had been a problem since at least 1995.  In November of that year, Kenneth Conway, a county park-system director, wrote to TXDOT's district engineer that 30 causeway streetlights were not functioning and presented a "serious safety hazard".  In an April 1996 letter to TXDOT, Conway wrote that "inconsistent lighting on the causeway presents a safety hazard to the traveling public." By August 1996, over 30 streetlights had failed, and at least that many were not functioning later when this incident occurred.

4.4     At the time of the incident that gives rise to this suit, the failed block of lights at the end of the elevated and curving causeway, with narrow shoulders and limited access, suddenly plunged motorists into darkness.   The causeway entrance was illuminated; thus, the sudden darkness from the block of failed lighting came upon drivers unexpectedly, a condition which was neither open nor obvious to motorists.  Plaintiff did not  have actual knowledge of this danger.  Furthermore, they could not see far enough ahead to know that the large block of lights on the bridge was out.  Additionally, motorists traveling over the bridge had every reasonable expectation that any non-functioning lights had been repaired or replaced. Thus, the malfunctioning block of artificial

3

lighting that the Defendants failed to maintain caused a sudden and unexpected change in driving conditions.

4.5    A cement barrier on the causeway separates the two travel lanes in each direction and prevents drivers from turning back once embarking upon the bridge. Only a relatively narrow shoulder beside the traffic lanes is available to accommodate vehicles in emergency situations. On the evening in question, the causeway was lit at the point of entry, but there was no illumination further along the causeway at the accident scene. The lighting failure was not open or obvious to motorists entering the causeway, and the entrance to the causeway is the only point at which they could choose to avoid the condition or otherwise protect themselves.

4.6    The condition of the bridge, upon failure of a large block of streetlights, caused it to be more dangerous than an ordinary road. It posed an unreasonable risk of harm, in that that there was a sufficient probability of a harmful event occurring, that the Defendants would have foreseen it, or some similar event, as likely to happen.

4.7    While Plaintiff did not actually know of the dangerous condition of the bridge, the Defendants themselves knew of the danger that the causeway's numerous, nonfunctioning streetlights posed. Kenneth Conway, Cameron County's park-system director, described the failed lighting as a "serious public safety issue" and "a serious safety hazard". In a letter to TXDOT, Conway specifically identified the danger posed to motorists of the causeway. The general foreman a previous contractor, Red Simpson, Inc., hired to repair the lights additionally recognized the danger. He wrote in a letter that the causeway's lighting system posed an "[e]xtreme hazard".

4

## V.

## CAUSES OF ACTION

### A. Causes of Action Against the State of Texas Department of Transportation

5.1　　Plaintiff brings suit against the State of Texas Department of Transportation pursuant to Texas Civil Practice & Remedies Codes Section 101.022(a), as the Plaintiff's claim arise from a premise defect, and the governmental unit owes to the Plaintiff the same duty that a private person owes to a licensee on private property. With respect to the condition of the premises, the condition posed an unreasonable risk of harm, the Defendant had actual knowledge of the danger, the Plaintiff did not have actual knowledge of the danger, and the Defendant failed to exercise ordinary care to protect them from danger, by both failing to adequately warn of the condition and failing to make that condition reasonably safe. Furthermore, the Defendant was grossly negligent with respect to the condition of the premises, the condition posed an unreasonable risk of harm, and the Defendant both failed to adequately warn BRIGETTE GOZA of the danger and failed to make that condition reasonably safe. The Defendant's conduct was more than momentary thoughtlessness, inadvertence, or error of judgment. In other words, the Defendant either knew of or was substantially certain that the result or a similar result would occur, or it displayed such an entire want of care as to establish that the act or omission was the result of actual conscious indifference to the rights, safety, or welfare of the person affected by it. Regardless of whether or not punitive damages can be assessed against the governmental Defendant, Defendant's grossly negligent

conduct means that any alleged knowledge of the condition by the Plaintiff will not bar recovery.

5.2      Plaintiff brings suit against the State of Texas Department of Transportation pursuant to Texas Civil Practice & Remedies Codes Section 101.022(b) and 101.060(2) and (3), as the incident in question resulted from the absence, condition, or malfunction of warning devices, which was not corrected by the Defendant within a reasonable time after notice of the condition.

5.3      Plaintiff brings suit against the State of Texas Department of Transportation pursuant to Texas Civil Practice & Remedies Codes Section 101.021(2) because the Plaintiff's injuries was caused by the condition or use of tangible personal or real property, including defective wiring and lighting, including the bridge's navigation range lights. The failure to use new wiring and lighting constitutes a misuse of tangible personal property.

### B. Causes of Action Against County of Cameron

5.4      Plaintiff brings suit against the County of Cameron pursuant to Texas Civil Practice & Remedies Codes Section 101.022(a), as the Plaintiff's claims arise from a premise defect, and the governmental unit owes to the Plaintiff the same duty that a private person owes to a licensee on private property. With respect to the condition of the premises, the condition posed an unreasonable risk of harm, the Defendant had actual knowledge of the danger, the Plaintiff did not have actual knowledge of the danger, and the Defendant failed to exercise ordinary care to protect BRIGETTE GOZA from danger, by both failing to adequately warn of the condition and failing to make that condition reasonably safe. Furthermore, the Defendant was grossly negligent with respect to the condition of the premises, the condition posed an unreasonable risk of harm, and

6

the Defendant both failed to adequately warn Plaintiff of the danger and failed to make that condition reasonably safe. The Defendant's conduct was more than momentary thoughtlessness, inadvertence, or error of judgment. In other words, the Defendant either knew of or was substantially certain that the result or a similar result would occur, or it displayed such an entire want of care as to establish that the act or omission was the result of actual conscious indifference to the rights, safety, or welfare of the person affected by it. Regardless of whether or not punitive damages can be assessed against the governmental Defendant, Defendant's grossly negligent conduct means that any alleged knowledge of the condition by the Plaintiff will not bar recovery.

5.5     Plaintiff brings suit against the County of Cameron pursuant to Texas Civil Practice & Remedies Codes Section 101.022(b) and 101.060(2) and (3), as the incident in question resulted from the absence, condition, or malfunction of a warning device, which was not corrected by the Defendant within a reasonable time after notice of the condition.

5.6     Plaintiff brings suit against the County of Cameron pursuant to Texas Civil Practice & Remedies Codes Section 101.021(2) because of the injuries and damages to Plaintiff BRIGETTE GOZA was caused by the condition or use of tangible personal or real property, including defective wiring and lighting. The failure to use new wiring and lighting constitutes a misuse of tangible personal property.

### C. Causes of Action Against A.G. Hillpower, Inc.,
### Now Known as JHB Enteprises, Inc.

5.7     Defendant, A. G. Hillpower, Inc. was responsible for the maintenance of the bridge. A.G. Hillpower, Inc. knew of, or should have known

of, the defective wiring which caused the portion of the bridge to be dark and therefore dangerous. A.G. Hillpower, Inc. committed acts of omission and commission which, collectively and severally, constituted negligence, gross neglect, and malice, as those terms are defined under Texas Law, which negligence, gross neglect, and malice was a proximate cause of the injuries to BRIGETTE GOZA.

## VI.

### PROXIMATE CAUSE

6.1    The acts, omissions, negligence, and gross negligence of the Defendants as alleged above proximately caused damages to BRIGETTE GOZA in excess of this Court's minimum jurisdictional limits.

### VII.

### DAMAGES TO BRIGETTE GOZA

7.1    As a result of the injuries to BRIGETTE GOZA, she has sustained damages for which recovery is sought herein. Specifically recovery of damages for BRIGETTE GOZA as follows:

- Physical pain and suffering in the past;
- Physical pain and suffering in the future;
- Mental anguish in the past;
- Mental anguish in the future;
- Loss of earning capacity in the past;
- Loss of earning capacity in the future;
- Disfigurement in the past;
- Disfigurement in the future;
- Physical impairment in the past;

8

- Physical impairment in the future;
- Medical expenses in the past; and,
- Medical expenses in the future.

7.4    The Plaintiff has been damaged in the sum of three million dollars ($3,000,000.00) subject to any limitations posed by the Texas Civil Practice & Remedies Code with regard to Defendant's State of Texas Department of Transportation ($250,000.00) and County of Cameron ($300,000.00) after any and all comparative negligence deductions, if any, are assessed.

## VIII.

### EXEMPLARY DAMAGES

8.1    Because of the gross neglect and malice of Defendant A.G. Hill Power, Inc., Defendant A.G. Hill Power, Inc. should have exemplary damages assessed against it in an amount deemed appropriate by the jury.

## IX.

### JURISDICTION

9.1    Plaintiff's damages sought herein are in an amount far in excess of the minimum jurisdictional limits of this Court.

## X.

### PRE-JUDGMENT AND POST-JUDGMENT INTEREST

10.1    Plaintiff seeks pre-judgment and post-judgment interest as allowed by law.

## XI.

### NOTICE

11.1    Pursuant to the provisions of the Texas Tort Claims Act, Section 101.101 of the Texas Civil Practices and Remedies Code, Plaintiffs provided

9

timely notice of their claims against the governmental Defendants. Furthermore, the governmental Defendants had actual notice of Plaintiffs' claims well within six months of the date on which the incident in question occurred.

## PRAYER

WHEREFORE, Plaintiff requests that Defendants be cited to appear and answer, and that on final trial, Plaintiffs has the following:

1. Actual damages in an amount within jurisdictional limits of this Court;

2. Exemplary damages in an amount within the jurisdictional limits of the Court;

3. Prejudgment interest allowed by law;

4. Post-judgment interest allowed by law;

5. Costs of suit; and

6. Such other and further relief, special and general, at law and in equity, to which Plaintiffs may show themselves justly entitled.

Respectfully submitted,

WATTS LAW FIRM, L.L.P.

_____
Mikal C. Watts
State Bar No.
Ray R. Marchan
State Bar No. 12969050

WATTS LAW FIRM, L.L.P.
1926 E. Elizabeth
Brownsville, Texas 78520
(956) 544-0500
(956) 541-0255 FAX

ATTORNEYS FOR PLAINTIFF
BRIGETTE GOZA

10

**PLAINTIFFS REQUEST TRIAL BY JURY**

FILED AT ___ O'CLOCK ___ M
AURORA DE LA GARZA DIST. CLERK

**SEP 12 2003**

DISTRICT COURT OF CAMERON COUNTY, TEXAS
_Reynaldo Lopez_ DEPUTY

CAUSE NO. _2003-09-4624-C_

ROLANDO LEE MOYA, § IN THE DISTRICT COURT
ALBERTO LEROY MOYA, ANTONIO §
SALINAS, JR. AND ROBERT §
ESPERICUETA §
VS. §
§
STATE OF TEXAS DEPARTMENT § CAMERON COUNTY, TEXAS
OF TRANSPORTATION, COUNTY §
OF CAMERON, AND A. G. HILL §
POWER, INC., NOW KNOWN AS §
JHB ENTERPRISES, INC. §
                    Defendants. § _197th_ JUDICIAL DISTRICT

## PLAINTIFFS' ORIGINAL PETITION

**TO THE HONORABLE JUDGE OF SAID COURT:**

COMES NOW, PLAINTIFFS, ROLANDO LEE MOYA, ALBERTO LEROY

MOYA, ANTONIO SALINAS, JR. AND ROBERT ESPERICUETA, complain of

STATE OF TEXAS DEPARTMENT OF TRANSPORTATION, COUNTY OF

CAMERON AND A. G. HILL POWER, INC. NOW KNOWN AS JHB

ENTERPRISES, INC. Defendants, and file this, their Original Petition.

### I.

### DISCOVERY LEVEL

1.1    Discovery is intended to be conducted under Discovery Control

Plan Level 3 of Texas Rule of Civil Procedure 190.

### II.

### PARTIES

2.1    Plaintiffs, ROLANDO LEE MOYA, ALBERTO LEROY MOYA,

ANTONIO SALINAS, JR. AND ROBERT ESPERICUETA are residents of, Hidalgo

County, Texas.  They bring this action individually and in all other capacities

permitted by law.

2.4    Defendant, State of Texas Department of Transportation is a governmental entity which may be served with process by serving its general counsel, Mr. Richard Monroe, at 125 East 11th Street, Austin, Texas 78701-2483.

2.5    Defendant, County of Cameron, is a municipality and may be served with process by servings the County Judge, Mr. Gilberto Hinojosa, at Cameron County Courthouse, 974 E. Harrison, Brownsville, Texas 78520.

2.6    Defendant, A. G. Hill Power, Inc. now known as JHB Enterprises, Inc is a Texas corporation and may be duly served by serving its agent for service, Mr. Jack H. Bennett, at 112 Lakeshore Drive, Corpus Christi, Texas 78413.

### III.

### JURISDICTION AND VENUE

3.1    Jurisdiction and venue is proper in this Court, as the events giving rise to this suit occurred, in whole or in part, in on the land and navigable waters of Cameron County, Texas, and all or a substantial part of the events or omissions giving rise to the Plaintiffs' claims occurred in Cameron County, Texas. Plaintiffs are seeking damages within this Court's jurisdictional limits.

### IV.

### FACTUAL BACKGROUND

4.1    That on or about September 15, 2001, plaintiffs ROLANDO LEE MOYA, ALBERTO LEROY MOYA, ANTONIO SALINAS, JR. AND ROBERT ESPERICUETA were fishing at or near the Queen Isabella Causeway in Port Isabel, Cameron County, Texas. Many people driving vehicles over the Queen Isabella Causeway fell through the chasm in the roadway and plummeted to the water below, many to their death. Plaintiffs responded heroically, saving the life

2

of several individuals and preventing injury to many more.  As a result of the incident made the basis of this lawsuit, Plaintiffs suffered severe and permanent injuries and property damages.

4.2     The Queen Isabella Causeway curves, has narrow shoulders, and rises approximately 109 feet above the bay.  Once drivers enter the causeway, a concrete median prevents them from turning around.  At the time of this incident, a block of streetlights on the causeway's western section was not functioning.  The first part of the bridge was illuminated for traffic heading toward Port Isabel, Texas, but there was no illumination at the scene of the incident.

4.3     The State of Texas alleges that it owns the causeway and its streetlight system.     Cameron County assumes certain maintenance responsibilities over the causeway's streetlight system under an agreement with the Texas Department of Transportation.  Correspondence between TXDOT and the County shows that maintaining the causeway's streetlights had been a problem since at least 1995.  In November of that year, Kenneth Conway, a county park-system director, wrote to TXDOT's district engineer that 30 causeway streetlights were not functioning and presented a "serious safety hazard".  In an April 1996 letter to TXDOT, Conway wrote that "inconsistent lighting on the causeway presents a safety hazard to the traveling public." By August 1996, over 30 streetlights had failed, and at least that many were not functioning later when this incident occurred.

4.4     At the time of the incident that gives rise to this suit, the failed block of lights at the end of the elevated and curving causeway, with narrow shoulders and limited access, suddenly plunged motorists into darkness.  The

causeway entrance was illuminated; thus, the sudden darkness from the block of failed lighting came upon drivers unexpectedly, a condition which was neither open nor obvious to motorists. Plaintiffs did not have actual knowledge of this danger. Furthermore, they could not see far enough ahead to know that the large block of lights on the bridge was out. Additionally, motorists traveling over the bridge had every reasonable expectation that any non-functioning lights had been repaired or replaced. Thus, the malfunctioning block of artificial lighting that the Defendants failed to maintain caused a sudden and unexpected change in driving conditions.

4.5     A cement barrier on the causeway separates the two travel lanes in each direction and prevents drivers from turning back once embarking upon the bridge. Only a relatively narrow shoulder beside the traffic lanes is available to accommodate vehicles in emergency situations. On the evening in question, the causeway was lit at the point of entry, but there was no illumination further along the causeway at the accident scene. The lighting failure was not open or obvious to motorists entering the causeway, and the entrance to the causeway is the only point at which they could choose to avoid the condition or otherwise protect themselves.

4.6     The condition of the bridge, upon failure of a large block of streetlights, caused it to be more dangerous than an ordinary road. It posed an unreasonable risk of harm, in that that there was a sufficient probability of a harmful event occurring, that the Defendants would have foreseen it, or some similar event, as likely to happen.

4.7     While Plaintiffs did not actually know of the dangerous condition of the bridge, the Defendants themselves knew of the danger that the causeway's

4

numerous, nonfunctioning streetlights posed. Kenneth Conway, Cameron County's park-system director, described the failed lighting as a "serious public safety issue" and "a serious safety hazard". In a letter to TXDOT, Conway specifically identified the danger posed to motorists of the causeway. The general foreman a previous contractor, Red Simpson, Inc., hired to repair the lights additionally recognized the danger. He wrote in a letter that the causeway's lighting system posed an "[e]xtreme hazard".

**V.**

**CAUSES OF ACTION**

**A. Causes of Action Against the State of Texas Department of**

**Transportation**

5.1     Plaintiffs bring suit against the State of Texas Department of Transportation pursuant to Texas Civil Practice & Remedies Codes Section 101.022(a), as the Plaintiffs' claims arise from a premise defect, and the governmental unit owes to the Plaintiffs the same duty that a private person owes to a licensee on private property. With respect to the condition of the premises, the condition posed an unreasonable risk of harm, the Defendant had actual knowledge of the danger, the Plaintiffs did not have actual knowledge of the danger, and the Defendant failed to exercise ordinary care to protect them from danger, by both failing to adequately warn of the condition and failing to make that condition reasonably safe. Furthermore, the Defendant was grossly negligent with respect to the condition of the premises, the condition posed an unreasonable risk of harm, and the Defendant both failed to adequately warn ROLANDO LEE MOYA, ALBERTO LEROY MOYA, ANTONIO SALINAS, JR. AND ROBERT ESPERICUETA of the danger and failed to make that condition

5

reasonably safe.   The Defendant's conduct was more than momentary thoughtlessness, inadvertence, or error of judgment.   In other words, the Defendant either knew of or was substantially certain that the result or a similar result would occur, or it displayed such an entire want of care as to establish that the act or omission was the result of actual conscious indifference to the rights, safety, or welfare of the person affected by it.   Regardless of whether or not punitive damages can be assessed against the governmental Defendant, Defendant's grossly negligent conduct means that any alleged knowledge of the condition by the Plaintiffs will not bar recovery.

5.2    Plaintiffs bring suit against the State of Texas Department of Transportation pursuant to Texas Civil Practice & Remedies Codes Section 101.022(b) and 101.060(2) and (3), as the incident in question resulted from the absence, condition, or malfunction of warning devices, which was not corrected by the Defendant within a reasonable time after notice of the condition.

5.3    Plaintiffs bring suit against the State of Texas Department of Transportation pursuant to Texas Civil Practice & Remedies Codes Section 101.021(2) because the Plaintiffs' injuries and damages were caused by the condition or use of tangible personal or real property, including defective wiring and lighting, including the bridge's navigation range lights.   The failure to use new wiring and lighting constitutes a misuse of tangible personal property.

### B. Causes of Action Against County of Cameron

5.4    Plaintiffs bring suit against the County of Cameron pursuant to Texas Civil Practice & Remedies Codes Section 101.022(a), as the Plaintiffs' claims arise from a premise defect, and the governmental unit owes to the Plaintiffs the same duty that a private person owes to a licensee on private property.   With

6

respect to the condition of the premises, the condition posed an unreasonable risk of harm, the Defendant had actual knowledge of the danger, the Plaintiffs did not have actual knowledge of the danger, and the Defendant failed to exercise ordinary care to protect ROLANDO LEE MOYA, ALBERTO LEROY MOYA, ANTONIO SALINAS, JR. AND ROBERT ESPERICUETA from danger, by both failing to adequately warn of the condition and failing to make that condition reasonably safe. Furthermore, the Defendant was grossly negligent with respect to the condition of the premises, the condition posed an unreasonable risk of harm, and the Defendant both failed to adequately warn Plaintiffs of the danger and failed to make that condition reasonably safe. The Defendant's conduct was more than momentary thoughtlessness, inadvertence, or error of judgment. In other words, the Defendant either knew of or was substantially certain that the result or a similar result would occur, or it displayed such an entire want of care as to establish that the act or omission was the result of actual conscious indifference to the rights, safety, or welfare of the person affected by it. Regardless of whether or not punitive damages can be assessed against the governmental Defendant, Defendant's grossly negligent conduct means that any alleged knowledge of the condition by the Plaintiffs will not bar recovery.

5.5    Plaintiffs bring suit against the County of Cameron pursuant to Texas Civil Practice & Remedies Codes Section 101.022(b) and 101.060(2) and (3), as the incident in question resulted from the absence, condition, or malfunction of a warning device, which was not corrected by the Defendant within a reasonable time after notice of the condition.

5.6     Plaintiffs bring suit against the County of Cameron pursuant to Texas Civil Practice & Remedies Codes Section 101.021(2) because of the injuries and damages to Plaintiffs ROLANDO LEE MOYA, ALBERTO LEROY MOYA, ANTONIO SALINAS, JR. AND ROBERT ESPERICUETA were caused by the condition or use of tangible personal or real property, including defective wiring and lighting.  The failure to use new wiring and lighting constitutes a misuse of tangible personal property.

### C. Causes of Action Against A.G. Hillpower, Inc.,

### Now Known as JHB Enteprises, Inc.

5.7     Defendant, A. G. Hillpower, Inc. was responsible for the maintenance of the bridge. A.G. Hillpower, Inc. knew of, or should have known of, the defective wiring which caused the portion of the bridge to be dark and therefore dangerous. A.G. Hillpower, Inc. committed acts of omission and commission which, collectively and severally, constituted negligence, gross neglect, and malice, as those terms are defined under Texas Law, which negligence, gross neglect, and malice was a proximate cause of the injuries to ROLANDO LEE MOYA, ALBERTO LEROY MOYA, ANTONIO SALINAS, JR. AND ROBERT ESPERICUETA.

### VI.

### PROXIMATE CAUSE

6.1     The acts, omissions, negligence, and gross negligence of the Defendants as alleged above proximately caused damages to R ROLANDO LEE MOYA, ALBERTO LEROY MOYA, ANTONIO SALINAS, JR. AND ROBERT ESPERICUETA in excess of this Court's minimum jurisdictional limits.

## VII.

### DAMAGES TO ROLANDO LEE MOYA, ALBERTO LEROY MOYA, ANTONIO SALINAS, JR. AND ROBERT ESPERICUETA

7.1     As a result of the injuries to ROLANDO LEE MOYA, ALBERTO LEROY MOYA, ANTONIO SALINAS, JR. AND ROBERT ESPERICUETA, they have sustained damages for which recovery is sought herein.   Specifically recovery of damages for ROLANDO LEE MOYA, ALBERTO LEROY MOYA, ANTONIO SALINAS, JR. AND ROBERT ESPERICUETA for pecuniary loss, past and future mental anguish, past and future physical impairment, lost wages, and loss of earning capacity.  In addition, Plaintiffs are entitled to maintain and bring this action for party damages, medical expenses, and other consequential damages.   Claimant are entitled to plead for punitive damages based upon Defendants' wanton and reckless conduct that amounted to defendants' gross negligence and conscious disregard of the rights, welfare, and safety of others.

7.4     The Plaintiffs have been damaged in the sum of three million dollars ($3,000,000.00) subject to any limitations posed by the Texas Civil Practice & Remedies Code with regard to Defendant's State of Texas Department of Transportation ($250,000.00) and County of Cameron ($300,000.00) after any and all comparative negligence deductions, if any, are assessed.

## VIII.

### EXEMPLARY DAMAGES

8.1     Because of the gross neglect and malice of Defendant A.G. Hill Power, Inc., Defendant A.G. Hill Power, Inc. should have exemplary damages assessed against it in an amount deemed appropriate by the jury.

## IX.

### JURISDICTION

9

9.1     Plaintiffs' damages sought herein are in an amount far in excess of the minimum jurisdictional limits of this Court.

## X.

### PRE-JUDGMENT AND POST-JUDGMENT INTEREST

10.1     Plaintiffs seek pre-judgment and post-judgment interest as allowed by law.

## XI.

### NOTICE

11.1     Pursuant to the provisions of the Texas Tort Claims Act, Section 101.101 of the Texas Civil Practices and Remedies Code, Plaintiffs provided timely notice of their claims against the governmental Defendants. Furthermore, the governmental Defendants had actual notice of Plaintiffs' claims well within six months of the date on which the incident in question occurred.

### PRAYER

WHEREFORE, Plaintiffs request that Defendants be cited to appear and answer, and that on final trial, Plaintiffs have the following:

1.  Actual damages in an amount within jurisdictional limits of this Court;

2.  Exemplary damages in an amount within the jurisdictional limits of the Court;

3.  Prejudgment interest allowed by law;

4.  Post-judgment interest allowed by law;

5.  Costs of suit; and

6.  Such other and further relief, special and general, at law and in equity, to which Plaintiffs may show themselves justly entitled.

Respectfully submitted,

10

WATTS LAW FIRM, L.L.P.

