United States District Court
Southern District of Texas
FILED

MAY 0 6 2004

Michael N. Milby
Clerk of Court

250

## IN THE UNITED STATES DISTRICT COURT
## FOR THE SOUTHERN DISTRICT OF TEXAS
## BROWNSVILLE DIVISION

| | | |
|---|---|---|
| IN RE THE COMPLAINT AND | * | C.A. No. B-01-157 |
| PETITION OF BROWN WATER | * | |
| TOWING I, INC., AS OWNER, AND | * | |
| BROWN WATER MARINE SERVICE, | * | |
| OF THE BROWN WATER V, ITS | * | |
| ENGINES, TACKLE, *ETC.* IN A | * | |
| CAUSE OF EXONERATION FROM | * | Consolidated with |
| OR LIMITATION OF LIABILITY | * | |
| | | |
| IN RE THE COMPLAINT AND | * | C.A. No. B-02-004 |
| PETITION OF AMERICAN | * | |
| COMMERCIAL LINES LLC AS | * | |
| OWNER, and AMERICAN | * | |
| COMMERCIAL BARGE LINES, LLC, | * | |
| AS CHARTERER OF THE BARGES | * | |
| NM-315, VLB-9182, ACL-9933B, and | * | |
| VLB-9173, IN A CAUSE OF | * | |
| EXONERATION FROM OR | * | |
| LIMITATION OF LIABILITY | * | and |
| | | |
| IN RE THE COMPLAINT AND | * | C.A. No. B-02-125 |
| PETITION OF DEERE CREDIT, INC. | * | |
| (FORMERLY SENSTAR FINANCE | * | |
| COMPANY), AS OWNER OF THE | * | |
| BARGE NM-315, and STATE STREET | * | |
| BANK AND TRUST COMPANY OF | * | |
| CONNECTICUT, NATIONAL ASS'N, | * | |
| AS OWNER TRUSTEE OF THE | * | |
| BARGE ACL-9933B and NOT IN ITS | * | |
| INDIVIDUAL CAPACITY, and | * | |
| GENERAL ELECTRIC CAPITAL | * | |
| CORPORATION, AS BENEFICIAL | * | |
| OWNER OF THE BARGE ACL-9933B, | * | |
| PRAYING FOR EXONERATION FROM | * | |
| AND/OR LIMITATION OF LIABILITY | * | |

## MOTION AND INCORPORATED MEMORANDUM FOR LEAVE TO FILE SECOND SUPPLEMENTAL REPLY BRIEF IN SUPPORT OF THE STATE OF TEXAS' MOTION TO DISMISS ON THE BASIS OF SOVEREIGN IMMUNITY AND THE ELEVENTH AMENDMENT

COMES NOW the State of Texas (the "State") and respectfully moves this Honorable Court for leave to file the attached "Second Supplemental Reply Brief in Support of the State of Texas' Motion to Dismiss on the Basis of Sovereign Immunity and the Eleventh Amendment" (hereinafter referred to as the "Second Supplemental Reply Brief"). The State seeks leave to file the Second Supplemental Reply Brief for the reasons set forth below.

## MEMORANDUM IN SUPPORT OF MOTION FOR LEAVE TO FILE SECOND SUPPLEMENTAL REPLY BRIEF

1.    The State's motion to dismiss based on sovereign immunity and the Eleventh Amendment (Rec. Doc. No. 216) is currently pending before this Honorable Court.

2.    The State, Brown Water[1] and ACBL[2] have each filed supplemental briefs addressing the sovereign immunity decision handed down by the United States District Court for the Eastern District of Oklahoma in the I-40 Bridge allision case. That decision is reported as *Magnolia Marine Transport Company, Limitation Proceedings, M/V ROBERT Y. LOVE,* 2003 A.M.C. 2419 (E.D. Ok. 2003).

3.    In its supplemental brief filed on April 5, 2004, the State pointed out that the State of Oklahoma had appealed the *Magnolia Marine* case to the United States Court of Appeals for the Tenth Circuit.

---

[1]  "Brown Water" refers collectively to Brown Water Towing I, Inc., the owner of the BROWN WATER V, and Brown Water Marine Services, Inc., the operator of that vessel. Brown Water is the limitation petitioner in C.A. No. B-01-157.

[2]  "ACBL" refers collectively to American Commercial Lines, LLC, American Commercial Barge Line LLC, Deere Credit, Inc. (formerly Senstar Finance Company), State Street Bank and Trust Company of Connecticut, National Association, and General Electric Corporation, each of which is alleged to have an interest as the owner or charterer of one or more of the barges that comprised the tow of the BROWN WATER V at the time of the Queen Isabella Causeway allision. The two American Commercial entities are limitation petitioners in C.A. No. B-02-004. The other entities are limitation petitioner in C.A. No. B-02-125.

4.    On the afternoon of May 3, 2004, the Tenth Circuit issued an opinion in the *Magnolia Marine* case, affirming the district court's decision.  Obviously, the Tenth Circuit opinion is not yet final and there is a good chance that the State of Oklahoma will seek further review by the *en banc* Tenth Circuit and/or by the United States Supreme Court.  Nevertheless, the State of Texas requests leave of court to file the attached Second Supplemental Reply Brief, which serves to provide this Court with a copy of the Tenth Circuit opinion, along with the State's analysis of that opinion.

WHEREFORE, the State of Texas respectfully moves this Honorable Court for leave to file the attached "Second Supplemental Reply Brief in Support of the State of Texas' Motion to Dismiss on the Basis of Sovereign Immunity and the Eleventh Amendment."

