United States District Court
Southern District of Texas
FILED

MAY 1 9 2004

Michael N. Milby
Clerk of Court

IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF TEXAS
BROWNSVILLE DIVISION

| | | |
|---|---|---|
| IN RE THE COMPLAINT AND | * | C. A. NO. B-01-157 |
| PETITION OF BROWN WATER | * | Admiralty |
| TOWING I, INC., AS OWNER, AND | * | |
| BROWN WATER MARINE SERVICE, | * | |
| INC., AS BAREBOAT CHARTERER OF | * | |
| THE BROWN WATER V, ITS ENGINES, | * | |
| TACKLE, ETC., IN A CAUSE OF | * | |
| EXONERATION FROM OR | * | |
| LIMITATION OF LIABILITY | * | |
| | * | Consolidated with |
| | * | |
| IN RE THE COMPLAINT AND | * | |
| PETITION OF AMERICAN | * | C. A. No. B-02-004 |
| COMMERCIAL LINES, LLC AS | * | Admiralty |
| OWNER, AND AMERICAN | * | |
| COMMERCIAL BARGE LINE, LLC | * | |
| AS CHARTERER OF THE BARGES | * | |
| NM-315, VLB-9182, ACL-9933B, | * | |
| VLB-9173, IN A CAUSE OF | * | and |
| EXONERATION FROM OR | * | |
| LIMITATION OF LIABILITY | * | |
| | * | |
| | * | |
| IN RE THE COMPLAINT AND PETITION | * | C. A. NO. B-02-125 |
| OF DEERE CREDIT, INC., (FORMERLY | * | Admiralty |
| SENSTAR FINANCE COMPANY), AS | * | |
| OWNER OF THE BARGE NM-315 AND | * | |
| STATE STREET BANK AND TRUST | * | |
| COMPANY OF CONNECTICUT, | * | |
| NATIONAL ASSOCIATION, AS OWNER | * | |
| TRUSTEE OF THE BARGE ACL-9933B AND | * | |
| NOT IN ITS INDIVIDUAL CAPACITY, AND | * | |
| GENERAL ELECTRIC CAPITAL | * | |
| CORPORATION, AS BENEFICIAL OWNER | * | |
| OF THE BARGE ACL-9933B PRAYING FOR | * | |
| EXONERATION FROM AND/OR | * | |
| LIMITATION OF LIABILITY | * | |

{N1138818.1}

## MOTION AND INCORPORATED MEMORANDUM TO ALLOW THE FILING OF A SECOND SUPPLEMENTAL MEMORANDUM IN OPPOSITION TO THE STATE OF TEXAS' MOTION TO DISMISS ON THE BASIS OF SOVEREIGN IMMUNITY AND THE 11TH AMENDMENT

**MAY IT PLEASE THE COURT:**

The State of Texas filed its Motion to Dismiss on the Basis of Sovereign Immunity and the 11th Amendment on December 18, 2002. The ACBL Petitioners, filed their opposition memorandum on January 6, 2003, and the Brown Water Petitioners filed their opposition on January 7, 2003. Thereafter, ACBL filed for bankruptcy on January 31, 2003. At the time of filing for bankruptcy, this case was stayed. On November 21, 2003 the United States Bankruptcy Court for the Southern District of Indiana granted the State of Texas', as claimant in the bankruptcy, Motion to Lift the Stay to allow these consolidated actions to go forward in this Court. On February 20, 2004 Your Honor ordered that numerous pending motions, including the State of Texas' motion be placed on the Court's docket.

In its First Supplemental Memorandum in Opposition, the ACBL Petitioners advised the Court of the ruling of the District Court for the Eastern District of Oklahoma, in Magnolia Marine Transport Company Limitation Proceedings, M/V ROBERT Y. LOVE, 203 AMC 2419 (E.D. Ok, February 4, 2003), in which the District Court found that the 11th Amendment does not exempt a state as plaintiff from the necessity of prosecuting its maritime claims exclusively in a pending limitation proceeding. This was appealed to the United States Court of Appeals for the Tenth Circuit. On May 3, 2004 the United States Court of Appeals for the Tenth Circuit affirmed the District Court's denial of the State of Oklahoma's Motion to Dismiss, based upon the 11th Amendment. Magnolia Marine Transport Company adv. State of Oklahoma, 2004 WL 938470 (10th Circuit, May 3, 2004).

