IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF TEXAS
BROWNSVILLE DIVISION

United States District Court
Southern District of Texas
ENTERED

SEP 3 0 2004

Michael N. Milby, Clerk of Court
By Deputy Clerk _____

| | | |
|---|---|---|
| IN RE THE COMPLAINT AND PETITION OF BROWN WATER TOWING I, INC., AS OWNER, AND BROWN WATER MARINE SERVICE INC., AS BAREBOAT CHARTERERS, OF THE BROWN WATER V, ITS ENGINES, TACKLE, ETC., IN A CAUSE OF EXONERATION FROM OR LIMITATION OF LIABILITY | § § § § § § § § § | CIVIL ACTION NO. B-01-157<br><br>Consolidated with |
| IN THE MATTER OF AMERICAN COMMERCIAL LINES LLC AS OWNER and AMERICAN COMMERCIAL BARGE LINE LLC AS CHARTERER OF THE BARGES NM-315, VLB-912, ACL-9993B, VLB-9173, PRAYING FOR EXONERATION FROM AND/OR LIMITATION OF LIABILITY | § § § § § § § § | CIVIL ACTION NO. B-02-004<br><br><br><br><br>and |
| IN THE MATTER OF DEERE CREDIT, INC., (FORMERLY SENSTAR FINANCE COMPANY), AS OWNER OF THE BARGE NM-315, AND STATE STREET BANK AND TRUST COMPANY OF CONNECTICUT, NATIONAL ASSOCIATION, AS OWNER TRUSTEE OF THE BARGE ACL-9933B AND NOT IN ITS INDIVIDUAL CAPACITY, AND GENERAL ELECTRIC CAPITAL CORPORATION, AS BENEFICIAL OWNER OF THE BARGE ACL-9933B PRAYING FOR EXONERATION FROM AND/OR LIMITATION OF LIABILITY | § § § § § § § § § § § § § § § § | CIVIL ACTION NO. B-02-125<br><br><br><br><br>admiralty |

## ORDER

BE IT REMEMBERED that on September 30, 2004, the Court considered the State of Texas' Motion to dismiss on the basis of Sovereign Immunity and the Eleventh Amendment [Dkt. No. 216]. The Motion asks this Court to determine whether requiring the

1

State of Texas to follow the procedures of the Limitation of Vessel Owner's Liability Act ("Act"), 46 U.S.C. §§ 181 *et. seq.*, in order to recover from the petitioners in this admiralty action violates Texas' sovereign immunity. Because the protections of sovereign immunity are not implicated in such proceedings, this Court answers in the negative. Additionally, the Motion to Dismiss asks whether by filing a claim pursuant to the limitation proceedings, Texas has waived its sovereign immunity thereby allowing this Court jurisdiction to entertain cross-claims and counterclaims filed against Texas. The Court answers this issue in the affirmative because Texas has voluntarily availed itself of the Court's jurisdiction. Therefore, Texas' motion is **DENIED**.

I.  **Introduction**

In order to fully understand the following analysis, a brief review of this Court's admiralty jurisdiction and the relevant statutes is necessary.

The federal courts are vested with the power to adjudicate "all Cases of admiralty and maritime Jurisdiction." U.S. Const. art. III, § 2. This grant of original jurisdiction was codified at 28 U.S.C. § 1333(1). The statute reads: "The district courts shall have original jurisdiction, saving to suitors in all cases all other remedies to which they are otherwise entitled." Id. It is unclear what the drafters intended to create with the "saving to suitors" clause. Lewis v. Lewis & Clark Marine, Inc., 531 U.S. 438, 444 (2001). Nevertheless, although the federal courts are considered to have exclusive jurisdiction over admiralty and maritime claims, the Supreme Court has interpreted the clause as preserving "remedies and the concurrent jurisdiction of state courts over some admiralty and maritime claims." Id. at 440, 445; see also Odeco Oil & Gas Co. v. Bonnette, 74 F.3d 671, 674 (5th Cir. 1996) (interpreting "saving to suitors" clause as "evinc[ing] a preference for jury trials and common law remedies in the forum of the claimant's choice").

