IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF TEXAS
BROWNSVILLE DIVISION

United States District Court
Southern District of Texas
FILED

SEP 3 0 2004

Michael N. Milby
Clerk of Court

| | | |
|---|---|---|
| IN RE THE COMPLAINT AND | § | |
| PETITION OF BROWN WATER | § | |
| TOWIN I, INC., AS OWNER, AND | § | |
| BROWN WATER MARINE SERVICE, INC. | § | C. A. No. B-01-157 |
| AS BAREBOAT CHARTERER, OF | § | |
| THE BROWN WATER V, ITS ENGINES, | § | |
| TACKLE, ETC. IN A CAUSE OF | § | |
| EXONERATION FROM OR LIMITATION | § | |
| OF LIABILITY | § | **Consolidated with** |
| | | |
| IN RE THE COMPLAINT AND | § | |
| PETITION OF AMERICAN | § | |
| COMMERCIAL LINES LLC AS | § | C.A. NO. B-02-004 |
| OWNER, AND, AMERICAN | § | **Admiralty** |
| COMMERCIAL BARGE LINES LLC | § | |
| AS CHARTERER OF THE BARGES | § | |
| NM-315, VLB-9182, ACL-9933B, AND | § | |
| VLB-9173, IN A CAUSE OF | § | |
| EXONERATION FROM OR | § | |
| LIMITATION OF LIABILITY | § | |

## CLAIMANTS' DESIGNATION OF EXPERTS

NOW COMES, CLAIMANTS and file this their designation of experts, as shown on the attached Exhibit "A", subject to the following:

I.

Claimants reserve the right to supplement this designation with additional designations of experts within the time limits imposed by the court or any alterations of same by subsequent Court Order or agreement of the parties, or pursuant to the Federal Rules of Civil Procedure and/or the Federal Rules of Civil Evidence.

II.

Claimants reserve the right to elicit, by way of cross-examination, opinion testimony from experts designated and called by other parties to the suit.   Claimants

express their intention to possibly call, as witnesses associated with adverse parties, any of Defendants/Respondents' experts.

### III.

Claimants reserve the right to call undesignated rebuttal expert witnesses whose testimony cannot reasonably be foreseen until the presentation of the evidence against Claimants.

### III.

Claimants reserve the right to withdraw the designation of any expert and to aver positively that any such previously designated expert will not be called as a witness at trial, and to re-designate same as a consulting expert, who cannot be called by opposing counsel.

### IV.

Claimants reserve the right to elicit any expert opinion or lay opinion testimony at the time of trial which would be truthful, which would be of benefit to the jury to determine material issues of fact, and which would not be violative of any existing Court Order or the Texas Rules of Civil Procedure.

### V.

Claimants hereby designate, as adverse parties, potentially adverse parties, and/or as witnesses associated with adverse parties, all parties to this suit and all experts designated by any party to this suit, even if the designating party is not a party to the suit at the time of trial. In the event a present or future party designates an expert but then is dismissed for any reason from the suit or fails to call any designated expert, Claimants reserve the right to designate and/or call any such party or such experts previously designated by any party.

VI.

## DESIGNATION OF MEDICAL DOCTORS & NURSES

In addition to the above designations, Claimants refer you to the medical records and nurses' notes, from which the identities of medical doctors and nurses may be determined. Claimants hereby designate such doctors, nurses and caregivers as experts who may be called to testify as expert witnesses at the time of trial to prove up the reasonableness and medical necessity of Claimants' expenses. See initial list of medical providers attached Exhibit "B."

VII.

Additionally, Exhibit "C" is an initial list of non-retained experts regarding the investigation of this accident, i.e, fire department, police officers investigating the accident, insurance representatives, funeral companies, etc.

VIII.

Claimants reserve whatever additional rights they might have with regard to experts, pursuant to Texas Rules of Civil Procedure, the Texas Rules of Civil Evidence, the case law construing same, and the rulings of the trial court.

Respectfully submitted this the __30__ day of September, 2004.

WATTS LAW FIRM, L.L.P.
1926 East Elizabeth Street
Brownsville, Texas 78520
Telephone Number: (956) 544-0500
Facsimile Number: (956) 541-0255


_____
Ray R. Marchan
Attorney for Claimants
State Bar No.12969050
Federal I.D. No. 9522

## **CERTIFICATE OF SERVICE**

On this the 3⁰ day of September, 2004, a true and correct copy of the foregoing instrument was forwarded to all counsel via facsimile, by hand-delivery, or by certified mail, return receipt requested.

RAY R. MARCHAN

## SERVICE LIST

*Jacqueline Paddock Individually and as Representative of the Estate of Chelsea and Barry Welch and as Next Friend of William B. Welch* being represented by:

Watts Law Firm, L.L.P.
Ray R. Marchan
1926 E. Elizabeth
Brownsville, Texas 78520
(956) 544-0500
(956) 541-0255 Fax

*Lydia Zamora Individually and as Representative of the Estate of Hector Martinez, Jr.* being represented by:

Watts Law Firm, L.L.P.
Ray R. Marchan
1926 E. Elizabeth
Brownsville, Texas 78520
(956) 544-0500
(956) 541-0255 Fax

*Brigette Goza* being represented by:
Watts Law Firm, L.L.P.
Ray R. Marchan
1926 E. Elizabeth
Brownsville, Texas 78520
(956) 544-0500
(956) 541-0255 Fax

*Gustavo Morales and Bigos International* being represented by:
Watts Law Firm, L.L.P.
Ray R. Marchan
1926 E. Elizabeth
Brownsville, Texas 78520
(956) 544-0500
(956) 541-0255 Fax

*J. Antonio Mireles, as Personal Representative of the Estate of Julio Cesar Mireles, Juan Antonio Mireles and Soledad Gonzalez Mireles* being represented by:
S. Mark Strawn
Schirrmeister Ajamie
Pennzoil Place - South Tower
711 Louisiana, Ste 2150
Houston, Texas 77002
(713) 860-1600
Fax (713) 860-1699

*Hector Martinez, Sr.* being represented by:
Jim Hart
Williams Bailey Law Firm, L.L.P.
8441 Gulf Freeway, Suite 600
Houston, Texas 77017
(713) 230-2200
Fax (713) 643-6226

*Anita Harris, Individually and as Next Friend of Victor Justin Harris, and as Representative of the Estate of Robert V. Harris* is being represented by:
Heriberto "Eddie" Medrano
Law Offices off Heriberto "Eddie" Medrano
1101 West Tyler
Harlingen, Texas 78550
(956) 428-2412
(956) 428-2495 FAX

*Esteban Rivas and Miriam Rivas Individually and as Representatives of the Estate of Stvan Rivas* are represented by:
John David Franz
The Law Offices of John David Franz
400 N. McColl
McAllen, Texas 78501
(956) 686-3300
(956) 686-3578 FAX

and

J. Chad Gauntt
Gauntt & Kruppstadt, L.L.P.
9004 Forest Crossing Dr., Suite C
The Woodlands, Texas 77381
(281) 367-6555
(281) 367-3705 FAX

*Estate of Robin Faye Leavell, Carol Leavell, Individually and as Representaive of the Estate of Robin Faye Leavell, Ricky Leavell, Individually and as Representative of the Estate of Robin Faye Leavell* are represented by:
Steve Q. McManus
Law Offices of McManus & Crane, L.L.P.
209 W. Juan Linn
P. O. Box 2206
Victoria, Texas 77902-2206
(361) 575-6764
(361) 575-8454 FAX

*Omar Hinojosa, Individually and as Administrator of the Estate of Gaspar Hinojosa, Raquel Hinojosa, Clarissa Hinojosa and Gaspar Hinojosa II* are being represented by:
Julian Rodriguez, Jr.
Attorney at Law
100 W. Pecan
McAllen, Texas 78501
(956) 682-8801
(956) 682-4544 FAX

*William Eugene (Gene) Kimbrell Individually as Suviving*
*Father of Chelsa Welch, deceased*
Richard Leo Harrell
State Bar No. 09041320
THE EDWARDS LAW FIRM, L.L.P.
Frost Bank Plaza, Ste 2100
Corpus Christi, Texas 78403-0480
(361)698-7600
(361) 698-7615 FAX

*Rene Mata and Frank Mata* are represented by:
Raymond Thomas and
Andres Gonzalez, Jr.
Kittleman, Thomas, Ramirez & Gonzalez, PLLC
4900-B North 10th Street
McAllen, Texas 78504
(956) 686-8797
(956) 630-5199 FAX

*William Morris Welch, Individually and as Surviving Parent of Barry Welch is represented by:*
James B. Manley, P.C.
3616 Preston Road
Pasadena, Texas 77505
713-947-1670
713-947-6956 FAX

*Brown Water Towing I, Inc. As Owner and Brown Water Marine Service, Inc., as Bareboat Charterer of the Brown Water V, Its Enggines, Tackle, Etc., in a Cause for Exoneration From or Limitation of Liability* being represented by:
Will W. Pierson
Royston, Rayzor, Vickery & Williams, L.L.P.
1700 Wilson Plaza West
606 N. Carancahua
Corpus Christi, Texas 784766
(361) 884-8808
(361) 884-7261 Fax

and

Kieth N. Uhles
James H. Hunter, Jr.
Royston, Rayzor, Vickery & Williams, L.L.P.
55 Cove Circle
P. O. Box 3509
Brownsville, Texas  78523-3509
(956) 542-4377
(956) 542-4370 FAX

