IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF TEXAS
BROWNSVILLE DIVISION

United States District Court
Southern District of Texas
FILED

OCT - 4 2004

Michael N. Milby
Clerk of Court

| | | |
|---|---|---|
| IN RE THE COMPLAINT AND | § | |
| PETITION OF BROWN WATER | § | C.A. NO. B-01-157 |
| TOWING I, INC., AS OWNER, AND | § | (Subject to Rule 9(h) |
| BROWN WATER MARINE SERVICE, | § | of the Federal Rules |
| INC., AS BAREBOAT CHARTERER, OF | § | of Civil Procedure) |
| THE BROWN WATER V, ITS ENGINES, | § | Admiralty |
| TACKLE, ETC. IN A CAUSE OF | § | |
| EXONERATION FROM OR | § | |
| LIMITATION OF LIABILITY | § | |

Consolidated with:

| | | |
|---|---|---|
| IN THE MATTER OF AMERICAN | § | |
| COMMERCIAL LINES LLC AS OWNER | § | |
| and AMERICAN COMMERCIAL BARGE | § | C.A. NO. B-02-004 |
| LINE LLC AS CHARTERER OF THE | § | (Subject to Rule 9(h) |
| BARGES NM-315, VLB-9182, | § | of the Federal Rules |
| ACL-9933B, VLB-9173, PRAYING | § | of Civil Procedure) |
| FOR EXONERATION FROM AND/OR | § | Admiralty |
| LIMITATION OF LIABILITY | § | |

**CLAIMANTS J. ANTONIO MIRELES, AS PERSONAL REPRESENTATIVE
OF THE ESTATE OF JULIO CESAR MIRELES, JUAN ANTONIO MIRELES
AND SOLEDAD GONZALEZ MIRELES' DESIGNATION OF EXPERT WITNESSES**

TO THE HONORABLE UNITED STATES DISTRICT JUDGE:

Juan Antonio Mireles, as Personal Representative of the Estate of Julio Cesar Mireles, Juan

Antonio Mireles and Soledad Gonzalez Mireles ("Claimants") file this their Designation of Expert

witnesses and designate the following:

**I**

**RETAINED EXPERTS**

A.    Captain G. E. Disler
      204 Sugarberry

11493.1

Wildwood Gate
Village Mills, Texas 77663
(409) 834-2433 Telephone
(409) 834-2499 Facsimile

Commander John Deck III
P. O. Box 501
Chardon, Ohio 44024
(440) 635-0531 Telephone

Captain Disler and Commander Deck are Maritime Safety and Operation Experts, and may testify regarding any and all liability issues. Particularly they may testify regarding the negligence of the Petitioners, the unseaworthiness of the tow, and how these conditions caused the allision of September 15, 2001. Their opinions are summarized in the report which is attached hereto as Exhibit A. Exhibit B hereto is a copy of their respective curriculum vitae. Exhibit C is a list of cases in which Captain Dissler has provided expert testimony in the past four years.

B.    Jerome Modell, M.D.
      1329 SW 16th Street, Room 4151
      Gainesville, Florida 32608

Jerome Modell is a medical doctor specializing in anesthesiology and the treatment of drowning victims. He may provide expert testimony regarding what Julio C. Mireles experienced in the final moments of his life. His opinions are set out in his report, which is attached hereto as Exhibit D. Exhibit E hereto is a copy of his curriculum vitae. Exhibit F is a list of cases in which he has provided testimony, by deposition, or trial within the past four years.

C.    Richard Cortez
      Burton, McCumber & Cortez, L.L.P.
      200 South 10th Street, Suite 1501
      McAllen, Texas 78501
      (956) 618-2300 Telephone
      (956) 618-2333 Facsimile

Richard Cortez is a Certified Public Accountant. He has performed an analysis of the present value of Juan Antonio and Soledad Mireles' loss of support and household services as a result of the death of their son. His opinions are summarized in a report which is attached hereto as Exhibit G. Exhibit H hereto is a copy of his curriculum vitae. Exhibit I is a list of cases in which he has provided testimony, by deposition, or trial within the past four years.

## II

## NON-RETAINED EXPERTS

11493.1

2

Claimants reserve the right to present expert opinion testimony from non-retained fact witnesses. Such fact witnesses include, but are not limited to the following:

D.   Captain Nicholas Edward Perugini
     Robert Ramsey
     David Elliott

Captain Perugini is the Chief of the Marine Chart Division of NOA. Messrs. Elliott and Ramsey performed a survey of the Laguna Madre and Intracostal Waterway in the vicinity of buoys 147 and 149. These witnesses have knowledge of the depth of the Intracostal Waterway and adjoining area of the Laguna Madre between the Long Island Swing bridge and the Queen Isabella Causeway, as it existed at the time of the allision. Their opinions are stated in Captain Perugini's testimony of October 10, 2001 before the United Stated Department of Transportation, United States Coast Guard Marine Safety Office.

E.   DeWitt S. Davenport, M.D.
     Pathology
     P. O. Drawer 2588
     Harlingen, Texas 78551

Dr. Davenport is the Medical Examiner who performed the autopsy on the remains of Julio Mireles. He has expert opinions regarding the cause of Julio Mireles's death, and whether Julio Mireles lost consciousness as a result of his car hitting the water. The report of his autopsy findings has been previously produced.

F.   Bob Clinton
     c/o American Waterways Operators
     Arlington, Virginia

Mr. Clinton has expert information regarding the American Waterways Operators' Responsible Carrier program.

G.   Joe Benavidez

Mr. Benavidez is a Licensed Mariner, and former captain at Brown Water Marine Service. He has knowledge regarding liability issues. His sworn statement has been previously produced.

### III

### Rebuttal Experts

Claimants reserve the right to designate rebuttal experts to address any areas raised in Petitioners' Designation of Experts, for which the Petitioners bear the burden of proof.

G.    Claimants reserve the right to call any expert witness designated by any other party.

Respectfully submitted,

AJAMIE, L.L.P.

By: _____

S. Mark Strawn
State Bar No. 19374325
Pennzoil Place - South Tower
711 Louisiana, Suite 2150
Houston, Texas 77002
Telephone: (713) 860-1600
Facsimile: (713) 860-1699

Attorneys for Plaintiffs, Juan Antonio Mireles, as Personal Representative of the Estate of Julio Cesar Mireles, Juan Antonio Mireles and Soledad Gonzalez Mireles

## CERTIFICATE OF SERVICE

I S. MARK STRAWN hereby certify that on this 30th day of September, 2004 a true and correct copy of the above and foregoing document was sent via certified mail, return receipt requested to:

Glen Goodier
Jones, Walker, Waechter, Poitevent, Carrere & Denegre, L.L.P.
201 St. Charles Ave., 48th Floor
New Orleans, LA 70170-5100
Counsel for American Commercial Barge Lines

11493.1                                          4

Will W. Pierson
Royston, Rayzor, Vickery & Williams, L.L.P.
1700 Wilson Plaza West
606 N. Carancahua
Corpus Christi, TX 78476
Counsel for Brown Tide, Inc., and Brown Water Marine Service, Inc.

and Regular U. S. mail to:

Leslie D. Cassidy, III
Woolsey & Cassidy
500 N. Water Street, Suite 1020
Corpus Christi, TX 78471
Counsel for American Commercial Barge Lines

John David Franz
The Law Offices of John David Franz
400 N. McColl
McAllen, TX 78501

J. Chad Gauntt
Gauntt & Kruppstadt, L.L.P.
9004 Counsel Forest Crossing Drive, Suite C
The Woodlands, TX 77381
Counsel for Claimants Esteban Rivas and Miriam Rivas

Mark J. Spansel
Edwin C. Laizer
Adams & Reese, L.L.P.
4500 One Shell Square
New Orleans, LA 70139
Counsel for Claimant Texas Department of Transportation

James B. Manley
Attorneys at Law
200 William Barnett
Cleveland, TX 77327
Counsel for Claimant William Morris Welch

Ray R. Marchan
Watts Law Firm L.L.P.
1926 E. Elizabeth
Brownsville, TX 78520
Counsel for Claimant Gustavo Morales

Michael Watts
Watts Law Firm L.L.P.
555 N. Carancahua, Suite 1400
Corpus Christi, Texas 78478
Counsel for Claimants Lydia Zamora, Bigo's International, L.L.C.; Jacqueline Paddock and
Bridgette Goza

William Q. McManus
Steve Q. McManus
McManus & Crane, L.L.P.
209 West Juan Linn
P.O. Box 2206
Victoria, TX 77902-2206
Counsel for Claimants Ricky Leavell and Carol Leavell

Heriberto Medrano
Law Office of Heriberto Medrano
2009 East Harrison, Suite B
Harlingen, TX 78550
Counsel for the Estate of Robert Harris

Brian G. Janis
Sanchez, Whittington, Janis & Zabarte, L.L.P.
100 North Expressway 83
Brownsville, TX 78521-2284
Counsel for Port Isabel-San Benito Navigation District

J.A. Magallenes
Magallanes, Hinojosa & Mancias, P.C.
1713 Boca Chica
Brownsville, TX 78520
Counsel for Laguna Madre Water District of Port Isabel

Geoffrey Amsel
SBC Management Services
175 East Houston St., 4th Floor
San Antonio, TX 78205
Counsel for Claimant Southwestern Bell Telephone

Julian Rodriguez, Jr.
Law Office of Julian Rodriguez, Jr.
100 W. Pecan
McAllen, TX 78501
Counsel for Claimants Raquel Terran Hinojosa; Clarissa Hinojosa, Omar Hinojosa and
Gaspar Hinojosa, II

Charles Willette
Willette & Guerra, L.L.P.
3505 Boca Chica Blvd., Suite 460
Brownsville, TX 78521
Counsel for Cameron County

Veronica Farias
Law Office of Veronica Farias
2854 Boca Chica Blvd.
Brownsville, TX 78521
Counsel for Minor Claimant William Welch

Thomas E. Quirk
Aaron & Quirk
901 N.E. Loop 410, Suite 903
San Antonio, TX 78209-1307
Counsel for Allstate Insurance Company

Raymond L. Thomas
Andres H. Gonzalez, Jr.
Kittleman, Thomas, Ramirez & Gonzalez, PLLC
4900-B North 10th Street
McAllen, TX 78504
Counsel for Claimants Rene and Frank Mata

Jim Hart
Williams Bailey
8441 Gulf Freeway, Suite 600
Houston, TX 77017
Counsel for Hector Martinez, Sr.

