

*Captain R. W. Yates*
**Admirality Consultant & Expert Witness**

P.O. Box 40 • Moscow Texas 75960 • 936/398-2180 • Cel: 936/871-9480 • Fax 936/398-7790

November 15, 2004

Mr. Christopher Lowrance
Royston, Rayzor, Vickery & Williams, L.L.P.
1700 Wilson Plaza West
606 N. Carancahua
Corpus Christi, Texas 78476

Dear Mr. Lowrance,

    RE:   C-A- No. B-01-157;
            In RE: The Complaint and Petition of Brown Water Towing I, Inc.,
            et al. In A Cause of Exoneration From or Limitation of Liability;

At your request, I have reviewed the following information contained in the above referenced marine Allision case.

1. CD of Depositions and Coast Guard Testimony;

2. CD of Causeway Photos dated (8/24/04)

3. CD of Schultz Report dated (11/2/04)

4. Deposition of Gary Langley

5. Deposition of Levie Old

6. Deposition of Ross Valigura

7. Deposition of Stephen Mosher

8. All documents produced by Brown Water

9. Deposition Exhibits (1-56)

10. Videos of Vessel Inspection dated (May 9, 2002)

11. Expert Report of Richard F. Silloway

12. Expert Report of Capt. William Beacom

13. Expert Report of Capt. G.E. Disler

Case 1:01-cv-00157  Document 289-12  Filed in TXSD on 11/15/2004  Page 2 of 5



*Captain R. W. Yates*
**Admirality Consultant & Expert Witness**

P.O. Box 10 • Moscow Texas 75960 • 936/398-2180 • Cell: 936/671-9480 • Fax: 936/398-7790

Page 2

The following report is based on my review of the materials listed above and my thirty-plus years experience as a pilot and captain of inland and river towboats.

It is my understanding of the facts that the M/V BROWN WATER V was eastbound in the ICWW Pushing four loaded barges strung-out. The M/V BROWN WATER V is a metal hull, twin screw, three deck towboat; it has two G.M. 12V71 engines. The Loaded barges that were in tow where regulation 195 foot in length by 35 foot wide, making the tow 780 foot in length and a total of 35 foot wide.

While making the eastbound transit on the ICWW, on the morning of September 15, 2001, at approximately 0210 The M/V BROWN WATER V collided with the Queen Isabella Causeway Bridge. The tow struck the bridge column pier west of the navigable channel.
The impact collapsed a section of the span, which fell into the water and onto the barges below.

At the time of the accident, Captain David Dwayne Fowler was on watch in the wheelhouse of the M/V BROWN WATER V. Captain Fowler had 20 years in the marine industry and about 12 years experience as a licensed wheelman. He was assigned to the M/V BROWN WATER V as Relief captain. At the time of the accident, Captain Fowler held a license as an "Operator of Uninspected Towing Vessels" with a Radar Observer endorsement. The latest issued license was issued by the U.S. Coast Guard, which was a renewal of a previously issued license.

Captain Fowler described making his eastbound transit of the Long Island Bridge and lining up on his first green buoy going into the left hand bend that is to the south of the Causeway bridge. He stated that the tide was running hard and fast, he also stated that the navigational lights on the Causeway bridge were out. While making his turn he felt that his boat hit bottom, causing his tow to veer to the port, when he saw that he was not going to get the head to steer back around he started backing full astern on both main engines to try to stop the tow. The tow kept falling to the port and going forward. The Next he knew is when the head of the tow hit the pillar of the bridge. Captain Fowler states that "everything was working fine," onboard the vessel and he had 8 to 10 hours sleep in the 24-hour period. Captain Fowler also states that he was blowing his horn and was flashing his lights trying to get the traffic to stop.

