**Page 1**
**Opinion of Daniel E. Brock**

**In the Matter of American Commercial Lines as Owner and American Commercial Barge Line, LLC as Charterer of the Barges NM-315, VLB-9182, ACL-9993B, VLB-9173, Praying for Exoneration for and/or Limitation of Liability. Civil Action No. B-02-004; USDC, Southern District of Texas, Brownsville Division**

---

## DOCUMENTS REVIEWED:

➢  United States Coast Guard Hearing Transcript dated October 9, October 10, October 11, October 12, and November 5, 2001

➢  United States Coast Guard Hearing Exhibits #1 through 55

➢  Deposition of Mr. Denny Hoessle, dated July 15, 2002, with Exhibits #1-11

➢  Deposition of Mr. Sonny Ivey, dated July 16, 2002, with Exhibits #12-17

➢  Deposition of Mr. Christian Brinkop, dated August 14, 2002, with Exhibits #18 & 19

➢  Deposition of Mr. James Franklin Farley, dated August 29, 2002, with Exhibits #20-23

➢  Deposition of Mr. Philip S. Timberlake, dated August 30, 2002, with Exhibits #27-54

➢  Deposition of Mr. William N. "Norb" Whitlock, dated August 30, 2002, with Exhibits #55 & 56

➢  Deposition of Mr. Michael A. Khouri, dated January 14, 2003, no Exhibits

➢  Deposition of Mr. Peter Kazunas, dated January 14, 2003, with Exhibits #57 & 58

➢  Deposition of Mr. Paul Book, dated January 15, 2003, with Exhibits #59-64

➢  Deposition of Mr. Stephen H. Mosher, dated May 26, 2004, with Exhibits #100-118

➢  Deposition of Mr. Gary P. Langley, dated July 16, 2004, with Exhibits #119 & 120

➢  United States Coast Guard Notice to Mariners dated September 4, September 11, September 18 and September 25, 2001

➢  Petition of Brown Water Towing, Inc. in a Cause of Exoneration from or Limitation of Liability.

➢  Petition of American Commercial Barge Line, LLC. in a Cause of Exoneration from or Limitation of Liability.

➢  Eighth Coast Guard District Towing Vessel Boarding Form – (19 Pages)

**Page 2**
**Opinion of Daniel E. Brock**

**In the Matter of American Commercial Lines as Owner and American Commercial Barge Line, LLC as Charterer of the Barges NM-315, VLB-9182, ACL-9993B, VLB-9173, Praying for Exoneration for and/or Limitation of Liability.  Civil Action No. B-02-004; USDC, Southern District of Texas, Brownsville Division**

## DOCUMENTS REVIEWED:

➤ Code of Federal Regulation  33 CFR 164.72

➤ United States Coast Guard Local Notice to Mariners – Change in Distribution Method Dated April 1, 2004

➤ NOAA Navigation Charts  11302 – 11303 – 11306 – 11308 – 11309

➤ American Waterway Operators Internet Site for Statistics

➤ Expert witness report of Dr. Jerome H. Modell, M.D., dated September 14, 2004

➤ Expert witness report of Captain William Beacom, dated September 29, 2004

➤ Expert witness report of Captain Jay Disler, dated September 29, 2004

➤ Expert witness report of Mr. John Deck, dated September 29, 2004

➤ Expert witness report of Engineering Partners International, Mr. Richard F. Silloway, P.E. , dated September 29, 2004

**Page 3**
**Opinion of Daniel E. Brock**

**In the Matter of American Commercial Lines as Owner and American Commercial Barge Line, LLC as Charterer of the Barges NM-315, VLB-9182, ACL-9993B, VLB-9173, Praying for Exoneration for and/or Limitation of Liability.  Civil Action No. B-02-004; USDC, Southern District of Texas, Brownsville Division**

---

## ORIENTATION AND OBSERVATION:

For the purpose of reader orientation, the following observations are provided for content familiarity.

Brown Water Marine Service, Inc., ( Brown Water )was on September 15, 2001, a Contract Towing Company, providing towing services for floating marine equipment on and along the Gulf Intracoastal Waterway.  Brown Water operated primarily from the Houston, TX area, West, to the end of navigation at Brownsville, TX.

Prior to September 15, 2001, American Commercial Barge Line, LLC., a Barge Owner/Operator and also referred to as a Primary Carrier, contracted with Brown Water Marine Service, Inc. to provide towing services for three (3) loaded barges on the Intracoastal Waterway, East from Brownsville, TX, approximately mile 683.0 WHL, to Bolivar Road Fleet, approximately mile 351.0 WHL.  Brown Water Marine Service, Inc. assigned the M/V Brown Water V to this contract.

The M/V Brown Water V, on the West bound portion of the trip to Brownsville, TX to pick-up the three (3) loaded barges, was towing barges destined for the Port of Brownsville and one (1) barge in tow, VLB-9173, destined for the Port of Harligen, TX, located on the Arroyo Colorado Waterway, approximately 25 miles north of the Arroyo Colorado Waterway Intersection with the Gulf Intracoastal Waterway at approximately mile 644.5 WHL.

Page 4
Opinion of Daniel E. Brock

In the Matter of American Commercial Lines as Owner and American Commercial Barge
Line, LLC as Charterer of the Barges NM-315, VLB-9182, ACL-9993B, VLB-9173,
Praying for Exoneration for and/or Limitation of Liability.  Civil Action No. B-02-004;
USDC, Southern District of Texas, Brownsville Division

---

## ORIENTATION AND OBSERVATION CONTINUED:

On the West bound portion of the trip, the M/V Brown Water V was experiencing a mechanical problem and the Vessel Master deemed it unsafe to stop and deliver the barge destined for the Port of Harligen.  Following coordination between the Vessel Master and Brown Water office personnel, the decision was made by Brown Water to continue on to Brownsville, have the vessel repaired and then deliver barge VLB-9173 back to the Port of Harligen.

Following completion of repairs to the vessel at Brownsville on September 14, 2001, the Vessel Master configured the East bound tow consisting of the originally contracted three (3) loads destined for Bolivar Roads Fleet, mile 351.0 WHL and added the additional barge, VLB-9173 to the tow to be delivered back to the Port of Harlingen.  The tow configuration upon departure from the Port of Brownsville consisted of four (4) loads placed end to end, approximately eight hundred (800) feet long and thirty-five (35) feet wide, excluding the towing vessel.

The M/V Brown Water V and tow departed the Port of Brownsville, outbound on the Brownsville Ship Channel and at an area known as the "Y", turned East bound into the Gulf Intracoastal Waterway in the Port Isabel, TX area during the early morning hours of September 15, 2001.  The M/V Brown Water V successfully navigated through the Port Isabel Pontoon Bridge, also known as the Long Island Swing Bridge and was preparing to align the tow with the channel opening of the Queen Isabella Causeway Bridge.  It was reported that the Navigation Lights on the Channel opening of the bridge were extinguished.  The tow veered to Port, continued to travel beyond the marked channel limits to the Northwest, where the first or lead barge in the tow of four (4) barges struck a bridge roadway support structure on the Queen Isabella Causeway Bridge resulting in the collapse of a portion of the vehicle roadway.

