## SILVER FOX, INC., *ET AL.* LIMITATION PROCEEDINGS, *SILVER FOX II*

United States District Court, District of Alaska, October 16, 1997 and June 15, 1998
No. A97-168

CHARTER — 141. Demise, Scope and Intent, Conditional Sale — PERSONAL INJURY — 1313. Persons and Vessels at Fault and Liable.

The lease of a sport fishing vessel by her owners to a corporation owned by them, whose employee operated the vessel as skipper when passengers were injured allegedly as a result of faulty navigation, was a demise charter, where the corporation hired the skipper and paid for repairs and insurance; navigation restrictions and retention of rights of inspection and repossession did not negate that character, and owners were entitled to summary judgment of no liability.

CORPORATIONS — Alter Ego.

A corporation owned by vessel owners, to which they demise-chartered the vessel was not their alter ego, subjecting them to its liabilities, on the basis of their ownership and the fact that they were president and secretary of the corporation, factors normally present in closely held corporations, with no evidence of fraud, injustice or misconduct.

Paul L. Dillon (Dillon & Findley, P.C.) *for Jim and George Masten*
Kenneth Schoolcraft (Le Gros, Buchanan & Paul) *for Peter and Linda Udelhoven and Silver Fox.*

JOHN W. SEDWICK, D.J. (October 16, 1997):

### Introduction

At docket 12, plaintiff Linda Udelhoven, plaintiff Peter Udelhoven, and plaintiff Silver Fox, Inc. seek summary judgment exonerating Linda Udelhoven and Peter Udelhoven from liability for claims or damages arising from the voyage of the *Silver Fox II* on or about June 26, 1995. Oral argument has not been requested.

### Background

Plaintiff Peter Udelhoven and plaintiff Linda Udelhoven ("the Udelhovens") each own 50 percent of plaintiff Silver Fox, Inc. The Udelhovens also own the *Silver Fox II*, a thirty-foot fiberglass-plastic vessel. The Udelhovens chartered the *Silver Fox II* to Silver Fox, Inc. The term of the charter, as set forth in the lease agreement, was for a one-year period commencing on May 1, 1995.

EXHIBIT 4

On or about June 26, 1995, the *Silver Fox II* left Homer, Alaska, to take passengers, including claimant Jim Masten and claimant George Masten ("the Mastens"), sport fishing. The Mastens filed suit against the Udelhovens, individually and d/b/a Silver Fox Charters, in the Superior Court of the State of Alaska, Anchorage, Alaska, alleging they were injured aboard the *Silver Fox II* during the voyage.

On May 7, 1997, Silver Fox, Inc. and the Udelhovens, individually and d/b/a Silver Fox Charters, petitioned this Court to exonerate them from or limit liability arising from the voyage. On May 9, 1997, this Court issued a monition for notice to all persons claiming for any act, matter, or things, loss, damage, injury, or forfeiture, done or occasioned, or incurred by reasons of the voyage. On August 5, 1997, the plaintiffs moved for a summary judgment exonerating the Udelhovens, as owners of a vessel under bareboat or demise charter, from liability for claims or damages arising from the voyage.

### Standard of Review*

\* \* \*

### Discussion

I. *Demise or Bareboat Charter*

Plaintiffs contend that the Udelhovens bear no *in personam* liability for any claim or damage incurred during the voyage because the *Silver Fox II* operated under a demise or "bareboat" charter. The Mastens argue that a genuine issue of material fact exists regarding whether the lease agreement between the Udelhovens and Silver Fox, Inc. established a demise charter or a lesser relationship. It is important whether the lease agreement between the Udelhovens and Silver Fox, Inc. established a demise charter because, under a demise charter, the charterer is considered the owner of the vessel *pro hac vice* and all *in personam* liability arising out of the vessel's operation during the demise is considered the charterer's rather than the owner's. *Marr Enters, Inc. v. Lewis Refrigeration Co.*, 1977 AMC 2060, 2066, 556 F.2d 951, 957 (9 Cir. 1977).

To create a demise charter, a complete transfer of possession, command, and navigation of the vessel from the owner to the charterer is required. *Guzman v. Pichirilo*, 369 U.S. 698, 1962 AMC 1142 (1962). Anything less than complete relinquishment of possession, control, and management

---

\* Discussion of summary judgment standards omitted. — Eds.

of the vessel is not a demise charter, but a time or voyage charter, or not a charter at all. 369 U.S. at 700, 1962 AMC at 1144; *Marr*, 1977 AMC at 2067, 556 F.2d at 958. The courts are reluctant to find a demise charter when the dealings between the parties are consistent with any lesser relationship. *Guzman*, 369 U.S. at 700, 1962 AMC at 1144.

