Page 1
Opinion of Daniel E. Brock

**In the Matter of American Commercial Lines as Owner and American Commercial Barge Line, LLC as Charterer of the Barges NM-315, VLB-9182, ACL-9993B, VLB-9173, Praying for Exoneration for and/or Limitation of Liability. Civil Action No. B-02-004; USDC, Southern District of Texas, Brownsville Division**

---

## DOCUMENTS REVIEWED:

➢ United States Coast Guard Hearing Transcript dated October 9, October 10, October 11, October 12, and November 5, 2001

➢ United States Coast Guard Hearing Exhibits #1 through 55

➢ Deposition of Mr. Denny Hoessle, dated July 15, 2002, with Exhibits #1-11

➢ Deposition of Mr. Sonny Ivey, dated July 16, 2002, with Exhibits #12-17

➢ Deposition of Mr. Christian Brinkop, dated August 14, 2002, with Exhibits #18 & 19

➢ Deposition of Mr. James Franklin Farley, dated August 29, 2002, with Exhibits #20-23

➢ Deposition of Mr. Philip S. Timberlake, dated August 30, 2002, with Exhibits #27-54

➢ Deposition of Mr. William N. "Norb" Whitlock, dated August 30, 2002, with Exhibits #55 & 56

➢ Deposition of Mr. Michael A. Khouri, dated January 14, 2003, no Exhibits

➢ Deposition of Mr. Peter Kazunas, dated January 14, 2003, with Exhibits #57 & 58

➢ Deposition of Mr. Paul Book, dated January 15, 2003, with Exhibits #59-64

➢ Deposition of Mr. Stephen H. Mosher, dated May 26, 2004, with Exhibits #100-118

➢ Deposition of Mr. Gary P. Langley, dated July 16, 2004, with Exhibits #119 & 120

➢ United States Coast Guard Notice to Mariners dated September 4, September 11, September 18 and September 25, 2001

➢ Petition of Brown Water Towing, Inc. in a Cause of Exoneration from or Limitation of Liability.

➢ Petition of American Commercial Barge Line, LLC. in a Cause of Exoneration from or Limitation of Liability.

➢ Eighth Coast Guard District Towing Vessel Boarding Form – (19 Pages)

**Exhibit A**

Page 2
Opinion of Daniel E. Brock

**In the Matter of American Commercial Lines as Owner and American Commercial Barge Line, LLC as Charterer of the Barges NM-315, VLB-9182, ACL-9993B, VLB-9173, Praying for Exoneration for and/or Limitation of Liability. Civil Action No. B-02-004; USDC, Southern District of Texas, Brownsville Division**

---

## DOCUMENTS REVIEWED:

➢     Code of Federal Regulation  33 CFR 164.72

➢     United States Coast Guard Local Notice to Mariners – Change in Distribution Method Dated April 1, 2004

➢     NOAA Navigation Charts  11302 – 11303 – 11306 – 11308 – 11309

➢     American Waterway Operators Internet Site for Statistics

➢     Expert witness report of Dr. Jerome H. Modell, M.D., dated September 14, 2004

➢     Expert witness report of Captain William Beacom, dated September 29, 2004

➢     Expert witness report of Captain Jay Disler, dated September 29, 2004

➢     Expert witness report of Mr. John Deck, dated September 29, 2004

➢     Expert witness report of Engineering Partners International, Mr. Richard F. Silloway, P.E. , dated September 29, 2004

Page 3
Opinion of Daniel E. Brock

In the Matter of American Commercial Lines as Owner and American Commercial Barge
Line, LLC as Charterer of the Barges NM-315, VLB-9182, ACL-9993B, VLB-9173,
Praying for Exoneration for and/or Limitation of Liability.  Civil Action No. B-02-004;
USDC, Southern District of Texas, Brownsville Division

---

## ORIENTATION AND OBSERVATION:

For the purpose of reader orientation, the following observations are provided for content
familiarity.

Brown Water Marine Service, Inc., ( Brown Water )was on September 15, 2001, a Contract
Towing Company, providing towing services for floating marine equipment on and along the
Gulf Intracoastal Waterway.  Brown Water operated primarily from the Houston, TX area, West,
to the end of navigation at Brownsville, TX.

