IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF TEXAS
BROWNSVILLE DIVISION

| | |
|---|---|
| IN RE THE COMPLAINT AND ) | C.A. No. B-01-157 |
| PETITION OF BROWN WATER ) | (Subject to Rule 9(h) of |
| TOWING I, INC., AS ) | the Federal Rules of Civil |
| OWNER, et al ) | Procedure) |
| ) | Admiralty |
| Consolidated With ) | |
| ) | |
| IN RE THE COMPLAINT AND ) | C.A. No. B-02-004 |
| PETITION OF AMERICAN ) | (Subject to Rule 9(h) of |
| COMMERCIAL LINES LLC AS ) | the Federal Rules of Civil |
| OWNER, et al ) | Procedure) |
| ) | Admiralty |
| and ) | |
| ) | |
| IN RE THE COMPLAINT AND ) | C.A. No. B-02-125 |
| PETITION OF DEERE ) | (Subject to Rule 9(h) of |
| CREDIT, INC. (FORMERLY ) | the Federal Rules of Civil |
| SENSTAR FINANCE ) | Procedure) |
| COMPANY), AS OWNER OF ) | Admiralty |
| THE BARGE NM-315, et al) | |

\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*

ORAL AND VIDEOTAPED DEPOSITION OF

**ROSS LYN VALIGURA**

JANUARY 24, 2003

\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*



COPY  **AcuScribe Court Reporters**  **EXHIBIT 15**

750 Norwood Tower  Telephone: (512) 499-0277
114 West 7th Street  Toll-Free: (800) 497-0277
Austin, Texas 78701  Fax: (512) 499-0298
info@acuscribe.com  www.acuscribe.com

```
                IN THE UNITED STATES DISTRICT COURT
                 FOR THE SOUTHERN DISTRICT OF TEXAS
                         BROWNSVILLE DIVISION

IN RE THE COMPLAINT AND         * C.A. No. B-01-157
PETITION OF BROWN WATER         * (Subject to Rule 9(h) of
TOWING I, INC., AS OWNER,       * the Federal Rules of
AND BROWN WATER MARINE          * Civil Procedure)
SERVICE, INC., AS BAREBOAT      * Admiralty
CHARTERER, OF THE BROWN         *
WATER V, ITS ENGINES,           *
TACKLE, ETC. IN A CAUSE OF      *
EXONERATION FROM OR             *
LIMITATION OF LIABILITY         *

     Consolidated With

IN RE THE COMPLAINT AND         * C.A. No. B-02-004
PETITION OF AMERICAN            * (Subject to Rule 9(h) of
COMMERCIAL LINES LLC AS         * the Federal Rules of
OWNER, and AMERICAN             * Civil Procedure)
COMMERCIAL BARGE LINES,         * Admiralty
LLC, AS CHARTERER OF THE        *
BARGES NM-315, VLB-9182,        *
ACL-9933B, and VLB-9173,        *
IN A CAUSE OF EXONERATION       *
FROM OR LIMITATION OF           *
LIABILITY                       *

     and

IN RE THE COMPLAINT AND         * C.A. No. B-02-125
PETITION OF DEERE CREDIT,       * (Subject to Rule 9(h) of
INC. (FORMERLY SENSTAR          * the Federal Rules of
FINANCE COMPANY), AS            * Civil Procedure)
OWNER OF THE BARGE NM-315,      * Admiralty
and STATE STREET BANK AND       *
TRUST COMPANY OF                *
CONNECTICUT, NATIONAL           *
ASS'N, AS OWNER TRUSTEE OF      *
THE BARGE ACL-9933B and         *
NOT IN ITS INDIVIDUAL           *
CAPACITY, and GENERAL           *
ELECTRIC CAPITAL                *
CORPORATION, AS BENEFICIAL      *
OWNER OF THE BARGE              *
ACL-9933B, PRAYING FOR          *
EXONERATION FROM AND/OR         *
LIMITATION OF LIABILITY         *
```

```
*********************************************

         ORAL AND VIDEOTAPED DEPOSITION OF

                 ROSS LYN VALIGURA

                 JANUARY 24, 2003

*********************************************
```

