# AFFIDAVIT

**STATE OF TEXAS**

**COUNTY OF HARRIS**

BEFORE ME, the undersigned Notary Public, duly commissioned in the State and County aforesaid, personally came and appeared:

**MICHAEL D. RUSSELL**

who, after being duly sworn, did depose and testify that:

1. I am a citizen of the United States of the full age of majority, a resident of the State of Texas, have personal knowledge of the facts attested to herein and also make this affidavit based upon my investigation and work as an expert witness and maritime safety consultant having specialized knowledge, training and experience regarding marine safety and the inland towing industry and the U.S. regulations applicable to the inland towing industry.

2. I am 54 years of age. Following my retirement in 1995 after 20 years of active duty service in the U.S. Coast Guard, I began working as a maritime safety consultant. The name of my consulting firm is Turnaround Maritime Services. At the time of my retirement, I held the rank of Lieutenant Commander.

3. Attached as Exhibit A is a true and correct copy of my expert report dated November 9, 2004 in connection with the allision of the BROWN WATER V and tow with the Queen Isabella Causeway Bridge, South Padre Island, Texas, on September 15, 2001. Attached as Exhibit B is a true and correct copy of my resume which outlines my education, service in the U.S. Coast Guard, training and work experience and professional background.

**EXHIBIT 19**

4. As set forth more fully in my resume, Exhibit B, I have over 29 years of experience in several facets of marine safety enforcement and management. My educational background includes a Bachelor of Science Degree from Lamar University in Beaumont, Texas and attendance at the U.S. Coast Guard's Officer Candidate School in Yorktown, Virginia. From 1975 to January 1995, I was on active duty in the U.S. Coast Guard and retired as a Lieutenant Commander. While in the U.S. Coast Guard, I held various positions including: Chief of Vessel Inspection Division of the Coast Guard Marine Safety Office in Corpus Christi, Texas; Chief of Inspections and Investigations Department of the Coast Guard Marine Safety Office in Galveston, Texas; and Chief of the Investigations Department and Senior Investigating Officer of the Coast Guard Marine Safety Office in Houston, Texas, which is the nation's third largest port and largest foreign commerce port. As set forth in my resume, Exhibit B, I have extensive experience in investigating marine casualties and accidents and investigating and prosecuting violations by U.S. Merchant Mariners and vessel operators of U.S. and international regulations. I am familiar with the U.S. regulations applicable to the inland towing industry and the licensure of personnel to operate inland vessels such as tug boats and towboats which are enforced by the Coast Guard.

5. As set forth more fully in my resume, Exhibit B, I have provided testimony, including expert testimony, regarding marine casualties and casualty investigations in numerous cases, including those pertaining to the inland towing industry.

6. In preparation of my report dated November 9, 2004, Exhibit A, I reviewed the documents and materials listed at pages 1 and 2 of my report. My findings and opinions are set forth more fully in my report, Exhibit A. To summarize, it is my opinion that:

(A) Brown Water Marine Services qualified for participation in the Coast Guard's Cooperative Towing Vessel Examination Program ("CTVEP") by meeting federal regulations and demonstrating to the Coast Guard that they were a low risk regarding vessel safety. Brown Water Marine Services was an active participant in CTVEP and voluntarily offered itself up to examinations by the Coast Guard.

(B) Following the incident, the Coast Guard noted certain deficiencies for the BROWN WATER V on its vessel boarding report form, known as Coast Guard Form CG-5437, copy attached as Exhibit C, but the deficiencies noted on the CG-5437 were not major safety violations. Had they been major safety violations, they would have been required to have been corrected immediately. Further, it is my opinion that the deficiencies noted on the CG-5437, copy attached as Exhibit C, had nothing to do with the allision of the BROWN WATER V and the Queen Isabella Causeway Bridge.

(C) The owner or operator of the Queen Isabella Causeway Bridge was in violation of Title 33, Code of Federal Regulations, Part 118 because the green navigation lights were not working on both the north and south side of the bridge. Prior to the incident of September 15, 2001, a passing vessel noted that the navigation lights were not working and notified the harbor master.

(D) Captain Fowler, the operator of the BROWN WATER V at the time of the allision, had had the correct Coast Guard license issued to operate the BROWN WATER V.

(E) Captain Fowler was on the third issue of his Coast Guard license as an operator of uninspected towboats at the time of the incident which represents approximately

twelve years. Prior to this incident, Captain Fowler had two marine casualty incidents in his Coast Guard record which were groundings on August 30, 2000 and on March 7, 2001. The incidents resulted in no damage or pollution. It is my opinion that two groundings in twelve years is a very low number of incidents if Captain Fowler had been operating towboats during those twelve years.

(F)   The Gulf Intracoastal Waterway is a relatively narrow and shallow body of water and is restrictive when 35 foot wide barges are doubled up abreast and meet a similar tow. Sharp bends in the Gulf Intracoastal Waterway and intersections with major shipping channels combined with environmental conditions, barge drafts and a great deal of other commercial and recreational traffic presents challenges to the operators of towboats. Touching bottom or grounding are not unusual occurrences and are in some circumstances a prudent course of action to take to avoid a greater marine casualty.

(G)   Although television receivers are not prohibited by federal law or regulation from being in the wheelhouse of an uninspected towboat, it is my opinion that television receivers, video games and other electronic displays other than radar or electronic charts can be distractive and should not be operating when underway. Television receivers are a good source of weather information.

(H)   The Coast Guard has a website called The Port State Information Exchange ("PSIX") System. I conducted a review of the PSIX for the vessels operated by Brown Water Marine, including the BROWN WATER V. It is my opinion that the PSIX is not an accurate measure of a particular vessel's marine casualty history. A review of the PSIX for vessels operated by Brown Water Marine does

not reflect incompetent or unsafe operation. The PSIX does not give any information as to whether any grounding was intentional or unintentional, whether any allision was the striking of a stationary vessel or if the vessel was stationary and struck by another vessel, whether any personnel casualty was a cut finger, heart attack, bee sting, fall overboard, etc., whether any sinking involved another vessel, whether the equipment failure was a burned out light, a steering failure or whether due to part failure or maintenance.

_____
MICHAEL D. RUSSELL

SWORN TO AND SUBSCRIBED BEFORE ME, NOTARY PUBLIC, THIS 6th DAY OF DECEMBER, 2004.

_____
NOTARY PUBLIC

TAMMY A. KING
Notary Public, State of Texas
My Commission Expires
11/12/2007