tow was at fault for failing to navigate the flotilla in the bend of Carrollton Bend, cross the river after all traffic had cleared and then stem the current before attempting to moor the tow at the Continental Grain Elevator Barge Fleet.

5. The pilot of the M/V *Big Sam* was at fault for failing to have a lookout and for not seeing the *Letha C. Edwards* flotilla before he did. *Chamberlain v. Ward*, 62 U.S. 548, 570 (1859); *Ariadne*, 80 U.S. 475, 478 (1872); *Transfer No. 17*, 254 Fed. 673 (2 Cir., 1917); *Dorothy*, 189 Fed. 40 (2 Cir., 1911); *Welsh*, 276 Fed. 912 (2 Cir., 1921); *Griffin on Collision* (1949), sec. 108, pp. 257-277.

If he had seen the *Letha C. Edwards* flotilla, which was, and should have been, plainly visible from the time the M/V *Big Sam* came around the point of Carrollton Bend, he could have continued going downstream and passed between the *Letha C. Edwards* flotilla and the ship which was moored at the Continental Grain Elevator in the 450' of clear water between the ship and the *Letha C. Edwards* flotilla.

6. The sole proximate cause of this collision resulted from the *Big Sam* attempting to "top" her tow around in the river or in losing control of her tow when the *Letha C. Edwards* flotilla was so close that the out-river movement of the *Big Sam* flotilla created a situation which put the *Letha C. Edwards* flotilla *in extremis*. *Servia*, 149 U.S. 144, 154 (1893); *Gillison v. Baton Rouge C & T Co., Inc.*, 1959 AMC 1566, 173 F. Supp. 912 (E.D.La., 1959), aff'd 1962 AMC 238, 272 F.2d 942 (5 Cir., 1959); *Leonard J. Busby*, 258 Fed. 439 (2 Cir., 1919); *Steam-Boat Delaware*, 6 Fed. 195 (S.D.N.Y., 1881); *Horatio Hall*, 127 Fed. 620 (S.D.N.Y., 1904). A tug is at fault if she fails to control her tow. *Fred B. Dalzell, Jr.*, 1 F.2d 259, 262, 1924 AMC 1331 Sy. (2 Cir., 1924); *Wyomissing*, 232 Fed. 448, 449 (2 Cir., 1916); *Aurora*, 258 Fed. 439 (2 Cir., 1919); *Howard Carroll*, 41 Fed. 159 (E.D.N.Y., 1890). Furthermore, the *Big Sam* is at fault for failing to sound any whistle signals when she first started swinging out into the river after losing control to alert the *Letha C. Edwards* of her problems, i.e., the slip whistle (one long blast), 33 U.S. Code, sec. 203, Rule V, *Newark*, 1923 AMC 727, 289 Fed. 801 (2 Cir., 1923), *James P. McGuirl*, 225 Fed. 662 (E.D.N.Y., 1915), a backing whistle (three short blasts), 33 CFR 312.03, *City of New York v. Moraina No. 12, Inc.*, 257 F. Supp. 234, 1974 AMC 2155 Sy. (S.D.N.Y., 1973), *President*, 1927 AMC 1522 (S.D.N.Y.), *Tucker v. Socony Co.*, 1948 AMC 928, 167 F.2d 685 (2 Cir., 1948), or a danger signal (four or more short blasts), 33 U.S. C., sec. 203, Rule

510         1978 AMERICAN MARITIME CASES.

1978 A. M. C.

III, *Cenac Towing Co. v. Richmond,* 1960 AMC 1221, 265 F.2d 466, 469 (5 Cir., 1959), *Tiger Shipping Co., S.A. v. Carville,* 1974 AMC 1957, 381 F. Supp. 1340, 1346 (E.D.Va., 1974).

7. When the *Big Sam* lost control of her tow after the flotilla swung out from the fleet, the *Letha C. Edwards* and her tow were placed *in extremis* by the *Big Sam*. The *Letha C. Edwards* could not then back and hope to avoid collision and turning right or left probably would not have avoided collision. Her navigator did act when he realized that there was danger of collision. Even if there was an error in judgment on the part of the *Letha C. Edwards'* navigator, and the Court finds none, it was not at fault. *Blue Jacket,* 144 U.S. 372, 391 (1892); *Ludwig Holberg,* 157 U.S. 60 (1895); *The Favorita,* 85 U.S. 598, 603 (1874); *Genessee Chief,* 53 U.S. 461 (1852); *Union Oil Company of California v. Mary Mallory,* 1969 AMC 2254, 414 F.2d 669, 674 (5 Cir., 1969); *Afran Transport Company v. S.S. Transcolorado,* 1972 AMC 1149, 458 F.2d 164, 167 (5 Cir., 1972); *Griffin on Collision* (1949), sec. 233, pp. 529-533.

