IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF TEXAS
BROWNSVILLE DIVISION

| | |
|---|---|
| IN RE THE COMPLAINT AND PETITION OF BROWN WATER TOWING I, INC., AS OWNER, AND BROWN WATER MARINE SERVICE, INC., AS BAREBOAT CHARTERER OF THE BROWN WATER V, ITS ENGINES, TACKLE, ETC., IN A CAUSE OF EXONERATION FROM OR LIMITATION OF LIABILITY | C. A. NO. B-01-157<br>Admiralty<br><br><br>Consolidated with |
| IN RE THE COMPLAINT AND PETITION OF AMERICAN COMMERCIAL LINES, LLC AS OWNER, AND AMERICAN COMMERCIAL BARGE LINES, LLC AS CHARTERER OF THE BARGES NM-315, VLB-9182, ACL-9933B, VLB-9173, IN A CAUSE OF EXONERATION FROM OR LIMITATION OF LIABILITY | C. A. NO. B-02-004<br>Admiralty<br><br><br>Consolidated with |
| IN RE THE COMPLAINT AND PETITION OF DEERE CREDIT, INC., (FORMERLY SENSTAR FINANCE COMPANY), AS OWNER OF THE BARGE NM-315, AND STATE STREET BANK AND TRUST COMPANY OF CONNECTICUT, NATIONAL ASSOCIATION, AS OWNER TRUSTEE OF THE BARGE ACL-9933B AND NOT IN ITS INDIVIDUAL CAPACITY, AND GENERAL ELECTRIC CAPITAL CORPORATION, AS BENEFICIAL OWNER OF THE BARGE ACL-9933B, PRAYING FOR EXONERATION FROM AND/OR LIMITATION OF LIABILITY | C. A. NO. B-02-125<br>Admiralty |

MEMORANDUM IN SUPPORT OF MOTION FOR SUMMARY JUDGMENT
OF DEERE CREDIT, INC., (FORMERLY SENSTAR FINANCE COMPANY)
AS OWNER OF BARGE NM-315, STATE STREET BANK AND TRUST
COMPANY OF CONNECTICUT, NATIONAL ASSOCIATION, AS OWNER
TRUSTEE OF BARGE ACL-9933B AND NOT IN ITS INDIVIDUAL
CAPACITY, AND GENERAL ELECTRIC CAPITAL CORPORATION,
AS BENEFICIAL OWNER OF BARGE ACL-9933B

MAY IT PLEASE THE COURT:

{N1201496.1}

## STATEMENT OF ISSUES TO BE RULED UPON BY THE COURT
## AND SUMMARY OF ARGUMENT

On September 15, 2001, a collision occurred between the lead barge of the tow of the tug BROWN WATER V and the Queen Isabella Causeway. At the time of the collision, the BROWN WATER V was towing (by pushing ahead) four dumb, unmanned barges, having no motive power of their own or other means of propulsion. These four barges are identified as: Barge NM-315, Barge ACL-9933B, Barge VLB-9182 and Barge VLB-9173. At the time of the accident, the barges were under the sole care, custody and control of Brown Water which owned, operated and crewed the BROWN WATER V.[1]

Three civil actions are pending before the Court under its admiralty and maritime jurisdiction 28 U.S.C. § 1331, and The Limitation of Liability Act, 46 U.S.C. app. § 183: (1) Civil Action No. B-01-157, the exoneration/limitation proceedings commenced by the owner and operator of the M/V BROWN WATER V; (2) Civil Action No. B-02-004, the exoneration/limitation proceedings commenced by the "tow" or barge interests, American Commercial Barge Line LLC ("ACBL") and American Commercial Lines LLC ("ACL"); and (3) Civil Action No. B-02-125, exoneration/limitation proceedings commenced by Deere Credit, GE Capital, and State Street Bank, three financial institutions (hereinafter sometimes referred to as the "Financial Institutions") whose names appear in certain documents on file with the Coast Guard for two of the four barges (the NM-315 and the ACL-9933B) pursuant to certain lease arrangements that were in place. Deere Credit, GE Capital, and State Street Bank did not

---

[1] The BROWN WATER V was owned by Brown Water Towing I, Inc. and bareboat chartered by Brown Water Marine Service, Inc. which operated and crewed the vessel. (hereafter jointly referred to as "Brown Water".)

{N1201496.1}

2

operate the barges, had no contractual relationship with Brown Water, and had no dominion or control over the NM-315 and the ACL-9933B.[2]

The instant Motion for Summary Judgment seeks a decree of exoneration from all claims against Deere Credit, State Street Bank, and GE Capital. These Complainants were not involved in any of the events leading up to the collision. Long before the accident, the NM-315 and ACL-9933B were bareboat chartered and delivered to ACBL which then became the owner *pro hac vice* of the barges. ACBL contracted with Brown Water for the towage without any involvement from the Financial Institutions. No specific allegations or theory of liability have been made against the Financial Institutions. There is no evidence that the barges were unseaworthy at the time of the accident, much less when it bareboat chartered them. ACBL does not contend that the barges were unseaworthy when they were chartered. The Financial Institutions respectfully submit that they are entitled to be exonerated from all liability because there is no legal basis upon which they can be held liable for the September 15, 2001 collision and they are free from fault. Accordingly, the Financial Institutions respectfully request that the Court grant this motion for summary judgment of exoneration and filed herewith as Exhibit 1 a proposed exoneration decree.

