United States District Court
Southern District of Texas
FILED

FEB 0 3 2005

Michael N. Milby
Clerk of Court

## IN THE UNITED STATES DISTRICT COURT
## FOR THE SOUTHERN DISTRICT OF TEXAS
## BROWNSVILLE DIVISION

| | | |
|---|---|---|
| IN RE THE COMPLAINT AND PETITION OF BROWN WATER TOWING I, INC., AS OWNER, AND BROWN WATER MARINE SERVICE, AS BAREBOAT CHARTERER, OF THE BROWN WATER V, ITS ENGINES, TACKLE, *ETC.* IN A CAUSE OF EXONERATION FROM OR LIMITATION OF LIABILITY | * * * * * * * * | C.A. No. B-01-157 |
| | * | **Consolidated with** |
| IN RE THE COMPLAINT AND PETITION OF AMERICAN COMMERCIAL LINES, LLC AS OWNER, and AMERICAN COMMERCIAL BARGE LINES, LLC, AS CHARTERER OF THE BARGES NM-315, VLB-9182, ACL-9933B, and VLB-9173, IN A CAUSE OF EXONERATION FROM OR LIMITATION OF LIABILITY | * * * * * * * | C.A. No. B-02-004 |
| | * | **and** |
| IN RE THE COMPLAINT AND PETITION OF DEERE CREDIT, INC. (FORMERLY SENSTAR FINANCE COMPANY), AS OWNER OF THE BARGE NM-315, and STATE STREET BANK AND TRUST COMPANY OF CONNECTICUT, NATIONAL ASS'N, AS OWNER TRUSTEE OF THE BARGE ACL-9933B and NOT IN ITS INDIVIDUAL CAPACITY, and GENERAL ELECTRIC CAPITAL CORPORATION, AS BENEFICIAL OWNER OF THE BARGE ACL-9933B, PRAYING FOR EXONERATION FROM AND/OR LIMITATION OF LIABILITY | * * * * * * * * * * * * | C.A. No. B-02-125 |

## STATE OF TEXAS' MOTION TO DISMISS CROSS-CLAIMS AND BRIEF IN SUPPORT

COMES NOW the State of Texas (the "State") and, pursuant to Rules 12(b)(1) and 12(b)(6) of the Federal Rules of Civil Procedure, respectfully moves for dismissal of the cross-claims that were filed against the State following and in reaction to the recent announcement that the State and the Limitation Petitioners have reached a settlement relating to the Queen Isabella Causeway allision. In accordance with this Court's rules, a Table of Contents and Table of Authorities are provided.

1

## **TABLE OF CONTENTS**

TABLE OF CONTENTS.......................................................................................... i

TABLE OF AUTHORITIES ...................................................................................ii

MOTION TO DISMISS ......................................................................................... 2

BRIEF IN SUPPORT OF MOTION TO DISMISS ................................................... 3

FACTS ................................................................................................................ 3

STATEMENT OF THE ISSUES TO BE RULED UPON BY THE COURT ......... 11

SUMMARY OF ARGUMENT ............................................................................. 11

ARGUMENTS AND AUTHORITIES................................................................... 12

I.     The Court Should Exercise its Discretion to Dismiss the Cross-claims........... 12

II.    Given the Pending State Court Suits, this Court Should Abstain From
       Considering the Cross-claims ......................................................................... 14

III.   The Eleventh Amendment Bars the Cross-claims ............................................ 16

IV.    This Court Lacks Jurisdiction Over Claims Under the TTCA, Which is the
       Sole Avenue for Recovery Against the State..................................................... 21

CONCLUSION................................................................................................... 24

CERTIFICATE OF SERVICE ............................................................................. 25

## TABLE OF AUTHORITIES

*Cases*

*Abravanel v. Day,* 2002 U.S. Dist. LEXIS 6195 (N.D. Tex. 2002)................................. 23

*Atascadero State Hosp. v. Scanlon,* 473 U.S. 234, 87 L.Ed.2d 171, 105 S.Ct. 3142 (1985)
................................................................................................................................. 17

*Burgess v. M/V Tamano,* 382 F.Supp. 351 (D. Me. 1974), *vacated and remanded on other grounds,* 564 F.2d 964 (1st Cir. 1977), *cert. denied sub nom. M/V Tamano v. United States,* 435 U.S. 941, 55 L.Ed.2d 537, 98 S.Ct. 1520 (1978) ........................................ 19

*College Savs. Bank v. Fla. Prepaid Postsecondary Educ. Expense Bd.,* 527 U.S. 666, 119 S.Ct. 2219, 144 L.Ed.2d 605 (1999) ............................................................................ 17

*Colorado River Water Conservation District v. United States,* 424 U.S. 800, 96 S.Ct. 1236, 47 L.Ed.2d 483 (1976), *reh'g denied,* 426 U.S. 912, 96 S.Ct. 2239, 48 L.Ed.2d 839 (1976)............................................................................................................. 14, 15

*Department of Public Safety v. Great Southwestern Warehouses, Inc.,* 352 S.W.2d 493 (Tex. Civ. App. Austin 1961, writ ref'd n.r.e.) .............................................................. 20

*Department of Transportation of State of Illinois v. American Commercial Lines, Inc.,* 350 F.Supp. 835 (N.D. Ill. 1972) ................................................................................. 19

*Duhart v. State,* 610 S.W.2d 740 (Tex. 1980) ................................................................... 21

*Edelman v. Jordan,* 415 U.S. 651, 39 L.Ed.2d 662, 94 S.Ct. 1347 (1974)....................... 16

*Ex parte State of New York,* 256 U.S. 490, 41 S.Ct. 588, 65 L.Ed. 1057 (1921) ............. 22

*Federal Sign v. Texas Southern Univ.,* 951 S.W.2d 401 (Tex. 1997)............................... 15

*Fort Fetterman v. South Carolina State Hwy. Dept.,* 261 F.2d 563 (4th Cir. 1958) ......... 19

*Fylipoy v. Gulf Stevedore Corp.,* 257 F.Supp. 166 (S.D. Tex. 1966) ............................... 22

*Guillory v. Port of Houston Authority,* 845 S.W.2d 812 (1993)................................. 21, 22

*Gullen v. City of San Antonio,* 13 S.W.3d 428 (Tex. App.- San Antonio 2000, pet. denied)
................................................................................................................................. 15

*In re Department of Energy Stripper Well Exemption Litigation,* 956 F.2d 282 (Temp. Emer. Ct. App. 1992)................................................................................................. 19

*In re Monongahela Rye Liquors, Inc.* 141 F.2d 864 (3rd Cir. 1944)................................. 19

*Jackson v. Sheriff of Ellis County,* 154 F.Supp.2d 917 (N.D. Tex. 2001) ....................... 23

*Jones v. Bryant,* 246 F.Supp.2d 622 (S.D. Tex. 2003) ...................................................... 23

*LeLeaux v. Hamshire-Fannett Indep. Sch. Dist.,* 835 S.W.2d 49 (Tex. 1992)................. 21

*Lowe v. Texas Tech Univ.,* 540 S.W.2d 297 (Tex. 1976) .................................................. 21

