Source: Legal > Cases - U.S. > Federal Court Cases, Combined
Terms: (texas tort claims act) or (101.102) and court (supreme or 5th or texas)  (Edit Search)
Focus: (texas tort claims act) and (101.102) and court (supreme or 5th or texas)  (Exit FOCUS™)

✔Select for FOCUS™ or Delivery

*2001 U.S. Dist. LEXIS 17466, ** 

MARY ROSS, Plaintiff, VS. THE TEXAS DEPARTMENT OF CRIMINAL JUSTICE, et al., Defendants.

Civil Action No. 3:98-CV-1344-D

UNITED STATES DISTRICT COURT FOR THE NORTHERN DISTRICT OF **TEXAS**, DALLAS DIVISION

2001 U.S. Dist. LEXIS 17466

October 25, 2001, Decided
October 25, 2001, Filed; October 26, 2001, Entered

**DISPOSITION:** [*1] Defendant's motions for summary judgment were granted. Plaintiff's claims against Warden Smith were dismissed, and all claims, except Title VII hostile work environment claim, against TDCJ were dismissed.

### CASE SUMMARY

**PROCEDURAL POSTURE:** Defendant employer, Texas Department of Criminal Justice, moved for summary judgment as to all her claims except plaintiff former employee's hostile work environment claim under Title VII of the Civil Rights Act of 1964, 42 U.S.C.S. § 2000e et seq., and defendant warden moved for summary judgment as to all her causes of action.

**OVERVIEW:** The former employee alleged intentional discrimination under Title VII of the Civil Rights Act of 1964, 42 U.S.C.S. § 2000e et seq., the Age Discrimination in Employment Act of 1967, 29 U.S.C.S. § 621 et seq., the Family and Medical Leave Act of 1993, 29 U.S.C.S. § 2601 et seq., Tex. Labor Code Ann. § 451.001, and the Americans with Disabilities Act of 1990, 42 U.S.C. § 12101 et seq., and 42 U.S.C.S. §§ 1983, 1985. She asserted discrimination based on her race and illness, in the form of disparate treatment, refusal to accommodate her schedule while undergoing chemotherapy, and finally termination of her employment. The court found the employer and warden were protected by U.S. Const. amend. XI sovereign immunity, at least from suit in federal court. The employee had not responded to their proffered nondiscriminatory reason for her treatment, and the employee had not shown she was replaced by a non-minority when she was terminated. None of her claims alleged direct (versus vicarious) liability on the part of the warden, so he was entitled to summary judgment on all claims.

**OUTCOME:** The motions for summary judgment were granted. All of the claims except the hostile work environment claim against the employer were dismissed.

**CORE TERMS:** summary judgment, sovereign immunity, Eleventh Amendment, hostile work environment, state agencies, disparate treatment, et seq, immunity, waive, nondiscriminatory reason, State Applications Act, Texas Tort Claims Act, prima facie case, entitled to summary judgment, offer evidence, conspiracy, pretextual, sick, genuine issue of material fact, individual liability, retroactive effect, express language, causes of action,

federal law, non-protected, overwhelming, injustice, exceeded, replaced, workers' compensation

## LexisNexis(R) Headnotes ♦ Hide Headnotes

Civil Procedure > Summary Judgment > Partial Summary Judgment
**HN1**± See U.S. Dist. Ct., N.D. Tex., R. 56.3(c).

Labor & Employment Law > Discrimination > Racial Discrimination > Other Laws
**HN2**± An individual who is not a plaintiff's employer cannot be held liable under Title VII of the Civil Rights Act of 1964, 42 U.S.C.S. § 2000e et seq. More Like This Headnote

Labor & Employment Law > Discrimination > Disparate Treatment
**HN3**± To prove disparate treatment in a Title VII discrimination case, a plaintiff must establish four elements as her prima facie case. She must establish that (1) she belongs to a protected group, (2) she was qualified for her position, (3) she was dismissed or suffered an adverse employment action, and (4) the defendant replaced her or sought to replace her with a similarly qualified person from a non-protected group. More Like This Headnote

Civil Procedure > Summary Judgment > Supporting Papers & Affidavits
**HN4**± A summary judgment nonmovant who does not respond to the motion is relegated to her unsworn pleadings, which do not constitute summary judgment evidence. More Like This Headnote

