```
 1              UNITED STATES DISTRICT COURT
                SOUTHERN DISTRICT OF TEXAS
 2                 BROWNSVILLE DIVISION

 3

 4
    IN RE THE COMPLAINT AND          *   CIVIL ACTION
 5  PETITION OF BROWN WATER          *
    TOWING I, INC., AS OWNER,        *   NO. B-01-157
 6  AND BROWN WATER MARINE           *
    SERVICE INC., AS BAREBOAT        *   c/w
 7  CHARTERERS, OF THE BROWN         *
    WATER V, ITS ENGINES, TACKLE,    *   CIVIL ACTION
 8  ETC., IN A CAUSE OF              *
    EXONERATION FROM OR              *   NO. B-02-004
 9  LIMITATION OF LIABILITY          *
                                     *
10  IN THE MATTER OF AMERICAN        *   Admiralty
    COMMERCIAL LINES AS OWNER        *
11  AND AMERICAN COMMERCIAL BARGE    *
    LINE LLC AS CHARTERER OF THE     *
12  BARGES NM-315, VLB-9182,         *
    ACL-9993B, VLB-9173, PRAYING     *
13  FOR EXONERATION FOR AND/OR       *
    LIMITATION OF LIABILITY          *
14                                   *
                                     *
15  *  *  *  *  *  *  *  *  *  *  *

16

17

18       Transcript of the videotaped deposition of
    PETER L. KAZUNAS, ▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓, Louisville,
19  Kentucky 40245, taken at the Seelbach Hilton, 500
    South 4th Street, Louisville, Kentucky, on Tuesday,
20  the 14th day of January, 2003.

21

22

23                                    COPY

24

25                                        EXHIBIT 36
```

601 POYDRAS STREET, SUITE 2003          Gaudet, Kaiser & Pepper          7967 OFFICE PARK BLVD.
NEW ORLEANS, LOUISIANA 70130                                             BATON ROUGE, LOUISIANA 70809
PHONE (504) 525-9100                    Toll Free 1-888-525-9100         PHONE (225) 926-9411
FAX (504) 525-9109                                                       FAX (225) 926-9762

```
 1   APPEARANCES:

 2          WATTS & HEARD
            (By:  Mikal C. Watts, Esquire
 3                     - and -
             Ray R. Marchan, Esquire)
 4          1926 East Elizabeth Street
            Brownsville, Texas  78520-4933
 5               (Attorneys for Brigete Goza,
                  Gustavo Morales, Jacqueline
 6                Paddock, and Lydia Zamora)

 7

            SCHIRRMEISTER AJAMIE
 8          (By:  S. Mark Strawn, Esquire)
            Suite 2150
 9          Pennzoil Place - South Tower
            711 Louisiana
10          Houston, Texas  77002
                 (Attorneys for the Estate of
11                Julio Morales, et al)

12

            GAUNTT & KRUPPSTADT
13          (By:  Catherine Palmore, Esquire)
            Suite C
14          9004 Forest Crossing Drive
            The Woodlands, Texas  77381
15               (Attorneys for the Estate of
                  Stvan Rivas, et al)

16


17          KITTLEMAN, THOMAS, RAMIREZ
            & GONZALES
18          (By:  Dale Kasofsky, Esquire)
            4900-B North 10th Street
19          Post Office Box 1416
            McAllen, Texas  78505
20               (Attorneys for the Mata
                  Claimants)
21
            ROYSTON, RAYZOR, VICKERY & WILLIAMS
22          (By:  Jack Partridge, Esquire)
            1700 Wilson Plaza West
23          606 North Carancahua
            Corpus Christi, Texas 78476
24               (Attorneys for Petitioners,
                  Brown Water Marine Service,
25                Inc., et al)
```

```
 1   APPEARANCES (cont.)

 2        JONES, WALKER, WAECHTER, POITEVENT,
          CARRERE & DENEGRE
 3        (By:  Glenn G. Goodier, Esquire)
          52nd Floor
 4        Bank One Center
          201 St. Charles Avenue
 5        New Orleans, Louisiana   70170

 6

          ADAMS AND REESE
 7        (By: Edwin C. Laizer, Esquire)
          Suite 4500
 8        One Shell Square
          701 Poydras Street
 9        New Orleans, Louisiana   70139

10                   - and -

11        OFFICE OF THE ATTORNEY GENERAL
          TRANSPORTATION DIVISION
12        (By:  Michael Ratliff, Esquire)
          Post Office Box 12548
13        Austin, Texas   78711-2548
               (Attorneys for the State of
14                Texas)

15

          WILLIAMS BAILEY
16        (By:  J. Mark Smith, Esquire)
          Suite 600
17        8441 Gulf Freeway
          Houston, Texas   77017-5001
18             (Attorneys for Hector Martinez,
                  Sr.)

19

20

21

22

23

24

25
```

```
 1   VIDEOGRAPHER:

 2

 3        Justin Lynch
          United Video Production Company
 4        Suite 205
          418 Peoples Street
 5        Corpus Christi, Texas   78401

 6

 7

 8
     REPORTED BY:
 9

10

11        Betty Venturella, CCR
          Certified Court Reporter
12        State of Louisiana

13

14

15

16

17

18

19

20

21

22

23

24

25
```

