# THE
# LAW OF ADMIRALTY

SECOND EDITION

By

GRANT GILMORE

Sterling Professor of Law, Yale Law School

and

CHARLES L. BLACK, Jr.

Henry R. Luce Professor of Jurisprudence
Yale Law School

Mineola, New York
THE FOUNDATION PRESS, INC.
1975

EXHIBIT 43

conduct, where they are clearly established by proof and are not in conflict with the Rules or other requirements of positive law. Since the conditions that call such customs into being are typically local in character, having reference to characteristics of particular channels and harbors, they are usually found in waters covered by the Inland or Western Rivers Rules, rather than by the International Rules.

Thus, in Union Oil Co. of California v. Tug Mary Malloy,[107d] the Fifth Circuit gave the effect of law (by faulting a flotilla that did not obey) to the long-standing custom that tugs with tow hold up to let tankers enter the Sabine-Neches Canal.

In The Luzerne,[108] the Second Circuit Court of Appeals upheld a custom giving right of way to a westbound vessel in the East River over a vessel coming out of the Harlem River. And at Hell Gate, on flood tide, a custom has been given effect by which a starboard to starboard passing is executed, rather than the port to port passing required by the Inland Rules.[109] In the latter case, the Court held that the requirements of safety justified departure from the apparently clear mandate of the Rules; the case need not be taken as overstepping the principle that custom may not contradict the Rules, for the custom itself could be regarded as an instance of the application of the Special Circumstances Rule (Rule 27) discussed in § 7–11, *supra*.[110]

### Towage in Collision Cases

§ 7–14. The towing situation is one presenting special problems, both practical and legal.[110a] On the practical side, the combined tug and tow constitute a far less maneuverable unit than the single powered vessel, and the presence of the tow makes close maneuvering more problematic for other vessels. For these reasons, as we have seen, tugs with a tow are required by the Rules to be marked with special lights, and to sound special signals in fog.[111] Failure to comply with any of these Rules is a serious fault.

In applying the steering and sailing Rules to tug and tow, it becomes necessary to decide just what is the "vessel" that may be "privileged" or "burdened," and that is in general charged with obeying the Rules. It is clearly settled that the flotilla as a whole, comprising tug and tow, is a unit, and must comply with the Rules as a unit.[112] Thus, an entire flotilla consisting of powered tug and her

---

107d. Union Oil Co. of California v. Tug Mary Malloy, 414 F.2d 669, 1969 A.M.C. 2254 (5th Cir. 1969).

108. 204 F. 981 (2d Cir. 1913).

109. The Transfer No. 21, 248 F. 459 (2d Cir. 1917).

110. On the status of custom in general, and the Mississippi River custom of "running the bends," see The John D. Rockefeller, 272 F. 67 (4th Cir. 1921), certiorari denied 256 U.S. 693, 41 S.Ct. 535 (1921).

110a. See Parks, Law of Tug, Tow and Pilotage (1971).

111. Rules 3, 15 [c] (v).

112. The Gladys, 144 F. 653 (2d Cir. 1906). This was an extreme case—a flotilla of tug and three barges, 4000 feet long in all.