United States District Court
Southern District of Texas
FILED

MAR 2 5 2005

Michael N. Milby
Clerk of Court

**IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF TEXAS
BROWNSVILLE DIVISION**

| | |
|---|---|
| **IN RE THE COMPLAINT AND PETITION OF BROWN WATER TOWING I, INC., AS OWNER, AND BROWN WATER MARINE SERVICE, INC., AS BAREBOAT CHARTERER OF THE BROWN WATER V, ITS ENGINES, TACKLE, ETC., IN A CAUSE OF EXONERATION FROM OR LIMITATION OF LIABILITY** | **C. A. NO. B-01-157 Admiralty**<br><br>**Consolidated with** |
| **IN RE THE COMPLAINT AND PETITION OF AMERICAN COMMERCIAL LINES, LLC AS OWNER, AND AMERICAN COMMERCIAL BARGE LINES, LLC AS CHARTERER OF THE BARGES NM-315, VLB-9182, ACL-9933B, VLB-9173, IN A CAUSE OF EXONERATION FROM OR LIMITATION OF LIABILITY** | **C. A. NO. B-02-004 Admiralty**<br><br>**Consolidated with** |
| **IN RE THE COMPLAINT AND PETITION OF DEERE CREDIT, INC., (FORMERLY SENSTAR FINANCE COMPANY), AS OWNER OF THE BARGE NM-315, AND STATE STREET BANK AND TRUST COMPANY OF CONNECTICUT, NATIONAL ASSOCIATION, AS OWNER TRUSTEE OF THE BARGE ACL-9933B AND NOT IN ITS INDIVIDUAL CAPACITY, AND GENERAL ELECTRIC CAPITAL CORPORATION, AS BENEFICIAL OWNER OF THE BARGE ACL-9933B, PRAYING FOR EXONERATION FROM AND/OR LIMITATION OF LIABILITY** | **C. A. NO. B-02-125 Admiralty** |

**MEMORANDUM OF PETITIONERS IN OPPOSITION
TO MOTION FOR SANCTIONS OF THIRD PARTY DEFENDANT
A.G. HILL POWER, INC. A/K/A JHB ENTERPRISES, INC.**

**MAY IT PLEASE THE COURT:**

# TABLE OF CONTENTS

**Page**

TABLE OF AUTHORITIES .......... ii

SUMMARY OF ARGUMENT .......... 1

BACKGROUND TO MOTION .......... 2

I. RULE 11 WAS NOT VIOLATED BY PETITIONERS. .......... 6

II. PETITIONERS AGREED TO DISMISS THEIR THIRD-PARTY COMPLAINTAND ALSO COMPLIED WITH THE 21 DAY "SAFE HARBOR" OF RULE 11. .......... 8

III. THIRD PARTY DEFENDANT HAS NOT SHOWN THAT IT IS ENTITLED TO AN AWARD OF FEES AND THE AMOUNTS CLAIMED AS EXCESSIVE .......... 10

IV. CASES RELIED UPON BY THIRD PARTY DEFENDANTS ARE INAPPOSITE. .......... 12

CONCLUSION .......... 14

{N1266845.1}

# TABLE OF AUTHORITIES

**Page**

***Cases***

*Alberti v. Klevenhagen*, 896 F.2d 927 (5th Cir.), *vacated in part on other grounds*, 903 F.2d 352 (5th Cir. 1990) ........ 11

*Bode v. United States*, 919 F.2d 1044 (5th Cir. 1990) ........ 10

*Delgado v. Methodist Hospital*, 936 S.W.2d 479 (Ct. App. Houston (14th Dist) 1996) ........ 13

*Estate of Barrett v. United States*, 337 F.Supp.2d 370 (D. Mass. 2004) ........ 8

*Fender v. Zapata Partnership, Ltd.*, 12 F.3d 480 (5th Cir. 1994) ........ 10

*Golizio v. Holting, Inc.*, 1997 WL 180385 (E.D. La. 1997) ........ 7

*Heidtman v. County of El Paso*, 171 F.3d 1038 (5th Cir. 1999) ........ 10

*Hensley v. Eckerhart*, 461 U.S. 424, 103 S.Ct. 1933 (1983) ........ 10

*Hockley v. Shawn Enterprises Ltd. Partnership*, 19 F.Supp. 2d 235 (D.N.J. 1998) ........ 9

