98) The liability of the tow and its right to exoneration and/or limitation of liability "must be decided independently of the liability of the tug." In Re Central Gulf Lines, Inc., 176 F.Supp.2d at 615.

99) As to the negligence claim against ACBL, the Claimants bear the burden of proving causation in fact and must introduce credible evidence which provides a reasonable basis for the fact finder to make a causal determination. Causation cannot be based upon speculation or conjecture, or upon equally balanced probabilities and a mere possibility of causation is not enough; where the probabilities, are at best evenly balanced, it becomes the duty of the court to direct a verdict for the defendant. Fournier v. Petroleum Helicopters, Inc., 665 F.Supp. 483, 486 (E.D. La. 1987) (quoting Prosser & Keeton, Torts, p. 263 and 269) (5th Cir. 1984), aff'd, 845 F.2d 1020 (5th Cir. 1988). Claimants have failed in this burden.

100) The Fifth Circuit has recognized that under admiralty law "Fault which produces liability must be a contributory and proximate cause of the collision, and not merely fault in the abstract." American River Transportation Co. v. KAVO KALIAKRA, 148 F.3d 446, 450 (5th Cir. 1998) (Judge Benavides quoting and following Inter-Cities Navig. Corp. v. United States, 608 F.2d n. 79, 1081 (5th Cir. 1979)). The Fifth Circuit also noted in American River Transportation Co. that "To give rise to liability, a culpable act or omission must have been 'a substantial and material factor in causing the collision.'" Id. Claimants have failed to prove any fault on the part of ACBL.

101) It is well settled under the General Maritime Law that the owner *pro hac vice* of dumb, unmanned barges, having no motive power of their own, in the tow of an independent contractor's tug has no liability for a collision that occurs during the navigation of the barges by the tug. "Barges are vessels, but of a peculiar kind.... Lacking power and usually crew, barges

depend upon another vessel, a tug, for movement. A contract for a tug to move a barge is one of towage." Agrico Chemical Co. v. M/V BEN W. MARTIN, 664 F. 2d 85, 90 (5th Cir. 1981), reh. denied, 669 F. 2d 733 (5th Cir. 1982).

102)   Towage is defined as a service rendered by one vessel to aid the propulsion and expedite the movement of another vessel. The vessel that supplies the power in such an arrangement is typically called the tug. Stevens v. THE WHITE CITY, 285 U.S. 195, 200, 52 S. Ct. 347, 349 (1932); T. Schoenbaum, Admiralty and Maritime Law at § 10-1, p. 717 (West 4th ed. 2003) (Ex. 2.) Under the "dominant mind" doctrine, the tug is the "dominant mind" and supplies "power" to tow the unmanned, powerless barges, and is in all respects responsible for the safe navigation of the tow. The tug, and not the tow, is legally responsible for damages done by the flotilla. T. Schoenbaum, Admiralty and Maritime Law at § 10-6, p. 730-731, (Ex. 2.)

103)   A principal who hires an independent contractor over whom it exercises no operational control is not liable for any negligence of the independent contractor. Wallace v. Oceaneering International, Inc., 727 F. 2d 427, 437 (5th Cir. 1984), and Bartholomew v. CNG Producing Co., 832 F. 2d 326, 329 (5th Cir. 1987). Claimants have admitted that ACBL is not liable for any negligence of Brown Water and that ACBL exercised no operational control over Brown Water.

104)   Under the "dominant mind" doctrine, the tug is the "dominant mind" and supplies "power" to tow the unmanned, powerless barges, and is in all respects responsible for the safe navigation of the tow. The tug, and not the tow, is thus legally responsible for damages done by the flotilla. Professor Schoenbaum, a leading authority in the field of maritime law, notes:

> **When damage is caused by a casualty involving the tow or by the whole flotilla, the courts employ the concept of "dominant mind" to place liability on the tug and to absolve the tow from liability. This doctrine holds that only that vessel**

> **is liable whose people are actually in control of the operation, even though the whole flotilla causes the damage.**

T. Schoenbaum, <u>Admiralty and Maritime Law</u> at § 10-6, p. 730 (West 4th ed. 2003) (citations omitted) (emphasis added), (Ex. 2.)