_____
Mikal C. Watts
State Bar No.
Ray R. Marchan
State Bar No. 12969050

WATTS LAW FIRM, L.L.P.
1926 E. Elizabeth
Brownsville, Texas  78520
(956) 544-0500
(956) 541-0255 FAX

AND

Frank Enriquez
Roberto D. Puentes
Law Offices of Frank Enriquez
4200-B North Bicentennial
McAllen, Texas  78504
(956) 686-5291
(956) 618-5064  FAX

ATTORNEYS FOR PLAINTIFFS
ROLANDO LEE MOYA,
ALBERTO LEROY MOYA,
ANTONIO SALINAS, JR. AND
ROBERT ESPERICUETA

PLAINTIFFS REQUEST TRIAL BY JURY

11



CAUSE NO. 2003-09-4605-D

| | | |
|---|---|---|
| ANITA HARRIS, INDIVIDUALLY | § | IN THE DISTRICT COURT |
| AND AS NEXT FRIEND OF VICTOR | § | |
| JUSTIN HARRIS, AND AS | § | |
| REPRESENTATIVE OF THE | § | |
| ESTATE OF ROBERT V. HARRIS | § | |
| | § | |
| VS. | § | CAMERON COUNTY, TEXAS |
| | § | |
| STATE OF TEXAS DEPARTMENT | § | |
| OF TRANSPORTATION, COUNTY | § | |
| OF CAMERON, AND A. G. HILL § | § | |
| POWER, INC., NOW KNOWN AS | § | |
| JHB ENTERPRISES, INC. | § | |
| Defendants. | § | 103 JUDICIAL DISTRICT |

## PLAINTIFFS' ORIGINAL PETITION

**TO THE HONORABLE JUDGE OF SAID COURT:**

COMES NOW, PLAINTIFFS, ANITA HARRIS, INDIVIDUALLY AND AS NEXT FRIEND OF VICTOR JUSTIN HARRIS AND AS REPRESENTATIVE OF THE ESTATE OF ROBERT V. HARRIS, complain of STATE OF TEXAS DEPARTMENT OF TRANSPORTATION, COUNTY OF CAMERON AND A. G. HILL POWER, INC. NOW KNOWN AS JHB ENTERPRISES, INC. Defendants, and file this, their Original Petition.

I.

## DISCOVERY LEVEL

1.1    Discovery is intended to be conducted under Discovery Control Plan Level 3 of Texas Rule of Civil Procedure 190.

## II.

## PARTIES

2.1    Plaintiff, ANITA HARRIS, INDIVIDUALLY AND AS NEXT FRIEND OF VICTOR JUSTIN HARRIS AND AS REPRESENTATIVE OF THE ESTATE OF ROBERT V. HARRIS are residents of Cameron County, Texas.  They bring this action individually and in their own capacity; as the surviving wife of Robert V. Harris; as the Legal Representatives of the Estate of Robert V. Harris, and in all other capacities permitted by law.

2.4    Defendant, State of Texas Department of Transportation is a governmental entity which may be served with process by serving its general counsel, Mr. Richard Monroe, at 125 East 11th Street, Austin, Texas  78701-2483.

2.5    Defendant, County of Cameron, is a municipality and may be served with process by servings the County Judge, Mr. Gilberto Hinojosa, at Cameron County Courthouse, 974 E. Harrison, Brownsville, Texas  78520.

2.6    Defendant, A. G. Hill Power, Inc. now known as JHB Enterprises, Inc is a Texas corporation and may be duly served by serving its agent for service, Mr. Jack H. Bennett, at 112 Lakeshore Drive, Corpus Christi, Texas 78413.

## III.

## JURISDICTION AND VENUE

3.1    Jurisdiction and venue is proper in this Court, as the events giving rise to this suit occurred, in whole or in part, in on the land and navigable waters

2

of Cameron County, Texas, and all or a substantial part of the events or omissions giving rise to the Plaintiffs' claims occurred in Cameron County, Texas. Plaintiffs are seeking damages within this Court's jurisdictional limits.

## IV.

## FACTUAL BACKGROUND

4.1    That on or about September 15, 2001, while in a motor vehicle being driven by Robert V. Harris, while traveling along and upon the Queen Isabella Causeway in Port Isabel, Cameron County, Texas, was severely and fatally injured.

4.2    The Queen Isabella Causeway curves, has narrow shoulders, and rises approximately 109 feet above the bay.  Once drivers enter the causeway, a concrete median prevents them from turning around.  At the time of this incident, a block of streetlights on the causeway's western section was not functioning. The first part of the bridge was illuminated for traffic heading toward Port Isabel, Texas, but there was no illumination at the scene of the incident.

4.3    The State of Texas alleges that it owns the causeway and its streetlight system.    Cameron  County  assumes  certain  maintenance responsibilities over the causeway's streetlight system under an agreement with the Texas Department of Transportation.  Correspondence between TXDOT and the County shows that maintaining the causeway's streetlights had been a problem since at least 1995.  In November of that year, Kenneth Conway, a county park-system director, wrote to TXDOT's district engineer that 30 causeway streetlights were not functioning and presented a "serious safety hazard".  In an April 1996 letter to TXDOT, Conway wrote that "inconsistent

3

lighting on the causeway presents a safety hazard to the traveling public." By August 1996, over 30 streetlights had failed, and at least that many were not functioning later when this incident occurred.

4.4     At the time of the incident that gives rise to this suit, the failed block of lights at the end of the elevated and curving causeway, with narrow shoulders and limited access, suddenly plunged motorists, including Robert V. Harris, into darkness.  The causeway entrance was illuminated; thus, the sudden darkness from the block of failed lighting came upon drivers unexpectedly, a condition which was neither open nor obvious to Robert V. Harris.  Plaintiff Robert V. Harris did not  have actual knowledge of this danger.  Furthermore, when Plaintiff Robert V. Harris entered the causeway, they could not see far enough ahead to know that the large block of lights on the bridge was out.  Additionally, motorists traveling over the bridge had every reasonable expectation that any non-functioning lights had been repaired or replaced. Thus, the malfunctioning block of artificial lighting that the Defendants failed to maintain caused a sudden and unexpected change in driving conditions.

4.5     A cement barrier on the causeway separates the two travel lanes in each direction and prevents drivers from turning back once embarking upon the bridge.  Only a relatively narrow shoulder beside the traffic lanes is available to accommodate vehicles in emergency situations.  On the evening in question, the causeway was lit at the point of entry, but there was no illumination further along the causeway at the accident scene.   The lighting failure was not open or obvious to motorists entering the causeway, and the entrance to the causeway is

the only point at which they could choose to avoid the condition or otherwise protect themselves.

4.6    The condition of the bridge, upon failure of a large block of streetlights, caused it to be more dangerous than an ordinary road. It posed an unreasonable risk of harm, in that that there was a sufficient probability of a harmful event occurring, that the Defendants would have foreseen it, or some similar event, as likely to happen.

4.7    While Plaintiff Robert V. Harris did not actually know of the dangerous condition of the bridge, the Defendants themselves knew of the danger that the causeway's numerous, nonfunctioning streetlights posed. Kenneth Conway, Cameron County's park-system director, described the failed lighting as a "serious public safety issue" and "a serious safety hazard". In a letter to TXDOT, Conway specifically identified the danger posed to motorists of the causeway. The general foreman a previous contractor, Red Simpson, Inc., hired to repair the lights additionally recognized the danger. He wrote in a letter that the causeway's lighting system posed an "[e]xtreme hazard".

## V.

## CAUSES OF ACTION

### A. Causes of Action Against the State of Texas Department of Transportation

5.1    Plaintiffs bring suit against the State of Texas Department of Transportation pursuant to Texas Civil Practice & Remedies Codes Section 101.022(a), as the Plaintiffs' claims arise from a premise defect, and the governmental unit owes to the Plaintiffs the same duty that a private person

owes to a licensee on private property. With respect to the condition of the premises, the condition posed an unreasonable risk of harm, the Defendant had actual knowledge of the danger, the Plaintiffs did not have actual knowledge of the danger, and the Defendant failed to exercise ordinary care to protect the Robert V. Harris from danger, by both failing to adequately warn of the condition and failing to make that condition reasonably safe. Furthermore, the Defendant was grossly negligent with respect to the condition of the premises, the condition posed an unreasonable risk of harm, and the Defendant both failed to adequately warn Robert V. Harris of the danger and failed to make that condition reasonably safe. The Defendant's conduct was more than momentary thoughtlessness, inadvertence, or error of judgment. In other words, the Defendant either knew of or was substantially certain that the result or a similar result would occur, or it displayed such an entire want of care as to establish that the act or omission was the result of actual conscious indifference to the rights, safety, or welfare of the person affected by it. Regardless of whether or not punitive damages can be assessed against the governmental Defendant, Defendant's grossly negligent conduct means that any alleged knowledge of the condition by the Plaintiffs will not bar recovery.

5.2    Plaintiffs bring suit against the State of Texas Department of Transportation pursuant to Texas Civil Practice & Remedies Codes Section 101.022(b) and 101.060(2) and (3), as the incident in question resulted from the absence, condition, or malfunction of warning devices, which was not corrected by the Defendant within a reasonable time after notice of the condition.

5.3     Plaintiffs bring suit against the State of Texas Department of Transportation pursuant to Texas Civil Practice & Remedies Codes Section 101.021(2) because the Plaintiffs' injuries and death were caused by the condition or use of tangible personal or real property, including defective wiring and lighting, including the bridge's navigation range lights.  The failure to use new wiring and lighting constitutes a misuse of tangible personal property.

## B. Causes of Action Against County of Cameron

5.4     Plaintiffs bring suit against the County of Cameron pursuant to Texas Civil Practice & Remedies Codes Section 101.022(a), as the Plaintiffs' claims arise from a premise defect, and the governmental unit owes to the Plaintiffs the same duty that a private person owes to a licensee on private property.  With respect to the condition of the premises, the condition posed an unreasonable risk of harm, the Defendant had actual knowledge of the danger, the Plaintiffs did not have actual knowledge of the danger, and the Defendant failed to exercise ordinary care to protect Robert V. Harris from danger, by both failing to adequately warn of the condition and failing to make that condition reasonably safe.  Furthermore, the Defendant was grossly negligent with respect to the condition of the premises, the condition posed an unreasonable risk of harm, and the Defendant both failed to adequately warn Robert V. Harris of the danger and failed to make that condition reasonably safe.  The Defendant's conduct was more than momentary thoughtlessness, inadvertence, or error of judgment.  In other words, the Defendant either knew of or was substantially certain that the result or a similar result would occur, or it displayed such an entire want of care as to establish that the act or omission was the result of

7

actual conscious indifference to the rights, safety, or welfare of the person affected by it.  Regardless of whether or not punitive damages can be assessed against the governmental Defendant, Defendant's grossly negligent conduct means that any alleged knowledge of the condition by the Plaintiffs will not bar recovery.

5.5     Plaintiffs bring suit against the County of Cameron pursuant to Texas Civil Practice & Remedies Codes Section 101.022(b) and 101.060(2) and (3), as the incident in question resulted from the absence, condition, or malfunction of a warning device, which was not corrected by the Defendant within a reasonable time after notice of the condition.

5.6     Plaintiffs bring suit against the County of Cameron pursuant to Texas Civil Practice & Remedies Codes Section 101.021(2) because Robert V. Harris's injuries and death and damages to Plaintiffs ANITA HARRIS, INDIVIDUALLY AND AS NEXT FRIEND OF VICTOR JUSTIN HARRIS AND AS REPRESENTATIVE OF THE ESTATE OF ROBERT V. HARRIS were caused by the condition or use of tangible personal or real property, including defective wiring and lighting.  The failure to use new wiring and lighting constitutes a misuse of tangible personal property.

### C. Causes of Action Against A.G. Hillpower, Inc.,

### Now Known as JHB Enteprises, Inc.

5.7     Defendant, A. G. Hillpower, Inc. was responsible for the maintenance of the bridge. A.G. Hillpower, Inc. knew of, or should have known of, the defective wiring which caused the portion of the bridge to be dark and therefore dangerous. A.G. Hillpower, Inc. committed acts of omission and

8

commission which, collectively and severally, constituted negligence, gross neglect, and malice, as those terms are defined under Texas Law, which negligence, gross neglect, and malice was a proximate cause of the fatal injuries to Robert V. Harris and damages to Anita Harris, Individually and as Next Friend of Victor Justin Harris.

## VI.

## PROXIMATE CAUSE

6.1    The acts, omissions, negligence, and gross negligence of the Defendants as alleged above proximately caused damages to Anita Harris Individually and as Next Friend of Victor Justin Harris and as Representative of the Estate of Robert V. Harris in excess of this Court's minimum jurisdictional limits.

## VII.

## DAMAGES TO ANITA HARRIS, INDIVIDUALLY AND AS NEXT FRIEND OF VICTOR JUSTIN HARRIS AND AS REPRESENTATIVE OF THE ESTATE OF ROBERT V. HARRIS

7.1    Robert V. Harris did not die instantaneously, but rather suffered severe and excruciating physical pain and mental anguish prior to her death. As a result, her estate is entitled to recover damages for their physical pain and mental anguish, in addition to funeral and burial expenses, for which recovery is sought herein.

7.2    As a direct and proximate result of the death of their daughter, Plaintiffs ANITA HARRIS, INDIVIDUALLY AND AS NEXT FRIEND OF VICTOR

9

JUSTIN HARRIS AND AS REPRESENTATIVE OF THE ESTATE OF ROBERT V. HARRIS have been deprived of the affection, companionship, advise, counsel, comfort, solace and services that they would, in a reasonable probability, have received from their parents during her lifetime had she survived.

7.3    Plaintiffs ANITA HARRIS, INDIVIDUALLY AND AS NEXT FRIEND OF VICTOR JUSTIN HARRIS AND AS REPRESENTATIVE OF THE ESTATE OF ROBERT V. HARRIS have suffered the loss of the parent/child relationship, extreme grief, mental anguish, and physical suffering in the past and will, in reasonable probability, continue to do so in the future as a result of the sudden and untimely death of father and husband.

7.4    The Plaintiffs have been damaged in the sum of three million dollars ($3,000,000.00) subject to any limitations posed by the Texas Civil Practice & Remedies Code with regard to Defendant's State of Texas Department of Transportation ($250,000.00) and County of Cameron ($300,000.00) after any and all comparative negligence deductions, if any, are assessed.

## VIII.

## EXEMPLARY DAMAGES

8.1    Because of the gross neglect and malice of Defendant A.G. Hill Power, Inc., Defendant A.G. Hill Power, Inc. should have exemplary damages assessed against it in an amount deemed appropriate by the jury.

## IX.

## JURISDICTION

9.1    Plaintiffs' damages sought herein are in an amount far in excess of the minimum jurisdictional limits of this Court.

## X.

## PRE-JUDGMENT AND POST-JUDGMENT INTEREST

10.1    Plaintiffs seek pre-judgment and post-judgment interest as allowed by law.

## XI.

## NOTICE

11.1    Pursuant to the provisions of the Texas Tort Claims Act, Section 101.101 of the Texas Civil Practices and Remedies Code, Plaintiffs provided timely notice of their claims against the governmental Defendants.  Furthermore, the governmental Defendants had actual notice of Plaintiffs' claims well within six months of the date on which the incident in question occurred.

## PRAYER

WHEREFORE, Plaintiffs request that Defendants be cited to appear and answer, and that on final trial, Plaintiffs have the following:

1.  Actual damages in an amount within jurisdictional limits of this Court;

2.  Exemplary damages in an amount within the jurisdictional limits of the Court;

3.  Prejudgment interest allowed by law;

4.  Post-judgment interest allowed by law;

11

5. Costs of suit; and

6. Such other and further relief, special and general, at law and in equity, to which Plaintiffs may show themselves justly entitled.

Respectfully submitted,

Law Offices of
Heriberto 'Eddie' Medrano
2009 East Harrison – Suite B
Harlingen, Texas 78550

Telephone:    (956) 428-2412
Facsimile:    (956) 428-2495

HERIBERTO 'EDDIE' MEDRANO
State Bar No. 13897800
Federal Bar No. 5952

**ATTORNEYS FOR PLAINTIFFS**

**ANITA HARRIS, INDIVIDUALLY AND AS NEXT FRIEND OF VICTOR JUSTIN HARRIS AND AS REPRESENTATIVE OF THE ESTATE OF ROBERT HARRIS**

**PLAINTIFFS REQUEST TRIAL BY JURY**

CAUSE NO. 2003-09-4616-E

| | | |
|---|---|---|
| HECTOR MARTINEZ, SR., INDIVIDUALLY AS THE SURVIVING FATHER OF HECTOR MARTINEZ, JR. | § § § § § § | IN THE DISTRICT COURT |
| VS. | § § | CAMERON COUNTY, TEXAS |
| STATE OF TEXAS DEPARTMENT OF TRANSPORTATION, COUNTY OF CAMERON, AND A. G. HILL POWER, INC., NOW KNOWN AS JHB ENTERPRISES, INC.  Defendants. | § § § § § § | 357 JUDICIAL DISTRICT |

FILED ___ O'CLOCK ___ M
AURORA DE LA GARZA, CLERK

SEP 12 2003

DISTRICT COURT OF CAMERON COUNTY, TEXAS
DEPUTY

## PLAINTIFFS' ORIGINAL PETITION

TO THE HONORABLE JUDGE OF SAID COURT:

COMES NOW, PLAINTIFFS, HECTOR MARTINEZ, SR. INDIVIDUALLY AS THE SURVIVING FATHER OF HECTOR MARTINEZ, JR., complain of STATE OF TEXAS DEPARTMENT OF TRANSPORTATION, COUNTY OF CAMERON AND A. G. HILL POWER, INC. NOW KNOWN AS JHB ENTERPRISES, INC. Defendants, and file this, their Original Petition.

### I.

### DISCOVERY LEVEL

1.1    Discovery is intended to be conducted under Discovery Control Plan Level 3 of Texas Rule of Civil Procedure 190.

### II.

### PARTIES

2.1    Plaintiff, HECTOR MARTINEZ, SR. INDIVIDUALLY AS THE SURVIVING FATHER OF HECTOR MARTINEZ, JR. is a residents of Cameron County, Texas. They bring this action individually and in their own capacity; as

the surviving father of HECTOR MARTINEZ, JR.; and in all other capacities permitted by law.

2.4     Defendant, State of Texas Department of Transportation is a governmental entity which may be served with process by serving its general counsel, Mr. Richard Monroe, at 125 East 11th Street, Austin, Texas 78701-2483.

2.5     Defendant, County of Cameron, is a municipality and may be served with process by servings the County Judge, Mr. Gilberto Hinojosa, at Cameron County Courthouse, 974 E. Harrison, Brownsville, Texas 78520.

2.6     Defendant, A. G. Hill Power, Inc. now known as JHB Enterprises, Inc is a Texas corporation and may be duly served by serving its agent for service, Mr. Jack H. Bennett, at 112 Lakeshore Drive, Corpus Christi, Texas 78413.

## III.

## JURISDICTION AND VENUE

3.1     Jurisdiction and venue is proper in this Court, as the events giving rise to this suit occurred, in whole or in part, in on the land and navigable waters of Cameron County, Texas, and all or a substantial part of the events or omissions giving rise to the Plaintiffs' claims occurred in Cameron County, Texas. Plaintiffs are seeking damages within this Court's jurisdictional limits.

## IV.

## FACTUAL BACKGROUND

4.1     That on or about September 15, 2001, while in a motor vehicle being driven by Hector Martinez, Jr., while traveling along and upon the Queen Isabella Causeway in Port Isabel, Cameron County, Texas, was severely and fatally injured.

2

4.2    The Queen Isabella Causeway curves, has narrow shoulders, and rises approximately 109 feet above the bay.  Once drivers enter the causeway, a concrete median prevents them from turning around.  At the time of this incident, a block of streetlights on the causeway's western section was not functioning.  The first part of the bridge was illuminated for traffic heading toward Port Isabel, Texas, but there was no illumination at the scene of the incident.

4.3    The State of Texas alleges that it owns the causeway and its streetlight system.    Cameron County assumes certain maintenance responsibilities over the causeway's streetlight system under an agreement with the Texas Department of Transportation.  Correspondence between TXDOT and the County shows that maintaining the causeway's streetlights had been a problem since at least 1995.  In November of that year, Kenneth Conway, a county park-system director, wrote to TXDOT's district engineer that 30 causeway streetlights were not functioning and presented a "serious safety hazard".  In an April 1996 letter to TXDOT, Conway wrote that "inconsistent lighting on the causeway presents a safety hazard to the traveling public." By August 1996, over 30 streetlights had failed, and at least that many were not functioning later when this incident occurred.

4.4    At the time of the incident that gives rise to this suit, the failed block of lights at the end of the elevated and curving causeway, with narrow shoulders and limited access, suddenly plunged motorists, including Hector Martinez, Jr., into darkness.  The causeway entrance was illuminated; thus, the sudden darkness from the block of failed lighting came upon drivers

3

unexpectedly, a condition which was neither open nor obvious to Hector Martinez, Jr.. Plaintiff Hector Martinez, Jr. did not have actual knowledge of this danger. Furthermore, when Plaintiff Hector Martinez, Jr. entered the causeway, they could not see far enough ahead to know that the large block of lights on the bridge was out. Additionally, motorists traveling over the bridge had every reasonable expectation that any non-functioning lights had been repaired or replaced. Thus, the malfunctioning block of artificial lighting that the Defendants failed to maintain caused a sudden and unexpected change in driving conditions.

4.5     A cement barrier on the causeway separates the two travel lanes in each direction and prevents drivers from turning back once embarking upon the bridge. Only a relatively narrow shoulder beside the traffic lanes is available to accommodate vehicles in emergency situations. On the evening in question, the causeway was lit at the point of entry, but there was no illumination further along the causeway at the accident scene. The lighting failure was not open or obvious to motorists entering the causeway, and the entrance to the causeway is the only point at which they could choose to avoid the condition or otherwise protect themselves.

4.6     The condition of the bridge, upon failure of a large block of streetlights, caused it to be more dangerous than an ordinary road. It posed an unreasonable risk of harm, in that that there was a sufficient probability of a harmful event occurring, that the Defendants would have foreseen it, or some similar event, as likely to happen.

4.7     While Plaintiff Hector Martinez, Jr. did not actually know of the dangerous condition of the bridge, the Defendants themselves knew of the danger that the causeway's numerous, nonfunctioning streetlights posed.

4

Kenneth Conway, Cameron County's park-system director, described the failed lighting as a "serious public safety issue" and "a serious safety hazard". In a letter to TXDOT, Conway specifically identified the danger posed to motorists of the causeway. The general foreman a previous contractor, Red Simpson, Inc., hired to repair the lights additionally recognized the danger. He wrote in a letter that the causeway's lighting system posed an "[e]xtreme hazard".

**V.**

**CAUSES OF ACTION**

**A. Causes of Action Against the State of Texas Department of Transportation**

5.1    Plaintiffs bring suit against the State of Texas Department of Transportation pursuant to Texas Civil Practice & Remedies Codes Section 101.022(a), as the Plaintiffs' claims arise from a premise defect, and the governmental unit owes to the Plaintiffs the same duty that a private person owes to a licensee on private property. With respect to the condition of the premises, the condition posed an unreasonable risk of harm, the Defendant had actual knowledge of the danger, the Plaintiffs did not have actual knowledge of the danger, and the Defendant failed to exercise ordinary care to protect the Hector Martinez, Jr. from danger, by both failing to adequately warn of the condition and failing to make that condition reasonably safe. Furthermore, the Defendant was grossly negligent with respect to the condition of the premises, the condition posed an unreasonable risk of harm, and the Defendant both failed to adequately warn Hector Martinez, Jr. of the danger and failed to make that condition reasonably safe. The Defendant's conduct was more than momentary thoughtlessness, inadvertence, or error of judgment. In other words, the

5

Defendant either knew of or was substantially certain that the result or a similar result would occur, or it displayed such an entire want of care as to establish that the act or omission was the result of actual conscious indifference to the rights, safety, or welfare of the person affected by it. Regardless of whether or not punitive damages can be assessed against the governmental Defendant, Defendant's grossly negligent conduct means that any alleged knowledge of the condition by the Plaintiffs will not bar recovery.

5.2    Plaintiffs bring suit against the State of Texas Department of Transportation pursuant to Texas Civil Practice & Remedies Codes Section 101.022(b) and 101.060(2) and (3), as the incident in question resulted from the absence, condition, or malfunction of warning devices, which was not corrected by the Defendant within a reasonable time after notice of the condition.

5.3    Plaintiffs bring suit against the State of Texas Department of Transportation pursuant to Texas Civil Practice & Remedies Codes Section 101.021(2) because the Plaintiffs' injuries and death were caused by the condition or use of tangible personal or real property, including defective wiring and lighting, including the bridge's navigation range lights. The failure to use new wiring and lighting constitutes a misuse of tangible personal property.

### B. Causes of Action Against County of Cameron

5.4    Plaintiffs bring suit against the County of Cameron pursuant to Texas Civil Practice & Remedies Codes Section 101.022(a), as the Plaintiffs' claims arise from a premise defect, and the governmental unit owes to the Plaintiffs the same duty that a private person owes to a licensee on private property. With respect to the condition of the premises, the condition posed an unreasonable risk of harm, the Defendant had actual knowledge of the danger, the Plaintiffs

6

did not have actual knowledge of the danger, and the Defendant failed to exercise ordinary care to protect Hector Martinez, Jr. from danger, by both failing to adequately warn of the condition and failing to make that condition reasonably safe. Furthermore, the Defendant was grossly negligent with respect to the condition of the premises, the condition posed an unreasonable risk of harm, and the Defendant both failed to adequately warn Hector Martinez, Jr. of the danger and failed to make that condition reasonably safe. The Defendant's conduct was more than momentary thoughtlessness, inadvertence, or error of judgment. In other words, the Defendant either knew of or was substantially certain that the result or a similar result would occur, or it displayed such an entire want of care as to establish that the act or omission was the result of actual conscious indifference to the rights, safety, or welfare of the person affected by it. Regardless of whether or not punitive damages can be assessed against the governmental Defendant, Defendant's grossly negligent conduct means that any alleged knowledge of the condition by the Plaintiffs will not bar recovery.

5.5   Plaintiffs bring suit against the County of Cameron pursuant to Texas Civil Practice & Remedies Codes Section 101.022(b) and 101.060(2) and (3), as the incident in question resulted from the absence, condition, or malfunction of a warning device, which was not corrected by the Defendant within a reasonable time after notice of the condition.

5.6   Plaintiffs bring suit against the County of Cameron pursuant to Texas Civil Practice & Remedies Codes Section 101.021(2) because Hector Martinez, Jr.'s injuries and death and damages to Plaintiffs HECTOR MARTINEZ, SR. INDIVIDUALLY AS THE SURVIVING FATHER OF HECTOR MARTINEZ, JR. were caused by the condition or use of tangible personal or real property,

including defective wiring and lighting. The failure to use new wiring and lighting constitutes a misuse of tangible personal property.