Respectfully submitted,

GREG ABBOTT
Attorney General of Texas

BARRY McBEE
First Assistant Attorney General

JEFFREY S. BOYD
Deputy Attorney General for Litigation

GRADY CLICK
Assistant Attorney General
Chief, Transportation Division

*by permission*

JACK F. GILBERT
Assistant Attorney General
Attorney-in-Charge
Texas Bar No. 00786946
Federal Bar No. 16701

3

And Assistant Attorneys General

MICHAEL RATLIFF
Texas Bar No. 16564300
MARGIE MANZANO CORBETT
Texas Bar No. 24001927
Federal Bar No. 22121
Office of the Attorney General
Transportation Division
P.O. Box 12548
Austin, TX  78711-2548
Phone:  512.463.2004
Fax:      512.472.3855

AND, OF COUNSEL,
ADAMS AND REESE LLP

DARYL G. DURSUM
Texas Bar No. 06287900
Federal Bar No. 6198
4400 One Houston Center
1221 McKinney
Houston, TX  77010
Phone: 713.652.5151
Fax:    713.652-5152

MARK J. SPANSEL (La. Bar No. 12314)
EDWIN C. LAIZER, APLC (La. Bar No 17014)
4500 One Shell Square
New Orleans, LA  70139
Phone: 504.581.3234
Fax:    504.566.0210
*Attorneys for the State Of Texas*

## CERTIFICATE OF SERVICE

I hereby certify that a copy of the foregoing pleading has been served on all counsel of record by placing same in the United States mail, postage prepaid and properly addressed, this *5th* day of May 2004.

4

IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF TEXAS
BROWNSVILLE DIVISION

| | | |
|---|---|---|
| IN RE THE COMPLAINT AND | * | C.A. No. B-01-157 |
| PETITION OF BROWN WATER | * | |
| TOWING I, INC., AS OWNER, AND | * | |
| BROWN WATER MARINE SERVICE, | * | |
| OF THE BROWN WATER V, ITS | * | |
| ENGINES, TACKLE, *ETC.* IN A | * | |
| CAUSE OF EXONERATION FROM | * | Consolidated with |
| OR LIMITATION OF LIABILITY | * | |
| | | |
| IN RE THE COMPLAINT AND | * | C.A. No. B-02-004 |
| PETITION OF AMERICAN | * | |
| COMMERCIAL LINES LLC AS | * | |
| OWNER, and AMERICAN | * | |
| COMMERCIAL BARGE LINES, LLC, | * | |
| AS CHARTERER OF THE BARGES | * | |
| NM-315, VLB-9182, ACL-9933B, and | * | |
| VLB-9173, IN A CAUSE OF | * | |
| EXONERATION FROM OR | * | |
| LIMITATION OF LIABILITY | * | and |
| | | |
| IN RE THE COMPLAINT AND | * | C.A. No. B-02-125 |
| PETITION OF DEERE CREDIT, INC. | * | |
| (FORMERLY SENSTAR FINANCE | * | |
| COMPANY), AS OWNER OF THE | * | |
| BARGE NM-315, and STATE STREET | * | |
| BANK AND TRUST COMPANY OF | * | |
| CONNECTICUT, NATIONAL ASS'N, | * | |
| AS OWNER TRUSTEE OF THE | * | |
| BARGE ACL-9933B and NOT IN ITS | * | |
| INDIVIDUAL CAPACITY, and | * | |
| GENERAL ELECTRIC CAPITAL | * | |
| CORPORATION, AS BENEFICIAL | * | |
| OWNER OF THE BARGE ACL-9933B, | * | |
| PRAYING FOR EXONERATION FROM | * | |
| AND/OR LIMITATION OF LIABILITY | * | |

1

## ORDER

The Court having duly considered the "Motion and Incorporated Memorandum for Leave to File Second Supplemental Reply Brief in Support of the State of Texas' Motion to Dismiss on the Basis of Sovereign Immunity and the Eleventh Amendment;"

**IT IS ORDERED** that the same is hereby **GRANTED**. The "Second Supplemental Reply Brief in Support of the State of Texas' Motion to Dismiss on the Basis of Sovereign Immunity and the Eleventh Amendment" is hereby **ACCEPTED** and **FILED** into the record of this matter.

Thus done and signed at Brownsville, Texas this ___ day of _____ 2004.

_____

**HON. HILDA G. TAGLE**
**UNITED STATES DISTRICT JUDGE**

IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF TEXAS
BROWNSVILLE DIVISION

| | | |
|---|---|---|
| IN RE THE COMPLAINT AND | * | C.A. No. B-01-157 |
| PETITION OF BROWN WATER | * | |
| TOWING I, INC., AS OWNER, AND | * | |
| BROWN WATER MARINE SERVICE, | * | |
| OF THE BROWN WATER V, ITS | * | |
| ENGINES, TACKLE, *ETC.* IN A | * | |
| CAUSE OF EXONERATION FROM | * | Consolidated with |
| OR LIMITATION OF LIABILITY | * | |
| | | |
| IN RE THE COMPLAINT AND | * | C.A. No. B-02-004 |
| PETITION OF AMERICAN | * | |
| COMMERCIAL LINES LLC AS | * | |
| OWNER, and AMERICAN | * | |
| COMMERCIAL BARGE LINES, LLC, | * | |
| AS CHARTERER OF THE BARGES | * | |
| NM-315, VLB-9182, ACL-9933B, and | * | |
| VLB-9173, IN A CAUSE OF | * | |
| EXONERATION FROM OR | * | |
| LIMITATION OF LIABILITY | * | and |
| | | |
| IN RE THE COMPLAINT AND | * | C.A. No. B-02-125 |
| PETITION OF DEERE CREDIT, INC. | * | |
| (FORMERLY SENSTAR FINANCE | * | |
| COMPANY), AS OWNER OF THE | * | |
| BARGE NM-315, and STATE STREET | * | |
| BANK AND TRUST COMPANY OF | * | |
| CONNECTICUT, NATIONAL ASS'N, | * | |
| AS OWNER TRUSTEE OF THE | * | |
| BARGE ACL-9933B and NOT IN ITS | * | |
| INDIVIDUAL CAPACITY, and | * | |
| GENERAL ELECTRIC CAPITAL | * | |
| CORPORATION, AS BENEFICIAL | * | |
| OWNER OF THE BARGE ACL-9933B, | * | |
| PRAYING FOR EXONERATION FROM | * | |
| AND/OR LIMITATION OF LIABILITY | * | |