Accordingly, ACBL Petitioners ask that this Court allow it to file its Second

Supplemental Memorandum in Opposition of the State of Texas' Motion to brief the Court on the

recently decided Appellate Court decision decided after ACBL Petitioners filed their Original

Opposition Brief and First Supplemental Opposition Brief.


Respectfully submitted,


Glenn G. Goodier, Attorney-in-Charge
By Order Entered 4/23/02
Jones, Walker, Waechter, Poitevent,
  Carrère & Denègre, L.L.P.
201 St. Charles Avenue - 48th Floor
New Orleans, Louisiana 70170-5100
Telephone:  (504) 582-8174
Facsimile:   (504) 582-8010


## CERTIFICATE OF SERVICE

I hereby certify that a copy of the foregoing has been properly mailed to all known
potential parties and/or their counsel on this __10__ day of __May_____, 2004.


GLENN G. GOODIER

IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF TEXAS
BROWNSVILLE DIVISION

| | | |
|---|---|---|
| IN RE THE COMPLAINT AND<br>PETITION OF BROWN WATER<br>TOWING I, INC., AS OWNER, AND<br>BROWN WATER MARINE SERVICE,<br>INC., AS BAREBOAT CHARTERER OF<br>THE BROWN WATER V, ITS ENGINES,<br>TACKLE, ETC., IN A CAUSE OF<br>EXONERATION FROM OR<br>LIMITATION OF LIABILITY | *<br>*<br>*<br>*<br>*<br>*<br>*<br>*<br>*<br>* | C. A. NO. B-01-157<br>Admiralty<br><br><br><br><br><br><br><br>Consolidated with |
| IN RE THE COMPLAINT AND<br>PETITION OF AMERICAN<br>COMMERCIAL LINES, LLC AS<br>OWNER, AND AMERICAN<br>COMMERCIAL BARGE LINE, LLC<br>AS CHARTERER OF THE BARGES<br>NM-315, VLB-9182, ACL-9933B,<br>VLB-9173, IN A CAUSE OF<br>EXONERATION FROM OR<br>LIMITATION OF LIABILITY | *<br>*<br>*<br>*<br>*<br>*<br>*<br>*<br>*<br>*<br>* | C. A. No. B-02-004<br>Admiralty<br><br><br><br>and |
| IN RE THE COMPLAINT AND PETITION<br>OF DEERE CREDIT, INC., (FORMERLY<br>SENSTAR FINANCE COMPANY), AS<br>OWNER OF THE BARGE NM-315 AND<br>STATE STREET BANK AND TRUST<br>COMPANY OF CONNECTICUT,<br>NATIONAL ASSOCIATION, AS OWNER<br>TRUSTEE OF THE BARGE ACL-9933B AND<br>NOT IN ITS INDIVIDUAL CAPACITY, AND<br>GENERAL ELECTRIC CAPITAL<br>CORPORATION, AS BENEFICIAL OWNER<br>OF THE BARGE ACL-9933B PRAYING FOR<br>EXONERATION FROM AND/OR<br>LIMITATION OF LIABILITY | *<br>*<br>*<br>*<br>*<br>*<br>*<br>*<br>*<br>*<br>*<br>*<br>*<br>* | C. A. NO. B-02-125<br>Admiralty |

{N1138831.1}

## THE SECOND SUPPLEMENTAL MEMORANDUM IN OPPOSITION TO THE STATE OF TEXAS' MOTION TO DISMISS ON THE BASIS OF SOVEREIGN IMMUNITY AND THE 11TH AMENDMENT