Through its development, admiralty and maritime law has created its own special rights and procedures. Id. at 446. An over-arching theme in admiralty law is the limitation of liability. In re Magnolia Marine Trans. Co., 366 F.3d 1153, 1155 (10th Cir. 2004). The Limitation of Vessel Owner's Liability Act is an example of both a special admiralty procedure, as well as an application of the limitation theme. 46 U.S.C. §§ 181, *et seq.*

Congress enacted the Act in 1851 "to encourage ship-building and to induce capitalists to invest money in this branch of industry." Lewis, 531 U.S. at 446 (citation omitted). Pursuant to the Act, a vessel owner may limit its liability for damage or injury arising from a maritime accident to the value of the vessel and its freight, if occasioned without the owner's privity or knowledge. 46 U.S.C. § 183(a); see also In re Hellenic, Inc., 252 F.3d 391, 394 (5th Cir. 2001).

A limitation action's procedures are found within the Supplemental Admiralty and Maritime Claims Rule F and 46 U.S.C. §§ 184-185. After filing a complaint which does not list the claimants, the owner must deposit with the court a sum equal to its interest in the vessel and accompanying freight ("limitation fund"). Rule F(1), (2). Upon receiving the limitation fund, the district court stays all other related proceedings. Rule F(3); 46 U.S.C. § 185; see also Beal v. Waltz, 309 F.2d 721, 724 (5th Cir. 1962) (holding that injunction issued pursuant to limitation proceeding does not violate 28 U.S.C. § 2283 because the stay has been expressly authorized by an "Act of Congress"). The district court then issues notice and admonishes all claimants to file their claims with the district court. Rule F(4). A deadline is set for claims to be filed, which if not met will default a claim. Rule F(5). Following, the district court proceeds to determine whether the vessel owner is permitted limited liability.

During this stage, a claimant must establish that the vessel's negligence or unseaworthiness caused its damages. Hellenic, 252 F.3d at 394. If the claimant is successful, the burden shifts to the vessel owner to prove that the negligence or unseaworthiness was not within the owner's privity or knowledge. Hellenic, 252 F.3d at 394. If the court finds negligence or unseaworthiness, but that it was occasioned without the privity or knowledge of the vessel owner, than the district court will proceed to distribute the limitation fund pro rata amongst all legitimate claimants. In the Matter of Beiswenger Enter., 86 F.3d 1032, 1036 (11th Cir. 1996).

The determination of whether a vessel owner is entitled to limited liability is within the exclusive jurisdiction of the federal courts. Ex parte Green, 286 U.S. 437, 439-40 (1932); see also Waring v. Clarke, 46 U.S. (5 How.) 441, 459 (1847) (holding that there is no right to a jury trial in an admiralty case). Hence, a tension exists between the Supreme

Court's broad reading of the "saving to suitors" clause and the exclusive nature of a limitation proceeding. Lewis, 531 U.S. at 448. In dealing with this tension, the "primary concern is to protect the shipowner's absolute right to claim the Act's liability cap, and to reserve the adjudication of that right in the federal forum." Magnolia Marine Transp. Co. v. Laplace Towing Corp, 964 F.2d 1571, 1575 (5th Cir. 1992). As a result, two exceptions to a district court's exclusive jurisdiction in a limitation proceeding have developed. Lewis, 531 U.S. at 451. A district court has the discretion to lift the stay against other proceedings when there is only one claimant or when the total amount of the claims do not exceed the value of the limitation fund. Id. Importantly, after appropriate stipulations, the claimants may request the federal court to be allowed to proceed in another forum. Texaco, Inc v. Williams, 47 F.3d 765, 767-68 (5th Cir. 1995); Beiswenger Enter., 86 F.3d at 1039. Importantly, however, when a federal court concludes that limitation should not be granted, i.e., that the negligence or unseaworthiness was within the privity or knowledge of the vessel owner, the stay should also be lifted. Fecht v. Makowski, 406 F.2d 721, 722 (5th Cir. 1969) (holding that "where no limitation is possible the damages claimants are entitled to have the injunction against other actions dissolved, so that they may, if they wish, proceed in a common law forum as they are entitled to do under the saving to suitors clause"); Wheeler v. Marine Navigation Sulphur Carriers, Inc., 764 F.2d 1008, 1001 (4th Cir. 1985) (holding that once limitation is denied, "plaintiffs should be permitted to elect whether to remain in the limitation proceeding or to revive their original claims in their original fora").