*American Commercial Lines LLC as Owner, and American Commercial Barge Lines, LLC, as Charterer of the Barges NM-315, VLB-9182, ACL-9933B, VLB-9173* being represented by:
Les Cassidy
Woolsey & Cassidy, P.C.
1020 Bank of America
500 North Water Street
Corpus Christi, Texas  78471
(361) 887-2965
(361) 887-6521 FAX

and

Glenn Goodier
Jones, Walker, Waechter, Poitevent, Carrere & Denegre, L.L.P.
201 St. Charles Avenue - 48th Floor
New Orleans, LA  70170-5100
(504) 582-8174
(504) 582-8010 FAX


*Southwestern Bell Telephone, L.P.* are represented by:
Geoffrey Amsel
1010 N. St. Mary's Street, Room 1403
San Antonio, Texas  78215
(210) 886-4805
(210) 222-7194 FAX

*Laguna Madre Water District* are represented by:
Juan A. Magallanes
Magallanes, Hinojosa & Mancias, P.C.
1713 Boca Chica blvd.
Brownsville, Texas  78520
(956) 544-6571
(956) 544-4290 FAX

*State of Texas* is being represented by:
Mark Spansel and
Jack Gilbert
Margie Manzano Corbett

Office of the Attorney General
Transportation Division
P. O. Box 12548
Austin, Texas  78711-2548
(512) 463-2004
(512) 4472-3855  FAX

and

Daryl G. Dursum
Adams & Reese, L.L.P.
4400 One Houston Center
1221 McKinney
Houston, Texas  77010
(713) 652-5151
(713) 652-5152  FAX


*Rolando Lee Moya, Alberto Leroy Moya, Antonio Salinas, Jr., and Roberto Espericueta* are
being represented by:
Frank Enriquez
       Roberto D. Puente
Law Offices of Frank Enriquez
4200-B North Bicentennial
McAllen, Texas  78504
(956) 686-5291
(956) 618-5064  FAX

*Attorney Ad Litem for William Welch, minor*
Veronica Farias
Law Offices of Veronica Farias
2854 Boca Chica
Brownsville, Texas  78521

EXHIBIT "A"

RETAINED EXPERT WITNESS LIST

CLAIMANTS retained experts are:

1.     Captain G.E." Jay Dixler/John Deck III

2.     Dr. David Feltoon

The descriptions provided below each retained experts name are not intended to be an exhaustive list of the areas to be addressed by the expert. Likewise, the listing of documents or materials reviewed by any expert are not necessarily a complete listing of the materials contained within the expert's file. Rather, this information is being furnished to provide opposing counsel with an indication of the general areas that the expert will address and to provide guidance on the types of information or materials that the expert has or will review in connection with his/her work in this case. All of the materials provided to, reviewed by, or prepared by or for each expert are available immediately for inspection and copying upon request. Further, these materials will be made available at each expert's deposition.

Maritime Consultants and Associates
Captain G.E. "Jay" Dixler
P. O. Box 899
Wildwood, Texas  77663
409-834-2433
F:  409-834-2499
and
John Deck III
P. O. Box 501
Chardon, Ohio  44024
440-635-0531

Captain Dixler is licensed by the U.S. Coast Guard in the dual capacity of Ocean Master and Chief Engineer.  He has extensive work experience as Master and Chief Engineer aboard a wide variety of commercial work vessels, especially along the South Texas coast.  His CV is attached hereto.  Commander John Deck, III is a retired Coast Guard

Officer with 20 years of service. He holds a Bachelor of Science from the U.S. Coast Guard Academy and a Master's of Science degree in Mechanical Engineering and a Naval Engineer's degree from Massachusetts Institute of Technology. His CV is attached hereto. Attached hereto is their expert report containing the preliminary findings of their experts who have conferred with one another through the course of the production of this report. The experts' opinions are attached in the report herein attached.

H. David Feltoon, Ph.D.
Clinical & Neuropsychology
8025 Chalk Knoll
Austin, Texas 78735
(512) 750-7164

Dr. H. David Feltoon is a clinical psychologist. He also holds a Ph.D. in Clinical and Neuropsychological. In general, Dr. Feltoon will testify regarding his evaluations of Claimants. He will testify regarding his opinions of the present and future psychological effect and damages that accident has had on Claimants. See CV and report attached hereto.

THE FOLLOWING INDIVIDUAL IS A CONSULTING EXPERT TO THOSE RETAINED EXPERTS PREVIOUSLY LISTED:

James Sanders
Lake Charles Diesel, Inc.
5400 Hwy. 90 East
P.O. Drawer 1707
Lake Charles, LA 70602-1707
337.433.6311
Fax: 337.433.9744

**EXHIBIT "B"**
**NON-RETAINED MEDICAL EXPERTS**

1)    All medical and/or dental care providers below will testify regarding matters contained in their records and depositions. Their observations, diagnosis, opinions, prognosis, causation, facts, physical and clinical examinations, and tests do reviewed or relied upon are incorporated herein by reference. This includes opinions regarding Claimants pain, mental anguish, medical care, medical expenses, limitations, disfigurement, physical impairment, wage earning capacity, surgery, or any other medical issue in this case. The medical care providers may also testify regarding the reasonableness and necessity of the medical charges and treatment and they may authenticate the medical charges. The medical care providers will testify that the injuries for which they treated Claimants were caused by the subject incident.    All retained and non-retained medical providers are not subject to the control of the Claimants, although Claimants will be requesting that they testify by deposition or live at trial. These retained and non-retained medical providers will testify about any healthcare or medical issues within his/her area of expertise. Records and/or medical reports from these retained and non-retained medical providers have been previously produced to the Respondents.

All retained and non-retained medical providers are expected to testify regarding their education, experience, and credential as a physician or healthcare provider. These retained and non-retained medical providers have reviewed all of the medical records and medical bills of the Claimants which pertain to injuries suffered in the incident made the basis of this lawsuit. These retained and non-retained medical providers have examined the Claimants and reviewed x-rays, MRIs, CTScansA or other studies. These retained and non-retained medical providers will testify concerning their diagnosis(ses), treatment, recommendations, and prognosis (ses) for the Claimants. These retained and non-retained medical providers will testify about the nature and severity of the Claimants injuries and the associated limitations. These retained and non-retained medical providers are familiar with the reasonable and customary charges for medical treatment of the type that Claimants has received for the injuries Claimants sustained in the incident made the basis of this lawsuit. These retained and non-retained medical providers are of the opinion that the Claimants injuries were proximately caused by the incident made the basis of this lawsuit. These retained and non-retained medical providers are of the opinion that the medical bills and expenses incurred by the Claimants [and previously furnished to Defendant in response to other discovery requests] were reasonable and necessary. These retained and non-retained medical providers are of the opinion that Claimants will require additional and future medical treatment which will be necessary because of the injuries Claimants sustained in the incident made the basis of this lawsuit. These retained and non-retained medical providers will give opinion testimony concerning the reasonable charges for future medical treatment that is necessary because of the injuries Claimants suffered in the incident made the basis of this lawsuit.

Lawrence J. Dahm, M.D.
Margie W. Cornwell
DeWitt S. Davenport, M.D.
Wm. Eddy, HT, CT (ASCP) CT (IAC)
Pathology
P. O. Drawer 2588
Harlingen, Texas  78551

Said pathologists are expected to testify regarding the autopsies performed on the decedant claimants.  See reports attached hereto.

Stephanie Garcia, M.D.
202 2nd Street
Port Isabel, Texas  78578
Knowledge of facts and circumstances surrounding the medical examination and treatment of Bridgette Goza for injuries sustained as a result of the accident made the basis of this lawsuit.  All medical providers are expected to testify fully as to history, examination, treatment, diagnosis, prognosis and causation as related to Bridgette Goza's injuries that form the basis of this suit.  Additionally, Bridgette Goza may introduce all the health care provider's medical records through a qualified custodian of records.

Custodian of records for
Dr. Stephanie Garcia
Knowledge of facts and circumstances surrounding the medical and financial records pertaining to Bridgette Goza for injuries sustained as a result of the accident made the basis of this lawsuit.  It is reasonably anticipated that the custodian of records will testify that the medical and financial records pertaining to Bridgette Goza are under the supervision, custody and control of the custodian of records, that such records were kept in the regular course of business, and that the medical expenses incurred are reasonable and necessary.

Dr. Jaime Silva
100 Uptown Avenue
Suite 100
Brownsville, Texas  78520

Knowledge of facts and circumstances surrounding the medical examination and treatment of Bridgette Goza for injuries sustained as a result of the accident made the basis of this lawsuit.  All medical providers are expected to testify fully as to history, examination, treatment, diagnosis, prognosis and causation as related to Bridgette Goza's injuries that form the basis of this suit.  Additionally, Bridgette Goza may introduce all the health care provider's medical records through a qualified custodian of records.

Custodian of records for
Dr. Jaime Silva
Knowledge of facts and circumstances surrounding the medical and financial records
pertaining to Bridgette Goza for injuries sustained as a result of the accident made the
basis of this lawsuit. It is reasonably anticipated that the custodian of records will
testify that the medical and financial records pertaining to Bridgette Goza are under the
supervision, custody and control of the custodian of records, that such records were
kept in the regular course of business, and that the medical expenses incurred are
reasonable and necessary.