Michael Ratcliff
Office of the Attorney General
Transportation Division
P.O. Box 12548
Austin, TX 78711-2548
Counsel for the State of Texas

S. Mark Strawn

11493.1

## PANEL REPORT OF FIRST IMPRESSION OF OBSERVATIONS, RESEARCH, AND OPINION

September 29, 2004

Schirrmeister Ajamie
Pennzoil Place South Tower
711 Louisiana, Suite 2150
Houston, TX 77002

Watts Law Firm
1926 East Elizabeth
Brownsville, TX 78521

Attn: Mark Strawn, Esq.

Attn: Ray Marchan

RE: Civil Action No. B-01157: In re The Complaint and Petition of Brown Water Towing I, Inc. As Owner, and Brown Water Marine Services, Inc. as Bareboat Charter of Brown Water V. Its Engines, Tackle, etc. and a Cause of Exoneration from or limitation of Liability; consolidated with Civil Action No. B-02-004; In re the Complaint and Petition of American Commercial Barge Line, LLC, as Charter of the Barges NM-315, VLB-9182, ACL-9933B, VLB-91; and in a Cause of Exoneration from or limitation of Liability; in the United States District Court for the Southern District of Texas at Brownsville.

**METHODOLOGY:** This is a panel report containing the preliminary findings of two experts who have conferred with one another through the course of the production of this report. Both experts are members and principals of the American Admiralty Bureau, Ltd. An organization committed to strict adherence to, and the promotion of the Code of Professional and Ethical Conduct of the National Forensic Center. All analytical work was performed by the undersigned examiners or staff under their direction. All analytical work was completed in conformance with the Code of Professional and Ethical Conduct of the National Forensic Center. The undersigned experts were each retained by different parties in the litigation and by mutual agreement of commissioning counsels they were allowed to confer and produce this panel report.

**STANDARDS OF PRESENTATION:** This report is produced in strict conformance with the Code of Professional and Ethical Conduct of the National Forensic Center (NFC), specifically the Standards of Presentation contained therein. Clerical and editorial assistance in the preparation of this report was provided by the staff of Maritime Consultants and Associates (MC&A) a sole proprietorship of Captain Jay Disler, one of the undersigned examiners. **The individual opinions of each examiner are identified as such within the body of the report.** Any party at interest or any officer of the court will be provided a full text of the NFC Code upon request. Any party at interest or

officer of the court who believes that either of the undersigned examiners may have violated this code may complain to:

THE NATIONAL FORENSIC CENTER
17 TEMPLE TERRACE
LAWRENCEVILLE, NJ 08648
1-800-526-5177

**CASE TYPE:** Allision of a towboat and barges with a bridge over a portion of the Gulf Intercoastal Waterway with multiple deaths and injuries to motorists transiting the bridge.

## QUALIFICATIONS OF EXAMINERS:

**Commander John Deck, III:**
Commander John Deck III is a retired Coast Guard Officer with 20 years of service. He holds a Bachelor of Science from the U.S. Coast Guard Academy and a Master's of Science degree in Mechanical Engineering and a Naval Engineer's degree from the Massachusetts Institute of Technology. He has served as Chief of the Ship Design Branch, Office of Merchant Marine Safety for the Coast Guard. Commander Deck has five years of sea service aboard cutters of the U.S. Coast Guard. Since retiring from the Coast Guard, he has made a number of Western River tow trips as an observer and wheelman as well as conducting research into tow powering and configuration. Commander Deck has served as an expert witness on marine powering applications and served as chief investigator in a number of Western River tow accidents, and inland waterway bridge allisions. His experience includes investigative, analytical work in hydrodynamics and expert testimony in allisions involving the Gramercy Bridge Caisson at Gramercy, Louisiana in 1985, the Pensacola Bay Bridge in 1992, the Highway 190 Bridge in Baton Rouge Louisiana in 1998 and the I-40 Bridge in Arkansas in 2002.

**Captain Jay Disler:** Captain Disler is licensed by the U.S. Coast Guard in the dual capacity of Ocean Master and Chief Engineer. He has extensive work experience as Master and Chief Engineer aboard a wide variety of commercial work vessels, especially along the South Texas coast. This experience includes the operation of push tows on the Gulf Intercoastal Canal in South Texas and on the Western Rivers of the United States. He has previously served as an expert witness in similar cases in both State and Federal Courts.

**A complete and detailed resume as well as a list of all cases participated in by either or both experts will be made available to any party at interest or officer of the court upon request.**

## DOCUMENTS REVIEWED:
1. Transcript of the Coast Guard hearing on the allision of September 15, 2001
2. Transcript of an audio tape of an interview with David Dewayne Fowler by a Coast Guard Investigator dated September 12, 2001
3. Hand written statement by David D. Fowler

4. Transcript of a Coast Guard interview with David D. Fowler by U.S. Coast Guard, transcript dated September 17, 2001 (thought to be a more formal version of document number 2).
5. Deposition Transcript of Stephen H. Mosher (reviewed by Jay Disler only)
6. Deposition Transcript of Philip S. Timberlake (reviewed by Jay Disler only)
7. Deposition Transcript of William Norb Whitlock (reviewed by Jay Disler only)
8. Cameron County Sheriff's Department Report Case No. 01-090662 dated September 16, 2001 (reviewed by Jay Disler only)
9. Coast Guard Investigative Officer's (IO) file (reviewed by John Deck III only)
10. Lake Charles Diesel report on BROWN WATER V (BW V) main engines dated 20 May 2002.
11. American Waterways Operators (AWO) Responsible Carrier Program (RCP) Administrative Procedures
12. Report pf the Towing Horsepower Task Group of the Towing Safety Advisory Committee (TSAC).

## ARTIFACTS EXAMINED:

1. Jay Disler and John Deck III inspected the towboat BROWN WATER V on 9 May 2002 at Anahuac, Texas
2. Photographs of BROWN WATER V

**ORIENTATION:** Presented for reader orientation and not as a statement of fact the following sequence of events, circumstances, and conditions were discerned in reading the documents described above. On the night of September 15, 2001 during the hours of darkness the Towboat BROWN WATER V pushing four loaded cargo barges "strung out" (four long, one wide) was approaching the Queen Isabella Causeway across the Gulf Intercoastal waterway connecting the resort community of South Padre Island to the mainland. At the pertinent time, the three forward barges in the tow of the BROWN WATER V were loaded to an average draft of approximately nine feet while the barge closest to the towboat drew less than seven feet. The BROWN WATER V and her tow failed to transit the bridge's navigation span, and struck portions of the bridge's supporting structure. As a result of the initial structural support damage caused by the collision a portion of the bridge's roadway fell into the water. Various automobiles then fell into the gap in the road way and on into the water before motorists on the bridge finally perceived what had happened and one motorist stopped his vehicle and began alerting motorists behind him of the situation. As a result of the various automobiles falling into the gap created by the collision multiple deaths and serious injuries occurred. In the hours and days following the initial damage additional bridge structural failures occurred dropping additional bridge portions into the water complicating the search for bodies and prolonging the repair period.

**NOTE CONCERNING CITATIONS TO STATUTES AND REGULATIONS:** This is a report of a forensic examination of the above described events by technical experts. Coast Guard Officers are charged with the enforcement of Federal maritime safety regulations. Licensed Merchant Marine Officers are charged with insuring compliance

with such regulations and safety related statutes in all of the operations that they supervise. Licensed Merchant Marine Officers are examined for their knowledge of applicable regulations as outlined in 46 CFR 10.910-1.