*Captain R. W. Yates*
**Admirality Consultant & Expert Witness**


P.O. Box 40 • Moscow, Texas 75960 • 936/398-2120 • Cell: 936/671-9480 • Fax: 936/398-7790



Page 3

The accident occurred during nighttime conditions with clear skies, good visibility. The wind would have had little or no affect on the tow with it being loaded barges. There was a tropical depression to the east in the Gulf of Mexico which was having a strong affect on the tidal flow and currents in this section of the channel approaching the causeway from the south. The Captain and the Relief Captain both state that there had been no problems with the boat or the handling of the tow prior to the accident after leaving Brownsville. The U. S. Coast Guard inspected it's over all condition while the boat was still at the accident site and found it to be in good working order.

It is my opinion after having read and reviewed all the information furnished to me in this case, that Captain Fowler was complying with Coast Guard rules and regulations and federal, state and local laws, as well as the customary practice and procedures of the industry. Captain Fowler's navigation of the tow was affected by unusually strong tides and currents. I find the shoaling in the bend approaching the Causeway Bridge to be one of the main contributing factors of this accident; it is also my opinion that the navigation lights being out on the Causeway Bridge was a contributing factor as well. The buoys and navigational aids in this area being so far outside of the channel make it very hard to know just where the edge of the channel is.

The four loaded barges being strung-out to transit eastbound in the ICWW is not only a customary practice and procedure of the industry but is a necessary practice so as to be able to meet on coming traffic through this stretch of the channel between Corpus and Brownsville. The channel has sloping sides and you may meet doubled up empty tow because they can get over to the side of the channel where as loaded tows can not get over as far, making it necessary to string-out loaded tows. The building and configuration of tows is the responsibility of the captains and wheelman onboard each vessel as it should be. It is and has been a customary practice and procedure of the industry.

It is also a standard and customary practice in the industry to rate a boat that has 12V71 engines as an 800 hp. boat. It is also an industry practice to have an 800 hp. boat push 4 loaded barges. I have seen boat of less hp. push the same sizes tows and have done so myself many time.

I do not feel that operator fatigue was a contributing factor in this case, nor does the 12-hour rule apply. Captain Fowler had 8 to 10 hours of sleep in the 24-hour period. Brown Water Marine was operating in a manner that complies with their company policy, Coast Guard rules and regulations and federal, state, and local laws, as well as the customary practice and procedures of the industry.



**Captain R. W. Yates**
Admirality Consultant & Expert Witness

P.O. Box 40 • Moscow, Texas 75960 • 936/398-2180 • Cell: 936/671-9480 • Fax 936/398-7790

Page 4

    It could be considered that Captain Fowler committed an error in navigation by allowing his vessel and/or tow to get to close to the edge of the channel, but with the channel markings being so far out-side the channel and the tides and currents being as strong as they were at the time of the accident it is understandable how his tow got close to the edge of the channel.

    I reserve the right to amend and/or modify my opinion should additional data be forwarded to me. Please let me know if I may be of further service in the matter.

Kindest regards,

*R W Yates*

Captain R. W. Yates



**Captain R. W. Yates**
**Admirality Consultant & Expert Witness**

P.O. Box 40 • Moscow, Texas 75960 • 936/398-2180 • Cell: 936/671-9480 • Fax: 936/398-7790

November 15, 2004

Mr. Christopher Lowrance

Royston, Rayzor, Vickery & Williams, L.L.P.

1700 Wilson Plaza West

606 North Carancahua

Corpus Christi, Texas 78476

Dear Mr. Christopher Lowrance:

    Re:   C.A. No. B-01-157

In Re the Complaint and Petition of Brown Water Towing I, Inc., As Bareboat Chartered of the BROWN WATER V, Its Engines, Tackle, Etc. In a Cause of Exoneration from or Limitation of Liability;

Your File 49,477

Please allow this letter to serve as a bill for professional service rendered in the above captioned case, up to this current date.

Review time (of all materials received to this date)..............................30 hours

Report time ........................................................................................ 6 hours

Total time at normal hourly rate.......................................................... 40 hours

Amount previously billed April 5, 2004. No payment received............... $   825.00

Total amount ................................................................................... $ 6,825.00

Less retainer ................................................................................... $ 1,000.00

Total amount due ..............................................................................$ 5,825.00

Kindest Regards,

*R.W. Yates*

Captain R.W. Yates