**Page 5**
**Opinion of Daniel E. Brock**

**In the Matter of American Commercial Lines as Owner and American Commercial Barge Line, LLC as Charterer of the Barges NM-315, VLB-9182, ACL-9993B, VLB-9173, Praying for Exoneration for and/or Limitation of Liability.  Civil Action No. B-02-004; USDC, Southern District of Texas, Brownsville Division**

---

## ORIENTATION AND OBSERVATION CONTINUED:

The M/V Brown Water V and tow remained on scene as directed by various State and Federal Agencies while an investigation was conducted.  Following the investigation, the M/V Brown Water V and tow was allowed to depart the Port Isabel area.

**Page 6**
**Opinion of Daniel E. Brock**

**In the Matter of American Commercial Lines as Owner and American Commercial Barge Line, LLC as Charterer of the Barges NM-315, VLB-9182, ACL-9993B, VLB-9173, Praying for Exoneration for and/or Limitation of Liability.  Civil Action No. B-02-004; USDC, Southern District of Texas, Brownsville Division**

---

## OPINION

1.  Barges NM-315, VLB-9182, ACL-9993B and VLB-9173 are unmanned dry cargo hopper barges, constructed of steel, duly documented by the United States Coast Guard and were seaworthy in all respects for their intended service on September 15, 2001.

2.  Barges NM-315, VLB-9182, ACL-9993B and VLB-9173 were and are by construction and industry definition, unmanned dry cargo barges. The term unmanned dry cargo barge means the barge is constructed for the transportation of dry cargo commodities, does not contain as part of the barge design or construction, accommodations for personnel nor does it require for purposes of navigation or any other reason, personnel to be permanently stationed onboard.  Further, an unmanned barge does not have as a part of the design or construction, a means of self propulsion or steerage for navigation purposes. An unmanned barge must rely on an external source of propulsion and steerage for movement, such as a tugboat or towboat.

    On September 15, 2001, the afore noted unmanned barges were being towed by the M/V Brown Water V, a diesel powered towboat, when the allision with the Queen Isabella Causeway Bridge occurred.  The four (4) noted unmanned barges were under the care, custody and control of the M/V Brown Water V.  The vessel was operated by Brown Water Marine Service, Inc. and manned by Brown Water personnel.  The Pilot on duty on the M/V Brown Water V at the time of the allision was appropriately licensed by the United States Coast Guard and was acting under the authority of his license.

Page 7
Opinion of Daniel E. Brock

**In the Matter of American Commercial Lines as Owner and American Commercial Barge Line, LLC as Charterer of the Barges NM-315, VLB-9182, ACL-9993B, VLB-9173, Praying for Exoneration for and/or Limitation of Liability.  Civil Action No. B-02-004; USDC, Southern District of Texas, Brownsville Division**

---

## OPINION

3.      On September 15, 2001, barges NM-315, VLB-9182, ACL-9993B and VLB-9173 owned/chartered by American Commercial Barge Line, LLC, were in the care, custody and control of Brown Water Marine Service, Inc., and the towing vessel, M/V Brown Water V. The terms "care", "custody" and "control" are defined by Dictionary definition and by industry custom and practice when applied to a towing agreement is as follows:

      A.)    Care:        To watch over or attend to; a responsibility

      B.)    Custody:    A guarding of or keeping safe; care; protection; guardianship

      C.)    Control:    To exercise authority over; to direct; to command

Industry custom and practice of acceptable definitions for unmanned barges when applied to a Third Party Tower and Towing Agreement is in summary; the Owner/Operator or Primary Carrier provides to the Tower, a barge in a seaworthy condition.  Information is provided by the Primary Carrier or Owner/Operator to the Tower to move barge "X" from point "A" to point "B".  It is expected by the Primary Carrier or Owner/Operator that the barge will be moved by the Tower with a seaworthy towing vessel from, point "A" to point "B" in a reasonable time frame with the utmost care and safety of navigation.  Further, it is expected the barge will, at all times, remain in the custody of the Tower and the Tower will make all necessary decisions regarding which vessel will tow the barge from point "A" to point "B", how the vessel will be crewed and by whom.

**Page 8**
**Opinion of Daniel E. Brock**

**In the Matter of American Commercial Lines as Owner and American Commercial Barge Line, LLC as Charterer of the Barges NM-315, VLB-9182, ACL-9993B, VLB-9173, Praying for Exoneration for and/or Limitation of Liability.  Civil Action No. B-02-004; USDC, Southern District of Texas, Brownsville Division**

---

## OPINION

3.      Continued.....

Brown Water Marine, on September 15, 2001, did not fulfill their contractual responsibility when the M/V Brown Water V, towing barges NM-315, VLB-9182, ACL-9993B and VLB-9173 allided with the Queen Isabella Causeway Bridge causing damage to barge NM-315.

Neither American Commercial Barge Line, LLC. as a corporation, nor American Commercial Barge Line personnel and/or any of the afore noted barges caused or was a contributing factor to the allision with the Queen Isabella Causeway Bridge by the M/V Brown Water V on September 15, 2001.

4.      The Inland Marine Industry is comprised of approximately 235 Barge and Towing Companies, approximately 3,000 documented Towing Vessels and approximately 26,000 Barges of various types moving the nations commodities.

The Primary Carriers, also known as Owner/Operators, provide equipment of various types and capacities to Shippers on the Inland Waterways.  Although these Primary Carriers provide barge bottoms to Shippers who wish to move cargo, the Primary Carrier may not always be able to provide an in-house traffic pattern of their own towing vessels to move said barge throughout the entire route from origin to destination.  In the case of several barge companies, they do not operate towing vessels at all.  This is where the independent towing company's known as Third Party Towers provide a service.

**Page 9**
**Opinion of Daniel E. Brock**

**In the Matter of American Commercial Lines as Owner and American Commercial Barge Line, LLC as Charterer of the Barges NM-315, VLB-9182, ACL-9993B, VLB-9173, Praying for Exoneration for and/or Limitation of Liability.  Civil Action No. B-02-004; USDC, Southern District of Texas, Brownsville Division**

---

## OPINION

**4.**    Continued....

Third Party Towers generally concentrate their services within a specific area and possess within their organization, a high degree of expertise over a particular waterway segment. Because these Towers concentrate their services within this specific geographic area, they are able to offer the Primary Carrier, frequency of service between two points that the Primary Carrier either does not or can not provide to the Shipper.

The Third Party Tower provides their services to an extensive list of customers.  These customers may request towage of a single barge or a group of barges and it is not uncommon for the Tower to move barges for more than one customer in a single tow.  As an example, a Third Party Tower, may at its sole discretion, place in tow, barges owned and/or operated by four (4), five (5) or six (6) different Primary Carriers destined for several different ports.  The Tower may drop and pick-up barges for various customers at numerous ports along their route.