The Mastens argue that the lease agreement between the Udelhovens and Silver Fox, Inc. did not constitute a complete transfer of possession, command, and navigation of the *Silver Fox II*. According to the Mastens, the following lease provisions indicate that the Udelhovens retained control over the *Silver Fox II*:

> (1) lessee must use the vessel at its business office in Homer, Alaska, and in its area of operation, and solely in connection with its halibut fishing operation; (2) lessee may not sublet or assign its interest in the vessel; (3) lessor has right to examine the vessel and the manner in which it is used; and (4) lessor has right to retake possession upon default.

While the lease provisions regarding use, assignment, inspection, and default may restrict Silver Fox, Inc.'s utilization of the *Silver Fox II* to some degree, this is not the sort of "control" over the vessel the *Guzman* Court considered determinative of whether a charter constitutes a demise. Under a time charter, Jane hires Dick to row her across the river in his boat. Under a demise charter, Jane rents Dick's boat to row herself across the river. The fact that Jane promises Dick that she will only use the boat to row herself across the river does not render the charter party between Dick and Jane something other than a demise, even though this stipulation restricts Jane's dominion over the boat. A charter party is analogous to a lease of real property. Gilmore and Black, *The Law of Admiralty*, 195 (2d ed. 1975) ("the [charterer] becomes, in effect, the owner *pro hac vice*, just as does the lessee of a house and lot, to whom the demise charterer is analogous). Dick, as the owner of the demised ship, retains an interest in the vessel just as the lessor of real property keeps a reversionary interest in the land he has leased to someone else. Thus, the proper focus when determining if a charter constitutes a demise is on who *operates* the vessel during the charter term. *See generally* Davis, *Maritime Law Deskbook*, 259 (1997) (defining a demise as charter "in which the charterer takes over operation and management of the vessel"). The lease provisions regarding use, assignment, subletting, inspection, and default are unrelated to the actual operation of the *Silver Fox II* during the charter, and, therefore, do not suggest that the lease agreement between the Udelhovens and Silver

Fox, Inc. was not a demise charter. Furthermore, demise charters typically include provisions dealing with such matters as use restrictions,[1] subchartering,[2] inspection,[3] and default.[4] Because these types of provisions are commonly included within demise charters, they do not indicate a retention of control over the vessel by the Udelhovens inconsistent with a demise charter.

Additionally, an examination of the relevant case law shows that courts consistently consider whether the charterer or the owner supplied the captain and crew a dispositive factor in determining whether a charter is a demise.[5] Here, Silver Fox, Inc. hired the skipper. Other obligations shouldered by Silver Fox, Inc. under the lease agreement, such as paying for repairs, taxes, and casualty insurance, indicate that Silver Fox, Inc. assumed the role of owner *pro hac vice* of the vessel.

In conclusion, the lease agreement and the fact that the charterer hired the skipper indicate that the Udelhovens relinquished control of the vessel to Silver Fox, Inc. Because the *Silver Fox II* was being operated under a

---

1. Davis, *Maritime Law Deskbook*, (1997) ("under a 'demise charter', ... the charterer charters the vessel without crew and takes over full control of all of the vessel and its operation, ... frequently subject to minimum restrictions imposed on the terms of the agreed charter party on trading limits and cargos which may be carried"); Schoenbaum, *Admiralty and Maritime Law*, §11.3 (2d ed 1994) ("provisions of a demise charter party typically deal with ... restrictions on use).

2. Gilmore and Black, *The Law of Admiralty*, 195 (2d ed 1975) ("the demise charterer ... may desire to charter [the vessel] to someone else ... and he may do so unless prohibited by the terms of the charter); Schoenbaum, *supra* at §11.3 ("provisions of a demise charter party typically deal with ... subchartering").

3. Gilmore, *supra* at 241 ("common [demise] forms also provide for periodic joint inspections").

4. Schoenbaum, *supra* at §11.3 ("provisions of a demise charter party typically deal with ... default).

5. *Calkins v. Graham*, 1982 AMC 2433, 2439, 667 F.2d 1292, 1296 (9 Cir. 1982) (manning the vessel is the kind of provision which distinguishes a time charter from a demise charter); *Marr*, at 957 (in a time charter the owner usually supplies the crew); *The Norland Loe v. Goldstein*, 1939 AMC 627, 633-34, 101 F.2d 967, 972 (9 Cir. 1939) (evidence that owners did not surrender control of the vessel to the charterer included fact that owner selected the captain); *See also* Gilmore, *The Law of Admiralty*, 240 (2d ed 1975) ("if the control of the vessel itself is surrendered to the charterer, so that the master is his man and the ship's people are his people, then we have ... a demise"); Schoenbaum, *Admiralty and Maritime Law*, §11.1 (2d ed. 1994) ("a demise is present where the provisions of the charter show that those in charge of the vessel are intended to be the agents and servants of the demisee, not the shipowner"); 14 ALR Fed. 544 ("of greatest significance in determining whether a charter party is one of ... demise are the provisions, if any, relating to the master and crew").

demise, her owners, the Udelhovens, bear no *in personam* liability for any claim or damage incurred during the voyage.