Prior to September 15, 2001, American Commercial Barge Line, LLC., a Barge Owner/Operator
and also referred to as a Primary Carrier, contracted with Brown Water Marine Service, Inc. to
provide towing services for three (3) loaded barges on the Intracoastal Waterway, East from
Brownsville, TX, approximately mile 683.0 WHL, to Bolivar Road Fleet, approximately mile
351.0 WHL.  Brown Water Marine Service, Inc. assigned the M/V Brown Water V to this
contract.

The M/V Brown Water V, on the West bound portion of the trip to Brownsville, TX to pick-up
the three (3) loaded barges, was towing barges destined for the Port of Brownsville and one (1)
barge in tow, VLB-9173, destined for the Port of Harligen, TX, located on the Arroyo Colorado
Waterway, approximately 25 miles north of the Arroyo Colorado Waterway Intersection with the
Gulf Intracoastal Waterway at approximately mile 644.5 WHL.

Page 4
Opinion of Daniel E. Brock

**In the Matter of American Commercial Lines as Owner and American Commercial Barge Line, LLC as Charterer of the Barges NM-315, VLB-9182, ACL-9993B, VLB-9173, Praying for Exoneration for and/or Limitation of Liability. Civil Action No. B-02-004; USDC, Southern District of Texas, Brownsville Division**

---

## ORIENTATION AND OBSERVATION CONTINUED:

On the West bound portion of the trip, the M/V Brown Water V was experiencing a mechanical problem and the Vessel Master deemed it unsafe to stop and deliver the barge destined for the Port of Harligen.  Following coordination between the Vessel Master and Brown Water office personnel, the decision was made by Brown Water to continue on to Brownsville, have the vessel repaired and then deliver barge VLB-9173 back to the Port of Harligen.

Following completion of repairs to the vessel at Brownsville on September 14, 2001, the Vessel Master configured the East bound tow consisting of the originally contracted three (3) loads destined for Bolivar Roads Fleet, mile 351.0 WHL and added the additional barge, VLB-9173 to the tow to be delivered back to the Port of Harlingen.  The tow configuration upon departure from the Port of Brownsville consisted of four (4) loads placed end to end, approximately eight hundred (800) feet long and thirty-five (35) feet wide, excluding the towing vessel.

The M/V Brown Water V and tow departed the Port of Brownsville, outbound on the Brownsville Ship Channel and at an area known as the "Y", turned East bound into the Gulf Intracoastal Waterway in the Port Isabel, TX area during the early morning hours of September 15, 2001.  The M/V Brown Water V successfully navigated through the Port Isabel Pontoon Bridge, also known as the Long Island Swing Bridge and was preparing to align the tow with the channel opening of the Queen Isabella Causeway Bridge.  It was reported that the Navigation Lights on the Channel opening of the bridge were extinguished.  The tow veered to Port, continued to travel beyond the marked channel limits to the Northwest, where the first or lead barge in the tow of four (4) barges struck a bridge roadway support structure on the Queen Isabella Causeway Bridge resulting in the collapse of a portion of the vehicle roadway.

**Page 5**
**Opinion of Daniel E. Brock**

**In the Matter of American Commercial Lines as Owner and American Commercial Barge Line, LLC as Charterer of the Barges NM-315, VLB-9182, ACL-9993B, VLB-9173, Praying for Exoneration for and/or Limitation of Liability. Civil Action No. B-02-004; USDC, Southern District of Texas, Brownsville Division**

---

## ORIENTATION AND OBSERVATION CONTINUED:

The M/V Brown Water V and tow remained on scene as directed by various State and Federal Agencies while an investigation was conducted. Following the investigation, the M/V Brown Water V and tow was allowed to depart the Port Isabel area.