ORAL AND VIDEOTAPED DEPOSITION OF ROSS LYN VALIGURA, produced as a witness at the instance of all Claimants and duly sworn, was taken in the above-styled and numbered cause on the 24th day of January, 2003, from 10:11 a.m. to 12:24 p.m., before KATHERINE A. BUCHHORN, Certified Shorthand Reporter in and for the State of Texas, reported by machine shorthand, at the Texas Office of the Attorney General, 300 W. 15th Street, 14th Floor, Austin, Texas 78701 pursuant to the Federal Rules of Civil Procedure and any provisions stated on the record or attached hereto.

```
 1                      APPEARANCES

 2

     FOR THE PETITIONERS, BROWN WATER MARINE SERVICE, INC.,
 3   ET AL:

 4           MR. WILL W. PIERSON
             ROYSTON, RAYZOR, VICKERY & WILLIAMS, L.L.P.
 5           1700 Wilson Plaza West
             606 North Carancahua
 6           Corpus Christi, Texas  78476
             361-884-8808/361-884-7261 (fax)
 7


 8
     FOR THE STATE OF TEXAS:
 9
             MR. C. MICHAEL RATLIFF
10           ASSISTANT ATTORNEY GENERAL
             Texas Office of the Attorney General
11           Transportation Division
             300 W. 15th Street, 14th Floor
12           P.O. Box 12548
             Austin, Texas 78711-2548
13           512-463-2004/512-472-3855 (fax)


14


15   FOR THE MIRELES CLAIMANTS:

16           MR. S. MARK STRAWN
             SCHIRRMEISTER AJAMIE, LLP
17           Pennzoil Place - South Tower
             71 Louisiana, Suite 2150
18           Houston, Texas  77002
             713-860-1600/713-860-1699 (fax)

19

20   FOR THE MATA CLAIMANTS:

21           MR. ANDRES H. GONZALEZ, JR.
             KITTLEMAN, THOMAS, RAMIREZ & GONZALES, PLLC
22           4900-B North 10th Street
                and
23           P.O. Box 1416
             McAllen, Texas 78505
24           956-686-8797/956-630-5199 (Fax)

25
```

```
 1                APPEARANCES (Cont'd.)

 2  FOR AMERICAN COMMERCIAL LINES LLP and AMERICAN
    COMMERCIAL BARGE LINE LLC, and DEERE CREDIT, INC.
 3  (Formerly Senstar Finance Company) AS OWNER OF THE
    BARGE NM-315,STATE STREET BANK AND TRUST CO. OF
 4  CONNECTICUT, N.A., AS OWNER/TRUSTEE OF THE BARGE
    ACL-9933B AND NOT IN ITS INDIVIDUAL CAPACITY, AND
 5  GENERAL ELECTRIC CAPITAL CORP., AS BENEFICIAL OWNER OF
    THE BARGE ACL-9933B
 6
          MR. RICHARD D. BERTRAM
 7        JONES, WALKER, WAECHTER, POITEVENT,
          CARRERE & DENEGRE L.L.P.
 8        201 St. Charles Avenue
          New Orleans, Louisiana  70170-5100
 9        504-582-8334/504-582-8010 (fax)

10

11

12

13  VIDEOGRAPHER:

14        UNITED VIDEO PRODUCTION COMPANY
          Mr. Justin Lynch
15        418 Peoples Street
          Suite 205
16        Corpus Christi, Texas  78401
          361-882-3313
17        800-360-3313

18

19

20

21

22

23

24

25
```