8. The court finds that the M/V *Nancy Jean* was merely a helper tug and properly followed all instructions received not only from Martyn, who was aboard the *Big Sam* (the "dominant mind"), but also from *Big Sam's* regular skipper, Bennett, who happened to be aboard the *Nancy Jean* and operating her radio throughout the sequence of events leading up to and surrounding the collision. *Oil Transfer Co. v. Westchester Ferry Company,* 1959 AMC 485 (S.D.N.Y.); *Chigusa Maru,* 1957 AMC 236 (S.D.N.Y.); *San Benito-Tug Moran and Tow,* 1952 AMC 592 (5 Cir.). The dominant tug is charged with full responsibility in compliance with the Rules of the Road, for the flotilla's maneuvers and the sounding of whistle signals. *Connecticut,* 103 U.S. 710 (1880); *San Benito, supra; Adelaide,* 1944 AMC 181 (2 Cir.); *San Pasqual,* 1929 AMC 687 (5 Cir.). Moreover, since *Nancy Jean* remained in approximately the same position holding the head of *Big Sam's* tow away from the downstream *Aralar* (her only real purpose) until she was instructed to, and did, back off to avoid the possibility of herself being run over and sunk, the court finds that nothing she did, or failed to do, caused or contributed to the collision.

9. The gross negligence of the *Big Sam* clearly appearing as the proximate cause of the collision, it is not required that the conduct of the *Letha C. Edwards* be scrutinized narrowly for fault. *City of New York,* 147 U.S. 72 (1893); *Pure Oil Company v. Jack Nielson, Inc.,* 1956 AMC 221, 135 F. Supp. 786 (E.D.La., 1955), *aff'd* 1956 AMC 1256,

233 F.2d 790 (5 Cir., 1956); *The Coastwise*, 68 F.2d 720 (2 Cir., 1934); *Indian Towing Company v. Wesley W*, 264 F. Supp. 892, 896 (E.D.La., 1967).

10. The principle is well-established that where vessels, clearly shown to have been guilty of faults adequate of themselves to account for collision, seek to impugn the management of other vessels, there is a presumption in favor of the latter which can only be rebutted by clear proof of contributing fault. *Cia De Maderas De Caibrien, S.A. v. Queenston Heights*, 1954 AMC 1395, 121 F. Supp. 280 (E.D. La., 1954), aff'd 1955 AMC 797, 220 F.2d 120 (5 Cir., 1955); *Indian Towing Company, Inc. v. Tug Wesley W*, 264 F. Supp. 892 (E.D.La., 1967), and cases cited therein. *The Big Sam* having failed to show any "clear proof of contributing fault" on the part of the *Letha C. Edwards*, it is found to be solely at fault for this collision.

11. Judgment has been entered accordingly in favor of plaintiffs for their damages in the amounts found herein with legal interest from the date of the collision and costs against defendant Tri-Capt, Inc., owner of the *Big Sam*.

---

IN THE MATTER OF THE PETITION OF THE GLENVIEW PARK DISTRICT AS OWNER OF ONE EIGHTEEN FOOT GRUMMAN ALUMINUM CANOE FOR LIMITATION OF AND EXONERATION FROM LIABILITY.

United States District Court, Northern District of Illinois, Eastern Division, February 25, 1977.

No.73-C-786.

DEATH BY NEGLIGENCE AND ACCIDENT—17. Damages—Amount.

Canoeist found to be 50 per cent at fault in wrongful death action against park district for failure to paddle canoe in midstream away from over-hanging branches and for failure to wear issued life jacket.

Pretzel, Stouffer, Nolan & Rooney, *for Petitioner*.
Lord, Bissell & Brook, *for Claimant*.

FRANK J. MCGARR, D. J.:

On September 20, 1972, Dr. George E. Melhus embarked with his family upon a park district sponsored canoe trip. During the outing,