## I.   STATEMENT OF FACTS

A complete discussion of the facts and circumstances surrounding the collision and relevant legal principles is contained in ACBL's Memorandum in Support of its Motion for Summary Judgment, which is adopted and incorporated herein by reference. The following

---

[2] Civil Action B-02-125 was filed on June 10, 2002, after it was discovered that two of the four barges (i.e., the NM-315 and ACL-9933B) were not owned by ACL as was initially indicated in Civil Action B-02-004.

{N1201496.1}

3

basic facts are central to this motion and demonstrate the complete lack of involvement of the Financial Institutions:

1. At the time of the collision, the tug BROWN WATER V had four barges in its tow, namely, Barge NM-315, Barge ACL-9933B, Barge VLB-9182, and Barge VLB-9173. (Ex. 2, Foltz Affidavit, p. 1, para. 3.)

2. On September 15, 2001 and at all times material to the collision, the four barges referred to above were and are dumb, unmanned barges and have no motive power of their own or other means of propulsion. The four barges referred to above were and remain documented with the U.S. Coast Guard. (Ex. 2, Foltz Affidavit, pp. 1-2, para. 4.)

3. On September 15, 2001 and at all times material to the collision, Deere Credit Inc. (formerly known as Senstar Finance Company) was the registered owner of Barge NM 315 and ACBL was the bareboat charterer and owner *pro hac vice* of Barge NM-315 pursuant to a bareboat charter agreement dated as of December 29, 1989. (Ex. 2, Foltz Affidavit, p. 2, para. 5.)

4. On September 15, 2001 and at all times material to the collision, State Street Bank and Trust Company of Connecticut, National Association, was the Owner Trustee of Barge ACL-9933B and General Electric Capital Corporation was the Beneficial Owner of Barge ACL-9933B, pursuant to a Trust Agreement dated as of July 1, 1991. Pursuant to a bareboat charter agreement dated as of July 1, 1999, ACBL was the bareboat charterer and owner *pro hac vice* of Barge ACL-9933B. (Ex. 2, Foltz Affidavit, p. 2, para. 6.)

5. On September 15, 2001 and at all times material to the collision, Deere Credit Inc. (formerly Senstar Finance Company), State Street Bank and Trust Company of Connecticut, National Association, and General Electric Capital Corporation had no dominion or control over

{N1201496.1}

4

Barge NM-315 and Barge ACL-9933B and had no contractual relationship or dealings with Brown Water with respect to the towage of the barges involved in the collision. (Ex. 2, Foltz Affidavit, p 2, para. 7.)

6.   On September 15, 2001 and at all times material to the collision, Barge NM-315, Barge ACL-9933B, Barge VLB-9182 and Barge VLB-9173 were under bareboat charter to ACBL which was the party that contracted with Brown Water Marine Service, Inc., an independent towage contractor, to perform certain towing services. (Ex. 2, Foltz Affidavit, pp. 2-3, para. 8.)

## II.   SUMMARY JUDGMENT STANDARD SUPPORTS EXONERATION OF DEERE CREDIT, STATE STREET BANK, AND GE CAPITAL.

As the U.S. Supreme Court noted in Celotex Corp. v. Catrett, 477 U.S. 317, 106 S. Ct. 2548 (1986): "In our view, the plain language of Rule 56(c) mandates the entry of summary judgment, after adequate time for discovery and upon motion, against the party who fails to make a showing sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial. In such a situation, there can be no 'genuine issue as to any material fact,' since a complete failure of proof concerning an essential element of a non-moving party's case necessarily renders all other facts immaterial." Celotex, 477 U.S. at 322-23, 106 S. Ct. at 2552.

Rule 56(c) requires the non-moving party to set forth specific facts which demonstrates that there exists a genuine issue for trial. The mere allegation of a factual dispute between the parties will not defeat an otherwise properly supported motion for summary judgment. The material facts are those which might affect the outcome of the case under the governing substantive law:

> As to materiality, the substantive law will identify which facts are material. Only disputes over facts that might affect the outcome of the suit under the governing law will properly preclude the entry of summary judgment. Factual disputes that are irrelevant or unnecessary will not be counted. See generally 10A C. Wright, A. Miller & M. Kane, Federal Practice and Procedure § 2725, pp. 93-95 (1983).

Anderson v. Liberty Lobby, Inc, 477 U.S. 242, 248, 106 S. Ct. 2505, 2510 (1986).