*Lyons v. Texas A&M University,* 545 S.W.2d 56 (Tex. Civ. App-Hous (14 Dist.) 1976) 22

*Mann Manufacturing, Inc. v. Hortex, Inc.,* 439 F.2d 403 (5th Cir. 1971) ......................... 16

*Maryland Port Administration v. SS American Legend,* 453 F.Supp. 584 (D. Md. 1978)19

*Mount Pleasant Indep. Sch. Dist. v. Lindburg,* 766 S.W.2d 208 (Tex. 1989).................. 21

*Oneida County, N.Y. v. Oneida Indian Nation of New York State,* 470 U.S. 226, 105 S.Ct. 1245, 84 L.Ed.2d 169, *reh'g den'd* 471 U.S. 1062, 85 L.Ed.2d 491, 105 S.Ct. 2173 (1985).................................................................................................................................. 17

*Pacific Live Stock Co. v. Oregon Water Bd.,* 241 U.S. 440, 36 S.Ct. 637, 60 L.Ed. 1084 (1916).................................................................................................................................. 16

*Pennhurst State Sch. & Hosp. v. Halderman,* 465 U.S. 89, 104 S.Ct. 900, 79 L.Ed.2d 67 (1984)............................................................................................................................ 16, 23

*Port Authority Trans-Hudson Corp. v. Feeney,* 495 U.S. 299, 109 L.Ed.2d 264, 110 S.Ct. 1868 (1990).......................................................................................................................... 16

*Ross v. Texas Department of Criminal Justice,* 2001 U.S. Dist. LEXIS 17466 (N.D. Tex. 2001) .................................................................................................................................. 23

*Sherwinski v. Peterson,* 98 F.3d 849 (5th Cir. 1996)...................................................... 8, 23

*State Dept. of Highways and Public Transp. v. Dopyera,* 834 S.W.2d 50 (Tex.1992) ....... .. ................................................................................................................................ 21, 22, 23

*State of Alaska v. O/S Lynn Kendall,* 310 F. Supp. 433 (D. Alaska 1970) ...................... 19

*Terrazas v. Ramirez,* 829 S.W.2d 712 (Tex. 1992) ......................................................... 20

*United States v. Mack,* 48 F.Supp.2d 708 (S.D. Tex. 1999) ............................................. 23

*VE Corp. v. Ernst & Young,* 860 S.W.2d 83 (Tex. 1993)................................................. 16

*Welch v. Department of Highways and Public Transportation,* 483 U.S. 468, 107 S.Ct. 2941, 97 L.Ed.2d 389 (1987) ............................................................................................. 23

iii

*West Gulf Maritime Ass'n v. ILA Deep Sea Local 24*, 751 F. 2d 721 (5th Cir. 1985)....... 16

*Woelffer v. Happy States of America, Inc.*, 626 F.Supp. 499 (N.D. Ill. 1985)................... 19

### *Statutes & Rules*

Limitation of Shipowner's Liability Act of 1851, 46 U.S.C. §§ 181-196 ........................... 4

Rules 12(b)(1) and 12(b)(6) of the Federal Rules of Civil Procedure ................................. 1

Rule 13(a) of the Federal Rules of Civil Procedure........................................................ 18

Rule 13(g) of the Federal Rules of Civil Procedure ....................................................... 12

Rules 14(a) Federal Rules of Civil Procedure ................................................................ 12

Tex. Civ. Prac. & Rem. Code Ann §101.102(a)......................................................... 9, 23

Tex. Civ. Prac. & Rem. Code Ann. § 101.001 et seq. (West 1986 & Supp. 1996)............. 2

### *Other Authorities*

*Baicker-McKee, Janssen & Corr, Federal Civil Rules Handbook,* Rule 13(g), p. 394
    (West 2005)................................................................................................... 18

*Wright & Miller, Federal Practice & Procedure*: Civil 2d § 1431 ................................. 13

## **MOTION TO DISMISS**

COMES NOW the State and respectfully moves for dismissal of the cross-claims that were filed against the State following and in reaction to the recent announcement that the State has reached a settlement with the Limitation Petitioners, Brown Water[1] and ACBL.[2] Specifically, the cross-claims filed against the State by the Mireles Claimants[3] (Rec. Doc. No. 339) and by William E. Kimbrell (Rec. Doc. No. 342) should be dismissed because:

1. The cross-claims were filed well more than three years after this litigation began and long after all this Court's deadlines for adding parties to this action, and would require the State to resume participation in a case that it has settled. Under these circumstances, the Court should exercise its judicial discretion to dismiss the cross-claims;

2. The cross-claims are duplicates of previously filed and still pending state court actions, as a result of which this Court should abstain from hearing them;

3. This Court lacks jurisdiction over the cross-claims by operation of the Eleventh Amendment; and/or

4. This Court lacks jurisdiction over claims brought under the Texas Tort Claims Act[4] ("TTCA") because the TTCA only permits suit in state courts. Thus, if the cross-claims are asserted under the TTCA, they must be dismissed for lack of jurisdiction. If the cross-claims are purportedly brought under any other theory, they must be dismissed for failure to state a claim upon which relief can be granted, because the TTCA is the sole avenue for recourse against the State.

---

[1] Brown Water Towing I, Inc. is the owner of the BROWN WATER V and Brown Water Marine Services, Inc. is the vessel's operator. These two entities are hereinafter collectively referred to as "Brown Water."

[2] American Commercial Lines, LLC is alleged to be the owner of the barges the NM-315, VLB-9182, ACL-9933B and VLB-9173 (the "Barges"). American Commercial Barge Line, LLC is alleged to be the charterer of the Barges. Deere Credit, Inc. (formerly Senstar Finance Company) is the alleged record owner of the barge NM-315. State Street Bank and Trust Company of Connecticut, National Association is the alleged owner trustee of the barge ACL-9933B. General Electric Corporation is the alleged beneficial owner of the barge ACL-9933B. All of these entities are collectively referred to as "ACBL." Brown Water and ACBL are sometimes collectively referred to as "Limitation Petitioners."

[3] The "Mireles Claimants" are J. Antonio Mireles, as personal representative of the estate of Julio Cesar Mireles, Juan Antonio Mireles and Soledad Gonzalez Mireles.

[4] Tex. Civ. Prac. & Rem. Code Ann. § 101.001 et seq. (West 1986 & Supp. 1996).

## BRIEF IN SUPPORT OF MOTION TO DISMISS

## FACTS

1.    After more than three years of hotly contested litigation before this Court and many efforts at alternative dispute resolution (including multiple mediations with all parties before Judge DeAnda under the auspices of both this Court and the ACBL bankruptcy court, as well as private mediation between the State and the Limitation Petitioners, and an offer of judgment that was rejected) the State and the Limitation Petitioners recently agreed to a full and complete settlement of all claims and all counterclaims/cross-claims.  The settlement effectively removes the State from this case, thereby eliminating the difficult Eleventh Amendment and sovereign immunity questions that were attendant to the State's involvement in this action, not to mention eliminating the significant time and expense that the State would incur through continued participation in this litigation.  However, faced with the prospect of no longer having the State in the case to do their work for them, the other claimants have reacted to the settlement with a maneuver designed to frustrate it, duplicating their existing state court lawsuits against the State by filing cross-claims and seeking to file third-party demands against the State in this Court that, if allowed, would force the State to remain a party in this case.  For the reasons that follow, the State submits that this ploy must fail.