Civil Procedure > Summary Judgment > Supporting Papers & Affidavits
**HN5**± Fed. R. Civ. P. 56 does not impose a duty on the district court to sift through the record in search of evidence to support a party's opposition to summary judgment. More Like This Headnote

Labor & Employment Law > Discrimination > Disparate Treatment
**HN6**± Once a plaintiff establishes a prima facie case of disparate treatment, a rebuttable presumption of discrimination arises. The burden of production then shifts to the employer to articulate some legitimate, nondiscriminatory reason for the action. If the employer meets its burden, the plaintiff may establish discrimination by showing that the employer's proffered reason is pretextual. At the summary judgment stage, the plaintiff need only raise a genuine issue of material fact. More Like This Headnote

Civil Procedure > Summary Judgment > Summary Judgment Standard
**HN7**± It is error for the court to grant summary judgment on a ground not raised. More Like This Headnote

Constitutional Law > State Autonomy
**HN8**± The application of the Age Discrimination in Employment Act of 1967, 29 U.S.C.S. § 621 et seq., to states and state agencies is neither valid exercise of Congress' authority under § 5 of Fourteenth Amendment nor valid abrogation of Eleventh Amendment. Congress exceeded its § 5 authority and violated the Eleventh Amendment when authorizing private suits under the Americans with Disabilities Act of 1990, 42 U.S.C.S. § 12101 et seq., against states and state agencies. Congress exceeded its § 5 authority and violated Eleventh Amendment when authorizing private suits under the Family and Medical Leave Act of 1993, 29 U.S.C.S. § 2601, et seq., against states and state agencies. More Like This Headnote

Governments > Legislation > Effect & Operation > Prospective & Retrospective Operation
**HN9** When a court applies a rule of federal law to the parties before it, that rule is the controlling interpretation of federal law and must be given full retroactive effect in all cases still open on direct review and as to all events, regardless of whether such events predate or postdate our announcement of the rule. More Like This Headnote

Constitutional Law > State Autonomy
**HN10** A state does not waive sovereign immunity in federal court simply by waiving sovereign immunity and allowing suits against itself in its own courts. To waive Eleventh Amendment immunity, a state must specifically indicate an intention to subject itself to suits in federal court. More Like This Headnote

Constitutional Law > State Autonomy
**HN11** The Texas Supreme Court has held that the state legislature intended to waive sovereign immunity under Tex. Lab. Code. § 451.001, but this holding applies only to suits in a state court. Absent an explicit holding that the Texas Legislature intended to waive immunity in federal courts, the statute itself is the only source for determining such intent. More Like This Headnote

Constitutional Law > State Autonomy
**HN12** Tex. Lab. Code. § 451.001 does not contain the explicit waiver of sovereign immunity relating to federal courts that is necessary under the U.S. Const. amend. XI. More Like This Headnote

Constitutional Law > State Autonomy
**HN13** Absent the most express language or such overwhelming implications from the text as will leave no room for any other reasonable construction, there is no waiver of sovereign immunity. More Like This Headnote

Constitutional Law > State Autonomy
**HN14** The Texas State Applications Act explicitly declines to authorize causes of action or damages against the state or any agency beyond the actions and damages authorized by the **Texas Tort Claims Act.** More Like This Headnote

Constitutional Law > State Autonomy
**HN15** A state's constitutional interest in immunity encompasses not merely whether it may be sued, but where it may be sued. More Like This Headnote

Constitutional Law > Civil Rights Enforcement > Civil Rights Act of 1871 > Coverage
**HN16** Individual liability under 42 U.S.C.S. § 1983 may not be predicated on the vicarious liability doctrine of respondeat superior. Only the direct acts or omissions of government officials, not the acts of subordinates, will give rise to individual liability under § 1983. More Like This Headnote

Constitutional Law > Civil Rights Enforcement > Civil Rights Act of 1871 > Coverage
**HN17** To survive summary judgment as to a 42 U.S.C.S. § 1983 claim against an individual supervisor, a plaintiff must offer evidence of violations that the supervisor committed, not simply proof of violations by other employees who reported to him. More Like This Headnote

Constitutional Law > Equal Protection > Scope of Protection
**HN18** To survive summary judgment as to a 42 U.S.C.S. § 1985 claim, a plaintiff must offer evidence of (1) a conspiracy, (2) for the purpose of depriving a person of the

equal protection of the laws, and (3) an act in furtherance of the conspiracy, (4) that causes injury or deprivation of any right or privilege of a United States citizen.  More Like This Headnote

**COUNSEL:** For MARY ROSS, plaintiff: John P Knouse, Karen Ferris Knouse, Attorneys at Law, Knouse & Knouse, Dallas, TX USA.