1  would have also communicated that information to
2  our operations group as well as the Senior
3  Vice-President at that time.
4       Q.   Now, you said, I could have made that
5  decision as long as the insurance was in place.  I
6  take it there's an ACBL policy that there's a
7  minimum amount of insurance that a third party
8  carrier has to have?
9       A.   There's a minimum amount.  I can't
10 recite what it is, but there are insurance
11 requirements that we would want towers to have in
12 place.
13      Q.   Okay.  What are the other minimum
14 requirements that a third party tower must meet in
15 order to be able to get on the list of approved
16 third party towers?
17      A.   There's not a list of approved third
18 party towers available, but experience with that
19 tower.
20      Q.   Experience with the tower.  So how does
21 somebody new get on the list if you don't have any
22 experience with them?
23      A.   I may not have knowledge of experience,
24 but someone in our operating group may know of the
25 individual.

601 POYDRAS STREET, SUITE 2003
NEW ORLEANS, LOUISIANA 70130
PHONE (504) 525-9100
FAX (504) 525-9109

Gaudet, Kaiser & Pepper
Toll Free 1-888-525-9100

7967 OFFICE PARK BLVD.
BATON ROUGE, LOUISIANA 70809
PHONE (225) 926-9411
FAX (225) 926-9762

1    A.    I wouldn't know.

2    Q.    Okay. You're just not aware of that?

3    A.    I wouldn't know if they did or didn't.

4    Q.    Fair enough. Now, second source of
5  information. March of 2000, you have just had your
6  title changed, although not your responsibilities,
7  your title has changed from Assistant
8  Vice-President of Distribution Services to the
9  Assistant Vice-President of Logistic Services,
10 correct?

11   A.    Correct.

12   Q.    And on March the 29th, you drafted a
13 letter that has been marked as Exhibit-3 to Mr.
14 Hoessle's deposition.

15      BY MR. GOODIER:

16           What is the number there?

17      EXAMINATION BY MR. WATTS:

18   Q.    1189. It's dated March the 29th of
19 2000. You wrote a letter to Steven Mosher,
20 Vice-President of Operations of Brown Water Marine.
21 Do you see that?