*Johnson v. Georgia Highway Express, Inc.*, 488 F.2d 714 (5th Cir. 1974) ........ 10

*Louisiana Power & Light Co. v. Kellstrom*, 50 F.3d 319 (5th Cir.), *cert. denied*, 516 U.S. 862 (1995) ........ 10,11

*Miller v. Armogida*, 877 S.W.2d 361 (Tex. App. Houston (1st Dist.) 1994) ........ 13

*Morroni v. Gunderson*, 169 F.R.D. 168 (M.D. Fl. 1996) ........ 9

*Ortho Parmaceutical Corp. v. Sona Distributors*, 840 F.2d 1512 (5th Cir. 1988) ........ 12,13

*Photocircuits Corp. v. Marathon Agents, Inc.*, 162 F.R.D. 449 (E.D.N.Y. 1995) ........ 9

*Reed v. Iowa Marine Repair Corp.*, 16 F.3d 82 (5th Cir. 1994) ........ 8

*Shipes v. Trinity Industries*, 987 F.2d 311 (5th Cir. 1993) ........ 10

*Smith v. Our Lady of the Lake Hospital*, 960 F.2d 439 (5th Cir. 1992) ........ 6,7,8,12

*Thomas v. General Capital Sec. Servs.*, 836 F.2d 866 (5th Cir. 1998) ........ 6,7

***Rules***

Fed. R. Civ. P. 11 .......... *passim*

Fed. R. Civ. P. 26 .......... 8

Fed. R. Civ. P. 41 .......... 1, 12

***Other Authorities***

Advisory Committee Notes to Fed. R. Civ. P. 11 .......... 9,10,11

28 U.S.C. §1927 .......... 12

**SUMMARY OF ARGUMENT**

Petitioners and Third Party Plaintiffs, American Commercial Lines LLC, American Commercial Barge Line LLC, Deere Credit, Inc. (formerly Senstar Finance Company), State Street Bank and Trust Company of Connecticut, National Association, and General Electric Capital Corporation (hereafter "Petitioners'), respectfully request that the Court deny the Motion for Sanctions of Third Party Defendant A.G. Hill Power, Inc. a/k/a JHB Enterprises, Inc. A proposed Order is attached hereto as Exhibit 16. Third Party Defendant's motion is baseless in law and in fact and it is respectfully submitted that Petitioners and their counsel did not engage in any sanctionable conduct and that the filing of the motion for sanctions after we agreed to dismiss the claim in question violates the "safe harbor" provision of Fed. R. Civ. P. 11(b). As discussed below, the record reflects that we agreed to dismiss the Third Party Complaint against A.G. Hill Power, Inc. a/k/a JHB Enterprises, Inc. upon being furnished certain information, which we requested from Mr. Crago on December 2, 2004, which showed that his client had sold his business prior to the Causeway incident. The filing of a Motion for Summary Judgment and whatever legal work Mr. Crago claims to have done was not attributable to Petitioners as we had previously agreed to dismiss the Third Party Complaint and forwarded various drafts of a Joint Motion to Dismiss the Third Party Complaint, along with a proposed order. Fed. R. Civ. P. 41 requires the written consent of JHB Enterprises, Inc. a/k/a A.G. Hill Power, Inc. to dismiss it from this litigation since it has filed an Answer to the Third Party Complaint. Mr. Crago refused to sign the Joint Motion to Dismiss, despite Petitioners making all revisions requested by Mr. Crago, until March 3, 2005. In the meantime, Petitioners filed and served their own Motion to Dismiss the Third Party Complaint, together with a proposed order of dismissal. (R. Doc. 371) Then, on March 11, 2005, Petitioners filed a Joint Motion to Dismiss the Third Party Complaint

(R. Doc. 376) after receiving same from opposing counsel, together with a Supplemental Memorandum (R. Doc. 377).