105) Professor Schoenbaum further notes: "If the tug and the tow are separately owned, the negligence of the tug cannot be imputed to the tow, and there is neither *in personam* nor *in rem* liability on the part of the tow." Ex. 2, T. Schoenbaum, <u>Admiralty and Maritime Law</u> at § 10-6, p. 731 (citing the principle of <u>Sturgis v. Boyer</u>, 65 U.S. (24 How.) 110, 16 L. Ed. 591 (1860), and <u>THE EUGENE F. MORAN</u>, 212 U.S. 466, 29 S. Ct. 339, 53 L. Ed. 600 (1909)). <u>See</u> <u>also</u> Parks and Cattell, <u>The Law of Tug, Tow, and Pilotage</u>, p. 24 (3d ed. 1994) ("It is settled law in the United States that the vessel in control of the flotilla, the 'dominant mind,' is responsible for the actions of the flotilla and thus responsible in damages if negligent."), Ex. 26; <u>Alter Co. v. M/V MISS SUE</u>, 536 F. Supp. 313, 316 (E.D. La. 1982); <u>Naptha Barge Co. v. Continental Navigation Co.</u>, 1978 AMC 501, 510 (E.D. La. 1977), (Ex. 27.) The Vulcan, 60 F. Supp. 158 (E.D. La. 1945), citing <u>Sturgis</u> and <u>THE EUGENE F. MORAN</u>, states: "Where as here the tugboat supplying the power is in control and the tow inert and helpless, the towing vessel alone is liable for fault and errors in navigation." 60 F. Supp. at 162.

106) "It is the duty of the towing vessel to see that the tow is properly made up and that her lines are sufficient and securely fastened. The Quickstep, 9 Wall. 665, 76 U.S. 665, 19 L. Ed. 767." <u>W. Horace Williams Co. v. The WAKULLA</u>, 109 F. Supp 698, 700 (E.D. La. 1953), <u>aff'd</u>, 213 F.2d 27 (5th Cir. 1954); Parks and Cattell, <u>The Law of Tug, Tow, and Pilotage</u>, pp. 133 to 136 (3d ed. 1994), (Ex. 26.)

107) Under the law, Brown Water and its tug masters (Fowler and Wilson) were responsible for all aspects of the towage of ACBL's barges:

> The master of a tug towing an unmanned barge must know all conditions essential to the safe accomplishment of the undertaking or voyage. This knowledge includes the depth of the water, the ordinary obstructions, the state of the tides and water levels in the channel, and the clearance of bridges to be negotiated. [citations omitted.] ... The tug master, moreover, must obtain knowledge from personal cognizance, or avail himself of the means of knowledge, of conditions likely to produce or contribute to a loss, unless appropriate means are adapted to prevent it. [citations omitted.] "[C]aptains [are] held to a standard of prudent navigation, including the knowledge they should have had." *Houma Well Service v. Capt. O'Brien*, 312 F.Supp 257, 262 (E.D. La. 1970).

Ryan Walsh Stevedoring Co. v. James Marine Service, Inc., 557 F. Supp. 457, 461 (E.D. La. 1983), aff'd, 729 F.2d 1457 (5th Cir.), cert. denied, 469 U.S. 981 (1984); see also Parks and Cattell, The Law of Tug, Tow, and Pilotage, pp. 144-157; 160-166 (3d ed. 1994), (Ex. 26.)

108) "When a tower undertakes a contract of towage the law implies that he possess sufficient skill to perform the task safely." Naviera Tabago S.A. v. Sprigg Carroll, 394 F. Supp. 1354, 1357 (S.D. Fla. 1975). "The tower has an obligation to exercise reasonable care and skill." Id. (citing Hart v. Blakemore, 410 F.2d 218, 221 (5th Cir. 1969)). The tug owes the tow an implied warranty of workmanlike service, "[t]hat is, an implied obligation to tow properly and safely ... -- the very nature of the towing agreement necessarily implies an obligation to tow properly and safely, and competency and safety are essential elements of the towing service undertaken." Singer v. Dorr, 272 F. Supp. 931, 934 (E.D. La. 1967) (citations omitted).