### C. Causes of Action Against A.G. Hillpower, Inc., Now Known as JHB Enteprises, Inc.

5.7    Defendant, A. G. Hillpower, Inc. was responsible for the maintenance of the bridge. A.G. Hillpower, Inc. knew of, or should have known of, the defective wiring which caused the portion of the bridge to be dark and therefore dangerous. A.G. Hillpower, Inc. committed acts of omission and commission which, collectively and severally, constituted negligence, gross neglect, and malice, as those terms are defined under Texas Law, which negligence, gross neglect, and malice was a proximate cause of the fatal injuries to Hector Martinez, Jr. and damages to Hector Martinez, Sr..

### VI.

### PROXIMATE CAUSE

6.1    The acts, omissions, negligence, and gross negligence of the Defendants as alleged above proximately caused damages to HECTOR MARTINEZ, SR. INDIVIDUALLY AS THE SURVIVING FATHER OF HECTOR MARTINEZ, JR. in excess of this Court's minimum jurisdictional limits.

### VII.

### DAMAGES TO HECTOR MARTINEZ, SR. INDIVIDUALLY AS THE SURVIVING FATHER OF HECTOR MARTINEZ, JR.

7.1    Hector Martinez, Jr. did not die instantaneously, but rather suffered severe and excruciating physical pain and mental anguish prior to his death. As a result, his estate is entitled to recover damages for their physical pain and mental

8

anguish, in addition to funeral and burial expenses, for which recovery is sought herein.

7.2     As a direct and proximate result of the death of his son, Plaintiff HECTOR MARTINEZ, SR. INDIVIDUALLY AS THE SURVIVING FATHER OF HECTOR MARTINEZ, JR. have been deprived of the affection, companionship, advise, counsel, comfort, solace and services that they would, in a reasonable probability, have received from his son during his lifetime had he survived.

7.3     Plaintiffs HECTOR MARTINEZ, SR. INDIVIDUALLY AS THE SURVIVING FATHER OF HECTOR MARTINEZ, JR. have suffered the loss of the parent/child relationship, extreme grief, mental anguish, and physical suffering in the past and will, in reasonable probability, continue to do so in the future as a result of the sudden and untimely death of his son, Hector Martinez, Jr..

7.4     The Plaintiffs have been damaged in the sum of three million dollars ($3,000,000.00) subject to any limitations posed by the Texas Civil Practice & Remedies Code with regard to Defendant's State of Texas Department of Transportation ($250,000.00) and County of Cameron ($300,000.00) after any and all comparative negligence deductions, if any, are assessed.

## VIII.

### EXEMPLARY DAMAGES

8.1     Because of the gross neglect and malice of Defendant A.G. Hill Power, Inc., Defendant A.G. Hill Power, Inc. should have exemplary damages assessed against it in an amount deemed appropriate by the jury.

## IX.

### JURISDICTION

9.1    Plaintiffs' damages sought herein are in an amount far in excess of the minimum jurisdictional limits of this Court.

## X.

### PRE-JUDGMENT AND POST-JUDGMENT INTEREST

10.1    Plaintiffs seek pre-judgment and post-judgment interest as allowed by law.

## XI.

### NOTICE

11.1    Pursuant to the provisions of the Texas Tort Claims Act, Section 101.101 of the Texas Civil Practices and Remedies Code, Plaintiffs provided timely notice of their claims against the governmental Defendants. Furthermore, the governmental Defendants had actual notice of Plaintiffs' claims well within six months of the date on which the incident in question occurred.

### PRAYER

**WHEREFORE**, Plaintiffs request that Defendants be cited to appear and answer, and that on final trial, Plaintiffs have the following:

1. Actual damages in an amount within jurisdictional limits of this Court;

2. Exemplary damages in an amount within the jurisdictional limits of the Court;

3. Prejudgment interest allowed by law;

4. Post-judgment interest allowed by law;

5. Costs of suit; and

6. Such other and further relief, special and general, at law and in equity, to which Plaintiffs may show themselves justly entitled.

Respectfully submitted,

10

WATTS LAW FIRM, L.L.P.


Mikal C. Watts
State Bar No. 20981820
Ray R. Marchan
State Bar No. 12969050

WATTS LAW FIRM, L.L.P.
1926 E. Elizabeth
Brownsville, Texas  78520
(956) 544-0500
(956) 541-0255 FAX

WILLIAMS BAILEY LAW FIRM, L.L.P.
Mr. Jim Hart
8441 Gulf Freeway, Ste 600
Houston, Texas  77017
(713) 230-2200
(713) 643-6226  FAX


ATTORNEYS FOR PLAINTIFFS
HECTOR MARTINEZ, SR.
INDIVIDUALLY AS THE SURVIVING
FATHER OF HECTOR MARTINEZ, JR.


PLAINTIFFS REQUEST TRIAL BY JURY

11

AURORA DE LA GARZA DIST. CLERK

SEP 1 2 2003

DISTRICT COURT OF CAMERON COUNTY TEXAS

CAUSE NO. 2003-09-4620 - J

| | | |
|---|---|---|
| RENE MATA AND FRANK MATA | § | IN THE DISTRICT COURT |
| *Plaintiffs* | § | |
| | § | |
| VS. | § | |
| | § | |
| STATE OF TEXAS DEPARTMENT | § | CAMERON COUNTY, TEXAS |
| OF TRANSPORTATION, COUNTY | § | |
| OF CAMERON, AND A. G. HILL | § | |
| POWER, INC. n/k/a | § | |
| JHB ENTERPRISES, INC. | § | |
| *Defendants* | § | 357th _____ JUDICIAL DISTRICT |

## PLAINTIFFS' ORIGINAL PETITION

**TO THE HONORABLE JUDGE OF SAID COURT:**

COMES NOW, PLAINTIFFS, RENE MATA AND FRANK MATA, complain of STATE OF TEXAS DEPARTMENT OF TRANSPORTATION, COUNTY OF CAMERON AND A. G. HILL POWER, INC. n/k/a JHB ENTERPRISES, INC. Defendants, and file this, their Original Petition.

### I.

### DISCOVERY LEVEL

1.1    Discovery is intended to be conducted under Discovery Control Plan Level 3 of Texas Rule of Civil Procedure 190.

### II.

### PARTIES

2.1    Plaintiffs, FRANK MATA AND RENE MATA are residents of, Cameron County, Texas. They bring this action individually and in all other capacities permitted by law.

2.2    Defendant, State of Texas Department of Transportation is a governmental entity which may be served with process by serving its general counsel, Mr. Richard Monroe, at 125 East 11th Street, Austin, Texas 78701-2483.

2.4    Defendant, County of Cameron, is a municipality and may be served with process by servings the County Judge, Mr. Gilberto Hinojosa, at Cameron County Courthouse, 974 E. Harrison, Brownsville, Texas 78520.

2.5    Defendant, A. G. Hill Power, Inc. n/k/a JHB Enterprises, Inc is a Texas corporation and may be duly served by serving its agent for service, Mr. Jack H. Bennett, at 112 Lakeshore Drive, Corpus Christi, Texas 78413.

### III.

### JURISDICTION AND VENUE

3.1    Jurisdiction and venue is proper in this Court, as the events giving rise to this suit occurred, in whole or in part, in on the land and navigable waters of Cameron County, Texas, and all or a substantial part of the events or omissions giving rise to the Plaintiffs' claims occurred in Cameron County, Texas. Plaintiffs are seeking damages within this Court's jurisdictional limits.

### IV.

### FACTUAL BACKGROUND

4.1    That on or about September 15, 2001, Plaintiff Rene Mata was driving a Ford Coupe, owned by his father Frank Mata, across the Queen Isabella Causeway in Port Isabel, Cameron County, Texas. Before Rene Mata could reasonably react to the collapse of the causeway, the Ford Coupe fell through a chasm in the roadway, created by a previous allision between the Causeway and a barge, and plummeted to the water below. Plaintiff Rene Mata

2

sustained substantial, severe, and permanent physical injuries and the Ford Coupe owned by Frank Mata was totaled.

4.2    The Queen Isabella Causeway curves, has narrow shoulders, and rises approximately 109 feet above the bay. Once drivers enter the causeway, a concrete median prevents them from turning around. At the time of this incident, a block of streetlights on the causeway's western section was not functioning. The first part of the bridge was illuminated for traffic heading toward Port Isabel, Texas, but there was no illumination at the scene of the incident.

4.3    The State of Texas alleges that it owns the causeway and its streetlight system. Cameron County assumes certain maintenance responsibilities over the causeway's streetlight system under an agreement with the Texas Department of Transportation. Correspondence between TXDOT and the County shows that maintaining the causeway's streetlights had been a problem since at least 1995. In November of that year, Kenneth Conway, a county park-system director, wrote to TXDOT's district engineer that 30 causeway streetlights were not functioning and presented a "serious safety hazard". In an April 1996 letter to TXDOT, Conway wrote that "inconsistent lighting on the causeway presents a safety hazard to the traveling public." By August 1996, over 30 streetlights had failed, and at least that many were not functioning later when this incident occurred.

4.4    At the time of the incident that gives rise to this suit, the failed block of lights at the end of the elevated and curving causeway, with narrow shoulders and limited access, suddenly plunged motorists into darkness. The causeway entrance was illuminated; thus, the sudden darkness from the block of

3

failed lighting came upon drivers unexpectedly, a condition which was neither open nor obvious to motorists. Plaintiffs did not have actual knowledge of this danger. Furthermore, they could not see far enough ahead to know that the large block of lights on the bridge was out. Additionally, motorists traveling over the bridge had every reasonable expectation that any non-functioning lights had been repaired or replaced. Thus, the malfunctioning block of artificial lighting that the Defendants failed to maintain caused a sudden and unexpected change in driving conditions.

4.5    A cement barrier on the causeway separates the two travel lanes in each direction and prevents drivers from turning back once embarking upon the bridge. Only a relatively narrow shoulder beside the traffic lanes is available to accommodate vehicles in emergency situations. On the evening in question, the causeway was lit at the point of entry, but there was no illumination further along the causeway at the accident scene. The lighting failure was not open or obvious to motorists entering the causeway, and the entrance to the causeway is the only point at which they could choose to avoid the condition or otherwise protect themselves.

4.6    The condition of the bridge, upon failure of a large block of streetlights, caused it to be more dangerous than an ordinary road. It posed an unreasonable risk of harm, in that that there was a sufficient probability of a harmful event occurring, that the Defendants would have foreseen it, or some similar event, as likely to happen.

4.7    While Plaintiffs did not actually know of the dangerous condition of the bridge, the Defendants themselves knew of the danger that the causeway's numerous, nonfunctioning streetlights posed. Kenneth Conway, Cameron

4

County's park-system director, described the failed lighting as a "serious public safety issue" and "a serious safety hazard". In a letter to TXDOT, Conway specifically identified the danger posed to motorists of the causeway. The general foreman a previous contractor, Red Simpson, Inc., hired to repair the lights additionally recognized the danger. He wrote in a letter that the causeway's lighting system posed an "[e]xtreme hazard".

## V.

## CAUSES OF ACTION

**A.    Causes of Action Against the Texas Department of Transportation**

5.1    Plaintiffs bring suit against the State of Texas Department of Transportation pursuant to Texas Civil Practice & Remedies Codes Section 101.022(a), as the Plaintiffs' claims arise from a premise defect, and the governmental unit owes to the Plaintiffs the same duty that a private person owes to a licensee on private property. With respect to the condition of the premises, the condition posed an unreasonable risk of harm, the Defendant had actual knowledge of the danger, the Plaintiffs did not have actual knowledge of the danger, and the Defendant failed to exercise ordinary care to protect them from danger, by both failing to adequately warn of the condition and failing to make that condition reasonably safe. Furthermore, the Defendant was grossly negligent with respect to the condition of the premises, the condition posed an unreasonable risk of harm, and the Defendant both failed to adequately warn RENE MATA AND FRANK MATA of the danger and failed to make that condition reasonably safe. The Defendant's conduct was more than momentary thoughtlessness, inadvertence, or error of judgment. In other words, the Defendant either knew of or was substantially certain that the result or a similar

5

result would occur, or it displayed such an entire want of care as to establish that the act or omission was the result of actual conscious indifference to the rights, safety, or welfare of the person affected by it. Regardless of whether or not punitive damages can be assessed against the governmental Defendant, Defendant's grossly negligent conduct means that any alleged knowledge of the condition by the Plaintiffs will not bar recovery.

5.2    Plaintiffs bring suit against the State of Texas Department of Transportation pursuant to Texas Civil Practice & Remedies Codes Section 101.022(b) and 101.060(2) and (3), as the incident in question resulted from the absence, condition, or malfunction of warning devices, which was not corrected by the Defendant within a reasonable time after notice of the condition.

5.3    Plaintiffs bring suit against the State of Texas Department of Transportation pursuant to Texas Civil Practice & Remedies Codes Section 101.021(2) because the Plaintiffs' injuries and death were caused by the condition or use of tangible personal or real property, including defective wiring and lighting, including the bridge's navigation range lights. The failure to use new wiring and lighting constitutes a misuse of tangible personal property.

**B.    Causes of Action Against County of Cameron**

5.4    Plaintiffs bring suit against the County of Cameron pursuant to Texas Civil Practice & Remedies Codes Section 101.022(a), as the Plaintiffs' claims arise from a premise defect, and the governmental unit owes to the Plaintiffs the same duty that a private person owes to a licensee on private property. With respect to the condition of the premises, the condition posed an unreasonable risk of harm, the Defendant had actual knowledge of the danger, the Plaintiffs did not have actual knowledge of the danger, and the Defendant failed to

6

exercise ordinary care to protect RENE MATA AND FRANK MATA from danger, by both failing to adequately warn of the condition and failing to make that condition reasonably safe. Furthermore, the Defendant was grossly negligent with respect to the condition of the premises, the condition posed an unreasonable risk of harm, and the Defendant both failed to adequately warn Plaintiffs of the danger and failed to make that condition reasonably safe. The Defendant's conduct was more than momentary thoughtlessness, inadvertence, or error of judgment. In other words, the Defendant either knew of or was substantially certain that the result or a similar result would occur, or it displayed such an entire want of care as to establish that the act or omission was the result of actual conscious indifference to the rights, safety, or welfare of the person affected by it. Regardless of whether or not punitive damages can be assessed against the governmental Defendant, Defendant's grossly negligent conduct means that any alleged knowledge of the condition by the Plaintiffs will not bar recovery.

5.5    Plaintiffs bring suit against the County of Cameron pursuant to Texas Civil Practice & Remedies Codes Section 101.022(b) and 101.060(2) and (3), as the incident in question resulted from the absence, condition, or malfunction of a warning device, which was not corrected by the Defendant within a reasonable time after notice of the condition.

5.6    Plaintiffs bring suit against the County of Cameron pursuant to Texas Civil Practice & Remedies Codes Section 101.021(2) because of the injuries and damages to Plaintiffs RENE MATA AND FRANK MATA were caused by the condition or use of tangible personal or real property, including defective wiring

7

and lighting.  The failure to use new wiring and lighting constitutes a misuse of tangible personal property.

**C.    Causes of Action Against A.G. Hillpower, Inc. n/k/a JHB Enteprises, Inc.**

5.7    Defendant, A. G. Hillpower, Inc. was responsible for the maintenance of the bridge. A.G. Hillpower, Inc. knew of, or should have known of, the defective wiring which caused the portion of the bridge to be dark and therefore dangerous. A.G. Hillpower, Inc. committed acts of omission and commission which, collectively and severally, constituted negligence, gross neglect, and malice, as those terms are defined under Texas Law, which negligence, gross neglect, and malice was a proximate cause of the injuries to RENE MATA AND FRANK MATA.

## VI.

### PROXIMATE CAUSE

6.1    The acts, omissions, negligence, and gross negligence of the Defendants as alleged above proximately caused damages to RENE MATA AND FRANK MATA in excess of this Court's minimum jurisdictional limits.

## VII.

### DAMAGES TO RENE MATA AND FRANK MATA

7.1    As a result of the injuries to RENE MATA AND FRANK MATA, they have sustained damages for which recovery is sought herein.  Specifically recovery of damages for RENE MATA as follows:

- Physical pain and suffering in the past;
- Physical pain and suffering in the future;
- Mental anguish in the past;
- Mental anguish in the future;
- Loss of earning capacity in the past;

- Loss of earning capacity in the future;
- Disfigurement in the past;
- Disfigurement in the future;
- Physical impairment in the past;
- Physical impairment in the future;
- Medical expenses in the past; and,
- Medical expenses in the future.

7.2    Plaintiff FRANK MATA has also sustained damages, including property and loss of consortium damages.

7.3    The Plaintiffs have been damaged in an amount far in excess of the minimum jurisdictional limits of this Court, subject to any limitations posed by the Texas Civil Practice & Remedies Code with regard to Defendant's State of Texas Department of Transportation ($250,000.00) and County of Cameron ($300,000.00) after any and all comparative negligence deductions, if any, are assessed.

## VIII.

### EXEMPLARY DAMAGES

8.1    Because of the gross neglect and malice of Defendant A.G. Hill Power, Inc., Defendant A.G. Hill Power, Inc. should have exemplary damages assessed against it in an amount deemed appropriate by the jury.

## IX.

### JURISDICTION

9.1    Plaintiffs' damages sought herein are in an amount far in excess of the minimum jurisdictional limits of this Court.

## X.

## PRE-JUDGMENT AND POST-JUDGMENT INTEREST

10.1    Plaintiffs seek pre-judgment and post-judgment interest as allowed by law.

## XI.

## NOTICE

11.1    Pursuant to the provisions of the Texas Tort Claims Act, Section 101.101 of the Texas Civil Practices and Remedies Code, Plaintiffs provided timely notice of their claims against the governmental Defendants. Furthermore, the governmental Defendants had actual notice of Plaintiffs' claims well within six months of the date on which the incident in question occurred.

## XII.

## JURY DEMAND

12.1    Plaintiffs hereby request a trial by jury.

## PRAYER

**WHEREFORE**, Plaintiffs request that Defendants be cited to appear and answer, and that on final trial, Plaintiffs have the following:

1.  Actual damages in an amount within jurisdictional limits of this Court;

2.  Exemplary damages in an amount within the jurisdictional limits of the Court;

3.  Prejudgment interest allowed by law;

4.  Post-judgment interest allowed by law;

5.  Costs of suit; and

6.  Such other and further relief, special and general, at law and in equity, to which Plaintiffs may show themselves justly entitled.

10

Respectfully submitted,

By: _____
    Raymond L. Thomas
    State Bar No. 19865350
    Andres H. Gonzalez, Jr.
    State Bar No. 24002156

    *KITTLEMAN, THOMAS, RAMIREZ &*
    *GONZALES, PLLC*
    4900-B North 10th Street
    McAllen, Texas 78504
    (956) 686-8797
    (956) 630-5199 (fax)

Mikal C. Watts
State Bar No. 20981820
Ray R. Marchan
State Bar No. 12969050
WATTS LAW FIRM, L.L.P.
1926 E. Elizabeth
Brownsville, Texas 78520
(956) 544-0500
(956) 541-0255 FAX

                    **ATTORNEYS FOR PLAINTIFFS**
                    **RENE MATA AND FRANK MATA**

            **PLAINTIFFS REQUEST TRIAL BY JURY**

11

CAUSE NO. 2003-09-4625-B

| | | |
|---|---|---|
| GUSTAVO MORALES AND | § | IN THE DISTRICT COURT |
| BIGOS INTERNATIONAL | § | |
| | § | |
| VS. | § | |
| | § | |
| STATE OF TEXAS DEPARTMENT | § | CAMERON COUNTY, TEXAS |
| OF TRANSPORTATION, COUNTY | § | |
| OF CAMERON, AND A. G. HILL | § | |
| POWER, INC., NOW KNOWN AS | § | |
| JHB ENTERPRISES, INC. | § | |
| Defendants. | § | 138 JUDICIAL DISTRICT |

FILED __ O'CLOCK __ M
AURORA DE LA GARZA, CLERK
SEP 12 2003
DISTRICT COURT OF CAMERON COUNTY, TEXAS
_____ DEPUTY

### PLAINTIFFS' ORIGINAL PETITION

**TO THE HONORABLE JUDGE OF SAID COURT:**

COMES NOW, PLAINTIFF, GUSTAVO MORALES AND BIGOS INTERNATIONAL, complain of STATE OF TEXAS DEPARTMENT OF TRANSPORTATION, COUNTY OF CAMERON AND A. G. HILL POWER, INC. NOW KNOWN AS JHB ENTERPRISES, INC. Defendants, and file this, her Original Petition.

### I.

### DISCOVERY LEVEL

1.1    Discovery is intended to be conducted under Discovery Control Plan Level 3 of Texas Rule of Civil Procedure 190.

### II.

### PARTIES

2.1    Plaintiffs are residents of Cameron County, Texas. They bring this action individually and in all other capacities permitted by law.

2.4     Defendant, State of Texas Department of Transportation is a governmental entity which may be served with process by serving its general counsel, Mr. Richard Monroe, at 125 East 11th Street, Austin, Texas 78701-2483.

2.5     Defendant, County of Cameron, is a municipality and may be served with process by servings the County Judge, Mr. Gilberto Hinojosa, at Cameron County Courthouse, 974 E. Harrison, Brownsville, Texas 78520.

2.6     Defendant, A. G. Hill Power, Inc. now known as JHB Enterprises, Inc is a Texas corporation and may be duly served by serving its agent for service, Mr. Jack H. Bennett, at 112 Lakeshore Drive, Corpus Christi, Texas 78413.

## III.

## JURISDICTION AND VENUE

3.1     Jurisdiction and venue is proper in this Court, as the events giving rise to this suit occurred, in whole or in part, in on the land and navigable waters of Cameron County, Texas, and all or a substantial part of the events or omissions giving rise to the Plaintiffs claims occurred in Cameron County, Texas. Plaintiffs are seeking damages within this Court's jurisdictional limits.

## IV.

## FACTUAL BACKGROUND

4.1     That on or about September 15, 2001, while in a motor vehicle being driven by Gustavo Morales, while traveling along and upon the Queen Isabella Causeway in Port Isabel, Cameron County, Texas was severely injured.

4.2     The Queen Isabella Causeway curves, has narrow shoulders, and rises approximately 109 feet above the bay.  Once drivers enter the causeway, a

2

concrete median prevents them from turning around. At the time of this incident, a block of streetlights on the causeway's western section was not functioning. The first part of the bridge was illuminated for traffic heading toward Port Isabel, Texas, but there was no illumination at the scene of the incident.

4.3    The State of Texas alleges that it owns the causeway and its streetlight system. Cameron County assumes certain maintenance responsibilities over the causeway's streetlight system under an agreement with the Texas Department of Transportation. Correspondence between TXDOT and the County shows that maintaining the causeway's streetlights had been a problem since at least 1995. In November of that year, Kenneth Conway, a county park-system director, wrote to TXDOT's district engineer that 30 causeway streetlights were not functioning and presented a "serious safety hazard". In an April 1996 letter to TXDOT, Conway wrote that "inconsistent lighting on the causeway presents a safety hazard to the traveling public." By August 1996, over 30 streetlights had failed, and at least that many were not functioning later when this incident occurred.

4.4    At the time of the incident that gives rise to this suit, the failed block of lights at the end of the elevated and curving causeway, with narrow shoulders and limited access, suddenly plunged motorists into darkness. The causeway entrance was illuminated; thus, the sudden darkness from the block of failed lighting came upon drivers unexpectedly, a condition which was neither open nor obvious to motorists. Plaintiffs did not have actual knowledge of this danger. Furthermore, they could not see far enough ahead to know that the large block of lights on the bridge was out. Additionally, motorists traveling

3

over the bridge had every reasonable expectation that any non-functioning lights had been repaired or replaced. Thus, the malfunctioning block of artificial lighting that the Defendants failed to maintain caused a sudden and unexpected change in driving conditions.

4.5    A cement barrier on the causeway separates the two travel lanes in each direction and prevents drivers from turning back once embarking upon the bridge. Only a relatively narrow shoulder beside the traffic lanes is available to accommodate vehicles in emergency situations. On the evening in question, the causeway was lit at the point of entry, but there was no illumination further along the causeway at the accident scene. The lighting failure was not open or obvious to motorists entering the causeway, and the entrance to the causeway is the only point at which they could choose to avoid the condition or otherwise protect themselves.

4.6    The condition of the bridge, upon failure of a large block of streetlights, caused it to be more dangerous than an ordinary road. It posed an unreasonable risk of harm, in that that there was a sufficient probability of a harmful event occurring, that the Defendants would have foreseen it, or some similar event, as likely to happen.

4.7    While Plaintiffs did not actually know of the dangerous condition of the bridge, the Defendants themselves knew of the danger that the causeway's numerous, nonfunctioning streetlights posed. Kenneth Conway, Cameron County's park-system director, described the failed lighting as a "serious public safety issue" and "a serious safety hazard". In a letter to TXDOT, Conway specifically identified the danger posed to motorists of the causeway. The general foreman a previous contractor, Red Simpson, Inc., hired to repair the

4

lights additionally recognized the danger.   He wrote in a letter that the causeway's lighting system posed an "[e]xtreme hazard".

## V.

## CAUSES OF ACTION

### A. Causes of Action Against the State of Texas Department of Transportation

5.1     Plaintiffs bring suit against the State of Texas Department of Transportation pursuant to Texas Civil Practice & Remedies Codes Section 101.022(a), as the Plaintiff's claim arise from a premise defect, and the governmental unit owes to the Plaintiffs the same duty that a private person owes to a licensee on private property.  With respect to the condition of the premises, the condition posed an unreasonable risk of harm, the Defendant had actual knowledge of the danger, the Plaintiffs did not have actual knowledge of the danger, and the Defendant failed to exercise ordinary care to protect them from danger, by both failing to adequately warn of the condition and failing to make that condition reasonably safe.  Furthermore, the Defendant was grossly negligent with respect to the condition of the premises, the condition posed an unreasonable risk of harm, and the Defendant both failed to adequately warn Plaintiffs of the danger and failed to make that condition reasonably safe.  The Defendant's conduct was more than momentary thoughtlessness, inadvertence, or error of judgment.  In other words, the Defendant either knew of or was substantially certain that the result or a similar result would occur, or it displayed such an entire want of care as to establish that the act or omission was the result of actual conscious indifference to the rights, safety, or welfare of the person affected by it.  Regardless of whether or not punitive damages can be assessed

5

against the governmental Defendant, Defendant's grossly negligent conduct means that any alleged knowledge of the condition by the Plaintiffs will not bar recovery.