**SECOND SUPPLEMENTAL REPLY BRIEF IN SUPPORT OF THE STATE OF
TEXAS' MOTION TO DISMISS ON THE BASIS OF SOVEREIGN IMMUNITY
AND THE ELEVENTH AMENDMENT**

COMES NOW the State of Texas (the "State") and files this Second Supplemental Reply Brief in support of its Motion to Dismiss on the Basis of Sovereign Immunity and the Eleventh Amendment.

## SECOND SUPPLEMENTAL REPLY BRIEF

On December 18, 2002, the State filed its motion to dismiss based on sovereign immunity and the Eleventh Amendment (Rec. Doc. No. 216). The State's motion presents two issues for decision. The primary issue is whether the constitutional grant of sovereign immunity prohibits application of the Limitation of Shipowner's Liability Act of 1851 (the "Limitation Act")[1] against the State. The secondary issue is whether the counterclaims/cross-claims that have been filed against the State by limitation petitioners Brown Water[2] and ACBL[3] violate the State's sovereign immunity.

The State, Brown Water and ACBL have all filed briefs discussing the sovereign immunity decision rendered by the United States District Court for the Eastern District of Oklahoma in the Interstate 40 Bridge allision case. That decision is reported as *Magnolia Marine Transport Company, Limitation Proceedings, M/V ROBERT Y. LOVE,* 2003 A.M.C. 2419 (E.D. Ok. 2003). In its Supplemental Reply Brief filed April 5, 2004, the State of Texas provided a detailed discussion of the *Magnolia Marine* case, explained

---

[1] 46 U.S.C. §§ 181, *et seq.*
[2] "Brown Water" refers collectively to Brown Water Towing I, Inc., the owner of the BROWN WATER V, and Brown Water Marine Services, Inc., the operator of that vessel. Brown Water is the limitation petitioner in C.A. No. B-01-157.
[3] "ACBL" refers collectively to American Commercial Lines, LLC, American Commercial Barge Line LLC, Deere Credit, Inc. (formerly Senstar Finance Company), State Street Bank and Trust Company of Connecticut, National Association, and General Electric Corporation, each of which is alleged to have an interest as the owner or charterer of one or more of the barges that comprised the tow of the BROWN WATER V at the time of the Queen Isabella Causeway allision. The two American Commercial entities are limitation petitioners in C.A. No. B-02-004. The other entities are limitation petitioner in C.A. No. B-02-125.

why its analysis was flawed, and pointed out that the State of Oklahoma had appealed the district court decision to the United States Court of Appeals for the Tenth Circuit.

On the afternoon of May 3, 2004, the Tenth Circuit issued an opinion in the *Magnolia Marine* case, affirming the district court's decision. The decision, of course, is not yet final and there is a good chance that the State of Oklahoma will seek further review by the *en banc* Tenth Circuit and/or by the United States Supreme Court. Nevertheless, the State of Texas files this Second Supplemental Reply Brief in order to provide this Court with a copy of the Tenth Circuit opinion, along with the State's analysis of that opinion.

### The Tenth Circuit's *Magnolia Marine* Decision

A copy of the Tenth Circuit's decision in *Magnolia Marine* is attached. A review of the decision will show that the Tenth Circuit relies primarily on two grounds in affirming the district court's decision. First, the Tenth Circuit finds that a limitation action is not a suit "against" the state under the Eleventh Amendment and refuses to extend the protection of sovereign immunity beyond the Amendment's literal wording. Second, the Tenth Circuit finds that a limitation action is more analogous to a bankruptcy proceeding than to an interpleader action, and therefore finds *Cory v. White*, 457 U.S. 85 (1982) not to be controlling. The State of Texas respectfully submits that the Tenth Circuit misses the mark on both of these points.

As for whether a limitation action is a "suit against a state," the Tenth Circuit's opinion elevates form over substance. In support of its conclusion, the Tenth Circuit reasons that a limitation proceeding lacks the traditional characteristics of a "suit against a state" because Oklahoma is suing Magnolia for damages, because Magnolia neither

3

named Oklahoma as a defendant nor served process upon the state, and because the limitation action merely provides a forum for establishing the right to limitation and managing disbursement of the fund to claimants who prove the vessel owner's liability. But in fact, while the limitation action does not seek damages against Oklahoma, it does seek affirmative relief against the state- namely an injunction to forbid the State of Oklahoma from pursing its action against Magnolia in the state's own courts, as well as a declaration that Magnolia is entitled to exoneration from liability to the state. While Oklahoma was not named as a defendant, the state was clearly a target of the limitation action, as it was clear from the moment the accident occurred that the State of Oklahoma, as owner of the I-40 Bridge, would be the largest single claimant in the case. And while the State of Oklahoma was not served with formal process, it received notice of the action under the procedures governing limitation proceedings, and had no choice but to appear in the federal limitation action or be defaulted. All of these points apply equally to the State of Texas in the instant case and demonstrate that in substance, if not in name, a limitation action is a suit "against a state."