On January 6, 2003 Limitation Petitioners, American Commercial Lines LLC, American Commercial Barge Line LLC, Deere Credit, Inc., State Street Bank and Trust Company of Connecticut, N.A., and General Electric Capital Corporation (hereafter "Limitation Petitioners"), filed their opposition memorandum to The State of Texas' Motion to Dismiss on the Basis of Sovereign Immunity and the 11th Amendment. On March 22, 2004, the Limitation Petitioners filed a motion to allow the filing of a supplemental memorandum, with attached supplemental memorandum, advising the Court of the opinion of the District Court in Magnolia Marine Transport Company Limitation Proceedings, M/V ROBERT Y. LOVE, 2003 AMC 2419 (E.D. Ok., February 4, 2003). In that decision, the District Court denied the State of Oklahoma's motion to dismiss on the basis of sovereign immunity, much like the motion brought in the instant case.

As advised in the first supplemental memorandum, Magnolia Marine arises out of the collision of the M/V ROBERT Y. LOVE with a bridge owned by the State of Oklahoma. The State of Oklahoma filed suit against Magnolia Marine in Oklahoma state court[1] seeking recovery of its damages as a result of the accident. Magnolia Marine filed a limitation action originally in the Southern District of Mississippi, which action was then transferred to the Eastern District of Oklahoma. Oklahoma sought to have itself extricated from the limitation proceeding by way of its motion to dismiss on the basis of sovereign immunity (the 11th Amendment) requesting that the Court allow it to return to state court to litigate its claim. The District Court found that the 11th Amendment did not exempt the state as a plaintiff from the necessity of prosecuting its

---

[1] /In the instant case, the State of Texas did not file a claim in state court against the ACBL interests.

maritime claim exclusively in the limitation proceeding pending in the Eastern District of

Oklahoma and denied the state's motion to dismiss.

The State of Oklahoma took an appeal from the District Court's decision to the United

States Court of Appeals for the Tenth Circuit.  The purpose of this second supplemental

memorandum is to advise this Court that the United States Court of Appeals for the Tenth Circuit

has rendered an opinion in the State of Oklahoma's appeal, affirming the District Court.

Magnolia Marine Transport Company adv. State of Oklahoma, 2004 WL 938470 (10th Circuit,

May 3, 2004).  (See, copy of opinion attached as Exhibit "A").  The Tenth Circuit found:

> "Because Magnolia's limitation proceeding does not implicate
> the State's immunity from suit under the 11th Amendment, the
> District Court properly denied the State's motion to dismiss.
> We affirm."

Accordingly, this most recent decision by the United States Court of Appeals for the Tenth

Circuit fully supports the opposition memoranda filed by both Brown Water and the ACBL

Petitioners in this matter.

Respectfully submitted,

Glenn G. Goodier, Attorney-in-Charge
By Order Entered 4/23/02
Jones, Walker, Waechter, Poitevent,
Carrère & Denègre, L.L.P.
201 St. Charles Avenue - 48th Floor
New Orleans, Louisiana 70170-5100
Telephone:  (504) 582-8174
Facsimile:    (504) 582-8010

## **CERTIFICATE OF SERVICE**

I hereby certify that a copy of the foregoing has been properly mailed to all known potential parties and/or their counsel on this __10__ day of __May_____, 2004.

GLENN G. GOODIER

**F I L E D**
United States Court of Appeals
Tenth Circuit

**MAY 3 2004**

**PATRICK FISHER**
Clerk

**PUBLISH**

## UNITED STATES COURT OF APPEALS
## TENTH CIRCUIT

---

MAGNOLIA MARINE TRANSPORT COMPANY,
as owner of the Robert Y. Love, its Engines,
Tackle, etc., in a cause of exoneration from or
limitation of liability,

              Petitioner-Appellee,

              No. 03-7023

STATE OF OKLAHOMA,

              Movant-Appellant.