II.   **Background**

In the early morning hours of September 15, 2001 the Brown Water V, a tugboat owned by Brown Water Towing, Inc. and four pushing barges owned by American Commercial Lines, LLC, allided with a span of the Queen Isabella Causeway. A portion of the span collapsed and several individuals were killed or injured when the vehicles they occupied fell into the channel.

On September 15, 2001, Brown Water Towing, Inc. filed its cause of Exoneration from or Limitation of Liability, Civil and Maritime in this Court [Dkt. No. 1]. American

Commercial Lines filed its cause of Exoneration from or Limitation of Liability, Civil and Maritime [Dkt. No. 1 in C.A. No. B-02-004] in this Court on January 11, 2002, and this Court consolidated both actions on February 1, 2002. Brown Water Towing, Inc. and American Commercial Lines, LLC, ("Petitioners")[1], both disclaim any negligence in the operation and maintenance of the vessels.

To this end, Petitioners filed Letters of Undertaking which set the value of Petitioners' interests in the vessels [see Dkt. No. 3 in C.A. No. B-01-157 and Dkt. No. 3 in C.A. No. B-02-004]. In the interest of justice, this Court ordered Petitioners to serve all filed pleadings upon certain entities, including the Texas Department of Transportation and the Texas Parks and Wildlife Department [Dkt. No. 9]. Thereafter, on September 24, 2001, the Court issued an Order Directing all Claimants to File and Make Proof of Claims, Directing the Issuance of Monition and Restraining Prosecution of Claims [Dkt. No. 13]. Essentially, this Order required that all potential claimants file their claims in this Court by March 14, 2002, and that any litigation pending in connection to the Causeway incident be stayed.[2] The Petitioners were also required to publish notice in the Brownsville Herald and Valley Morning Star once a week for four successive weeks before March 14, 2002. Texas filed its Answer and Claim with this Court on March 8, 2002 [Dkt. No. 68].

Currently before the Court is the State of Texas' ("Texas") Motion to Dismiss [Dkt. No. 216]. Therein, Texas argues that on the basis of sovereign immunity and the Eleventh Amendment, it should be dismissed from the above proceedings pursuant to Fed.R.Civ.Pro. 12(b)(1). Specifically, Texas requests that this Court: (1) recognize Texas' entitlement to sovereign immunity from the Limitation Act; (2) dissolve, as respects Texas, the injunctions staying other court proceedings involving the above incident; and (3)

---

[1]On June 10, 2002, Deere Credit, Inc., State Street Bank and Trust Company of Connecticut, National Association, and General Electric Capital Corp., as the beneficial and trustee owners of two of the pushing barges owned by American Commercial Lines, LLC, filed their cause of Exoneration from or Limitation of Liability, Civil and Maritime [Dkt. No. 1 in C.A. No. B-02-125]. That cause of action was later consolidated with the present suit on June 14, 2002. These parties are included in the definition of "Petitioners" in this Order.

[2]It appears that when this order was signed, Texas had already filed a state claim against the Petitioners in state court. The order stayed the Texas state court proceeding.

dismiss the counterclaims and cross-claims that have been filed by the petitioners against Texas.

## III. Analysis

The Eleventh Amendment precludes suits "in law or equity, commenced or prosecuted against of the United State by Citizens, of another State, or by Citizens or subjects of any Foreign State." U.S. Const. amend. XI. For more than a century now, the Supreme Court has not limited sovereign immunity to the literal terms of the Amendment, Hans v. Louisiana, 134 U.S. 1 (1890), but rather has extended it to suits by its own citizens. Seminole Tribe of Fla. V. Florida, 517 U.S. 44, 55 (1996). Furthermore, recent Supreme Court decisions have explained that "sovereign immunity of the State neither derives from, nor is limited by, the terms of the Eleventh Amendment." Alden v. Maine, 527 U.S. 706, 713 (1999). Rather, the "preeminent purpose of state sovereign immunity is to accord States the dignity that is consistent with their status as sovereign entities." Federal Maritime Comm'n v. South Carolina State Ports Auth., 535 U.S. 743, 760 (2002).