Dr. Paul Lenz
2300 Central Blvd.
Brownsville, Texas

Knowledge of facts and circumstances surrounding the medical examination and
treatment of Bridgette Goza for injuries sustained as a result of the accident made the
basis of this lawsuit. All medical providers are expected to testify fully as to history,
examination, treatment, diagnosis, prognosis and causation as related to Bridgette
Goza's injuries that form the basis of this suit. Additionally, Bridgette Goza may
introduce all the health care provider's medical records through a qualified custodian of
records.

Custodian of records for
Dr. Paul Lenz
Knowledge of facts and circumstances surrounding the medical and financial records
pertaining to Bridgette Goza for injuries sustained as a result of the accident made the
basis of this lawsuit. It is reasonably anticipated that the custodian of records will
testify that the medical and financial records pertaining to Bridgette Goza are under the
supervision, custody and control of the custodian of records, that such records were
kept in the regular course of business, and that the medical expenses incurred are
reasonable and necessary.


William Raymond Aston and Custodian of Records
Harlingen EMS
1705 Vermont Street
Harlingen, Texas 78550
or
P. O. Box 533668
Harlingen, Texas 78553
(956) 864-2711
Executive Director
Knowledge of facts and circumstances surrounding the ambulatory service which
transported claimants to Valley Regional Medical Center. It is reasonably anticipated
that the custodian of records will testify that the financial records for pertaining to
claimants are under the supervision, custody and control of the custodian of records,
that such records were kept in the regular course of business, and that the medical
expenses incurred are reasonable and necessary.

Minerva G. Coronado and Custodian of Records
Sundeep Reddy MD
Dr. Zamora
Dr. Erwin
David Grant Haman, Do
Mizael Gonzales x-Ray Technologist
Valley Regional Medical Center
100-A Alton Gloor Blvd.
Brownsville, Texas 78520
Director of Patients Accounts
Knowledge of facts and circumstances surrounding the medical and financial records of
pertaining to Plaintiff for injuries sustained as a result of the accident made the basis of
this lawsuit. It is reasonably anticipated that the custodian of records will testify that
the medical and financial records pertaining to Plaintiff are under the supervision,
custody and control of the custodian of records, that such records were kept in the
regular course of business, and that the medical expenses incurred are reasonable and
necessary.

Richard L. Fremaux and Custodian of records.
Valley Regional Medical Center
100-A Alton Gloor Blvd.
Brownsville, Texas 78520
Performed CT Spine of Bridgette Goza
Doctor-Knowledge of facts and circumstances surrounding the medical examination
and treatment of Plaintiff for injuries sustained as a result of the accident made the basis
of this lawsuit. All medical providers are expected to testify fully as to history,
examination, treatment, diagnosis, prognosis and causation as related to Plaintiff's
injuries that form the basis of this suit. Additionally, Plaintiff may introduce all the
health care provider's medical records through a qualified custodian of records.
Custodian of Records-Knowledge of facts and circumstances surrounding the medical
and financial records of pertaining to Plaintiff for injuries sustained as a result of the
accident made the basis of this lawsuit. It is reasonably anticipated that the custodian of
records will testify that the medical and financial records pertaining to Plaintiff are
under the supervision, custody and control of the custodian of records, that such
records were kept in the regular course of business, and that the medical expenses
incurred are reasonable and necessary.

Ana Gutierrez, M. D. and custodian of records
1313 Alton Gloor Blvd., Ste. C.
Brownsville, Texas 78521
Treated Brigette Goza and Gustavo Morales
Doctor-Knowledge of facts and circumstances surrounding the medical examination
and treatment of Plaintiff for injuries sustained as a result of the accident made the basis
of this lawsuit. All medical providers are expected to testify fully as to history,
examination, treatment, diagnosis, prognosis and causation as related to Plaintiff's
injuries that form the basis of this suit. Additionally, Plaintiff may introduce all the
health care provider's medical records through a qualified custodian of records.

<u>Custodian of Records</u>-Knowledge of facts and circumstances surrounding the medical and financial records of pertaining to Plaintiff for injuries sustained as a result of the accident made the basis of this lawsuit. It is reasonably anticipated that the custodian of records will testify that the medical and financial records pertaining to Plaintiff are under the supervision, custody and control of the custodian of records, that such records were kept in the regular course of business, and that the medical expenses incurred are reasonable and necessary.

Harlingen EMS and custodian of records
1705 Vermont Street
Harlingen, Texas 78550
or
P. O. Box 533668
Harlingen, Texas 78553
(956) 864-2711
Knowledge of facts and circumstances surrounding the emergency medical services of claimants of the accident made the basis of this accident. It is reasonably anticipated that the custodian of records will testify that the financial records for pertaining to claimants are under the supervision, custody and control of the custodian of records, that such records were kept in the regular course of business.


Barbara J. Hausman, M. T. (ASCP) and custodian of records
Valley Regional Medical Center
Pathology Department
100 A Alton Gloor
Brownsville, Texas 78526
Lab Director
<u>Doctor</u>-Knowledge of facts and circumstances surrounding the medical examination and treatment of Plaintiff for injuries sustained as a result of the accident made the basis of this lawsuit. All medical providers are expected to testify fully as to history, examination, treatment, diagnosis, prognosis and causation as related to Plaintiff's injuries that form the basis of this suit. Additionally, Plaintiff may introduce all the health care provider's medical records through a qualified custodian of records.
<u>Custodian of Records</u>-Knowledge of facts and circumstances surrounding the medical and financial records of pertaining to Plaintiff for injuries sustained as a result of the accident made the basis of this lawsuit. It is reasonably anticipated that the custodian of records will testify that the medical and financial records pertaining to Plaintiff are under the supervision, custody and control of the custodian of records, that such records were kept in the regular course of business, and that the medical expenses incurred are reasonable and necessary.

Los Fresnos Family Health Clinic and custodian of records
503 A West Ocean Blvd.
Los Fresnos, Texas 78566
<u>Doctor</u>-Knowledge of facts and circumstances surrounding the medical examination and treatment of Plaintiff for injuries sustained as a result of the accident made the basis of this lawsuit. All medical providers are expected to testify fully as to history, examination, treatment, diagnosis, prognosis and causation as related to Plaintiff's

injuries that form the basis of this suit. Additionally, Plaintiff may introduce all the health care provider's medical records through a qualified custodian of records. Custodian of Records-Knowledge of facts and circumstances surrounding the medical and financial records of pertaining to Plaintiff for injuries sustained as a result of the accident made the basis of this lawsuit. It is reasonably anticipated that the custodian of records will testify that the medical and financial records pertaining to Plaintiff are under the supervision, custody and control of the custodian of records, that such records were kept in the regular course of business, and that the medical expenses incurred are reasonable and necessary.

Dr. Donald Jay Mulkene
Spring Hill Behavioral Health
100 Memorial Hospital Drive, Ste. 1-B
Mobil, Alabama 36608
Dr. Mulkene is Capt. David Fowler's treating psychologist and has knowledge of the impact of the accident on Capt. Fowler's emotional and psychological well-being.

Regina Ortiz and custodian of records
Los Fresnos Family Health Clinic
503 A West Ocean Blvd.
Los Fresnos, Texas 78566
Doctor-Knowledge of facts and circumstances surrounding the medical examination and treatment of Plaintiff for injuries sustained as a result of the accident made the basis of this lawsuit. All medical providers are expected to testify fully as to history, examination, treatment, diagnosis, prognosis and causation as related to Plaintiff's injuries that form the basis of this suit. Additionally, Plaintiff may introduce all the health care provider's medical records through a qualified custodian of records. Custodian of Records-Knowledge of facts and circumstances surrounding the medical and financial records of pertaining to Plaintiff for injuries sustained as a result of the accident made the basis of this lawsuit. It is reasonably anticipated that the custodian of records will testify that the medical and financial records pertaining to Plaintiff are under the supervision, custody and control of the custodian of records, that such records were kept in the regular course of business, and that the medical expenses incurred are reasonable and necessary.

Yolanda Padilla and custodian of records
Harlingen EMS
1705 Vermont Street
Harlingen, Texas 78550
or
P. O. Box 533668
Harlingen, Texas 78553
(956) 864-2711
Knowledge of facts and circumstances surrounding the emergency medical services of claimants of the accident made the basis of this accident. It is reasonably anticipated that the custodian of records will testify that the financial records for pertaining to claimants are under the supervision, custody and control of the custodian of records, that such records were kept in the regular course of business.

L. R. Pelly, M. D. and custodian of records
P. O. Box 3190
585 W. Jefferson
Brownsville, Texas 78523-3190
(956) 544-0755
Treated Gustavo Morales
<u>Doctor</u>-Knowledge of facts and circumstances surrounding the medical examination
and treatment of Plaintiff for injuries sustained as a result of the accident made the basis
of this lawsuit. All medical providers are expected to testify fully as to history,
examination, treatment, diagnosis, prognosis and causation as related to Plaintiff's
injuries that form the basis of this suit. Additionally, Plaintiff may introduce all the
health care provider's medical records through a qualified custodian of records.
<u>Custodian of Records</u>-Knowledge of facts and circumstances surrounding the medical
and financial records of pertaining to Plaintiff for injuries sustained as a result of the
accident made the basis of this lawsuit. It is reasonably anticipated that the custodian of
records will testify that the medical and financial records pertaining to Plaintiff are
under the supervision, custody and control of the custodian of records, that such
records were kept in the regular course of business, and that the medical expenses
incurred are reasonable and necessary.