**Minimum regulatory compliance is not the standard of good seamanship or a seaworthy vessel. The standard is higher than that.** However today marine safety regulations are so extensive that many, if not most, safe marine practices are described within the body of the Federal Maritime Safety Regulations. All officers of the court are trained in the use of such regulations and have access to them. Consequently regulatory citation is the preferred system of citation to safe work practices when such are available. However the strict application of a particular regulation or statute to a particular set of circumstances is a legal judgment. **Referral to safety statutes and regulations in this report should not be construed as legal opinion that any such regulations or statutes apply as a matter of law. Regulations and safety related statutes cited herein are provided as descriptions of guides to safe maritime operations. Should the judge determine that any particular regulation or safety related statute cited does not apply to the circumstances as a matter of law, this would in no way affect the opinion of the undersigned examiners that the cited regulation or safety related statute accurately describes the safe practices.**

This is a technical report on matters of maritime safety. Maritime safety is a heavily regulated area of human endeavor. It is impossible to describe safe operations without mention of regulations and safety related statutes. **However such mention should in no way be construed as legal opinion.** Applicability as a strict matter of law is for the judge to decide. The undersigned examiners do not intend to offer legal opinion.

The following observations and opinions were offered by Captain Disler:

**OBSERVATION/OPINION:** Four barges may be configured 2x2 or 1x4. When entering a cross current a 2x2 presentation presents less frontal area to the current and reduces the effect of the current on the motion of the barges.

**OBSERVATION:** On the approach to the Queen Isabella Causeway the BROWN WATER V had her tow "strung out".

**OPINION:** Due to the various currents present at the Causeway "strung out" is the worse possible way to configure the tow. A "strung out" tow presents twice the frontal area to the lateral effects of current increasing the lateral forces on the tow. The tow's strung out configuration played a major part in her loss of control.

**OBSERVATION:** Captain Rocky Wilson changed the configuration of the tow from 2x2 to 1x4 "strung out" during his watch prior to Captain Fowler's approach to the Queen Isabella Causeway. Captain Fowler received the tow in this "strung out" condition at the start of his watch. As of this writing, we have not found much documentation of Captain Rocky Wilson actions prior to the allision. We have not read any explanation of Capt. Rocky Wilson rational for such a tow configuration. Neither

have we read any description of orders, instructions, nor suggestions concerning this troublesome configuration that might have been passed by Captain Rocky Wilson to Captain Fowler at the watch change.

**OPINION:** We do not know at this writing why Captain Rocky Wilson changed the tow configuration before the final approach to the Queen Isabella Causeway. We do not know at this writing why Captain Fowler did not change the configuration back to the more advantageous 2x2 configuration prior to the final approach. We suspect that corporate procedures or standing orders directly or indirectly effected this decision. We must respectfully reserve the privilege of future comment on this matter when additional information becomes available. This issue is important in any consideration of limitation of liability. Corporate influence, direct or indirect on such a critical decision would be an important consideration in a limitation proceeding. Generally, companies prefer tows "strung out" to improve speed in thus increasing profit.

**OBSERVATION/OPINION:** Brown Water Marine Management in planning the manning of the BROWN WATER V simply filled in a two watch system. The idea behind the two watch system is that each licensed individual in the wheelhouse will work not more than 12 hours per day except in an emergency. Since BROWN WATER V did not carry a designated duty engineer, cook, or utility man there was no one to handle such routine tasks as extra line handler, extra look-outs in limited visibility, and daily cooking and the associated cleanup. The "12 hour rule" does not see such routine daily tasking as "emergencies". These stresses on the 12 hour rule were foreseen by management before the start of the voyage, management chose to deliberately set up the watches so that the "12 hour rule" could not be kept.

An example of this is the testimony of Deckhand Ross Baligure at the Coast Guard Hearing. He testified that on the day before the accident he came on watch at 6 AM worked the whole day making up the tow which was completed at about 7:30 PM and continued his watch until midnight, a total of 18 hours. Making tow is not considered an emergency.

The "12 hour rule" is not a single statute of regulations but a collection of regulations and statutes that provide permissive authority to owners to reduce manning to two watches under certain limited circumstances. There is no regulation requiring two watches, three are allowed and preferred by maritime labor and maritime safety professionals. The two watch system is an economy granted to vessel owners under specific circumstances to reduce operating expenses and enhance profits. This permissive authority is predicated on strict adherence to maintaining manning levels in such a way that neither watch exceeds 12 hours of duty of any sort within any 24 hour consecutive period.

The sources of the "12 hour rule include but are not limited to the following: **46 USC 8104 (a), 46 USC 8104 (b), 46 USC 8104 (g), 46 USC 8104 (h), 46 CFR 15.705 (d), 46 CFR 15.710, 46 USC 8104 (f), 46 CFR 15.1111.**

Brown Water Marine management arranged the manning of the BROWN WATER V in such a way that the "12 hour rule" could not be observed by the wheel house crew. In considering contributing factors in this allision, the effects of fatigue upon the operators can not be ruled out, and in the face of observable violations of fatigue preventative regulations and/or customs it may be assumed by forensic examiners associated with the American Admiralty Bureau as described in Comment No. 6 of Volume 3 of the American Admiralty Bureau Commentator (AAB Com. No. 6, Vol. 3 (1996) ISBN 1-879778-59-9. The fatigue factors assumed in this case were the direct result of management manning level decisions, not the result of any choices by the licensed operators. Once aboard they were subjected to 24/7 operations and associated requirements imposed on only two operators to maintain 24/7 navigational operations.

**OBSERVATION:** Stephen H. Mosher, President of Brown Water Marine has stated in his deposition that shoaling was an important factor in the accident. The undersigned examiner has still not reconciled the fact dispute as to whether or not shoaling took place. However Mr. Philip S. Timberlake a safety auditor examining contract horsepower providers for ACBL noted that he had found Brown Water Marine vessels without updated Notice to Mariners. Had shoaling actually occurred, notice would have come to the pilot house by way of the Notice to Mariners.

**OPINION:** It is the duty of management to provide the vessels under their charge with all required charts, navigational references, and updating services as needed for safe navigation. Based on the documents reviewed, it appears more probable than not that Brown Marine's management in fact did not provide the most recent Notice to Mariners to the pilot house of the BW V. If indeed shoaling was a contributing factor in this accident, management failed in its duty to warn their pilot house personnel of the hazard. At present we have not found an actual Notice to Mariners regarding shoaling in the pertinent vicinity and notice some contra-indications of shoaling in the available documents. The available documents at this present time form a stack nearly five feet in height. Review is still in progress and the undersigned examiner will supplement on this issue at a later date. The reader is directed to the present observations and opinions of CDR. Deck on this subject elsewhere in this report.

**OBSERVATION:** The subject of tow powering and configuration has been marked in recent years by considerable controversy. The American Admiralty Bureau has studied the issue of tow powering and configuration in depth and the Bureau has published its finding in the AMERICAN ADMIRALTY BUREAU'S INTERIM RECOMMENDATIONS FOR TOW POWERING AND CONFIGURING FOR WESTERN RIVERS PUSH TOWS EDITED BY CDR. JOHN DECK III, USCG (RETIRED). This publication is available through Marine Education Textbooks 124 North Van Avenue Houma Louisiana 70363-5895, PH # (985) 879-3866. Publication is assigned international book binding No. ISBN 1-879778-62-9. This publication provides A decisional matrix and other guidance for the proper powering and configuration of push tows. We have examined the issue of the powering of the BROWN WATER MARINE V in conformance with these published findings. Additionally, we have examined statements within the depositions of Stephen Mosher, Philip Timberlake and

William Whitlock wherein these officials admit to minimal horsepower requirements very similar to those we describe in our publication and admit that the BROWN WATER V and its tow did not conform to these minimal guidelines.

**OBSERVATION:** Mr. Whitlock in his deposition maintained that it was his company's contractual obligation to provide adequate horsepower for the barges they contracted to deliver. Mr. Whitlock further maintained that it was the prerogative of his company to either provide the necessary horsepower by utilization of their own towboats or to provide it through boats owned by others and contracted by his company. Further, ACBL was represented on the Horsepower Working Group at TSAC which produced the report on two powering which included the following wording in the conclusions: In many cases what are believed to be inadequately powered tows may be tows that are inadequately handled. Where this is the case, Coast Guard and industry initiatives on training and licensing provide the best avenues for improved safety. However, towing companies are ultimately responsible for their safe operations; and they should be expected to develop policies which are defensible and accountable. It does not appear that any such policies were in place either at BROWN WATER MARINE OR ACBL. Further, there may be some evidence that Captain Fowler did not have all the requisite experience for this area.

**OBSERVATION:** There is at present no Coast Guard regulation specifying minimal horsepower requirements for any given size tow such written guidelines as exist for tow powering and configuration are found in Academic Studies such as the American Admiralty Bureau sited previously or company operational manuals. However companies which are signatory to the American Waterways Operators Responsible Carrier Program are required in Section II Management/Administration subsection A.2. Vessel Operating Policies/Procedures Vessel-specific operating procedures (will depend on vessel size, cargo, trade, etc.) a) procedures for making horsepower tow/size decisions. ACBL is signatory to the RCP program, however there were no written policies issued.

**OPINION:** Tow boat operating companies have the primary responsibility for providing adequate horsepower for each tow they undertake. Historically as described in the AAB reference previously cited pilot house personnel often improve the performance of underpowered tows through skillful piloting techniques that work with, and not against hydrodynamic forces. Thus it is difficult for pilot house personnel to refuse an underpowered tow since they may not cite to a Federal regulation and any refusal to push the tow the dispatcher provides is often viewed as a manifestation of a lack of skill. Against this background, it is vitally important that management train dispatchers to keep tows within the minimal powering guidelines that are discernable in authoritive literature pilot organization recommendations and company manuals. At the present state of regulation the primary duty for the avoidance of underpowered tows falls to management.