Third Party Tower's such as Brown Water Marine Service, Inc. are Independent Contractors and are completely responsible for their vessels operation and the crew assigned.  The employees on the vessels are hired, assigned and directed by the Towers office.  All communications and direction to the vessel crew regarding operation of the vessel, towage of barges, origin and destination of barges, crewing, supplying, and repairing of equipment is the sole responsibility of the Towers Management group.

**Page 10**
**Opinion of Daniel E. Brock**

**In the Matter of American Commercial Lines as Owner and American Commercial Barge Line, LLC as Charterer of the Barges NM-315, VLB-9182, ACL-9993B, VLB-9173, Praying for Exoneration for and/or Limitation of Liability.  Civil Action No. B-02-004; USDC, Southern District of Texas, Brownsville Division**

## OPINION

4.    Continued.....

Primary Carrier's are familiar with Third Party Towers that provide service on a particular waterway segment and most maintain a list of those Towers based on previous relationships over a period of time.    Such a relationship existed between American Commercial Barge Line, LLC. and Brown Water Marine Service, Inc..

The customary process for contracting the services of a Third Party Tower is as follows: The Primary Carrier Dispatcher will contact the Third Party Towing Company Dispatcher and inquire if the Third Party Tower can move its barges from point "A" to point "B" and when.  If the Tower agrees to move the barges and if the departure timing is acceptable, upon successful completion of a negotiated towing rate, the barge would be "booked" with the Third Party Tower.    The term "booked" means a verbal contract between the Primary Carrier and the Third Party Tower to move "Barge X" from point "A" to point "B" at an agreed price.

Once a barge is "booked", it is the Third Party Towers responsibility to assign the towing vessel, crew the vessel and provide direction and support to the vessel throughout the move of the barge from point "A" to point "B".  The Third Party Tower is responsible for all aspects of the towage and is responsible for keeping the Primary Carrier informed of the barges position each morning and an estimated time of arrival at destination.

**Page 11**
**Opinion of Daniel E. Brock**

**In the Matter of American Commercial Lines as Owner and American Commercial Barge Line, LLC as Charterer of the Barges NM-315, VLB-9182, ACL-9993B, VLB-9173, Praying for Exoneration for and/or Limitation of Liability.  Civil Action No. B-02-004; USDC, Southern District of Texas, Brownsville Division**

---

## OPINION

4.    Continued…..

The terms Care, Custody and Control as defined earlier are primary at all times during the barge(s) movement.  Should any problems be encountered by the towing vessel and/or with the barge, communication regarding the problem is between the Third Party Towers vessel and the Third Party Towers management.  If the problem encountered may delay the barges arrival at destination, it is the Towers office responsibility to notify the Primary Carrier.

Communication between the Third Party Towers vessel crew and the Primary Carrier Dispatcher is rarely conducted.  The vessel crew only has a barge number to reference and as a general rule, has no knowledge of who owns the barge, who is operating the barge or who the cargo owner may be.  Unless the towing vessel has been chartered and specific information given to the crew, they would not have any information on who to call.  Second, the Primary Carrier Dispatcher has no authority over the Third Party Towers vessel or crew.  Thus, the only communication the Primary Carrier Dispatcher conducts is with the Third Party Towers management and the only communication the Towers vessel crew conducts is with the Towers office personnel.

**Page 12**
**Opinion of Daniel E. Brock**

**In the Matter of American Commercial Lines as Owner and American Commercial Barge Line, LLC as Charterer of the Barges NM-315, VLB-9182, ACL-9993B, VLB-9173, Praying for Exoneration for and/or Limitation of Liability. Civil Action No. B-02-004; USDC, Southern District of Texas, Brownsville Division**

---

## OPINION

**4.**     Continued…..

The M/V Brown Water V on September 14, 2001 while West bound on the Intracoastal Waterway was scheduled to drop barge VLB-9173 at the Port of Harligen, TX, mile 644.5 WHL per American Commercial Barge Line dispatch direction to Brown Water Marine Service, Inc. management. Due to a stated mechanical problem on the M/V Brown Water V, Brown Water, without consultation with or notification to American Commercial Barge Line dispatch, elected to bypass the scheduled drop of barge VLB-9173 at the Port of Harligen, continue on to the Port of Brownsville, make repairs to the M/V Brown Water V and then return barge VLB-9173 back to the Port of Harligen.

According to testimony, Barge VLB-9173 was to be returned to Harligen by the M/V Brown Water V as a single barge in tow. The Vessel Master is the ultimate decision maker on tow size and configuration. The M/V Brown Water V Vessel Master elected to add loaded barge VLB-9173 to the three (3) previously contracted loaded barges to be towed East. American Commercial Barge Line management was not a party to nor aware of these decisions until after the allision occurred.

Page 13
Opinion of Daniel E. Brock

In the Matter of American Commercial Lines as Owner and American Commercial Barge
Line, LLC as Charterer of the Barges NM-315, VLB-9182, ACL-9993B, VLB-9173,
Praying for Exoneration for and/or Limitation of Liability.  Civil Action No. B-02-004;
USDC, Southern District of Texas, Brownsville Division

---

## OPINION

5.      At the request of American Commercial Barge Line, LLC, Marine Resources, an
Independent Consulting Company, was retained to conduct a Vendor Audit of Brown
Water Marine Service, Inc.  Mr. Timberlake, a Responsible Carrier Program Certified
auditor, utilized the American Waterways Operators Responsible Carrier Program (RCP)
Audit format as a basis for the audit.  Mr. Timberlake had conducted several audits of
other Third Party Towers utilizing this format and he (Mr. Timberlake) was very familiar
with the process and the information required on the form.

Mr. Timberlake knew in advance of the audit that Brown Water Marine Service, Inc. was
not a member of the American Waterway Operators (AWO) nor Responsible Carrier
Program (RCP) Certified.  The purpose of the audit was to identify within the Brown
Water organization, which processes were in place and working, which areas required the
implementation of a process, and to identify areas for improvement that would assist
Brown Water in improving their overall service to American Commercial Barge Line.
Mr. Timberlake was asked by American Commercial Barge Line to determine if Brown
Water should continue as an approved vendor, based on his overall findings.

Mr. Timberlake reviewed Brown Water Marine Service, Inc. management processes that
were in place, noted areas that could be improved and identified various deficiencies on
the two (2) Brown Water Marine Service, Inc. vessels that were audited.  The
deficiencies noted on the vessels were of a process oriented nature or replacement of
required equipment.  None of the deficiencies identified on the vessels were of a nature
that would affect the operational capability of the vessels.