## II. *Corporate Veil*

The Mastens urge this court to pierce Silver Fox, Inc.'s "corporate veil" and hold its shareholders, the Udelhovens, personally liable. In determining whether to pierce the corporate veil, the primary consideration is whether the person has abused the corporate form. *Murat v. F/V Shelikof Strait*, 793 P.2d 69, 76 (Alaska 1990). The corporate form is abused when it is used to "defeat public convenience, justify wrong, commit fraud or defend crime." *Croxton v. Crowley Maritime Corp.*, 817 P.2d 460 (Alaska 1991) (quoting *Elliot v. Brown*, 569 P.2d 1323, 1326 (Alaska 1977) (quoting *Jackson v. General Electric Co.*, 514 P.2d 1170 (Alaska 1973))); *Id.* (quoting *Eagle Air, Inc. v. Corroon & Black/Dawson & Co. Inc.*, 648 P.2d 1000, 1004 (Alaska 1982) (quoting *General Constr. Co. v. Tyonek Timber, Inc.*, 629 P.2d 981, 983 (Alaska 1981))). In determining whether a shareholder has abused the corporate form, the court utilizes a "quantitative approach" that considers the following six factors:

> (a) whether the shareholder sought to be charged owns all or most of the stock of the corporation; (b) whether the shareholder has subscribed to all of the capital stock of the corporation or otherwise caused its incorporation; (c) whether the corporation has grossly inadequate capital; (d) whether the shareholder uses the property of the corporation as his own; (e) whether the directors or executives of the corporation act independently in the interest of the corporation or simply take their orders from the shareholder in the latter's interest; (f) whether the formal requirements of the corporation are observed.

*Murat*, 793 P.2d at 76.

The only evidence presented by the Mastens in support of piercing the corporate veil is that the Udelhovens each own 50-percent of Silver Fox, Inc. and are the president and secretary of the corporation. The Alaska Supreme Court has acknowledged that certain factors are "likely to be present in almost all 'piercing' cases involving small corporations" and are, therefore, less persuasive in determining whether it is appropriate to disregard the corporate entity. *Murat*, 793 P.2d at 77. By definition, in closely-held corporations all of the stock will be owned by only a few people. *Black's Law Dictionary*, (5th ed. 1979) (defining close corporation as "a corporation whose shares are held by a single shareholder or a closely-knit group of shareholders"). Thus, while owning all of the stock in the

corporation is one factor in the six-factor analysis, the presence of this factor alone is insufficient to support a finding that the Udelhovens abused the corporate form of Silver, Fox, Inc. In addition, the Alaska Supreme Court has emphasized that the "[e]ntire point of corporate veil doctrine ... is that form *does* prevail over substance, except in those limited circumstances involving fraud or injustice." *Croxton*, 817 P.2d at 466. When the evidence that the owners of the *Silver Fox II* own Silver Fox, Inc. is viewed in the light most favorable to the Mastens, it is not indicative of fraud, injustice, or any type of misconduct justifying piercing Silver Fox, Inc.'s corporate veil.

### Conclusion

Based on the foregoing, the motion for a summary judgment is granted.

---

LIMITATION OF SHIPOWNER'S LIABILITY — 113. **Persons Qualified to Limit — 142. Privity.**

The demise charterer of a sport fishing vessel whose passengers were injured from alleged faulty navigation in relation to weather conditions was entitled to summary judgment of limitation, since: (1) any negligence found would be that of the skipper, who determined whether, where and when to fish but was not in charge of recruiting or booking passengers, scheduling charters, financial affairs or hiring or supervising other employees and was not the managerial agent of the corporation whose negligence would be imputed to the corporation; (2) the corporation was entitled to rely on him since there was no evidence of his not being competent and qualified; (3) although the corporation was privy to weather conditions which it actively monitored, the evidence of weather hazards on the day in question did not pertain to the locale of the mishap.

JOHN W. SEDWICK, D.J. (June 15, 1998):

### I. Motion Presented

Plaintiff Silver Fox, Inc. moves for summary judgment to limit liability for damages arising from the voyage of the *Silver Fox II* on or about June 26, 1995, pursuant to the Limitation of Liability Act, 46 U.S.C. app. §183(a). The motion is opposed by claimants Jim Masten and George Masten. Oral argument was heard on June 2, 1998.

### II. Background

Peter Udelhoven and Linda Udelhoven each own fifty percent of Silver Fox, Inc. The Udelhovens also own the *Silver Fox II*, a thirty-foot fiberglass-