Page 6
Opinion of Daniel E. Brock

**In the Matter of American Commercial Lines as Owner and American Commercial Barge Line, LLC as Charterer of the Barges NM-315, VLB-9182, ACL-9993B, VLB-9173, Praying for Exoneration for and/or Limitation of Liability.  Civil Action No. B-02-004; USDC, Southern District of Texas, Brownsville Division**

---

## OPINION

1.     Barges NM-315, VLB-9182, ACL-9993B and VLB-9173 are unmanned dry cargo hopper barges, constructed of steel, duly documented by the United States Coast Guard and were seaworthy in all respects for their intended service on September 15, 2001.


2.     Barges NM-315, VLB-9182, ACL-9993B and VLB-9173 were and are by construction and industry definition, unmanned dry cargo barges. The term unmanned dry cargo barge means the barge is constructed for the transportation of dry cargo commodities, does not contain as part of the barge design or construction, accommodations for personnel nor does it require for purposes of navigation or any other reason, personnel to be permanently stationed onboard.  Further, an unmanned barge does not have as a part of the design or construction, a means of self propulsion or steerage for navigation purposes. An unmanned barge must rely on an external source of propulsion and steerage for movement, such as a tugboat or towboat.

On September 15, 2001, the afore noted unmanned barges were being towed by the M/V Brown Water V, a diesel powered towboat, when the allision with the Queen Isabella Causeway Bridge occurred.  The four (4) noted unmanned barges were under the care, custody and control of the M/V Brown Water V.  The vessel was operated by Brown Water Marine Service, Inc. and manned by Brown Water personnel.  The Pilot on duty on the M/V Brown Water V at the time of the allision was appropriately licensed by the United States Coast Guard and was acting under the authority of his license.

Page 7
Opinion of Daniel E. Brock

In the Matter of American Commercial Lines as Owner and American Commercial Barge
Line, LLC as Charterer of the Barges NM-315, VLB-9182, ACL-9993B, VLB-9173,
Praying for Exoneration for and/or Limitation of Liability. Civil Action No. B-02-004;
USDC, Southern District of Texas, Brownsville Division

---

## OPINION

3.    On September 15, 2001, barges NM-315, VLB-9182, ACL-9993B and VLB-9173
      owned/chartered by American Commercial Barge Line, LLC, were in the care, custody
      and control of Brown Water Marine Service, Inc., and the towing vessel, M/V Brown
      Water V. The terms "care", "custody" and "control" are defined by Dictionary definition
      and by industry custom and practice when applied to a towing agreement is as follows:

      A.)    Care:        To watch over or attend to; a responsibility

      B.)    Custody:     A guarding of or keeping safe; care; protection; guardianship

      C.)    Control:     To exercise authority over; to direct; to command


      Industry custom and practice of acceptable definitions for unmanned barges when applied
      to a Third Party Tower and Towing Agreement is in summary; the Owner/Operator or
      Primary Carrier provides to the Tower, a barge in a seaworthy condition. Information is
      provided by the Primary Carrier or Owner/Operator to the Tower to move barge "X"
      from point "A" to point "B". It is expected by the Primary Carrier or Owner/Operator
      that the barge will be moved by the Tower with a seaworthy towing vessel from, point
      "A" to point "B" in a reasonable time frame with the utmost care and safety of
      navigation. Further, it is expected the barge will, at all times, remain in the custody of
      the Tower and the Tower will make all necessary decisions regarding which vessel will
      tow the barge from point "A" to point "B", how the vessel will be crewed and by whom.

Page 8
Opinion of Daniel E. Brock

In the Matter of American Commercial Lines as Owner and American Commercial Barge
Line, LLC as Charterer of the Barges NM-315, VLB-9182, ACL-9993B, VLB-9173,
Praying for Exoneration for and/or Limitation of Liability.  Civil Action No. B-02-004;
USDC, Southern District of Texas, Brownsville Division

---

## OPINION

3.      Continued…..

Brown Water Marine, on September 15, 2001, did not fulfill their contractual
responsibility when the M/V Brown Water V, towing barges NM-315, VLB-9182, ACL-
9993B and VLB-9173 allided with the Queen Isabella Causeway Bridge causing damage
to barge NM-315.