11:56 AM  1   Q.   And did anybody complain about the boat not
2  operating properly, as being a cause of this accident?
3   A.   No.
4   Q.   Is it your testimony, as a person that's
11:56 AM  5  responsible for maintaining the engines in operating
6  fashion, that the tugboat was operating correctly?
7   A.   Yes.
8   Q.   The times that you've observed Rocky
9  Wilson -- I guess you would have worked with him for
11:57 AM 10  about nine months before this accident?
11   A.   Yes.
12   Q.   Did you find him to be a competent captain?
13   A.   Yes, very competent.
14   Q.   Was he knowledgeable?
11:57 AM 15   A.   Yes.
16   Q.   Did you find him to be competent in being
17  able to build or make up tows?
18   A.   Yes.
19   Q.   Did you find him to be knowledgeable about
11:57 AM 20  how to do that?
21   A.   Yes.
22   Q.   Now, this particular tow that was made up on
23  September the 14th, with the four barges, it was made
24  up so that it was strung out; is that correct?
11:57 AM 25   A.   Yes.

```
11:57 AM   1    Q.   Was it discussed with the deckhands and the
           2    captain, how the tow would be configured?
           3    A.   Not necessarily discussed.  We all more or
           4    less knew that it was going to be strung out.
11:57 AM   5    Q.   Tell me why you knew that it was going to be
           6    strung out.
           7    A.   Well, they were all four loads, and it was
           8    three boxes and one rake.
           9    Q.   So what does that mean when you have one rake
11:58 AM  10    and three boxes?
          11    A.   Well, if you put them side by side, breasted
          12    up, you'd be pushing one box against the water.
          13    Q.   Was that easy to do?
          14    A.   No.  It slows you down a whole lot.
11:58 AM  15    Q.   Does that make the boat more difficult to
          16    handle?
          17    A.   Yes.
          18    Q.   And so what do you do, then, with the rake?
          19    A.   You put it on the very front and put the rest
11:58 AM  20    of the boxes behind it.
          21    Q.   And the rake's on the front, then the other
          22    boxes are behind it.  In your experience with loaded
          23    barges, does that make it easier or more difficult to
          24    maneuver the barge, in tow configuration?
11:58 AM  25    A.   From what --
```

| | | |
|---|---|---|
| 11:58 AM | 1 | MR. STRAWN: Objection; form. |
| | 2 | THE WITNESS: Huh? |
| | 3 | Q. (By Mr. Pierson) Go ahead. |
| | 4 | MR. STRAWN: I'm sorry. I have to... |
| 11:58 AM | 5 | A. From what I've seen, it makes it more -- it's |
| | 6 | easier for the captains to deal with it that way. |
| | 7 | Q. (By Mr. Pierson) And why -- or what leads |
| | 8 | you to make that conclusion? |
| | 9 | A. Well, it's -- it's a lot narrower, and you |
| 11:58 AM | 10 | more or less know what it's going to do; whereas if |
| | 11 | you have a flat box out there in front, it can get -- |
| | 12 | it -- when you try to steer it, it can change |
| | 13 | directions at any time. |
| | 14 | Q. In your experience, do you know of any other |
| 11:59 AM | 15 | way that the four barges that were to be taken north |
| | 16 | from the Port of Brownsville, could be configured, |
| | 17 | other than strung out, with the rake first and then |
| | 18 | the three boxes? |
| | 19 | A. Well, like I said, they breasted them up. I |
| 11:59 AM | 20 | wouldn't recommend it, but it could be done. |
| | 21 | Q. Would it be safer or less safe to breast them |
| | 22 | together, rather than stringing them out? |
| | 23 | A. Well, you have -- |
| | 24 | MR. STRAWN: Objection; form. |
| 11:59 AM | 25 | Q. (By Mr. Pierson) Just in your experience. |

11:59 AM  1  A.   You have advantages and disadvantages in both
2  directions, you know.  I would call it less safe
3  because of the narrowness of the channels going to --
4  for in between Padre Island and Corpus Christi.
11:59 AM  5  Q.   So in your experience, based on being out on
6  the water, with the various tow configurations, it
7  would be safer to have four strung out --
8  A.   Yes.
9  Q.   -- than two abreast?
11:59 AM  10  A.   Right.
11  Q.   And is that the type of information that's
12  discussed by the captain, with the deckhands, on
13  occasion?
14  A.   Sometimes, yes.
11:59 AM  15  Q.   Now, I believe you told Mr. Ratliff, for the
16  State of Texas, that it was not unusual to have four
17  loaded barges going north from Brownsville toward
18  Corpus Christi.
19  A.   Right.
12:00 PM  20  Q.   And you've done that before?
21  A.   Yes.
22  Q.   And that's been done safely?
23  A.   Yes.
24  Q.   Without any difficulties?
12:00 PM  25  A.   No.