"That is, while the materiality determination rests on the substantive law, it is the substantive law's identification of which facts are critical and which facts are irrelevant that governs." Anderson, 477 U.S. at 248, 106 S. Ct. at 2510. It is further recognized that a party opposing a summary judgment may not merely rest on the allegations of his pleadings. Id. See also Celotex, 477 U.S. at 324-326, 106 S. Ct. at 2553-2555.

### III. LAW AND ARGUMENT IN SUPPORT OF EXONERATION OF DEERE CREDIT, STATE STREET BANK AND GE CAPITAL.

"The demise or 'bareboat' charter is essentially the lease of a ship, usually on a long term contract, often associated with a special finance or purchase arrangement." T. Schoenbaum, Admiralty and Maritime Law, § 9-3 at p. 675 (West 4th ed. 2003) (Ex. 3.) Under a bareboat charter, the entire command and possession of the vessel is turned over to the charterer, as was the case here. Guzman v. Pichirilo, 369 U.S. 698, 699, 82 S. Ct. 1095, 1096 (1962); United States v. Shea, 152 U.S. 178, 14 S. Ct. 519 (1894).

"[A] vessel owner need not confess liability in order to seek limitation under the Act." Lewis v. Lewis & Clarke Marine, Inc., 531 U.S. 438, 453, 121 S.Ct. 993, 1003 (2001). A vessel owner is entitled to be exonerated if it is free from fault. Tittle v. Aldacosta, 544 F.2d 752, 756 (5th Cir.), reh. denied, 546 F.2d 907 (5th Cir. 1977); In re: Caribbean Transport, Ltd., 748 F.2d 622, 626 (11th Cir.), opinion amended on other grounds, 753 F. 2d 948 (11th Cir. 1985); Torch,

Inc. v. Alesich, 148 F.3d 424, 427 (5th Cir. 1998). See also Silver Fox, Inc., 1998 AMC 2623, 2626-2627 (D.C. Alaska. 1998) (owner of vessel under bareboat/demise charter bears no in personam liability for any claim or damage incurred during the voyage and was entitled to exoneration by summary judgment.) (Ex. 4.)

The Claimants took no discovery from the Financial Institutions. ACBL contracted with Brown Water, a third party independent towage contractor to tow unmanned river barges with no motive power. (Ex. 2, Foltz Affidavit, pp. 2-3, para. 8.) The Financial Institutions had absolutely no relationship or dealings with Brown Water or Brown Water's vessels nor did they have any dominion or control over the NM-315 and the ACL-9933B at the time of the collision. (Ex. 2, Foltz Affidavit, pp. 2-3, para. 7-8.) The Financial Institutions were merely owners of the NM-315 and the ACL-9933B for lease and documentation purposes and had relinquished possession and control to the barges to ACBL when the barges were bareboat chartered to ACBL years before the accident.

## CONCLUSION

The Financial Institutions had absolutely no involvement in the relevant facts of this case. They were merely owners of record of the NM-315 and the ACL-9933B for lease and documentation purposes. Long before the accident, the Financial Institutions had relinquished possession and control of the barges to ACBL by bareboat charter. There is no evidence of any independent act of negligence by the Financial Institutions. Accordingly, this Court should grant their motion for summary judgment and exonerate them from all liability. Attached as Exhibit 1 is a proposed exoneration decree.

7

Respectfully submitted,

*[signature]*

GLENN G. GOODIER, Attorney-in-Charge
Admitted *Pro Hac Vice*
By Order Entered 4/23/02
Jones, Walker, Waechter, Poitevent,
  Carrère & Denègre, L.L.P.
201 St. Charles Avenue - 48th Floor
New Orleans, Louisiana 70170-5100
Telephone:    (504) 582-8174
Facsimile:    (504) 582-8010

LES CASSIDY
State Bar Number 03979270
Federal Identification Number 5931
814 Leopard Street
Christi, Texas 78401
Telephone:    (361) 887-2969
Facsimile:    (361) 887-6251

OF COUNSEL:

WOOLSEY & CASSIDY, P.C.
814 Leopard Street
Corpus Christi, Texas 78401
Telephone:    (361) 887-2969
Facsimile:    (361) 887-6251

Counsel for Petitioners,
American Commercial Lines LLP and
American Commercial Barge Line LLC
Deere Credit, Inc. (formerly Senstar Finance
Company), as Owner of the Barge NM-315,
State Street Bank and Trust Company of
Connecticut, N.A., as Owner/Trustee of the Barge
ACL-9933B and Not in Its Individual Capacity, and
General Electric Capital Corporation, as Beneficial
Owner of the Barge ACL-9933B

## CERTIFICATE OF SERVICE

I do hereby certify that I have on this 10th day of December, 2004, served a copy of the foregoing pleading on counsel for all parties to this proceeding by mailing the same by United States Priority Mail, properly addressed and first class postage prepaid.

_____
GLENN G. GOODIER

{N1201496.1}

9