2.    These consolidated cases arise out of the allision of the BROWN WATER V and her tow with the State-owned Queen Isabella Causeway ("Causeway") in the early morning hours of September 15, 2001.  The allision killed eight people, injured several others, heavily damaged the Causeway, and caused the State millions of dollars in

3

damages. Within days after the allision, the State filed suit against Brown Water in state court in Cameron County.[5]

3.    Meanwhile, on the day of the allision, Brown Water filed this action under the Limitation of Shipowner's Liability Act of 1851, 46 U.S.C. §§ 181-196 (the "Limitation Act"). ACBL subsequently filed a pair of limitation actions relating to the allision. The three limitation actions are now consolidated.

4.    As is the standard practice in actions brought under the Limitation Act, this Court signed monition orders in the Brown Water and ACBL limitation actions. The monition orders enjoined the filing or further prosecution of any other suits against the Limitation Petitioners, and required all claims against the Limitation Petitioners to be filed in these consolidated actions on or before March 14, 2002, on penalty of default.[6]

5.    As respects the State, the monition orders had the effect of enjoining the State from prosecuting the State's Cameron County suit and requiring the State to either file its claims against the Limitation Petitioners in this consolidated federal limitation action, or lose those claims by default. The State filed timely answers and claims, reserving and asserting its Eleventh Amendment immunity and its sovereign immunity.[7]

6.    By the March 14, 2002 deadline, answers and claims were filed against Brown Water and ACBL by representatives and survivors of all eight people who perished in the Causeway allision, as well as a number of other individuals and entities claiming to have been injured or suffered damages as a result of the accident. Specifically, answers and

---

[5]    The State's suit is captioned *The State of Texas v. Brown Water Towing I, Inc. et al,* bears Cause No. 2001-09-4137-A, on the docket 107th Judicial District Court for Cameron County, Texas, and is sometimes hereinafter referred to as the "State's Cameron County suit."

[6]    The monition order with respect to Brown Water's limitation action is Rec. Doc. No. 13. The monition order with respect to ACBL's limitation action is Rec. Doc. No. 9 in Case No. B-02-004.

[7]    The State's answers and claims are Rec. Doc. Nos. 67 and 68.

claims were filed by the Mireles Claimants;[8] William E. Kimbrell;[9] the Rivas Claimants;[10] the Welch Claimants;[11] the Morales Claimants;[12] the First Hinojosa Claimants;[13] the Second Hinojosa Claimants;[14] the Harris Claimants;[15] the Leavell Claimants;[16] Lydia Zamora;[17] Hector Martinez, Sr.;[18] William Morris Welch;[19] Bridgette Goza;[20] Rene Mata and Frank Mata;[21] the Rescuer Claimants;[22] Southwestern Bell Telephone, L.P.;[23] and the Laguna Madre Water District.[24] The foregoing parties are sometimes collectively referred to as the "Other Claimants."

7.     When they filed their responsive pleadings in the limitation actions, none of the Other Claimants attempted to file any cross-claims or third-party claims against the State.

8.     After all claimants had answered, on April 8, 2002 all parties submitted a Joint Discovery/Case Management Plan to the Court. The plan contemplated that the

---

[8]  The Mireles Claimants' answers and claims are Rec. Doc. Nos. 82, 103 and 160.

[9]  William E. Kimbrell's answer and claim is Rec. Doc. No. 95.

[10]  The Rivas Claimants are Esteban F. Rivas and Maria Miriam Rivas, individually and as representatives of the estate of Stvan F. Rivas. Their answers and claims are Rec. Doc. Nos. 6, 7, 85, 86, 87 and 89.

[11]  The Welch Claimants are Jacqueline Paddock, individually and as next friend of William B. Welch and as representative of the estate of Chealsa Welch. Their answers and claims are Rec. Doc. Nos. 14, 15, 71, 72, 179 and 180.

[12]  The Morales Claimants are Gustavo Morales and Bigo's International LLC. Their answers and claims are Rec. Doc. Nos. 16, 17, 73 and 74.

[13]  The First Hinojosa Claimants are Raquel Teran Hinojosa, individually and on behalf of the estate of Gaspar Hinojosa, and Clarissa Hinojosa, Omar Hinojosa and Gaspar Hinojosa, II, each individually. Their answers and claims are Rec. Doc. Nos. 24, 31, 45, and 92.

[14]  The Second Hinojosa Claimants are Martin D. Hinojosa and Rita S. Hinojosa, individually and as heirs of the estate of Gaspar Hinojosa. Their answers and claims are Rec. Doc. Nos. 50 and 93.

[15]  The Harris Claimants are Anita Harris, individually and as next friend of Victor Justin Harris, and as representative of the estate of Robert V. Harris. Their answers and claims are Rec. Doc. Nos. 43, 100, 101, and 102.

[16]  The Leavell Claimants are Richard "Ricky" and Carol Leavell, individually and as representatives of the estate of Robin Faye Leavell. Their answers and claims are Rec. Doc. Nos. 63 and 64.

[17]  Lydia Zamora filed an answer and claim individually and as representative of the Estate of Hector Martinez, Jr. Her pleadings are Rec. Doc. Nos. 18, 19, 75 and 76.

[18]  Hector Martinez, Sr.'s answers and claims are Rec. Doc. Nos. 55, 62 and 79.

[19]  William Morris Welch's answers and claims are Rec. Doc. Nos. 58, 65 and 66.

[20]  Bridgette Goza's answers and claims are Rec. Doc. Nos. 33, 34, 49, 77, 78 and 83.

[21]  Rene Mata and Frank Mata's answers and claims are Rec. Doc. Nos. 41 and 98.

[22]  The Rescuer Claimants are Rolando Lee Moya, Alberto Leroy Moya, Antonio Salinas, Jr. and Roberto Espericueta. Their answer and claim is Rec. Doc. No. 97.

[23]  Southwestern Bell Telephone, L.P.'s answers and claims are Rec. Doc. Nos. 54, 96 and 99.

pleadings were complete, inasmuch as it indicated that no additional parties were expected to be joined in the consolidated limitation actions.[25]  On April 12, 2002 and April 17, 2002, amended versions of the plan were filed with the Court.  Both amended plans also stated that no additional parties were expected.[26]  None of the Other Claimants indicated any intent to file cross-claims or third-party claims against the State in any of the Joint Discovery/Case Management Plans.

9.      On September 6, 2002, Brown Water filed a cross-claim against the State, seeking contribution, indemnity and damages in connection with the Causeway allision.[27]  On November 27, 2002, ACBL filed a similar cross-claim and counterclaim against the State.[28]   In these pleadings, the Limitation Petitioners alleged that the condition of the Causeway had contributed to the allision.  However, even after receiving copies of these pleadings, none of the Other Claimants attempted to file cross-claims or third-party demands against the State.