For TEXAS DEPT OF CRIMINAL JUSTICE, JOSEPH NMI SMITH, defendants: Lori K Timms, Kevin Lashus, Attorneys at Law, Attorney General of Texas, Austin, TX USA.

**JUDGES:** SIDNEY A. FITZWATER, UNITED STATES DISTRICT JUDGE.

**OPINIONBY:** SIDNEY A. FITZWATER

**OPINION:** MEMORANDUM OPINION AND ORDER

Plaintiff Mary Ross ("Ross") sues defendants Texas Department of Criminal Justice ("TDCJ") and Warden Joseph Smith ("Warden Smith") n1 alleging intentional discrimination under Title VII of the Civil Rights Act of 1964 ("Title VII"), 42 U.S.C. § 2000e et seq., the Age Discrimination in Employment Act of 1967 ("ADEA"), 29 U.S.C. § 621 et seq., the Family and Medical Leave Act of 1993 ("FMLA"), 29 U.S.C. § 2601, et seq., § 451.001 of the Texas Labor Code, Tex. Labor Code Ann. § 451.001 (Vernon 1996), [*2] and the Americans with Disabilities Act of 1990 ("ADA"), 42 U.S.C. § 12101 et seq. Ross also contends that Warden Smith violated 42 U.S.C. § 1985 and that he is liable pursuant to 42 U.S.C. § 1983 for violating her right to be free to testify without retaliation and for discriminating against her based on her race. Warden Smith moves for summary judgment as to all her causes of action. TDCJ moves for summary judgment as to all her claims except her Title VII hostile work environment claim. n2 For the reasons that follow, the court grants the motions.

- - - - - - - - - - - - - - Footnotes - - - - - - - - - - - - - - -

n1 Ross sues Warden Smith by his title and surname. See First Am. Compl. at 1.

n2 Under N.D. Tex. Civ. R. 56.3(c), TDCJ should have styled its motion as a motion for partial summary judgment. Id. ("HN1 If a moving party seeks summary judgment on fewer than all claims or defenses, the motion must be styled as a motion for partial summary judgment.)

- - - - - - - - - - - End Footnotes - - - - - - - - - - - - -

I

Ross, an African-American, worked [*3] as an employee of TDCJ in the mailroom of the Hutchins State Jail Facility. Warden Smith served as her supervisor. She alleges a history of discrimination during her employment, including disparate treatment by other employees who expressed a desire not to work with African-Americans.

On September 3, 1996 Ross took FMLA leave to undergo surgery, after having been diagnosed with infiltrating duct cell carcinoma of the left breast. She alleges that TDCJ and Warden Smith required her to do so without pay, despite accrued vacation and sick time, and that she suffered financially. When Ross returned to work, she requested a schedule that would accommodate her need to undergo six months of intensive chemotherapy. Ross

alleges that Warden Smith denied her requested schedule and instead required that she exhaust vacation and sick time and work the 9:00 a.m. to 6:00 p.m. shift while attempting to schedule her chemotherapy treatments early in the morning. She maintains that she attempted to work this schedule despite the outside pressures of her treatment and the need to pick up her daughter from school each afternoon. Ross contends that these reasons caused her significant trouble fulfilling [*4] her assigned work hours. She relies on a series of incidents in 1996 and early 1997 to assert that TDCJ and Warden Smith were unwilling reasonably to accommodate her illness.

On March 4, 1997 Ross notified TDCJ that she would be absent the next day and on March 7 for medical reasons, and that she would call in on two other days, depending on the effects of her medication. During this time she received daily treatments. Ross alleges that despite this, Warden Smith reassigned her to the 8:00 a.m. to 5:00 p.m. shift, thereby creating a time conflict with her treatment schedule. She contends that her new work schedule resulted in several incidents in which she was forced to attempt to call in sick in order to attend doctor appointments and receive treatment. In the process, she was written up and received three months probation for using improper call-in procedures and for unprofessional conduct.