22   A.    Correct.

23   Q.    All right. Do you recall writing this
24 letter?

25   A.    Yes.

601 POYDRAS STREET, SUITE 2003
NEW ORLEANS, LOUISIANA 70130
PHONE (504) 525-9100
FAX (504) 525-9109

Gaudet, Kaiser & Pepper
Toll Free 1-888-525-9100

7967 OFFICE PARK BLVD.
BATON ROUGE, LOUISIANA 70809
PHONE (225) 926-9411
FAX (225) 926-9762

```
 1        Q.    Now, the letter arose from a grounding
 2   incident that ACBL felt it had not been timely
 3   informed about; is that right?
 4        A.    Correct.
 5        Q.    Okay.  And as a result of the failure
 6   of Brown Water to timely inform ACBL of this
 7   incident, you ordered an audit of Brown Water
 8   Marine, correct?
 9        A.    Brown Water Marine had not had any --
10   we had been doing business with Brown Water Marine
11   for some time.  This was an incident where they did
12   not notify us when a boat stopped.  The grounding
13   was not significant.  There was notification that a
14   boat had stopped for a particular reason, any
15   reason.  I thought it would be good for us to do a
16   vendor audit on this company, since we had not done
17   one that I'm aware of to review their operations.
18        Q.    Okay.  Is the answer to my question
19   then yes, that this was the precipitating event, in
20   other words, the failure to inform ACBL of the
21   grounding incident is what caused you to say, this
22   would be a good time to do an audit of this
23   company, we have an audit to perform?
24        A.    Yes.
25        Q.    Okay.  Fair enough.  In fact, on the
```

1    Q.    And so, for example, Mr. Watts asked
2 you some questions about whether anybody had ever
3 checked on Brown Water's Coast Guard record, and
4 you told us that you're not aware of anybody having
5 done that, correct?
6    A.    No.  I'm not aware of anybody at ACBL
7 doing that, nor would we have in the logistics
8 function do that.  They have been providing a good
9 service for us for prior to my arrival within that
10 logistics group, and they have been with us for
11 sometime and very experienced in that area.  We
12 used them as well as other carriers like ourself.
13    Q.    So the answer to the question is,
14 you're not aware of anybody having checked on their
15 Coast Guard record?
16    A.    I'm not aware of anybody checking on
17 the Coast Guard record.
18    Q.    Are you aware of anybody having checked
19 on whether they had a safety management system in
20 place?
21    A.    They have -- the vendor audit that was
22 done by Marine Resources would have reviewed
23 aspects of their safety department and procedures.
24 I believe some of the bullet points within that
25 audit referred to their safety procedures.  That

601 POYDRAS STREET, SUITE 2003
NEW ORLEANS, LOUISIANA 70130
PHONE (504) 525-9100
FAX (504) 525-9109

Gaudet, Kaiser & Pepper
Toll Free 1-888-525-9100

7967 OFFICE PARK BLVD.
BATON ROUGE, LOUISIANA 70809
PHONE (225) 926-9411
FAX (225) 926-9762

```
 1   2002, we were using Brown Water.
 2        Q.   I want to talk to you for just a second
 3   about the audit that was done on Brown Water, which
 4   was done back in March of 2000.  You told us that
 5   the precipitating event for that, so to speak, was
 6   this grounding incident and the lack of timely
 7   notice?
 8        A.   The event, the issue that caused the
 9   audit was the lack of notification, not the
10   grounding incident, per se.
11        Q.   And that's because you expected them to
12   give you notice when the barge stopped?
13        A.   We require our towing vendors to notify
14   ACBL when their boats stop for an extended period
15   of time, typically two or three hours or longer, we
16   require them to notify us of that occurrence.  The
17   reason we ask them to notify us of that occurrence
18   is because our customers want to know -- some of
19   our customers want to know that information.  Plus,
20   that information can also affect the logistics
21   planning.  If I have a boat on a -- a barge on a
22   particular boat, and it's supposed -- and we're
23   anticipating it's going to be there, you know, X
24   number of days, hours ahead, and I'm planning
25   another boat to pick it up and it's not going to
```

601 POYDRAS STREET, SUITE 2003
NEW ORLEANS, LOUISIANA 70130
PHONE (504) 525-9100
FAX (504) 525-9109

Gaudet, Kaiser & Pepper
Toll Free 1-888-525-9100

7967 OFFICE PARK BLVD.
BATON ROUGE, LOUISIANA 70809
PHONE (225) 926-9411
FAX (225) 926-9762