**BACKGROUND TO MOTION**

As the Court is aware, many of the Claimants in Limitation ("Claimants") initiated litigation in Texas state court against various parties arising out of the September 15, 2001 incident. In the state court litigation, the Claimants named, among others, A.G. Hill Power, Inc. a/k/a JHB Enterprises, Inc. as a Defendant. In order to have all parties before the federal court in a single proceeding, by separate motions filed on April 7, 2004 and April 8, 2004, the Brown Water Marine/Brown Water Towing interests (R. Doc. 246) and the ACBL/ACL interests (R. Doc. 247) filed motions for leave to assert third party complaints against A.G. Hill Power, Inc. a/k/a JHB Enterprises. By order entered October 25, 2004 (R. Doc. 285), the Court granted said motions. Investigations by various parties and/or their counsel revealed that A. G. Hill was under contract with Cameron County to maintain the lights on the Causeway.

On November 9, 2004, Petitioners obtained a summons and served it upon the registered agent for service of process of Third Party Defendant. Records of the Texas Secretary of State reflect that A.G. Hill Power, Inc. is the prior name of JHB Enterprises, Inc. and that JHB Enterprises, Inc. is a Texas corporation whose registered agent for service of process is Mr. Jack H. Bennett at an address in Corpus Christi, Texas. An Answer was filed by Third Party Defendant dated November 19, 2004 which states: "A.G. Hill Power, Inc., a/k/a JHB Enterprises, Inc., sold its business on October 14, 1996, prior to the accident made the basis of Plaintiff's claim and at the time of the accident was not responsible for maintaining any lights on or around the Queen Isabella Causeway. The business was sold to First South Utility Construction Inc., d/b/a A.G. Hill Power, Inc. currently represented in the referenced state court actions by Attorney Augustine Riveria." (R. Doc. 293 at p. 2, para. 4.)

On December 2, 2004, counsel for Petitioners wrote counsel for Third Party Defendant and requested that he please furnish us with more particular information to confirm that his client had sold the business prior to the Causeway incident as is stated in the Answer. (Exhibit 1.) On January 14, 2005, counsel replied and forwarded a copy of an Asset Purchase Agreement and other information. Mr. Crago's letter of January 14, 2005 is attached as Exhibit 4 and states, part: **"I am hereby requesting that you non-suit my client within 30 days. In the event that you do not, I have been instructed to seek reimbursement of attorney's fees and sanctions and all other remedies as a result of your frivolous pleadings."** (*See* Exhibit 2.) (emphasis added.)

On February 2, 2005, counsel for Petitioners advised counsel for Third Party Defendant that we would dismiss his client based upon the representations in his letter of January 14, 2005 that his client was not a party to any contract which required him to perform light or maintenance work on the Causeway and the supporting documents attached to that letter. (*See* Exhibit 3.) Our February 2, 2005 letter, Exhibit 5, also forwarded a proposed joint motion and order of dismissal, which includes a signature space for Mr. Crago confirming his "no objection" as his required by Rule 41(a).

We heard nothing further from Mr. Crago and 9 days later, on February 11, 2005, we sent a letter by facsimile to Mr. Crago to follow-up on the status of the proposed motion to dismiss. (Exhibit 4.) On February 14, 2005, correspondence was received via U.S. Mail from Mr. Crago, dated February 9 and February 10, 2005, copies of which are attached as Exhibits 5 and 6. Mr. Crago's letter did not state that he would sign the proposed motion to dismiss "no objection." The letters of February 9 and 10, state in part, "We have reviewed your joint motion to dismiss third party complaint … and understand what it says. Of course, you can move to dismiss us as

we never should have been in the case anyway. We have no problem with each party bearing their taxable court costs." (Exhibits 5 and 6.) Counsel requested that we forward his client a check in the amount of $6,181.70, representing legal fees and costs that his client allegedly incurred for counsel "to do the legal work necessary to prepare our motion for summary judgment and anticipated motion for sanctions." (Exhibit 6.) Counsel's request for sanctions is absurd as we promptly agreed to dismiss our Third Party Complaint within 30 days as set out in his letter of January 14, 2005. (*See* Exhibit 2 and our response thereto, Exhibit 3.)

On February 14, 2005, we received correspondence from counsel for Third Party Defendant dated February 9, 2005 (envelope postmarked February 10, 2005) forwarding a Motion for Sanctions, Supporting Memorandum and Related Documents with a statement that he was serving the motion at least 21 days before filing with the Court. (Exhibit 7.) We replied on February 14, 2005 indicating that we previously agreed to dismiss his client and had acted promptly. (Exhibit 8.) We also advised counsel that we could not recommend to our client that they pay any legal fee and further "If you do not agree to bear your own attorneys' fees and costs as to our motion to dismiss your client, please advise us immediately." (Exhibit 8.) We federal expressed to counsel the original Joint Motion and Order of Dismissal for him to sign and return to us so that we could forward it with the Court. (Exhibit 8.)