109) By law, Brown Water warranted (and ACBL is entitled to rely upon that warranty) that it possessed knowledge, skill, experience and equipment to safely tow ACBL's barges, that it would furnish a seaworthy towboat, properly equipped and manned, and of sufficient capacity and power to perform the service undertaken under the conditions which were

to be reasonably anticipated, and that its tug and crew would navigate itself and the tow properly and prudently, and to exercise its best endeavors, skill and diligence for the safe completion of the towage contract. See, e.g., Parks and Cattell, The Law of Tug, Tow, and Pilotage, pp. 127-128 (3d ed. 1994), (Ex. 26.)

110) ACBL, as the tow, owed a duty to provide Brown Water with seaworthy barges for towage. Kenny Marine Towing, Inc. v. M/V JOHN R. RICE, 583 F. Supp. 1196, 1198 (E.D. La. 1984). There is no evidence that ACBL breached its obligation to provide seaworthy barges and Claimants do not dispute this. All evidence overwhelmingly points to Brown Water's crew's failure to properly navigate the tow of ACBL's barges. ACBL is not liable for any negligence attributable to Brown Water.

111) Under maritime law, a principal, such as ACBL, is not liable for negligent acts committed by an independent contractor, such as Brown Water, while the independent contractor is performing its assigned duties. Wallace, 727 F.2d at 437, and Bartholomew, 832 F. 2d at 329. A principal who hires an independent contractor over whom he exercises no operational control has no legal duty to discover or to remedy any hazards created by the independent contractor. Wallace, 727 F. 2d at 437. Moreover, Claimants concede that ACBL did not exercise operational control over Brown Water.

112) Therefore, based upon well established principles of maritime law, ACBL is not liable for any negligence of Brown Water. ACBL exercised no control over the activities of Brown Water. ACBL merely offered barges for towage from Brownsville to Houston. Brown Water and its employees made all decisions as to towage, including which tug to use, timing of the towage, how many barges to tow, what route to take, how to build the tow, the

suitability of the weather, tide and current to be encountered, and assignment of a crew to the tug.

113) A very high threshold must be met to show that a principal exercised operational control over an independent contractor: "It is not enough that [the principal] has merely a general right to order the work [of the independent contractor] stopped or resumed, to inspect its progress or to receive reports, to make suggestions or recommendations which need not necessarily be followed, or to prescribe alterations and deviations.... There must be such a retention of a right of supervision that the contractor is not entirely free to do the work in his own way." Wallace, 727 F. 2d at 437 n. 7. See also Ellison v. Conoco, Inc., 950 F. 2d 1196, 1207-08 (5th Cir. 1992), cert. denied, 509 U.S. 907 (1993). Here, Brown Water was entirely free to "do the work its own way."

114) ACBL had no knowledge or reason to believe that Brown Water was incompetent or that Brown Water did not have the requisite knowledge and skill to tow its barges. See In Re: Central Gulf Lines, Inc., 176 F. Supp.2d 599 (E.D. La. 2001), aff'd, 62 Fed. Appx. 557 (Table), 2003 WL 1202793 (5th Cir. No. 01-31028, 03/03/03) (Ex. 3) (exoneration by summary judgment of barge owner *pro hac vice*/bareboat charterer for a collision that occurred when its barge was being towed by an independent towage contractor.) A competent and careful contractor is one who possesses the knowledge, skill, experience and available equipment to perform the work (Comment (a) to Section 411 of the Restatement (Second) of Torts (1965) (Ex. 34). The evidence establishes that Brown Water's negligence does not arise from its lack of knowledge and skill as to how to tow barges, or that it was not an experienced tower, or that it did not have the proper equipment to tow barges (i.e., towboats). Brown Water had proven time and time again that it had the knowledge, skill, experience and equipment by towing hundreds of

ACBL and other customers' barges for over 10 years. Rather, Brown Water was negligent because its crew was negligent in failing to properly use its knowledge, skill, experience and equipment. Accordingly, ACBL cannot be held liable under the theory of negligent hiring.