5.2    Plaintiffs bring suit against the State of Texas Department of Transportation pursuant to Texas Civil Practice & Remedies Codes Section 101.022(b) and 101.060(2) and (3), as the incident in question resulted from the absence, condition, or malfunction of warning devices, which was not corrected by the Defendant within a reasonable time after notice of the condition.

5.3    Plaintiffs bring suit against the State of Texas Department of Transportation pursuant to Texas Civil Practice & Remedies Codes Section 101.021(2) because the Plaintiffs' injuries was caused by the condition or use of tangible personal or real property, including defective wiring and lighting, including the bridge's navigation range lights. The failure to use new wiring and lighting constitutes a misuse of tangible personal property.

### B. Causes of Action Against County of Cameron

5.4    Plaintiffs bring suit against the County of Cameron pursuant to Texas Civil Practice & Remedies Codes Section 101.022(a), as the Plaintiffs' claims arise from a premise defect, and the governmental unit owes to the Plaintiffs the same duty that a private person owes to a licensee on private property. With respect to the condition of the premises, the condition posed an unreasonable risk of harm, the Defendant had actual knowledge of the danger, the Plaintiffs did not have actual knowledge of the danger, and the Defendant failed to exercise ordinary care to protect plaintiffs from danger, by both failing to adequately warn of the condition and failing to make that condition reasonably safe. Furthermore, the Defendant was grossly negligent with respect to the

6

condition of the premises, the condition posed an unreasonable risk of harm, and the Defendant both failed to adequately warn Plaintiffs of the danger and failed to make that condition reasonably safe. The Defendant's conduct was more than momentary thoughtlessness, inadvertence, or error of judgment. In other words, the Defendant either knew of or was substantially certain that the result or a similar result would occur, or it displayed such an entire want of care as to establish that the act or omission was the result of actual conscious indifference to the rights, safety, or welfare of the person affected by it. Regardless of whether or not punitive damages can be assessed against the governmental Defendant, Defendant's grossly negligent conduct means that any alleged knowledge of the condition by the Plaintiffs will not bar recovery.

5.5    Plaintiffs bring suit against the County of Cameron pursuant to Texas Civil Practice & Remedies Codes Section 101.022(b) and 101.060(2) and (3), as the incident in question resulted from the absence, condition, or malfunction of a warning device, which was not corrected by the Defendant within a reasonable time after notice of the condition.

5.6    Plaintiffs bring suit against the County of Cameron pursuant to Texas Civil Practice & Remedies Codes Section 101.021(2) because of the injuries and damages to Plaintiffs were caused by the condition or use of tangible personal or real property, including defective wiring and lighting. The failure to use new wiring and lighting constitutes a misuse of tangible personal property.

### C. Causes of Action Against A.G. Hillpower, Inc., Now Known as JHB Enteprises, Inc.

5.7    Defendant, A. G. Hillpower, Inc. was responsible for the maintenance of the bridge. A.G. Hillpower, Inc. knew of, or should have known

of, the defective wiring which caused the portion of the bridge to be dark and therefore dangerous. A.G. Hillpower, Inc. committed acts of omission and commission which, collectively and severally, constituted negligence, gross neglect, and malice, as those terms are defined under Texas Law, which negligence, gross neglect, and malice was a proximate cause of the injuries and damages to plaintiffs.

## VI.

### PROXIMATE CAUSE

6.1    The acts, omissions, negligence, and gross negligence of the Defendants as alleged above proximately caused damages to GUSTAVO MORALES AND BIGOS INTERNATIONAL in excess of this Court's minimum jurisdictional limits.

## VII.

### DAMAGES TO GUSTAVO MORALES AND BIGOS INTERNATIONAL

7.1    As a result of the injuries to GUSTAVO MORALES, he has sustained damages for which recovery is sought herein. Specifically recovery of damages for GUSTAVO MORALES as follows:

- Physical pain and suffering in the past;
- Physical pain and suffering in the future;
- Mental anguish in the past;
- Mental anguish in the future;
- Loss of earning capacity in the past;
- Loss of earning capacity in the future;
- Disfigurement in the past;
- Disfigurement in the future;

8

- Physical impairment in the past;

- Physical impairment in the future;

- Medical expenses in the past; and,

- Medical expenses in the future.

7.2    As a result of this accident, Bigos International sustained loss of income.

7.4    The Plaintiffs Gustavo Morales and Bigos International have been damaged in the sum of three million dollars ($3,000,000.00) subject to any limitations posed by the Texas Civil Practice & Remedies Code with regard to Defendant's State of Texas Department of Transportation ($250,000.00) and County of Cameron ($300,000.00) after any and all comparative negligence deductions, if any, are assessed.

## VIII.

### EXEMPLARY DAMAGES

8.1    Because of the gross neglect and malice of Defendant A.G. Hill Power, Inc., Defendant A.G. Hill Power, Inc. should have exemplary damages assessed against it in an amount deemed appropriate by the jury.

## IX.

### JURISDICTION

9.1    Plaintiffs' damages sought herein are in an amount far in excess of the minimum jurisdictional limits of this Court.

## X.

### PRE-JUDGMENT AND POST-JUDGMENT INTEREST

10.1    Plaintiffs seek pre-judgment and post-judgment interest as allowed by law.

9

## XI.

## NOTICE

11.1    Pursuant to the provisions of the Texas Tort Claims Act, Section 101.101 of the Texas Civil Practices and Remedies Code, Plaintiffs provided timely notice of their claims against the governmental Defendants. Furthermore, the governmental Defendants had actual notice of Plaintiffs' claims well within six months of the date on which the incident in question occurred.

## PRAYER

WHEREFORE, Plaintiff requests that Defendants be cited to appear and answer, and that on final trial, Plaintiffs has the following:

1.  Actual damages in an amount within jurisdictional limits of this Court;

2.  Exemplary damages in an amount within the jurisdictional limits of the Court;

3.  Prejudgment interest allowed by law;

4.  Post-judgment interest allowed by law;

5.  Costs of suit; and

6.  Such other and further relief, special and general, at law and in equity, to which Plaintiffs may show themselves justly entitled.

Respectfully submitted,

WATTS LAW FIRM, L.L.P.

_____

10

Mikal C. Watts
State Bar No.
Ray R. Marchan
State Bar No. 12969050

**WATTS LAW FIRM, L.L.P.**
1926 E. Elizabeth
Brownsville, Texas 78520
(956) 544-0500
(956) 541-0255 FAX

**ATTORNEYS FOR PLAINTIFF**
**GUSTAVO MORALES AND**
**BIGOS INTERNATIONAL**

**PLAINTIFFS REQUEST TRIAL BY JURY**

CAUSE NO. 2003-09-4603-B

| | | |
|---|---|---|
| J. ANTONIO MIRELES AS PERSONAL | § | IN THE DISTRICT COURT |
| REPRESENTATIVE OF THE | § | |
| ESTATE OF JULIO CESAR MIRELES, | § | |
| JUAN ANTONIO MIRELES AND | § | |
| SOLEDAD MIRELES | § | |
| **Plaintiffs** | § | |
| | § | |
| VS. | § | CAMERON COUNTY, TEXAS |
| | § | |
| STATE OF TEXAS DEPARTMENT | § | |
| OF TRANSPORTATION, COUNTY | § | |
| OF CAMERON, AND A. G. HILL | § | |
| POWER, INC., NOW KNOWN AS | § | |
| JHB ENTERPRISES, INC. | § | |
| **Defendants.** | § | 138 ____ JUDICIAL DISTRICT |

FILED 4:20 O'CLOCK ____ M
AURORA DE LA GARZA, CLERK
SEP 12 2003
DISTRICT COURT OF CAMERON COUNTY, TEXAS
_____ DEPUTY

## PLAINTIFFS' ORIGINAL PETITION

TO THE HONORABLE JUDGE OF SAID COURT:

COMES NOW, PLAINTIFFS, J. ANTONIO MIRELES, AS PERSONAL REPRESENTATIVE OF THE ESTATE OF JULIO CESAR MIRELES, JUAN ANTONIO MIRELES AND SOLEDAD MIRELES, complain of STATE OF TEXAS DEPARTMENT OF TRANSPORTATION, COUNTY OF CAMERON AND A. G. HILL POWER, INC. NOW KNOWN AS JHB ENTERPRISES, INC. Defendants, and file this, their Original Petition.

## I.
## DISCOVERY LEVEL

1.1    Discovery is intended to be conducted under Discovery Control Plan Level 3 of Texas Rule of Civil Procedure 190.

## II.
## PARTIES

2.1    Plaintiffs, J. ANTONIO MIRELES, AS PERSONAL REPRESENTATIVE OF THE ESTATE OF JULIO CESAR MIRELES, JUAN ANTONIO MIRELES AND SOLEDAD

MIRELES are residents of Los Fresnos, Cameron County, Texas. They bring this action individually and in their representative capacity; as the surviving parents of Julio Cesar Mireles; as the Legal Representatives of the Estate of Julio Cesar Mireles, and in all other capacities permitted by law.

2.4    Defendant, State of Texas Department of Transportation is a governmental entity which may be served with process by serving its general counsel, Mr. Richard Monroe, at 125 East 11th Street, Austin, Texas 78701-2483.

2.5    Defendant, County of Cameron, is a municipality and may be served with process by serving the County Judge, Mr. Gilberto Hinojosa, at Cameron County Courthouse, 974 E. Harrison, Brownsville, Texas 78520.

2.6    Defendant, A. G. Hill Power, Inc. now known as JHB Enterprises, Inc is a Texas corporation and may be duly served by serving its agent for service, Mr. Jack H. Bennett, at 112 Lakeshore Drive, Corpus Christi, Texas 78413.

### III.
### JURISDICTION AND VENUE

3.1    Jurisdiction and venue is proper in this Court, as the events giving rise to this suit occurred, in whole or in part, in on the land and navigable waters of Cameron County, Texas, and all or a substantial part of the events or omissions giving rise to the Plaintiffs' claims occurred in Cameron County, Texas. Plaintiffs are seeking damages within this Court's jurisdictional limits.

### IV.
### FACTUAL BACKGROUND

4.1    On or about September 15, 2001, while operating a motor vehicle along and upon the Queen Isabella Causeway in Port Isabel, Cameron County, Texas, Julio Cesar Mireles was severely and fatally injured.

2

4.2     The Queen Isabella Causeway curves, has narrow shoulders, and rises approximately 109 feet above the bay.  Once drivers enter the causeway, a concrete median prevents them from turning around.  At the time of this incident, a block of streetlights on the causeway's western section was not functioning.  The first part of the bridge was illuminated for traffic heading toward Port Isabel, Texas, but there was no illumination at the scene of the incident.

4.3     The State of Texas alleges that it owns the causeway and its streetlight system.  Cameron County assumes certain maintenance responsibilities over the causeway's streetlight system under an agreement with the Texas Department of Transportation.  Correspondence between TXDOT and the County shows that maintaining the causeway's streetlights had been a problem since at least 1995.  In November of that year, Kenneth Conway, a county park-system director, wrote to TXDOT's district engineer that 30 causeway streetlights were not functioning and presented a "serious safety hazard".  In an April 1996 letter to TXDOT, Conway wrote that "inconsistent lighting on the causeway presents a safety hazard to the traveling public."  By August 1996, over 30 streetlights had failed, and at least that many were not functioning later when this incident occurred.

4.4     At the time of the incident that gives rise to this suit, the failed block of lights at the end of the elevated and curving causeway, with narrow shoulders and limited access, suddenly plunged motorists, including Julio Cesar Mireles, into darkness.  The causeway entrance was illuminated; thus, the sudden darkness from the block of failed lighting came upon drivers unexpectedly, a condition which was neither open nor obvious to Julio Cesar Mireles.  Plaintiff Julio Cesar Mireles did not have actual knowledge of this danger.  Furthermore, when Plaintiff Julio Cesar Mireles entered the causeway, he could not see far enough ahead to know that the large block of lights on the bridge was out.  Additionally, motorists traveling over the

3

bridge had every reasonable expectation that any non-functioning lights had been repaired or replaced. Thus, the malfunctioning block of artificial lighting that the Defendants failed to maintain caused a sudden and unexpected change in driving conditions.

4.5    A cement barrier on the causeway separates the two travel lanes in each direction and prevents drivers from turning back once embarking upon the bridge. Only a relatively narrow shoulder beside the traffic lanes is available to accommodate vehicles in emergency situations. On the evening in question, the causeway was lit at the point of entry, but there was no illumination further along the causeway at the accident scene. The lighting failure was not open or obvious to motorists entering the causeway, and the entrance to the causeway is the only point at which they could choose to avoid the condition or otherwise protect themselves.

4.6    The condition of the bridge, upon failure of a large block of streetlights, caused it to be more dangerous than an ordinary road. It posed an unreasonable risk of harm, in that that there was a sufficient probability of a harmful event occurring, that the Defendants would have foreseen it, or some similar event, as likely to happen.

4.7    While Plaintiff Julio Cesar Mireles did not actually know of the dangerous condition of the bridge, the Defendants themselves knew of the danger that the causeway's numerous, nonfunctioning streetlights posed. Kenneth Conway, Cameron County's park-system director, described the failed lighting as a "serious public safety issue" and "a serious safety hazard". In a letter to TXDOT, Conway specifically identified the danger posed to motorists of the causeway. The general foreman of a previous contractor, Red Simpson, Inc., hired to repair the lights, additionally recognized the danger. He wrote in a letter that the causeway's lighting system posed an "[e]xtreme hazard".

4

**V.**
**CAUSES OF ACTION**
**A. Causes of Action Against the State of Texas Department of Transportation**

5.1    Plaintiffs bring suit against the State of Texas Department of Transportation pursuant to Texas Civil Practice & Remedies Code Section 101.022(a), as the Plaintiffs' claims arise from a premise defect, and the governmental unit owes to the Plaintiffs the same duty that a private person owes to a licensee on private property.  With respect to the condition of the premises, the condition posed an unreasonable risk of harm, the Defendant had actual knowledge of the danger, the Plaintiffs did not have actual knowledge of the danger, and the Defendant failed to exercise ordinary care to protect the Julio Cesar Mireles from danger, by both failing to adequately warn of the condition and failing to make that condition reasonably safe. Furthermore, the Defendant was grossly negligent with respect to the condition of the premises, the condition posed an unreasonable risk of harm, and the Defendant both failed to adequately warn Julio Cesar Mireles of the danger and failed to make that condition reasonably safe.  The Defendant's conduct was more than momentary thoughtlessness, inadvertence, or error of judgment.  In other words, the Defendant either knew of or was substantially certain that the result or a similar result would occur, or it displayed such an entire want of care as to establish that the act or omission was the result of actual conscious indifference to the rights, safety, or welfare of the person affected by it.  Regardless of whether or not punitive damages can be assessed against the governmental Defendant, Defendant's grossly negligent conduct means that any alleged knowledge of the condition by the Plaintiffs will not bar recovery.

5.2    Plaintiffs bring suit against the State of Texas Department of Transportation pursuant to Texas Civil Practice & Remedies Code Section 101.022(b) and 101.060(2) and (3), as the incident in question resulted from the absence, condition, or malfunction of warning

5

devices, which was not corrected by the Defendant within a reasonable time after notice of the condition.

5.3   Plaintiffs bring suit against the State of Texas Department of Transportation pursuant to Texas Civil Practice & Remedies Code Section 101.021(2) because the Plaintiffs' injuries and death were caused by the condition or use of tangible personal or real property, including defective wiring and lighting, including the bridge's navigation range lights.  The failure to use new wiring and lighting constitutes a misuse of tangible personal property.

### B.  Causes of Action Against County of Cameron

5.4   Plaintiffs bring suit against the County of Cameron pursuant to Texas Civil Practice & Remedies Code Section 101.022(a), as the Plaintiffs' claims arise from a premise defect, and the governmental unit owes to the Plaintiffs the same duty that a private person owes to a licensee on private property.  With respect to the condition of the premises, the condition posed an unreasonable risk of harm, the Defendant had actual knowledge of the danger, the Plaintiffs did not have actual knowledge of the danger, and the Defendant failed to exercise ordinary care to protect Julio Cesar Mireles from danger, by both failing to adequately warn of the condition and failing to make that condition reasonably safe.  Furthermore, the Defendant was grossly negligent with respect to the condition of the premises, the condition posed an unreasonable risk of harm, and the Defendant both failed to adequately warn Julio Cesar Mireles of the danger and failed to make that condition reasonably safe.  The Defendant's conduct was more than momentary thoughtlessness, inadvertence, or error of judgment.  In other words, the Defendant either knew of or was substantially certain that the result or a similar result would occur, or it displayed such an entire want of care as to establish that the act or omission was the result of actual conscious indifference to the rights, safety, or welfare of the person affected by it.  Regardless of whether or not punitive damages can be assessed against the governmental

6

Defendant, Defendant's grossly negligent conduct means that any alleged knowledge of the condition by the Plaintiffs will not bar recovery.

5.5    Plaintiffs bring suit against the County of Cameron pursuant to Texas Civil Practice & Remedies Code Section 101.022(b) and 101.060(2) and (3), as the incident in question resulted from the absence, condition, or malfunction of a warning device, which was not corrected by the Defendant within a reasonable time after notice of the condition.

5.6    Plaintiffs bring suit against the County of Cameron pursuant to Texas Civil Practice & Remedies Code Section 101.021(2) because Julio Cesar Mireles's injuries and death and damages to Plaintiffs J. Antonio Mireles as Personal Representative of the Estate of Julio Cesar Mireles, Juan Antonio Mireles and Soledad Gonzalez Mireles were caused by the condition or use of tangible personal or real property, including defective wiring and lighting. The failure to use new wiring and lighting constitutes a misuse of tangible personal property.

### C. Causes of Action Against A.G. Hillpower, Inc., Now Known as JHB Enteprises, Inc.

5.7    Defendant, A. G. Hillpower, Inc. was responsible for the maintenance of the bridge. A.G. Hillpower, Inc. knew of, or should have known of, the defective wiring which caused the portion of the bridge to be dark and therefore dangerous. A.G. Hillpower, Inc. committed acts of omission and commission which, collectively and severally, constituted negligence, gross neglect, and malice, as those terms are defined under Texas Law, which negligence, gross neglect, and malice was a proximate cause of the fatal injuries to Julio Cesar Mireles and damages to J. Antonio Mireles, Juan Antonio Mireles and Soledad Gonzalez Mireles.

7

## VI.
## PROXIMATE CAUSE

6.1    The acts, omissions, negligence, and gross negligence of the Defendants as alleged above proximately caused damages to J. Antonio Mireles, as Personal Representative of the Estate of Julio Cesar Mireles, Juan Antonio Mireles and Soledad Mireles in excess of this Court's minimum jurisdictional limits.

## VII.
## DAMAGES TO J. ANTONIO MIRELES AS PERSONAL REPRESENTATIVE OF THE ESTATE OF JULIO CESAR MIRELES, JUAN ANTONIO MIRELES AND SOLEDAD MIRELES

7.1    Julio Cesar Mireles did not die instantaneously, but rather suffered severe and excruciating physical pain and mental anguish prior to his death.  As a result, his estate is entitled to recover damages for his physical pain and mental anguish, in addition to funeral and burial expenses, for which recovery is sought herein.

7.2    As a direct and proximate result of the death of their son, Plaintiffs JUAN ANTONIO MIRELES AND SOLEDAD MIRELES have been deprived of the affection, companionship, advise, counsel, comfort, solace, financial support, and services that they would, in a reasonable probability, have received from son during their lifetimes had he survived.

7.3    Plaintiffs JUAN ANTONIO MIRELES AND SOLEDAD MIRELES have suffered the loss of the parent/child relationship, extreme grief, mental anguish, and physical suffering in the past and will, in reasonable probability, continue to do so in the future as a result of the sudden and untimely death of their son, Julio Cesar Mireles.

7.4    The Plaintiffs have been damaged in a sum for in excess of the jurisdictional minimum of this court, subject to any limitations posed by the Texas Civil Practice & Remedies Code with regard to Defendant's State of Texas Department of Transportation ($250,000.00) and

8

County of Cameron ($300,000.00) after any and all comparative negligence deductions, if any, are assessed.

## VIII.
## EXEMPLARY DAMAGES

8.1    Because of the gross neglect and malice of Defendant A.G. Hill Power, Inc., Defendant A.G. Hill Power, Inc. should have exemplary damages assessed against it in an amount deemed appropriate by the jury.

## IX.
## JURISDICTION

9.1    Plaintiffs' damages sought herein are in an amount far in excess of the minimum jurisdictional limits of this Court.

## X.
## PRE-JUDGMENT AND POST-JUDGMENT INTEREST

10.1    Plaintiffs seek pre-judgment and post-judgment interest as allowed by law.

## XI.
## NOTICE

11.1    Pursuant to the provisions of the Texas Tort Claims Act, Section 101.101 of the Texas Civil Practices and Remedies Code, Plaintiffs provided timely notice of their claims against the governmental Defendants. Furthermore, the governmental Defendants had actual notice of Plaintiffs' claims well within six months of the date on which the incident in question occurred.

## PRAYER

WHEREFORE, Plaintiffs request that Defendants be cited to appear and answer, and that on final trial, Plaintiffs have the following:

1.    Actual damages in an amount within jurisdictional limits of this Court;

2.    Exemplary damages in an amount within the jurisdictional limits of the Court;

9

3.      Prejudgment interest allowed by law;

4.      Post-judgment interest allowed by law;

5.      Costs of suit; and

6.      Such other and further relief, special and general, at law and in equity, to which Plaintiffs may show themselves justly entitled.

Respectfully submitted,

SCHIRRMEISTER AJAMIE, L.L.P.

By: _S. Mark Strawn_

S. Mark Strawn
State Bar No.  19374325        279303
Thomas R. Ajamie
State Bar No.  00952400        279300
Pennzoil Place - South Tower
711 Louisiana, Suite 2150
Houston, Texas 77002
Telephone: (713) 860-1600
Facsimile: (713) 860-1699

ATTORNEYS FOR PLAINTIFFS
J. ANTONIO MIRELES AS PERSONAL
REPRESENTATIVE OF THE ESTATE OF
JULIO CESAR MIRELES, JUAN
ANTONIO MIRELES AND
SOLEDAD MIRELES

**PLAINTIFFS REQUEST TRIAL BY JURY**

10

AURORA DE LA GARZA DIST. CLERK

SEP 1 2 2003

DISTRICT COURT OF CAMERON COUNTY, TEXAS

CAUSE NO. 2003-09-4613-B

| | | |
|---|---|---|
| ESTEBAN F. RIVAS AND MARIA | § | IN THE DISTRICT COURT |
| MIRIAM RIVAS INDIVIDUALLY | § | |
| AND AS REPRESENTATIVES OF | § | |
| THE ESTATE OF STVAN F. RIVAS | § | |
|   Plaintiffs | § | |
| | § | |
| VS. | § | CAMERON COUNTY, TEXAS |
| | § | |
| STATE OF TEXAS DEPARTMENT | § | |
| OF TRANSPORTATION, COUNTY | § | |
| OF CAMERON, AND A. G. HILL | § | |
| POWER, INC., NOW KNOWN AS | § | |
| JHB ENTERPRISES, INC. | § | |
|   Defendants. | § | 138th JUDICIAL DISTRICT |

## PLAINTIFFS' ORIGINAL PETITION

TO THE HONORABLE JUDGE OF SAID COURT:

COME NOW, PLAINTIFFS, ESTEBAN F. RIVAS AND MARIA MIRIAM RIVAS INDIVIDUALLY AND AS REPRESENTATIVES OF THE ESTATE OF STVAN F. RIVAS, complaining of the STATE OF TEXAS DEPARTMENT OF TRANSPORTATION, COUNTY OF CAMERON AND A. G. HILL POWER, INC. NOW KNOWN AS JHB ENTERPRISES, INC. Defendants, and file this, their Original Petition.

### I.

### DISCOVERY LEVEL

1.1    Discovery is intended to be conducted under Discovery Control Plan Level 3 of Texas Rule of Civil Procedure 190.

## II.

## PARTIES

2.1    Plaintiffs, ESTEBAN F. RIVAS AND MARIA MIRIAM RIVAS INDIVIDUALLY AND AS REPRESENTATIVES OF THE ESTATE OF STVAN F. RIVAS are residents of Montgomery County, Texas. They bring this action individually and in their own capacity; as the surviving parents of Stvan F. Rivas; as the Legal Representatives of the Estate of Stvan F. Rivas, and in all other capacities permitted by law.

2.2    Defendant, State of Texas Department of Transportation is a governmental entity which may be served with process by serving its general counsel, Mr. Richard Monroe, at 125 East 11th Street, Austin, Texas 78701-2483.

2.3    Defendant, County of Cameron, is a governmental entity and may be served with process by serving the County Judge, Mr. Gilberto Hinojosa, at the Cameron County Courthouse, 974 E. Harrison, Brownsville, Texas 78520.

2.4    Defendant, A. G. Hill Power, Inc. now known as JHB Enterprises, Inc. is a Texas corporation and may be duly served by serving its agent for service, Mr. Jack H. Bennett, at 112 Lakeshore Drive, Corpus Christi, Texas 78413.

## III.

## JURISDICTION AND VENUE

3.1    Jurisdiction and venue is proper in this Court, as the events giving rise to this suit occurred, in whole or in part, in and on the land and navigable waters of Cameron County, Texas, and all or a substantial part of the events or omissions giving rise to the Plaintiffs' claims occurred in Cameron County, Texas. Plaintiffs are seeking damages within this Court's jurisdictional limits.