The Tenth Circuit's observation that a limitation action is merely a mechanism to manage disbursement of a fund is also inaccurate. In most limitation actions, including the *Magnolia Marine* case and the instant case, the vessel owner does not admit liability, but, on the contrary, seeks exoneration. Thus, the action includes an effort by the vessel owner to avoid liability entirely, so that the issues to be tried in federal court extend beyond mere distribution of the fund to the much more basic question of whether anything is owed at all. Moreover, even if the suit were only to disburse a fund that is admittedly owed, it would be no different from a federal interpleader action, which the

Supreme Court has held in *Cory v. White* is a "suit against a state" for sovereign immunity purposes.

After erroneously concluding that a limitation action is not a suit "against a state," the Tenth Circuit briefly considers the question of whether sovereign immunity goes beyond the literal text of the Eleventh Amendment. But again, the Tenth Circuit's opinion misses the mark. While acknowledging that the Supreme Court has extended the protections of state sovereign immunity beyond the text of the Eleventh Amendment, the Tenth Circuit reasons that all of the cases in which the Supreme Court has done so involved suits against states, and extended the protection to cover parties or *fora* not mentioned in the text of the Amendment. The Tenth Circuit then notes that Oklahoma did not cite to any cases "... in which the Supreme Court has extended Eleventh Amendment immunity beyond suits against a state, and we decline to do so in this case." *Magnolia* at p. 10. Of course, that is only because the Supreme Court has not been presented with such a case. Moreover, the Tenth Circuit's reasoning on this point is faulty, for by the same token, one could argue that sovereign immunity must apply beyond suits "against a state" because Magnolia did not cite any case in which the Supreme Court has held that it does not. And the Tenth Circuit's analysis is circular because in effect, while agreeing that sovereign immunity extends beyond the text of the Eleventh Amendment, the Tenth Circuit refuses to look beyond the Amendment's text.

As the State of Texas has pointed out in its briefs on the instant motion, dependence on the literal wording of the Eleventh Amendment is contrary to the history of the Constitution and to the teachings of the United States Supreme Court, which has gone to great lengths to explain that sovereign immunity extends beyond the text of the

Amendment. Regardless of whether this is a suit "against a state," the real question, for constitutional purposes, is whether, when applied against a state, the Limitation Act impermissibly intrudes on the state's sovereignty. The answer is "yes," because when the Limitation Act is applied to a state, the result is that the state is enjoined from proceeding in its own courts and is forced to litigate against its will in federal court under penalty of default. Because a limitation action intrudes on state sovereignty, it cannot be constitutionally applied to the states.

The Tenth Circuit's analogy between the Limitation Act and a bankruptcy proceeding is likewise flawed. The Bankruptcy Act specifically abrogates state sovereign immunity, while the Limitation Act does not. This is a critical distinction in the constitutional analysis, but is never even mentioned by the Tenth Circuit.

The proper analogy is between the Limitation Act and a federal interpleader action, as in neither instance has state sovereign immunity been abrogated by Congress. In both instances, the state is enjoined from proceeding in its own courts and forced into federal court against its will and on penalty of default. The Supreme Court found in *Cory v. White* that sovereign immunity forbids forcing a state to pursue its claims in a federal court interpleader action. The same should be true of a limitation action.

In short, the State of Texas respectfully submits that the Tenth Circuit's opinion in *Magnolia Marine* reaches the wrong result. Because the Limitation Act has effects that impermissibly intrude on the sovereignty of the State, the Constitution forbids its application against the State of Texas in this case.

6

### The *Magnolia Marine* Case Does Not Involve any Counterclaims or Cross-Claims

As noted above, there are two issues presented by the State of Texas' motion to dismiss in this case. The first is the question of whether sovereign immunity bars application of the Limitation Act against the State. The second is whether the counterclaims/cross-claims that have been filed against the State by Brown Water and ACBL violate the State's sovereign immunity. While the Tenth Circuit's opinion in *Magnolia Marine* does address the first question, albeit incorrectly, it does not address the second question at all, for in the *Magnolia Marine* case, the petitioner-in-limitation never attempted to file any counterclaims or cross-claims against the State of Oklahoma. As the State of Texas pointed out in its original brief (Rec. Doc. No. 216 at pages 21-22) and in its reply brief (Rec. Doc. No. 222 at pages 11-16), the cross-claims and counterclaims filed by Brown Water and ACBL against the State in this case clearly violate the State's sovereign immunity and must be dismissed.

### CONCLUSION

The State of Texas' motion to dismiss presents issues of great constitutional significance. The proper constitutional analysis requires use of a two-prong test for determining the applicability of a federal statute to a state: a federal statute cannot be constitutionally applied against a state unless either the statute was clearly intended to abrogate the states' sovereign immunity or the state has waived its sovereign immunity by consenting to suit. Because of its erroneous conclusion that a limitation action is not a suit "against a state," the Tenth Circuit never applied this test in *Magnolia Marine*. When the test is properly applied to the Limitation Act, it is clear that there has been no abrogation and no waiver, which means that application of the Limitation Act against the

State violates the State's sovereign immunity. This is particularly true considering the many respects, as outlined in the State's original and reply briefs, in which applying the Limitation Act is an affront to the State's sovereign dignity. The Limitation Act cannot be constitutionally applied against the State of Texas. The State's motion to dismiss should be granted in its entirety.