---

**Appeal from the United States District Court
for the Eastern District of Oklahoma
(D.C. No. 02-CV-615-P)**

---

Greg S. Eldridge, Assistant Attorney General (E. Clyde Kirk, Assistant Attorney
General, with him on the briefs), Litigation Section, State of Oklahoma, for
Movant-Appellant.

Michael Burrage of Burrage Law Firm, Durant, Oklahoma (Sean Burrage of
Taylor, Burrage, Foster, Mallett, Downs & Ramsey, Claremore, Oklahoma, with
him on the brief), for Petitioner-Appellee.

---

Before **SEYMOUR, McKAY**, and **O'BRIEN**, Circuit Judges.

---

**SEYMOUR**, Circuit Judge.

This appeal arises out of a tragic accident in which a tugboat owned by Magnolia Marine Transport Company (Magnolia) collided with the Interstate 40 bridge over the Arkansas River near Webbers Falls, Oklahoma. Magnolia filed a petition in district court in Mississippi for limitation of liability under admiralty law. Meanwhile, the State of Oklahoma filed a suit for damages against Magnolia in Oklahoma state court, which Magnolia removed to federal district court. Thereafter, the Mississippi district court transferred Magnolia's limitation petition to the federal court in Oklahoma. The State filed a motion to dismiss the limitation petition on Eleventh Amendment grounds, which the district court denied. An order denying a motion to dismiss on the basis of state sovereign immunity is immediately appealable under the collateral order doctrine. *P.R. Aqueduct & Sewer Auth. v. Metcalf & Eddy, Inc.*, 506 U.S. 139, 146-47 (1993); *Innes v. Kan. State Univ. (In re Innes)*, 184 F.3d 1275, 1277 (10th Cir. 1999). The State appeals, and we affirm.

## I.

On May 26, 2002, the "M/V ROBERT Y. LOVE," a tugboat owned and operated by Magnolia and piloted by Captain William Joe Dedmon, was pushing two empty barges up the Arkansas River in Oklahoma. As the tugboat neared the Interstate 40 bridge, Captain Dedmon suffered a form of cardiac arrhythmia that

-2-

caused him to lose consciousness for several minutes. While Captain Dedmon was unconscious, the tugboat pushed the barges into the bridge, causing the bridge to collapse into the river. Several vehicles plunged off the damaged overpass. Fourteen people died and five suffered injuries. The subsequent search and rescue, repair, loss of use, and clean-up costs required the State of Oklahoma to expend more than fifty-eight million dollars.

One week after the accident, Magnolia filed a petition in federal district court in Mississippi invoking the procedures of the Limitation of Shipowners' Liability Act, 46 U.S.C. §§ 181-189. The next day, the State filed suit for damages in Oklahoma State court. After removal of the State's suit and transfer of Magnolia's limitation petition, the parties' legal actions were consolidated in federal district court in Oklahoma. Positing "that under the United States Constitution, the State of Oklahoma cannot be prohibited from pursing [sic] its claim against Magnolia in the courts of Oklahoma, nor can the State be forced, without its consent, to pursue its claims in federal court," the State claimed it was "entitled to sovereign immunity from this limitation proceeding and from the Limitation Act." Aplt. App. at 77. We now consider the State's appeal from the district court's denial of the its motion to dismiss on immunity grounds.

-3-

II.

The Limitation of Shipowners' Liability Act is at the heart of this appeal. Because issues pertaining to it are somewhat unfamiliar in our landlocked circuit, we begin with an explication of the Act's central features and the procedures employed to implement them.

"Limitation of liability is an important theme of admiralty law." 2 THOMAS J. SCHOENBAUM, ADMIRALTY & MARITIME LAW § 15-1, p. 136 (2d ed. 1994). A feature of continental European sea codes since medieval times, it came to English admiralty law in the eighteenth century and to this country in 1851 as the Limitation of Shipowners' Liability Act. *Id.* at § 15-1, p. 136-37. The Act provides for the enjoining of pending suits against shipowners and their consolidation in a single federal court "so that liability may be determined and limited to the value of the shipowner's vessel and freight pending." *Id.* at § 15-1, p. 137. The apparent purpose of the Act was to encourage shipbuilding in this country and to place the U.S. shipping industry on equal footing with foreign competitors who enjoyed such limitation procedures at home. *Id.*