Sovereign immunity has been extended to admiralty cases. Ex parte New York, 256 U.S. 490 (1921). Nonetheless, sovereign immunity has proven less applicable in admiralty. See e.g., Florida Dep't of State v. Treasure Salvors, Inc., 458 U.S. 670 (1982) (holding that Eleventh Amendment does not preclude the issuance of a warrant for a wreckage by a federal court in an *in rem* admiralty action); California v. Deep Sea Resarch, Inc.523 U.S. 491 (1998) (holding that sovereign immunity does not impede federal jurisdiction in an *in rem* admiralty action when the State does not possess the subject property).

### A. The Limitation Proceedings

Texas argues that requiring it to submit to the Limitation Act's procedures contravenes the Eleventh Amendment. Texas asserts that it is the subject of an unconsented action because it was served a monition which enjoined further litigation of the incident in any other court. Furthermore, Texas complains that it has been "compelled" to file its claim in federal court in order to avoid default.

6

To start, the Court disagrees with Texas' description of the monition. The monition was just that - a warning that required nothing of Texas. Although the monition ordered a stay of state court proceedings, Texas was simply notified that in order to avoid default, it needed to file suit with this Court. The Court will not conclude that by precluding a state forum to determine Petitioners' liability, that Texas was "forced" to submit to its jurisdiction. Furthermore, the Court need not address the constitutional issues raised by Texas. Put simply, the fact that Texas must file a claim in this Court in order to recover does not implicate Texas' sovereign immunity. The Court's decision is in accord with every other court that has decided the issue.[3] This Court agrees with and adopts the Tenth Circuit's conclusion that because of its similarities to a bankruptcy proceeding, a limitation action does not implicate sovereign immunity. See Magnolia Marine, 366 F.3d 1153.

In Magnolia Marine, the facts are similar to those of the present case. A tugboat pushing barges up the Arkansas River in Oklahoma crashed into a span bridge. Id. at 1155. The bridge collapsed and several vehicles fell into the river causing a number of deaths. Id. The defendant filed a petition in Mississippi federal court seeking exoneration from or limitation of his damages. Id. The next day, the State of Oklahoma filed a complaint in an Oklahoma State Court. Id. The actions were later consolidated in an Oklahoma federal court, whereupon Oklahoma moved to be dismissed on the basis of sovereign immunity. Id. The district court denied the motion.

The Tenth Circuit affirmed holding that the limitation proceedings were not "a suit 'commenced or prosecuted against' the State of Oklahoma." Id. at 1156. The Tenth

---

[3] See In re Magnolia Marine Transp. Co., 366 F.3d 1153 (10th Cir. 2004) (holding that because of its similarity to bankruptcy proceedings, a limitation proceeding does not constitute a suit commenced or prosecuted against the State in violation of sovereign immunity); Bouchard Transp. Co. v. Updegraff, 147 F.3d 1344 (11th Cir. 1998) (holding that because of its similarities to an *in rem* admiralty action, a limitation proceeding does not constitute a suit commenced against the State implicating sovereign immunity); In re Abaco Treasure Ltd., 1993 A.M.C. 1976 (S.D. Fla. 1993) (holding that a limitation action is not an action against the State and therefore does not implicate the Eleventh Amendment); Application of Sandbar I, Inc., 1992 WL 84277 (E.D. La. 1992) ("A limitation of liability action is so thoroughly defensive in nature that it falls wholly outside the scope of 'suit against a state' as used in the Eleventh Amendment.").

7

Circuit noted that: (1) Oklahoma sued the defendant for damages; (2) defendant neither named Oklahoma as a defendant nor served it process; and (3) that the limitation proceeding "merely provides a forum establishing a shipowner's right to limitation of liability and managing disbursement of a limitation fund to claimants who prove [the defendant] is liable to them." Id. at 1157. Additionally, the Court found that the proceedings created a defense[4] and did not "transform the shipowner's defensive position under the Act into an offensive one." Id.

The Tenth Circuit found support for its argument in bankruptcy decisions. Id. at 1159. As a point of reference, the Tenth Circuit examined Texas v. Walker, 142 F.3d 813 (5th Cir. 1998), where the Fifth Circuit established that bankruptcy proceedings did not violate sovereign immunity. Magnolia Marine, 366 F.3d at 1159. As the Fifth Circuit explained:

> In a bankruptcy case . . . a debtor turns over his assets, which constitute the estate, for liquidation by a trustee for the benefit of creditors according to their statutory priorities. Bankruptcy law modifies the state's collection rights with respect to its claims against the debtor, but it also afford the state an opportunity to share in the collective recovery.