Port Isabel EMS and custodian of records
305 E. Maxan
Port Isabel, Texas 78578
(956) 943-7829
Knowledge of facts and circumstances surrounding the emergency medical services of
claimants of the accident made the basis of this lawsuit. It is reasonably anticipated that
the custodian of records will testify that the wrecker service reports pertaining to
Plaintiff are under the supervision, custody and control of the custodian of records and
that such records were kept in the regular course of business.

Jaime L. Silva, M. D. and custodian of records
Los Fresnos Family Health Clinic
503 A West Ocean Blvd.
Los Fresnos, Texas 78566
<u>Doctor</u>-Knowledge of facts and circumstances surrounding the medical examination
and treatment of Plaintiff for injuries sustained as a result of the accident made the basis
of this lawsuit. All medical providers are expected to testify fully as to history,
examination, treatment, diagnosis, prognosis and causation as related to Plaintiff's
injuries that form the basis of this suit. Additionally, Plaintiff may introduce all the
health care provider's medical records through a qualified custodian of records.
<u>Custodian of Records</u>-Knowledge of facts and circumstances surrounding the medical
and financial records of pertaining to Plaintiff for injuries sustained as a result of the
accident made the basis of this lawsuit. It is reasonably anticipated that the custodian of
records will testify that the medical and financial records pertaining to Plaintiff are
under the supervision, custody and control of the custodian of records, that such
records were kept in the regular course of business, and that the medical expenses
incurred are reasonable and necessary.

Valley Baptist Medical Center and custodian of records
Pathology Department
2101 Pease Street
Harlingen, Texas 78550
(956) 389-1100
<u>Doctor</u>-Knowledge of facts and circumstances surrounding the medical / psychological
examination and treatment of Plaintiff for injuries sustained as a result of the accident
made the basis of this lawsuit. All medical providers are expected to testify fully as to
history, examination, treatment, diagnosis, prognosis and causation as related to
Plaintiff's injuries that form the basis of this suit. Additionally, Plaintiff may introduce
all the health care provider's medical records through a qualified custodian of records.
<u>Custodian of Records</u>-Knowledge of facts and circumstances surrounding the medical
and financial records of pertaining to Plaintiff for injuries sustained as a result of the
accident made the basis of this lawsuit. It is reasonably anticipated that the custodian of
records will testify that the medical and financial records pertaining to Plaintiff are
under the supervision, custody and control of the custodian of records, that such
records were kept in the regular course of business, and that the medical expenses
incurred are reasonable and necessary.

Juan Carlos Villarreal and custodian of records
City of Port Isabel EMS
305 E. Maxan
Port Isabel, Texas 78578
(956) 943-7829
EMS Director
Knowledge of facts and circumstances surrounding the emergency medical services
given to claimants of the accident made the basis of this lawsuit. It is reasonably
anticipated that the custodian of records will testify that the wrecker service reports
pertaining to Plaintiff are under the supervision, custody and control of the custodian of
records and that such records were kept in the regular course of business.

Valley Regional Medical Center and custodian of records
Pathology Department
100-A Alton Gloor Blvd.
Brownsville, Texas 78520
<u>Doctor</u>-Knowledge of facts and circumstances surrounding the medical / psychological
examination and treatment of Plaintiff for injuries sustained as a result of the accident
made the basis of this lawsuit. All medical providers are expected to testify fully as to
history, examination, treatment, diagnosis, prognosis and causation as related to
Plaintiff's injuries that form the basis of this suit. Additionally, Plaintiff may introduce
all the health care provider's medical records through a qualified custodian of records.
<u>Custodian of Records</u>-Knowledge of facts and circumstances surrounding the medical
and financial records of pertaining to Plaintiff for injuries sustained as a result of the
accident made the basis of this lawsuit. It is reasonably anticipated that the custodian of
records will testify that the medical and financial records pertaining to Plaintiff are
under the supervision, custody and control of the custodian of records, that such
records were kept in the regular course of business, and that the medical expenses
incurred are reasonable and necessary.

Dr. She Ling Wong and custodian of records
Valley Regional Medical Center
100-A Alton Gloor Blvd.
Brownsville, Texas 78520
Treated Brigette Goza

<u>Doctor</u>-Knowledge of facts and circumstances surrounding the medical/ psychological examination and treatment of Plaintiff for injuries sustained as a result of the accident made the basis of this lawsuit. All medical providers are expected to testify fully as to history, examination, treatment, diagnosis, prognosis and causation as related to Plaintiff's injuries that form the basis of this suit. Additionally, Plaintiff may introduce all the health care provider's medical records through a qualified custodian of records. <u>Custodian of Records</u>-Knowledge of facts and circumstances surrounding the medical and financial records of pertaining to Plaintiff for injuries sustained as a result of the accident made the basis of this lawsuit. It is reasonably anticipated that the custodian of records will testify that the medical and financial records pertaining to Plaintiff are under the supervision, custody and control of the custodian of records, that such records were kept in the regular course of business, and that the medical expenses incurred are reasonable and necessary.

# EXHIBIT C
## Persons with Knowledge of Relevant Facts

Allstate Insurance Company and Custodian of Records
c/o Thomas E. Quirk
Aaron & Quirk
901 N. E. Loop 410, Ste 903
San Antonio, Texas 78209-1307
Subrogation claimant for property damages of Bridgette Goza. It is reasonably anticipated that the custodian of records will testify that the financial records for pertaining to claimants are under the supervision, custody and control of the custodian of records, that such records were kept in the regular course of business, and that the medical expenses incurred are reasonable and necessary.

Eddie Arriloa
1616 Michigan
Port Isabel, Texas
Mr. Arriloa is the supervisor of the Long Swing Bridge in Port Isabel, Texas. He has knowledge of different barge configurations passing through the area and of the circumstances surrounding the accident.

Hector Bennett
Port Isabel Fire Department
204 Musina
Port Isabel, Texas 78578
(956) 943-3523
and Custodian of Records
Knowledge of facts and circumstances surrounding the investigation of the accident made the basis of this accident. It is reasonably anticipated that the custodian of records will testify that the financial records for pertaining to claimants are under the supervision, custody and control of the custodian of records, that such records were kept in the regular course of business.

Blue Cross Blue Shield of Texas and Custodian of Records
(A Division of Health Care Service Corp)
2329 S. MacArthur Blvd.
Springfield, Illinois
Medical lien holder for Rene Mata. It is reasonably anticipated that the custodian of records will testify that the financial records for pertaining to claimants are under the supervision, custody and control of the custodian of records, that such records were kept in the regular course of business, and that the medical expenses incurred are reasonable and necessary.

Agustin Briseno
6684 Monte Vello
Brownsville, Texas 78520
Mr. Briseno works at the Long Island Swing Bridge in Port Isabel, Texas He has
knowledge of the configuration of barges passing through the area and of the
circumstances surrounding the area.

Rafael Briseno
1015 Tineer Drive
Brownsville, Texas 78520
Mr. Briseno works at the Long Island Swing Bridge in Port Isabel, Texas. He has
knowledge of the configuration of barges passing through the area and of the
circumstances surrounding the area.

Brownsville Fire Department and custodian of records
1010 E. Adams Street
Brownsville, Texas 78520
(956) 546-3195
Knowledge of facts and circumstances surrounding the investigation of the accident
made the basis of this accident. It is reasonably anticipated that the custodian of
records will testify that the financial records for pertaining to claimants are under the
supervision, custody and control of the custodian of records, that such records were
kept in the regular course of business.

Brownsville Herald and Custodian of Records
1135 East Van Buren Street
Brownsville, Texas 78520
(956) 542-4301
Knowledge of facts and circumstances surrounding the news reporting of the accident
made the basis of this accident. It is reasonably anticipated that the custodian of
records will testify that the financial records for pertaining to claimants are under the
supervision, custody and control of the custodian of records, that such records were
kept in the regular course of business.

Buena Vista Funeral Home and Custodian of Records
125 McDavitt Blvd.
Brownsville, Texas  78520
956-541-5400
Knowledge of facts and circumstances surrounding the funeral and funeral expense of
claimants in the accident made the basis of this accident. It is reasonably anticipated
that the custodian of records will testify that the financial records for pertaining to
claimants are under the supervision, custody and control of the custodian of records,
that such records were kept in the regular course of business.

Cameron County District Attorney's Office and Custodian of Records
Attn: Yolanda de Leon, District Attorney
974 E. Harrison
Brownsville, Texas 78520

Knowledge of facts and circumstances surrounding the investigation of the accident made the basis of this accident. It is reasonably anticipated that the custodian of records will testify that the financial records for pertaining to claimants are under the supervision, custody and control of the custodian of records, that such records were kept in the regular course of business.

Sigifredo C. Cantu, Fire Chief and Custodian of Records
Harlingen Fire Department
3510 E. Grimes
Harlingen, Texas 78550
(956) 427-8885
Knowledge of facts and circumstances surrounding the investigation of the accident made the basis of this accident. It is reasonably anticipated that the custodian of records will testify that the financial records for pertaining to claimants are under the supervision, custody and control of the custodian of records, that such records were kept in the regular course of business.

Commercial General Liability Policy Declaration and Custodian of Records
Petitioner in possession of address and telephone numbers
Knowledge of facts and circumstances surrounding the insurance policy and claim of the accident made the basis of this lawsuit. It is reasonably anticipated that the custodian of records will testify that the insurance claim reports and records pertaining to Plaintiff are under the supervision, custody and control of the custodian of records and that such records were kept in the regular course of business.