**OBSERVATION:** The horsepower of BROWN WATER V was considerably less than the minimal horsepower guidelines described by Mr. Timberlake and Mr. Whitlock in their depositions.

**OPINION:** In fact in the opinion of the undersigned, the available horsepower of the BROWN WATER V was grossly inadequate for the task at hand. Furthermore this inadequacy was within the privity and knowledge of both the management of BROWN WATER MARINE and ACBL.

**OBSERVATION:** Documents examined indicated that at least one of the engines of the BROWN WATER V was not operating to full capacity due to mechanical malfunctions. Further, there are indications that the engine horsepower was overstated. The engines in question are GM 12V71. Out of the box horsepower is 335 not 400. Due to time constraints in the preparation of this report it will be necessary to supplement on this issue at a near future date. However there is every indication in the record that BROWN WATER MARINE MANAGEMENT was aware of these deficiencies.

**ADDITIONAL FACTS DISPUTED:**

**OBSERVATION:** There were indications in the documents reviewed that short range visual aids to navigation associated with the bridge approach were in less than proper order. Some of the information concerning the short range aids to navigation found so far appears tentative, contested, or imprecise. Such conditions could be a contributing factor to this accident.

What is known is that Coast Guard Chief Ingram testified at the Coast Guard Hearing that his Executive Petty Officer accompanied the Texas DOT officials when they made their inspection the day of the accident and found that the bridge centerline green lights were not functionable.

There remain many documents yet to be examined. The undersigned reserves the privilege of supplementing on this issue as new facts become available.

**COMMANDER DECK OFFERED THE FOLLOWING OPINIONS:**

**OBSERVATION:** In the Coast Guard Hearing, Brown Water offered the testimony of David Swain, who presented findings of a shoaling area between Buoy 147 and 149. The shoaling allowing for the tide was on the order of 7 feet. Captain Fowler had indicated that he felt he grounded on his starboard stern quarter of his tow in that area. Captain Wilson testified that such grounding could cause the tow to get out of shape, swinging the bow to port and thus out of the channel. The towboat was drawing **8 feet 6 inches** and the after barge was drawing less than **7 feet**. The barges forward were drawing about **9 feet.** If Captain Fowler was pointing up into the current, his bow should have grounded first. If his stern was swinging into the current, the towboat would have hit bottom before the after barge. There was no damage reported to the running gear (propellers, propeller shafts, and rudders) of the towboat. Further based upon Captain Wilson's testimony that when the tidal current is running, you put your bow into the tidal current keeping your propellers in the deep water i.e., the dredged part of the channel. Because you are navigating in a current which is coming from your side, you have to crab your way down

the channel. That is you have to keep your bow towards the tidal current such that the sidewise component of your speed is equal to the velocity of the tidal current. Otherwise you will get set in the direction of the tidal current.

Understand that tide refers to the rise of the water in height with high tide being the highest level for that period and low tide is the lowest level for that period. Tidal fluctuations in the Gulf of Mexico are usually two high tides and two low tides in a day. Tidal current is the velocity of the water as the water moves to create the tide. The tidal current is highest between the times of the high and low tides. There is little or no tidal current at the time of high tide or low tide. A tide rising from a low tide to a high tide is known as a flood tide, while the reverse is known as an ebb tide.

**OBSERVATION:** During the survey of the BROWN WATER V at Anahuac on 9 May 2002, it was found that the starboard engine was mechanically in good shape while the port engine had one dead cylinder on one bank and the head for the other bank was a two valve head while the design head is a 4 valve head. This reduces the horsepower available to less than rated at less than rated RPM. There will be a drag from this port engine which will require some rudder angle to keep a straight heading.

**OPINION:** It is my opinion that if indeed Captain Fowler grounded between buoys 147 and 149; he was already out of shape to make the opening in the causeway. Because of the configuration of the tow with the deeper barges forward and the unbalanced horsepower available, it would not have been possible to bring the bow back into the current.

**OBSERVATION:** Captain Wilson testified that the tow would need a quarter of a mile to stop. There is about 1800 feet from buoy 149 to the bridge. There is however an adverse current setting the tow in the direction of the bridge. There is about 200 feet of shallower water on the red side of the channel between the dredged channel and the submerged pilings which are in water depth charted as 6 feet or less. There was no red flag (dangerous or polluting cargo) being carried in the four barges.

**OPINION:** Were Captain Fowler more experienced with this area, he could have grounded the tow on the red side of the channel adjacent to buoy 146. Since he was already headed in that direction, he could have backed down, stuck his bow into the bottom and let the tidal current carry his stern over. While the tide would have set him high on the bottom, the next high tide when ebbing would have assisted him in coming off ground. There was room and sufficient time for this grounding. While this would have resulted in an inquiry by the Coast Guard with possible action against his license, the consequences of this would have been far less severe than what happened.

**OPINION:** Had the BROWN WATER V really had 800 horsepower, the ability to stem the current would have been greater as there would be a higher speed available. Further with 800 horsepower, there would have been greater backing power which if applied timely would have mitigated the effects of the allision. Barring that, it would have facilitated an intentional grounding.

**SUMMARY:** It appears to the undersigned examiners as more probable than not that the following factors contributed to the allision of the BROWN WATER V with the Queen Isabella Causeway on 15 September 2001.

1. The BROWN WATER V was underpowered for her tow size, configuration, and environmental conditions. In part, this under powering was due to mechanical problems known to management. At present, this appears to be not only a contributing factor but the primary cause of event.
2. There may or may not have been shoaling in the vicinity, which may or may not have affected the steering of the vessel.
3. There may or may not have been deficiencies in the short range aids to navigation for the bridge approach.
4. It is assumed that operator fatigue contributed to the accident based on Captain Fowler stating that he had only about five hours of sleep prior to going on watch. To the degree that fatigue played a role in the accident, it was induced by the management decision to maintain a two watch system without the necessary additional manpower to adhere to the 12 hour rule.
5. The owners and managers of BROWN MARINE had the primary responsibility of assuring the adequate horsepower of the BROWN WATER MARINE V; and ACBL had a contractual obligation of the same nature.
6. BROWN WATER MARINE and ACBL knew or should have known that the BROWN WATER MARINE V was not being provided with the latest notice to mariners. This was the main system by which the operators would have been alerted to either shoaling or aids to navigation deficiencies.

In short all causational factors were within the privity and knowledge, and to a large extent, control, of management.

Respectfully Submitted without prejudice,

Captain G.E. "Jay" Disler

John Deck III

# EXHIBIT "B"

# CURRICULUM VITAE
## (RESUME)

**<u>Captain Gerald Edwin Disler</u>**

**P.O. Box 899**
**Wildwood, Texas 77663**
**(409) 834-2433**
**Fax – (409) 834-2499**
**CAPTDISLER@SBCGLOBAL.NET**

## U.S. COAST GUARD LICENSES
-Master 1,600 G.T. (Near Coastal)
-Master Of Uninspected Towing Vessels Upon Great Lakes and Inland Waters
-Radar Observer (Unlimited)
-Chief Engineer, Motor Unlimited Horsepower
-All licenses are fifth issues, original towing license

## U.S. COAST GUARD ENDORSEMENTS
-Z Card: any unlicensed rating in the deck department, including Able Seaman (Unlimited)
-Any unlicensed rating in the Engine Department, including Jr. Engineer, Ship's Electrician, Ship's Refrigeration, Pumpman, Fireman, Oiler, Welder, Tankerman, Grade A and all lower grades.

## EDUCATION AS PERTAINS TO MARINE INDUSTRY ONLY

| | |
|---|---|
| **Safety** | Vessel Entry, Marine Chemist Seminar |
| | *-Received shipyard competent person certificate, Beaumont, TX.* |
| | University of North Florida |
| | -OSHA Instructor, Qualified |
| | *HASMAT, 40 hrs., OSHA & 8 hrs., Site Supervisor* |
| | Conoco, Inc. |
| | *-Improving safety through incident investigation* |
| | *-Occupational Safety* |
| | Marine Spill Response Corp. |
| | *HASWOPER* |
| | |
| **Deck** | |
| | Texas A & M University (Radar, Collision Avoidance) 4 times |
| | Houston Marine Training Services |
| | *-Radar Observer Recertification-unlimited* |
| | Houston Marine Training Services, Master Prep. |
| | Protechnical Institute, St. Petersburg, FL.- |
| | U.S.C.G. Fire Suppression School |
| | *-51 hours basic and advanced* |
| | Universal Maritime Training Celestial Navigation |

GED/Page 2

**STCW**

Basic Fire-Fighting
STCW Personal Survival
STCW Personal Safety and Social Responsibility
STCW First Aid and CPR
Bridge Resource Management
STCW ARPA Radar (No Geographical Restrictions)

**Engineering**

H.E.W. Welding and Shop Math School
*-Received certified welding certificate #7266, March 3, 1970*
*Pittsburgh Testing Lab*
Automation Systems S.I.U., Piney point, MD
Alco Diesel School, White Plains, NY
E.M.D. Division of General Motors School, IL
Caterpillar Dealer Training School
*-6.25 Bore, Mustang – Caterpillar, Houston, TX*
*-71 Series GM Detroit Diesel School, Houston TX*
Louisiana Marine and Petroleum Institute
*-Chief Engineer Prep.*
Manitowoc Crane School, Manitowoc, WI

**OFFICES HELD**

- Director, American Admiralty Bureau, Ltd.