**Page 14**
**Opinion of Daniel E. Brock**

**In the Matter of American Commercial Lines as Owner and American Commercial Barge Line, LLC as Charterer of the Barges NM-315, VLB-9182, ACL-9993B, VLB-9173, Praying for Exoneration for and/or Limitation of Liability. Civil Action No. B-02-004; USDC, Southern District of Texas, Brownsville Division**

---

## OPINION

5.    Continued.....

Following my review of Mr. Timberlake's audits of Brown Water Marine Service, Inc. vessels, the notes attached to his deposition and my additional review of management processes that were in place and submitted as exhibits to Mr. Moshers deposition, I am in agreement with Mr. Timberlake's findings and his report to American Commercial Barge Line Management that while there were areas for improvement noted within the Brown Water organization, there were not serious issues identified and/or noted that would disqualify Brown Water Marine Service, Inc. as a viable vendor.

According to testimony, Brown Water Marine Service, Inc. had previously been audited by various other companies including those companies participating in the Chemical Manufacturers Association Vendor Audit Program. Although copies of these audits have not been reviewed, it is my understanding that Brown Water Marine Service, Inc. was accredited as a certified vendor by each of the auditing companies.

**Page 15**
**Opinion of Daniel E. Brock**

**In the Matter of American Commercial Lines as Owner and American Commercial Barge Line, LLC as Charterer of the Barges NM-315, VLB-9182, ACL-9993B, VLB-9173, Praying for Exoneration for and/or Limitation of Liability.  Civil Action No. B-02-004; USDC, Southern District of Texas, Brownsville Division**

---

## OPINION

6.    The United States Coast Guard in the 1988-89 time frame implemented the Cooperative Towing Vessel Examination Program.   This program involved a rigorous inspection criteria and was voluntary on the part of those Companies that chose to participate. Brown Water Marine and American Commercial Barge Line were participants in this program.  Participation in the program indicates a company is a responsible operator.

The program was designed to assist participating companies in identifying areas for improvement and regulatory compliance on their towing vessels.   Phase One (1) participants invited the Coast Guard to board and thoroughly inspect every aspect of each of their company vessels utilizing the in-depth Eighth Coast Guard District Boarding and Inspection format.  Following successful completion of the inspection, the vessel was awarded a placard to be displayed in the Pilothouse window.  The M/V Brown Water V displayed in the Pilothouse window, a Phase One (1) placard indicating participation in and compliance with the program and inspection protocol.

Page 16
Opinion of Daniel E. Brock

**In the Matter of American Commercial Lines as Owner and American Commercial Barge Line, LLC as Charterer of the Barges NM-315, VLB-9182, ACL-9993B, VLB-9173, Praying for Exoneration for and/or Limitation of Liability. Civil Action No. B-02-004; USDC, Southern District of Texas, Brownsville Division**

---

## OPINION

6.      Continued.....

On September 15, 2001, a few hours after the allision occurred, the United States Coast Guard conducted an in-depth post causality inspection of the M/V Brown Water V. The inspection was conducted by a trained and knowledgeable Coast Guard Officer and assisted by the vessel crew. The results of the inspection identified seven (7) minor discrepancies. During the Accident Investigation Hearings conducted in October and November of 2001 by the Coast Guard, the Coast Guard Officer in Charge of the inspection testified none of the deficiencies identified during the inspection as discrepancies were related to the causality either as causal or as a contributing factor.

Following a review of the inspection report completed by the Coast Guard Inspecting Officer and a review of his testimony during the Coast Guard Hearing, I am in agreement with his findings that each of the noted discrepancies were minor in nature, receiving a Notice "835" warning, with a noted time frame to repair. None of the discrepancies were of a serious nature that would warrant removing the M/V Brown Water V from service.

Page 17
Opinion of Daniel E. Brock

**In the Matter of American Commercial Lines as Owner and American Commercial Barge Line, LLC as Charterer of the Barges NM-315, VLB-9182, ACL-9993B, VLB-9173, Praying for Exoneration for and/or Limitation of Liability. Civil Action No. B-02-004; USDC, Southern District of Texas, Brownsville Division**

---

## OPINION

7.      The United States Coast Guard published document "Local Notice to Mariners", as required by 33 CFR 164.72, is an informational document identifying specific issues that aids the mariner and is required to be carried onboard a vessel.

The Coast Guard "Local Notice to Mariners" Radio Broadcasts via VHF Radio supplement the hard copy document which has been ever increasingly difficult to obtain due to a diminished distribution network. Available in 2001 and continuing today, the "Local Notice to Mariners" broadcast is provided during the 0600 to 1200 watch and 1800 to 2400 watch, and an additional broadcast is provided during the 0001 to 0600 watch and the 1200 to 1800 watch. The Vessel Master and Pilot each have the opportunity twice per 24 hour period, to receive current, up to date local information that is the Coast Guards responsibility to provide. Towboat Operators rely on these broadcasts to stay current with changes within their area of operation.

The failure of a vessel to not have onboard a current "Notice to Mariners", which was identified as a deficiency by the Coast Guard Inspecting Officer during the post casualty inspection, while still a violation of the CFR, is not considered a serious violation nor does it indicate the vessel operator is irresponsible. It is in fact, a minor violation and a minor discrepancy if noted at all by the Coast Guard Boarding Officer or the Primary Carrier Auditor due to the difficulty mariners encounter in obtaining a current copy. In my years of experience, I have never known of the Coast Guard removing a vessel from service because a current copy of the Notice to Mariners was not onboard.

**Page 18**
**Opinion of Daniel E. Brock**

**In the Matter of American Commercial Lines as Owner and American Commercial Barge Line, LLC as Charterer of the Barges NM-315, VLB-9182, ACL-9993B, VLB-9173, Praying for Exoneration for and/or Limitation of Liability. Civil Action No. B-02-004; USDC, Southern District of Texas, Brownsville Division**

---

## OPINION

7.    Continued…..

Brown Water Marine Service, Inc. was responsible for providing "Local Notice to Mariners" to Brown Water vessels and ensuring crew familiarity with content as it relates to the route to be navigated. If the M/V Brown Water V did not have onboard the required documents as prescribed by the rule, Brown Water Marine Service, Inc. is accountable to whatever degree appropriate, not American Commercial Barge Line.

The United States Coast Guard "Local Notice to Mariners" printed document for the time period in question does not contain weather, current velocity or tidal action information because it is a National Oceanographic and Atmospheric Administration Agency function. Unless the Coast Guard is specifically requested to publish that type of information, it will not be found in the "Notice to Mariners." A review of the four (4) issues of the " Notice to Mariners" published during September, 2001, finds there is no weather, current velocity, tidal action or any other type of information included for the Port Isabel, TX area during the time period in question that would have aided the M/V Brown Water V Pilot in navigating through the Port Isabel, TX area or any type of cautionary information that would have prevented this accident.

If unusual tidal height and current velocity information had been available, it was Brown Water's responsibility as Operator of the vessel to make that information known to the M/V Brown Water V crew, not American Commercial Barge Line management.