Neither American Commercial Barge Line, LLC. as a corporation, nor American
Commercial Barge Line personnel and/or any of the afore noted barges caused or was a
contributing factor to the allision with the Queen Isabella Causeway Bridge by the M/V
Brown Water V on September 15, 2001.

4.      The Inland Marine Industry is comprised of approximately 235 Barge and Towing
Companies, approximately 3,000 documented Towing Vessels and approximately 26,000
Barges of various types moving the nations commodities.

The Primary Carriers, also known as Owner/Operators, provide equipment of various
types and capacities to Shippers on the Inland Waterways.  Although these Primary
Carriers provide barge bottoms to Shippers who wish to move cargo, the Primary Carrier
may not always be able to provide an in-house traffic pattern of their own towing vessels
to move said barge throughout the entire route from origin to destination.  In the case of
several barge companies, they do not operate towing vessels at all.  This is where the
independent towing company's known as Third Party Towers provide a service.

**Page 9**
**Opinion of Daniel E. Brock**

**In the Matter of American Commercial Lines as Owner and American Commercial Barge Line, LLC as Charterer of the Barges NM-315, VLB-9182, ACL-9993B, VLB-9173, Praying for Exoneration for and/or Limitation of Liability. Civil Action No. B-02-004; USDC, Southern District of Texas, Brownsville Division**

---

## OPINION

4.      Continued....

Third Party Towers generally concentrate their services within a specific area and possess within their organization, a high degree of expertise over a particular waterway segment. Because these Towers concentrate their services within this specific geographic area, they are able to offer the Primary Carrier, frequency of service between two points that the Primary Carrier either does not or can not provide to the Shipper.

The Third Party Tower provides their services to an extensive list of customers. These customers may request towage of a single barge or a group of barges and it is not uncommon for the Tower to move barges for more than one customer in a single tow. As an example, a Third Party Tower, may at its sole discretion, place in tow, barges owned and/or operated by four (4), five (5) or six (6) different Primary Carriers destined for several different ports. The Tower may drop and pick-up barges for various customers at numerous ports along their route.

Third Party Tower's such as Brown Water Marine Service, Inc. are Independent Contractors and are completely responsible for their vessels operation and the crew assigned. The employees on the vessels are hired, assigned and directed by the Towers office. All communications and direction to the vessel crew regarding operation of the vessel, towage of barges, origin and destination of barges, crewing, supplying, and repairing of equipment is the sole responsibility of the Towers Management group.

**Page 10**
**Opinion of Daniel E. Brock**

**In the Matter of American Commercial Lines as Owner and American Commercial Barge Line, LLC as Charterer of the Barges NM-315, VLB-9182, ACL-9993B, VLB-9173, Praying for Exoneration for and/or Limitation of Liability.  Civil Action No. B-02-004; USDC, Southern District of Texas, Brownsville Division**

---

## OPINION

**4.**     Continued.....

Primary Carrier's are familiar with Third Party Towers that provide service on a particular waterway segment and most maintain a list of those Towers based on previous relationships over a period of time.   Such a relationship existed between American Commercial Barge Line, LLC. and Brown Water Marine Service, Inc..

The customary process for contracting the services of a Third Party Tower is as follows: The Primary Carrier Dispatcher will contact the Third Party Towing Company Dispatcher and inquire if the Third Party Tower can move its barges from point "A" to point "B" and when.  If the Tower agrees to move the barges and if the departure timing is acceptable, upon successful completion of a negotiated towing rate, the barge would be "booked" with the Third Party Tower.  The term "booked" means a verbal contract between the Primary Carrier and the Third Party Tower to move "Barge X" from point "A" to point "B" at an agreed price.

Once a barge is "booked", it is the Third Party Towers responsibility to assign the towing vessel, crew the vessel and provide direction and support to the vessel throughout the move of the barge from point "A" to point "B".  The Third Party Tower is responsible for all aspects of the towage and is responsible for keeping the Primary Carrier informed of the barges position each morning and an estimated time of arrival at destination.