12:09 PM   1    A.    I don't see how, no.

2    Q.    (By Mr. Pierson)  Why do you say that?

3    A.    Well, they're just -- you know, it's like the
4   trunk of your car, you know; it has nothing to do with
12:09 PM   5   the rest of -- the driver behind the wheel, you know.

6    Q.    Does ACBL ever even call down to the boats
7   and ask you, "Where is barge No. 1, 2, 3, 4?"

8    A.    No.  They call the office, as far as I know.

9    Q.    Have you ever had any discussions with ACBL?

12:09 PM  10    A.    No.

11    Q.    Would ACBL, to your knowledge, even know
12   where these particular barges were at any particular
13   time?

14    A.    No.

12:09 PM  15              MR. BERTRAM:  Objection; form.

16    Q.    (By Mr. Pierson)  Did you-all tell anybody
17   from ACBL that you were taking the chemical barge on
18   to the port of Brownsville, rather than dropping it
19   off in Harlingen on the way down?

12:10 PM  20    A.    No.  But the chemical barge was going to
21   Brownsville, to begin with.

22    Q.    Okay.  But you couldn't -- you couldn't leave
23   an unattended chemical barge; is that right?

24    A.    Right.

12:10 PM  25    Q.    But you don't tell anybody from ACBL, from

```
12:10 PM   1   the boat -- you don't call up and say --
           2       A.   No.
           3       Q.   -- "We've got four barges in tow, going north
           4   to Corpus Christi"?
12:10 PM   5       A.   No.
           6       Q.   The boat doesn't do that?
           7       A.   No.  If anything, it would be the owners of
           8   the property on the barge, that would be calling the
           9   office.
12:10 PM  10       Q.   You're talking about the people that owned
          11   the steel coils and the phosphates?
          12       A.   Yes.
          13       Q.   Does anybody from the boat ever call up ACBL
          14   and say, "How should we make up these barges?"
12:10 PM  15       A.   No.
          16       Q.   Has anybody from ACBL ever called down to the
          17   boat and said, "Make up these barges a particular
          18   way"?
          19       A.   No.
12:10 PM  20       Q.   And why doesn't that happen, to your
          21   knowledge and experience?
          22       A.   It's just -- as far as I can tell, it's none
          23   of their business.
          24       Q.   Whose business is it?
12:10 PM  25       A.   The person who's pushing the barge.
```

12:11 PM 1   Q.   And that would be Brown Water, in this case?

2   A.   Yes.

3   Q.   And Rocky Wilson?

4   A.   Right.

12:11 PM 5   Q.   Do you believe that Rocky Wilson made up the

6   barges in a proper configuration --

7   A.   Yes.

8   Q.   -- for the conditions that he expected to

9   encounter that -- that evening and the next day?

12:11 PM 10   A.   Yes.

11   Q.   Once you leave the port of Brownsville, is

12   there any place to lay up or tie up, and reconfigure

13   your barges?

14   A.   The bank.

12:11 PM 15   Q.   You'd have to -- you'd have to go aground, as

16   they've said here today?

17   A.   Yes.

18   Q.   Okay.  There are places in the Intracoastal

19   Canal between Corpus and Brownsville, that are quite

12:11 PM 20   narrow; is that true?

21   A.   Yes.

22   Q.   Is it unusual to touch the ground in the

23   canal, the Intracoastal Canal?

24   A.   No, it's not unusual.

12:11 PM 25   Q.   Is that canal properly dredged, in your