10.     On December 18, 2002, the State filed a comprehensive motion to dismiss (the State's "Original Immunity Motion") based on sovereign immunity and the Eleventh Amendment.[29]  Through that motion, the State sought an order recognizing the State's entitlement to sovereign immunity from the Limitation Act and from these proceedings; dismissing the State from these consolidated actions on the basis of sovereign immunity; dissolving, as respects the State, the injunctions contained in the monition orders so the

---

[24]  The Water District's answers and claims are Rec. Doc. Nos. 21, 22, 29, 130, 138, 141, 150 and 151.

[25]  The Joint Discovery/Case Management Plan is Rec. Doc. No. 119.

[26]  The First Amended Joint Discovery/Case Management Plan is Rec. Doc. No. 124.  The Second Amended Joint Discovery/Case Management Plan is Rec. Doc. No. 126.

[27]  Brown Water's cross-claim against the State is Rec. Doc. No. 209.  Brown Water's amended cross-claim against the State is Rec. Doc. No. 210.

[28]   ACBL's cross-claim and counterclaim against the State is Rec. Doc. No. 214.  Brown Water's amended cross-claim against the State is Rec. Doc. No. 210.

[29]  The State's Original Immunity Motion is Rec. Doc. No. 216.

State could proceed with the State's Cameron County suit; and dismissing on sovereign immunity grounds the counterclaims/cross-claims filed by Brown Water and ACBL.

11.    In early 2003, ACBL filed for bankruptcy protection in the Southern District of Indiana, New Albany Division, following which this Court stayed this consolidated limitation action. The case remained stayed until February 2004. Throughout that entire time, none of the Other Claimants ever gave any indication of any intent or desire to file claims against the State in federal court.

12.    On the contrary, as the September 15, 2003 second anniversary of the allision approached, recognizing that any claims they might have against the State were governed by the TTCA and its two-year statute of limitations, nearly all of the Other Claimants filed suits against the State in state court in Cameron County. The only Other Claimants that did not file state court suits against the State were the Welch Claimants and Southwestern Bell Telephone, L.P.

13.    Every one of the state court suits filed by the Other Claimants specifically invoked the TTCA and alleged claims against the State relating to the condition of the Causeway.[30]    Of particular relevance to the instant motion are the suits filed by the Mireles Claimants and William E. Kimbrell, copies of which are attached as Exhibits 1 and 2, respectively. Both specifically plead claims against the State under the TTCA.

---

[30] All of the suits are filed in the District Court of Cameron County, Texas. The Mireles Claimants' suit (Exhibit 1) is Cause No. 2003-09-4623-B. William E. Kimbrell's suit (Exhibit 2) is Cause No. 2003-09-4627-D. The Rivas Claimants' suit (Exhibit 3) is Cause No. 2003-09-4613-B. The Morales Claimants' suit (Exhibit 4) is Cause No. 2003-09-4625-B. Lydia Zamora's suit (Exhibit 5) is Cause No. 2003-09-4621-G. The First Hinojosa Claimants' and the Second Hinojosa Claimants' jointly filed suit (Exhibit 6) is Cause No. 2003-09-4618-C. The Harris Claimants' suit (Exhibit 7) is Cause No. 2003-09-4605-D. The Leavell Claimants suit (Exhibit 8) is Cause No. 2003-09-4617-G. Hector Martinez, Sr.'s suit (Exhibit 9) is Cause No. 2003-09-4616-E. William Morris Welch's suit (Exhibit 10) is Cause No. 2003-09-4624-G. Bridgette Goza's suit (Exhibit 11) is Cause No. 2003-09-4622-A. Rene Mata and Frank Mata's suit (Exhibit 12) is Cause No. 2003-09-4620-E. The Rescuer Claimants' suit (Exhibit 13) is Cause No. 2003-09-4626-C. The Laguna Madre Water District's suit (Exhibit 14) is Cause No. 2003-09-4657-E.

14.     The State answered all of the state court suits filed by the Other Claimants, affirmatively pleading its sovereign immunity and the provisions of the TTCA as defenses. All of the state court actions filed by the Other Claimants against the State currently remain pending in Cameron County.

15.     The ACBL bankruptcy court lifted the bankruptcy stay, after which this Court restored this case to the Court's active docket on February 18, 2004 (Rec. Doc. No. 242). A scheduling conference was held, resulting in a scheduling order (Rec. Doc. No. 248) setting a February 7, 2005 trial date. That order set April 8, 2004 as the deadline for joining new parties in these actions. Discovery recommenced, and at no time either before or after the scheduling conference did any of the Other Claimants state any intention to file any federal court claims against the State.

16.     On September 30, 2004, this Honorable Court issued its ruling denying the State's Original Immunity Motion. With respect to the only cross-claims/counterclaims then pending, those filed against the State by Brown Water and ACBL, the Court ruled that because the State had filed a claim against the Limitation Petitioners, the State had waived Eleventh Amendment immunity against the Limitation Petitioners' claims. In so doing, however, this Court cited *Sherwinski v. Peterson*, 98 F.3d 849, 852 (5th Cir. 1996) and noted that the Court lacks jurisdiction over actions pursuant to the TTCA because that statute permits suits against the State in state court only.

17.     In early November 2004, Cameron County, which was third-partied into the case by Brown Water and ACBL,[31] moved to continue the February 2005 trial date.

---

[31] Brown Water and ACBL had originally filed motions for leave to file third-party claims against Cameron County in late 2002. Because of the bankruptcy stay, leave to file the third-party actions was not granted until September 13, 2004 (Rec. Doc. Nos. 260 and 261). Shortly thereafter, Brown Water and ACBL filed their third-party demands (Rec. Doc. Nos. 269 and 275, respectively).

8

18.    On November 22, 2004, the State and the Limitation Petitioners agreed to a settlement to resolve all of the State's claims against Brown Water and ACBL in connection with the Causeway accident, as well as all of the Limitation Petitioners' cross-claims/counterclaims against the State.

19.    On December 6, 2004, this Court granted Cameron County's motion to continue the trial (Rec. Doc. No. 299).    An amended scheduling order was issued shortly thereafter, setting deadlines for discovery and motion practice with respect to the Cameron County claims.    However, the April 8, 2004 deadline for joining of parties remained in place, as did the discovery and motion deadlines as to all other parties (Rec. Doc. No. 303).

20.    In an effort to remove Cameron County from the case and reinstate the trial date, on January 4, 2005, the Mireles Claimants filed a Suggestion of Lack of Subject Matter Jurisdiction, arguing that this Court lacks subject matter jurisdiction over the third-party demands filed by Brown Water and ACBL against Cameron County.    In that filing, the Mireles Claimants argue that the claims against Cameron County should be dismissed because this Court lacks jurisdiction over those claims pursuant to the Eleventh Amendment and because the TTCA only permits suit in state court.[32]    Within a few days, most of the remaining Other Claimants filed virtually identical pleadings contending that the Court lacks jurisdiction as to Cameron County.[33]

---

[32] Rec. Doc. No. 327, at p. 3, citing Tex. Civ. Prac. & Rem. Code Ann §101.102(a) and *Sherwinski v. Peterson, supra.*

[33] See Rec. Doc. No. 330, filed by Hector Martinez, Sr.; and Rec. Doc. No. 331, jointly filed by William E. Kimbrell; the Rivas Claimants; the Welch Claimants; the Morales Claimants; Lydia Zamora; the First Hinojosa Claimants; the Second Hinojosa Claimants; the Harris Claimants; the Leavall Claimants; William Morris Welch; Bridgette Goza; Rene Mata and Frank Mata; and the Rescuer Claimants.  The only Other Claimants that did not join in the suggestions of lack of jurisdiction were Southwestern Bell Telephone, L.P. and the Laguna Madre Water District.