In August 1997 Ross suffered an injury on the job and was temporarily and totally disabled. She was immediately placed on workers' compensation. Ross alleges that on March 31, 1998, without prior notice, she was wrongfully discharged from her employment.

II

The court first considers Ross' [*5] Title VII claims for disparate treatment and hostile work environment. n3

- - - - - - - - - - - - - - - Footnotes - - - - - - - - - - - - - - - -

n3 Although it is unclear from her amended complaint whether Ross intends to sue Warden Smith in his individual or official capacity, he cannot be held liable individually under Title VII because he is not Ross' employer. See, e.g., Voskuil v. Environmental Health Ctr.-Dallas, 1997 U.S. Dist. LEXIS 23565, 1997 WL 527309, at *3 (N.D. Tex. Aug. 18, 1997) (Fitzwater, J.) (holding that HN2 individual who is not plaintiff's employer cannot be held liable under Title VII) (citing Grant v. Lone Star Co., 21 F.3d 649, 653 (5th Cir. 1994)). And if she is suing him in his official capacity, that is the same as a suit against TDCJ itself. See Will v. Mich. Dep't of State Police, 491 U.S. 58, 71, 105 L. Ed. 2d 45, 109 S. Ct. 2304 (1989); Ky. v. Graham, 473 U.S. 159, 165-66, 87 L. Ed. 2d 114, 105 S. Ct. 3099 (1985). Therefore, the court need only decide whether Ross can recover under Title VII against TDCJ. It need not address any Title VII claims that she purports to assert against Warden Smith in his individual capacity.

- - - - - - - - - - - End Footnotes- - - - - - - - - - - - - [*6]

A

In order HN3 to prove disparate treatment in a Title VII discrimination case, Ross must establish four elements as her *prima facie* case. She must establish that (1) she belongs to a protected group, *i.e.*, African-Americans, (2) she was qualified for her position, (3) she was dismissed or suffered an adverse employment action, and (4) TDCJ replaced her or sought to replace her with a similarly qualified person from a non-protected group. Ward v. Bechtel Corp., 102 F.3d 199, 202 (5th Cir. 1997) (citing McDonnell Douglas Corp. v. Green, 411 U.S. 792, 802, 36 L. Ed. 2d 668, 93 S. Ct. 1817 (1973)). TDCJ argues that Ross has offered no evidence to establish that she was replaced or that the person who took her place is a

member of a non-protected group. In her summary judgment response, Ross fails to address this argument. "^(HN4)A summary judgment nonmovant who does not respond to the motion is relegated to her unsworn pleadings, which do not constitute summary judgment evidence." Bookman v. Shubzda, 945 F. Supp. 999, 1002 (N.D. Tex. 1996) (Fitzwater, J.) (citing Solo Serve Corp. v. Westowne Assocs., 929 F.2d 160, 165 (5th Cir. 1991)). **[*7]** Ross has cited no summary judgment evidence that would permit a finding that she has met the fourth element of her *prima facie* case. The court is not required to comb the record in search of a genuine issue of material fact. "^(HN5)Rule 56 does not impose a duty on the district court to sift through the record in search of evidence to support a party's opposition to summary judgment." Doddy v. Oxy USA, Inc., 101 F.3d 448, 463 (5th Cir. 1996) (citing Jones v. Sheehan, Young & Culp, P.C., 82 F.3d 1334, 1338 (5th Cir. 1996)). The court thus grants summary judgment dismissing Ross' Title VII disparate treatment claim. n4

- - - - - - - - - - - - - - Footnotes - - - - - - - - - - - - - - - -

n4 Because TDCJ is entitled to summary judgment on this basis, the court need not address its other arguments.

- - - - - - - - - - - - End Footnotes- - - - - - - - - - - - - -

B

Alternatively, TDCJ has met its burden of producing evidence of a legitimate, nondiscriminatory reason for the employment action and Ross has failed to cite in her response any summary judgment evidence that would permit a reasonable trier of fact to find **[*8]** that the asserted reason is pretextual.