On February 16, 2005, counsel for Third Party Defendant wrote "We are unwilling to sign off on your Joint Motion to Dismiss ... due to its failure to have costs and fees assumed by you. Of course, you can file a Motion to Dismiss without participation or agreement from the Defendant...." (Exhibit 9.) Counsel also stated that he was not willing to sign "no objection" to a joint motion exempting the Petitioners from paying his attorney's fees and costs. (Exhibit 9.)

On February 18, 2005, the Joint Motion to Dismiss was revised to eliminate "attorneys' fees" and it was faxed and federal expressed to Mr. Crago for his signature so that it could be filed with the Court. (Exhibit 10.) We also noted that Federal Rules of Civil Procedure did not allow us to file a Motion to Dismiss without a signed motion since he had filed an answer. Counsel was requested to please advise us immediately if he still did not agree to sign the attached revised version of the Motion to Dismiss. (Exhibit 10.)

On February 21, 2005, counsel requested that we eliminate the phrase "each party to bear its own costs" (Exhibit 11) even though he has previously indicated that he had no objection to each party bearing its taxable court costs. (Exhibits 5 and 6, at para. 1.) We accommodated counsel and forwarded by fax and federal express another revised original of the joint motion for him to review and to sign "no objection" and return to us. This motion eliminates any reference to "attorney's fees or costs." (Exhibit 12.) This had not occurred and on February 24, 2005, we requested that counsel please confirm to us that he would either sign the revised Motion and Order to Dismiss or that if he did not agree to sign the revised Motion and Order to Dismiss that he still, nevertheless, had no objection to the dismissal of his client and entry of the revised proposed Order of Dismissal. (Exhibit 13.) We did not hear back from counsel for Third Party Defendant and on March 2, 2005 Petitioners filed their Motion to Dismiss Third Party Complaint against A. G. Hill Power, Inc. a/k/a JHB Enterprises, Inc., together with a supporting memorandum and a proposed order. *See* R. Doc. 371.

Subsequent to the filing of the above motion, on March 3, 2005 undersigned counsel received by Federal Express a letter from Mr. Crago dated March 2, 2005 forwarding a signed version of the Joint Motion to Dismiss. A copy of counsel's letter is attached hereto as Exhibit 14 and it states: "A review of my file finds that while I faxed you the Joint Motion to Dismiss

Third-Party Complaint I neglected to send you the original last week. Accordingly, I'm doing it now in case you need the original signature for your records." (Exhibit 14.) Undersigned counsel for Petitioners faxed Mr. Crago on March 3, 2005, Exhibit 15, and advised him that, contrary to the statement in counsel's March 2, 2005 letter, that we did not receive by fax from Mr. Crago the signed version of the Joint Motion to Dismiss. *See* Exhibit 15. Mr. Crago was further advised that given the position that he had taken in this matter, together with counsel's failure to timely respond to our letters dated February 22 and 24, left us with no option but to file a separate motion to dismiss (R. Doc. 371.) We requested that counsel please let us know if he would still like us to submit the original Joint Motion to Dismiss to the Court together with an explanation of what has occurred, and counsel never responded. (Exhibit 15.) We did receive in the mail on March 10, 2005 an apparent objection by counsel to the dismissal of his client from the lawsuit. *See* R. Doc. 374. In the interim, on March 7, 2005, the instant Motion for Sanctions was filed by Mr. Crago notwithstanding our prior agreement to dismiss the third party complaint and the filing of our motion to dismiss on March 2, 2005.