115) ACBL was not negligent in contracting with Brown Water to tow its barges. ACBL exercised reasonable care in selecting Brown Water and was entitled, by law, to rely upon Brown Water's expertise as a towage contractor. Brown Water was well established towing company that had been in business for over ten years towing barges for numerous customers including major oil and chemical companies. When ACBL contracted with Brown Water it was not contracting with an unknown, "fly by night" start-up company with unproven capabilities. In ACBL's ten-year history with Brown Water, Brown Water had proven itself to be a safe and reliable tower. Moreover, Brown Water also had the most experience of any tower in the ICW between Brownsville and Houston and ACBL acted responsibly in selecting the most experienced tower to tow its barges. Brown Water had safely towed hundreds of ACBL's barges under the Queen Isabella Causeway prior to the Accident. ACBL was entitled to rely on its previous successful and longstanding experience with Brown Water and on this basis cannot be held liable on the theory of negligent hiring. Western Arkansas Telephone Co. v. Colton, 259 Ark. 216, 219, 532 SW 2d 424, 426 (Ark. Sup. Ct. 1976); In Re Central Gulf Lines, Inc., 176 F.Supp.2d 599, 622 (E.D. La. 2001).

116) Claimants' allegations against ACBL appear to be that it was negligent in contracting with or "entrusting" its barges to Brown Water. No court has ever applied the theory of "negligent entrustment" or "negligent hiring" to impose liability on the owner of an unmanned barge who contracts with an established independent tower. There is no evidence that

ACBL contracted with someone whose capabilities were unknown or who was known to be an incompetent.

117)   In In Re: Central Gulf Lines, Inc., 176 F.Supp.2d 599 (E.D. La. 2001), aff'd, 62 Fed. Appx. 557 (Table), 2003 WL 1202793 (5th Cir. No. 01-31028, 03/03/03), Ex. 3, the court granted exoneration by summary judgment to Waterman, the bareboat charterer of dumb, unmanned barges, for a collision that occurred when its barges were being towed by a third-party independent towing contractor.

118)   The theory of liability expressed by the Claimants here was espoused by the claimants in Central Gulf, 176 F. Supp.2d 599.  As in this case, the tug master decided how many barges the tug would take on any given trip based upon his experience, considering weather, wind, tide and draft of the barges.  176 F. Supp.2d at 606.  As is this case, the tower was an experienced contractor, and the tug master was properly licensed and had been employed on inland tugs for 12 years.  As in this case, the Claimants argued that the Petitioners "negligently hired" the tower.  In exonerating Waterman, the court noted:

> The party moving for limitation here is the tow, not the tug....
>
> Quite succinctly, there is simply an absence of evidence in the record establishing that either Waterman, its local agent, Oceanic, or its general agent in Singapore, Marco were aware, or should have been aware, of the likelihood of this accident after the tug was underway.  *Kristie Leigh*, 72 F.3d at 481-482. No personnel of Waterman or Oceanic boarded the tug after it took control of the LASH barge once it was placed in the water by the GREEN ISLAND's crane. No personnel of Waterman or Oceanic instructed Eastern's supervisors or tugmaster on the proper method of constructing the tow, or the maximum load the KAMRUP could push under the weather, wind, and tide conditions existent at the time.  There is no evidence that Waterman or Oceanic even observed Eastern personnel constructing the tow,....
>
> The record is similarly devoid of evidence that Waterman and Oceanic had any knowledge or reason to know that Captain

> Dutta in particular or Eastern in general were incompetent or inadequate to perform the job. Nothing in Oceanic's experience, 8 years, and Waterman's experience, 27 years, with Eastern would have put it on notice of any problems concerning the specific practice which Baron vilifies, the KAMRUP's towage of five loaded barges from Haldia to Calcutta....