## IV.

## FACTUAL BACKGROUND

4.1     On or about September 15, 2001, in a motor vehicle while traveling along and upon the Queen Isabella Causeway in Port Isabel, Cameron County, Texas, Stvan F. Rivas was severely and fatally injured.

4.2     The Queen Isabella Causeway curves, has narrow shoulders, and rises approximately 109 feet above the bay. Once drivers enter the causeway, a concrete median prevents them from turning around. At the time of this incident, a block of streetlights on the causeway's western section was not functioning. The first part of the bridge was illuminated for traffic heading toward Port Isabel, Texas, but there was no illumination at the scene of the incident.

4.3     The State of Texas alleges that it owns the causeway and its streetlight system. Cameron County assumes certain maintenance responsibilities over the causeway's streetlight system under an agreement with the Texas Department of Transportation. Correspondence between TXDOT and the County show that maintaining the causeway's streetlights had been a problem since at least 1995. In November of that year, Kenneth Conway, a county park-system director, wrote to TXDOT's district engineer that 30 causeway streetlights were not functioning and presented a "serious safety hazard". In an April 1996 letter to TXDOT, Conway wrote that "inconsistent lighting on the causeway presents a safety hazard to the traveling public." By August 1996, over 30 streetlights had failed, and at least that many were not functioning at the time this incident occurred.

4.4     At the time of the incident that gives rise to this suit, the failed block of lights at the end of the elevated and curving causeway, with narrow shoulders and limited access,

suddenly plunged motorists, including Stvan F. Rivas, into darkness. The causeway entrance was illuminated; thus, the sudden darkness from the block of failed lighting came upon drivers unexpectedly, a condition which was neither open nor obvious to Stvan F. Rivas. Plaintiff Stvan F. Rivas did not have actual knowledge of this danger. Furthermore, when Plaintiff Stvan F. Rivas entered the causeway, he could not see far enough ahead to know that the large block of lights on the bridge was out. Additionally, motorists traveling over the bridge had every reasonable expectation that any non-functioning lights had been repaired or replaced. Thus, the malfunctioning block of artificial lighting that the Defendants failed to maintain caused a sudden and unexpected change in driving conditions.

4.5    A cement barrier on the causeway separates the two travel lanes in each direction and prevents drivers from turning back once embarking upon the bridge. Only a relatively narrow shoulder beside the traffic lanes is available to accommodate vehicles in emergency situations. On the evening in question, the causeway was lit at the point of entry, but there was no illumination further along the causeway at the accident scene. The lighting failure was not open or obvious to motorists entering the causeway, and the entrance to the causeway is the only point at which Stvan F. Rivas could choose to avoid the condition or otherwise protect himself.

4.6    The condition of the bridge, upon failure of a large block of streetlights, caused it to be a dangerous condition. This dangerous condition posed an unreasonable risk of harm to motorists traveling on the causeway by creating sufficient probability of a harmful event occurring. It was foreseeable to Defendants that a failure of lighting would result in drivers not being able to detect hazards, or some similar event, as likely to happen.

4.7    While Plaintiff Stvan F. Rivas did not actually know of the dangerous condition of the bridge, the Defendants themselves knew of the danger that the causeway's numerous, nonfunctioning streetlights posed. Kenneth Conway, Cameron County's park-system director,

described the failed lighting as a "serious public safety issue" and "a serious safety hazard". In a letter to TXDOT, Conway specifically identified the danger posed to motorists of the causeway. The general foreman, a previous contractor, Red Simpson, Inc., hired to repair the lights additionally recognized the danger. He wrote in a letter that the causeway's lighting system posed an "[e]xtreme hazard".

## V.

## CAUSES OF ACTION

### A. Causes of Action Against the State of Texas Department of Transportation

5.1      Plaintiffs bring suit against the State of Texas Department of Transportation pursuant to Texas Civil Practice & Remedies Codes Section 101.022(a), as the Plaintiffs' claims arise from a premise defect, and the governmental unit owes to the Plaintiffs the same duty that a private person owes to a licensee on private property. With respect to the condition of the premises, the condition posed an unreasonable risk of harm, the Defendant had actual knowledge of the danger, the Plaintiffs did not have actual knowledge of the danger, and the Defendant failed to exercise ordinary care to protect Stvan F. Rivas from danger, by both failing to adequately warn of the condition and failing to make that condition reasonably safe. Furthermore, the Defendant was grossly negligent with respect to the condition of the premises, the condition posed an unreasonable risk of harm, and the Defendant both failed to adequately warn Stvan F. Rivas of the danger and failed to make that condition reasonably safe. The Defendant's conduct was more than momentary thoughtlessness, inadvertence, or error of judgment. In other words, the Defendant either knew of or was substantially certain that the result or a similar result would occur, or it displayed such an entire want of care as to establish that the act or omission was the result of actual conscious indifference to the rights, safety, or welfare of the person affected by it. Regardless of whether or not punitive damages can be

assessed against the governmental Defendant, Defendant's grossly negligent conduct means that any alleged knowledge of the condition by the Plaintiffs will not bar recovery.

5.2    Plaintiffs bring suit against the State of Texas Department of Transportation pursuant to Texas Civil Practice & Remedies Codes Section 101.022(b) and 101.060(2) and (3), as the incident in question resulted from the absence, condition, or malfunction of warning devices, which was not corrected by the Defendant within a reasonable time after notice of the condition.

5.3    Plaintiffs bring suit against the State of Texas Department of Transportation pursuant to Texas Civil Practice & Remedies Codes Section 101.021(2) because the Plaintiffs' injuries and death were caused by the condition or use of tangible personal or real property, including defective wiring and lighting, including the bridge's navigation range lights. The failure to use new wiring and lighting constitutes a misuse of tangible personal property.

### B. Causes of Action Against County of Cameron

5.4    Plaintiffs bring suit against the County of Cameron pursuant to Texas Civil Practice & Remedies Codes Section 101.022(a), as the Plaintiffs' claims arise from a premise defect, and the governmental unit owes to the Plaintiffs the same duty that a private person owes to a licensee on private property. With respect to the condition of the premises, the condition posed an unreasonable risk of harm, the Defendant had actual knowledge of the danger, the Plaintiffs did not have actual knowledge of the danger, and the Defendant failed to exercise ordinary care to protect Stvan F. Rivas from danger, by both failing to adequately warn of the condition and failing to make that condition reasonably safe. Furthermore, the Defendant was grossly negligent with respect to the condition of the premises, the condition posed an unreasonable risk of harm, and the Defendant both failed to adequately warn Stvan F. Rivas of the danger and failed to make that condition reasonably safe. The Defendant's conduct was more

than momentary thoughtlessness, inadvertence, or error of judgment. In other words, the Defendant either knew of or was substantially certain that the result or a similar result would occur, or it displayed such an entire want of care as to establish that the act or omission was the result of actual conscious indifference to the rights, safety, or welfare of the person affected by it. Regardless of whether or not punitive damages can be assessed against the governmental Defendant, Defendant's grossly negligent conduct means that any alleged knowledge of the condition by the Plaintiffs will not bar recovery.

5.5    Plaintiffs bring suit against the County of Cameron pursuant to Texas Civil Practice & Remedies Codes Section 101.022(b) and 101.060(2) and (3), as the incident in question resulted from the absence, condition, or malfunction of a warning device, which was not corrected by the Defendant within a reasonable time after notice of the condition.

5.6    Plaintiffs bring suit against the County of Cameron pursuant to Texas Civil Practice & Remedies Codes Section 101.021(2) because Stvan F. Rivas's injuries and death and damages to Plaintiffs ESTEBAN F. RIVAS AND MARIA MIRIAM RIVAS INDIVIDUALLY AND AS REPRESENTATIVES OF THE ESTATE OF STVAN F. RIVAS were caused by the condition or use of tangible personal or real property, including defective wiring and lighting. The failure to use new wiring and lighting constitutes a misuse of tangible personal property.

## C. Causes of Action Against A.G. Hillpower, Inc.,

## Now Known as JHB Enteprises, Inc.

5.7    Defendant, A. G. Hillpower, Inc. was responsible for the maintenance of the bridge. A.G. Hillpower, Inc. knew of, or should have known of, the defective wiring which caused the portion of the bridge to be dark and therefore dangerous. A.G. Hillpower, Inc. committed acts of omission and commission which, collectively and severally, constituted negligence, gross neglect, and malice, as those terms are defined under Texas Law, which

negligence, gross neglect, and malice was a proximate cause of the fatal injuries to Stvan F. Rivas and damages to ESTEBAN F. RIVAS AND MARIA MIRIAM RIVAS INDIVIDUALLY AND AS REPRESENTATIVES OF THE ESTATE OF STVAN F. RIVAS.

## VI.

## PROXIMATE CAUSE

6.1     The acts, omissions, negligence, and gross negligence of the Defendants as alleged above proximately caused damages to ESTEBAN F. RIVAS AND MARIA MIRIAM RIVAS INDIVIDUALLY AND AS REPRESENTATIVES OF THE ESTATE OF STVAN F. RIVAS in excess of this Court's minimum jurisdictional limits.

## VII.

## DAMAGES TO ESTEBAN F. RIVAS AND MARIA MIRIAM RIVAS INDIVIDUALLY AND AS REPRESENTATIVES OF THE ESTATE OF STVAN F. RIVAS

7.1     Stvan F. Rivas did not die instantaneously, but rather suffered severe and excruciating physical pain and mental anguish prior to his death.  As a result, his estate is entitled to recover damages for his physical pain and mental anguish, in addition to funeral and burial expenses, for which recovery is sought herein.

7.2     As a direct and proximate result of the death of their son, Plaintiffs ESTEBAN F. RIVAS AND MARIA MIRIAM RIVAS INDIVIDUALLY AND AS REPRESENTATIVES OF THE ESTATE OF STVAN F. RIVAS have been deprived of the affection, companionship, advise, counsel, comfort, solace and services that they would, in a reasonable probability, have received from their parents during his lifetime had he survived.

7.3     Plaintiffs   ESTEBAN   F.   RIVAS   AND   MARIA   MIRIAM   RIVAS INDIVIDUALLY AND AS REPRESENTATIVES OF THE ESTATE OF STVAN F. RIVAS have suffered the loss of the parent/child relationship, extreme grief, mental anguish, and

physical suffering in the past and will, in reasonable probability, continue to do so in the future as a result of the sudden and untimely death of their son, Stvan F. Rivas.

7.4    The Plaintiffs have been damaged in the sum of five million dollars ($5,000,000.00) subject to any limitations posed by the Texas Civil Practice & Remedies Code with regard to Defendant's State of Texas Department of Transportation ($250,000.00) and County of Cameron ($100,000.00) after any and all comparative negligence deductions, if any, are assessed.

## VIII.

## EXEMPLARY DAMAGES

8.1    Because of the gross neglect and malice of Defendant A.G. Hill Power, Inc., Defendant A.G. Hill Power, Inc. should have exemplary damages assessed against it in an amount deemed appropriate by the jury.

## IX.

## JURISDICTION

9.1    Plaintiffs' damages sought herein are in an amount far in excess of the minimum jurisdictional limits of this Court.

## X.

## PRE-JUDGMENT AND POST-JUDGMENT INTEREST

10.1    Plaintiffs seek pre-judgment and post-judgment interest as allowed by law.

## XI.

## NOTICE

11.1    Pursuant to the provisions of the Texas Tort Claims Act, Section 101.101 of the Texas Civil Practices and Remedies Code, Plaintiffs provided timely notice of their claims against the governmental Defendants. Furthermore, the governmental Defendants had actual

notice of Plaintiffs' claims well within six months of the date on which the incident in question occurred.

**PRAYER**

**WHEREFORE**, Plaintiffs request that Defendants be cited to appear and answer, and that on final trial, Plaintiffs have the following:

1. Actual damages in an amount within jurisdictional limits of this Court;

2. Exemplary damages in an amount within the jurisdictional limits of the Court;

3. Prejudgment interest allowed by law;

4. Post-judgment interest allowed by law;

5. Costs of suit; and

6. Such other and further relief, special and general, at law and in equity, to which Plaintiffs may show themselves justly entitled.

Respectfully submitted,

John David Franz
**Law Offices of John David Franz**
400 North McColl, Suite B
McAllen, Texas 78501
(956) 686-3300
(956) 686-3578 (fax)

John David Franz
State Bar No. 07389200

J. Chad Gauntt
**Gauntt & Kruppstadt, L.L.P.**
9004 Forest Crossing Dr., Suite C
The Woodlands, Texas  77381
(281) 367-6555
(281) 367-3705 (fax)


J. Chad Gauntt
State Bar No. 07765990

Attorneys for Esteban F. Rivas and
Maria Miriam Rivas, Individually and as
Representative of the Estate of Stvan F. Rivas


## PLAINTIFFS REQUEST TRIAL BY JURY

Attorney for Plaintiffs, John David Franz, hereby certifies that he has paid the appropriate

jury fee and requests that this cause be set on the jury docket to be heard and decided by a jury in

Cameron County, Texas.


John David Franz



2003·09·4651·E

CAUSE NO. ~~2001-09-4137~~-A

| | | |
|---|---|---|
| LAGUNA MADRE WATER DISTRICT | § § § § | IN THE DISTRICT COURT |
| VS. | § § | CAMERON COUNTY, TEXAS |
| STATE OF TEXAS DEPARTMENT OF TRANSPORTATION, COUNTY OF CAMERON, AND A.G. HILL POWER, INC. NOW KNOWN AS JHB ENTERPRISES, INC. | § § § § § § | 357-th |
| Defendants. | § | ~~FIFTH~~ TH JUDICIAL DISTRICT |

ORIGINAL    PETITION ~~IN INTERVENTION~~

**TO THE HONORABLE JUDGE OF SAID COURT:**

COMES NOW, ~~INTERVENOR~~, LAGUNA MADRE WATER DISTRICT (LMWD), complains of STATE OF TEXAS DEPARTMENT OF TRANSPORTATION, COUNTY OF CAMERON AND A.G. HILL POWER, INC. NOW KNOWN AS JHB ENTERPRISES, INC., Defendants, and file this, their Petition in Intervention.

**I.**

**DISCOVERY LEVEL**

1.1    Discovery should be conducted under Discovery Control Plan Level 2 of Texas Rule of Civil Procedure 190.

**II.**

**PARTIES**

2.1    ~~Intervenor,~~ LMWD is a governmental unit situated in Cameron County, Texas.

2.4     Defendant, State of Texas Department of Transportation is a governmental entity which may be served with process by serving its general counsel, Mr. Richard Monroe, at 125 East 11th Street, Austin, Texas 78701-2483.

2.5     Defendant, County of Cameron, is a municipality and may be served with process by serving the County Judge, Mr. Gilberto Hinojosa, at the Cameron County Courthouse, 974 E. Harrison, Brownsville, Texas.

2.6     Defendant, A. G. Hill Power, Inc. now known as JHB Enterprises, Inc. is a Texas corporation and may be duly served with process by serving its agent for service, Mr. Jack H. Bennett, at 112 Lakeshore Drive, Corpus Christi, Texas 78413.

III.

JURISDICTION AND VENUE

3.1     Jurisdiction and venue is proper in this Court, as the events giving rise to this suit occurred, in whole or in part, in on the land and navigable waters of Cameron County, Texas, and all or a substantial part of the events or omissions giving rise to the Intervenors' claims occurred in Cameron County, Texas. Intervenors ~~are~~ CmwD is seeking damages within this Court's jurisdictional limits.

IV.

FACTUAL BACKGROUND

4.1     That on or about September 15, 2001, a portion of the Queen Isabella Causeway in Port Isabel, Cameron County, Texas, collapsed after being struck by a barge.

2

4.2    The Queen Isabella Causeway curves, has narrow shoulders, and rises approximately 109 feet above the bay.  At the time of this incident, the streetlights and/or navigation lights on the causeway were not functioning.

4.3    The State of Texas alleges that it owns the causeway and its streetlight and/or navigation light system.  Cameron County assumes certain maintenance responsibilities over the causeway's streetlight and/or navigation light system under an agreement with the Texas Department of Transportation. Correspondence between TXDOT and the County shows that maintaining the causeway's lights had been a problem since at least 1995.

4.4    At the time of the incident that gives rise to this suit, the failed streetlights and/or navigation lights resulted in the causeway to not be visible for any water vessels navigating at, near and/or underneath it.  Operators of any water vessels could not see far enough ahead to know the exact location of the safe passageway under the causeway.  Thus, the malfunctioning lighting that the Defendants failed to maintain caused a sudden and unexpected change in the conditions around and underneath the causeway.

4.5    On the evening in question, a cement barrier and/or pillar, which supports the causeway, was struck by a barge, resulting in the collapse of the causeway and damage to LMWD's property as a direct and proximate result of Defendants' negligence.

3

4.6    The condition of the bridge, upon failure of the streetlights and/or navigation lights, caused it to be more dangerous than an ordinary. It posed an unreasonable risk of harm, in that that there was a sufficient probability of a harmful event occurring, that the Defendants would have foreseen it, or some similar event, as likely to happen.

4.7    While the operator of a water vessels in this area did not actually know of the dangerous condition of the bridge, the Defendants themselves knew of the danger that the causeway's numerous, nonfunctioning streetlights and/or navigation lights posed.

## V.

## CAUSES OF ACTION

### A. Causes of Action Against the State of Texas Department of Transportation

5.1    ~~Intervenor~~ LMWD bring suits against the State of Texas Department of Transportation pursuant to Texas Civil Practice & Remedies Codes Section 101.022(a), as the ~~Intervenor~~ LMWD's claims arise from a premise defect, and the governmental unit owes to ~~the Intervenor~~ LMWD the same duty that a private person owes to a licensee on private property. With respect to the condition of the premises, the condition posed an unreasonable risk of harm, the Defendant had actual knowledge of the danger, ~~the Intervenors~~ LMWD nor the public had actual knowledge of the danger, and the Defendant failed to exercise ordinary care to protect ~~the Intervenor~~ LMWD and the public from danger, by both failing to adequately

4

warn of the condition and failing to make that condition reasonably safe. Furthermore, the Defendant was grossly negligent and/or guilty of malice with respect to the condition of the premises, the condition posed an unreasonable risk of harm, and the Defendant both failed to adequately warn of the danger and failed to make that condition reasonably safe. The Defendant's conduct was more than momentary thoughtlessness, inadvertence, or error of judgment. In other words, the Defendant either knew of or was substantially certain that the result or a similar result would occur, or it displayed such an entire want of care as to establish that the act or omission was the result of actual conscious indifference to the rights, safety, or welfare of the person affected by it. Regardless of whether or not punitive damages can be assessed against the governmental Defendant, Defendant's grossly negligent conduct means that any alleged knowledge of the condition by the Intervenors [LMWD] will not bar recovery.

5.2    Intervenor [LMWD] brings suit against the State of Texas Department of Transportation pursuant to Texas Civil Practice & Remedies Codes Section 101.022(b) and 101.060(2) and (3), as the incident in question resulted from the absence, condition, or malfunction of warning and/or navigation devices, which was not corrected by the Defendant within a reasonable time after notice of the condition.

5.3    Intervenor [LMWD] brings suit against the State of Texas Department of Transportation pursuant to Texas Civil Practice & Remedies Codes Section 101.021(2) because the Intervenor's [LMWD's] damages were caused by the condition or use

of tangible personal or real property, including defective wiring and lighting, including the bridge's navigation range lights. The failure to use new wiring and lighting constitutes a misuse of tangible personal property.

### B. Causes of Action Against County of Cameron

5.4    Intervenor brings suit against the County of Cameron pursuant to Texas Civil Practice & Remedies Codes Section 101.022(a), as the Intervenor's claims arise from a premise defect, and the governmental unit owes to the Intervenor and the public the same duty that a private person owes to a licensee on private property. With respect to the condition of the premises, the condition posed an unreasonable risk of harm, the Defendant had actual knowledge of the danger, the Intervenor nor the public had actual knowledge of the danger, and the Defendant failed to exercise ordinary care to protect the Intervenor from danger, by both failing to adequately warn of the condition and failing to make that condition reasonably safe. Furthermore, the Defendant was grossly negligent and/or guilty of malice with respect to the condition of the premises, the condition posed an unreasonable risk of harm, and the Defendant both failed to adequately warn of the danger and failed to make that condition reasonably safe. The Defendant's conduct was more than momentary thoughtlessness, inadvertence, or error of judgment. In other words, the Defendant either knew of or was substantially certain that the result or a similar result would occur, or it displayed such an entire want of care as to establish that the act or omission was the result of actual conscious indifference to the rights, safety, or welfare of the

6

person affected by it. Regardless of whether or not punitive damages can be assessed against the governmental Defendant, Defendant's grossly negligent conduct means that any alleged knowledge of the condition by the Intervenor will not bar recovery.

5.5    ~~Intervenor~~ LMWD brings suit against the County of Cameron pursuant to Texas Civil Practice & Remedies Codes Section 101.022(b) and 101.060(2) and (3), as the incident in question resulted from the absence, condition, or malfunction of a warning and/or navigation device, which was not corrected by the Defendant within a reasonable time after notice of the condition.

5.6    ~~Intervenor~~ LMWD brings suit against the County of Cameron pursuant to Texas Civil Practice & Remedies Codes Section 101.021(2) because the Intervenor's damages were caused by the condition or use of tangible personal or real property, including defective wiring and lighting. The failure to use new wiring and lighting constitutes a misuse of tangible personal property.

### C. Causes of Action Against A. G. Hillpower, Inc.

### Now Known as JHB ENTERPRISES, INC.

5.7    Defendant, A. G. Hillpower, Inc. was responsible for the maintenance of the bridge lighting. A.G. Hillpower, Inc. knew of, or should have known of, the defective wiring which caused the portion of the bridge to be dark and therefore dangerous. A.G. Hillpower, Inc. committed acts of omission and commission which, collectively and severally, constituted negligence, gross neglect, and malice, as those terms are defined under Texas Law, which

7

negligence, gross neglect, and malice was a proximate cause of the damages incurred by ~~Intervenor~~ LMWD.

## V.

## PROXIMATE CAUSE

5.1    The acts, omissions, negligence, and gross negligence of the Defendants as alleged above proximately caused damages ~~Intervenor~~ LMWD in excess of this Court's minimum jurisdictional limits.

## VI.

## DAMAGES

### A. Damages to Laguna Madre Water District

6.1    ~~Intervenor~~ LMWD's property was damaged and has incurred expenses to repair and/or replace, for which recovery is sought herein.

6.2    The ~~Intervenors~~ LMWD have been damaged in the sum of ($300,000.00) subject to any limitations posed by the Texas Civil Practice & Remedies Code with regard to Defendant's State of Texas Department of Transportation ($250,000.00) and County of Cameron ($300,000.00) after any and all comparative negligence deductions, if any, are assessed.

## VII.

## EXEMPLARY DAMAGES

7.1    Because of the gross neglect and malice of Defendant A. G. Hillpower, Inc., Defendant A. G. Hillpower, Inc. should have exemplary damages assessed against it in an amount deemed appropriate by the jury.

## VIII.

## JURISDICTION

8.1    LMWD's damages sought herein are in an amount far in excess of the minimum jurisdictional limits of this Court.

## IX.

## PRE-JUDGMENT AND POST-JUDGMENT INTEREST

9.1    LMWD seeks pre-judgment and post-judgment interest as allowed by law.

## X.

## NOTICE

10.1    Pursuant to the provisions of the Texas Tort Claims Act, Section 101.101 of the Texas Civil Practices and Remedies Code, LMWD provided timely notice of their claims against the governmental Defendants.  Furthermore, the governmental Defendants had actual notice of LMWD's claim well within six months of the date on which the incident in question occurred.

## PRAYER

WHEREFORE, LMWD requests that Defendants be cited to appear and answer, and that on final trial, LMWD have the following:

1.  Actual damages in an amount within jurisdictional limits of this Court;

2.  Exemplary damages in an amount within the jurisdictional limits of the Court;

3.  Prejudgment interest allowed by law;

4.  Post-judgment interest allowed by law;

9

5.  Costs of suit; and

6.  Such other and further relief, special and general, at law and in equity, to which Intervenor may show itself justly entitled.

Respectfully submitted,

LAW OFFICE OF ALBERTO PULLEN

_____

Alberto Pullen
State Bar No. 24004440
1623 Central Ave., Suite 205
Brownsville, Texas 78520
(956) 546-3627
(956) 546-3626 FAX

ATTORNEY FOR INTERVENOR
*Laguna Madre Water District*

## INTERVENORS REQUEST TRIAL BY JURY

## CERTIFICATE OF SERVICE

I hereby certify that a true and correct copy of the foregoing instrument has been forwarded to all counsel of record by certified mail on this the _____ day of September 2003.

_____

Alberto Pullen

10

SEP 1 2 2003

CAUSE NO. *2003-09-46l8-C*  DISTRICT COURT OF CAMERON COUNTY, TEXAS

| | |
|---|---|
| OMAR HINOJOSA, INDIVIDUALLY § | IN THE DISTRICT COURT |
| AND AS ADMINISTRATOR OF THE § | |
| ESTATE OF GASPAR HINOJOSA, § | |
| RAQUEL HINOJOSA, SURVIVING § | |
| SPOUSE, CLARISSA § | |
| HINOJOSA AND GASPAR § | |
| HINOJOSA, II AND MARTIN § | |
| AND RITA HINOJOSA, SURVIVING § | |
| NATURAL PARENTS § | |
| § | |
| VS. § | CAMERON COUNTY, TEXAS |
| § | |
| STATE OF TEXAS DEPARTMENT § | |
| OF TRANSPORTATION, COUNTY § | |
| OF CAMERON, AND A. G. HILL § | |
| POWER, INC., NOW KNOWN AS § | |
| JHB ENTERPRISES, INC. § | |
| Defendants. § | *ATT*th JUDICIAL DISTRICT |

## PLAINTIFFS' ORIGINAL PETITION

TO THE HONORABLE JUDGE OF SAID COURT:

COMES NOW, PLAINTIFFS, OMAR HINOJOSA, INDIVIDUALLY AND AS ADMINISTRATOR OF THE ESTATE OF GASPAR HINOJOSA, RAQUEL HINOJOSA, SURVIVING SPOUSE, CLARISSA HINOJOSA AND GASPAR HINOJOSA, II, AND MARTIN AND RITA HINOJOSA, SURVIVING NATURAL PARENTS, complain of STATE OF TEXAS DEPARTMENT OF TRANSPORTATION, COUNTY OF CAMERON AND A. G. HILL POWER, INC. NOW KNOWN AS JHB ENTERPRISES, INC. Defendants, and file this, their Original Petition.