Respectfully submitted,

GREG ABBOTT
Attorney General of Texas

BARRY McBEE
First Assistant Attorney General

JEFFREY S. BOYD
Deputy Attorney General for Litigation

GRADY CLICK
Assistant Attorney General
Chief, Transportation Division

_by permission_

JACK F. GILBERT
Assistant Attorney General
Attorney-in-Charge
Texas Bar No. 00786946
Federal Bar No. 16701

And Assistant Attorneys General

MICHAEL RATLIFF
Texas Bar No. 16564300
MARGIE MANZANO CORBETT
Texas Bar No. 24001927
Federal Bar No. 22121
Office of the Attorney General
Transportation Division
P.O. Box 12548
Austin, TX 78711-2548
Phone: 512.463.2004
Fax:    512.472.3855

AND, OF COUNSEL,
ADAMS AND REESE LLP

DARYL G. DURSUM
Texas Bar No. 06287900
Federal Bar No. 6198
4400 One Houston Center
1221 McKinney
Houston, TX  77010
Phone: 713.652.5151
Fax:   713.652-5152

MARK J. SPANSEL (La. Bar No. 12314)
EDWIN C. LAIZER, APLC (La. Bar No 17014)
4500 One Shell Square
New Orleans, LA  70139
Phone: 504.581.3234
Fax:   504.566.0210
*Attorneys for the State Of Texas*

## CERTIFICATE OF SERVICE

I hereby certify that a copy of the foregoing pleading has been served on all counsel of record by placing same in the United States mail, postage prepaid and properly addressed, this 5/6 day of May 2004.

9

**F I L E D**
United States Court of Appeals
Tenth Circuit

**MAY 3 2004**

**PUBLISH**

**PATRICK FISHER**
Clerk

**UNITED STATES COURT OF APPEALS**
**TENTH CIRCUIT**

---

MAGNOLIA MARINE TRANSPORT COMPANY,
as owner of the Robert Y. Love, its Engines,
Tackle, etc., in a cause of exoneration from or
limitation of liability,

        Petitioner-Appellee,

No. 03-7023

---

STATE OF OKLAHOMA,

        Movant-Appellant.

---

**Appeal from the United States District Court**
**for the Eastern District of Oklahoma**
**(D.C. No. 02-CV-615-P)**

---

Greg S. Eldridge, Assistant Attorney General (E. Clyde Kirk, Assistant Attorney
General, with him on the briefs), Litigation Section, State of Oklahoma, for
Movant-Appellant.

Michael Burrage of Burrage Law Firm, Durant, Oklahoma (Sean Burrage of
Taylor, Burrage, Foster, Mallett, Downs & Ramsey, Claremore, Oklahoma, with
him on the brief), for Petitioner-Appellee.

---

Before **SEYMOUR, McKAY**, and **O'BRIEN**, Circuit Judges.

---

**SEYMOUR**, Circuit Judge.

This appeal arises out of a tragic accident in which a tugboat owned by Magnolia Marine Transport Company (Magnolia) collided with the Interstate 40 bridge over the Arkansas River near Webbers Falls, Oklahoma. Magnolia filed a petition in district court in Mississippi for limitation of liability under admiralty law. Meanwhile, the State of Oklahoma filed a suit for damages against Magnolia in Oklahoma state court, which Magnolia removed to federal district court. Thereafter, the Mississippi district court transferred Magnolia's limitation petition to the federal court in Oklahoma. The State filed a motion to dismiss the limitation petition on Eleventh Amendment grounds, which the district court denied. An order denying a motion to dismiss on the basis of state sovereign immunity is immediately appealable under the collateral order doctrine. *P.R. Aqueduct & Sewer Auth. v. Metcalf & Eddy, Inc.*, 506 U.S. 139, 146-47 (1993); *Innes v. Kan. State Univ. (In re Innes)*, 184 F.3d 1275, 1277 (10th Cir. 1999). The State appeals, and we affirm.

I.

On May 26, 2002, the "M/V ROBERT Y. LOVE," a tugboat owned and operated by Magnolia and piloted by Captain William Joe Dedmon, was pushing two empty barges up the Arkansas River in Oklahoma. As the tugboat neared the Interstate 40 bridge, Captain Dedmon suffered a form of cardiac arrhythmia that

caused him to lose consciousness for several minutes. While Captain Dedmon was unconscious, the tugboat pushed the barges into the bridge, causing the bridge to collapse into the river. Several vehicles plunged off the damaged overpass. Fourteen people died and five suffered injuries. The subsequent search and rescue, repair, loss of use, and clean-up costs required the State of Oklahoma to expend more than fifty-eight million dollars.

One week after the accident, Magnolia filed a petition in federal district court in Mississippi invoking the procedures of the Limitation of Shipowners' Liability Act, 46 U.S.C. §§ 181-189. The next day, the State filed suit for damages in Oklahoma State court. After removal of the State's suit and transfer of Magnolia's limitation petition, the parties' legal actions were consolidated in federal district court in Oklahoma. Positing "that under the United States Constitution, the State of Oklahoma cannot be prohibited from pursing [sic] its claim against Magnolia in the courts of Oklahoma, nor can the State be forced, without its consent, to pursue its claims in federal court," the State claimed it was "entitled to sovereign immunity from this limitation proceeding and from the Limitation Act." Aplt. App. at 77. We now consider the State's appeal from the district court's denial of the its motion to dismiss on immunity grounds.

-3-

II.