Because the Act was "badly drafted even by the standards of the time," the Supreme Court codified a procedure for its implementation in Rule F of the Admiralty Rules. *Id.* at § 15-1, p. 137; § 15-4, p. 144. Rule F provides a single forum for the determination of "(1) whether the vessel and its owner are liable at

-4-

all; (2) whether the owner may in fact limit liability to the value of the vessel and

pending freight; (3) the amount of just claims; and (4) how the fund should be

distributed to the claimants." *Id.* at § 15-5, p. 144.  While a shipowner may only

file a petition for limitation in admiralty jurisdiction in federal district court, he

or she may plead limitation as a defense to an action seeking damages in federal

or state court. *Id.* at § 15-5, p. 144-45 & n.6.

> As a condition of limitation, the shipowner
>
> shall deposit with the court, for the benefit of claimants, a sum equal
> to the amount or value of the owner's interest in the vessel and
> pending freight, or approved security therefor, and in addition such
> sums, or approved security therefor, as the court from time to time
> may fix as necessary . . . .

FED. R. CIV. P. Supp. Rule F(1).  In addition, the security posting must include six

percent yearly interest. 2 SCHOENBAUM, § 15-5, p. 147.  Once a shipowner

deposits this sum, the court will stay all other proceedings against the shipowner

relating to the incident at issue and compel claimants to file for recovery in the

limitation court under penalty of default. *Id.* at § 15-5, p. 147-49.

The burden of proof in a limitation proceeding parallels that in a standard

suit for damages.  Claimants against the shipowner must prove the vessel's

negligence or unseaworthiness caused their losses.  If they so prove, the burden

shifts to the shipowner to prove there was no "design, neglect, privity or

knowledge" on his or her part. *Id.* at § 15-5, p. 150.  "If the shipowner is not

-5-

exonerated," but the court finds he or she is entitled to limitation of liability, "payment to claimants is made on a pro-rata basis," generally out of the "security deposited with the court." *Id.* at § 15-7, p. 155.

III.

The State of Oklahoma insists its constitutional sovereign immunity from suit prevents Magnolia from invoking the procedures of the Limitation of Shipowners' Liability Act as to the State's claim for damages. The logical starting point for our analysis of this proposition is the text of the Eleventh Amendment to the United States Constitution.

The Eleventh Amendment mandates that "[t]he Judicial power of the United States shall not be construed to extend to any suit in law or equity, commenced or prosecuted against one of the United States by Citizens of another State, or by Citizens or Subjects of any Foreign State." U.S. CONST. amend. XI. The question we must first answer, therefore, is whether Magnolia's limitation petition constitutes a suit "commenced or prosecuted against" the State of Oklahoma. For reasons we explore below, the answer to that question is no.

The State advocates a different starting point for our analysis. Oklahoma would have us begin with "the two-prong test enunciated by the United States Supreme Court" in *College Savings Bank v. Florida Prepaid Postsecondary*

-6-

*Education Expense Board*, 527 U.S. 666 (1999). Aplt. Br. at 2. In that case, the Court "recognized only two circumstances in which an individual may sue a State": (1) where Congress has authorized the suit pursuant to its enforcement power under the Fourteenth Amendment, and (2) where the State has waived its sovereign immunity. *Florida Prepaid*, 527 U.S. at 670. In urging these two exceptions to sovereign immunity as this court's analytical starting point, the State misses a crucial distinction between *Florida Prepaid* and the case before us. In *Florida Prepaid*, College Savings Bank sued Florida Prepaid Postsecondary Education Expense Board, an arm of the State of Florida, for violations of the Lanham Act. *Id.* at 671. Clearly, the Bank's suit was a "suit against a state," which the Court presupposed in recognizing "only two circumstances in which *an individual may sue a State*." *Id.* at 670 (emphasis added).