Walker, 142 F.3d at 822. The Fifth Circuit further held that the adjudication of a state's rights, although not a participant in the bankruptcy proceedings, did not contravene a state's sovereign immunity. Id. at 821-22. Accordingly, the Tenth Circuit held:

> Just as the court assumes jurisdiction over the estate in bankruptcy, a shipowner in a limitation proceeding turns over to the court a sum equal to his or her interest in a vessel and pending freight. The court administering a limitation proceeding stays other suits seeking collection from the shipowner, much as a bankruptcy petition acts as a stay of further actions against the debtor pursuant to 11 U.S.C. § 362. While a creditor's ability to collect against a shipowner are altered by

---

[4]Oklahoma asserted that the Supreme Court has extended the protection of sovereign immunity beyond the literal terms of the Eleventh Amendment, which speaks of "any suit . . . *against* [a] State." Magnolia Marine, 366 F.3d at 1157 (emphasis added). Although the Tenth Circuit agreed, it found that where sovereign immunity was extended, the disputed conduct consistently involved a suit *against* the State. Id.

> these administrative schemes, their consolidation of claims is meant to ensure equitable distribution and prevent premature extinction of a limited estate or fund.

Magnolia Marine, 366 F.3d at 1159 (citations omitted). Therefore, the Court concluded that in bankruptcy, "'the claimant is a State, the procedure of proof and allowance is not transmitted into a suit against the State because the court entertains objections to the claim. The State is seeking something from the debtor. No judgment is sought against the State.' The same is true in a limitation proceeding under admiralty law." Id. at 1160 (quoting Gardner v. New Jersey, 329 U.S. 565, 573-74 (1947) (holding that bankruptcy petition did not violate the Eleventh Amendment)).

This Court further notes that in filing a limitation complaint, the petitioners are not seeking monetary damages from or any other affirmative relief from Texas. Lastly, all the petitioners seek is a resolution of whether they may limit their liability to the deposited sum equivalent to their interest in the vessel.

Worthy of discussion is the Supreme Court's recent decision in Tennessee Student Assistance Corp. v. Hood, 124 S. Ct. 1905 (2004). There, a student received a Chapter 7 discharge on all of her debts except for an exempted Tennessee state-held student loan. Id. at 1908-09. She later filed an adversary proceeding, citing and summoning the State of Tennessee to appear, in order to determine whether that loan constituted an undue hardship entitled to discharge. Id.

Chief Justice Rehnquist, writing for the majority, held that such a proceeding and the fact that the State was served process and a summons, did not equate to a suit against the State implicating sovereign immunity. Id. at 1912-15. The decision drew on similarities between a bankruptcy proceeding and an admiralty *in rem* action. Id. at 1912-13. Importantly, the decision focused on how a bankruptcy court, like an *in rem* admiralty court, has jurisdiction over the *res* and not the *persona*. Id. This distinction, the Court concluded, is significant since a nonparticipating creditor cannot be subjected to personal liability. Id. Importantly then, a nonparticipating State may have its interest in the *res* of an *in rem* or bankruptcy proceeding adjudicated without its consent while not violating sovereign

immunity since the State itself is not subjected to personal liability and therefore not the subject of a claim. Id.

In essence, the aim of a limitation proceeding is very narrow: it focuses on whether the petitioner is permitted to limit its liability. A prerequisite to such a determination is that the petitioner deposit with the Court a sum related to the petitioners interest in the vessel. This fund becomes the res the claimants pursue for their specific damages. A nonparticipating litigant in a limitation proceeding is not subject to personal liability since the parties are pursuing the res.[5] Also, if a claimant fails to state a claim, a Court may default that claim - even if the claimant is a State. Walker, 142 F.3d at 820 (holding that the Eleventh Amendment did not prevent "the discharge of a debt owed to a state in a bankruptcy proceeding in which the state does not participate in any fashion"). Therefore, the same distinctions the Supreme Court found to distinguish a bankruptcy proceeding from a suit against a State are present in limitation proceedings.

For these reasons, the Court holds that Texas' sovereign immunity as a claimant for damages is not implicated by the filing of a limitation action by petitioners.