Mary Ann Courter and custodian of records
Juan Rodriguez, Jr.
Texas Department of Public Safety
5805 Lamar Blvd.
P. O. Box 4087
Austin, Texas 78773-0001
Knowledge of facts and circumstances surrounding the investigation of the accident made the basis of this lawsuit. It is reasonably anticipated that the custodian of records will testify that the wrecker service reports pertaining to Plaintiff are under the supervision, custody and control of the custodian of records and that such records were kept in the regular course of business.

Department of the Army and custodian of records
Corps of Engineer
1920 North Chaparral Street
Corpus Christi, Texas 78401
attn: Mr. Elijio Garza, Area Engineer
Knowledge of facts and circumstances surrounding the incident made the basis of this lawsuit. It is reasonably anticipated that the custodian of records will testify that the financial records for pertaining to claimants are under the supervision, custody and control of the custodian of records, that such records were kept in the regular course of business.

Fire Marshall and Custodian of Records
Port Isabel Fire Department
204 Musina
Port Isabel, Texas 78578
(956) 943-3523
Knowledge of facts and circumstances surrounding the investigation of the accident
made the basis of this accident. It is reasonably anticipated that the custodian of
records will testify that the financial records for pertaining to claimants are under the
supervision, custody and control of the custodian of records, that such records were
kept in the regular course of business.

Jacinto Gonzalez and custodian of records
Game Warden IV
Texas Parks & Wildlife Dept.
805 W. Price
Brownsville, Texas 78521
(956) 546-1952
Knowledge of facts and circumstances surrounding the investigation of the accident
made the basis of this accident. It is reasonably anticipated that the custodian of
records will testify that the financial records for pertaining to claimants are under the
supervision, custody and control of the custodian of records, that such records were
kept in the regular course of business.

Edward Grafwallnes
Fire Chief
Los Fresnos Volunteer Fire Department
200 N. Brazil
Los Fresnos, Texas 78566
or
P. O. Box 777
Los Fresnos, Texas 78566
(956) 233-4751
Knowledge of facts and circumstances surrounding the investigation of the accident
made the basis of this accident. It is reasonably anticipated that the custodian of
records will testify that the financial records for pertaining to claimants are under the
supervision, custody and control of the custodian of records, that such records were
kept in the regular course of business.

Joe Hargiss
P. O. Box 1272
Henderson, Kentucky
Expert surveyor who has information about the damages to the Barge NM-315
and the value of all four barges.

Harlingen Fire Department and custodian of records
3510 E. Grimes
Harlingen, Texas 78550
(956) 427-8885

Knowledge of facts and circumstances surrounding the investigation of the accident made the basis of this accident. It is reasonably anticipated that the custodian of records will testify that the financial records for pertaining to claimants are under the supervision, custody and control of the custodian of records, that such records were kept in the regular course of business.

Justice of Peace Benny Ochoa, III and custodian of records
302 Queen Isabella Blvd.
Port Isabel, Texas  78578
956-943-2520
Knowledge of facts and circumstances surrounding the pronouncement of death of death of death claimants made the basis of this accident. It is reasonably anticipated that the custodian of records will testify that the financial records for pertaining to claimants are under the supervision, custody and control of the custodian of records, that such records were kept in the regular course of business.

Mr. Boyd Kennedy, Staff Attorney
Texas Parks and Wildlife Dept.
4200 Smith School Road
Austin, Texas 78744
Knowledge of facts and circumstances surrounding the incident made the basis of this lawsuit.

KGBT-Channel 4 and custodian of records
9201 West Expressway 83
Harlingen, Texas 78550
(956) 421-4444
Knowledge of facts and circumstances surrounding the news reporting/footage of the causeway collapse accident made the basis of this accident. It is reasonably anticipated that the custodian of records will testify that the financial records for pertaining to claimants are under the supervision, custody and control of the custodian of records, that such records were kept in the regular course of business.

KGBT-Channel 5 and custodian of records
East Expressway 83
Weslaco, Texas 78598
(956) 428-5555
Knowledge of facts and circumstances surrounding the news reporting/footage of the causeway collapse accident made the basis of this accident. It is reasonably anticipated that the custodian of records will testify that the financial records for pertaining to claimants are under the supervision, custody and control of the custodian of records, that such records were kept in the regular course of business.

KNVO Univision-Channel 48 and custodian of records
801 N. Jackson
McAllen, Texas 78501
(956) 687-4848

Knowledge of facts and circumstances surrounding the news reporting/footage of the causeway collapse accident made the basis of this accident. It is reasonably anticipated that the custodian of records will testify that the financial records for pertaining to claimants are under the supervision, custody and control of the custodian of records, that such records were kept in the regular course of business.

Lt. D. Lompra and custodian of records
Harlingen Fire Department
3510 E. Grimes
Harlingen, Texas 78550
(956) 427-8885
Knowledge of facts and circumstances surrounding the investigation of the accident made the basis of this accident. It is reasonably anticipated that the custodian of records will testify that the financial records for pertaining to claimants are under the supervision, custody and control of the custodian of records, that such records were kept in the regular course of business.

Long Island Bridge Company
c/o John R. Freeland
806 Pecan
McAllen, Texas 78501
(956) 943-1622
Employees of Long Island Bridge Company witnessed the four barges and tug pass under the bridge immediately prior too the accident. They also have knowledge of the configuration of barges passing through the area and of the circumstances surrounding the accident.

Los Fresnos Volunteer Fire Department and custodian of records
200 N. Brazil
Los Fresnos, Texas 78566
or
P. O. Box 777
Los Fresos, Texas 78566
(956) 233-4751
Knowledge of facts and circumstances surrounding the investigation of the accident made the basis of this accident. It is reasonably anticipated that the custodian of records will testify that the financial records for pertaining to claimants are under the supervision, custody and control of the custodian of records, that such records were kept in the regular course of business.

Ben Nunez and custodian of records
Acting Fire Marshall
Brownsville Fire Department
1010 E. Adams Street
Brownsville, Texas 78520
(956) 546-3195
Knowledge of facts and circumstances surrounding the investigation of the accident made the basis of this accident. It is reasonably anticipated that the custodian of records will testify that the financial records for pertaining to claimants are under the

supervision, custody and control of the custodian of records, that such records were kept in the regular course of business.

Port Isabel Fire Department and custodian of records
204 Musina
Port Isabel, Texas 78578
(956) 943-3523
Knowledge of facts and circumstances surrounding the investigation of the accident made the basis of this lawsuit. It is reasonably anticipated that the custodian of records will testify that the wrecker service reports pertaining to Plaintiff are under the supervision, custody and control of the custodian of records and that such records were kept in the regular course of business.

Reliance National Risk Specialists and custodian of records
4 Penn Center Plaza
Philadelphia, PA 19103
or
77 Water Street
New York, NY 10005
Knowledge of facts and circumstances surrounding the insurance policy/ claim of the accident made the basis of this lawsuit. It is reasonably anticipated that the custodian of records will testify that the insurance claim reports and records pertaining to Plaintiff are under the supervision, custody and control of the custodian of records and that such records were kept in the regular course of business.

Joe Rivera, County Clerk
Cameron County Courthouse
974 E. Harrison
Brownsville, Texas 78520
Knowledge of facts and circumstances surrounding the incident made the basis of this lawsuit.

Clifford A. Rowell, Fire Chief and custodian of records
South Padre Island Fire Department
P. O. Box 3410
South Padre Island, Texas 78597
(956) 761-5454 Ext 325
Knowledge of facts and circumstances surrounding the investigation of the accident made the basis of this lawsuit. It is reasonably anticipated that the custodian of records will testify that the wrecker service reports pertaining to Plaintiff are under the supervision, custody and control of the custodian of records and that such records were kept in the regular course of business.

Diana Sanchez, dispatcher and custodian of records
Harlingen Fire Department
3510 E. Grimes
Harlingen, Texas 78550
(956) 427-8885

Knowledge of facts and circumstances surrounding the investigation of the accident made the basis of this lawsuit. It is reasonably anticipated that the custodian of records will testify that the wrecker service reports pertaining to Plaintiff are under the supervision, custody and control of the custodian of records and that such records were kept in the regular course of business.

South Padre Island Fire Department and custodian of records
P. O. Box 3410
South Padre Island, Texas 78597
(956) 761-5454 Ext 325
Knowledge of facts and circumstances surrounding the investigation of the accident made the basis of this lawsuit. It is reasonably anticipated that the custodian of records will testify that the wrecker service reports pertaining to Plaintiff are under the supervision, custody and control of the custodian of records and that such records were kept in the regular course of business.

Mark N. Swaney and Custodian of Records
Calvary Hill Funeral Home and Cemetery
21723 Aldine Westfield
Humble, Texas  77338
281-445-3340
Knowledge of facts and circumstances surrounding the funeral and funeral expense of claimants in the accident made the basis of this accident.  It is reasonably anticipated that the custodian of records will testify that the financial records for pertaining to claimants are under the supervision, custody and control of the custodian of records, that such records were kept in the regular course of business.
Texas Dept. of Public Safety and Custodian of Records
5 Boca Chica Blvd.
Brownsville, Texas 78520
Knowledge of facts and circumstances surrounding the investigation of the accident made the basis of this lawsuit. It is reasonably anticipated that the custodian of records will testify that the wrecker service reports pertaining to Plaintiff are under the supervision, custody and control of the custodian of records and that such records were kept in the regular course of business.