**PROFESSIONAL ASSOCIATIONS**

- The Society of Naval Architects & Marine Engineers (SNAME)
- National Forensic Center
- American Boat and Yacht Council
- Propeller Clubs of The United States
- American Professional Captains Association

**GED/Page 3**

## EMPLOYMENT HISTORY

1984-Present                MARITIME CONSULTANTS AND ASSOCIATES, INC.
                            G.E. "Jay" Disler/Owner
                            P.O. Box 899
                            Wildwood, Texas 77663

Consultants, Crewing Agents, Surveyors, Expert Witness, PI Investigations, Contract Negotiations, Vessel Brokers, Operators, Port Engineers & Forensic Examiners.

| | |
|---|---|
| Consultants: | All maritime matters. |
| Crewing Agents: | Delivery, temporary crews engine and deck, top to bottom License and unlicensed, any tonnage, any horse power, Anywhere U.S. or foreign. |
| Surveyors: | Damage, cargo, and value surveyors. |
| Expert Witness: | Maritime accidents, defense and plaintiff. |
| P.I. Investigations: | Defense, plaintiff & vessel owners. |
| Contract Negotiations: | Maritime personnel, supplies, modifications and repairs, Charter, operation contracts, and brokerage agreements. |
| Other: | Served as Chief Engineer of The Tall Ship "Elissa", Texas Seaport Museum, Pier 21, Galveston, Texas Lecturer, Texas A & M University, Galveston Texas Various licensed relief work to include: U.S. Maritime Administration, Military Sea command, Marine Spill Response Corp., Orange Ship Building, Dyn Corp. Core of Army Engineers Marine Spill Response Corp. Neches Gulf Marine, Instructor OSHA, 40 hrs., Hazardous Substance Training & OSHA, 8 hrs., Hazardous Substance Site Supervisors. |

May, 1989 – Nov., 1993:       CONOCO SHIPPING, INC.
                              Bob Kimmons/Marine Superintendent
                              P.O. Box 2197
                              Houston, Texas

Hired as Chief Engineer for the M/V Ventura, the only vessel ever designed and built for lightering. Was promoted to Captain, January 15, 1990. Completed 289 successful

GED/Page 4

Lighterings without injury to personnel, damage to ships or vessel. Many were double lighterings with 8 fenders

1991 to 1995                    U.S. MARITIME ADMINISTRATION
                               Military Sea Command

Complete crewing of ships for operation Desert Storm, took tankers, freighters and RoRos from reserve fleet, outfitted, U.S. Coast Guard and A.B.S. inspected, Sea-tried and delivered to Military Sea command. Completed more for Somalia and annual inspections.

Sept., 1994 – May 1989        SELF EMPLOYED, MARITIME CONSULTANT AND
                               SURVEYOR

Cargo, damage and value surveys, consultant to various maritime companies and attorneys in maritime lawsuits. Called by the U.S. Coast Guard as an expert witness in license revocation hearings. Have taught license prep school with Texas and Louisiana teaching certificate in Nautical Science and Maritime Engineering (license prep only). Various relief work. Buy, sell and broker used vessels, negotiate and write all broker contracts. Various license relief work.

Sept., 1983 – 1984:           SABINE TOWING AND TRANSPORTATION CO., INC.
                               Paul Moore/Personnel Manager
                               P.O. Drawer 1528
                               Groves, Texas  77619

Hired as Assistant Engineer on the composite unit, the tug SATOCO, 160'x40', 7400 h.p. at shaft, total h.p. -9,000, V20 E.M.D.S., and the barge CHROMALLOY I, 240,000 bbls. Multigrade cargo, 630'x 85', draft 41 ft., After 7 days, promoted to permanent 2nd Mate, 3 months later promoted to permanent Chief Mate. Then promoted to Relief Captain shortly before the sale of the vessel. Made regular trips from Lake Charles, LA. To Tampa, FL. And up the East Coast of The United States. Supervised up to 12 people. Inland towing division, master of tug marathon in tow with 36 lash barges, I.C.W. and Mississippi River.

Nov., 1982 – Sept., 1983:     TRANSOCEANIC SHIPPING COMPANY, INC.
                               Dave L. Thomas/Shipping Agent
                               1505 International Trademark
                               No.2 Canal Street
                               New Orleans, Louisiana  70130

Captain of the M/V Proud Brio, a 202 ft. O.S.V. delivering containerized oilfield supplies from the Port of New Orleans to Cundua, Del Carmen, Mexico. Also worked as Port

Captain and Port Engineer for this vessel and two other vessels working in Mexico. I negotiated all supplies, personnel and repair contracts. Over the years I have acquired some command of the Spanish language. Supervised up to 35 people.

Feb., 1981 – Nov., 1982:    MARSEA AGENCIES, INC.
Bill Summers/Operations Manager
P.O. Box 747
Station 2
Houma, Louisiana 70360

Chief Engineer – building new offshore supply vessels at Quality Shipyard, Houma, LA. And Halter Marine Mosspoint, MS., from keel through outfitting, and U.S. Coast Guard inspections. Going on board as Captain for sea trails, delivery inspection, and first 30 days of contracts to train crews. Took M/V Marsea 7 as Captain from February 10, 1982 to November, 1982, on contract Halliburton, DeMexico, operating in the southern Gulf of Mexico, off the Yucatan Peninsula. Supervised crew of up to 20.

Sept., 1980 – Jan., 1981:    NEWPARK MARINE
Bob Thompson/Operations Manager
P.O. Box 976
Morgan City, Louisiana  70381

Chief Engineer and Relief Captain on 7500 h.p. ocean-going tug, lay barge Creek, and various oil and cargo barges being towed from Central America to The United States. Supervised 9 people.

Oct., 1979 – Sept., 1980:    BLUDCO BARGE AND TOWING, INC.
Jack Jackson/Operations Manager
P.O. Box 12424
Houston, Texas  77017

Chief Engineer and Relief everything on the M/V Gaucho and Barge Poseidon, a composite unit of multi-grade petroleum cargoes from Texas City, TX. to various ports along the Mississippi River and up the East Coast to Wilmington, NC., Marcus Hook, PA., and Tranton, NJ. This unit hydraulically locked into notch with a patented system with no towing wench on deck and could stay in notch in up to twenty foot seas. Supervised up to 9 people.

1973 – 1979:    BROWN AND ROOT, INC.
P.O. Box 3
Houston, Texas  77001

JACKSON MARINE CORP.
P.O. 96118
Houston, Texas 77015

During this time with Jackson Marine, I worked as Chief Engineer, Mate and Captain on ocean going North Sea tugs used in towing operations, also did anchor handling. These vessels included M/V Mister David, Mister Charlie, Mister Pete, The Godfather, The Doctor Jack and The Midnight Moon. These were all large horsepower V18 alcos to 8000 h.p. I also worked as Port Captain and Port Engineer with responsibilities Negotiated and approved all shipyard contracts. I was loaned back and forth between Brown and Root and Jackson Marine. I completed contracts with Brown and Root in Bombay, India, Bahrain and Saudi Arabia as 1ˢᵗ Assistant Engineer and Port Engineer on various lay barges, jet barges, derrick barges, platform launch barges and diving operations. Basically, these units are used in all phases of the offshore construction business. Supervised up to 80 people.

1950's – 1970's:          REVIA MARINE, INC.
                          Captain Frank Revia/Owner (Uncle)
                          Port Bolivar, Texas

I acquired grass roots complete training from repair yard helper to mastering the many various types of vessels he owned, operated, charted and brokered.

| | |
|---|---|
| Bay and Gulf Fishing Vessels | 38' to 100' |
| Crew Boats | 40' to 110' |
| Inland Towing Vessels | to 1800 h.p. |
| Harbor Tugs | to 1800 h.p. |
| Offshore Towing Vessels | to 4200 h.p. |
| Offshore Drilling Rigs | |

Training and worked as shorebase fleet manager, hiring and training personnel, negotiated charter agreements, modification and repair contracts and supply contracts.

Same Time Frame          KELSO MAINE, Galveston, TX
                         EDGAR BROWN TOWING, Orange, TX
                         SEAFARERS INTERNATIONAL UNION
                         MORAN TOWING OF TEXAS

## FAMILY HISTORY

I am the third generation of seafarer in my family. My father, Captain R.P. Disler, was a Master Mariner who retired from The Gulf Oil Corporation (Chevron Oil Corp.) I made various summer trips as a youth with him on board Gulf Oil tankers. My U.S. Coast Guard file is located at Houston, Texas and shows no offenses since it was started.

FROM : JOHN DECK III : MARINE CONSULTANT (216) 6350531                    P.1

## CURRICULUM VITAE

JOHN DECK III
Post Office Box 501
Chardon, Ohio
44024 U.S.A.