Page 19
Opinion of Daniel E. Brock

In the Matter of American Commercial Lines as Owner and American Commercial Barge Line, LLC as Charterer of the Barges NM-315, VLB-9182, ACL-9993B, VLB-9173, Praying for Exoneration for and/or Limitation of Liability.  Civil Action No. B-02-004; USDC, Southern District of Texas, Brownsville Division

## OPINION

8.   The American Waterway Operators (AWO) is a National Trade Organization providing a liasion between Industry and the Regulatory Authorities.  Membership in the American Waterway Operators organization was in 2001 and is today, voluntary.

American Waterway Operators, through its published literature, states as of December 31, 2001, it represented approximately 63 percent of the Towboats and Tugboats in the Towing Industry with the major portion of the companies represented clustered in the medium to large fleet category.  A review of the published membership roster for 2004 identifies an approximate even division between Blue Water and Inland companies.

The absence of membership in the American Waterway Operators organization or non-participation in the Responsible Carrier Program did not in 2001 and does not today reflect negatively on a company's operational expertise and commitment to safety. Numerous Barge and Towing Companies did not then and do not now maintain an active membership in the American Waterway Operators organization for a variety of reasons.

Membership in the American Waterways Operators or Certification as a Responsible Carrier does not insulate a company from accidents.  Before the Responsible Carrier Program existed and even after the program was made a mandatory condition of membership, major accidents occurred involving American Waterways Operators member's vessels.

**Page 20**
**Opinion of Daniel E. Brock**

**In the Matter of American Commercial Lines as Owner and American Commercial Barge Line, LLC as Charterer of the Barges NM-315, VLB-9182, ACL-9993B, VLB-9173, Praying for Exoneration for and/or Limitation of Liability. Civil Action No. B-02-004; USDC, Southern District of Texas, Brownsville Division**

---

## OPINION

8.    Continued.....

Brown Water Marine Service, Inc. made application to The American Waterways Operators for membership and was accepted as a Carrier member in February of 2001. Aditionally, Brown Water applied for participation in the Responsible Carrier Program and was audited by Sabine Surveyors, Inc. on July 22, 2002.and received certification as a Responsible Carrier Program participant at that time, well within the allotted time frame for certification.

Page 21
Opinion of Daniel E. Brock

In the Matter of American Commercial Lines as Owner and American Commercial Barge Line, LLC as Charterer of the Barges NM-315, VLB-9182, ACL-9993B, VLB-9173, Praying for Exoneration for and/or Limitation of Liability.  Civil Action No. B-02-004; USDC, Southern District of Texas, Brownsville Division

---

## CONCLUSION

The business relationship between American Commercial Barge Line, LLC., an Owner/Operator and Brown Water Marine Service, Inc., an independent Third Party Tower had existed for approximately ten (10) years prior to the accident.  During this ten (10) year period, Brown Water Marine Service, Inc. had satisfactorily performed their contractual responsibilities of towing American Commercial Barge Line barges to various points along the Gulf Intracoastal Waterway in a manner consistent with industry standards and meeting American Commercial Barge Line expectations.  Brown Water Marine Service, Inc. also performed these same contractual towing services for numerous other liquid and dry cargo barge Owner/Operators along the same routes and had a reputation as a competent Tower throughout the industry.

American Commercial Barge Line, LLC. had monitored Brown Water Marine Service, Inc. throughout their business relationship and had audited Brown Waters operation to determine their industry expertise and the operational condition of their vessels.  American Commercial Barge Line, LLC. encouraged Brown Water to become a member of The American Waterways Operators (AWO) and become Responsible Carrier Program Certified, which occurred.

It is my opinion that American Commercial Barge Line, LLC. contracted for a service with a responsible Third Party Tower that had a proven record for competence and dependable service. American Commercial Barge Line, LLC., exercised sound business rationale in their decision to utilize the services of Brown Water Marine Service, Inc..

**Page 22**
**Opinion of Daniel E. Brock**

**In the Matter of American Commercial Lines as Owner and American Commercial Barge Line, LLC as Charterer of the Barges NM-315, VLB-9182, ACL-9993B, VLB-9173, Praying for Exoneration for and/or Limitation of Liability.  Civil Action No. B-02-004; USDC, Southern District of Texas, Brownsville Division**

---

## OPINION

This document outlines the substance of my opinion in this matter.  Should additional information, facts or documents become available and be provided, I reserve the right to amend or revise this report as necessary.

MB Marine Consultants

*Daniel E. Brock*

Daniel E. Brock

Date: *November 9, 2004*

# CURRICULUM VITAE

# Daniel E. Brock

# MB Marine Consultants

# CURRICULM VITAE

**Daniel E. Brock**

**115 Rue Marne**
**Paducah, KY  42001**
**(270) 554-3142 - Office**
**(270) 534-9791 - Facsimile**
**brockd@hcis.net - e-mail**

## Personal:
Date of Birth:  November 10, 1942

## Education:
| | |
|---|---|
| Bunker Hill High School, Bunker Hill, Indiana | 1956 - 1960 |
| Columbia University, Political Science, ( through U.S. Military ) | 1960 - 1963 |
| American Management Association, Executive Effectiveness Courses | 1988 - 1989 |
| University of South Alabama, Hazardous Materials Specialist | 1993 - 1994 |
| University of South Alabama, Confined Space Entry Instructor | 1995 |

## Summary of Experience:

**MB MARINE CONSULTANTS**
**Paducah, Kentucky**
**Vice-President**
**Established July 1993**

Providing expertise on Personal Injury and Navigational issues to the Commercial Towing and Inland Gaming Industries; Operations and Engineering Management, Safety Programs, Accident Investigation, Navigational Risk Analysis, Employee Training and Organizational development to comply with AWO Responsible Carrier program.

---

**INGRAM BARGE COMPANY**
**ASSISTANT VICE PRESIDENT - SAFETY, TRAINING, ENVIRONMENTAL GROUP**
**Nashville, Tennessee (Paducah, Kentucky Office)**
**December 1, 1992 – Retired May 31, 1999**

Design and implement elective and required Training Programs for 1,500 Ingram Vessel and Shore Based Associates.

Directly responsible for the design and implementation of Safety and Training Programs, Company Policies, Emergency Response Manuals, and First Response Teams.  Format and implement Oil Pollution Act of 1990 regulations.  Senior Management Member on First Response Team and Ingram Qualified Individual.

CURRICULM VITAE - (Continued):

**INGRAM BARGE COMPANY - LIQUID RIVER OPERATIONS GROUP**

**MARINE SUPERINTENDENT**

**Nashville, Tennessee (Paducah, Kentucky Office)**

**July 1, 1991 - November 30, 1992**

Direct the Liquid River Operations Group of Ingram Barge Company, and supervise the operations of thirteen (13) towboats dedicated to liquid transportation. Responsible for 220 Vessel and seven (7) Administrative Personnel.