**Page 11**
**Opinion of Daniel E. Brock**

**In the Matter of American Commercial Lines as Owner and American Commercial Barge Line, LLC as Charterer of the Barges NM-315, VLB-9182, ACL-9993B, VLB-9173, Praying for Exoneration for and/or Limitation of Liability.  Civil Action No. B-02-004; USDC, Southern District of Texas, Brownsville Division**

---

## OPINION

**4.**     Continued.....

The terms Care, Custody and Control as defined earlier are primary at all times during the barge(s) movement.  Should any problems be encountered by the towing vessel and/or with the barge, communication regarding the problem is between the Third Party Towers vessel and the Third Party Towers management.  If the problem encountered may delay the barges arrival at destination, it is the Towers office responsibility to notify the Primary Carrier.

Communication between the Third Party Towers vessel crew and the Primary Carrier Dispatcher is rarely conducted.  The vessel crew only has a barge number to reference and as a general rule, has no knowledge of who owns the barge, who is operating the barge or who the cargo owner may be.  Unless the towing vessel has been chartered and specific information given to the crew, they would not have any information on who to call.  Second, the Primary Carrier Dispatcher has no authority over the Third Party Towers vessel or crew.  Thus, the only communication the Primary Carrier Dispatcher conducts is with the Third Party Towers management and the only communication the Towers vessel crew conducts is with the Towers office personnel.

Page 12
Opinion of Daniel E. Brock

**In the Matter of American Commercial Lines as Owner and American Commercial Barge Line, LLC as Charterer of the Barges NM-315, VLB-9182, ACL-9993B, VLB-9173, Praying for Exoneration for and/or Limitation of Liability. Civil Action No. B-02-004; USDC, Southern District of Texas, Brownsville Division**

---

## OPINION

**4.**     Continued.....

The M/V Brown Water V on September 14, 2001 while West bound on the Intracoastal Waterway was scheduled to drop barge VLB-9173 at the Port of Harligen, TX, mile 644.5 WHL per American Commercial Barge Line dispatch direction to Brown Water Marine Service, Inc. management. Due to a stated mechanical problem on the M/V Brown Water V, Brown Water, without consultation with or notification to American Commercial Barge Line dispatch, elected to bypass the scheduled drop of barge VLB-9173 at the Port of Harligen, continue on to the Port of Brownsville, make repairs to the M/V Brown Water V and then return barge VLB-9173 back to the Port of Harligen.

According to testimony, Barge VLB-9173 was to be returned to Harligen by the M/V Brown Water V as a single barge in tow. The Vessel Master is the ultimate decision maker on tow size and configuration. The M/V Brown Water V Vessel Master elected to add loaded barge VLB-9173 to the three (3) previously contracted loaded barges to be towed East. American Commercial Barge Line management was not a party to nor aware of these decisions until after the allision occurred.

**Page 13**
**Opinion of Daniel E. Brock**

**In the Matter of American Commercial Lines as Owner and American Commercial Barge Line, LLC as Charterer of the Barges NM-315, VLB-9182, ACL-9993B, VLB-9173, Praying for Exoneration for and/or Limitation of Liability. Civil Action No. B-02-004; USDC, Southern District of Texas, Brownsville Division**

---

## OPINION

5.    At the request of American Commercial Barge Line, LLC, Marine Resources, an Independent Consulting Company, was retained to conduct a Vendor Audit of Brown Water Marine Service, Inc.  Mr. Timberlake, a Responsible Carrier Program Certified auditor, utilized the American Waterways Operators Responsible Carrier Program (RCP) Audit format as a basis for the audit.  Mr. Timberlake had conducted several audits of other Third Party Towers utilizing this format and he (Mr. Timberlake) was very familiar with the process and the information required on the form.

Mr. Timberlake knew in advance of the audit that Brown Water Marine Service, Inc. was not a member of the American Waterway Operators (AWO) nor Responsible Carrier Program (RCP) Certified.  The purpose of the audit was to identify within the Brown Water organization, which processes were in place and working, which areas required the implementation of a process, and to identify areas for improvement that would assist Brown Water in improving their overall service to American Commercial Barge Line. Mr. Timberlake was asked by American Commercial Barge Line to determine if Brown Water should continue as an approved vendor, based on his overall findings.