21.    Meanwhile, the State and the Limitation Petitioners have been moving forward with concluding their settlement. The funds have been exchanged and the settlement papers are in the process of being executed. The State has stopped participating in discovery. In the very near future, the State and the Limitation Petitioners will be filing a joint motion to dismiss with prejudice all of the State's claims against the Limitation Petitioners, and all of the Limitation Petitioners' cross-claims and counterclaims against the State.

22.    In what is clearly a reaction to the State's settlement with Brown Water and ACBL, and in contradiction to the position they just took with respect to Cameron County, the Other Claimants recently began filing cross-claims and/or seeking leave to file third-party demands against the State in this limitation action.[34] The cross-claims and third-party demands come well over three years after the accident and duplicate the claims that are pending in the Other Claimants' state court suits against the State.

23.    The State submits that the claims of the Other Claimants should be dismissed as untimely; are duplicative of the suits pending in state court, thus making abstention appropriate; are barred by the Eleventh Amendment; and can only be brought under the TTCA, which allows suit only in state court. For these reasons, the State now moves to dismiss the cross-claims of the Mireles Claimants and William E. Kimbrell, and submits that the motion filed by the remaining Other Claimants for leave to file third-party claims against the State should be denied.

---

[34] Cross-claims were filed by the Mireles Claimants (Rec. Doc. No. 339) and William E. Kimbrell (Rec. Doc. No. 342). The cross-claimants take the position that a cross-claim can be filed because the State is still a party to the case, since the dismissal motion regarding the settlement between the State and the Limitation Petitioners has yet to be filed. On the other hand, the motion for leave to file the third-party demand, (Rec. Doc. No. 337) which purports to be jointly filed by all of the Other Claimants, takes the position that having settled, the State is no longer a party and must be third-partied back into the case.

## **STATEMENT OF THE ISSUES TO BE RULED UPON BY THE COURT**

24.     The procedural questions presented by this motion are whether the Court should exercise its judicial discretion to dismiss or abstain from hearing the cross-claims given the timing of their filing, the posture of this case and the fact that the same claims are already pending in state court in Cameron County. If the Court agrees that the cross-claims should be dismissed or that abstention is appropriate, it will not be necessary to reach the other issues presented by this motion, namely, whether the cross-claims violate the State's Eleventh Amendment immunity; whether any claims exist against the State outside the TTCA; and whether this Court lacks jurisdiction over TTCA claims.

## **SUMMARY OF ARGUMENT**

25.     From a procedural standpoint, if the Other Claimants wished to assert claims against the State in these limitation proceedings, they should have tried to file their claims long ago. Every deadline ever set for adding parties in this action has long since expired. The cross-claimants have offered no excuse for waiting well over three years to file their cross-claims, nor can they. They ignore the fact that the identical claims that they now seek to assert in this case are already pending in the suits that they filed in state court. And they take a position on these cross-claims that is in direct contradiction to their position with respect to their claims against Cameron County. It is clear that these cross-claims have been brought strictly in reaction to the State's settlement with the Limitation Petitioners. Under these circumstances, the Court should exercise its discretion to dismiss the cross-claims as untimely, or to abstain from hearing them.

11

26.     More importantly, the cross-claims violate the State's Eleventh Amendment immunity, which has never been waived as respects the Other Claimants. Additionally, as the Other Claimants admit in their pleadings with regard to Cameron County, the TTCA is the only avenue through which claims can be made against the State, and the TTCA provides that such claims can be brought only in state court. Thus, if the cross-claims are asserted under the TTCA, they must be dismissed for lack of jurisdiction. And if they are purportedly brought under any other theory, they must be dismissed for failure to state a claim upon which relief can be granted, since the TTCA is the sole vehicle for recovery against the State. For these reasons as well, the cross-claims should be dismissed.

## **ARGUMENTS AND AUTHORITIES**

**I.      The Court Should Exercise its Discretion to Dismiss the Cross-claims**

27.     Knowing that the State had settled with the Limitation Petitioners and would soon be dismissed from the case, the Mireles Claimants and William E. Kimbrell chose to file their claims against the State styled as cross-claims, taking the position that technically, the State was still a party to the case. By doing this, they took advantage of the fact that Rule 13(g) of the Federal Rules of Civil Procedure does not set forth a time limit within which a party must present a cross-claim. Had these been styled as third-party demands, the way that the remaining Other Claimants styled their similar claims, Rule 14 (a) of the Federal Rules of Civil Procedure would have required the Mireles Claimants and William E. Kimbrell to seek and obtain leave of Court before filing their claims against the State.

28.     The attempt to end run the leave of Court requirement of Rule 14 (a) is to no avail, however, because even though Rule 13(g) prescribes no time limit for filing a

12

cross-claim, the decision whether to allow one is still a matter of judicial discretion. *Wright & Miller, Federal Practice & Procedure*: Civil 2d § 1431. No precise standards have been established for deciding timeliness issues regarding cross-claims; rather, courts balance the interests of judicial economy and fairness. *Id.*

29.     Here, the federal litigation has been literally pending since the day of the accident, some 3 years and 4 months ago. From the outset, Brown Water and ACBL made allegations that the condition of the bridge may have contributed to the allision. The Mireles Claimants and William E. Kimbrell had ample opportunity to try to assert their claims in federal court in a timely fashion, but did not do so. On the contrary, when the second anniversary of the allision approached, they filed their suits against the State in state court under the TTCA.

30.     All deadlines ever set by this Court for adding parties in this action have long since passed. The cross-claimants have not even attempted to offer an explanation for the tardy filing of their cross-claims, nor can they. Never before did the cross-claimants even hint that they might seek to file claims against the State in this federal court action. The only thing that has changed is that the State has reached a settlement with Brown Water and ACBL. Faced with the prospect of no longer having the State to help them discover and try their case against the Limitation Petitioners, the cross-claimants are attempting to force the State to remain as a participant in a case it has otherwise settled.

31.     The prejudice to the State if these claims are allowed to proceed is clear. Rather than being finished with and out of the federal court proceedings, the State will be forced to participate in the federal court case, with all the attendant time and expense, not to mention the continuing Eleventh Amendment and sovereign immunity issues. On the

other hand, cross-claimants will suffer no prejudice if the cross-claims are dismissed, for they have the identical claims preserved and pending in the state court actions. Under these circumstances, the State respectfully submits that the Court should exercise its discretion to dismiss the cross-claims as untimely.