^(HN6)Once a plaintiff establishes a *prima facie* case, a rebuttable presumption of discrimination arises. Tex. Dep't of Comty. Affairs v. Burdine, 450 U.S. 248, 253-54, 67 L. Ed. 2d 207, 101 S. Ct. 1089 (1981). The burden of production then shifts to the employer to articulate some legitimate, nondiscriminatory reason for the action. Id. at 254. If the employer meets its burden, the plaintiff may establish discrimination by showing that the employer's proffered reason is pretextual. Id. at 256. At the summary judgment stage, the plaintiff need only raise a genuine issue of material fact. See Tutton v. Garland Indep. Sch. Dist., 733 F. Supp. 1113, 1116 (N.D. Tex. 1990) (Fitzwater, J.).

TDCJ has adduced evidence that Ross abandoned her job through her failure to return to active work status when required to do so. It has pointed to its rules regarding employees on workers' compensation and the process by which they are allowed, when absent from work for an extended period of time, to exhaust all compensatory and holiday time prior to being separated from employment. See TDCJ **[*9]** App. 51. TDCJ has also provided a letter sent to Ross on March 11, 1998 that reminded her of this rule and explained how she was to be separated from employment with TDCJ. The letter also advised Ross as to how to reapply for her job should she wish eventually to return to work. See id. at 35. TDCJ has cited Ross' lack of evidence that she ever attempted to do so. This evidence is sufficient to indicate a legitimate, nondiscriminatory reason for Ross' separation from employment, which means that the *prima facie* presumption of discrimination disappears. See Faruki v. Parsons S.I.P., Inc., 123 F.3d 315, 319 (5th Cir. 1997). Ross must thus produce some evidence indicating that the reason was pretextual in order for her claim to withstand summary judgment. By failing to respond to TDCJ's proffered nondiscriminatory reason, she has failed to do so.

C

In count one of her first amended complaint ("amended complaint"), Ross alleges in the alternative that TDCJ violated Title VII because she was subjected to a racially hostile work environment. See Am. Compl. at PP 44-49. TDCJ has not explicitly moved for summary judgment on this ground and the arguments on which [*10] it relies to support summary judgment as to the disparate treatment claim do not apply to the hostile work environment claim. Because it is well settled that <sup>HN7</sup> it is error for the court to grant summary judgment on a ground not raised, see John Deere Co. v. Am. Nat'l Bank, Stafford, 809 F.2d 1190, 1192 (5th Cir. 1987), the court declines to dismiss Ross' hostile work environment Title VII cause of action against TDCJ.

III

The court next considers Ross' claims against TDCJ under the ADEA, FMLA, § 451.001 of the Texas Labor Code, and the ADA.

A

TDCJ argues that it is entitled to sovereign immunity from suit as to the ADEA, FMLA, and the ADA under the Eleventh Amendment to the United States Constitution. Supreme Court precedent clearly supports TDCJ's position with respect to the ADEA and the ADA. See Kimel v. Fla. Bd. of Regents, 528 U.S. 62, 91, 145 L. Ed. 2d 522, 120 S. Ct. 631 (2000) (holding that <sup>HN8</sup> ADEA's application to states and state agencies was neither valid exercise of Congress' authority under § 5 of Fourteenth Amendment nor valid abrogation of Eleventh Amendment); Bd. of Trustees of Univ. of Ala. v. Garrett, 531 U.S. 356, 121 S. Ct. 955, 967-68, 148 L. Ed. 2d 866 (2001) [*11] (holding that Congress exceeded its § 5 authority and violated Eleventh Amendment when authorizing private ADA suits against states and state agencies). Fifth Circuit precedent clearly supports TDCJ's position with respect to the FMLA. See Kazmier v. Widmann, 225 F.3d 519, 529 (5th Cir. 2000) (holding that Congress exceeded its § 5 authority and violated Eleventh Amendment when authorizing private FMLA suits against states and state agencies). Ross' claims against TDCJ under the ADEA, FMLA, and the ADA are therefore dismissed.