**I. RULE 11 WAS NOT VIOLATED BY PETITIONERS.**

Petitioners did not violate Rule 11 as alleged by Third Party Defendant. The Fifth Circuit has instructed the District Courts to employ a "snapshot" approach under Rule 11 whereby the Court is required to judge compliance with Rule 11 "by an objective standard of reasonableness under the circumstances" as of the time a pleading is filed. *Smith v. Our Lady of the Lake Hospital*, 960 F.2d 439, 444 (5th Cir. 1992) (quoting *Thomas v. General Capital Sec. Servs.*, 836 F.2d 866, 873) (5th Cir. 1998) (*en banc*)) "Reasonableness is reviewed according to the 'snapshot' rule, focusing on the instant the attorney fixes his signature to the document." *Smith,* 960 F.2d at 444. An attorney is not required to provide "an absolute guarantee of the correctness of the legal theory advanced" in a pleading. *Id.*

It is respectfully submitted that a reasonable factual investigation did occur. Virtually all of the claimants have sued this Third Party Defendant in state court arising out of the Queen Isabella Causeway incident based on an investigation which revealed that Cameron County had entered into a maintenance contract for the lights on the Causeway. At the time the Third Party Complaint was filed, counsel for Petitioners was not in receipt of any documents or information which indicated that A. G. Hill Power, Inc. a/k/a JHB Enterprises, Inc. had been sold and had no responsibility for maintaining the lights on the Causeway. The Texas Secretary of State's office also reflects that A. G. Hill Power, Inc. was the prior name of JHB Enterprises, Inc. and that Mr. Jack H. Bennett is the registered agent for service of process of JHB Enterprises, Inc. Moreover, the information necessary to support the defense of the Third Party Defendant that it had sold the business was exclusively in the possession of the Third Party Defendant, and the Court is entitled to consider the extent to which the development of factual circumstances underlying the claim requires discovery. *See, e.g., Thomas,* 836 F.2d at 876; *Smith,* 960 F.2d at 446-447 (reversing an award of sanctions and noting that "[v]irtually all of the factual materials relevant to proving the RICO case were beyond Smith's reach, in the hands of the defendants . . . . The essence of the alleged offense was the defendants' agreement and intent to defraud, which cannot be ascertained easily from extrinsic evidence; a party should be given some leeway in making allegations about such matters, as long as the lawyers investigation is otherwise reasonable.") (citations omitted.) *See also Golizio v. Holting, Inc.*, 1997 WL 180385 at *2 (E.D. La. 1997) (denying motion for sanctions and rejecting claim that facts were not properly investigated, noting that many of the documents were in the hands of the defendants and that counsel did not have access to these documents, and that "it would be unreasonable and unfeasible to expect plaintiff's attorney to do such an extensive pre-filing investigation of these documents.") *Estate*

*of Barrett v. United States*, 337 F. Supp.2d 370, 277 (D. Mass. 2004) ("Whether an inquiry is 'reasonable under the circumstances' takes into account the lack of information within the defendant's exclusive control.") Finally, it is also proper for counsel to rely upon the investigation of other counsel. *See Smith*, 960 F.2d at 444; *Reed v. Iowa Marine Repair Corp.*, 16 F.3d 82, 86 (5th Cir. 1994) (following *Smith* and reversing an award of sanctions imposed under Fed. R. Civ. P. 26).

It was not necessary for the Third Party Defendant to file an answer to the complaint. Exhibit B to Third Party Defendant's submission is a letter from Mr. Les Cassidy, Petitioners' co-counsel, to Mr. Crago, which states: "In any event, we are not looking to your client for an answer in this litigation, and we are making arrangements for service on the proper party." Upon receipt of the Third Party Defendant's answer, counsel for Petitioners requested on December 2, 2004 that Mr. Crago furnish us with more particular information concerning the sale of October 14, 1996, along with any other documents or information which would show that Mr. Crago's client was not responsible for maintaining any lights or navigational aids on the Causeway. *See* Exhibit 1 hereto. This information was not furnished until six weeks later, January 14, 2005. Had the information been received sooner, the dismissal would have been filed sooner.

## II. PETITIONERS AGREED TO DISMISS THEIR THIRD PARTY COMPLAINT AND ALSO COMPLIED WITH THE "SAFE HARBOR" PROVISION OF RULE 11.