176 F. Supp.2d at 614-615. The court concluded:

> The liability of the tow ... and Waterman's right to exoneration and/or limitation of liability, must be decided independently of the liability of the tug. Baron seeks a determination that Waterman, as the barge owner, is not entitled to limitation because of navigational errors of the tugboat operator in configuring the tow and using a tugboat which was underpowered. There is simply no legal authority for doing so. The maritime law governing the allocation of liability between the tug and tow and exoneration and limitation of liability applicable to these facts weigh against the claim that Baron/U.K. Club asserts here.
>
> Assuming for the purposes of these motions only that the tug boat master was negligent in arranging the five barge tow and using the KAMRUP, because it had insufficient power, and further assuming that it was in the navigational channel at the time of the collision, none of these acts can be imputed to Waterman. Waterman discharges LASH barges in ports across the world. It cannot be, nor should it be, expected to follow each tug and tow to its destination to ensure that the tug does its job safely and properly.

176 F. Supp.2d at 615-616. The Fifth Circuit affirmed the District Court's analysis and the exoneration of Waterman at 62 Fed. Appx. 557 (Table) (Ex. 3). The Fifth Circuit noted that the Claimants had the burden to show that the owner *pro hac vice*/bareboat charterer of the barges was negligent, "independent of possible negligence" by the towage contractor or its tug. (See Ex. 3, p. 23, to R. Doc. 307.)

119) Claimants' "Negligent Entrustment" argument also fails. There are no towage cases to support this argument and it is not applicable to towage. A tug tows a barge and does not "use" the barge as contemplated by §390 of the Restatement of Torts. Brown Water was not "using" ACBL's barges, rather it was transporting them.

120) The court finds as a matter of law that ACBL was not negligent and is entitled to be exonerated from all claims and liability arising out of the Accident.

121) The Court finds, as a matter of law, that ACBL is entitled to recover its damages resulting from the Accident from Brown Water.

122) Alternatively, the court finds that ACBL's negligence was not within the privity and knowledge of its management and, therefore, ACBL is entitled to limit its liability to the value of its four barges and their pending freight, at the time of the Accident. 46 U.S.C. app. § 183; In Re Kristie Leigh Enterprises, Inc. 72 F.3d 479, 480-481 (5th Cir.), reh'g denied, 81 F3d 159 (5th Cir. 1996).

123) In the further alternative, the Court finds, as a matter of law, that ACBL is entitled to indemnity and/or contribution from Brown Water in that Brown Water breached its obligation to ACBL to perform the towage in a safe, workmanlike manner. Singer v. Dorr, 272 F. Supp. 931, 934 (E.D.La. 1967); Parks and Cattell, The Law of Tug, Tow and Pilotage, pp. 127-128 (3d ed. 1994)(Ex. 26).

Respectfully submitted,

GLENN G. GOODIER, Attorney-in-Charge
Admitted *Pro Hac Vice*
By Order Entered 4/23/02
Jones, Walker, Waechter, Poitevent,
  Carrère & Denègre, L.L.P.
201 St. Charles Avenue - 48th Floor
New Orleans, Louisiana 70170-5100
Telephone:   (504) 582-8174
Facsimile:   (504) 582-8010

LES CASSIDY
State Bar Number 03979270
Federal Identification Number 5931
814 Leopard Street
Christi, Texas  78401
Telephone:   (361) 887-2969
Facsimile:   (361) 887-6251

OF COUNSEL:

WOOLSEY & CASSIDY, P.C.
814 Leopard Street
Corpus Christi, Texas  78401
Telephone:   (361) 887-2969
Facsimile:   (361) 887-6251

Counsel for Petitioners,
American Commercial Lines LLC and
American Commercial Barge Line LLC
Deere Credit, Inc. (formerly Senstar Finance
Company), as Owner of the Barge NM-315,
State Street Bank and Trust Company of
Connecticut, N.A., as Owner/Trustee of the Barge
ACL-9933B and Not in Its Individual Capacity, and
General Electric Capital Corporation, as Beneficial
Owner of the Barge ACL-9933B

## CERTIFICATE OF SERVICE

I do hereby certify that I have on this 14TH day of June, 2005, served a copy of the foregoing pleading on counsel for all parties to this proceeding by mailing the same by United States Priority Mail, properly addressed and first class postage prepaid.

_____
GLENN G. GOODIER