## I.

## DISCOVERY LEVEL

1.1    Discovery is intended to be conducted under Discovery Control Plan Level 3 of Texas Rule of Civil Procedure 190.

## II.

## PARTIES

2.1    Plaintiffs, OMAR HINOJOSA, INDIVIDUALLY AND AS ADMINISTRATOR OF THE ESTATE OF GASPAR HINOJOSA, RAQUEL HINOJOSA, SURVIVING SPOUSE, CLARISSA HINOJOSA AND GASPAR HINOJOSA, II, AND MARTIN AND RITA HINOJOSA, SURVIVING NATURAL PARENTS, II, are residents of McAllen, Hidalgo County, Texas. They bring this action individually and in their own capacity; as the surviving wife of Gaspar Hinojosa; as the Legal Representatives of the Estate of Gaspar Hinojosa, and in all other capacities permitted by law.

2.4    Defendant, State of Texas Department of Transportation is a governmental entity which may be served with process by serving its general counsel, Mr. Richard Monroe, at 125 East 11th Street, Austin, Texas 78701-2483.

2.5    Defendant, County of Cameron, is a municipality and may be served with process by servings the County Judge, Mr. Gilberto Hinojosa, at Cameron County Courthouse, 974 E. Harrison, Brownsville, Texas 78520.

2.6    Defendant, A. G. Hill Power, Inc. now known as JHB Enterprises, Inc is a Texas corporation and may be duly served by serving its agent for service, Mr. Jack H. Bennett, at 112 Lakeshore Drive, Corpus Christi, Texas 78413.

## III.

## JURISDICTION AND VENUE

3.1    Jurisdiction and venue is proper in this Court, as the events giving rise to this suit occurred, in whole or in part, in on the land and navigable waters

2

of Cameron County, Texas, and all or a substantial part of the events or omissions giving rise to the Plaintiffs' claims occurred in Cameron County, Texas. Plaintiffs are seeking damages within this Court's jurisdictional limits.

## IV.

## FACTUAL BACKGROUND

4.1    That on or about September 15, 2001, while in a motor vehicle being driven by Gaspar Hinojosa, while traveling along and upon the Queen Isabella Causeway in Port Isabel, Cameron County, Texas, was severely and fatally injured.

4.2    The Queen Isabella Causeway curves, has narrow shoulders, and rises approximately 109 feet above the bay. Once drivers enter the causeway, a concrete median prevents them from turning around. At the time of this incident, a block of streetlights on the causeway's western section was not functioning. The first part of the bridge was illuminated for traffic heading toward Port Isabel, Texas, but there was no illumination at the scene of the incident.

4.3    The State of Texas alleges that it owns the causeway and its streetlight system. Cameron County assumes certain maintenance responsibilities over the causeway's streetlight system under an agreement with the Texas Department of Transportation. Correspondence between TXDOT and the County shows that maintaining the causeway's streetlights had been a problem since at least 1995. In November of that year, Kenneth Conway, a county park-system director, wrote to TXDOT's district engineer that 30 causeway streetlights were not functioning and presented a "serious safety

3

hazard". In an April 1996 letter to TXDOT, Conway wrote that "inconsistent lighting on the causeway presents a safety hazard to the traveling public." By August 1996, over 30 streetlights had failed, and at least that many were not functioning later when this incident occurred.

4.4     At the time of the incident that gives rise to this suit, the failed block of lights at the end of the elevated and curving causeway, with narrow shoulders and limited access, suddenly plunged motorists, including Gaspar Hinojosa, into darkness. The causeway entrance was illuminated; thus, the sudden darkness from the block of failed lighting came upon drivers unexpectedly, a condition which was neither open nor obvious to Gaspar Hinojosa. Gaspar Hinojosa did not have actual knowledge of this danger. Furthermore, when Gaspar Hinojosa entered the causeway, they could not see far enough ahead to know that the large block of lights on the bridge was out. Additionally, motorists traveling over the bridge had every reasonable expectation that any non-functioning lights had been repaired or replaced. Thus, the malfunctioning block of artificial lighting that the Defendants failed to maintain caused a sudden and unexpected change in driving conditions.

4.5     A cement barrier on the causeway separates the two travel lanes in each direction and prevents drivers from turning back once embarking upon the bridge. Only a relatively narrow shoulder beside the traffic lanes is available to accommodate vehicles in emergency situations. On the evening in question, the causeway was lit at the point of entry, but there was no illumination further along the causeway at the accident scene. The lighting failure was not open or obvious to motorists entering the causeway, and the entrance to the causeway is

4

the only point at which they could choose to avoid the condition or otherwise protect themselves.

4.6    The condition of the bridge, upon failure of a large block of streetlights, caused it to be more dangerous than an ordinary road.  It posed an unreasonable risk of harm, in that that there was a sufficient probability of a harmful event occurring, that the Defendants would have foreseen it, or some similar event, as likely to happen.

4.7    While Gaspar Hinojosa did not actually know of the dangerous condition of the bridge, the Defendants themselves knew of the danger that the causeway's numerous, nonfunctioning streetlights posed.  Kenneth Conway, Cameron County's park-system director, described the failed lighting as a "serious public safety issue" and "a serious safety hazard".  In a letter to TXDOT, Conway specifically identified the danger posed to motorists of the causeway. The general foreman a previous contractor, Red Simpson, Inc., hired to repair the lights additionally recognized the danger.  He wrote in a letter that the causeway's lighting system posed an "[e]xtreme hazard".

## V.

## CAUSES OF ACTION

### A. Causes of Action Against the State of Texas Department of Transportation

5.1    Plaintiffs bring suit against the State of Texas Department of Transportation pursuant to Texas Civil Practice & Remedies Codes Section 101.022(a), as the Plaintiffs' claims arise from a premise defect, and the governmental unit owes to the Plaintiffs the same duty that a private person owes to a licensee on private property.  With respect to the condition of the

premises, the condition posed an unreasonable risk of harm, the Defendant had actual knowledge of the danger, the Plaintiffs did not have actual knowledge of the danger, and the Defendant failed to exercise ordinary care to protect the Gaspar Hinojosa from danger, by both failing to adequately warn of the condition and failing to make that condition reasonably safe. Furthermore, the Defendant was grossly negligent with respect to the condition of the premises, the condition posed an unreasonable risk of harm, and the Defendant both failed to adequately warn Gaspar Hinojosa of the danger and failed to make that condition reasonably safe. The Defendant's conduct was more than momentary thoughtlessness, inadvertence, or error of judgment. In other words, the Defendant either knew of or was substantially certain that the result or a similar result would occur, or it displayed such an entire want of care as to establish that the act or omission was the result of actual conscious indifference to the rights, safety, or welfare of the person affected by it. Regardless of whether or not punitive damages can be assessed against the governmental Defendant, Defendant's grossly negligent conduct means that any alleged knowledge of the condition by the Plaintiffs will not bar recovery.

5.2    Plaintiffs bring suit against the State of Texas Department of Transportation pursuant to Texas Civil Practice & Remedies Codes Section 101.022(b) and 101.060(2) and (3), as the incident in question resulted from the absence, condition, or malfunction of warning devices, which was not corrected by the Defendant within a reasonable time after notice of the condition.

5.3    Plaintiffs bring suit against the State of Texas Department of Transportation pursuant to Texas Civil Practice & Remedies Codes Section 101.021(2) because the Plaintiffs' injuries and death were caused by the condition

or use of tangible personal or real property, including defective wiring and lighting, including the bridge's navigation range lights. The failure to use new wiring and lighting constitutes a misuse of tangible personal property.

## B. Causes of Action Against County of Cameron

5.4    Plaintiffs bring suit against the County of Cameron pursuant to Texas Civil Practice & Remedies Codes Section 101.022(a), as the Plaintiffs' claims arise from a premise defect, and the governmental unit owes to the Plaintiffs the same duty that a private person owes to a licensee on private property. With respect to the condition of the premises, the condition posed an unreasonable risk of harm, the Defendant had actual knowledge of the danger, the Plaintiffs did not have actual knowledge of the danger, and the Defendant failed to exercise ordinary care to protect Gaspar Hinojosa from danger, by both failing to adequately warn of the condition and failing to make that condition reasonably safe. Furthermore, the Defendant was grossly negligent with respect to the condition of the premises, the condition posed an unreasonable risk of harm, and the Defendant both failed to adequately warn Gaspar Hinojosa of the danger and failed to make that condition reasonably safe. The Defendant's conduct was more than momentary thoughtlessness, inadvertence, or error of judgment. In other words, the Defendant either knew of or was substantially certain that the result or a similar result would occur, or it displayed such an entire want of care as to establish that the act or omission was the result of actual conscious indifference to the rights, safety, or welfare of the person affected by it. Regardless of whether or not punitive damages can be assessed against the governmental Defendant, Defendant's grossly negligent conduct means that any alleged knowledge of the condition by the Plaintiffs will not bar recovery.

7

5.5     Plaintiffs bring suit against the County of Cameron pursuant to Texas Civil Practice & Remedies Codes Section 101.022(b) and 101.060(2) and (3), as the incident in question resulted from the absence, condition, or malfunction of a warning device, which was not corrected by the Defendant within a reasonable time after notice of the condition.

5.6     Plaintiffs bring suit against the County of Cameron pursuant to Texas Civil Practice & Remedies Codes Section 101.021(2) because Gaspar Hinojosa's injuries and death and damages to Plaintiffs OMAR HINOJOSA, INDIVIDUALLY AND AS ADMINISTRATOR OF THE ESTATE OF GASPAR HINOJOSA, RAQUEL HINOJOSA, SURVIVING SPOUSE, CLARISSA HINOJOSA AND GASPAR HINOJOSA, II, AND MARTIN AND RITA HINOJOSA, SURVIVING NATURAL PARENTS, were caused by the condition or use of tangible personal or real property, including defective wiring and lighting.   The failure to use new wiring and lighting constitutes a misuse of tangible personal property.

### C.  Causes of Action Against A.G. Hillpower, Inc.,

### Now Known as JHB Enteprises, Inc.

5.7     Defendant, A. G. Hillpower, Inc. was responsible for the maintenance of the bridge. A.G. Hillpower, Inc. knew of, or should have known of, the defective wiring which caused the portion of the bridge to be dark and therefore dangerous. A.G. Hillpower, Inc. committed acts of omission and commission which, collectively and severally, constituted negligence, gross neglect, and malice, as those terms are defined under Texas Law, which negligence, gross neglect, and malice was a proximate cause of the fatal injuries to Gaspar Hinojosa and damages to OMAR HINOJOSA, INDIVIDUALLY AND

8

AS ADMINISTRATOR OF THE ESTATE OF GASPAR HINOJOSA, RAQUEL HINOJOSA, SURVIVING SPOUSE, CLARISSA HINOJOSA AND GASPAR HINOJOSA, II, AND MARTIN AND RITA HINOJOSA, SURVIVING NATURAL PARENTS.

## VI.

## PROXIMATE CAUSE

6.1    The acts, omissions, negligence, and gross negligence of the Defendants as alleged above proximately caused damages to OMAR HINOJOSA, INDIVIDUALLY AND AS ADMINISTRATOR OF THE ESTATE OF GASPAR HINOJOSA, RAQUEL HINOJOSA, SURVIVING SPOUSE, CLARISSA HINOJOSA AND GASPAR HINOJOSA, II, AND MARTIN AND RITA HINOJOSA, SURVIVING NATURAL PARENTS, in excess of this Court's minimum jurisdictional limits.

## VII.

DAMAGES TO OMAR HINOJOSA, INDIVIDUALLY AND AS ADMINISTRATOR OF THE ESTATE OF GASPAR HINOJOSA, RAQUEL HINOJOSA, SURVIVING SPOUSE, CLARISSA HINOJOSA AND GASPAR HINOJOSA, II, AND MARTIN AND RITA HINOJOSA, SURVIVING NATURAL PARENTS

7.1    Gaspar Hinojosa did not die instantaneously, but rather suffered severe and excruciating physical pain and mental anguish prior to his death. As a result, his estate is entitled to recover damages for their physical pain and mental anguish, in addition to funeral and burial expenses, for which recovery is sought herein.

7.2    As a direct and proximate result of the death of husband, father and son, Plaintiffs OMAR HINOJOSA, INDIVIDUALLY AND AS ADMINISTRATOR OF THE ESTATE OF GASPAR HINOJOSA, RAQUEL

HINOJOSA, SURVIVING SPOUSE, CLARISSA HINOJOSA AND GASPAR HINOJOSA, II, AND MARTIN AND RITA HINOJOSA, SURVIVING NATURAL PARENTS, have been deprived of the affection, companionship, advise, counsel, comfort, solace and services that they would, in a reasonable probability, have received from her husband, father and son during his lifetime had he survived.

7.3    Plaintiffs  OMAR  HINOJOSA,  INDIVIDUALLY  AND  AS ADMINISTRATOR  OF  THE  ESTATE  OF  GASPAR  HINOJOSA,  RAQUEL HINOJOSA, SURVIVING SPOUSE, CLARISSA HINOJOSA AND GASPAR HINOJOSA, II, AND MARTIN AND RITA HINOJOSA, SURVIVING NATURAL PARENTS have suffered the loss of the parent/child relationship, extreme grief, mental anguish, and physical suffering in the past and will, in reasonable probability, continue to do so in the future as a result of the sudden and untimely death of their husband, father and son, Gaspar Hinojosa.

7.4    The Plaintiffs have been damaged in the sum of three million dollars ($3,000,000.00) subject to any limitations posed by the Texas Civil Practice & Remedies Code with regard to Defendant's State of Texas Department of Transportation ($250,000.00) and County of Cameron ($300,000.00) after any and all comparative negligence deductions, if any, are assessed.

## VIII.

### EXEMPLARY DAMAGES

8.1    Because of the gross neglect and malice of Defendant A.G. Hill Power, Inc., Defendant A.G. Hill Power, Inc. should have exemplary damages assessed against it in an amount deemed appropriate by the jury.

## IX.

## JURISDICTION

9.1    Plaintiffs' damages sought herein are in an amount far in excess of the minimum jurisdictional limits of this Court.

## X.

## PRE-JUDGMENT AND POST-JUDGMENT INTEREST

10.1    Plaintiffs seek pre-judgment and post-judgment interest as allowed by law.

## XI.

## NOTICE

11.1    Pursuant to the provisions of the Texas Tort Claims Act, Section 101.101 of the Texas Civil Practices and Remedies Code, Plaintiffs provided timely notice of their claims against the governmental Defendants. Furthermore, the governmental Defendants had actual notice of Plaintiffs' claims well within six months of the date on which the incident in question occurred.

## PRAYER

WHEREFORE, Plaintiffs request that Defendants be cited to appear and answer, and that on final trial, Plaintiffs have the following:

1.    Actual damages in an amount within jurisdictional limits of this Court;

2.    Exemplary damages in an amount within the jurisdictional limits of the Court;

3.    Prejudgment interest allowed by law;

4.    Post-judgment interest allowed by law;

5.    Costs of suit; and

6.    Such other and further relief, special and general, at law and in equity, to which Plaintiffs may show themselves justly entitled.

11

Respectfully submitted,

WATTS LAW FIRM, L.L.P.

_____

**Mikal C. Watts**
**State Bar No.**
**Ray R. Marchan**
**State Bar No. 12969050**

**WATTS LAW FIRM, L.L.P.**
**1926 E. Elizabeth**
**Brownsville, Texas  78520**
**(956) 544-0500**
**(956) 541-0255 FAX**

**ATTORNEYS FOR PLAINTIFFS**
OMAR HINOJOSA, INDIVIDUALLY
AND AS ADMINISTRATOR OF THE
ESTATE OF GASPAR HINOJOSA,
RAQUEL HINOJOSA, SURVIVING
SPOUSE, CLARISSA HINOJOSA
AND GASPAR HINOJOSA, II, AND
MARTIN AND RITA HINOJOSA,
SURVIVING NATURAL PARENTS

LAW OFFICE OF JULIAN RODRIGUEZ, JR.
Julian Rodriguez, Jr.
10113 N. 10th Street, Ste "C"
McAllen, Texas  78504
(956) 287-0088
(956) 287-0098  FAX

**PLAINTIFFS REQUEST TRIAL BY JURY**

12

FILED
AURORA DE LA GARZA DIST. CLERK
SEP 12 2003
DISTRICT COURT OF CAMERON COUNTY, TEXAS
_Reynaldo Lopez_ DEPUTY

CAUSE NO. _2003-09-4624-6_

| | | |
|---|---|---|
| WILLIAM MORRIS WELCH, | § | IN THE DISTRICT COURT |
| INDIVIDUALLY AND AS THE | § | |
| SURVIVING FATHER OF BARRY | § | |
| WELCH, DECEASED | § | |
| | § | |
| VS. | § | CAMERON COUNTY, TEXAS |
| | § | |
| STATE OF TEXAS DEPARTMENT | § | |
| OF TRANSPORTATION, COUNTY | § | |
| OF CAMERON, AND A. G. HILL | § | |
| POWER, INC., NOW KNOWN AS | § | |
| JHB ENTERPRISES, INC. | § | |
| Defendants. | § | _404th_ JUDICIAL DISTRICT |

## PLAINTIFFS' ORIGINAL PETITION

TO THE HONORABLE JUDGE OF SAID COURT:

COMES NOW, PLAINTIFFS, WILLIAM MORRIS WELCH, INDIVIDUALLY AND AS THE SURVIVING FATHER OF BARRY WELCH, DECEASED, complain of STATE OF TEXAS DEPARTMENT OF TRANSPORTATION, COUNTY OF CAMERON AND A. G. HILL POWER, INC. NOW KNOWN AS JHB ENTERPRISES, INC. Defendants, and file this, their Original Petition.

## I.

### DISCOVERY LEVEL

1.1    Discovery is intended to be conducted under Discovery Control Plan Level 3 of Texas Rule of Civil Procedure 190.

## II.

### PARTIES

2.1    Plaintiff, WILLIAM MORRIS WELCH, INDIVIDUALLY AND AS THE SURVIVING FATHER OF BARRY WELCH, DECEASED are residents of

Texas City, Galveston County, Texas. They bring this action individually and in their own capacity; as the surviving father of BARRY WELCH; and in all other capacities permitted by law.

2.4    Defendant, State of Texas Department of Transportation is a governmental entity which may be served with process by serving its general counsel, Mr. Richard Monroe, at 125 East 11th Street, Austin, Texas 78701-2483.

2.5    Defendant, County of Cameron, is a municipality and may be served with process by servings the County Judge, Mr. Gilberto Hinojosa, at Cameron County Courthouse, 974 E. Harrison, Brownsville, Texas 78520.

2.6    Defendant, A. G. Hill Power, Inc. now known as JHB Enterprises, Inc is a Texas corporation and may be duly served by serving its agent for service, Mr. Jack H. Bennett, at 112 Lakeshore Drive, Corpus Christi, Texas 78413.

### III.

### JURISDICTION AND VENUE

3.1    Jurisdiction and venue is proper in this Court, as the events giving rise to this suit occurred, in whole or in part, in on the land and navigable waters of Cameron County, Texas, and all or a substantial part of the events or omissions giving rise to the Plaintiffs' claims occurred in Cameron County, Texas. Plaintiffs are seeking damages within this Court's jurisdictional limits.

### IV.

### FACTUAL BACKGROUND

4.1    That on or about September 15, 2001, while in a motor vehicle being driven by Barry Welch, while traveling along and upon the Queen Isabella

2

Causeway in Port Isabel, Cameron County, Texas, was severely and fatally injured.

4.2    The Queen Isabella Causeway curves, has narrow shoulders, and rises approximately 109 feet above the bay. Once drivers enter the causeway, a concrete median prevents them from turning around. At the time of this incident, a block of streetlights on the causeway's western section was not functioning. The first part of the bridge was illuminated for traffic heading toward Port Isabel, Texas, but there was no illumination at the scene of the incident.

4.3    The State of Texas alleges that it owns the causeway and its streetlight system. Cameron County assumes certain maintenance responsibilities over the causeway's streetlight system under an agreement with the Texas Department of Transportation. Correspondence between TXDOT and the County shows that maintaining the causeway's streetlights had been a problem since at least 1995. In November of that year, Kenneth Conway, a county park-system director, wrote to TXDOT's district engineer that 30 causeway streetlights were not functioning and presented a "serious safety hazard". In an April 1996 letter to TXDOT, Conway wrote that "inconsistent lighting on the causeway presents a safety hazard to the traveling public." By August 1996, over 30 streetlights had failed, and at least that many were not functioning later when this incident occurred.

4.4    At the time of the incident that gives rise to this suit, the failed block of lights at the end of the elevated and curving causeway, with narrow shoulders and limited access, suddenly plunged motorists, including Barry Welch, into darkness. The causeway entrance was illuminated; thus, the sudden

darkness from the block of failed lighting came upon drivers unexpectedly, a condition which was neither open nor obvious to Barry Welch. Plaintiff Barry Welch did not have actual knowledge of this danger. Furthermore, when Plaintiff Barry Welch entered the causeway, they could not see far enough ahead to know that the large block of lights on the bridge was out. Additionally, motorists traveling over the bridge had every reasonable expectation that any non-functioning lights had been repaired or replaced. Thus, the malfunctioning block of artificial lighting that the Defendants failed to maintain caused a sudden and unexpected change in driving conditions.

4.5     A cement barrier on the causeway separates the two travel lanes in each direction and prevents drivers from turning back once embarking upon the bridge. Only a relatively narrow shoulder beside the traffic lanes is available to accommodate vehicles in emergency situations. On the evening in question, the causeway was lit at the point of entry, but there was no illumination further along the causeway at the accident scene. The lighting failure was not open or obvious to motorists entering the causeway, and the entrance to the causeway is the only point at which they could choose to avoid the condition or otherwise protect themselves.

4.6     The condition of the bridge, upon failure of a large block of streetlights, caused it to be more dangerous than an ordinary road. It posed an unreasonable risk of harm, in that that there was a sufficient probability of a harmful event occurring, that the Defendants would have foreseen it, or some similar event, as likely to happen.

4.7     While Plaintiff Barry Welch did not actually know of the dangerous condition of the bridge, the Defendants themselves knew of the danger that the

4

causeway's numerous, nonfunctioning streetlights posed. Kenneth Conway, Cameron County's park-system director, described the failed lighting as a "serious public safety issue" and "a serious safety hazard". In a letter to TXDOT, Conway specifically identified the danger posed to motorists of the causeway. The general foreman a previous contractor, Red Simpson, Inc., hired to repair the lights additionally recognized the danger. He wrote in a letter that the causeway's lighting system posed an "[e]xtreme hazard".

## V.

## CAUSES OF ACTION

### A. Causes of Action Against the State of Texas Department of Transportation

5.1    Plaintiffs bring suit against the State of Texas Department of Transportation pursuant to Texas Civil Practice & Remedies Codes Section 101.022(a), as the Plaintiffs' claims arise from a premise defect, and the governmental unit owes to the Plaintiffs the same duty that a private person owes to a licensee on private property. With respect to the condition of the premises, the condition posed an unreasonable risk of harm, the Defendant had actual knowledge of the danger, the Plaintiffs did not have actual knowledge of the danger, and the Defendant failed to exercise ordinary care to protect the Barry Welch from danger, by both failing to adequately warn of the condition and failing to make that condition reasonably safe. Furthermore, the Defendant was grossly negligent with respect to the condition of the premises, the condition posed an unreasonable risk of harm, and the Defendant both failed to adequately warn Barry Welch of the danger and failed to make that condition reasonably safe. The Defendant's conduct was more than momentary

5

thoughtlessness, inadvertence, or error of judgment. In other words, the Defendant either knew of or was substantially certain that the result or a similar result would occur, or it displayed such an entire want of care as to establish that the act or omission was the result of actual conscious indifference to the rights, safety, or welfare of the person affected by it. Regardless of whether or not punitive damages can be assessed against the governmental Defendant, Defendant's grossly negligent conduct means that any alleged knowledge of the condition by the Plaintiffs will not bar recovery.

5.2    Plaintiffs bring suit against the State of Texas Department of Transportation pursuant to Texas Civil Practice & Remedies Codes Section 101.022(b) and 101.060(2) and (3), as the incident in question resulted from the absence, condition, or malfunction of warning devices, which was not corrected by the Defendant within a reasonable time after notice of the condition.

5.3    Plaintiffs bring suit against the State of Texas Department of Transportation pursuant to Texas Civil Practice & Remedies Codes Section 101.021(2) because the Plaintiffs' injuries and death were caused by the condition or use of tangible personal or real property, including defective wiring and lighting, including the bridge's navigation range lights. The failure to use new wiring and lighting constitutes a misuse of tangible personal property.