The Limitation of Shipowners' Liability Act is at the heart of this appeal. Because issues pertaining to it are somewhat unfamiliar in our landlocked circuit, we begin with an explication of the Act's central features and the procedures employed to implement them.

"Limitation of liability is an important theme of admiralty law." 2 THOMAS J. SCHOENBAUM, ADMIRALTY & MARITIME LAW § 15-1, p. 136 (2d ed. 1994). A feature of continental European sea codes since medieval times, it came to English admiralty law in the eighteenth century and to this country in 1851 as the Limitation of Shipowners' Liability Act. *Id.* at § 15-1, p. 136-37. The Act provides for the enjoining of pending suits against shipowners and their consolidation in a single federal court "so that liability may be determined and limited to the value of the shipowner's vessel and freight pending." *Id.* at § 15-1, p. 137. The apparent purpose of the Act was to encourage shipbuilding in this country and to place the U.S. shipping industry on equal footing with foreign competitors who enjoyed such limitation procedures at home. *Id.*

Because the Act was "badly drafted even by the standards of the time," the Supreme Court codified a procedure for its implementation in Rule F of the Admiralty Rules. *Id.* at § 15-1, p. 137; § 15-4, p. 144. Rule F provides a single forum for the determination of "(1) whether the vessel and its owner are liable at

-4-

all; (2) whether the owner may in fact limit liability to the value of the vessel and

pending freight; (3) the amount of just claims; and (4) how the fund should be

distributed to the claimants." *Id.* at § 15-5, p. 144.  While a shipowner may only

file a petition for limitation in admiralty jurisdiction in federal district court, he

or she may plead limitation as a defense to an action seeking damages in federal

or state court. *Id.* at § 15-5, p. 144-45 & n.6.

> As a condition of limitation, the shipowner
>
> shall deposit with the court, for the benefit of claimants, a sum equal
> to the amount or value of the owner's interest in the vessel and
> pending freight, or approved security therefor, and in addition such
> sums, or approved security therefor, as the court from time to time
> may fix as necessary . . . .

FED. R. CIV. P. Supp. Rule F(1).  In addition, the security posting must include six

percent yearly interest.  2 SCHOENBAUM, § 15-5, p. 147.  Once a shipowner

deposits this sum, the court will stay all other proceedings against the shipowner

relating to the incident at issue and compel claimants to file for recovery in the

limitation court under penalty of default.  *Id.* at § 15-5, p. 147-49.

The burden of proof in a limitation proceeding parallels that in a standard

suit for damages.  Claimants against the shipowner must prove the vessel's

negligence or unseaworthiness caused their losses.  If they so prove, the burden

shifts to the shipowner to prove there was no "design, neglect, privity or

knowledge" on his or her part.  *Id.* at § 15-5, p. 150.  "If the shipowner is not

-5-

exonerated," but the court finds he or she is entitled to limitation of liability, "payment to claimants is made on a pro-rata basis," generally out of the "security deposited with the court." *Id.* at § 15-7, p. 155.

### III.

The State of Oklahoma insists its constitutional sovereign immunity from suit prevents Magnolia from invoking the procedures of the Limitation of Shipowners' Liability Act as to the State's claim for damages. The logical starting point for our analysis of this proposition is the text of the Eleventh Amendment to the United States Constitution.

The Eleventh Amendment mandates that "[t]he Judicial power of the United States shall not be construed to extend to any suit in law or equity, commenced or prosecuted against one of the United States by Citizens of another State, or by Citizens or Subjects of any Foreign State." U.S. CONST. amend. XI. The question we must first answer, therefore, is whether Magnolia's limitation petition constitutes a suit "commenced or prosecuted against" the State of Oklahoma. For reasons we explore below, the answer to that question is no.

The State advocates a different starting point for our analysis. Oklahoma would have us begin with "the two-prong test enunciated by the United States Supreme Court" in *College Savings Bank v. Florida Prepaid Postsecondary*

*Education Expense Board*, 527 U.S. 666 (1999).  Aplt. Br. at 2.  In that case, the

Court "recognized only two circumstances in which an individual may sue a

State": (1) where Congress has authorized the suit pursuant to its enforcement

power under the Fourteenth Amendment, and (2) where the State has waived its

sovereign immunity.  *Florida Prepaid*, 527 U.S. at 670.  In urging these two

exceptions to sovereign immunity as this court's analytical starting point, the

State misses a crucial distinction between *Florida Prepaid* and the case before us.

In *Florida Prepaid*, College Savings Bank sued Florida Prepaid Postsecondary

Education Expense Board, an arm of the State of Florida, for violations of the

Lanham Act.  *Id.* at 671.  Clearly, the Bank's suit was a "suit against a state,"

which the Court presupposed in recognizing "only two circumstances in which *an*

*individual may sue a State*." *Id.* at 670 (emphasis added).

Here, to the contrary, the State of Oklahoma has sued Magnolia for

damages.  Magnolia neither named the State as a defendant in its limitation

proceeding nor served process upon the State.  The limitation proceeding merely

provides a forum for establishing a shipowner's right to limitation of liability and

managing disbursement of a limitation fund to claimants who prove Magnolia is

liable to them.  The limitation proceeding thus lacks the traditional characteristics

of a suit against the State.