Here, to the contrary, the State of Oklahoma has sued Magnolia for damages. Magnolia neither named the State as a defendant in its limitation proceeding nor served process upon the State. The limitation proceeding merely provides a forum for establishing a shipowner's right to limitation of liability and managing disbursement of a limitation fund to claimants who prove Magnolia is liable to them. The limitation proceeding thus lacks the traditional characteristics of a suit against the State.

The State argues that whether Magnolia's limitation proceeding is a suit

-7-

against a state is irrelevant to Eleventh Amendment analysis. According to the

State, the Supreme Court "has repeatedly held that even though a state is not

named a party to an action, the suit may nonetheless be barred by the Eleventh

Amendment." Aplt. Rep. Br. at 2. In support of this argument, the State cites

*Edelman v. Jordan*, 415 U.S. 651 (1974), and *Ford Motor Co. v. Department of*

*Treasury*, 323 U.S. 459 (1945). The State is correct that plaintiffs in neither case

named a state as a party. *Edelman* and *Ford Motor*, however, were both suits

against *state officers*. *See Edelman*, 415 U.S. at 653; *Ford Motor Co.*, 323 U.S. at

460. Any language in either case implying that a state need not be a party in

order for its sovereign immunity to bar the suit served only to explain that the

legal fiction of the "officer suit" under *Ex parte Young*[1] would not be allowed to

circumvent sovereign immunity when the monetary relief ordered by the court

required payment from the public treasury. *See Edelman*, 415 U.S. at 664 (officer

suit "does not extend so far as to permit a suit which seeks the award of an

accrued monetary liability which must be met from the general revenues of a

State"); *Ford Motor Co.*, 323 U.S. at 462 ("Where relief is sought under general

law from wrongful acts of state officials, the sovereign's immunity under the

Eleventh Amendment does not extend to wrongful individual action . . . . Where,

however, an action is authorized by statute against a state officer in his official

---

[1]*Ex Parte Young*, 209 U.S. 123 (1908).

-8-

capacity . . . the Eleventh Amendment operates to bar suit."). These cases are inapposite to a case such as this one where neither the state, nor its agency, nor its officer is a defendant.

The State derides as mere "semantics" any emphasis on the Eleventh Amendment's application only to suits "commenced or prosecuted against" a state, and insists the Supreme Court has carried state sovereign immunity beyond the "literal wording of the Eleventh Amendment." Aplt. Rep. Br. at 7-8. The Supreme Court has undeniably extended the protections of state sovereign immunity beyond the text of the Eleventh Amendment. *See Alden v. Maine*, 527 U.S. 706, 713 (1999) (holding that "the sovereign immunity of the States . . . is [not] limited by[] the terms of the Eleventh Amendment"). The State cites eight cases in which the Supreme Court has arguably broadened the Eleventh Amendment's reach and urges us to broaden it yet again in the case before us. The cases the State cites are unhelpful, however. Although the cases involved new parties or fora beyond the literal language of the Eleventh Amendment,[2] each case is unquestionably *a suit against a state. See Fed. Mar. Comm'n v. S.C. State Ports Auth.*, 535 U.S. 743, 747-48 (2002) (cruise ship company sued state agency

---

[2]*See Fed. Mar. Comm'n v. S.C. State Ports Auth.*, 535 U.S. 743, 754 (2002) (citing the cases the State relies on as holding Eleventh Amendment immunity applies to suits by Indian Tribes, foreign nations, and federal corporations, as well as to suits by private parties in state court, in admiralty proceedings, and by a state's own citizens under federal question jurisdiction).