### B.     The Counter and Cross claims

The contribution and indemnity claims against Texas are premised on negligence, negligence per se, and theories under the Texas Tort Claims Act. In short, the claims allege that Texas must indemnify or provide contribution to the petitioners since it failed to properly maintain navigational lights on the Causeway, causing or contributing to the allision. Normally, the Court would have supplemental jurisdiction over such state claims. See 28 U.S.C. § 1367. However, in this case, there is no question that the counter and cross claims filed by Petitioners are suits against Texas. Therefore, the Court must determine if sovereign immunity acts to bar these claims.

---

[5]An important nuance of limitation proceedings is that if a court determines that the petitioner is not permitted limitation, the jurisdiction over the res extends to the persona of the vessel owner. Arguably then, at this point, a nonparticipating party could become subject to personal liability if the petitioner filed a claim, i.e., an indemnity claim. However, if this were to occur against a nonparticipating State, this would assuredly constitute a suit against the State implicating sovereign immunity.

Sovereign immunity is not absolute. College Savings Bank v. Florida Prepaid Postsecondary Edu. Expense Bd., 527 U.S. 666, 670 (1999). The Supreme Court has recognized only two situations where an individual may sue a State. Id. First, Congress may authorize a private suit against a State in order to enforce the Fourteenth Amendment. Id. Additionally, a State may consent to a suit and thereby waive its immunity. Id.

In order to legitimately abrogate sovereign immunity, Congress must employ its enforcement powers of § 5 of the Fourteenth Amendment. City of Boerne v. Flores, 521 U.S. 507, 516-529 (1997). The § 5 enforcement powers were created to remedy or prevent constitutional violations. Id. There can be no serious argument that the limitation proceedings of 46 U.S.C. §§ 181 et. seq., were legislated to remedy such violations. Therefore, the Court must analyze whether Texas has in fact consented to suit in federal court.

The test to determine "whether a State has waived its immunity from federal-court jurisdiction is a stringent one." Atascadero State Hosp. V. Scanlon, 473 U.S. 234, 241 (1985). If a State voluntarily invokes the jurisdiction of a federal court, the State should be found to have waived its sovereign immunity. Gunter v. Atlantic Coast Line R. Co., 200 U.S. 273, 284 (1906). Furthermore, "where a state voluntarily becomes a party to a cause, and submits its rights for judicial determination, it will be bound thereby, and cannot escape the result of its own voluntary act . . . ." Id.; see Gardner, 329 U.S. at 574 (holding that a State waives its sovereign immunity in a bankruptcy proceeding by filing a proof of claim); Neinast v. Texas, 217 F.3d 275, 279 (5th Cir. 2000) (concluding that a State can waive its sovereign immunity by asserting its own claims).

Texas has submitted a claim against the Petitioners and therefore occupies a position equivalent to that of a plaintiff in this action. By voluntarily entering these proceedings, the Court finds that Texas has waived its sovereign immunity. This Court holds, however, that it lacks jurisdiction over actions pursuant to the Texas Tort Claims Act since that statute permits suits against Texas in state court *only*. Sherwinski v. Peterson, 98 F.3d 849, 852 (5th Cir. 1996).

## IV. Conclusion

The Court notes that by its findings, Texas is presented with a Hobson's choice: either file a claim with the limitation proceedings and subject itself to the Court's jurisdiction, or lose its claim. The Fifth Circuit faced this same dilemma in Walker. There, the Court was asked whether the Eleventh Amendment should prevent such a choice for a State in a bankruptcy proceeding. Walker, 142 F.3d at 822. The Court determined that because "[b]ankruptcy operates by virtue of the Supremacy Clause and without forcing the state to submit to suit in federal court," the plaintiff's "entitlement to assert his discharge against the state's claims invoked no Eleventh Amendment consequences." Id. This Court finds no reason why it should be any different in an admiralty limitation proceeding.

Premises considered, the Court hereby **DENIES** Texas' Motion to Dismiss. The Court **HOLDS** that sovereign immunity does not allow Texas to avoid this limitation proceeding; **DENIES** Texas' request that this Court dissolve, as respects Texas, the injunctions staying other court proceedings involving the above incident; and further **DENIES** Texas' request that counterclaims and cross-claims filed against Texas, other than the claims pursuant to the Texas Tort Claims Act, be dismissed.

DONE at Brownsville, Texas, this 30 day of September, 2004.

Hilda G. Tagle
United States District Judge