Texas Department of Transportation and custodian of records
c/o Mr. Jack F. Gilbert
P. O. Box 12548
Austin, Texas 78711-2548
Knowledge of facts and circumstances surrounding the investigation of the accident made the basis of this lawsuit. It is reasonably anticipated that the custodian of records will testify that the wrecker service reports pertaining to Plaintiff are under the supervision, custody and control of the custodian of records and that such records were kept in the regular course of business.

TxDOT and custodian of records
Attn: Teresa Muuehlberger/Safety Dept.
P. O. Box EE
Pharr, Texas 78577
Knowledge of facts and circumstances surrounding the investigation of the accident
made the basis of this lawsuit. It is reasonably anticipated that the custodian of records
will testify that the wrecker service reports pertaining to Plaintiff are under the
supervision, custody and control of the custodian of records and that such records were
kept in the regular course of business.

Texas Dept. Transportation and custodian of records
c/o Hon. Greg Serres, U. S. Attorneys
974 E. Harrison, Suite 201
Brownsville, Texas 78520-7114
Knowledge of facts and circumstances surrounding the investigation of the accident
made the basis of this lawsuit. It is reasonably anticipated that the custodian of records
will testify that the wrecker service reports pertaining to Plaintiff are under the
supervision, custody and control of the custodian of records and that such records were
kept in the regular course of business.

Texas Parks & Wildlife Department and custodian of records
c/o Boyd Kennedy
Staff Attorney
Law Enforcement Division
5541 Bear Lane, Ste. 232
Corpus Christi, Texas 78405
and 4200 Smith School Road
Austin, Texas 78744
Knowledge of facts and circumstances surrounding the investigation of the accident
made the basis of this lawsuit. It is reasonably anticipated that the custodian of records
will testify that the wrecker service reports pertaining to Plaintiff are under the
supervision, custody and control of the custodian of records and that such records were
kept in the regular course of business.

Carolyn Thompson
Randle Thompson, LPC, LMFT
Bienestar Counseling Centre
P. O. Box 298
Olmito, Texas 78575
Office Manager
Knowledge of facts and circumstances surrounding the medical and financial records of
pertaining to Plaintiff for injuries sustained as a result of the accident made the basis of
this lawsuit. It is reasonably anticipated that the custodian of records will testify that
the medical and financial records pertaining to Plaintiff are under the supervision,
custody and control of the custodian of records, that such records were kept in the
regular course of business, and that the medical expenses incurred are reasonable and
necessary.

Randle Thompson, LPC, LMFT and custodian of records
Bienestar Counseling Centre
P. O. Box 298
Olmito, Texas 78575
<u>Doctor</u>-Knowledge of facts and circumstances surrounding the medical/ psychological examination and treatment of Plaintiff for injuries sustained as a result of the accident made the basis of this lawsuit. All medical providers are expected to testify fully as to history, examination, treatment, diagnosis, prognosis and causation as related to Plaintiff's injuries that form the basis of this suit. Additionally, Plaintiff may introduce all the health care provider's medical records through a qualified custodian of records. <u>Custodian of Records</u>-Knowledge of facts and circumstances surrounding the medical and financial records of pertaining to Plaintiff for injuries sustained as a result of the accident made the basis of this lawsuit. It is reasonably anticipated that the custodian of records will testify that the medical and financial records pertaining to Plaintiff are under the supervision, custody and control of the custodian of records, that such records were kept in the regular course of business, and that the medical expenses incurred are reasonable and necessary.

United States Coast Guard
Commanding Officer
Marine Safety Office-Corpus Christi
400 Man Street, Ste. 210 or
555 Carancahua Street, Suite 500
Corpus Christi, Texas 78401
The United States Coast Guard performed an investigation of the accident.

United States Department of Transportation and custodian of records
c/o Hon. Greg Serres, United States Attorney
600 E. Harrison, Ste. 201
Brownsville, Texas 78520-7114
Knowledge of facts and circumstances surrounding the investigation of the accident made the basis of this lawsuit. It is reasonably anticipated that the custodian of records will testify that the wrecker service reports pertaining to Plaintiff are under the supervision, custody and control of the custodian of records and that such records were kept in the regular course of business.

Jim Wilson
United States Coast Guard
800 David Drive, Room 232
Morgan City, Louisiana 70380
Mr. Wilson conducted the U. S. C. G. investigation hearings.

**PANEL REPORT OF FIRST IMPRESSION OF OBSERVATIONS, RESEARCH, AND OPINION**

September 29,2004

Schirrmeister Ajamie                          Watts Law Firm
Pennzoil Place South Tower                     1926 East Elizabeth
711 Louisiana, Suite 2150                      Brownsville, TX 78521
Houston, TX 77002

Attn: Mark Strawn, Esq.                         Attn: Ray Marchan

RE: Civil Action No. B-01157: In re The Complaint and Petition of Brown Water
Towing I, Inc. As Owner, and Brown Water Marine Services, Inc. as Bareboat Charter of
Brown Water V. Its Engines, Tackle, etc. and a Cause of Exoneration from or limitation
of Liability; consolidated with Civil Action No. B-02-004; In re the Complaint and
Petition of American Commercial Barge Line, LLC, as Charter of the Barges NM-315,
VLB-9182, ACL-9933B, VLB-91; and in a Cause of Exoneration from or limitation of
Liability; in the United States District Court for the Southern District of Texas at
Brownsville.

**METHODOLOGY:** This is a panel report containing the preliminary findings of two
experts who have conferred with one another through the course of the production of this
report. Both experts are members and principals of the American Admiralty Bureau, Ltd.
An organization committed to strict adherence to, and the promotion of the Code of
Professional and Ethical Conduct of the National Forensic Center. All analytical work
was performed by the undersigned examiners or staff under their direction. All analytical
work was completed in conformance with the Code of Professional and Ethical Conduct
of the National Forensic Center. The undersigned experts were each retained by different
parties in the litigation and by mutual agreement of commissioning counsels they were
allowed to confer and produce this panel report.

**STANDARDS OF PRESENTATION:** This report is produced in strict conformance
with the Code of Professional and Ethical Conduct of the National Forensic Center
(NFC), specifically the Standards of Presentation contained therein. Clerical and
editorial assistance in the preparation of this report was provided by the staff of Maritime
Consultants and Associates (MC&A) a sole proprietorship of Captain Jay Disler, one of
the undersigned examiners. **The individual opinions of each examiner are identified
as such within the body of the report.** Any party at interest or any officer of the court
will be provided a full text of the NFC Code upon request. Any party at interest or

officer of the court who believes that either of the undersigned examiners may have violated this code may complain to:

**THE NATIONAL FORENSIC CENTER**
**17 TEMPLE TERRACE**
**LAWRENCEVILLE, NJ 08648**
**1-800-526-5177**

**CASE TYPE:**  Allision of a towboat and barges with a bridge over a portion of the Gulf Intercoastal Waterway with multiple deaths and injuries to motorists transiting the bridge.

**QUALIFICATIONS OF EXAMINERS:**

**Commander John Deck, III:**
Commander John Deck III is a retired Coast Guard Officer with 20 years of service.  He holds a Bachelor of Science from the U.S. Coast Guard Academy and a Master's of Science degree in Mechanical Engineering and a Naval Engineer's degree from the Massachusetts Institute of Technology.  He has served as Chief of the Ship Design Branch, Office of Merchant Marine Safety for the Coast Guard.   Commander Deck has five years of sea service aboard cutters of the U.S. Coast Guard.  Since retiring from the Coast Guard, he has made a number of Western River tow trips as an observer and wheelman as well as conducting research into tow powering and configuration. Commander Deck has served as an expert witness on marine powering applications and served as chief investigator in a number of Western River tow accidents, and inland waterway bridge allisions. His experience includes investigative, analytical work in hydrodynamics and expert testimony in allisions involving the Gramercy Bridge Caisson at Gramercy, Louisiana in 1985, the Pensacola Bay Bridge in 1992, the Highway 190 Bridge in Baton Rouge Louisiana in 1998 and the I-40 Bridge in Arkansas in 2002.

**Captain Jay Disler:**  Captain Disler is licensed by the U.S. Coast Guard in the dual capacity of Ocean Master and Chief Engineer.  He has extensive work experience as Master and Chief Engineer aboard a wide variety of commercial work vessels, especially along the South Texas coast.  This experience includes the operation of push tows on the Gulf Intercoastal Canal in South Texas and on the Western Rivers of the United States. He has previously served as an expert witness in similar cases in both State and Federal Courts.

**A complete and detailed resume as well as a list of all cases participated in by either or both experts will be made available to any party at interest or officer of the court upon request.**

**DOCUMENTS REVIEWED:**
1. Transcript of the Coast Guard hearing on the allision of September 15, 2001
2. Transcript of an audio tape of an interview with David Dewayne Fowler by a Coast Guard Investigator dated September 12, 2001
3. Hand written statement by David D. Fowler

4. Transcript of a Coast Guard interview with David D. Fowler by U.S. Coast Guard, transcript dated September 17, 2001 (thought to be a more formal version of document number 2).
5. Deposition Transcript of Stephen H. Mosher (reviewed by Jay Disler only)
6. Deposition Transcript of Philip S. Timberlake (reviewed by Jay Disler only)
7. Deposition Transcript of William Norb Whitlock (reviewed by Jay Disler only)
8. Cameron County Sheriff's Department Report Case No. 01-090662 dated September 16, 2001 (reviewed by Jay Disler only)
9. Coast Guard Investigative Officer's (IO) file (reviewed by John Deck III only)
10. Lake Charles Diesel report on BROWN WATER V (BW V) main engines dated 20 May 2002.
11. American Waterways Operators (AWO) Responsible Carrier Program (RCP) Administrative Procedures
12. Report pf the Towing Horsepower Task Group of the Towing Safety Advisory Committee (TSAC).