(440)
(216) 635-0531

| | |
|---|---|
| **PERSONAL:** | Age: 61  DOB: 6/21/35<br>Height: 5'8"  Weight: 170 lbs.<br>Married: Sylvia Frances Gervasi |
| | Retired Coast Guard Officer, 20 Years of service on 30 June 1979 with rank of Commander |
| | Presently a private consultant |
| **EDUCATION:**<br>Post Graduate | Massachusetts Institute of Technology<br>Naval Engineer's Degree and M.S. (Mechanical Engineering)<br>June 1969 |
| | Curriculum: |
| | Required -- Basic Naval Architecture and Marine Engineering, Structural Design, Hydrodynamics, Fluid Flow, System Dynamics, Advanced Mathematics to Differential Equations, Computer Application. Thesis and Allied Research in the Dynamics and Controllability of Large Tank Vessels. |
| College | United States Coast Guard Academy, New London, Connecticut, B.S, 1959 |
| | Curriculum: |
| | General Marine Engineering Curriculum plus Liberal Arts and Military Sciences. Graduated 32nd in class of 80 and commissioned a Regular Officer in the United States Coast Guard. |
| | John Carroll University, Cleveland Ohio |
| | Curriculum: |
| | Basic Engineering Curriculum<br>Completed 1 1/2 years study. |
| Preparatory | Conneaut High School, Conneaut, Ohio<br>Graduated 1953, 15th in class of 110. |
| NON-DEGREE | U.S. Army Nuclear Power Plant Course, Fort |

From : JOHN DECK III : .(INE CONSULTANT (216) 6350429                                    P02

Curriculum Vitae
John Deck III
Page 2

TRAINING:                Belvoir, Virginia, included technical,
                         practical, and theoretical training on SM-1
                         Stationary Nuclear Power Plant. Designated
                         qualified Nuclear Plant Engineer, U.S. Army in
                         1963.

                         Various short courses at different
                         universities in Nuclear Engineering, Radiation
                         Protection, Mechanical Reliability, Risk
                         Analysis, Matrix Methods in Structural
                         Analysis, Finite Element Analysis, Welding and
                         Metallurgy, Fracture Mechanics, Offshore
                         Petroleum Operations, and Non-destructive
                         Testing.

EXPERIENCE               Over 20 years experience in varied operations,
SUMMARY                  training, and management phases of Coast Guard
GENERAL:                 activities, including practical engineering
                         work. Frequently recognized for writing and
                         speaking ability, attention to detail,
                         capacity for hard work and practical sense of
                         accomplishment.  Selected and sent to post-
                         graduate school at Coast Guard expense.
                         Received Coast Guard Commendation Medal for
                         activities in marine nuclear power in 1979.

                         Since retirement in 1979, have worked as a
                         private consultant. This consulting work has
                         included extensive vessel casualty
                         investigation, marine survey, and expert
                         witness work.  Casualty investigation work has
                         been concentrated mainly in accident
                         reconstruction. Have been qualified as an
                         expert in various Federal, State, and County
                         Courts.  Developed basic naval architecture
                         and hydrodynamics computer programs.  Provided
                         training and technology transfer in marine
                         safety administration, inspection and survey,
                         under the aegis of the International Maritime
                         Organization.

                         Since 1983, have developed video production
                         capability including a professional full
                         function edit suite for both production and
                         post-production for a number of video formats.
                         Produced some 30 hours of training videos for
                         IMO, training videos on recreational boat
                         operation, substance abuse in the marine work
                         place, and others. Have developed computer

FROM : JOHN DECK III    RINE CONSULTANT (216) 6358429                                          P03

Curriculum Vitae
John Deck III
Page 3

based graphics animation capability used in
several casualty investigations.

ENGINEERING         Chief of the Ship Design Branch, Merchant
ADMINISTRATION      Marine Technical Division, Office of Merchant
                    Marine Safety.  Staff of 13 professional
                    engineers, most with advanced degrees.
                    Responsibilities included commercial vessels
                    from hydrofoils to bulk carries, concrete
                    vessels to floating nuclear power plants.
                    Included the disciplines of naval
                    architecture, wave climatology, fire
                    protection, structural analysis, fracture
                    mechanics, and systems safety analysis, 1975
                    to 1979.
                    Also Nuclear Coordinator for Office of Marine
                    Safety, having responsibility for all nuclear
                    matters coming under the purview of the Coast
                    Guard, including nuclear ships, floating
                    nuclear power plants, carriage of radioactive
                    materials and radioactive waste discharge.

                    Chief of Merchant Marine Technical Field
                    Branch, Cleveland, Ohio with responsibility
                    for Great Lakes Region, 1971-1975.

                    Shipboard engineer on 4000 shp Steam Turbo-
                    electric Coast Guard Cutters with all
                    engineering positions including Chief
                    Engineer.

ENGINEERING         In the field of hydrodynamics, have done
TECHNICAL           practical work in wave climatology and
APPLICATIONS:       statistics, motion response and stability in
                    application to integrated tug-barge systems,
                    large vessels, and off-shore structures.

                    In the field of structural analysis, have done
                    work in environmental loading with
                    applications in casualty investigations,
                    design code adequacy, and preliminary design
                    concepts.

                    In the field of system safety, have done work
                    in risk analysis of marine nuclear systems,
                    hazardous cargo, innovative marine concepts,
                    and vessel casualty investigations.

... ... JOHN DECK III    XINE CONSULTANT (216) 6350429                    P04

Curriculum Vitae
John Deck III
Page 4

ENGINEERING
PRACTICAL
APPLICATIONS:

Have served in duty afloat on Coast Guard
Cutters for five years. Two years on the deck
side. Three on the engineering side.  Three
years experience as inspector in Newport News

Shipyard in both new construction and repair
work.  One year as resident Coast Guard
nuclear Inspector on U.S.Army floating nuclear
power plant, STURGIS, (MH-1A).

Qualified Coast Guard marine inspector,
license examiner, and investigator. Ten years
experience in Coast Guard as naval architect
and marine engineer in plan review for new
construction, alterations, new concepts, and
innovative designs.

Seventeen years of private consultancy
including 1 1/2 years in an United Nations
Regional Shipping Development Project in the
Caribbean under the International Maritime
Organization.  Presently a consultant to IMO
and UNCTAD.

ENGINEERING
RESEARCH:

Technical management responsibility for
research and development in structures area
for Coast Guard Marine Safety.

Directed research on maneuverability of
tankers for Coast Guard Regulatory
Development.

Provided technical input to work statements,
technical evaluation of proposals, and
technical monitoring of contracts of the Ships
Structures Committee. (A federal multi-agency
organization).

Selected to Sigma Xi National Research Society
for thesis work accomplished at M.I.T.

Directed research on applications in cold
weather for individual and group protection,
and lifesaving equipment in Great Lakes
Extended Navigation Season Demonstration
Program.

Developed construction standards and details
of the traditional West Indies Schooner.

FROM JOHN DECK III   MARINE CONSULTANT (216) 6358429   P05

Curriculum Vitae
John Deck III
Page 5

Developed a vessel registry of small vessels
trading in the Caribbean Basin. Work carried
out under the United Nations Regional Shipping
Development Project, St. Lucia, West Indies.

Developed computer simulation programs for the
study of vessel maneuverability, motion in
waves, and capsize potential.

**ENGINEERING
TRAINING:**
Under aegis of United Nations, developed and
conducted training programs in inspection and
survey of hull and machinery. Programs
included both classroom and videotape
instruction.

**DOMESTIC
ENGINEERING
COMMITTEE
ACTIVITY:**
Member, Society of Naval Architects and Marine
Engineers, past member Hydrodynamics Committee
and Nuclear Ships Panel, 1969 to present.

Coast Guard Liaison to National Academy of
Engineering, Marine Board, Formulation of
National Oceanic Policy, 1969-1971.

Coast Guard Liaison to National Academy of
Engineering, Marine Board, Adequacy of
Offshore Structures, 1979.

Chairman, Safety and Survival Subcommittee,
Great Lakes Extended Navigation Season
Demonstration Program, 1972-1976.

Chairman, SOLAS Working Group on Code of
Safety of Nuclear Ships, 1976-1979

Testified as expert witness to Atomic Safety
and Licensing Board on floating nuclear power
plant.

Testified as expert witness to Advisory
Committee on Reactor Safety on floating
nuclear power plant.

Testified as expert witness to several
Congressional Committees and Subcommittees on
marine environment and marine safety matters.

**INTERNATIONAL
ENGINEERING
COMMITTEE
ACTIVITY:**
Member, U.S. and Canada Joint Technical
Committee, 1970-1973.

Chairman, U.S. Delegation to Working Group on

Curriculum Vitae
John Deck III
Page 6

Code of Safety for Nuclear Merchant Ships,
IMO, 1976-1979.

Chairman, U.S. Delegation to Working Group on
Safety of Nuclear Ships, Committee on Safety
of Nuclear Installations, Nuclear Energy
Agency, OECD, 1975-1979.

Vice-Chairman, Joint IMCO/IAEA Technical
Committee on Port Entry of Nuclear Ships,
1979.

Chairman, Working Group on Code of Safety for
Nuclear Merchant Ships, IMO, 1979-1980.

Member, U.S. Advisory Committee on Design and
Equipment Subcommittee IMO for Vessel
Maneuverability, 1981 to present.