Format and implement Oil Pollution Act of 1990 regulations. Senior Management member on the First Response Team and Ingram Qualified Individual.

Direct the Engineering Department and coordinate all repair functions. Coordinate all vessel overhauls, and major vessel rehabilitation projects.

Direct all administrative activities: Hiring, Training, Safety Programs, Payroll Preparation, Insurance, Benefits, and Wages.

---

**INGRAM BARGE COMPANY**

**MARINE SUPERINTENDENT - DRY CARGO & LIQUID OPERATIONS**

**Nashville, Tennessee (Paducah, Kentucky Office)**

**November 24, 1986 - July 1, 1991**

Responsible for the overall operation of the Paducah, Kentucky operating office. Supervise operation of forty-five river towboats, 1,600 barges (Liquid and Dry Cargo), twenty Administrative personnel iin two locations, and 900 vessel personnel.

Direct the Engineering Department and coordinate all repair functions on forty-five river towboats. Coordinate all vessel overhauls, repowering projects, and major vessel rehabilitation projects. Direct and coordinate the design and construction of new company equipment.

Direct all administrative activities: Hiring, Training Safety Programs, Payroll Preparation, Insurance, Benefits, and Wages.

CURRICULM VITAE - (Continued):

**CONTI-CARRIERS & TERMINALS, INC.**

**MARINE SUPERINTENDENT**

**East Carondelet, Illinois**

**July 1979 - November 1986**

Responsible for the overall operation of the East Carondelet, Illinois operating office, a subsidiary of Continental Grain Corporation. Responsibilities include the direction of the activities of ten (10) river towboats, 550 barges (Dry Cargo - Hopper Barges), ten (10) administrative personnel in two locations, and 220 vessel personnel.

Direct the Vessel Engineering Department and establish repair and maintenance functions.

Direct the Barge Maintenance Department and establish timely, cost effective barge repair capability at various locations.   Direct and coordinate the design and construction of all new company equipment.

Direct all administrative activities:  Hiring, Safety Programs, Payroll Preparation, Insurance, Benefits, and Wages.

Responsible for the Research and development of new projects for Continental Grain Company.

- 1979-1982    Designed and Supervised Construction of nine Conti-Carrier River Towboats.

- 1980    Input to the Marin Government Test Laboratories in Holland, on the design of Vessel Hulls, Kort Nozzles, and Rudder Configurations for Continental Grain Corp.

- 1983-1986    Provide consultation to the Venezuelan Government on instituting Western River Towing technology on navigable waterways within this country.

---

**WISCONSIN BARGE LINE**

**PORT CAPTAIN**

**St. Louis, Missouri**

**October 1977 - July 1979**

Responsible for the Supervision of 330 employees and fifteen lower river tow boats.

Responsible for the Safety and Training Programs.

CURRICULM VITAE - (Continued):

## Onboard River Work Experience:

1958 - 1959,   worked summers as Deckhand for Bull Towing Company.
1963 - 1964,   Mate and Pilot, Bull Towing Company.
1965 - 1967,   Pilot, National Marine Service.
1967 - 1971,   Pilot and Captain for Ingram Barge Company.
1971 - 1977,   Pilot and Captain for Wisconsin Barge Line.

## USCG Licenses:

- Master of Towing Vessels, Western Rivers, Inland Waters and Great Lakes
- First Class Pilot, Steam & Diesel Vessels, Unlimited Tonnage, Inland Waters
- Tankerman, Dangerous Liquids, Person in Charge, Barge   ( Inactive )
- Radar Observer, Unlimited

## Certifications Held:

- Shipyard Competent Person - Delta Laboratories
- Haz - Mat Specialist Level - University of South Alabama
- Laboratory Specimen Collection Agent - National Reference Laboratories
- Confined Space Entry, Instructor – University of South Alabama
- Tank Barge Closed Loading/ Vapor Recovery – Texas A&M University
- Environmental Health & Safety Law – IAML, Newport Beach, California

## Industry Activities:

- Industry Liaison with the Corps of Engineers and US Coast Guard
- Guest Lecturer, US Coast Guard Crisis Management Course, Yorktown, VA
- Past Member/Committee Person of the American Waterways Operator (AWO)
- Past Chairman of RIAC (River Industry Action Committee)
- Past Chairman of LOMRC (Lower Mississippi River Committee)
- Past Board Member of Marine Navigation Safety Association

## Industry Recognitions:

- United States Coast Guard, Meritorious Public Service Award
- United States Coast Guard, Certificate of Appreciation
- Ohio River Division, Corps of Engineers, Certificate of Recognition for Outstanding Service
- St. Louis District Corp of Engineers, Certificate of Recognition for Outstanding Service
- Propeller Club, Port Person of the Year, 1999
- Greater New Orleans Barge Fleeting Association, Appreciation Award
- Jeff Boat Recognition Award for the Design of River Towboats

# MB MARINE CONSULTANTS

## Client History:

| | | |
|---|---|---|
| **Client:** | Louisiana Casino Cruises, Inc. | DATE:  1993 |
| **Attorney:** | Corporate | |
| **Service Provided:** | Compile Area/Navigational Risk Analysis | |
| | Expert Testimony before Louisiana Gaming Commission | |
| | Expert Testimony before U.S. Coast Guard Board | |

| | | |
|---|---|---|
| **Client:** | Marquette Transportation, Inc. | DATE:  1994 |
| **Court:** | USDC, WDKY, Paducah Div., | |
| | cause number not available | |
| **Attorney:** | Mr. Frank Dantone | Defendant |
| **Service Provided:** | Expert Witness, Personal Injury | |
| | Deposition – Case settled | |

| | | |
|---|---|---|
| **Client:** | Mid-South Towing Company, Inc. | DATE:  1995 |
| **Court:** | USDC, EDLA, cause number not available | |
| **Attorney:** | Mr. George Alvey | Defendant |
| **Service Provided:** | Expert Witness, Navigation Accident | |
| | Expert Opinion submitted – case settled | |

| | | |
|---|---|---|
| **Client:** | Players International, Inc. | DATE:  1996-1997 |
| **Attorney:** | Corporate | |
| **Service Provided:** | Compile Area/Navigational Risk Analysis | |
| | Expert Testimony before Indiana Gaming Commission | |
| | Provide Documentation and Consultation to U.S. Coast Guard | |

| | | |
|---|---|---|
| **Client:** | Mid-South Towing Company, Inc. | DATE:  1998 |
| **Court:** | USDC, WDKY, Paducah Div.,  #5:597CV-8-R | |
| **Attorney:** | Mr. William Bateman | Defendant |
| **Service Provided:** | Expert Witness, Personal Injury | |
| | Expert Option submitted – case settled | |