Mr. Timberlake reviewed Brown Water Marine Service, Inc. management processes that were in place, noted areas that could be improved and identified various deficiencies on the two (2) Brown Water Marine Service, Inc. vessels that were audited.  The deficiencies noted on the vessels were of a process oriented nature or replacement of required equipment.  None of the deficiencies identified on the vessels were of a nature that would affect the operational capability of the vessels.

**Page 14**
**Opinion of Daniel E. Brock**

**In the Matter of American Commercial Lines as Owner and American Commercial Barge Line, LLC as Charterer of the Barges NM-315, VLB-9182, ACL-9993B, VLB-9173, Praying for Exoneration for and/or Limitation of Liability. Civil Action No. B-02-004; USDC, Southern District of Texas, Brownsville Division**

---

## OPINION

**5.**    Continued.....

Following my review of Mr. Timberlake's audits of Brown Water Marine Service, Inc. vessels, the notes attached to his deposition and my additional review of management processes that were in place and submitted as exhibits to Mr. Moshers deposition, I am in agreement with Mr. Timberlake's findings and his report to American Commercial Barge Line Management that while there were areas for improvement noted within the Brown Water organization, there were not serious issues identified and/or noted that would disqualify Brown Water Marine Service, Inc. as a viable vendor.

According to testimony, Brown Water Marine Service, Inc. had previously been audited by various other companies including those companies participating in the Chemical Manufacturers Association Vendor Audit Program. Although copies of these audits have not been reviewed, it is my understanding that Brown Water Marine Service, Inc. was accredited as a certified vendor by each of the auditing companies.

Page 15
Opinion of Daniel E. Brock

In the Matter of American Commercial Lines as Owner and American Commercial Barge
Line, LLC as Charterer of the Barges NM-315, VLB-9182, ACL-9993B, VLB-9173,
Praying for Exoneration for and/or Limitation of Liability.  Civil Action No. B-02-004;
USDC, Southern District of Texas, Brownsville Division

---

## OPINION

6.     The United States Coast Guard in the 1988-89 time frame implemented the Cooperative
Towing Vessel Examination Program.   This program involved a rigorous inspection
criteria and was voluntary on the part of those Companies that chose to participate.
Brown Water Marine and American Commercial Barge Line were participants in this
program.  Participation in the program indicates a company is a responsible operator.


The program was designed to assist participating companies in identifying areas for
improvement and regulatory compliance on their towing vessels.   Phase One (1)
participants invited the Coast Guard to board and thoroughly inspect every aspect of each
of their company vessels utilizing the in-depth Eighth Coast Guard District Boarding and
Inspection format.  Following successful completion of the inspection, the vessel was
awarded a placard to be displayed in the Pilothouse window.  The M/V Brown Water V
displayed in the Pilothouse window, a Phase One (1) placard indicating participation in
and compliance with the program and inspection protocol.

**Page 16**
**Opinion of Daniel E. Brock**

**In the Matter of American Commercial Lines as Owner and American Commercial Barge Line, LLC as Charterer of the Barges NM-315, VLB-9182, ACL-9993B, VLB-9173, Praying for Exoneration for and/or Limitation of Liability. Civil Action No. B-02-004; USDC, Southern District of Texas, Brownsville Division**

---

## OPINION

6.    Continued.....

On September 15, 2001, a few hours after the allision occurred, the United States Coast Guard conducted an in-depth post causality inspection of the M/V Brown Water V. The inspection was conducted by a trained and knowledgeable Coast Guard Officer and assisted by the vessel crew. The results of the inspection identified seven (7) minor discrepancies. During the Accident Investigation Hearings conducted in October and November of 2001 by the Coast Guard, the Coast Guard Officer in Charge of the inspection testified none of the deficiencies identified during the inspection as discrepancies were related to the causality either as causal or as a contributing factor.