## II.    Given the Pending State Court Suits, this Court Should Abstain From Considering the Cross-claims

32.    As is noted above, the Mireles Claimants and William E. Kimbrell filed suits against the State in Cameron County in September 2003, a year and three months before these cross-claims were filed. The state court actions, which are virtually identical to the cross-claims, remain pending.

33.    There are several circumstances in which it is appropriate for a federal court to abstain from exercising jurisdiction in favor of a state court proceeding. First, abstention has been held appropriate in cases presenting a federal constitutional issue that might be mooted by a state court determination of pertinent state law. *Colorado River Water Conservation District v. United States,* 424 U.S. 800, 814, 96 S.Ct. 1236, 1244, 47 L.Ed.2d 483 (1976), *reh'g denied,* 426 U.S. 912, 96 S.Ct. 2239, 48 L.Ed.2d 839 (1976). This is clearly such a case. As discussed below, the cross-claims violate the Eleventh Amendment. That federal constitutional issue can be entirely mooted by allowing the state court to determine the claims against the State, which turn on issues of Texas state law, namely the TTCA. Because the Eleventh Amendment issue can be avoided by dismissing the cross-claims in favor of the state court actions, this is a textbook situation in which abstention is appropriate.

34.     A second situation in which abstention is appropriate is where there are presented difficult questions of state law bearing on policy problems of substantial public import whose importance transcends the case at bar. *Colorado River,* 424 U.S. at 814, 96 S.Ct. at 1244. Again, this is such a case. The State of Texas is immune from suit absent legislative consent. *Federal Sign v. Texas Southern Univ.,* 951 S.W.2d 401, 405 (Tex. 1997). The State has full sovereign immunity both from suit and from liability, save to the extent of the partial waiver of sovereign immunity given by the TTCA, which must be strictly construed on the side of preserving immunity. *Gullen v. City of San Antonio,* 13 S.W.3d 428, 433 (Tex. App.- San Antonio 2000, pet. denied). In this case, there will be substantial issues regarding the TTCA's liability exemptions, exclusions and limitations, particularly including but not limited to issues regarding whether the claims at issue involve discretionary acts for which immunity has not been waived by the TTCA, and, in the unlikely event that the State is held liable under the TTCA, the manner in which the TTCA's limitation on the amount of the State's liability should be applied in the context of the Causeway allision. Although it is clear that the Causeway accident was a single occurrence and that the State's potential liability to all claimants is therefore subject to a single liability cap, the Other Claimants will presumably argue that there were multiple occurrences that should give rise to multiple caps. Clearly, this is the kind of issue contemplated by the *Colorado River* Court when it referred to issues of state law bearing on policy problems of substantial public import whose importance transcends the case then at bar. For this reason as well, abstention is appropriate.

35.     Abstention is also appropriate based on considerations of wise judicial administration. *Colorado River,* 424 U.S. 817-20, 96 S.Ct. 1236, 1246-48. When

15

identical suits are pending in state and federal courts, the order in which jurisdiction was obtained by the concurrent forums is a factor properly considered in this analysis. *Id., citing Pacific Live Stock Co. v. Oregon Water Bd.,* 241 U.S. 440, 447, 36 S.Ct. 637, 640, 60 L.Ed. 1084, 1096 (1916). Here, the Other Claimants elected to file their claims in state court in Cameron County some fifteen months before attempting to file them in this Court. This Court should abstain from considering the cross-claims so that the state courts that first obtained jurisdiction over the claims can decide them.[35]

### III.    The Eleventh Amendment Bars the Cross-claims

36.    The cross-claims are unquestionably suits against the State for Eleventh Amendment purposes, as they seek recovery of unlimited monetary damages from the State. The Eleventh Amendment prohibits suits against a state in federal court, regardless of the nature of the relief sought, unless the state unequivocally consents. *Pennhurst State Sch. & Hosp. v. Halderman,* 465 U.S. 89, 104 S.Ct. 900, 908, 79 L.Ed.2d 67 (1984); *Port Authority Trans-Hudson Corp. v. Feeney,* 495 U.S. 299, 304, 109 L.Ed.2d 264, 110 S.Ct. 1868 (1990); *Edelman v. Jordan,* 415 U.S. 651, 662-63, 39 L.Ed.2d 662, 94 S.Ct. 1347 (1974). Eleventh Amendment immunity extends to cross-claims and third-party demands, and principles of ancillary and pendent jurisdiction cannot override the Eleventh Amendment. *Oneida County, N.Y. v. Oneida Indian Nation of New York State,*

---

[35]    Giving deference to the order in which the suits were filed is consistent with the "first-filed rule" that is followed in the Fifth Circuit in deciding which court should maintain jurisdiction when the same suit is filed in different federal courts. *West Gulf Maritime Ass'n v. ILA Deep Sea Local 24,* 751 F. 2d 721, 730 (5th Cir. 1985); *Mann Manufacturing, Inc. v. Hortex, Inc.,* 439 F.2d 403, 407 (5th Cir. 1971). It is also consistent with the doctrine of abatement that prevails when the same suit is filed in different Texas state courts. *VE Corp. v. Ernst & Young,* 860 S.W.2d 83, 84 (Tex. 1993).

470 U.S. 226, 105 S.Ct. 1245, 1260-61, 84 L.Ed.2d 169, *reh'g den'd* 471 U.S. 1062, 85 L.Ed.2d 491, 105 S.Ct. 2173 (1985).

37.    There are only two exceptions to the fundamental constitutional rule of state sovereign immunity.  First, Congress may abrogate immunity pursuant to its enforcement powers under § 5 of the Fourteenth Amendment.  Second, a state may waive its sovereign immunity by consenting to suit.  *College Savs. Bank v. Fla. Prepaid Postsecondary Educ. Expense Bd.,* 527 U.S. 666, 119 S.Ct. 2219, 2223, 144 L.Ed.2d 605 (1999).

38.    As this Court noted in its September 30, 2004 ruling on the State's Original Immunity Motion, the first exception is inapplicable to this case, as there can be no serious argument that the Limitation Act was legislated under the Fourteenth Amendment enforcement powers (Rec. Doc. No. 271, p. 11).  The question here, therefore, is whether by filing an answer and claim in this action against the Limitation Petitioners, the State consented to be sued in federal court by the Other Claimants. This waiver issue must be decided in light of the repeated admonishments from the Supreme Court that the test for determining whether a state has waived its immunity from federal court jurisdiction is a stringent one.  *Atascadero State Hosp. v. Scanlon,* 473 U.S. 234, 238 & n. 1, 87 L.Ed.2d 171, 105 S.Ct. 3142 (1985).

39.    In the September 30, 2004 ruling, this Court held that by submitting a claim against the Limitation Petitioners, the State had waived its immunity against the counterclaims/cross-claims of Brown Water and ACBL.  (Rec. Doc. No. 271, p. 11-12). The Mireles Claimants and William E. Kimbrell now rely upon that ruling to argue that the State has also waived Eleventh Amendment immunity with respect to their cross-

17

claims.[36]  For all the reasons set forth in its briefs on the Original Immunity Motion, the State respectfully disagrees with the Court's decision regarding the waiver of immunity with respect to the counterclaims/cross-claims of the Limitation Petitioners.  But the Court need not re-visit that ruling, for the Other Claimants' reliance upon it is misplaced.