In response to this recent line of sovereign immunity cases, Ross focuses on Garrett and urges the court to read the opinion prospectively, so that it does not affect her ADA claim. She cites Harper v. Virginia Department of Taxation, 509 U.S. 86, 125 L. Ed. 2d 74, 113 S. Ct. 2510 (1993), for the proposition that the Supreme Court's ruling in Garrett is a "new principle of law" that should be denied retroactive effect if doing so would avoid "injustice or hardship." P. Br. at 5. n5 Ross does not explain why the instant case is one in which there is a potential injustice that will result from applying Garrett retroactively. [*12] Moreover, she misapprehends Harper, in which the Court clearly stated the rule as to retroactivity:

> HN9
> When this Court applies a rule of federal law to the parties before it, that rule is the controlling interpretation of federal law and must be given full retroactive effect in all cases still open on direct review and as to all events, regardless of whether such events predate or postdate our announcement of the rule.

Harper, 509 U.S. 86, 97, 125 L. Ed. 2d 74, 113 S. Ct. 2510 (1993). The Court's holding in Garrett that states, and state agencies such as TDCJ, enjoy sovereign immunity from private ADA suits thus requires summary judgment in TDCJ's favor on Ross' ADA claim.

- - - - - - - - - - - - - Footnotes - - - - - - - - - - - - - - -

n5 Since Ross submitted identical responses to the separate motions of TDCJ and Warden Smith for summary judgment, the court cites them identically.

- - - - - - - - - - - End Footnotes- - - - - - - - - - - - - -

B

TDCJ also contends that it is entitled to sovereign immunity from a claim brought under § 451.001 of the Texas Labor Code. *HN10* A state does not waive sovereign [*13] immunity in federal court simply by waiving sovereign immunity and allowing suits against itself in its own courts. See Sherwinski v. Peterson, 98 F.3d 849, 851 (5th Cir. 1996). To waive Eleventh Amendment immunity, a state must specifically indicate an intention to subject itself to suits in federal court. See Port Auth. Trans-Hudson Corp. v. Feeney, 495 U.S. 299, 306, 110 S. Ct. 1868, 109 L. Ed. 2d 264 (1990). Section 451.001 contains no such indication, and therefore state agencies such as TDCJ may not be sued under the statute in federal court.

*HN11* The Texas Supreme Court has held that the state legislature intended to waive sovereign immunity under the statute, Kerrville State Hospital v. Fernandez, 28 S.W.3d 1 (Tex. 2000), but this holding applies only to suits in a Texas state court. Absent an explicit holding that the Texas Legislature intended to waive immunity in federal courts, the statute itself is the only source for determining such intent. *HN12* The statute does not, however, contain the explicit waiver relating to federal courts that is necessary under the United States Constitution. See Tex. Labor Code Ann. § 451.001 (Vernon 1996). *HN13* Absent "the most express language [*14] or . . . such overwhelming implications from the text as [will] leave no room for any other reasonable construction," Edelman v. Jordan, 415 U.S. 651, 673, 39 L. Ed. 2d 662, 94 S. Ct. 1347 (1974) (quoting Murray v. Wilson Distilling Co., 213 U.S. 151, 171, 53 L. Ed. 742, 29 S. Ct. 458 (1909)), there is no waiver. Here, neither express language nor overwhelming implications from the text is evident.

Moreover, the reasoning of the Texas Supreme Court's decision in Kerrville State Hospital impliedly limits the waiver to suits brought in state court. The Texas Supreme Court specifically held that "the State Applications Act waives state agencies' immunity under the Anti-Retaliation Law to the extent otherwise provided by the **Texas Tort Claims Act.**" Kerrville State Hosp., 28 S.W.3d at 2. The State Applications Act, not § 451.001 itself, is thus the source of the waiver. As the Texas Supreme Court recognized, *HN14* the State Applications Act explicitly declines to authorize "causes of action or damages against the state or any agency . . . beyond the actions and damages authorized by the **Texas Tort Claims Act.**" Id. at 4. [*15] The **Texas Tort Claims Act** ("TTCA") specifically rejects waiver in federal court and allows suits against the state and state agencies "only" in state court. See Tex. Civ. Prac. & Rem. Code Ann. § **101.102(a)** (Vernon 1997). Because an action against TDCJ in federal court is "beyond the actions" authorized by the TTCA, it is outside the bounds of the waiver of immunity in state court found in Kerrville State Hospital. "*HN15* A state's constitutional interest in immunity encompasses not merely whether it may be sued, but where it may be sued." Welch v. Dept. of Highways & Pub. Transp., 483 U.S. 468, 473, 97 L. Ed. 2d 389, 107 S. Ct. 2941 (1987) (quoting Pennhurst State Sch. & Hosp. v. Halderman, 465 U.S. 89, 99, 79 L. Ed. 2d 67, 104 S. Ct. 900 (1984)). Because Texas has not waived its immunity from suit under § 451.001 in federal court, the court grants TDCJ summary judgment on this claim. n6

- - - - - - - - - - - - - Footnotes - - - - - - - - - - - - - - -

n6 Ross' claims against Warden Smith in his official capacity under the ADEA, FMLA, § 451.001 of the Texas Labor Code, and the ADA are barred by the Eleventh Amendment. *See supra* note 3.