Petitioners complied with the 21-day safe harbor provision of Rule 11(c)(1) and previously had agreed to withdraw the pleading in question before receiving counsel's Rule 11 motion, which was unnecessary in the first place. The Advisory Committee Comments to the 1993 amendment to Rule 11 states:

> The rule provides that request for sanctions must be made as a separate motion, *i.e.*, not simply included as an additional prayer for relief contained in

> another motion. The motion for sanctions is not, however, to be filed until at least 21 days (or such other period as the court may set) after being served. **If, during this period, the alleged violation is corrected, as by withdrawing (whether formally or informally) some allegation or contention, the motion should not be filed with the court. These provisions are intended to provide a type of "safe harbor" against motions under Rule 11 and that party will not be subject to sanctions on the basis of another party's motion unless, after receiving the motion, it refuses to withdraw that position or to acknowledge candidly that it does not currently have evidence to support a specified allegation. Under the former rule, parties were sometimes reluctant to abandon a questionable contention lest that be viewed as evidence of a violation of Rule 11; under the revision, the timely withdrawal of a contention will protect a party against a motion for sanctions.**

(emphasis added.) The record is clear that Petitioners agreed to dismiss their Third Party Complaint in a timely fashion, well before Mr. Crago's service of a Rule 11 motion. Moreover, the filing of the motion for sanctions by counsel for Third Party Defendant after we agreed to withdraw the pleading is improper under Rule 11 and the law. The Advisory Comments note:

> They [Rule 11 motions] should not be employed as a discovery device or to test the legal sufficiency or efficacy of the allegations in the pleading; other motions are available for these purposes. Nor should Rule 11 motions be prepared to emphasize the merits of a party's position, to exact an unjust settlement, to intimidate an adversary into withdrawing contentions that are fairly debatable, to increase the cost of litigation, . . . .

A motion for sanctions filed after a party has withdrawn a challenged pleading under the "safe harbor" provision of Rule 11 should be denied. *See Photocircuits Corp. v. Marathon Agents, Inc.*, 162 F.R.D. 449, 452 (E.D.N.Y. 1995) (enforcing the 21-day safe harbor provision of Rule 11 and noting that "in sum, the amended Rule 11 provides that the offending attorney or party shall be given 21 days after the service of the motion for sanctions to withdraw the complaint. In this case, the complaint was voluntarily withdrawn prior to the filing of the motion, which act immunized plaintiff's counsel."); *Morroni v. Gunderson*, 169 F.R.D. 168, 171 (M.D. Fl. 1996) (motion for sanctions filed after party voluntarily dismissed pleading was "improper" and denied); *Hockley v. Shawn Enterprises Ltd. Partnership*, 19 F.Supp. 2d 235, 240

(D.N.J. 1998) (enforcing "safe harbor" provision and recognizing that it was improper to file a motion for sanctions after a party withdrew its position by voluntarily dismissing its claims).

## III. THIRD PARTY DEFENDANT HAS NOT SHOWN THAT IT IS ENTITLED TO AN AWARD OF ATTORNEYS FEES AND THE AMOUNTS CLAIMED ARE EXCESSIVE.

Equally baseless is the claim for attorneys' fees. First, the attorneys' fees claimed are not fairly attributable to any conduct of the Petitioners and aree not reasonable and necessary under the circumstances. The Fifth Circuit employs a "lodestar" method to calculate attorneys' fees; a lodestar is calculated by multiplying the number of hours reasonably expended by an appropriate hourly rate in the community for such services and then the District Court may decrease or enhance the lodestar award based on relative weights of 12 factors. *See Heidtman v. County of El Paso*, 171 F.3d 1038, 1043 (5th Cir. 1999) (citing and discussing *Fender v. Zapata Partnership, Ltd.*, 12 F.3d 480, 487 (5th Cir. 1994), *Shipes v. Trinity Industries*, 987 F.2d 311 (5th Cir. 1993), and *Johnson v. Georgia Highway Express, Inc.*, 488 F.2d 714 (5th Cir. 1974)).

It is well established that the fee applicant bears the burden of establishing entitlement to an award and documenting the appropriate hours expended and hourly rates. The applicant should maintain billing time records in a manner that enable the reviewing court to identify distinct claims. *Louisiana Power & Light Co. v. Kellstrom*, 50 F.3d 319, 324 (5th Cir.), *cert. denied*, 516 U.S. 862 (1995) (discussing and quoting *Hensley v. Eckerhart*, 461 U.S. 424, 437, 103 S.Ct. 1933, 1941 (1983), and *Bode v. United States*, 919 F.2d 1044, 1047 (5th Cir. 1990)). "Accordingly, the documentation must be sufficient for the court to verify that the applicant has met its burden." *Kellstrom,* 50 F.3d at 324. If the documentation is vague, incomplete or otherwise inadequate, the court is justified in not accepting such documentation. *Id.* Here, no billing information or contemporaneous records has been submitted. There is no itemization or