### B. Causes of Action Against County of Cameron

5.4    Plaintiffs bring suit against the County of Cameron pursuant to Texas Civil Practice & Remedies Codes Section 101.022(a), as the Plaintiffs' claims arise from a premise defect, and the governmental unit owes to the Plaintiffs the same duty that a private person owes to a licensee on private property. With respect to the condition of the premises, the condition posed an unreasonable

6

risk of harm, the Defendant had actual knowledge of the danger, the Plaintiffs did not have actual knowledge of the danger, and the Defendant failed to exercise ordinary care to protect Barry Welch from danger, by both failing to adequately warn of the condition and failing to make that condition reasonably safe. Furthermore, the Defendant was grossly negligent with respect to the condition of the premises, the condition posed an unreasonable risk of harm, and the Defendant both failed to adequately warn Barry Welch of the danger and failed to make that condition reasonably safe. The Defendant's conduct was more than momentary thoughtlessness, inadvertence, or error of judgment. In other words, the Defendant either knew of or was substantially certain that the result or a similar result would occur, or it displayed such an entire want of care as to establish that the act or omission was the result of actual conscious indifference to the rights, safety, or welfare of the person affected by it. Regardless of whether or not punitive damages can be assessed against the governmental Defendant, Defendant's grossly negligent conduct means that any alleged knowledge of the condition by the Plaintiffs will not bar recovery.

5.5    Plaintiffs bring suit against the County of Cameron pursuant to Texas Civil Practice & Remedies Codes Section 101.022(b) and 101.060(2) and (3), as the incident in question resulted from the absence, condition, or malfunction of a warning device, which was not corrected by the Defendant within a reasonable time after notice of the condition.

5.6    Plaintiffs bring suit against the County of Cameron pursuant to Texas Civil Practice & Remedies Codes Section 101.021(2) because Barry Welch's injuries and death and damages to Plaintiffs William Morris Welch were caused by the condition or use of tangible personal or real property, including defective

7

wiring and lighting. The failure to use new wiring and lighting constitutes a misuse of tangible personal property.

### C. Causes of Action Against A.G. Hillpower, Inc.,

### Now Known as JHB Enteprises, Inc.

5.7    Defendant, A. G. Hillpower, Inc. was responsible for the maintenance of the bridge. A.G. Hillpower, Inc. knew of, or should have known of, the defective wiring which caused the portion of the bridge to be dark and therefore dangerous. A.G. Hillpower, Inc. committed acts of omission and commission which, collectively and severally, constituted negligence, gross neglect, and malice, as those terms are defined under Texas Law, which negligence, gross neglect, and malice was a proximate cause of the fatal injuries to Barry Welch and damages to William Morris Welch.

### VI.

### PROXIMATE CAUSE

6.1    The acts, omissions, negligence, and gross negligence of the Defendants as alleged above proximately caused damages to WILLIAM MORRIS WELCH, INDIVIDUALLY AND AS THE SURVIVING FATHER OF BARRY WELCH in excess of this Court's minimum jurisdictional limits.

### VII.

### DAMAGES TO WILLIAM MORRIS WELCH, INDIVIDUALLY AND AS THE SURVIVING FATHER OF BARRY WELCH, DECEASED

7.1    Barry Welch did not die instantaneously, but rather suffered severe and excruciating physical pain and mental anguish prior to his death. As a result, his estate is entitled to recover damages for their physical pain and mental

8

anguish, in addition to funeral and burial expenses, for which recovery is sought herein.

7.2    As a direct and proximate result of the death of his son, Plaintiff WILLIAM MORRIS WELCH, INDIVIDUALLY AND AS THE SURVIVING FATHER OF BARRY WELCH, DECEASED have been deprived of the affection, companionship, advise, counsel, comfort, solace and services that they would, in a reasonable probability, have received from his son during her lifetime had he survived.

7.3    Plaintiffs WILLIAM MORRIS WELCH, INDIVIDUALLY AND AS THE SURVIVING FATHER OF BARRY WELCH, DECEASED have suffered the loss of the parent/child relationship, extreme grief, mental anguish, and physical suffering in the past and will, in reasonable probability, continue to do so in the future as a result of the sudden and untimely death of his son, Barry Welch.

7.4    The Plaintiffs have been damaged in the sum of three million dollars ($3,000,000.00) subject to any limitations posed by the Texas Civil Practice & Remedies Code with regard to Defendant's State of Texas Department of Transportation ($250,000.00) and County of Cameron ($300,000.00) after any and all comparative negligence deductions, if any, are assessed.

## VIII.

### EXEMPLARY DAMAGES

8.1    Because of the gross neglect and malice of Defendant A.G. Hill Power, Inc., Defendant A.G. Hill Power, Inc. should have exemplary damages assessed against it in an amount deemed appropriate by the jury.

9

## IX.

## JURISDICTION

9.1    Plaintiffs' damages sought herein are in an amount far in excess of the minimum jurisdictional limits of this Court.

## X.

## PRE-JUDGMENT AND POST-JUDGMENT INTEREST

10.1    Plaintiffs seek pre-judgment and post-judgment interest as allowed by law.

## XI.

## NOTICE

11.1    Pursuant to the provisions of the Texas Tort Claims Act, Section 101.101 of the Texas Civil Practices and Remedies Code, Plaintiffs provided timely notice of their claims against the governmental Defendants. Furthermore, the governmental Defendants had actual notice of Plaintiffs' claims well within six months of the date on which the incident in question occurred.

## PRAYER

WHEREFORE, Plaintiffs request that Defendants be cited to appear and answer, and that on final trial, Plaintiffs have the following:

1.  Actual damages in an amount within jurisdictional limits of this Court;

2.  Exemplary damages in an amount within the jurisdictional limits of the Court;

3.  Prejudgment interest allowed by law;

4.  Post-judgment interest allowed by law;

5.  Costs of suit; and

6.  Such other and further relief, special and general, at law and in equity, to which Plaintiffs may show themselves justly entitled.

Respectfully submitted,

WATTS LAW FIRM, L.L.P.

_____
Mikal C. Watts
State Bar No.
Ray R. Marchan
State Bar No. 12969050

WATTS LAW FIRM, L.L.P.
1926 E. Elizabeth
Brownsville, Texas  78520
(956) 544-0500
(956) 541-0255 FAX

JAMES B. MANLEY, P.C.
3616 PRESTON ROAD
Pasadena, Texas  77505
(713) 947-1670
(713) 947-6956  FAX

ATTORNEYS FOR PLAINTIFFS
WILLIAM MORRIS WELCH,
INDIVIDUALLY AND AS THE
SURVIVING FATHER OF BARRY
WELCH

PLAINTIFFS REQUEST TRIAL BY JURY

11

CAUSE NO. _2003-09-4621-C_

FILED
_____ O'CLOCK ___ M
AURORA DE LA GARZA DIST. CLERK

SEP 12 2003

DISTRICT COURT OF CAMERON COUNTY, TEXAS
_Reynaldo_____ DEPUTY

| | | |
|---|---|---|
| LYDIA ZAMORA INDIVIDUALLY | § | IN THE DISTRICT COURT |
| AND AS REPRESENTATIVE OF | § | |
| THE ESTATE OF HECTOR | § | |
| MARTINEZ, JR. | § | |
| | § | |
| VS. | § | CAMERON COUNTY, TEXAS |
| | § | |
| STATE OF TEXAS DEPARTMENT | § | |
| OF TRANSPORTATION, COUNTY | § | |
| OF CAMERON, AND A. G. HILL | § | |
| POWER, INC., NOW KNOWN AS | § | |
| JHB ENTERPRISES, INC. | § | |
| Defendants. | § | _404th_ JUDICIAL DISTRICT |

## PLAINTIFFS' ORIGINAL PETITION

### TO THE HONORABLE JUDGE OF SAID COURT:

COMES NOW, PLAINTIFFS, LYDIA ZAMORA, INDIVIDUALLY AND AS REPRESENTATIVE OF THE ESTATE OF HECTOR MARTINEZ, JR., complain of STATE OF TEXAS DEPARTMENT OF TRANSPORTATION, COUNTY OF CAMERON AND A. G. HILL POWER, INC. NOW KNOWN AS JHB ENTERPRISES, INC. Defendants, and file this, their Original Petition.

### I.

### DISCOVERY LEVEL

1.1   Discovery is intended to be conducted under Discovery Control Plan Level 3 of Texas Rule of Civil Procedure 190.

### II.

### PARTIES

2.1   Plaintiff, LYDIA ZAMORA INDIVIDUALLY AND AS REPRESENTATIVE OF THE ESTATE OF HECTOR MARTINEZ, JR. is a resident of Port Isabel, Cameron County, Texas.  She brings this action individually and in

her own capacity; as the surviving mother of Hector Martinez, Jr., as the Legal Representatives of the Estate of Hector Martinez, Jr., and in all other capacities permitted by law.

2.4    Defendant, State of Texas Department of Transportation is a governmental entity which may be served with process by serving its general counsel, Mr. Richard Monroe, at 125 East 11th Street, Austin, Texas 78701-2483.

2.5    Defendant, County of Cameron, is a municipality and may be served with process by servings the County Judge, Mr. Gilberto Hinojosa, at Cameron County Courthouse, 974 E. Harrison, Brownsville, Texas 78520.

2.6    Defendant, A. G. Hill Power, Inc. now known as JHB Enterprises, Inc is a Texas corporation and may be duly served by serving its agent for service, Mr. Jack H. Bennett, at 112 Lakeshore Drive, Corpus Christi, Texas 78413.

### III.

### JURISDICTION AND VENUE

3.1    Jurisdiction and venue is proper in this Court, as the events giving rise to this suit occurred, in whole or in part, in on the land and navigable waters of Cameron County, Texas, and all or a substantial part of the events or omissions giving rise to the Plaintiffs' claims occurred in Cameron County, Texas. Plaintiffs are seeking damages within this Court's jurisdictional limits.

### IV.

### FACTUAL BACKGROUND

4.1    That on or about September 15, 2001, while in a motor vehicle being driven by Hector Zamora, Jr., while traveling along and upon the Queen

Isabella Causeway in Port Isabel, Cameron County, Texas, was severely and fatally injured.

4.2    The Queen Isabella Causeway curves, has narrow shoulders, and rises approximately 109 feet above the bay.  Once drivers enter the causeway, a concrete median prevents them from turning around.  At the time of this incident, a block of streetlights on the causeway's western section was not functioning.  The first part of the bridge was illuminated for traffic heading toward Port Isabel, Texas, but there was no illumination at the scene of the incident.

4.3    The State of Texas alleges that it owns the causeway and its streetlight system.    Cameron County assumes certain maintenance responsibilities over the causeway's streetlight system under an agreement with the Texas Department of Transportation.  Correspondence between TXDOT and the County shows that maintaining the causeway's streetlights had been a problem since at least 1995.  In November of that year, Kenneth Conway, a county park-system director, wrote to TXDOT's district engineer that 30 causeway streetlights were not functioning and presented a "serious safety hazard".  In an April 1996 letter to TXDOT, Conway wrote that "inconsistent lighting on the causeway presents a safety hazard to the traveling public." By August 1996, over 30 streetlights had failed, and at least that many were not functioning later when this incident occurred.

4.4    At the time of the incident that gives rise to this suit, the failed block of lights at the end of the elevated and curving causeway, with narrow shoulders and limited access, suddenly plunged motorists, including Hector Martinez, Jr., into darkness.  The causeway entrance was illuminated; thus, the

3

sudden darkness from the block of failed lighting came upon drivers unexpectedly, a condition which was neither open nor obvious to Hector Martinez, Jr.  Decedent Hector Martinez, Jr. did not have actual knowledge of this danger.  Furthermore, when Hector Martinez, Jr. entered the causeway, they could not see far enough ahead to know that the large block of lights on the bridge was out.  Additionally, motorists traveling over the bridge had every reasonable expectation that any non-functioning lights had been repaired or replaced.  Thus, the malfunctioning block of artificial lighting that the Defendants failed to maintain caused a sudden and unexpected change in driving conditions.

4.5    A cement barrier on the causeway separates the two travel lanes in each direction and prevents drivers from turning back once embarking upon the bridge.  Only a relatively narrow shoulder beside the traffic lanes is available to accommodate vehicles in emergency situations.  On the evening in question, the causeway was lit at the point of entry, but there was no illumination further along the causeway at the accident scene.  The lighting failure was not open or obvious to motorists entering the causeway, and the entrance to the causeway is the only point at which they could choose to avoid the condition or otherwise protect themselves.

4.6    The condition of the bridge, upon failure of a large block of streetlights, caused it to be more dangerous than an ordinary road.  It posed an unreasonable risk of harm, in that that there was a sufficient probability of a harmful event occurring, that the Defendants would have foreseen it, or some similar event, as likely to happen.

4.7    While Plaintiff Hector Martinez, Jr. did not actually know of the dangerous condition of the bridge, the Defendants themselves knew of the

4

danger that the causeway's numerous, nonfunctioning streetlights posed. Kenneth Conway, Cameron County's park-system director, described the failed lighting as a "serious public safety issue" and "a serious safety hazard". In a letter to TXDOT, Conway specifically identified the danger posed to motorists of the causeway. The general foreman a previous contractor, Red Simpson, Inc., hired to repair the lights additionally recognized the danger. He wrote in a letter that the causeway's lighting system posed an "[e]xtreme hazard".

## V.

## CAUSES OF ACTION

### A. Causes of Action Against the State of Texas Department of Transportation

5.1     Plaintiffs bring suit against the State of Texas Department of Transportation pursuant to Texas Civil Practice & Remedies Codes Section 101.022(a), as the Plaintiffs' claims arise from a premise defect, and the governmental unit owes to the Plaintiffs the same duty that a private person owes to a licensee on private property. With respect to the condition of the premises, the condition posed an unreasonable risk of harm, the Defendant had actual knowledge of the danger, the Plaintiffs did not have actual knowledge of the danger, and the Defendant failed to exercise ordinary care to protect Hector Martinez, Jr. from danger, by both failing to adequately warn of the condition and failing to make that condition reasonably safe. Furthermore, the Defendant was grossly negligent with respect to the condition of the premises, the condition posed an unreasonable risk of harm, and the Defendant both failed to adequately warn Hector Martinez, Jr. of the danger and failed to make that condition reasonably safe. The Defendant's conduct was more than momentary

5

thoughtlessness, inadvertence, or error of judgment. In other words, the Defendant either knew of or was substantially certain that the result or a similar result would occur, or it displayed such an entire want of care as to establish that the act or omission was the result of actual conscious indifference to the rights, safety, or welfare of the person affected by it. Regardless of whether or not punitive damages can be assessed against the governmental Defendant, Defendant's grossly negligent conduct means that any alleged knowledge of the condition by the Plaintiffs will not bar recovery.

  5.2  Plaintiffs bring suit against the State of Texas Department of Transportation pursuant to Texas Civil Practice & Remedies Codes Section 101.022(b) and 101.060(2) and (3), as the incident in question resulted from the absence, condition, or malfunction of warning devices, which was not corrected by the Defendant within a reasonable time after notice of the condition.

  5.3  Plaintiffs bring suit against the State of Texas Department of Transportation pursuant to Texas Civil Practice & Remedies Codes Section 101.021(2) because the Plaintiffs' injuries and death were caused by the condition or use of tangible personal or real property, including defective wiring and lighting, including the bridge's navigation range lights. The failure to use new wiring and lighting constitutes a misuse of tangible personal property.

### B. Causes of Action Against County of Cameron

  5.4  Plaintiffs bring suit against the County of Cameron pursuant to Texas Civil Practice & Remedies Codes Section 101.022(a), as the Plaintiffs' claims arise from a premise defect, and the governmental unit owes to the Plaintiffs the same duty that a private person owes to a licensee on private property. With respect to the condition of the premises, the condition posed an unreasonable

6

risk of harm, the Defendant had actual knowledge of the danger, the Plaintiffs did not have actual knowledge of the danger, and the Defendant failed to exercise ordinary care to protect Hector Martinez, Jr. from danger, by both failing to adequately warn of the condition and failing to make that condition reasonably safe. Furthermore, the Defendant was grossly negligent with respect to the condition of the premises, the condition posed an unreasonable risk of harm, and the Defendant both failed to adequately warn Hector Martinez, Jr. of the danger and failed to make that condition reasonably safe. The Defendant's conduct was more than momentary thoughtlessness, inadvertence, or error of judgment. In other words, the Defendant either knew of or was substantially certain that the result or a similar result would occur, or it displayed such an entire want of care as to establish that the act or omission was the result of actual conscious indifference to the rights, safety, or welfare of the person affected by it. Regardless of whether or not punitive damages can be assessed against the governmental Defendant, Defendant's grossly negligent conduct means that any alleged knowledge of the condition by the Plaintiffs will not bar recovery.

5.5    Plaintiffs bring suit against the County of Cameron pursuant to Texas Civil Practice & Remedies Codes Section 101.022(b) and 101.060(2) and (3), as the incident in question resulted from the absence, condition, or malfunction of a warning device, which was not corrected by the Defendant within a reasonable time after notice of the condition.

5.6    Plaintiffs bring suit against the County of Cameron pursuant to Texas Civil Practice & Remedies Codes Section 101.021(2) because Hector Martinez, Jr.'s injuries and death and damages to Plaintiff Lydia Zamora Individually and as Representative of the Estate of Hector Zamora, Jr. were

7

caused by the condition or use of tangible personal or real property, including defective wiring and lighting. The failure to use new wiring and lighting constitutes a misuse of tangible personal property.

## C. Causes of Action Against A.G. Hill Power, Inc.,
## Now Known as JHB Enterprises, Inc.

5.7    Defendant, A. G. Hill Power, Inc. was responsible for the maintenance of the bridge. A.G. Hill Power, Inc. knew of, or should have known of, the defective wiring which caused the portion of the bridge to be dark and therefore dangerous. A.G. Hill Power, Inc. committed acts of omission and commission which, collectively and severally, constituted negligence, gross neglect, and malice, as those terms are defined under Texas Law, which negligence, gross neglect, and malice was a proximate cause of the fatal injuries to Hector Martinez, Jr. and damages to Lydia Zamora.

## VI.

## PROXIMATE CAUSE

6.1    The acts, omissions, negligence, and gross negligence of the Defendants as alleged above proximately caused damages to Lydia Zamora Individually and as Representative of the Estate of Hector Martinez, Jr. in excess of this Court's minimum jurisdictional limits.

## VII.

## DAMAGES TO LYDIA ZAMORA INDIVIDUALLY AND AS REPRESENTATIVE OF THE ESTATE OF HECTOR MARTINEZ, JR.

8

7.1     Hector Martinez, Jr. did not die instantaneously, but rather suffered severe and excruciating physical pain and mental anguish prior to her death.  As a result, her estate is entitled to recover damages for their physical pain and mental anguish, in addition to funeral and burial expenses, for which recovery is sought herein.

7.2     As a direct and proximate result of the death of her son, Plaintiff Lydia Zamora Individually and as Representative of the Estate of Hector Martinez, Jr. have been deprived of the affection, companionship, advise, counsel, comfort, solace and services that they would, in a reasonable probability, have received from their parents during her lifetime had she survived.

7.3     Plaintiff Lydia Zamora Individually and as Representative of the Estate of Hector Martinez, Jr. have suffered the loss of the parent/child relationship, extreme grief, mental anguish, and physical suffering in the past and will, in reasonable probability, continue to do so in the future as a result of the sudden and untimely death of her son, Hector Martinez, Jr..

7.4     The Plaintiffs have been damaged in the sum of three million dollars ($3,000,000.00) subject to any limitations posed by the Texas Civil Practice & Remedies Code with regard to Defendant's State of Texas Department of Transportation ($250,000.00) and County of Cameron ($300,000.00) after any and all comparative negligence deductions, if any, are assessed.

## VIII.

## EXEMPLARY DAMAGES

8.1    Because of the gross neglect and malice of Defendant A.G. Hill Power, Inc., Defendant A.G. Hill Power, Inc. should have exemplary damages assessed against it in an amount deemed appropriate by the jury.

## IX.

## JURISDICTION

9.1    Plaintiffs' damages sought herein are in an amount far in excess of the minimum jurisdictional limits of this Court.

## X.

## PRE-JUDGMENT AND POST-JUDGMENT INTEREST

10.1    Plaintiffs seek pre-judgment and post-judgment interest as allowed by law.

## XI.

## NOTICE

11.1    Pursuant to the provisions of the Texas Tort Claims Act, Section 101.101 of the Texas Civil Practices and Remedies Code, Plaintiffs provided timely notice of their claims against the governmental Defendants. Furthermore, the governmental Defendants had actual notice of Plaintiffs' claims well within six months of the date on which the incident in question occurred.

## PRAYER

WHEREFORE, Plaintiffs request that Defendants be cited to appear and answer, and that on final trial, Plaintiffs have the following:

1.    Actual damages in an amount within jurisdictional limits of this Court;

2.    Exemplary damages in an amount within the jurisdictional limits of the Court;

3.    Prejudgment interest allowed by law;

10

4. Post-judgment interest allowed by law;

5. Costs of suit; and

6. Such other and further relief, special and general, at law and in equity, to which Plaintiffs may show themselves justly entitled.

Respectfully submitted,

WATTS LAW FIRM, L.L.P.

Mikal C. Watts
State Bar No.
Ray R. Marchan
State Bar No. 12969050

WATTS LAW FIRM, L.L.P.
1926 E. Elizabeth
Brownsville, Texas  78520
(956) 544-0500
(956) 541-0255 FAX

ATTORNEYS FOR PLAINTIFFS
Lydia Zamora Individually and as
Representative of the Estate of
Hector Martinez, Jr.

PLAINTIFFS REQUEST TRIAL BY JURY

11

FILED
AURORA DE LA GARZA DIST. CLERK

SEP 12 2003

DISTRICT COURT OF CAMERON COUNTY, TEXAS
_Reynaldo_____ DEPUTY

CAUSE NO. _2003-09-4617-G_

| | | |
|---|---|---|
| CAROL LEAVELL AND RICK | § | IN THE DISTRICT COURT |
| LEAVELL, INDIVIDUALLY AND AS | § | |
| REPRESENTATIVES OF THE | § | |
| ESTATE OF ROBIN FAYE LEAVELL | § | |
| | § | |
| VS. | § | CAMERON COUNTY, TEXAS |
| | § | |
| STATE OF TEXAS DEPARTMENT | § | |
| OF TRANSPORTATION, COUNTY | § | |
| OF CAMERON, AND A. G. HILL | § | |
| POWER, INC., NOW KNOWN AS | § | |
| JHB ENTERPRISES, INC. | § | |
| Defendants. | § | _404th_ JUDICIAL DISTRICT |

## PLAINTIFFS' ORIGINAL PETITION

**TO THE HONORABLE JUDGE OF SAID COURT:**

COMES NOW, PLAINTIFFS, CAROL LEAVELL AND RICK LEAVELL, INDIVIDUALLY AND AS REPRESENTATIVES OF THE ESTATE OF ROBIN FAYE LEAVELL, complain of STATE OF TEXAS DEPARTMENT OF TRANSPORTATION, COUNTY OF CAMERON AND A. G. HILL POWER, INC. NOW KNOWN AS JHB ENTERPRISES, INC. Defendants, and file this, their Original Petition.

### I.

### DISCOVERY LEVEL

1.1    Discovery is intended to be conducted under Discovery Control Plan Level 3 of Texas Rule of Civil Procedure 190.

### II.

### PARTIES

2.1    Plaintiff, CAROL LEAVELL AND RICK LEAVELL INDIVIDUALLY AND AS REPRESENTATIVES OF THE ESTATE OF ROBIN FAYE LEAVELL are

residents of Victoria, Victoria County, Texas.  They bring this action individually and in their own capacity; as the surviving parents of Robin Faye Leavell; as the Legal Representatives of the Estate of Robin Faye Leavell, and in all other capacities permitted by law.

2.4    Defendant, State of Texas Department of Transportation is a governmental entity which may be served with process by serving its general counsel, Mr. Richard Monroe, at 125 East 11th Street, Austin, Texas 78701-2483.

2.5    Defendant, County of Cameron, is a municipality and may be served with process by servings the County Judge, Mr. Gilberto Hinojosa, at Cameron County Courthouse, 974 E. Harrison, Brownsville, Texas 78520.

2.6    Defendant, A. G. Hill Power, Inc. now known as JHB Enterprises, Inc is a Texas corporation and may be duly served by serving its agent for service, Mr. Jack H. Bennett, at 112 Lakeshore Drive, Corpus Christi, Texas 78413.

### III.

### JURISDICTION AND VENUE

3.1    Jurisdiction and venue is proper in this Court, as the events giving rise to this suit occurred, in whole or in part, in on the land and navigable waters of Cameron County, Texas, and all or a substantial part of the events or omissions giving rise to the Plaintiffs' claims occurred in Cameron County, Texas. Plaintiffs are seeking damages within this Court's jurisdictional limits.

### IV.

### FACTUAL BACKGROUND

4.1    That on or about September 15, 2001, while in a motor vehicle being driven by Rene Mata and Robin Faye Leavell was a passenger while

2

traveling along and upon the Queen Isabella Causeway in Port Isabel, Cameron County, Texas, was severely and fatally injured.

4.2    The Queen Isabella Causeway curves, has narrow shoulders, and rises approximately 109 feet above the bay. Once drivers and passengers enter the causeway, a concrete median prevents them from turning around. At the time of this incident, a block of streetlights on the causeway's western section was not functioning. The first part of the bridge was illuminated for traffic heading toward Port Isabel, Texas, but there was no illumination at the scene of the incident.

4.3    The State of Texas alleges that it owns the causeway and its streetlight system. Cameron County assumes certain maintenance responsibilities over the causeway's streetlight system under an agreement with the Texas Department of Transportation. Correspondence between TXDOT and the County shows that maintaining the causeway's streetlights had been a problem since at least 1995. In November of that year, Kenneth Conway, a county park-system director, wrote to TXDOT's district engineer that 30 causeway streetlights were not functioning and presented a "serious safety hazard". In an April 1996 letter to TXDOT, Conway wrote that "inconsistent lighting on the causeway presents a safety hazard to the traveling public." By August 1996, over 30 streetlights had failed, and at least that many were not functioning later when this incident occurred.