The State argues that whether Magnolia's limitation proceeding is a suit

-7-

against a state is irrelevant to Eleventh Amendment analysis. According to the
State, the Supreme Court "has repeatedly held that even though a state is not
named a party to an action, the suit may nonetheless be barred by the Eleventh
Amendment." Aplt. Rep. Br. at 2. In support of this argument, the State cites
*Edelman v. Jordan*, 415 U.S. 651 (1974), and *Ford Motor Co. v. Department of
Treasury*, 323 U.S. 459 (1945). The State is correct that plaintiffs in neither case
named a state as a party. *Edelman* and *Ford Motor*, however, were both suits
against *state officers*. *See Edelman*, 415 U.S. at 653; *Ford Motor Co.*, 323 U.S. at
460. Any language in either case implying that a state need not be a party in
order for its sovereign immunity to bar the suit served only to explain that the
legal fiction of the "officer suit" under *Ex parte Young*[1] would not be allowed to
circumvent sovereign immunity when the monetary relief ordered by the court
required payment from the public treasury. *See Edelman*, 415 U.S. at 664 (officer
suit "does not extend so far as to permit a suit which seeks the award of an
accrued monetary liability which must be met from the general revenues of a
State"); *Ford Motor Co.*, 323 U.S. at 462 ("Where relief is sought under general
law from wrongful acts of state officials, the sovereign's immunity under the
Eleventh Amendment does not extend to wrongful individual action . . . . Where,
however, an action is authorized by statute against a state officer in his official

---

[1]*Ex Parte Young*, 209 U.S. 123 (1908).

capacity . . . the Eleventh Amendment operates to bar suit."). These cases are inapposite to a case such as this one where neither the state, nor its agency, nor its officer is a defendant.

The State derides as mere "semantics" any emphasis on the Eleventh Amendment's application only to suits "commenced or prosecuted against" a state, and insists the Supreme Court has carried state sovereign immunity beyond the "literal wording of the Eleventh Amendment." Aplt. Rep. Br. at 7-8. The Supreme Court has undeniably extended the protections of state sovereign immunity beyond the text of the Eleventh Amendment. *See Alden v. Maine*, 527 U.S. 706, 713 (1999) (holding that "the sovereign immunity of the States . . . is [not] limited by[] the terms of the Eleventh Amendment"). The State cites eight cases in which the Supreme Court has arguably broadened the Eleventh Amendment's reach and urges us to broaden it yet again in the case before us. The cases the State cites are unhelpful, however. Although the cases involved new parties or fora beyond the literal language of the Eleventh Amendment,[2] each case is unquestionably *a suit against a state*. *See Fed. Mar. Comm'n v. S.C. State Ports Auth.*, 535 U.S. 743, 747-48 (2002) (cruise ship company sued state agency

---

[2]*See Fed. Mar. Comm'n v. S.C. State Ports Auth.*, 535 U.S. 743, 754 (2002) (citing the cases the State relies on as holding Eleventh Amendment immunity applies to suits by Indian Tribes, foreign nations, and federal corporations, as well as to suits by private parties in state court, in admiralty proceedings, and by a state's own citizens under federal question jurisdiction).

for violation of the Shipping Act); *Alden*, 527 U.S. at 711 (probation officers sued

state for violation of overtime provisions of the Fair Labor Standards Act);

*Blatchford v. Native Village of Noatak*, 501 U.S. 775, 778 (1991) (village brought

equal protection challenge to state commission's denial of funds allegedly due

and sought payment of those funds); *Ford Motor Co.*, 323 U.S. at 460

(manufacturing corporation sued state officer for tax refund); *Monaco v.

Mississippi*, 292 U.S. 313, 317 (1934) (Monaco sued Mississippi to recover on

bonds issued by the state); *In re State of New York*, 256 U.S. 490, 495 (1921)

(canal boat owners sued state officer for damages caused by vessels chartered by

the state); *Smith v. Reeves*, 178 U.S. 436, 437 (1900) (railroad company sued state

treasurer to recover overpaid taxes); *Hans v. Louisiana*, 134 U.S. 1, 1 (1890)

(citizen sued state to recover on bonds issued by State). Oklahoma points to no

case in which the Supreme Court has extended Eleventh Amendment immunity

beyond suits against a state, and we decline to do so in this case.

We return, therefore, to the question of whether Magnolia's limitation

petition constitutes a suit against the State of Oklahoma. We agree with every

court that has addressed this issue: the limitation proceeding is not a suit against

the state. *See Bouchard Transp. Co., Inc. v. Updegraff*, 147 F.3d 1344, 1349

(11th Cir. 1998); *In re Abaco Treasure Ltd.*, 1993 A.M.C. 1976, 1977 (S.D. Fla.

1993); *In re Sand Bar I, Inc.*, 1992 WL 84277, at *1 (E.D. La. 1992). The

-10-

Limitation of Shipowners' Liability Act creates a defense which, as noted above, may be pled in a limitation petition invoking the procedures established in Rule F or in a shipowner's answer to a suit brought in state or federal court. 2 SCHOENBAUM, § 15-5, p. 144-45. If a shipowner chooses to file a petition for limitation under the federal court's admiralty jurisdiction, any claimant (including a state) must file its claim against the shipowner in the same court or risk taking none of the limitation fund as damages. *Id.* at § 15-5, p. 147-49. But this federal proceeding for administering a limited fund does not transform the shipowner's defensive position under the Act into an offensive one.