-9-

for violation of the Shipping Act); *Alden*, 527 U.S. at 711 (probation officers sued

state for violation of overtime provisions of the Fair Labor Standards Act);

*Blatchford v. Native Village of Noatak*, 501 U.S. 775, 778 (1991) (village brought

equal protection challenge to state commission's denial of funds allegedly due

and sought payment of those funds); *Ford Motor Co.*, 323 U.S. at 460

(manufacturing corporation sued state officer for tax refund); *Monaco v.*

*Mississippi*, 292 U.S. 313, 317 (1934) (Monaco sued Mississippi to recover on

bonds issued by the state); *In re State of New York*, 256 U.S. 490, 495 (1921)

(canal boat owners sued state officer for damages caused by vessels chartered by

the state); *Smith v. Reeves*, 178 U.S. 436, 437 (1900) (railroad company sued state

treasurer to recover overpaid taxes); *Hans v. Louisiana*, 134 U.S. 1, 1 (1890)

(citizen sued state to recover on bonds issued by State).  Oklahoma points to no

case in which the Supreme Court has extended Eleventh Amendment immunity

beyond suits against a state, and we decline to do so in this case.

We return, therefore, to the question of whether Magnolia's limitation

petition constitutes a suit against the State of Oklahoma.  We agree with every

court that has addressed this issue: the limitation proceeding is not a suit against

the state. *See Bouchard Transp. Co., Inc. v. Updegraff*, 147 F.3d 1344, 1349

(11th Cir. 1998); *In re Abaco Treasure Ltd.*, 1993 A.M.C. 1976, 1977 (S.D. Fla.

1993); *In re Sand Bar I, Inc.*, 1992 WL 84277, at *1 (E.D. La. 1992).  The

-10-

Limitation of Shipowners' Liability Act creates a defense which, as noted above, may be pled in a limitation petition invoking the procedures established in Rule F or in a shipowner's answer to a suit brought in state or federal court. 2 SCHOENBAUM, § 15-5, p. 144-45. If a shipowner chooses to file a petition for limitation under the federal court's admiralty jurisdiction, any claimant (including a state) must file its claim against the shipowner in the same court or risk taking none of the limitation fund as damages. *Id.* at § 15-5, p. 147-49. But this federal proceeding for administering a limited fund does not transform the shipowner's defensive position under the Act into an offensive one.

Citing the Eleventh Circuit's decision in *Bouchard Transport Co.*, the district court in this case analogized the limitation proceeding to an "in rem admiralty action where the state does not have possession of the res." Aplt. App. at 256-57. As in such an *in rem* proceeding, no specific entity is named as a defendant or formally served with process. *Id.* at 257. In addition, the court administering the limitation proceeding controls the *res* at issue–the limitation fund–and the vessel remains under the control of the shipowner. *Id.* In *California v. Deep Sea Research*, 523 U.S. 491, 507-08 (1998), the Supreme Court held, "[b]ased on longstanding precedent respecting the federal courts' assumption of *in rem* admiralty jurisdiction over vessels that are not in the possession of a sovereign, . . . the Eleventh Amendment" poses no bar to a federal

-11-

court's *in rem* jurisdiction where the *res* is not in the possession of the State. The district court found the similarities between the action in *Deep Sea Research* and this case militated against dismissal on sovereign immunity grounds. Aplt. App. at 257-58.

The State maintains the better analogy is between the limitation proceeding and a federal interpleader action naming state defendants, held barred by the Supreme Court in *Cory v. White*, 457 U.S. 85, 90-91 (1982). But in *Cory*, the Controller of the State of California and the Attorney General of the State of Texas were the named parties. *Id.* at 85. And as noted by the court in *Sand Bar I*, "[u]nlike interpleader . . . cases, this limitation proceeding is not an attempt to resolve competing claims to a *res*. It is a statutory procedure to determine the *amount* of recovery potentially to be split among claimants." *Sand Bar I*, 1992 WL 84277, at *2 (emphasis in original). In contrast to an interpleader action, "recovery [in a limitation proceeding] is only possible *if* those claimants succeed in proving the Petitioner's liability . . . ." *Id.* (emphasis in original).

In our judgment, neither *Deep Sea Research* nor *Cory* provides the closest analogy to limitation proceedings. Rather, decisions examining the role of sovereign immunity in bankruptcy are more on point and instruct us to affirm the district court's refusal to dismiss this limitation proceeding on sovereign immunity grounds.