## ARTIFACTS EXAMINED:

1. Jay Disler and John Deck III inspected the towboat BROWN WATER V on 9 May 2002 at Anahuac, Texas
2. Photographs of BROWN WATER V

**ORIENTATION:** Presented for reader orientation and not as a statement of fact the following sequence of events, circumstances, and conditions were discerned in reading the documents described above. On the night of September 15, 2001 during the hours of darkness the Towboat BROWN WATER V pushing four loaded cargo barges "strung out" (four long, one wide) was approaching the Queen Isabella Causeway across the Gulf Intercoastal waterway connecting the resort community of South Padre Island to the mainland. At the pertinent time, the three forward barges in the tow of the BROWN WATER V were loaded to an average draft of approximately nine feet while the barge closest to the towboat drew less than seven feet. The BROWN WATER V and her tow failed to transit the bridge's navigation span, and struck portions of the bridge's supporting structure. As a result of the initial structural support damage caused by the collision a portion of the bridge's roadway fell into the water. Various automobiles then fell into the gap in the road way and on into the water before motorists on the bridge finally perceived what had happened and one motorist stopped his vehicle and began alerting motorists behind him of the situation. As a result of the various automobiles falling into the gap created by the collision multiple deaths and serious injuries occurred. In the hours and days following the initial damage additional bridge structural failures occurred dropping additional bridge portions into the water complicating the search for bodies and prolonging the repair period.

**NOTE CONCERNING CITATIONS TO STATUTES AND REGULATIONS:** This is a report of a forensic examination of the above described events by technical experts. Coast Guard Officers are charged with the enforcement of Federal maritime safety regulations. Licensed Merchant Marine Officers are charged with insuring compliance

with such regulations and safety related statutes in all of the operations that they
supervise. Licensed Merchant Marine Officers are examined for their knowledge of
applicable regulations as outlined in **46 CFR 10.910-1.**

**Minimum regulatory compliance is not the standard of good seamanship or a
seaworthy vessel. The standard is higher than that.** However today marine safety
regulations are so extensive that many, if not most, safe marine practices are described
within the body of the Federal Maritime Safety Regulations. All officers of the court are
trained in the use of such regulations and have access to them. Consequently regulatory
citation is the preferred system of citation to safe work practices when such are available.
However the strict application of a particular regulation or statute to a particular set of
circumstances is a legal judgment. **Referral to safety statutes and regulations in this
report should not be construed as legal opinion that any such regulations or statutes
apply as a matter of law. Regulations and safety related statutes cited herein are
provided as descriptions of guides to safe maritime operations. Should the judge
determine that any particular regulation or safety related statute cited does not
apply to the circumstances as a matter of law, this would in no way affect the
opinion of the undersigned examiners that the cited regulation or safety related
statute accurately describes the safe practices.**

This is a technical report on matters of maritime safety. Maritime safety is a heavily
regulated area of human endeavor. It is impossible to describe safe operations without
mention of regulations and safety related statutes. **However such mention should in no
way be construed as legal opinion.** Applicability as a strict matter of law is for the
judge to decide. The undersigned examiners do not intend to offer legal opinion.

The following observations and opinions were offered by Captain Disler:

**OBSERVATION/OPINION:** Four barges may be configured 2x2 or 1x4. When
entering a cross current a 2x2 presentation presents less frontal area to the current and
reduces the effect of the current on the motion of the barges.

**OBSERVATION:** On the approach to the Queen Isabella Causeway the BROWN
WATER V had her tow "strung out".

**OPINION:** Due to the various currents present at the Causeway "strung out" is the
worse possible way to configure the tow. A "strung out" tow presents twice the frontal
area to the lateral effects of current increasing the lateral forces on the tow. The tow's
strung out configuration played a major part in her loss of control.

**OBSERVATION:** Captain Rocky Wilson changed the configuration of the tow from
2x2 to 1x4 "strung out" during his watch prior to Captain Fowler's approach to the
Queen Isabella Causeway. Captain Fowler received the tow in this "strung out"
condition at the start of his watch. As of this writing, we have not found much
documentation of Captain Rocky Wilson actions prior to the allision. We have not read
any explanation of Capt. Rocky Wilson rational for such a tow configuration. Neither

have we read any description of orders, instructions, nor suggestions concerning this troublesome configuration that might have been passed by Captain Rocky Wilson to Captain Fowler at the watch change.

**OPINION:** We do not know at this writing why Captain Rocky Wilson changed the tow configuration before the final approach to the Queen Isabella Causeway. We do not know at this writing why Captain Fowler did not change the configuration back to the more advantageous 2x2 configuration prior to the final approach. We suspect that corporate procedures or standing orders directly or indirectly effected this decision. We must respectfully reserve the privilege of future comment on this matter when additional information becomes available. This issue is important in any consideration of limitation of liability. Corporate influence, direct or indirect on such a critical decision would be an important consideration in a limitation proceeding. Generally, companies prefer tows "strung out" to improve speed in thus increasing profit.

**OBSERVATION/OPINION:** Brown Water Marine Management in planning the manning of the BROWN WATER V simply filled in a two watch system. The idea behind the two watch system is that each licensed individual in the wheelhouse will work not more than 12 hours per day except in an emergency. Since BROWN WATER V did not carry a designated duty engineer, cook, or utility man there was no one to handle such routine tasks as extra line handler, extra look-outs in limited visibility, and daily cooking and the associated cleanup. The "12 hour rule" does not see such routine daily tasking as "emergencies". These stresses on the 12 hour rule were foreseen by management before the start of the voyage, management chose to deliberately set up the watches so that the "12 hour rule" could not be kept.

An example of this is the testimony of Deckhand Ross Baligure at the Coast Guard Hearing. He testified that on the day before the accident he came on watch at 6 AM worked the whole day making up the tow which was completed at about 7:30 PM and continued his watch until midnight, a total of 18 hours. Making tow is not considered an emergency.

The "12 hour rule" is not a single statute of regulations but a collection of regulations and statutes that provide permissive authority to owners to reduce manning to two watches under certain limited circumstances. There is no regulation requiring two watches, three are allowed and preferred by maritime labor and maritime safety professionals. The two watch system is an economy granted to vessel owners under specific circumstances to reduce operating expenses and enhance profits. This permissive authority is predicated on strict adherence to maintaining manning levels in such a way that neither watch exceeds 12 hours of duty of any sort within any 24 hour consecutive period.

The sources of the "12 hour rule include but are not limited to the following: **46 USC 8104 (a), 46 USC 8104 (b), 46 USC 8104 (g), 46 USC 8104 (h), 46 CFR 15.705 (d), 46 CFR 15.710, 46 USC 8104 (f), 46 CFR 15.1111.**

Brown Water Marine management arranged the manning of the BROWN WATER V in such a way that the "12 hour rule" could not be observed by the wheel house crew. In considering contributing factors in this allision, the effects of fatigue upon the operators can not be ruled out, and in the face of observable violations of fatigue preventative regulations and/or customs it may be assumed by forensic examiners associated with the American Admiralty Bureau as described in Comment No. 6 of Volume 3 of the American Admiralty Bureau Commentator (AAB Com. No. 6, Vol. 3 (1996) ISBN 1-879778-59-9. The fatigue factors assumed in this case were the direct result of management manning level decisions, not the result of any choices by the licensed operators. Once aboard they were subjected to 24/7 operations and associated requirements imposed on only two operators to maintain 24/7 navigational operations.

**OBSERVATION:** Stephen H. Mosher, President of Brown Water Marine has stated in his deposition that shoaling was an important factor in the accident. The undersigned examiner has still not reconciled the fact dispute as to whether or not shoaling took place. However Mr. Philip S. Timberlake a safety auditor examining contract horsepower providers for ACBL noted that he had found Brown Water Marine vessels without updated Notice to Mariners. Had shoaling actually occurred, notice would have come to the pilot house by way of the Notice to Mariners.

**OPINION:** It is the duty of management to provide the vessels under their charge with all required charts, navigational references, and updating services as needed for safe navigation. Based on the documents reviewed, it appears more probable than not that Brown Marine's management in fact did not provide the most recent Notice to Mariners to the pilot house of the BW V. If indeed shoaling was a contributing factor in this accident, management failed in its duty to warn their pilot house personnel of the hazard. At present we have not found an actual Notice to Mariners regarding shoaling in the pertinent vicinity and notice some contra-indications of shoaling in the available documents. The available documents at this present time form a stack nearly five feet in height. Review is still in progress and the undersigned examiner will supplement on this issue at a later date. The reader is directed to the present observations and opinions of CDR. Deck on this subject elsewhere in this report.