# MARITIME CONSULTANTS & ASSOCIATES
## CAPT. G. E. "JAY" DISLER
U.S.C.G. LICENSE MASTER & CHIEF ENGINEER
OCEANS & UNLIMITED HORSEPOWER
P.O. BOX 698 • WILDWOOD, TX 77663
PHONE (409) 834-2433 • FAX (409) 834-2499
E-MAIL CptnDisler@aol.com

STAFF ASSOCIATES
Capt. C. L. Smith BS. MS.
Capt. S. E. Fraizer
Capt. Mac McGough

RESEARCH STAF
Gale Keele
Tony Keele

## COURTS SERVED IN
## AS EXPERT WITNESS DURING TRIAL

**January 2004**

**Following is a list of dates, lawsuit names, courts served in, attorney/s, type of case, whether plaintiff or defense and State and District in which testimony has been given at trial.**

| | |
|---|---|
| **DATE:** | March 9, 1999 |
| **LAWSUIT:** | State of Louisiana vs. Larry Daigle, Case # 98-188491 |
| **COURT:** | 16th Judicial District Court, St. Martinville, LA Judge John Connery |
| **ATTORNEY/S:** | Osborne, McComisky, Gobert & Reasonover |
| **TYPE OF CASE:** | Criminal trespass (Inland navigation, the rules and regulations governing navigation and navigational operations) |
| **PLAINTIFF/DEFENSE:** | Defense |
| **STATE:** | Louisiana |

| | |
|---|---|
| **DATE:** | June 16, 1999 |
| **LAWSUIT:** | Wayne J. Bourgeois & Patricia Bourgeois vs. Terrebonne Marine Repairs, Inc & Continental Casualty Insurance Co. |
| **COURT:** | 32nd Judicial District Court, Parish of Terrebonne, Judge Edward J. Gaidry |
| **ATTORNEY/S:** | Robert B. Butler, III |
| **TYPE OF CASE:** | Pleasure craft steering |
| **PLAINTIFF/DEFENSE:** | Plaintiff |
| **STATE:** | Louisiana |

| | |
|---|---|
| **DATE:** | April 28, 2000 |
| **LAWSUIT:** | Walkerlands Incorporated Vs. State of Louisiana |
| **COURT:** | 6th Judicial District Court State of Louisiana |
| | East Carroll Parish |
| | Judge Joyce |
| | Cause No. 17,746 |
| **ATTORNEY/S:** | Louisiana Attorney General |
| **TYPE OF CASE:** | U.S. Inland Navigable Waters / Federal Servitude |
| **PLAINTIFF/DEFENSE:** | Defense |
| **STATE:** | Louisiana |

| | |
|---|---|
| **DATE:** | May 22, 2000 |
| **LAWSUIT:** | Joseph W. Vernon III, vs. Crewboats, Inc. No. 76-308 |
| | Division "C", 34 JDC |
| **COURT:** | 34th Judicial District Court, Parish of Saint Bernard |
| | Judge Wayne Cresap |
| **ATTORNEY/S:** | DeSalvo & Harris |
| **TYPE OF CASE:** | Line Handling of Crewboat on the OCS |
| **PLAINTIFF/DEFENSE:** | Plaintiff |
| **STATE:** | Louisiana |

Trials listed below were subpoenaed to trial, no oral testimony was given.  Testimony was given through written report or deposition read into trial testimony and served as marine consultant to attorneys at trial.

| | |
|---|---|
| **DATE:** | May 9, 2000 |
| **LAWSUIT:** | Arkansas State Highway Commission vs. Arkansas River Company & U.S. Army Corps of Engineers |
| **COURT:** | United States District Court for the Eastern District of Arkansas Western Division |
| | Judge Jim Wilson |
| | Cause No. LR-C-98-517 |
| **ATTORNEY/S:** | State of Arkansas |
| **TYPE OF CASE:** | Bride Allision |
| **PLAINTIFF/DEFENSE:** | Plaintiff |
| **STATE:** | Arkansas |

―――

| | |
|---|---|
| **DATE:** | August 24, 2000 |
| **LAWSUIT:** | Jacqueline A. Linares Vs. Gulf Pride Marine Services, Inc. |
| **COURT:** | 32nd Judicial District Court, Parish of Terrebonne |
| | Judge Edward J. Gaidry |
| | Cause No. 125688 |
| **ATTORNEY/S:** | Hebert & Marceaux |
| **TYPE OF CASE:** | OCS Wrongful Death Man Overboard from Crewboat |
| **PLAINTIFF/DEFENSE:** | Plaintiff |
| **STATE:** | Louisiana |

―――

| | |
|---|---|
| **DATE:** | August 28, 2003 |
| **LAWSUIT:** | Mark Allen Covert vs. USA |
| **COURT:** | U.S.D.C. Eastern Division of Texas, Beaumont Division |
| | Judge Clark |
| | Cause No.  Civil Action No. 1:01CV796 |
| **ATTORNEY/S:** | Birnberg & Associates |
| **TYPE OF CASE:** | NIOSH Lifting |
| **PLAINTIFF/DEFENSE:** | Plaintiff |
| **STATE:** | Texas |

TOTAL 27 – Trials



# MARITIME CONSULTANTS & ASSOCIATES
## CAPT. G. E. "JAY" DISLER
U.S.C.G. LICENSE MASTER & CHIEF ENGINEER
OCEANS & UNLIMITED HORSEPOWER
P.O. BOX 698 • WILDWOOD, TX 77663
PHONE (409) 834-2433 • FAX (409) 834-2499
E-MAIL CptnDisler@aol.com



STAFF ASSOCIATES
Capt. C. L. Smith BS. MS.
Capt. S. E. Fraizer
Capt. Mac McGough

RESEARCH STAFF
Gale Keeler
Tony Keeler

**January 2004**

**Following is a list of dates, lawsuits, cause numbers, attorney/s, type of cases, whether plaintiff or defense and state in which testimony has been given by deposition.**

| | |
|---|---|
| **DATE:** | February 2-3, 1999 |
| **LAWSUIT:** | In the Matter of the Complaint of Woodlands Harvesting, Inc. |
| **CAUSE NO:** | 96-C-1212 & 96-C-1314 |
| **ATTORNEY/S:** | Mr. George Velcich, Belgrade & O'Donnell |
| **TYPE OF CASE:** | Uninspected Towing Vessel, Log Spill into Lake Michigan |
| **PLAINTIFF/DEFENSE:** | Defense |
| **STATE:** | Michigan/Illinois/Wisconsin |

| | |
|---|---|
| **DATE:** | February 12, 1999 |
| **LAWSUIT:** | Ted Mayo vs. American Commercial Barge Lines |
| **CAUSE NO:** | Cause No. 972-8324 |
| **ATTORNEY/S:** | Steven Groves, Schlichter, Bogard & Denton |
| **TYPE OF CASE:** | Uninspected Towing Vessel (Line Haul) Deck Slip & Fall |
| **PLAINTIFF/DEFENSE:** | Plaintiff |
| **STATE:** | Missouri |

| | |
|---|---|
| **DATE:** | July 23, 1999 |
| **LAWSUIT:** | George Koontz vs. Tolen Marine, Inc. |
| **CAUSE NO:** | Civil Action No. 97-CI-0010D |
| **ATTORNEY/S:** | Charles A. Saladino Law Firm |
| **TYPE OF CASE:** | Pilothouse step to deck, slip and fall (Upper River Case) |
| **PLAINTIFF/DEFENSE:** | Plaintiff |
| **STATE:** | Kentucky |

| | |
|---|---|
| **DATE:** | August 17, 1999 |
| **LAWSUIT:** | Gary L. Morris vs. Aker Gulf Marine |
| **CAUSE NO:** | Civil Action No. C-98-333 |
| **ATTORNEY/S:** | Phil Watkins, P.C. |
| **TYPE OF CASE:** | Fall into manhole cover of uninspected offshore Material barge |
| **PLAINTIFF/DEFENSE:** | Plaintiff |
| **STATE:** | Texas |

| | |
|---|---|
| **DATE:** | December 27, 1999 |
| **LAWSUIT:** | Walker Lands Inc. vs. East Carroll Parish Police Jury et al |
| **CAUSE NO:** | 17,746 |
| **ATTORNEY/S:** | Louisiana Attorney General |
| **TYPE OF CASE:** | Inland Navigable Waters / Federal Servitude |
| **PLAINTIFF/DEFENSE:** | Defense |
| **STATE:** | Louisiana |