## Client History:

| | | |
|---|---|---|
| **Client:** | Mid-South Towing Company, Inc. | DATE: 1998-1999 |
| **Court:** | Not available | |
| **Attorney:** | Mr. William Bateman | Defendant |
| **Service Provided:** | Expert Witness, Personal Injury | |
| | Preliminary opinion submitted – case settled | |

| | | |
|---|---|---|
| **Client:** | Mid-South Towing Company, Inc. | DATE: 1998-1999 |
| **Court:** | USDC, EDKY, Ashland Div.  #97-98 | |
| **Attorney:** | Mr. William Bateman | Defendant |
| **Service Provided:** | Expert Witness, Personal Injury | |
| | Expert opinion submitted, Deposition – case settled | |

| | | |
|---|---|---|
| **Client:** | Martin Marietta Aggregates | DATE:   Sept. 1999 |
| **Attorney:** | N/A | |
| **Service Provided:** | Formulate Gulf Intracoastal Waterway Analysis | |
| | New Orleans, Louisiana to Panama City, Florida | |
| | 295 mile In-depth Waterway Study; Four Months | |

| | | |
|---|---|---|
| **Client:** | Mid-South Towing Company, Inc.. | DATE:  July 1999 |
| **Court:** | USDC, WDTN, cause number not available | |
| **Attorney:** | Mr. William Bateman | Defendant |
| **Service Provided:** | Expert Witness, Personal Injury | |
| | Expert opinion submitted, – case settled | |

| | | |
|---|---|---|
| **Client:** | Mid-South Towing Company, Inc. | DATE:  August 1999 |
| **Court:** | USCG, ALJ Hearing, MSO Memphis | |
| **Attorney:** | Mr. William Bateman | Defendant |
| **Service Provided:** | Expert Witness, License Revocation | |
| | Expert opinion submitted | |
| | Trial Testimony before Administrative Law Judge | |

## Client History:

| | | |
|---|---|---|
| **Client:** | M/G Transport, Inc. & M/G-T Services, Inc. | DATE:  December 1999 |
| **Court:** | USDC, SDTX, Houston Div. No. H-98-3375 | |
| **Attorney:** | Mr. Timothy W. Strickland | Plaintiff |
| **Service Provided:** | Expert Witness, Barge Break-away/Sinking | |
| | Expert witness opinion submitted | |
| | Investigation, Deposition | |
| | Case settled | |

| | | |
|---|---|---|
| **Client:** | Kirby Inland Marine Corporation | DATE:   April 2000 |
| **Court:** | USDC, NDAL, NW Division  #CV-99-J-0432-NW | |
| **Attorney:** | Mr. Frank J. Dantone, Jr. | Defendant |
| **Service Provided:** | Expert Witness, Collision with Fishing Vessel | |
| | Expert witness opinion submitted | |
| | Deposition | |
| | Case settled | |

| | | |
|---|---|---|
| **Client:** | Willoughby Inc. | DATE:  April 2000 |
| **Attorney:** | N/A | |
| **Service Provided:** | Develop Facility Operations Manual for MTR | |
| | Submit to United States Coast Guard for approval. | |
| | United States Coast Guard approval April 17th, 2000. | |

| | | |
|---|---|---|
| **Client:** | Vulcan Materials/RECO Transportation Inc. | DATE:  April 2000 |
| **Attorney:** | N/A | |
| **Service Provided:** | Develop Fire Concepts and Extinguishment Training | |
| | Program for Marine Employees. | |
| | Conduct Associate Training. | |

## Client History:

**Client:**              Vulcan Materials/RECO Transportation Inc.        DATE:  April 2000
**Attorney:**            N/A
**Service Provided:**    Develop Confined Space Entry Training Program
                         for Marine Employees.  OSHA/USCG Required.
                         Conduct Associate Training.

**Client:**              Willoughby Inc.                                  DATE:  May 2000
**Attorney:**            N/A
**Service Provided:**    Develop Facility Emergency Response Plan for MTR
                         Submit to United States Coast Guard for approval.
                         United States Coast Guard approval May 16th, 2000.

**Client:**              Patton-Tully Transportation Company              DATE:  June 2000
**Court:**               USDC, WDTN,  #99-2499-G/A
**Attorney:**            Mr. Ernest Lane III                              Defendant
**Service Provided:**    Expert Witness, Personal Injury
                         Expert opinion submitted, – case settled

**Client:**              Vulcan Materials/RECO Transportation Inc.        DATE:  July 2000
**Attorney:**            N/A
**Service Provided:**    Develop Hazard Communication Training Program
                         for Marine Employees.  OSHA Required.
                         Conduct Associate Training.

**Client:**              Vulcan Materials/RECO Transportation Inc.        DATE:  July 2000
**Attorney:**            N/A
**Service Provided:**    Develop Lockout/Tagout Training Program
                         for Marine Employees.  OSHA Required.
                         Conduct Associate Training.

## Client History:

| | | |
|---|---|---|
| **Client:** | Vulcan Materials/RECO Transportation Inc. | DATE:  August 2000 |
| **Attorney:** | N/A | |
| **Service Provided:** | Develop Drug and Alcohol Training Program for Marine Employees.  USCG Required. | |

| | | |
|---|---|---|
| **Client:** | Midland Enterprises/Orgulf Transport Co. | DATE: January 2001 |
| **Court:** | USDC, NDMS, Greenville Div., No. 4:00CV176-P-B | |
| **Attorney:** | Mr. Ernest Lane, III | Plaintiff |
| **Service Provided:** | Expert Witness, Equipment Accident Collision with another vessel Expert opinion submitted, case settled | |

| | | |
|---|---|---|
| **Client:** | Mid-South Towing Company | Date:  October 2001 |
| **Court:** | USDC, SDIL,  #00-912-MJR | |
| **Attorney:** | Mr. William Bateman | Defendant |
| **Service Provided:** | Expert Witness, Personal Injury Expert Opinion submitted, case settled | |

| | | |
|---|---|---|
| **Client:** | Tennessee Valley Towing, Inc. | Date:  December 2001 |
| **Court:** | State of KY, McCracken Circuit Court, Div. I,  #99-C1-00118 | |
| **Attorney:** | Mr. Stephen E. Smith, Jr. | Defendant |
| **Service Provided:** | Expert Witness, Personal Injury Expert Opinion prepared, case settled | |