Following a review of the inspection report completed by the Coast Guard Inspecting Officer and a review of his testimony during the Coast Guard Hearing, I am in agreement with his findings that each of the noted discrepancies were minor in nature, receiving a Notice "835" warning, with a noted time frame to repair. None of the discrepancies were of a serious nature that would warrant removing the M/V Brown Water V from service.

Page 17
Opinion of Daniel E. Brock

**In the Matter of American Commercial Lines as Owner and American Commercial Barge Line, LLC as Charterer of the Barges NM-315, VLB-9182, ACL-9993B, VLB-9173, Praying for Exoneration for and/or Limitation of Liability. Civil Action No. B-02-004; USDC, Southern District of Texas, Brownsville Division**

---

## OPINION

7.      The United States Coast Guard published document "Local Notice to Mariners", as required by 33 CFR 164.72, is an informational document identifying specific issues that aids the mariner and is required to be carried onboard a vessel.

The Coast Guard "Local Notice to Mariners" Radio Broadcasts via VHF Radio supplement the hard copy document which has been ever increasingly difficult to obtain due to a diminished distribution network. Available in 2001 and continuing today, the "Local Notice to Mariners" broadcast is provided during the 0600 to 1200 watch and 1800 to 2400 watch, and an additional broadcast is provided during the 0001 to 0600 watch and the 1200 to 1800 watch. The Vessel Master and Pilot each have the opportunity twice per 24 hour period, to receive current, up to date local information that is the Coast Guards responsibility to provide. Towboat Operators rely on these broadcasts to stay current with changes within their area of operation.

The failure of a vessel to not have onboard a current "Notice to Mariners", which was identified as a deficiency by the Coast Guard Inspecting Officer during the post casualty inspection, while still a violation of the CFR, is not considered a serious violation nor does it indicate the vessel operator is irresponsible. It is in fact, a minor violation and a minor discrepancy if noted at all by the Coast Guard Boarding Officer or the Primary Carrier Auditor due to the difficulty mariners encounter in obtaining a current copy. In my years of experience, I have never known of the Coast Guard removing a vessel from service because a current copy of the Notice to Mariners was not onboard.

**Page 18**
**Opinion of Daniel E. Brock**

**In the Matter of American Commercial Lines as Owner and American Commercial Barge Line, LLC as Charterer of the Barges NM-315, VLB-9182, ACL-9993B, VLB-9173, Praying for Exoneration for and/or Limitation of Liability.  Civil Action No. B-02-004; USDC, Southern District of Texas, Brownsville Division**

---

## OPINION

7.    Continued.....

Brown Water Marine Service, Inc. was responsible for providing "Local Notice to Mariners" to Brown Water vessels and ensuring crew familiarity with content as it relates to the route to be navigated.  If the M/V Brown Water V did not have onboard the required documents as prescribed by the rule, Brown Water Marine Service, Inc. is accountable to whatever degree appropriate, not American Commercial Barge Line.

The United States Coast Guard "Local Notice to Mariners" printed document for the time period in question does not contain weather, current velocity or tidal action information because it is a National Oceanographic and Atmospheric Administration Agency function.  Unless the Coast Guard is specifically requested to publish that type of information, it will not be found in the "Notice to Mariners."  A review of the four (4) issues of the " Notice to Mariners" published during September, 2001, finds there is no weather, current velocity, tidal action or any other type of information included for the Port Isabel, TX area during the time period in question that would have aided the M/V Brown Water V Pilot in navigating through the Port Isabel, TX area or any type of cautionary information that would have prevented this accident.

If unusual tidal height and current velocity information had been available, it was Brown Water's responsibility as Operator of the vessel to make that information known to the M/V Brown Water V crew, not American Commercial Barge Line management.

**Page 19**
**Opinion of Daniel E. Brock**

**In the Matter of American Commercial Lines as Owner and American Commercial Barge Line, LLC as Charterer of the Barges NM-315, VLB-9182, ACL-9993B, VLB-9173, Praying for Exoneration for and/or Limitation of Liability. Civil Action No. B-02-004; USDC, Southern District of Texas, Brownsville Division**

---

## OPINION

8.  The American Waterway Operators (AWO) is a National Trade Organization providing a liasion between Industry and the Regulatory Authorities. Membership in the American Waterway Operators organization was in 2001 and is today, voluntary.