40.    The only claims at issue in the Original Immunity Motion were the counterclaims/cross-claims filed against the State by Brown Water and ACBL for contribution, indemnity, recoupment and set-off.  The Court noted in its September 30, 2004 ruling that because the State filed claims in the limitation action, it effectively occupied the position of a plaintiff as to the Limitation Petitioners.  While Brown Water and ACBL styled their claims against the State as both counterclaims and cross-claims, the claims were not cross-claims at all; they were actually counterclaims, just as a claim filed by a defendant against a plaintiff in a typical lawsuit is a counterclaim.  An essential difference between a cross-claim and a counterclaim is that cross-claims are suits against persons who had not, until the cross-claim was filed, been opponents of the person asserting the cross-claim.  Counterclaims, by contrast, are suits against persons who have already sued the person asserting the counterclaim.  *Baicker-McKee, Janssen & Corr, Federal Civil Rules Handbook,* Rule 13(g), p. 394 (West 2005).

41.    While the claims that are at issue in this motion are cross-claims, the claims that were at issue in the September 30, 2004 ruling, were counterclaims.  In fact, because those counterclaims arose from the same transaction or occurrence as did the State's claim, they were compulsory counterclaims under Fed. R. Civ. P. 13(a).

---

[36]  See Paragraph III of the Mireles Claimants' cross-claim (Rec. Doc. No. 339) and Paragraph III of William E. Kimbrell's cross-claim (Rec. Doc. No. 342)

42.     The distinctions between a cross-claim and a counterclaim, and between a compulsory counterclaim and a permissive counterclaim, are important here because the great weight of authority provides that where a state is found to have waived Eleventh Amendment immunity by voluntarily filing suit in federal court, that waiver extends only to compulsory counterclaims, and only if the counterclaimant asserts his or her claim defensively by way of recoupment or set-off to defeat or diminish the state's recovery. The waiver does not extend to cross-claims or to permissive counterclaims.  In fact, it does not even extend to a compulsory counterclaim asserted for the purpose of obtaining an affirmative judgment.  *In re Department of Energy Stripper Well Exemption Litigation,* 956 F.2d 282, 285 (Temp. Emer. Ct. App. 1992); *Woelffer v. Happy States of America, Inc.,* 626 F.Supp. 499, 502 (N.D. Ill. 1985); *Maryland Port Administration v. SS American Legend,* 453 F.Supp. 584 (D. Md. 1978); *Fort Fetterman v. South Carolina State Hwy. Dept.,* 261 F.2d 563, 569 (4th Cir. 1958); *Burgess v. M/V Tamano,* 382 F.Supp. 351, 355-56, n. 6 (D. Me. 1974), *vacated and remanded on other grounds,* 564 F.2d 964 (1st Cir. 1977), *cert. denied sub nom.  M/V Tamano v. United States,* 435 U.S. 941, 55 L.Ed.2d 537, 98 S.Ct. 1520 (1978); *In re Monongahela Rye Liquors, Inc.* 141 F.2d 864, 869 (3rd Cir. 1944); *Department of Transportation of State of Illinois v. American Commercial Lines, Inc.,* 350 F.Supp. 835, 837-838 (N.D. Ill. 1972); *State of Alaska v. O/S Lynn Kendall,* 310 F. Supp. 433 (D. Alaska 1970).

43.     These authorities make clear that even if the State's filing of a claim against the Limitation Petitioners could be deemed to have waived immunity with respect to the compulsory counterclaims of the Limitation Petitioners seeking recoupment and set-off against the State's claim, such a waiver would not extend to the cross-claims at issue

19

here.    The cross-claims of the Mireles Claimants and William E. Kimbrell are not counterclaims (much less compulsory counterclaims) and they do not seek recoupment or set-off against any claim that the State has asserted against the cross-claimants.    Rather, these are new claims seeking to hold the State liable and seeking affirmative relief in the form of money judgments to be paid from the State's treasury.    And most importantly, the cross-claims are brought against the State by parties that the State has not sued in federal court.    The State has done nothing to waive Eleventh Amendment immunity as to the Mireles Claimants and William E. Kimbrell, and their cross-claims must be dismissed for lack of jurisdiction.

44.    There is another reason why there can be no waiver of Eleventh Amendment immunity here.    The waiver argument is based on the answers and claims that were filed in this limitation action on behalf of the State by the Attorney General's office. But those answers and claims cannot operate as waivers of Eleventh Amendment immunity because the Texas Attorney General does not have the power to waive sovereign immunity.    Only the Texas legislature has that power.    *Terrazas v. Ramirez*, 829 S.W.2d 712 (Tex. 1992); *Department of Public Safety v. Great Southwestern Warehouses, Inc.*, 352 S.W.2d 493, 495 (Tex. Civ. App. Austin 1961, writ ref'd n.r.e.) [Attorney General may not waive sovereign immunity because it would be a usurpation of legislative prerogative in violation of the constitutional separation of powers].    Thus, the Attorney General could not have waived sovereign immunity merely by filing answers and claims in this litigation.    For this reason as well, the cross-claims are barred by the Eleventh Amendment.

**IV.   This Court Lacks Jurisdiction Over Claims Under the TTCA, Which is the Sole Avenue for Recovery Against the State**

45.     In its September 30, 2004 ruling, citing *Sherwinski v. Peterson*, 98 F.3d 849, 852 (5th Cir. 1996), this Court correctly noted that it lacks jurisdiction over actions pursuant to the TTCA because the statute permits suits against Texas only in Texas state court. Ironically, in their suggestions of lack of jurisdiction regarding the Cameron County issue, both the Mireles Claimants and William E. Kimbrell concede that "the waiver of Sovereign Immunity contained in the TTCA only permits suit in state court."[37]   That concession is fatal to the cross-claims, for although the Mireles Claimants and William E. Kimbrell try to have it both ways by alleging that their cross-claims are brought outside the TTCA, the fact is that the TTCA is the sole avenue for recovery against the State.

46.     The Texas Supreme Court has repeatedly held that the State is immune from liability for its torts absent a constitutional or statutory provision.  As was explained in *Guillory v. Port of Houston Authority,* 845 S.W.2d 812, 813 (1993):

> Since the [TTCA] was passed in 1969, we have repeatedly held that 'the waiver of governmental immunity is a matter addressed to the Legislature.' *Lowe v. Texas Tech Univ.,* 540 S.W.2d 297, 298 (Tex. 1976); *accord, State Dept. of Highways and Public Transp. v. Dopyera,* 834 S.W.2d 50, 53-54 (Tex.1992) ('Texas is immune from tort liability except as waived under the [TTCA]')' *LeLeaux v. Hamshire-Fannett Indep. Sch. Dist.,* 835 S.W.2d 49, 51 (Tex. 1992) ('The school district, a governmental unit, is immune from liability … unless that immunity has been waived by the TTCA'); *Mount Pleasant Indep. Sch. Dist. v. Lindburg,* 766 S.W.2d 208, 211 (Tex. 1989) ('Only when the legislature has clearly and explicitly waived the state's sovereign immunity may a cause of action accrue'); *Duhart v. State,* 610 S.W.2d 740, 742 (Tex. 1980).  Any waiver exposes governmental units to increased liability, the burden of which must eventually be born by the general populace.   In the [TTCA], the Legislature has undertaken to address the difficult conflicting policies associated with a waiver of governmental immunity.  We consider the Legislature better suited than this Court to try to accommodate these

---

[37]  Rec. Doc. No. 327 at p.2-3; Rec. Doc. No. 330 at p. 3.

policies, and therefore we continue to refuse to disturb the balance it has struck.