- - - - - - - - - - - - End Footnotes- - - - - - - - - - - - - **[*16]**

IV

The court next considers Ross' §§ 1983 and 1985 claims against Warden Smith. Warden Smith moves for summary judgment based on qualified immunity. He contends that Ross has failed to adduce any evidence that would permit the finding that he violated any clearly established rights in his actions toward Ross. He argues that even at a conclusory level, Ross merely alleges rights violations by other employees at TDCJ. Warden Smith moves for summary judgment on the § 1985 claim based on Ross' failure to adduce any evidence of the specific elements requisite to a conspiracy claim. He rests this argument on the same ground: that Ross merely alleges rights violations by other employees, but not by Warden Smith himself.

"It is firmly established that HN16 individual liability under § 1983 may not be predicated on the vicarious liability doctrine of *respondeat superior*. Only the direct acts or omissions of government officials, not the acts of subordinates, will give rise to individual liability under § 1983." *Coleman v. Houston Indep. School Dist.*, 113 F.3d 528, 534 (5th Cir. 1997) (citing *Polk County v. Dodson*, 454 U.S. 312, 325, 70 L. Ed. 2d 509, 102 S. Ct. 445 (1981)). **[*17]**

HN17 To survive summary judgment as to the § 1983 claim, Ross must offer evidence of violations that Warden Smith committed, not simply proof of violations by other employees who reported to him. In her response to Warden Smith's argument, Ross offers neither particularized allegations nor evidence of such conduct. Warden Smith is therefore entitled to summary judgment dismissing Ross' § 1983 claim against him.

HN18 To survive summary judgment as to the § 1985 claim, Ross must offer evidence of (1) a conspiracy, (2) for the purpose of depriving a person of the equal protection of the laws, and (3) an act in furtherance of the conspiracy, (4) that causes injury or deprivation of any right or privilege of a United States citizen. See *Hilliard v. Ferguson*, 30 F.3d 649, 652-53 (5th Cir. 1994). Ross has failed to offer evidence either that a conspiracy existed or that, if it did, Warden Smith was party to it. Warden Smith is therefore entitled to summary judgment dismissing Ross' § 1985 claim against him. n7

- - - - - - - - - - - - - Footnotes - - - - - - - - - - - - - - -

n7 In view of the reasoning on which the court relies, it need not consider Warden Smith's alternative arguments that he is entitled to qualified immunity and that Title VII preempts § 1983.

- - - - - - - - - - - - End Footnotes- - - - - - - - - - - - - **[*18]**

* * *

The court grants TDCJ's and Warden Smith's May 7, 2001 motions for summary judgment. Accordingly, Ross' claims against Warden Smith are dismissed, and all her claims, except her

Title VII hostile work environment claim, against TDCJ are dismissed.

**SO ORDERED.**

October 25, 2001.

SIDNEY A. FITZWATER

UNITED STATES DISTRICT JUDGE

Source: Legal > Cases - U.S. > **Federal Court Cases, Combined**
Terms: (texas tort claims act) or (101.102) and court (supreme or 5th or texas) (Edit Search)
Focus: **(texas tort claims act) and (101.102) and court (supreme or 5th or texas)** (Exit FOCUS™)
View: Full
Date/Time: Tuesday, January 25, 2005 - 8:12 PM EST

* Signal Legend:
● - Warning: Negative treatment is indicated
▲ - Caution: Possible negative treatment
◆ - Positive treatment is indicated
⬢ - Citing Refs. With Analysis Available
ⓘ - Citation information available
* Click on any *Shepard's* signal to *Shepardize®* that case.

About LexisNexis | Terms and Conditions

Copyright © 2005 LexisNexis, a division of Reed Elsevier Inc. All rights reserved.