breakdown of time allegedly spent, only the *ipse dixit* affidavit of Mr. Crago that five attorneys in the firm performed some unspecified work "defending" the client, at a certain rate, and that the amount and work performed was "reasonable and necessary." There is absolutely no description as to the nature of the work performed, what it related to or why it was reasonable or necessary to have five attorneys working on this case.[1] "The district court is not only required to determine whether the total hours claimed are reasonable, but also whether the particular hours claimed were reasonably expended. The court's reference to deeming hours to be reasonably expended is troubling because it strongly suggests that the district court did not abide by this standard." *Alberti v. Klevenhagen*, 896 F.2d 927, 932 (5th Cir.), *vacated in part on other grounds*, 903 F.2d 352 (5th Cir. 1990) (quoting and following *Kellstrom*, 50 F.3d at 325.) Counsel's affidavit claims a total of 36.6 hours of billable time together with an additional 3.4 hours for the motion for sanctions, for a total of 40 hours of time by five different attorneys.

Whatever work was performed was completely unnecessary and is alleged to have taken place between the dates of November 4, 2004 and February 9, 2005. However, in November of 2004 counsel was advised by Mr. Les Cassidy that we were not looking for his client to file an answer. On February 2, 2005, we forwarded a proposed joint motion and order to dismiss, and then followed up with counsel on February 11, 2005, as to the status of the joint motion. *See* Exhibits 2 and 3. It also took from December 2, 2004 until January 14, 2005 for Mr. Crago to furnish us the information we requested upon review of his answers, *See* Exhibits 1 and 2.

The motion for sanctions is baseless in law and fact. Counsel for Petitioners acted reasonably in filing the Third Party Complaint and reasonably and timely requested documents from Mr. Crago showing that the Third Party Defendant was not under any contract to maintain

---

1 "Cases may be overstaffed, and the skill and experience of lawyers vary widely." *Hensley*, 461 U.S. at 434, 103 S.Ct. at 1939. Hours that are "excessive, redundant or otherwise unnecessary" should not be included. *Id.*

the lights on the Queen Isabella Causeway at the time of the incident. Petitioners agreed to dismiss the Third Party Complaint prior to being "threatened" with a motion for sanctions. We forwarded a joint motion to dismiss and a proposed order and also timely filed a motion to dismiss the third party complaint, which Mr. Crago refused to sign as a joint motion notwithstanding the requirements of Fed. R. Civ. P. 41(a) and (b). Even after we filed our Motion to Dismiss, counsel insisted on filing this motion for sanctions notwithstanding the 21-day safe harbor provision of Rule 11(c), the Advisory Committee Comments, and the case law, all of which confirms that a motion for sanctions should not have been filed in this situation.

## IV. CASES RELIED UPON BY THIRD PARTY DEFENDANT ARE INAPPOSITE.

28 U.S.C. § 1927 requires unreasonable and vexatious conduct on the part of an attorney. It is respectfully submitted that nothing in the record justifies a sanction pursuant to § 1927 and that counsel for the Petitioners acted reasonably and in good faith. *See, e.g., Smith*, 960 F.2d at 448.

*Ortho Parmaceutical Corp. v. Sona Distributors*, 840 F.2d 1512 (5th Cir. 1988), is not dispositive of Third Party Defendant's motion. In *Ortho*, the plaintiff filed a breach of contract action against two defendants, Elmcrest and Sona, for breach of a sales contract. The plaintiff claimed that Elmcrest interposed the defense of lack of personal jurisdiction. The plaintiff incurred substantial attorneys' fees and costs in opposing Elmcrest's motion, and Elmcrest eventually dropped its defense. The District Court concluded that there was no reasonable, good faith basis upon which the personal jurisdiction defense could be interposed:

> The pre-filing inquiry of Elmcrest's counsel was unreasonable under the circumstances. To excuse its groundless motion to dismiss, counsel notes that the motion was filed a scant twenty-three days after service of Ortho's complaint. Counsel also notes during the same three week period it also had to address applications for a temporary restraining order and a preliminary injunction and to deal with expedited discovery. In addition, counsel observes that the key events of the case had occurred in Hong Kong, making investigation more difficult.