4.4    At the time of the incident that gives rise to this suit, the failed block of lights at the end of the elevated and curving causeway, with narrow shoulders and limited access, suddenly plunged motorists, including Robin Faye Leavell, into darkness. The causeway entrance was illuminated; thus, the sudden

3

darkness from the block of failed lighting came upon drivers unexpectedly, a condition which was neither open nor obvious to Robin Faye Leavell. Robin Faye Leavell did not have actual knowledge of this danger. Furthermore, when Robin Faye Leavell entered the causeway, she could not see far enough ahead to know that the large block of lights on the bridge was out. Additionally, motorists traveling over the bridge had every reasonable expectation that any non-functioning lights had been repaired or replaced. Thus, the malfunctioning block of artificial lighting that the Defendants failed to maintain caused a sudden and unexpected change in driving conditions.

4.5    A cement barrier on the causeway separates the two travel lanes in each direction and prevents drivers from turning back once embarking upon the bridge. Only a relatively narrow shoulder beside the traffic lanes is available to accommodate vehicles in emergency situations. On the evening in question, the causeway was lit at the point of entry, but there was no illumination further along the causeway at the accident scene. The lighting failure was not open or obvious to motorists entering the causeway, and the entrance to the causeway is the only point at which they could choose to avoid the condition or otherwise protect themselves.

4.6    The condition of the bridge, upon failure of a large block of streetlights, caused it to be more dangerous than an ordinary road. It posed an unreasonable risk of harm, in that that there was a sufficient probability of a harmful event occurring, that the Defendants would have foreseen it, or some similar event, as likely to happen.

4.7    While Robin Faye Leavell did not actually know of the dangerous condition of the bridge, the Defendants themselves knew of the danger that the

causeway's numerous, nonfunctioning streetlights posed. Kenneth Conway, Cameron County's park-system director, described the failed lighting as a "serious public safety issue" and "a serious safety hazard". In a letter to TXDOT, Conway specifically identified the danger posed to motorists of the causeway. The general foreman a previous contractor, Red Simpson, Inc., hired to repair the lights additionally recognized the danger. He wrote in a letter that the causeway's lighting system posed an "[e]xtreme hazard".

## V.

## CAUSES OF ACTION

### A. Causes of Action Against the State of Texas Department of Transportation

5.1     Plaintiffs bring suit against the State of Texas Department of Transportation pursuant to Texas Civil Practice & Remedies Codes Section 101.022(a), as the Plaintiffs' claims arise from a premise defect, and the governmental unit owes to the Plaintiffs the same duty that a private person owes to a licensee on private property. With respect to the condition of the premises, the condition posed an unreasonable risk of harm, the Defendant had actual knowledge of the danger, the Plaintiffs did not have actual knowledge of the danger, and the Defendant failed to exercise ordinary care to protect the Robin Faye Leavell from danger, by both failing to adequately warn of the condition and failing to make that condition reasonably safe. Furthermore, the Defendant was grossly negligent with respect to the condition of the premises, the condition posed an unreasonable risk of harm, and the Defendant both failed to adequately warn Robin Faye Leavell of the danger and failed to make that condition reasonably safe. The Defendant's conduct was more than momentary

5

thoughtlessness, inadvertence, or error of judgment. In other words, the Defendant either knew of or was substantially certain that the result or a similar result would occur, or it displayed such an entire want of care as to establish that the act or omission was the result of actual conscious indifference to the rights, safety, or welfare of the person affected by it. Regardless of whether or not punitive damages can be assessed against the governmental Defendant, Defendant's grossly negligent conduct means that any alleged knowledge of the condition by the Plaintiffs will not bar recovery.

5.2     Plaintiffs bring suit against the State of Texas Department of Transportation pursuant to Texas Civil Practice & Remedies Codes Section 101.022(b) and 101.060(2) and (3), as the incident in question resulted from the absence, condition, or malfunction of warning devices, which was not corrected by the Defendant within a reasonable time after notice of the condition.

5.3     Plaintiffs bring suit against the State of Texas Department of Transportation pursuant to Texas Civil Practice & Remedies Codes Section 101.021(2) because the Plaintiffs' injuries and death were caused by the condition or use of tangible personal or real property, including defective wiring and lighting, including the bridge's navigation range lights. The failure to use new wiring and lighting constitutes a misuse of tangible personal property.

### B. Causes of Action Against County of Cameron

5.4     Plaintiffs bring suit against the County of Cameron pursuant to Texas Civil Practice & Remedies Codes Section 101.022(a), as the Plaintiffs' claims arise from a premise defect, and the governmental unit owes to the Plaintiffs the same duty that a private person owes to a licensee on private property. With respect to the condition of the premises, the condition posed an unreasonable

6

risk of harm, the Defendant had actual knowledge of the danger, the Plaintiffs did not have actual knowledge of the danger, and the Defendant failed to exercise ordinary care to protect Robin Faye Leavell from danger, by both failing to adequately warn of the condition and failing to make that condition reasonably safe. Furthermore, the Defendant was grossly negligent with respect to the condition of the premises, the condition posed an unreasonable risk of harm, and the Defendant both failed to adequately warn Robin Faye Leavell of the danger and failed to make that condition reasonably safe. The Defendant's conduct was more than momentary thoughtlessness, inadvertence, or error of judgment. In other words, the Defendant either knew of or was substantially certain that the result or a similar result would occur, or it displayed such an entire want of care as to establish that the act or omission was the result of actual conscious indifference to the rights, safety, or welfare of the person affected by it. Regardless of whether or not punitive damages can be assessed against the governmental Defendant, Defendant's grossly negligent conduct means that any alleged knowledge of the condition by the Plaintiffs will not bar recovery.

5.5     Plaintiffs bring suit against the County of Cameron pursuant to Texas Civil Practice & Remedies Codes Section 101.022(b) and 101.060(2) and (3), as the incident in question resulted from the absence, condition, or malfunction of a warning device, which was not corrected by the Defendant within a reasonable time after notice of the condition.

5.6     Plaintiffs bring suit against the County of Cameron pursuant to Texas Civil Practice & Remedies Codes Section 101.021(2) because Robin Faye Leavell's injuries and death and damages to Plaintiffs Carol Leavell and rick Leavell were caused by the condition or use of tangible personal or real

7

property, including defective wiring and lighting. The failure to use new wiring and lighting constitutes a misuse of tangible personal property.

### C. Causes of Action Against A.G. Hillpower, Inc., Now Known as JHB Enteprises, Inc.

5.7     Defendant, A. G. Hillpower, Inc. was responsible for the maintenance of the bridge. A.G. Hillpower, Inc. knew of, or should have known of, the defective wiring which caused the portion of the bridge to be dark and therefore dangerous. A.G. Hillpower, Inc. committed acts of omission and commission which, collectively and severally, constituted negligence, gross neglect, and malice, as those terms are defined under Texas Law, which negligence, gross neglect, and malice was a proximate cause of the fatal injuries to Robin Faye Leavell and damages to Carol Leavell and Rick Leavell.

## VI.

### PROXIMATE CAUSE

6.1     The acts, omissions, negligence, and gross negligence of the Defendants as alleged above proximately caused damages to Carol Leavell and Rick Leavell Individually and as Representatives of the Estate of Robin Faye Leavell in excess of this Court's minimum jurisdictional limits.

## VII.

### DAMAGES TO CAROL LEAVELL AND RICK LEAVELL, INDIVIDUALLY AND AS REPRESENTATIVES OF THE ESTATE OF ROBBIN FAYE LEAVELL

7.1     Robin Faye Leavell did not die instantaneously, but rather suffered severe and excruciating physical pain and mental anguish prior to her death. As a result, her estate is entitled to recover damages for their physical pain and

8

mental anguish, in addition to funeral and burial expenses, for which recovery is sought herein.

7.2    As a direct and proximate result of the death of their daughter, Plaintiffs Carol Leavell and Rick Leavell Individually and as Representatives of the Estate of Robin Faye Leavell have been deprived of the affection, companionship, advise, counsel, comfort, solace and services that they would, in a reasonable probability, have received from their parents during her lifetime had she survived.

7.3    Plaintiffs Carol Leavell and Rick Leavell Individually and as Representatives of the Estate of Robin Faye Leavell have suffered the loss of the parent/child relationship, extreme grief, mental anguish, and physical suffering in the past and will, in reasonable probability, continue to do so in the future as a result of the sudden and untimely death of their daughter, Robin Faye Leavell.

7.4    The Plaintiffs have been damaged in the sum of three million dollars ($3,000,000.00) subject to any limitations posed by the Texas Civil Practice & Remedies Code with regard to Defendant's State of Texas Department of Transportation ($250,000.00) and County of Cameron ($100,000.00) after any and all comparative negligence deductions, if any, are assessed.

## VIII.

### EXEMPLARY DAMAGES

8.1    Because of the gross neglect and malice of Defendant A.G. Hill Power, Inc., Defendant A.G. Hill Power, Inc. should have exemplary damages assessed against it in an amount deemed appropriate by the jury.

## IX.

## JURISDICTION

9.1    Plaintiffs' damages sought herein are in an amount far in excess of the minimum jurisdictional limits of this Court.

## X.

## PRE-JUDGMENT AND POST-JUDGMENT INTEREST

10.1    Plaintiffs seek pre-judgment and post-judgment interest as allowed by law.

## XI.

## NOTICE

11.1    Pursuant to the provisions of the Texas Tort Claims Act, Section 101.101 of the Texas Civil Practices and Remedies Code, Plaintiffs provided timely notice of their claims against the governmental Defendants. Furthermore, the governmental Defendants had actual notice of Plaintiffs' claims well within six months of the date on which the incident in question occurred.

## PRAYER

WHEREFORE, Plaintiffs request that Defendants be cited to appear and answer, and that on final trial, Plaintiffs have the following:

1. Actual damages in an amount within jurisdictional limits of this Court;

2. Exemplary damages in an amount within the jurisdictional limits of the Court;

3. Prejudgment interest allowed by law;

4. Post-judgment interest allowed by law;

5. Costs of suit; and

6. Such other and further relief, special and general, at law and in equity, to which Plaintiffs may show themselves justly entitled.

10

Respectfully submitted,

WATTS LAW FIRM, L.L.P.

_____

Mikal C. Watts
State Bar No.
Ray R. Marchan
State Bar No. 12969050

WATTS LAW FIRM, L.L.P.
1926 E. Elizabeth
Brownsville, Texas  78520
(956) 544-0500
(956) 541-0255 FAX

STEVE Q. McMANUS
Law Offices of McManus & Crane, L.L.P.
209 W. Juan Linn
P. O. Box 2206
Victoria, Texas  77902-2206

ATTORNEYS FOR PLAINTIFFS
Carol Leavell and Rick Leavell,
Individually and as Representatives of
the Estate of Robin Faye Leavell

PLAINTIFFS REQUEST TRIAL BY JURY

11

CAUSE NO. 2003-09-4619-D

| | | |
|---|---|---|
| WILLIAM EUGENE (GENE) KIMBRELL INDIVIDUALLY AND AS THE SURVIVING FATHER OF CHELSEA WELCH, DECEASED | §<br>§<br>§<br>§<br>§ | IN THE DISTRICT COURT |
| VS. | §<br>§ | CAMERON COUNTY, TEXAS |
| STATE OF TEXAS DEPARTMENT OF TRANSPORTATION, COUNTY OF CAMERON, AND A. G. HILL POWER, INC., NOW KNOWN AS JHB ENTERPRISES, INC.<br>　　　　　　Defendants. | §<br>§<br>§<br>§<br>§<br>§ | 103 JUDICIAL DISTRICT |

FILED 4:30 O'CLOCK P M
AURORA DE LA GARZA, CLERK
SEP 1 2 2003
DISTRICT COURT OF CAMERON COUNTY, TEXAS
DEPUTY

<u>PLAINTIFFS' ORIGINAL PETITION</u>

TO THE HONORABLE JUDGE OF SAID COURT:

COMES NOW, PLAINTIFFS, WILLIAM EUGENE (GENE) KIMBRELL INDIVIDUALLY AND AS THE SURVIVING FATHER OF CHELSEA WELCH, DECEASED, complain of STATE OF TEXAS DEPARTMENT OF TRANSPORTATION, COUNTY OF CAMERON AND A. G. HILL POWER, INC. NOW KNOWN AS JHB ENTERPRISES, INC. Defendants, and file this, their Original Petition.

I.

DISCOVERY LEVEL

1.1    Discovery is intended to be conducted under Discovery Control Plan Level 3 of Texas Rule of Civil Procedure 190.

II.

PARTIES

2.1    Plaintiff, WILLIAM EUGENE (GENE) KIMBRELL INDIVIDUALLY AND AS THE SURVIVING FATHER OF CHELSEA WELCH, DECEASED are

residents of Buffalo, Erie County, New York. They bring this action individually and in their own capacity; as the surviving father of CHELSEA WELCH; and in all other capacities permitted by law.

2.4    Defendant, State of Texas Department of Transportation is a governmental entity which may be served with process by serving its general counsel, Mr. Richard Monroe, at 125 East 11th Street, Austin, Texas 78701-2483.

2.5    Defendant, County of Cameron, is a municipality and may be served with process by servings the County Judge, Mr. Gilberto Hinojosa, at Cameron County Courthouse, 974 E. Harrison, Brownsville, Texas 78520.

2.6    Defendant, A. G. Hill Power, Inc. now known as JHB Enterprises, Inc is a Texas corporation and may be duly served by serving its agent for service, Mr. Jack H. Bennett, at 112 Lakeshore Drive, Corpus Christi, Texas 78413.

### III.

### JURISDICTION AND VENUE

3.1    Jurisdiction and venue is proper in this Court, as the events giving rise to this suit occurred, in whole or in part, in on the land and navigable waters of Cameron County, Texas, and all or a substantial part of the events or omissions giving rise to the Plaintiffs' claims occurred in Cameron County, Texas. Plaintiffs are seeking damages within this Court's jurisdictional limits.

### IV.

### FACTUAL BACKGROUND

4.1    That on or about September 15, 2001, while in a motor vehicle being driven by William Welch wherein Chelsea Welch was a passenger, while

2

traveling along and upon the Queen Isabella Causeway in Port Isabel, Cameron County, Texas, was severely and fatally injured.

4.2     The Queen Isabella Causeway curves, has narrow shoulders, and rises approximately 109 feet above the bay.  Once drivers and passengers enter the causeway, a concrete median prevents them from turning around.  At the time of this incident, a block of streetlights on the causeway's western section was not functioning.  The first part of the bridge was illuminated for traffic heading toward Port Isabel, Texas, but there was no illumination at the scene of the incident.

4.3     The State of Texas alleges that it owns the causeway and its streetlight system.     Cameron County assumes certain maintenance responsibilities over the causeway's streetlight system under an agreement with the Texas Department of Transportation.  Correspondence between TXDOT and the County shows that maintaining the causeway's streetlights had been a problem since at least 1995.  In November of that year, Kenneth Conway, a county park-system director, wrote to TXDOT's district engineer that 30 causeway streetlights were not functioning and presented a "serious safety hazard".  In an April 1996 letter to TXDOT, Conway wrote that "inconsistent lighting on the causeway presents a safety hazard to the traveling public." By August 1996, over 30 streetlights had failed, and at least that many were not functioning later when this incident occurred.

4.4     At the time of the incident that gives rise to this suit, the failed block of lights at the end of the elevated and curving causeway, with narrow shoulders and limited access, suddenly plunged motorists, including Chelsea Welch, into darkness.  The causeway entrance was illuminated; thus, the sudden

3

darkness from the block of failed lighting came upon drivers unexpectedly, a condition which was neither open nor obvious to Chelsea Welch. Decedent Chelsea Welch did not have actual knowledge of this danger. Furthermore, when Chelsea Welch entered the causeway, they could not see far enough ahead to know that the large block of lights on the bridge was out. Additionally, motorists traveling over the bridge had every reasonable expectation that any non-functioning lights had been repaired or replaced. Thus, the malfunctioning block of artificial lighting that the Defendants failed to maintain caused a sudden and unexpected change in driving conditions.

4.5     A cement barrier on the causeway separates the two travel lanes in each direction and prevents drivers from turning back once embarking upon the bridge. Only a relatively narrow shoulder beside the traffic lanes is available to accommodate vehicles in emergency situations. On the evening in question, the causeway was lit at the point of entry, but there was no illumination further along the causeway at the accident scene. The lighting failure was not open or obvious to motorists entering the causeway, and the entrance to the causeway is the only point at which they could choose to avoid the condition or otherwise protect themselves.

4.6     The condition of the bridge, upon failure of a large block of streetlights, caused it to be more dangerous than an ordinary road. It posed an unreasonable risk of harm, in that that there was a sufficient probability of a harmful event occurring, that the Defendants would have foreseen it, or some similar event, as likely to happen.

4.7     While Decedent Chelsea Welch did not actually know of the dangerous condition of the bridge, the Defendants themselves knew of the

4

danger that the causeway's numerous, nonfunctioning streetlights posed. Kenneth Conway, Cameron County's park-system director, described the failed lighting as a "serious public safety issue" and "a serious safety hazard". In a letter to TXDOT, Conway specifically identified the danger posed to motorists of the causeway. The general foreman a previous contractor, Red Simpson, Inc., hired to repair the lights additionally recognized the danger. He wrote in a letter that the causeway's lighting system posed an "[e]xtreme hazard".

## V.

## CAUSES OF ACTION

### A. Causes of Action Against the State of Texas Department of Transportation

5.1    Plaintiffs bring suit against the State of Texas Department of Transportation pursuant to Texas Civil Practice & Remedies Codes Section 101.022(a), as the Plaintiffs' claims arise from a premise defect, and the governmental unit owes to the Plaintiffs the same duty that a private person owes to a licensee on private property. With respect to the condition of the premises, the condition posed an unreasonable risk of harm, the Defendant had actual knowledge of the danger, the Plaintiffs did not have actual knowledge of the danger, and the Defendant failed to exercise ordinary care to protect the Chelsea Welch from danger, by both failing to adequately warn of the condition and failing to make that condition reasonably safe. Furthermore, the Defendant was grossly negligent with respect to the condition of the premises, the condition posed an unreasonable risk of harm, and the Defendant both failed to adequately warn Chelsea Welch of the danger and failed to make that condition reasonably safe. The Defendant's conduct was more than momentary

5

thoughtlessness, inadvertence, or error of judgment. In other words, the Defendant either knew of or was substantially certain that the result or a similar result would occur, or it displayed such an entire want of care as to establish that the act or omission was the result of actual conscious indifference to the rights, safety, or welfare of the person affected by it. Regardless of whether or not punitive damages can be assessed against the governmental Defendant, Defendant's grossly negligent conduct means that any alleged knowledge of the condition by the Plaintiffs will not bar recovery.

5.2     Plaintiffs bring suit against the State of Texas Department of Transportation pursuant to Texas Civil Practice & Remedies Codes Section 101.022(b) and 101.060(2) and (3), as the incident in question resulted from the absence, condition, or malfunction of warning devices, which was not corrected by the Defendant within a reasonable time after notice of the condition.

5.3     Plaintiffs bring suit against the State of Texas Department of Transportation pursuant to Texas Civil Practice & Remedies Codes Section 101.021(2) because the Plaintiffs' injuries and death were caused by the condition or use of tangible personal or real property, including defective wiring and lighting, including the bridge's navigation range lights. The failure to use new wiring and lighting constitutes a misuse of tangible personal property.

### B. Causes of Action Against County of Cameron

5.4     Plaintiffs bring suit against the County of Cameron pursuant to Texas Civil Practice & Remedies Codes Section 101.022(a), as the Plaintiffs' claims arise from a premise defect, and the governmental unit owes to the Plaintiffs the same duty that a private person owes to a licensee on private property. With respect to the condition of the premises, the condition posed an unreasonable

6

risk of harm, the Defendant had actual knowledge of the danger, the Plaintiffs did not have actual knowledge of the danger, and the Defendant failed to exercise ordinary care to protect Chelsea Welch from danger, by both failing to adequately warn of the condition and failing to make that condition reasonably safe. Furthermore, the Defendant was grossly negligent with respect to the condition of the premises, the condition posed an unreasonable risk of harm, and the Defendant both failed to adequately warn Chelsea Welch of the danger and failed to make that condition reasonably safe. The Defendant's conduct was more than momentary thoughtlessness, inadvertence, or error of judgment. In other words, the Defendant either knew of or was substantially certain that the result or a similar result would occur, or it displayed such an entire want of care as to establish that the act or omission was the result of actual conscious indifference to the rights, safety, or welfare of the person affected by it. Regardless of whether or not punitive damages can be assessed against the governmental Defendant, Defendant's grossly negligent conduct means that any alleged knowledge of the condition by the Plaintiffs will not bar recovery.

     5.5    Plaintiffs bring suit against the County of Cameron pursuant to Texas Civil Practice & Remedies Codes Section 101.022(b) and 101.060(2) and (3), as the incident in question resulted from the absence, condition, or malfunction of a warning device, which was not corrected by the Defendant within a reasonable time after notice of the condition.

     5.6    Plaintiffs bring suit against the County of Cameron pursuant to Texas Civil Practice & Remedies Codes Section 101.021(2) because Chelsea Welch's injuries and death and damages to Plaintiffs WILLIAM EUGENE (GENE) KIMBRELL INDIVIDUALLY AND AS THE SURVIVING FATHER OF CHELSEA

WELCH, DECEASED were caused by the condition or use of tangible personal or real property, including defective wiring and lighting. The failure to use new wiring and lighting constitutes a misuse of tangible personal property.

### C. Causes of Action Against A.G. Hillpower, Inc., Now Known as JHB Enteprises, Inc.

5.7    Defendant, A. G. Hillpower, Inc. was responsible for the maintenance of the bridge. A.G. Hillpower, Inc. knew of, or should have known of, the defective wiring which caused the portion of the bridge to be dark and therefore dangerous. A.G. Hillpower, Inc. committed acts of omission and commission which, collectively and severally, constituted negligence, gross neglect, and malice, as those terms are defined under Texas Law, which negligence, gross neglect, and malice was a proximate cause of the fatal injuries to Chelsea Welch and damages to William William (Gene) Kimbrell.

### VI.

### PROXIMATE CAUSE

6.1    The acts, omissions, negligence, and gross negligence of the Defendants as alleged above proximately caused damages to WILLIAM EUGENE (GENE) KIMBRELL INDIVIDUALLY AND AS THE SURVIVING FATHER OF CHELSEA WELCH, DECEASED in excess of this Court's minimum jurisdictional limits.

## VII.

### DAMAGES TO WILLIAM EUGENE (GENE) KIMBRELL INDIVIDUALLY AND AS THE SURVIVING FATHER OF CHELSEA WELCH, DECEASED

7.1     Chelsea Welch did not die instantaneously, but rather suffered severe and excruciating physical pain and mental anguish prior to her death.  As a result, her estate is entitled to recover damages for their physical pain and mental anguish, in addition to funeral and burial expenses, for which recovery is sought herein.

7.2     As a direct and proximate result of the death of his son, Plaintiff WILLIAM EUGENE (GENE) KIMBRELL INDIVIDUALLY AND AS THE SURVIVING FATHER OF CHELSEA WELCH, DECEASED have been deprived of the affection, companionship, advise, counsel, comfort, solace and services that they would, in a reasonable probability, have received from her daughter during her lifetime had she survived.

7.3     Plaintiffs WILLIAM EUGENE (GENE) KIMBRELL INDIVIDUALLY AND AS THE SURVIVING FATHER OF CHELSEA WELCH, DECEASED have suffered the loss of the parent/child relationship, extreme grief, mental anguish, and physical suffering in the past and will, in reasonable probability, continue to do so in the future as a result of the sudden and untimely death of his daughter, Chelsea Welch.

7.4     The Plaintiffs have been damaged in the sum of three million dollars ($3,000,000.00) subject to any limitations posed by the Texas Civil Practice & Remedies Code with regard to Defendant's State of Texas Department of Transportation ($250,000.00) and County of Cameron ($300,000.00) after any and all comparative negligence deductions, if any, are assessed.

9

## VIII.

## EXEMPLARY DAMAGES

8.1    Because of the gross neglect and malice of Defendant A.G. Hill Power, Inc., Defendant A.G. Hill Power, Inc. should have exemplary damages assessed against it in an amount deemed appropriate by the jury.

## IX.

## JURISDICTION

9.1    Plaintiffs' damages sought herein are in an amount far in excess of the minimum jurisdictional limits of this Court.

## X.

## PRE-JUDGMENT AND POST-JUDGMENT INTEREST

10.1    Plaintiffs seek pre-judgment and post-judgment interest as allowed by law.

## XI.

## NOTICE

11.1    Pursuant to the provisions of the Texas Tort Claims Act, Section 101.101 of the Texas Civil Practices and Remedies Code, Plaintiffs provided timely notice of their claims against the governmental Defendants. Furthermore, the governmental Defendants had actual notice of Plaintiffs' claims well within six months of the date on which the incident in question occurred.

## PRAYER

WHEREFORE, Plaintiffs request that Defendants be cited to appear and answer, and that on final trial, Plaintiffs have the following:

1.  Actual damages in an amount within jurisdictional limits of this Court;

2. Exemplary damages in an amount within the jurisdictional limits of the Court;

3. Prejudgment interest allowed by law;

4. Post-judgment interest allowed by law;

5. Costs of suit; and

6. Such other and further relief, special and general, at law and in equity, to which Plaintiffs may show themselves justly entitled.

Respectfully submitted,

WATTS LAW FIRM, L.L.P.

Mikal C. Watts
State Bar No.
Ray R. Marchan
State Bar No. 12969050

WATTS LAW FIRM, L.L.P.
1926 E. Elizabeth
Brownsville, Texas  78520
(956) 544-0500
(956) 541-0255 FAX

**AND**

**Richard  Leo  Harrell**
**The  Edwards  Law  Firm,  L.L.P.**
**P. O.  Box  480**
**Frost  Bank  Plaza**
**Suite  2100**
**Corpus  Christi,  Texas    78403-0480**
**(361)    698-7600**
**  (361)  698-7615    FAX**

ATTORNEYS FOR PLAINTIFFS
WILLIAM EUGENE (GENE) KIMBRELL
INDIVIDUALLY AND AS THE
SURVIVING FATHER OF CHELSEA
WELCH

**PLAINTIFFS REQUEST TRIAL BY JURY**

11