Citing the Eleventh Circuit's decision in *Bouchard Transport Co.*, the district court in this case analogized the limitation proceeding to an "in rem admiralty action where the state does not have possession of the res." Aplt. App. at 256-57. As in such an *in rem* proceeding, no specific entity is named as a defendant or formally served with process. *Id.* at 257. In addition, the court administering the limitation proceeding controls the *res* at issue–the limitation fund–and the vessel remains under the control of the shipowner. *Id.* In *California v. Deep Sea Research*, 523 U.S. 491, 507-08 (1998), the Supreme Court held, "[b]ased on longstanding precedent respecting the federal courts' assumption of *in rem* admiralty jurisdiction over vessels that are not in the possession of a sovereign, . . . the Eleventh Amendment" poses no bar to a federal

-11-

court's *in rem* jurisdiction where the *res* is not in the possession of the State. The district court found the similarities between the action in *Deep Sea Research* and this case militated against dismissal on sovereign immunity grounds. Aplt. App. at 257-58.

The State maintains the better analogy is between the limitation proceeding and a federal interpleader action naming state defendants, held barred by the Supreme Court in *Cory v. White*, 457 U.S. 85, 90-91 (1982). But in *Cory*, the Controller of the State of California and the Attorney General of the State of Texas were the named parties. *Id.* at 85. And as noted by the court in *Sand Bar I*, "[u]nlike interpleader . . . cases, this limitation proceeding is not an attempt to resolve competing claims to a *res*. It is a statutory procedure to determine the *amount* of recovery potentially to be split among claimants." *Sand Bar I*, 1992 WL 84277, at *2 (emphasis in original). In contrast to an interpleader action, "recovery [in a limitation proceeding] is only possible *if* those claimants succeed in proving the Petitioner's liability . . . ." *Id.* (emphasis in original).

In our judgment, neither *Deep Sea Research* nor *Cory* provides the closest analogy to limitation proceedings. Rather, decisions examining the role of sovereign immunity in bankruptcy are more on point and instruct us to affirm the district court's refusal to dismiss this limitation proceeding on sovereign immunity grounds.

-12-

As explained by the Fifth Circuit,

> [i]n a bankruptcy case, in its simplest terms, a debtor turns over his
> assets, which constitute the estate, for liquidation by a trustee for the
> benefit of creditors according to their statutory priorities.
> Bankruptcy law modifies the state's collection rights with respect to
> its claims against the debtor, but it also affords the state an
> opportunity to share in the collective recovery.

*Texas v. Walker*, 142 F.3d 813, 822 (5th Cir. 1998). Just as the court assumes

jurisdiction over the estate in bankruptcy, a shipowner in a limitation proceeding

turns over to the court a sum equal to his or her interest in a vessel and pending

freight. FED. R. CIV. P. Supp. Rule F(1). The court administering a limitation

proceeding stays other suits seeking collection from the shipowner, 2

SCHOENBAUM, § 15-5, p. 147-49, much as a bankruptcy petition acts as a stay of

further actions against the debtor pursuant to 11 U.S.C. § 362. While a creditor's

ability to collect upon a debt and a claimant's ability to collect against a

shipowner are altered by these administrative schemes, their consolidation of

claims is meant to ensure equitable distribution and prevent premature extinction

of a limited estate or fund.

In *Walker*, the Fifth Circuit addressed an objection to bankruptcy

proceedings styled much like Oklahoma's objection to Magnolia's limitation

action. *See Walker*, 142 F.3d at 820. Recognizing that the state's contentions

regarding immunity were "not specious," *id.*, the court characterized the immunity

argument as follows:

-13-

The argument for an Eleventh Amendment bar would assert that
although the State was not a named defendant in Walker's
bankruptcy case, it was an indirect party because its legal rights were
adjudicated and altered . . . when the bankruptcy court discharged
Walker's debt . . . .

    . . . [D]ischarging the debt owed to the state either restrains the
state from acting by enjoining it from collecting the debt, or compels
the state to act by forcing it to file a proof of claim in bankruptcy
court to collect the debt. The state is thus presented with a Hobson's
choice: either subject yourself to federal court jurisdiction or take
nothing . . . . If the state does nothing, it is permanently barred from
collecting its debt and receiving a pro rata share of the debtor's
estate.

*Id.* at 821-22 (footnotes omitted). The court, nevertheless, rejected the state's

Eleventh Amendment argument, noting the state's "key assumption is the equation

of a bankruptcy case with a suit *against* the state, but this assumption is flawed."

*Id.* at 822 (emphasis in original). While that same court had previously held that

Congress's abrogation of sovereign immunity as to *adversary actions* brought

*against a state* under the Bankruptcy Code was unconstitutional in light of the

Supreme Court's recent sovereign immunity jurisprudence, *In re Fernandez*, 123

F.3d 241, 244 (5th Cir. 1997), in nonadversary bankruptcy suits such as those in

*Walker*, the court held the Eleventh Amendment presented no bar. *Walker*, 142

F.3d at 820, 822.

    We believe the similarities between bankruptcy and limitation proceedings

illustrate the inapplicability of the Eleventh Amendment to Magnolia's petition in

the district court. As the Supreme Court noted in the bankruptcy case of *Gardner*

-14-

*v. New Jersey*, 329 U.S. 565, 573-74 (1947), "[i]f the claimant is a State, the procedure of proof and allowance is not transmitted into a suit against the State because the court entertains objections to the claim. The State is seeking something from the debtor. No judgment is sought against the State."[3] The same is true in a limitation proceeding under admiralty law.

## IV.

In sum, the State's invocation of sovereign immunity stands the relationship between the parties on its head: it is the State that seeks recovery from Magnolia in this case. Because Magnolia's limitation proceeding does not implicate the State's immunity from suit under the Eleventh Amendment, the district court properly denied the State's motion to dismiss. We **AFFIRM**.

---

[3]We recognized the continuing vitality of this principle in *Straight v. Wyo. Dep't of Transp.*, 143 F.3d 1387, 1392 (10th Cir. 1998).

-15-