-12-

As explained by the Fifth Circuit,

> [i]n a bankruptcy case, in its simplest terms, a debtor turns over his
> assets, which constitute the estate, for liquidation by a trustee for the
> benefit of creditors according to their statutory priorities.
> Bankruptcy law modifies the state's collection rights with respect to
> its claims against the debtor, but it also affords the state an
> opportunity to share in the collective recovery.

*Texas v. Walker*, 142 F.3d 813, 822 (5th Cir. 1998). Just as the court assumes

jurisdiction over the estate in bankruptcy, a shipowner in a limitation proceeding

turns over to the court a sum equal to his or her interest in a vessel and pending

freight. FED. R. CIV. P. Supp. Rule F(1). The court administering a limitation

proceeding stays other suits seeking collection from the shipowner, 2

SCHOENBAUM, § 15-5, p. 147-49, much as a bankruptcy petition acts as a stay of

further actions against the debtor pursuant to 11 U.S.C. § 362. While a creditor's

ability to collect upon a debt and a claimant's ability to collect against a

shipowner are altered by these administrative schemes, their consolidation of

claims is meant to ensure equitable distribution and prevent premature extinction

of a limited estate or fund.

In *Walker*, the Fifth Circuit addressed an objection to bankruptcy

proceedings styled much like Oklahoma's objection to Magnolia's limitation

action. *See Walker*, 142 F.3d at 820. Recognizing that the state's contentions

regarding immunity were "not specious," *id.*, the court characterized the immunity

argument as follows:

-13-

>The argument for an Eleventh Amendment bar would assert that although the State was not a named defendant in Walker's bankruptcy case, it was an indirect party because its legal rights were adjudicated and altered . . . when the bankruptcy court discharged Walker's debt . . . .
>
>. . . [D]ischarging the debt owed to the state either restrains the state from acting by enjoining it from collecting the debt, or compels the state to act by forcing it to file a proof of claim in bankruptcy court to collect the debt. The state is thus presented with a Hobson's choice: either subject yourself to federal court jurisdiction or take nothing . . . . If the state does nothing, it is permanently barred from collecting its debt and receiving a pro rata share of the debtor's estate.

*Id.* at 821-22 (footnotes omitted). The court, nevertheless, rejected the state's Eleventh Amendment argument, noting the state's "key assumption is the equation of a bankruptcy case with a suit *against* the state, but this assumption is flawed." *Id.* at 822 (emphasis in original). While that same court had previously held that Congress's abrogation of sovereign immunity as to *adversary actions* brought *against a state* under the Bankruptcy Code was unconstitutional in light of the Supreme Court's recent sovereign immunity jurisprudence, *In re Fernandez*, 123 F.3d 241, 244 (5th Cir. 1997), in nonadversary bankruptcy suits such as those in *Walker*, the court held the Eleventh Amendment presented no bar. *Walker*, 142 F.3d at 820, 822.

We believe the similarities between bankruptcy and limitation proceedings illustrate the inapplicability of the Eleventh Amendment to Magnolia's petition in the district court. As the Supreme Court noted in the bankruptcy case of *Gardner*

-14-

*v. New Jersey*, 329 U.S. 565, 573-74 (1947), "[i]f the claimant is a State, the procedure of proof and allowance is not transmitted into a suit against the State because the court entertains objections to the claim. The State is seeking something from the debtor. No judgment is sought against the State."[3] The same is true in a limitation proceeding under admiralty law.

## IV.

In sum, the State's invocation of sovereign immunity stands the relationship between the parties on its head: it is the State that seeks recovery from Magnolia in this case. Because Magnolia's limitation proceeding does not implicate the State's immunity from suit under the Eleventh Amendment, the district court properly denied the State's motion to dismiss. We **AFFIRM**.

---

[3]We recognized the continuing vitality of this principle in *Straight v. Wyo. Dep't of Transp.*, 143 F.3d 1387, 1392 (10th Cir. 1998).