**OBSERVATION:** The subject of tow powering and configuration has been marked in recent years by considerable controversy. The American Admiralty Bureau has studied the issue of tow powering and configuration in depth and the Bureau has published its finding in the AMERICAN ADMIRALTY BUREAU'S INTERIM RECOMMENDATIONS FOR TOW POWERING AND CONFIGURING FOR WESTERN RIVERS PUSH TOWS EDITED BY CDR. JOHN DECK III, USCG (RETIRED). This publication is available through Marine Education Textbooks 124 North Van Avenue Houma Louisiana 70363-5895, PH # (985) 879-3866. Publication is assigned international book binding No. ISBN 1-879778-62-9. This publication provides A decisional matrix and other guidance for the proper powering and configuration of push tows. We have examined the issue of the powering of the BROWN WATER MARINE V in conformance with these published findings. Additionally, we have examined statements within the depositions of Stephen Mosher, Philip Timberlake and

William Whitlock wherein these officials admit to minimal horsepower requirements very similar to those we describe in our publication and admit that the BROWN WATER V and its tow did not conform to these minimal guidelines.

**OBSERVATION:** Mr. Whitlock in his deposition maintained that it was his company's contractual obligation to provide adequate horsepower for the barges they contracted to deliver. Mr. Whitlock further maintained that it was the prerogative of his company to either provide the necessary horsepower by utilization of their own towboats or to provide it through boats owned by others and contracted by his company. Further, ACBL was represented on the Horsepower Working Group at TSAC which produced the report on two powering which included the following wording in the conclusions: In many cases what are believed to be inadequately powered tows may be tows that are inadequately handled. Where this is the case, Coast Guard and industry initiatives on training and licensing provide the best avenues for improved safety. However, towing companies are ultimately responsible for their safe operations; and they should be expected to develop policies which are defensible and accountable. It does not appear that any such policies were in place either at BROWN WATER MARINE OR ACBL. Further, there may be some evidence that Captain Fowler did not have all the requisite experience for this area.

**OBSERVATION:** There is at present no Coast Guard regulation specifying minimal horsepower requirements for any given size tow such written guidelines as exist for tow powering and configuration are found in Academic Studies such as the American Admiralty Bureau sited previously or company operational manuals. However companies which are signatory to the American Waterways Operators Responsible Carrier Program are required in Section II Management/Administration subsection A.2. Vessel Operating Policies/Procedures Vessel-specific operating procedures (will depend on vessel size, cargo, trade, etc.) a) procedures for making horsepower tow/size decisions. ACBL is signatory to the RCP program, however there were no written policies issued.

**OPINION:** Tow boat operating companies have the primary responsibility for providing adequate horsepower for each tow they undertake. Historically as described in the AAB reference previously cited pilot house personnel often improve the performance of underpowered tows through skillful piloting techniques that work with, and not against hydrodynamic forces. Thus it is difficult for pilot house personnel to refuse an underpowered tow since they may not cite to a Federal regulation and any refusal to push the tow the dispatcher provides is often viewed as a manifestation of a lack of skill. Against this background, it is vitally important that management train dispatchers to keep tows within the minimal powering guidelines that are discernable in authoritive literature pilot organization recommendations and company manuals. At the present state of regulation the primary duty for the avoidance of underpowered tows falls to management.

**OBSERVATION:** The horsepower of BROWN WATER V was considerably less than the minimal horsepower guidelines described by Mr. Timberlake and Mr. Whitlock in their depositions.

**OPINION:** In fact in the opinion of the undersigned, the available horsepower of the BROWN WATER V was grossly inadequate for the task at hand. Furthermore this inadequacy was within the privity and knowledge of both the management of BROWN WATER MARINE and ACBL.

**OBSERVATION:** Documents examined indicated that at least one of the engines of the BROWN WATER V was not operating to full capacity due to mechanical malfunctions. Further, there are indications that the engine horsepower was overstated. The engines in question are GM 12V71. Out of the box horsepower is 335 not 400. Due to time constraints in the preparation of this report it will be necessary to supplement on this issue at a near future date. However there is every indication in the record that BROWN WATER MARINE MANAGEMENT was aware of these deficiencies.

**ADDITIONAL FACTS DISPUTED:**

**OBSERVATION:** There were indications in the documents reviewed that short range visual aids to navigation associated with the bridge approach were in less than proper order. Some of the information concerning the short range aids to navigation found so far appears tentative, contested, or imprecise. Such conditions could be a contributing factor to this accident.

What is known is that Coast Guard Chief Ingram testified at the Coast Guard Hearing that his Executive Petty Officer accompanied the Texas DOT officials when they made their inspection the day of the accident and found that the bridge centerline green lights were not functionable.

There remain many documents yet to be examined. The undersigned reserves the privilege of supplementing on this issue as new facts become available.

**COMMANDER DECK OFFERED THE FOLLOWING OPINIONS:**

**OBSERVATION:** In the Coast Guard Hearing, Brown Water offered the testimony of David Swain, who presented findings of a shoaling area between Buoy 147 and 149. The shoaling allowing for the tide was on the order of 7 feet. Captain Fowler had indicated that he felt he grounded on his starboard stern quarter of his tow in that area. Captain Wilson testified that such grounding could cause the tow to get out of shape, swinging the bow to port and thus out of the channel. The towboat was drawing **8 feet 6 inches** and the after barge was drawing less than **7 feet.** The barges forward were drawing about **9 feet.** If Captain Fowler was pointing up into the current, his bow should have grounded first. If his stern was swinging into the current, the towboat would have hit bottom before the after barge. There was no damage reported to the running gear (propellers, propeller shafts, and rudders) of the towboat. Further based upon Captain Wilson's testimony that when the tidal current is running, you put your bow into the tidal current keeping your propellers in the deep water i.e., the dredged part of the channel. Because you are navigating in a current which is coming from your side, you have to crab your way down

the channel. That is you have to keep your bow towards the tidal current such that the sidewise component of your speed is equal to the velocity of the tidal current. Otherwise you will get set in the direction of the tidal current.

Understand that tide refers to the rise of the water in height with high tide being the highest level for that period and low tide is the lowest level for that period. Tidal fluctuations in the Gulf of Mexico are usually two high tides and two low tides in a day. Tidal current is the velocity of the water as the water moves to create the tide. The tidal current is highest between the times of the high and low tides. There is little or no tidal current at the time of high tide or low tide. A tide rising from a low tide to a high tide is known as a flood tide, while the reverse is known as an ebb tide.

**OBSERVATION:** During the survey of the BROWN WATER V at Anahuac on 9 May 2002, it was found that the starboard engine was mechanically in good shape while the port engine had one dead cylinder on one bank and the head for the other bank was a two valve head while the design head is a 4 valve head. This reduces the horsepower available to less than rated at less than rated RPM. There will be a drag from this port engine which will require some rudder angle to keep a straight heading.

**OPINION:** It is my opinion that if indeed Captain Fowler grounded between buoys 147 and 149; he was already out of shape to make the opening in the causeway. Because of the configuration of the tow with the deeper barges forward and the unbalanced horsepower available, it would not have been possible to bring the bow back into the current.

**OBSERVATION:** Captain Wilson testified that the tow would need a quarter of a mile to stop. There is about 1800 feet from buoy 149 to the bridge. There is however an adverse current setting the tow in the direction of the bridge. There is about 200 feet of shallower water on the red side of the channel between the dredged channel and the submerged pilings which are in water depth charted as 6 feet or less. There was no red flag (dangerous or polluting cargo) being carried in the four barges.

**OPINION:** Were Captain Fowler more experienced with this area, he could have grounded the tow on the red side of the channel adjacent to buoy 146. Since he was already headed in that direction, he could have backed down, stuck his bow into the bottom and let the tidal current carry his stern over. While the tide would have set him high on the bottom, the next high tide when ebbing would have assisted him in coming off ground. There was room and sufficient time for this grounding. While this would have resulted in an inquiry by the Coast Guard with possible action against his license, the consequences of this would have been far less severe than what happened.

**OPINION:** Had the BROWN WATER V really had 800 horsepower, the ability to stem the current would have been greater as there would be a higher speed available. Further with 800 horsepower, there would have been greater backing power which if applied timely would have mitigated the effects of the allision. Barring that, it would have facilitated an intentional grounding.

10

**SUMMARY:** It appears to the undersigned examiners as more probable than not that the following factors contributed to the allision of the BROWN WATER V with the Queen Isabella Causeway on 15 September 2001.

1. The BROWN WATER V was underpowered for her tow size, configuration, and environmental conditions. In part, this under powering was due to mechanical problems known to management. At present, this appears to be not only a contributing factor but the primary cause of event.
2. There may or may not have been shoaling in the vicinity, which may or may not have affected the steering of the vessel.
3. There may or may not have been deficiencies in the short range aids to navigation for the bridge approach.
4. It is assumed that operator fatigue contributed to the accident based on Captain Fowler stating that he had only about five hours of sleep prior to going on watch. To the degree that fatigue played a role in the accident, it was induced by the management decision to maintain a two watch system without the necessary additional manpower to adhere to the 12 hour rule.
5. The owners and managers of BROWN MARINE had the primary responsibility of assuring the adequate horsepower of the BROWN WATER MARINE V; and ACBL had a contractual obligation of the same nature.
6. BROWN WATER MARINE and ACBL knew or should have known that the BROWN WATER MARINE V was not being provided with the latest notice to mariners. This was the main system by which the operators would have been alerted to either shoaling or aids to navigation deficiencies.

In short all causational factors were within the privity and knowledge, and to a large extent, control, of management.

Respectfully Submitted without prejudice,

Captain G.E. "Jay" Disler          John Deck III