**Total Cases in 1999 – 5**

| | |
|---|---|
| **DATE:** | January 10, 2000 |
| **LAWSUIT:** | Joseph W. Vernon III vs. Crewboats Inc. |
| **CAUSE NO:** | 76-308 |
| **ATTORNEY/S:** | De Salvo & Harris |
| **TYPE OF CASE:** | Crewboat morring to platform |
| **PLANTIFF/DEFENSE:** | Plaintiff |
| **STATE:** | Louisiana |

| | |
|---|---|
| **DATE:** | January 24, 2000 |
| **LAWSUIT:** | Evan Duane Brown vs. Tilos Maritime Co., LTD. |
| **CAUSE NO:** | 99-0478 |
| **ATTORNEY/S:** | Edgar F. Barnet |
| **TYPE OF CASE:** | Trip and Fall |
| **PLAINTIFF/DEFENSE:** | Plaintiff |
| **STATE:** | Louisiana |

| | |
|---|---|
| **DATE:** | May 16, 2000 |
| **LAWSUIT:** | Eric Byrd vs. Maritrans, Inc. |
| **CAUSE NO:** | 99680-CB-C |
| **ATTORNEY/S:** | Paul Sterbcow |
| **TYPE OF CASE:** | Physical Lifting |
| **PLAINTIFF/DEFENSE:** | Plaintiff |
| **STATE:** | Alabama |

~~~

| | |
|---|---|
| **DATE:** | October 10, 2000 |
| **LAWSUIT:** | Lloyd O. Morris vs. American Commercial Barge Line Company |
| **CAUSE NO:** | No. 99-2895 Section "E" (3) |
| **ATTORNEY/S:** | Weidemann & Weidemann |
| **TYPE OF CASE:** | Lower River Barge Rigging and Winch |
| **PLAINTIFF/DEFENSE:** | Plaintiff |
| **STATE:** | Louisiana |

~~~

| | |
|---|---|
| **DATE:** | October 27, 2000 |
| **LAWSUIT:** | Kentrell Dorsey vs. J. Ray McDermott |
| | 23rd Judicial District Court, Parish of Assumption |
| **CAUSE NO:** | No. 25,303, Div. "A" |
| **ATTORNEY/S:** | Weidemann & Weidemann |
| **TYPE OF CASE:** | OCS Material Barge to Lay Barge Mooring |
| **PLAINTIFF/DEFENSE:** | Plaintiff |
| **STATE:** | Louisiana |

~~~

| | |
|---|---|
| **DATE:** | October 31, 2000 |
| **LAWSUIT:** | Kiley Latiolais vs. Dauterive Contractors, Inc. |
| | 23rd Judicial District Court, Parish of Assumption |
| **CAUSE NO:** | No. 24,696A. |
| **ATTORNEY/S:** | William N. Gee III, Esq. |
| **TYPE OF CASE:** | Airboat Unintentional Grounding |
| **PLAINTIFF/DEFENSE:** | Plaintiff |
| **STATE:** | Louisiana |

~~~

| | |
|---|---|
| **DATE:** | Nov. 2000 |
| **LAWSUIT:** | William Jarvi vs. Natco, Limited Partnership |
| | U.S.D.C. Illinois |
| **CAUSE NO:** | 979021 |
| **ATTORNEY/S:** | Belgrade O'Donnell |
| **TYPE OF CASE:** | Harper Dredge at Marine Terminal Slip & Fall, Great Lakes |
| **PLAINTIFF/DEFENSE:** | Defense |
| **STATE:** | Illinois |

**Total cases in 2000 – 7**

| | |
|---|---|
| **DATE:** | June 27, 2001 |
| **LAWSUIT:** | Omi Trent Transport, Inc. vs. Marine Inland Transportation Company, In personam, and M/V VENTURE, her engines, Tackle, Apparel, et in rem defendants |
| **CAUSE NO:** | C.A. 00-1341 |
| **ATTORNEY/S:** | Galloway, Johnson, Tompkins, Burr & Smith |
| **TYPE OF CASE:** | Collision Sabine Nachez Ship Channel |
| **PLAINTIFF/DEFENSE:** | Plaintiff |
| **STATE:** | Louisiana |

~~~

| | |
|---|---|
| **DATE:** | July 19, 2001 |
| **LAWSUIT:** | Micheal Medeiros vs. Cardinal Services, Inc. U.S.D.C. Western District of Louisiana Judge Putnam |
| **CAUSE NO:** | CV00-1658 |
| **ATTORNEY/S:** | Hill, Beyer & Menard |
| **TYPE OF CASE:** | OSV Deck Slip & Fall |
| **PLAINTIFF/DEFENSE:** | Plaintiff |
| **STATE:** | Louisiana |

~~~

| | |
|---|---|
| **DATE:** | August 16, 2001 |
| **LAWSUIT:** | Enrique Estrad vs. Cenac Towing Company, Inc. & Union Pacific Resources Company 16th District Court, Parish of St. Mary |
| **CAUSE NO:** | 103787"B" |
| **ATTORNEY:** | Patrick Yancey |
| **TYPE OF CASE:** | Tankerman injured at Main Terminal |
| **PLAINTIFF/DEFENSE:** | Plaintiff |
| **STATE:** | Louisiana |

~~~

| | |
|---|---|
| **DATE:** | August 20, 2001 |
| **LAWSUIT:** | Michael Fruge vs. Conoco, Inc. 14th Judicial District Court, Parish of Calcasieu |
| **CAUSE NO:** | 98-3253 |
| **ATTORNEY/S:** | The Townsley Law Firm |
| **TYPE OF CASE:** | Slip, Trip & Fall on inspected tank vessel, Mississippi River |
| **PLAINTIFF/DEFENSE:** | Plaintiff |
| **STATE:** | Louisiana |

~~~

**DATE:**                         October 5, 2001
**LAWSUIT:**                      Randall Robinson vs. American Commercial Barge Line
                                  Company, Circuit Court 20th JC of Illinois St. Clair County
**CAUSE NO:**                     No. 99-L-303A
**ATTORNEY/S:**                   Storment and Teague
**TYPE OF CASE:**                 Physical Lift on Uninspected Vessel
**PLAINTIFF/DENFESE:**            Plaintiff
**STATE:**                        Illinois

~~~

**DATE:**                         November 12, 2001
**LAWSUIT:**                      Jack E. Herrick, Jr. vs. Upper Lakes Barge Lines
                                  Circuit Court for the County of Chippewa
**CAUSE NO:**                     No. 98-3415-NO
**ATTORNEY/S:**                   Belgrade & O'Donnell
**TYPE OF CASE:**                 ITB Line Handling
**PLAINTIFF/DEFNSE:**             Defense
**STATE:**                        Illinois

~~~

**DATE:**                         November 13, 2001
**LAWSUIT:**                      George Wilson vs. Western Geophysical and Baker Hughes
                                  In the U.S.D.C. for the Northern District of Mississippi
                                  Eastern Div.
**CAUSE NO:**                     1:99CV334-D-A
**ATTORNEY/S:**                   George and George, LTD
**TYPE OF CASE:**                 Ejected from Bunk while onAnchor
**PLAINTIFF/DENFENSE:**           Plaintiff
**STATE:**                        Mississippi

**Total Depositions 2001 - 7**

**DATE:**                         February 20, 2002
**LAWSUIT:**                      Afernee Robert Thomas vs. American River Transportation
                                  U.S.D.C. Western District of Tennessee, Western Division
**CAUSE NO:**                     00-2736-D A
**ATTORNEY/S:**                   Jack McNeil
**TYPE OF CASE:**                 Wrongful Death, Collision of Towing Vessel & Pleasure
                                  Craft
**PLAINTIFF/DENFENSE:**           Plaintiff
**STATE:**                        Tennessee

| | |
|---|---|
| **DATE:** | February 26, 2002 |
| **LAWSUIT:** | John Grey Transport vs. Kindra Lake Towing |
| | U.S.D.C. for the Northern District of Indiana Hammond |
| | Division |
| **CAUSE NO:** | 2:99 CV 58-JM-1 |
| **ATTORNEY/S:** | Belgrade & O'Donnell |
| **TYPE OF CASE:** | Casino Vessel Lifesaving Equipment "IBA" Inflatable |
| | Bouyant Apparatus |
| **PLAINTIFF/DEFENSE:** | Defense |
| **STATE:** | Illinois |

| | |
|---|---|
| **DATE:** | May 29, 2002 |
| **LAWSUIT:** | Thomas Bridewell vs. Crouse Corporation |
| | U.S.D.C. Western District of Kentucky at Paducah |
| **CAUSE NO:** | 5:01CV92 |
| **ATTORNEY/S:** | Schlichter Bogard & Denton |
| **TYPE OF CASE:** | Loss of Hand Facing Towing Vessel to Bay on Ohio River |
| **PLAINTIFF/DENFENSE:** | Plaintiff |
| **STATE:** | Kentucy |

| | |
|---|---|
| **DATE:** | May 31, 2002 |
| **LAWSUIT:** | Michael Scot Zoelkler vs. Delmar Offshore, Inc. et al |
| | U.S.D.C. Western of Louisiana Opelousas/Lafayette Div. |
| **CAUSE NO:** | 01-638 |
| **ATTORNEY/S:** | Domengeaux, Wright, Roy & Edwards |
| **TYPE OF CASE:** | OCS Equipment Lift by Crane to Anchor Handling Vessel |
| **PLAINTIFF/DEFENSE:** | Plaintiff |
| **STATE:** | Louisiana |

| | |
|---|---|
| **DATE:** | June 12, 2002 |
| **LAWSUIT:** | Duncan vs. American Commercial Barge Lines (ACBL) |
| | Missouri Circuit Court (St. Louis City) |
| **CAUSE NO:** | 002-7413 |
| **ATTORNEY/S:** | Schlichter, Bogard & Denton |
| **TYPE OF CASE:** | Death of Chief Engineer Onboard Uninspected Towing |
| | Vessel (Heart Attack) |
| **PLAINTIFF/DEFENSE:** | Plaintiff |
| **STATE:** | Missouri |