## Client History:

| | | |
|---|---|---|
| **Client:** | Sea River Maritime Inc. | Date: September,2002 |
| **Court:** | USDC, NDMS, Delta Div., #2:98CV36-B-B | |
| **Attorney:** | Mr. Michael Baggot | Defendant |
| **Service Provided:** | Expert Witness, Wrongful Death Claim | |
| | Expert Opinion prepared and submitted. | |
| | Case settled | |

| | | |
|---|---|---|
| **Client:** | Wilkerson Barge Line Inc. | DATE:  February 2002 |
| **Owner:** | Mr. Emery Skelton | |
| **Service Provided:** | Vessel Re-Engineering  – 3600 H.P. Towboat. | |
| | Engine rehabilitation, onboard equipment update, | |
| | Propeller redesign, installation of new Alarm System. | |
| | Install new Main Engine & Reduction Gear cooling system. | |
| | Supervise all shipyard and machinery repairs. | |

| | | |
|---|---|---|
| **Client:** | Tennessee Valley Towing, Inc. | Date:  December 2002 |
| **Court:** | USDC, WDKY, #5:01CV00158R | |
| **Attorney:** | Mr. Stephen E. Smith, Jr. | Defendant |
| **Service Provided:** | Expert Witness, Personal Injury | |
| | Expert Opinion prepared and submitted. | |
| | Deposition concluded. | |
| | Case settled. | |

| | | |
|---|---|---|
| **Client:** | Tennessee Valley Towing, Inc. | Date:  May 2003 |
| **Court:** | State of KY, McCracken Circuit Court, | |
| | Div. II,  number not available | |
| **Attorney:** | Mr. Stephen E. Smith, Jr. | Defendant |
| **Service Provided:** | Expert Witness, Personal Injury | |
| | Expert Opinion prepared and submitted. | |
| | Case settled. | |

Page 10 of 12

## Client History:

**Client:**          Canal Barge Company, Inc.                      Date:  November 2003
**Court:**           Civil Dist Ct. Orleans Parish LA #01-14725
**Attorney:**        Mr. Wayne G. Zeringue, Jr.                     Defendant
**Service Provided:** Expert Witness, Personal Injury
                     Expert Opinion prepared and submitted.
                     Case settled


**Client:**          Inland Marine Management, Inc.                 Date:  September 2003
**Court:**           State of KY, McCracken Circuit Court
                     Division II,  #00-C1-00-750
**Attorney:**        Mr. Frank J. Dantone, Jr                       Defendant
**Service Provided:** Expert Witness, Personal Injury
                     Case to Jury trial.  Verdict for Defendant


**Client:**          Apex Towing Company, Inc.                      DATE:  February 2004
**Owner:**           Apex Towing company, Inc.  St. Louis Mo.
**Service Provided:** Vessel Re-Engineering  – 3600 H.P. Towboat.
                     Engine rehabilitation, onboard equipment update,
                     propeller redesign, installation of new kort nozzles.
                     Supervise all steel and machinery repairs.


**Client:**          Triple M Transportation Company Inc.           DATE: May,  2001
**Owner:**           Mr. James Nowell                                     July,  2004
**Service Provided:** Vessel Engineering  – 6000 H.P. Towboats.
                     Maintain all onboard Equipment & implement
                     Preventive Maintenance Programs.
                     Direct Hull and underwater gear modifications.
                     Supervise all shipyard and machinery repairs

## Client History:

| | | |
|---|---|---|
| **Client:** | Inland Marine Management, Inc. | Date:  July 2004 |
| **Court:** | USDC, NDMS, Eastern Div., No. 1:03CV60-M-D | |
| **Attorney:** | Mr. Frank J. Dantone, Jr | Defendant |
| **Service Provided:** | Expert Witness, Personal Injury | |
| | Expert Opinion submitted | |
| | Case remains in litigation | |

| | | |
|---|---|---|
| **Client:** | American Commercial Barge Line,  LLC | Date:  Current |
| **Court:** | USDC, SDTX, Brownsville Div.,  #B-02-004 | |
| **Attorney:** | Mr. Glenn G. Goodier | Defendant |
| **Service Provided:** | Industry Expert Witness, Limitation of Liability | |
| | Wrongful Death, Brown Water Marine | |
| | Queen Isabella Causeway Bridge Collapse | |
| | Case remains in litigation | |

| | | |
|---|---|---|
| **Client:** | Southern Towing Company | Date:  October 2004 |
| **Court:** | USDC, EDLA,  No. 03-2688, Sect. J-MAG2 | |
| **Attorney:** | Mr. G. Ray Bratton | Defendant |
| **Service Provided:** | Expert Witness, Personal Injury | |
| | Expert Opinion submitted | |
| | Case settled | |

| | | |
|---|---|---|
| **Client:** | American Commercial Barge Line,  LLC | Date:  Current |
| **Court:** | USDC, EDLA, No. 02-3183, Section "F" (1) | |
| **Attorney:** | Mr. Glenn G. Goodier | Defendant |
| **Service Provided:** | Expert Witness, Personal Injury | |
| | Case remains in litigation | |

 **MARINE CONSULTANTS**

# 2004 FEE SCHEDULE

## Research, Document Preparation, Investigations, Depositions and Trial Testimony

| | |
|---|---|
| One Half-Day  (4 Hours) | $300.00 |
| Full Day  (8 Hours) | $600.00 |
| Field Investigations  (Per Day) | $600.00 |
| Trial Testimony, Depositions  (Per Day) | $600.00 |

## MISCELLANOUS EXPENSES:

| | |
|---|---|
| Vehicle Mileage  (per mile) | $0.65 |
| Hotel, Meal, Commercial transportation, Misc. expenses | At Cost |
| Fax, Telephone, Copies, Film, Photos, Videos, etc. | At Cost |





DEPT. OF TRANSP. U.S. COAST GUARD, CG 2945 (REV 6-01)

SERIAL NUMBER

1 006439

# UNITED STATES COAST GUARD

ISSUE NUMBER 7

**LICENSED**

# U.S. MERCHANT MARINE OFFICER

*This is to certify that*

*** DANIEL EARL BROCK ***

*having been duly examined and found competent by the undersigned is licensed to serve*
*for the term of five years from the below issue date as:*

FIRST CLASS PILOT OF STEAM OR MOTOR VESSELS OF ANY GROSS TONS UPON THE LOWER
MISSISSIPPI RIVER FROM MILE 900.0 TO MILE 950.0; MASTER OF TOWING VESSELS UPON THE
GREAT LAKES, INLAND WATERS AND WESTERN RIVERS, EXCEPTING WATERS SUBJECT TO
INTERNAITONAL REGULATIONS PREVENTING COLLISIONS AT - "SEE REVERSE"

*Given under my hand this*  6TH  *day of November  2002*

D. CALVERT, SIP, BY DIR
OFFICER IN CHARGE, MARINE INSPECTION

ISSUE PORT:  MEMPHIS, TN
EXPIRATION DATE: NOVEMBER 6, 2007

SEA, 1972; MASTER OF TOWING VESSELS UPON THE WESTERN RIVERS; ALSO, RADAR OBSERVER (UNLIMITED) EXPIRES SEPTEMBER 2007. CORRECTIVE LENSES TO BE WORN WITH A SPARE PAIR CARRIED ON BOARD.

D. CALVERT, SIP, BY DIR

OFFICER IN CHARGE, MARINE INSPECTION

SIGNATURE OF LICENSEE:

SSN:  306442491

DATE OF BIRTH:  NOVEMBER 10, 1940

PLACE OF BIRTH:  PERU, IN

PRESENT ADDRESS:  115-A RUE MARNE, PADUCAH, KY  42001