American Waterway Operators, through its published literature, states as of December 31, 2001, it represented approximately 63 percent of the Towboats and Tugboats in the Towing Industry with the major portion of the companies represented clustered in the medium to large fleet category. A review of the published membership roster for 2004 identifies an approximate even division between Blue Water and Inland companies.

The absence of membership in the American Waterway Operators organization or non-participation in the Responsible Carrier Program did not in 2001 and does not today reflect negatively on a company's operational expertise and commitment to safety. Numerous Barge and Towing Companies did not then and do not now maintain an active membership in the American Waterway Operators organization for a variety of reasons.

Membership in the American Waterways Operators or Certification as a Responsible Carrier does not insulate a company from accidents. Before the Responsible Carrier Program existed and even after the program was made a mandatory condition of membership, major accidents occurred involving American Waterways Operators member's vessels.

**Page 20**
**Opinion of Daniel E. Brock**

**In the Matter of American Commercial Lines as Owner and American Commercial Barge Line, LLC as Charterer of the Barges NM-315, VLB-9182, ACL-9993B, VLB-9173, Praying for Exoneration for and/or Limitation of Liability.  Civil Action No. B-02-004; USDC, Southern District of Texas, Brownsville Division**

---

## OPINION

8.     Continued…..

Brown Water Marine Service, Inc. made application to The American Waterways Operators for membership and was accepted as a Carrier member in February of 2001. Aditionally, Brown Water applied for participation in the Responsible Carrier Program and was audited by Sabine Surveyors, Inc. on July 22, 2002.and received certification as a Responsible Carrier Program participant at that time, well within the allotted time frame for certification.

Page 21
Opinion of Daniel E. Brock

In the Matter of American Commercial Lines as Owner and American Commercial Barge
Line, LLC as Charterer of the Barges NM-315, VLB-9182, ACL-9993B, VLB-9173,
Praying for Exoneration for and/or Limitation of Liability.  Civil Action No. B-02-004;
USDC, Southern District of Texas, Brownsville Division

---

## CONCLUSION

The business relationship between American Commercial Barge Line, LLC., an Owner/Operator
and Brown Water Marine Service, Inc., an independent Third Party Tower had existed for
approximately ten (10) years prior to the accident.  During this ten (10) year period, Brown
Water Marine Service, Inc. had satisfactorily performed their contractual responsibilities of
towing American Commercial Barge Line barges to various points along the Gulf Intracoastal
Waterway in a manner consistent with industry standards and meeting American Commercial
Barge Line expectations.  Brown Water Marine Service, Inc. also performed these same
contractual towing services for numerous other liquid and dry cargo barge Owner/Operators
along the same routes and had a reputation as a competent Tower throughout the industry.

American Commercial Barge Line, LLC. had monitored Brown Water Marine Service, Inc.
throughout their business relationship and had audited Brown Waters operation to determine
their industry expertise and the operational condition of their vessels.  American Commercial
Barge Line, LLC. encouraged Brown Water to become a member of The American Waterways
Operators (AWO) and become Responsible Carrier Program Certified, which occurred.

It is my opinion that American Commercial Barge Line, LLC. contracted for a service with a
responsible Third Party Tower that had a proven record for competence and dependable service.
American Commercial Barge Line, LLC., exercised sound business rationale in their decision to
utilize the services of Brown Water Marine Service, Inc..

**Page 22**
**Opinion of Daniel E. Brock**

**In the Matter of American Commercial Lines as Owner and American Commercial Barge Line, LLC as Charterer of the Barges NM-315, VLB-9182, ACL-9993B, VLB-9173, Praying for Exoneration for and/or Limitation of Liability.  Civil Action No. B-02-004; USDC, Southern District of Texas, Brownsville Division**

---

**OPINION**

This document outlines the substance of my opinion in this matter.   Should additional information, facts or documents become available and be provided, I reserve the right to amend or revise this report as necessary.

MB Marine Consultants

Daniel E. Brock

Date: November 9, 2004