47.     The State's sovereign immunity extends to suits in admiralty. *Ex parte State of New York,* 256 U.S. 490, 41 S.Ct. 588, 65 L.Ed. 1057 (1921). *Fylipoy v. Gulf Stevedore Corp.,* 257 F.Supp. 166, 168 (S.D. Tex. 1966); *Lyons v. Texas A&M University,* 545 S.W.2d 56, 58 (Tex. Civ. App-Hous (14 Dist.) 1976). The Texas Supreme Court has squarely held that federal maritime law does not preempt state sovereign immunity and that the State has not waived its sovereign immunity to general maritime jurisdiction or federal maritime law. *Guillory,* 845 S.W.2d at 815; *Dopyera,* 834 S.W.2d at 53-54. Thus, the Other Claimants cannot escape the application of the TTCA by arguing that their claims against the State are maritime claims. Either the claims fall within the limited waiver of sovereign immunity set forth in the TTCA, or the State is immune from suit. Put another way, the only viable claims that the Other Claimants can possibly have against the State are through the TTCA, for all other claims are barred by sovereign immunity.

48.     Because the TTCA is a limited waiver of immunity, the State Legislature is free to limit damages and liability to the terms that it sees fit, even if those terms conflict with general maritime law. *Dopyera,* 834 S.W.2d at 54. Consequently, to the extent that the Other Claimants have any claims against the State, those claims are bound by the limitations and remedies provided in the TTCA. *Id.*

49.     Among the limitations that a state may place on a legislative waiver of its sovereign immunity is a limitation on where the state may be sued, for a state's interest in immunity encompasses not merely whether it may be sued, but where it may be sued. *Welch v. Department of Highways and Public Transportation,* 483 U.S. 468, 473, 107

22

S.Ct. 2941, 2946, 97 L.Ed.2d 389 (1987), *quoting Pennhurst,* 465 U.S. at 99, 104 S.Ct. at

907.   § 101.102(a) of the TTCA specifically provides that "[a] suit under this chapter

shall be brought in state court in the county in which the cause of action arose or a part of

the cause of action arises."   This provision was amended in 1987 to insert the phrase "in

state court."   As the Fifth Circuit noted in *Sherwinski v. Peterson,* 98 F.3d 849, 852 n. 9

(5th Cir. 1996), the only reasonable construction of the 1987 amendment is that the

legislative intent was to waive Texas' sovereign immunity only in state court. *Id.*

50.    Since the 1987 amendment to the TTCA and the decision in *Sherwinski,* the

federal courts have held that although Texas waives its sovereign immunity to a limited

extent for suits brought under the TTCA, the provisions of the TTCA do not waive the

State's sovereign immunity for actions brought in federal court. See, *Abravanel v. Day,*

2002 U.S. Dist. LEXIS 6195 (N.D. Tex. 2002); *Jones v. Bryant,* 246 F.Supp.2d 622 (S.D.

Tex. 2003); *Ross v. Texas Department of Criminal Justice,* 2001 U.S. Dist. LEXIS 17466

(N.D. Tex. 2001); and *United States v. Mack,* 48 F.Supp.2d 708 (S.D. Tex. 1999).[38]

51.    The only claims that the Other Claimants can possibly have against the State

relating to the Queen Isabella Causeway allision are those allowed under the TTCA.   This

Honorable Court has no jurisdiction over TTCA claims.   Thus, the cross-claims of the

Mireles Claimants and William E. Kimbrell must be dismissed for want of jurisdiction.[39]

---

[38]   There is one exception, *Jackson v. Sheriff of Ellis County,* 154 F.Supp.2d 917 (N.D. Tex. 2001). *Jackson,* however, cites cases that pre-date the 1987 amendment, does not discuss the impact of the amendment, and does not cite or discuss the Fifth Circuit's decision in *Sherwinski.* The State submits that *Jackson* is wrongly decided.

[39]   If the Mireles Claimants and William E. Kimbrell insist that their claims are not brought under the TTCA, then their claims must be dismissed under Fed. R. Civ. P. 12 (b) (6) for failure to state a claim upon which relief can be granted, since the State has absolute immunity from any claim not brought through the TTCA. *Dopyera,* 834 S.W.2d at 54.

## CONCLUSION

52.    The State has settled its differences with the Limitation Petitioners and should not be forced to remain a party to this action to defend eleventh hour cross-claims that were clearly filed in reaction to the settlement.    The Court should exercise its judicial discretion to dismiss the cross-claims as untimely, or to abstain from hearing the cross-claims in light of the already pending and identical state court actions filed against the State by these same claimants fifteen months ago.    More importantly, this Court lacks jurisdiction over the cross-claims because they are barred by the Eleventh Amendment and because they can arise only under the TTCA and can be brought only in state court. For these reasons as well, the cross-claims should be dismissed.

WHEREFORE, for the reasons set forth above, the State of Texas respectfully requests that the cross-claims filed against the State by the Mireles Claimants and by William E. Kimbrell be dismissed.

Respectfully submitted,
GREG ABBOTT
Attorney General of Texas

BARRY McBEE
First Assistant Attorney General

EDWARD D. BURBACH
Deputy Attorney General for Litigation

GRADY CLICK
Assistant Attorney General
Chief, Transportation Division

_by permission for_

JACK F. GILBERT
Assistant Attorney General
Attorney-in-Charge
Texas Bar No. 00786946
Federal Bar No. 16701

24

And Assistant Attorneys General

MICHAEL RATLIFF
Texas Bar No. 16564300
MARGIE MANZANO CORBETT
Texas Bar No. 24001927
Federal Bar No. 22121
Office of the Attorney General
Transportation Division
P.O. Box 12548
Austin, TX  78711-2548
Phone:  512.463.2004
Fax:       512.472.3855

AND, OF COUNSEL,
ADAMS AND REESE LLP

DARYL G. DURSUM
Texas Bar No. 06287900
Federal Bar No. 6198
4400 One Houston Center
1221 McKinney
Houston, TX  77010
Phone: 713.652.5151
Fax:    713.652-5152

MARK J. SPANSEL (La. Bar No. 12314)
EDWIN C. LAIZER, APLC (La. Bar No 17014)
4500 One Shell Square
New Orleans, LA  70139
Phone: 504.581.3234
Fax:    504.566.0210
*Attorneys for the State Of Texas*

## CERTIFICATE OF SERVICE

I hereby certify that a copy of the foregoing pleading has been served on all counsel of record by placing same in the United States mail, postage prepaid and properly addressed, this *2nd* day of February 2005.