> We cannot help but remark that these time constraints of which counsel complains were of his own making. Counsel move for no extension of time to investigate further whether the jurisdictional argument for dismissal was well-founded, although counsel knew of the existence of documents that would shed light on the problem. Only when the court order forced the production of these documents did counsel decide to abandon the jurisdictional argument, after Ortho had expended significant resources to oppose the motion. Under the circumstances, the district court did not abuse its discretion in awarding Rule 11 sanctions.

847 F.2d at 1518. In contrast, it was counsel for Petitioners that requested documents from opposing counsel related to the defense appearing in the answer of the Third Party Defendant. It took opposing counsel some six weeks to respond and produce a copy of an Asset Purchase Agreement. Thereafter, undersigned counsel informed Mr. Crago that we would dismiss the Third Party Complaint. *See* Exhibit 3. This is not a case where Petitioners were intransigent or had contrary information in their possession prior to the filing of the Third Party Complaint.

*Delgado v. Methodist Hospital*, 936 S.W.2d 479 (Ct. App. Houston (14th Dist) 1996), and *Miller v. Armogida*, 877 S.W.2d 361 (Tex. App. Houston (1st Dist.) 1994), are not federal cases nor do they interpret the Fed. R. Civ. P. 11. Neither is dispositive of the pending motion. *Miller* involved a frivolous lawsuit for legal malpractice against an attorney who tried a medical malpractice case. *Delgado* involved a lawsuit against a hospital and physicians for mental anguish allegedly sustained by a plaintiff as a result of being denied a private room in a hospital. Texas law did not recognize a claim for intentional infliction of emotional distress as a matter of law. Summary judgment was granted in favor of the physicians under the governing law, and $1,000.00 in sanctions were imposed. In contrast to the instant case, the record in *Delgado* "reveals that appellant was notified in writing on two separate occasions prior to the filing of the motion for sanctions that sanctions would be sought if appellant did not voluntarily dismiss these frivolous claims. The record reveals, as a matter of law, that appellant's claims were

groundless." 936 S.W.2d at 488. In contrast, in the instant case, undersigned counsel requested information from opposing counsel and, upon receipt of that information, agreed to dismiss the Third Party Complaint.

**CONCLUSION**

Petitioners respectfully request that the Court grant the Motion to Dismiss the Third Party Complaint Against A.G. Hill Power, Inc. a/k/a JHB Enterprises, Inc. previously submitted on March 2, 2005 (*See* R. Doc. 371.) Petitioners also request that the Motion for Sanctions be denied and submit herewith as Exhibit 16 a proposed order. We cannot understand the position advanced by Third Party Defendant and respectfully submit that the filing of a motion for sanctions is grossly inappropriate, vexatious and presents a needless burden on the Court.

Respectfully submitted,

GLENN G. GOODIER, Attorney-in-Charge
Admitted *Pro Hac Vice*
By Order Entered 4/23/02
Jones, Walker, Waechter, Poitevent,
Carrère & Denègre, L.L.P.
201 St. Charles Avenue - 48th Floor
New Orleans, Louisiana 70170-5100
Telephone: (504) 582-8174
Facsimile: (504) 582-8010

LES CASSIDY
State Bar Number 03979270
Federal Identification Number 5931
814 Leopard Street
Corpus Christi, Texas 78401
Telephone: (361) 887-2969
Facsimile: (361) 887-6251

OF COUNSEL:

WOOLSEY & CASSIDY, P.C.
814 Leopard Street
Corpus Christi, Texas 78401
Telephone: (361) 887-2969
Facsimile: (361) 887-6251

Counsel for Petitioners,
American Commercial Lines LLP and
American Commercial Barge Line LLC
Deere Credit, Inc. (formerly Senstar Finance Company), as Owner of the Barge NM-315,
State Street Bank and Trust Company of Connecticut, N.A., as Owner/Trustee of the Barge ACL-9933B and Not in Its Individual Capacity, and
General Electric Capital Corporation, as Beneficial Owner of the Barge ACL-9933B

**CERTIFICATE OF SERVICE**

I do hereby certify that I have on this 24th day of March, 2005, served a copy of the foregoing pleading on counsel for all parties to this proceeding by mailing the same by United States Mail, properly addressed and first class postage prepaid.

GLENN G. GOODIER