ORIGINAL

United States District Court
Southern District of Texas
FILED

JUN 1 5 2005

Michael N. Milby
Clerk of Court

# IN THE UNITED STATES DISTRICT COURT
# FOR THE SOUTHERN DISTRICT OF TEXAS
# BROWNSVILLE DIVISION

| | | |
|---|---|---|
| **IN RE THE COMPLAINT AND PETITION OF BROWN WATER TOWING I, INC., AS OWNER, AND BROWN WATER MARINE SERVICE, INC., AS BAREBOAT CHARTERER, OF THE BROWN WATER V, ITS ENGINES, TACKLE, ETC. IN A CAUSE OF EXONERATION FROM OR LIMITATION OF LIABILITY** | § | **C. A. NO. B-01-157**<br>**Admiralty** |
| **IN RE THE COMPLAINT AND PETITION OF AMERICAN COMMERCIAL LINES LLC AS OWNER, AND, and AMERICAN COMMERCIAL BARGE LINES, LLC, AS CHARTERER OF THE BARGES NM-315, VLB-9182, ACL-9933B, VLB-9173, IN A CAUSE OF EXONERATION FROM OR LIMITATION OF LIABILITY** | § | **Consolidated with**<br><br>**C. A. NO. B-02-004**<br>**Admiralty**<br><br>**and** |
| **IN RE THE COMPLAINT AND PETITION OF DEERE CREDIT, INC., (FORMERLY SENSTAR FINANCE COMPANY), AS OWNER OF THE BARGE NM-315 AND STATE STREET BANK AND TRUST COMPANY OF CONNECTICUT, NATIONAL ASSOCIATION, AS OWNER TRUSTEE OF THE BARGE ACL-9933B AND NOT IN ITS INDIVIDUAL CAPACITY, AND GENERAL ELECTRIC CAPITAL CORPORATION, AS BENEFICIAL OWNER OF THE BARGE ACL-9933B PRAYING FOR EXONERATION FROM AND/OR LIMITATION OF LIABILITY** | § | **C.A. NO. B-02-125**<br>**Admiralty** |

## JOINT PRETRIAL ORDER

1.    **APPEARANCE OF COUNSEL:**

Mikal Watts
State Bar No.: 20981820
Federal ID No.: 12419
Ray R. Marchan
State Bar No.: 12969050
Federal ID No.: 9522
Watts Law Firm, L.L.P.
1926 E. Elizabeth
Brownsville, TX 78520
Phone: 956.544.0500
Fax: 956.541.0255
*Attorneys for Claimants Lydia Zamora, Individually and as Representative of the Estate of Hector Martinez, Jr.; Gustavo Morales; Jacqueline Paddock, Individually and as Representative of the Estate of Chealsa Welch and as Next Friend of William B. Welch; and Bridgette Goza*

Richard Leo Harrell
State Bar No.: 09041320
Federal ID No.: 12325
802 N. Carancahua, Suite 1400
P. O. Box 480
Corpus Christi, TX 78403-0480
Phone: 361.698.7600
Fax:    361.698.7614
*Attorney for Claimant William Eugene Kimbrell, Individually as Surviving Father of Chealsa Welch, Deceased*

Heriberto "Eddie" Medrano
State Bar No.: 13897800
Federal ID No.: 5952
Law Offices of Heriberto "Eddie" Medrano
2009 East Harrison, Ste. B
Harlingen, TX 78550
Phone: 956.428.2412
Fax:    956.428.2495
*Attorney for Claimant Anita Harris, Individually, as Next Friend of Victor Justin Harris and as Representative of the Estate of Robert V. Harris*

John David Franz
State Bar No.: 07389200
Federal ID No.: 1190
400 North McColl
McAllen, TX 78501
Phone: 956.686.3300
Fax:    956.686.3578
J. Chad Gauntt
Gauntt & Kruppstadt, L.L.P.

1400 Woodlock Forest Drive, Suite 575
The Woodlands, Texas 77381
Phone: 281.367.6555
Fax: 218.367.3705
*Attorney for Claimants Esteban Rivas and Miriam Rivas, Individually and as Representatives of the Estate of Stvan F. Rivas*

S. Mark Strawn
State Bar No.: 19374325
Federal ID No.: 9996
Thomas R. Ajamie
State Bar No. 00952400
Federal I.D. No. 6165
Pennzoil Place – South Tower
711 Louisiana, Suite 2150
Houston, TX 77002
Phone: 713.860.1600
Fax:    713.860.1699
*Attorneys for Claimants J. Antonio Mireles, as Personal Representative of the Estate of Julio Cesar Mireles, Juan Antonio Mireles and Soledad Gonzales Mireles*

Raymond L. Thomas
State Bar No.: 19865350
Federal ID No.: 10715
Rebecca Vela
State Bar No.: 24008207
Federal ID No.: 23179
Kittleman, Thomas, Ramirez & Gonzales
4900-B North Tenth Street, Suite 204
McAllen, TX 78504-1416
Phone: 956.686.8797
Fax:    956.630.5199
*Attorney for Rene Mata and Frank Mata*

Jim Hart
State Bar No.: 09147400
Federal ID No.: 14548
Williams Bailey Law Firm, L.L.P.
8441 Gulf Freeway, Ste. 600
Houston, TX 77017-5001
Phone: 713.230.2312
Fax:    713.643.6226
*Attorney for Hector Martinez, Sr.*

Julian Rodriguez, Jr.
State Bar No.: 17146770
Federal ID No.: 15112
Julian Rodriguez, Jr. & Associates, P.C.

10113 N. 10th Street, Ste. C
McAllen, TX 78504
Phone: 956.287.0088
Fax:    956.287.0098
*Attorney for Omar Hinojosa, Individually and on behalf of the Estate of Gaspar Hinojosa;*
*Clarissa Hinojosa; Raquel Teran Hinojosa; Gaspar Hinojosa, II, and Rita S. Hinojosa*

Steve Q. McManus
State Bar No.: 13784700
Federal ID No.: 5889
William Q. McManus
State Bar No. 24008619
Law Office of McManus & Crane, L.L.P.
209 West Juan Linn
P.O. Box 2206
Victoria, TX 77902-2206
Phone: 361.575.6764
Fax:    361.575.8454
*Attorneys for Claimants Ricky Leavell and Carol Leavell, Individually and as Representatives of*
*the Estate of Robin Faye Leavell*

Frank Enriquez
State Bar No.: 06630500
Federal ID No.: 3734
Robert Puente
4200-B North Bicentennial
McAllen, TX 78504
Phone: 956.686.5291
Fax:    956.618.5064
*Attorney for Claimants Roberto Espericueta, Albert Leroy Moya, Rolando Lee Moya and*
*Antonio Salinas, Jr.*

James B. Manley
State Bar No.: 12915000
Federal ID No.: 3286
200 William Barnett
Cleveland, TX 77327
Phone: 281.593.1100
Fax:    281.593.1700
*Attorney for Claimant William Morris Welch*

Will W. Pierson
State Bar No. 16003100
Federal I.D. 1931
Jack C. Partridge
State Bar No. 15534600
Federal I.D.10470
Christopher Lowrance

49477>3026513                                    4

State Bar No. 00784502
Federal I.D. 15481
Royston, Rayzor, Vickery & Williams, L.L.P.
1700 Wilson Plaza West
606 N. Carancahua
Corpus Christi, Texas 78476
Phone : 361.884.8808
Fax:    361.884.7261
and
Keith N. Uhles
State Bar No. 20371100
Federal I.D. No. 1936
Royston, Rayzor, Vickery & Williams, L.L.P.
55 Cove Circle
Brownsville, Texas 78521
Phone: 956.542.4377
Fax:    956.542.4370
*Attorneys for Petitioners, Brown Water Towing I, Inc. and Brown Water Marine Service, Inc.*
Mr. Glenn G. Goodier
Federal I.D. No. 06130
Admitted *Pro Hac Vice*
By Order Entered 4/23/02
Richard D. Bertram
*Pro Hac Vice* Pending
Jones, Walker, Waechter, Poitevent, Carrere & Denegre, L.L.P.
201 St. Charles Ave., 48th Floor
New Orleans, LA 70170-5100
Phone: 504.582.8174
Fax:    504.582.8010
and
LES CASSIDY
State Bar No. 03979270
Federal I.D. 5931
Woolsey & Cassidy, P.C.
814 Leopard Street
Corpus Christi, Texas 78401
Phone: 361.887.2969
Fax:    361.887.6251
*Attorneys for Petitioners, American Commercial Lines LLC and American Commercial Barge Line LLC, Deere Credit, Inc. (formerly Senstar Finance Company), as Owner of the Barge NM-315, State Street Bank and Trust Company of Connecticut, N.A., as Owner/Trustee of the Barge ACL-9933B and Not in Its Individual Capacity, and General Electric Capital Corporation, as Beneficial Owner of the Barge ACL-9933B*


Eileen M. Leeds, Attorney-in-Charge

49477>3026513                          5

State Bar No. 00791093
USDC Adm. No. 16799
Heather Scott
State Bar No. 24046809
USDC Adm. No. 575294
WILLETTE & GUERRA, L.L.P.
1534 E. 6th Street, Suite 200
Brownsville, Texas 78520
(956) 541-1846 Telephone
(956) 541-1893 Facsimile
*Attorneys for Third-Party Defendant Cameron County*

## 2.    STATEMENT OF THE CASE:

This is a consolidated action of Complaints filed by Petitioners Brown Water Towing I, Inc. and Brown Water Marine Service, Inc. (Cause No. B-01-157), American Commercial Barge Line, LLC and American Commercial Lines LLC (Cause No. B-02-004) and Deere Credit, Inc. (formerly Senstar Finance Company), as Owner of the Barge NM-315, State Street Bank and Trust Company of Connecticut, N.A., as Owner/Trustee of the Barge ACL-9933B and Not in Its Individual Capacity, and General Electric Capital Corporation, as Beneficial Owner of the Barge ACL-9933B (Cause No. B-02-125), seeking exoneration or limitation of liability in maritime law. The incident out of which this action arises is the allision between the BROWN WATER V and its tow and the Queen Isabella Causeway, which occurred on September 15, 2001, causing two sections of the causeway to collapse and resulting in the deaths of eight motorists and the injuries of three motorists on the causeway. The wrongful death and personal injury claims of the persons who died or who claim personal injuries because of the allision with the Queen Isabella Causeway are brought as claims under this maritime action.

Petitioners Brown Water Towing I, Inc. and Brown Water Marine Service, Inc. (referred to collectively as "Brown Water") are the owners of the BROWN WATER V, and its bareboat charterer and employer of the crew piloting that vessel, respectively. Petitioner American

Commerical Barge Line, LLC ("ACBL") is the owner *pro hac vice* of the four barges being towed by the BROWN WATER V at the time they allided with the Queen Isabella Causeway.

When the BROWN WATER V allided with the Queen Isabella Causeway, it caused two 80-foot sections of the causeway to collapse. Nine vehicles driving on the causeway drove off the causeway into the water below. Eight of the occupants in those vehicles died and three of the occupants allege personal injuries. Four men allege injuries while attempting to rescue the occupants of the vehicles who were in the water. The Claimants are the families of the motorists who died, bringing their wrongful death claims and the estate's survival claims, and the persons who allege personal injuries, bringing their personal injury claims against Brown Water and ACBL.

Brown Water and ACBL brought a third-party claim against Cameron County, seeking contribution or indemnity for the negligence of Cameron County in failing to maintain the street lights on the Queen Isabella Causeway. The Claimants have not brought claims against Cameron County in this federal action but have done so in Texas district court.

The issues before this Court are whether Brown Water and ACBL are entitled to exoneration or limitation of liability under the Limitation of Liability Act, 46 USC §183 *et seq.*, and if not, the percentages of responsibility between Brown Water, ACBL, Cameron County, The State of Texas and the Claimants, and the amount of damages, if any, the Claimants sustained as a result of the accidents.

Petitioner/Complainant, American Commercial Barge Line LLC ("ACBL") was the bareboat charterer and owner *pro hac vice* of the following unmanned barges, having no motive power of their own or other means of propulsion: Barge NM-315, Barge ACL-9933B, Barge VLB-9182, and Barge VLB-9173.

Petitioner/Complainant, ACBL, was the owner of record of Barge VLB-9182 and Barge VLB-9173. Petitioner/Complainant, Deere Credit, Inc. (formerly know as Senstar Finance Company) (hereafter "Deere Credit") was the registered owner of Barge NM-315; Petitioner/Complainant, State Street Bank and Trust Company of Connecticut, National Association, (hereafter "State Street Bank") was the Owner Trustee of Barge ACL-9933B, and Petitioner/Complainant, General Electric Capital Corporation (hereafter "GE Capital") was the Beneficial Owner of Barge ACL-9933B, pursuant to a Trust Agreement dated July 1, 1999. ACL, Deere Credit, State Street Bank, and GE Capital did not contract with Brown Water and had no dominion or control over the barges. Claimants have not contested the Motions for Summary Judgment of ACL, Deere Credit, State Street Bank, and GE Capital.

## 3.    JURISDICTION:

Because this is an action brought in Admiralty under the Limitation of Liability Act, this Court has subject matter jurisdiction. 28 U.S.C. §1333; 46 U.S.C. §183 *et seq.* and the Admiralty Extension Act, 46 U.S.C. app. § 8740.

This Court has *in personam* and *in rem* jurisdiction over all parties and all property.

## 4.    MOTIONS:

The following motions are currently pending:

1.    Motion for Summary Judgment of ACBL filed on December 13, 2004;

2.    Motion for Summary Judgment of ACL filed on December 13, 2004, which is unopposed;

3.    Motion for Summary Judgment filed by Deere Credit, GE Capital and State Street Bank on December 13, 2004, which is unopposed;

4.    Motion for Summary Judgment of A.G. Hill Power filed February 16, 2005;

5.  Petitioners' Motion to Dismiss Third Party Complaint against A.G. Hill Power a/k/a JHB Enterprises, Inc. filed March 2, 2005;

6.  A.G. Hill Power, Inc. a/k/a JHB Enterprises, Inc.'s Motion for Sanctions filed March 7, 2005;

7.  Joint Motion to Dismiss Third Party Complaint against A.G. Hill Power, Inc. a/k/a JHB Enterprises filed March 11, 2005;

8.  Third Party Defendant Cameron County's Motion for Summary Judgment filed April 1, 2005;

9.  Petitioners' Motion to Strike Claimants' Experts Deck and Disler;

10. Petitioners' Motion to Strike the Harris' Claimants' Expert Richard Cortez;

11. Brown Water Petitioners' Motion in Limine; and

12. Claimants' Motions in Limine.

**5.    CONTENTIONS OF THE PARTIES:**

**The Claimants' contentions:**

1.  Claimants contend Brown Water is not entitled to exoneration. Brown Water is not free from fault or negligence with regard to the allision with the Queen Isabella Causeway, the cause of the accidents, or cause of the deaths and injuries.

2.  Claimants contend the *Oregon* presumption of negligence applies to Brown Water because a moving vessel allided with a fixed object and Brown Water has not met its burden to overcome the presumption by proving it was without fault, the stationary object was at fault, or the allision was the result of an inevitable accident.

3.  Claimants contend the *Pennsylvania* Rule applies to Brown Water because the BROWN WATER V was in violation of a statute or regulation intended to prevent allisions or

collisions at the time of the allision with the Queen Isabella Causeway and Brown Water has not proven another party is solely responsible for the accident.

4.    Claimants contend Brown Water is not entitled to limitation of liability.  Claimants' damages were caused by Brown Water's negligence and/or the unseaworthiness of the BROWN WATER V, and Brown Water has not proven lack of privity or knowledge.

5.    Claimants contend Brown Water breached its standard of care and its negligence was a proximate cause of the allision with the Queen Isabella Causeway, the accidents, and the deaths and injuries.

6.    Claimants contend Brown Water failed to act as a reasonably prudent owner or operator of towing vessels, which conduct was a proximate cause of the allision with the Queen Isabella Causeway, the accidents, and the deaths and injuries.

7.    Claimants contend Brown Water failed to properly train or instruct Captain Fowler regarding navigation in the Port Isabel area of the Intracoastal Waterway, which conduct was a proximate cause of the allision with the Queen Isabella Causeway, the accidents, and the deaths and injuries.

8.    Claimants contend Brown Water failed to act as a reasonably prudent owner or operator of a towing vessel when it required Captain Fowler to navigate in an area he had specifically told management and his Master he was not familiar with, he was uncomfortable with, and he felt was just too hard to navigate, which conduct was a proximate cause of the allision with the Queen Isabella Causeway, the accidents, and the deaths and injuries.

9.    Claimants contend Brown Water failed to act as a reasonably prudent owner or operator of a towing vessel when it failed to implement any policies or procedures for its pilots to

obtain information about the weather, the tides, or the currents, which conduct was a proximate cause of the allision with the Queen Isabella Causeway, the accidents, and the deaths and injuries.

10.    Claimants contend Brown Water failed to act as a reasonably prudent owner or operator of a towing vessel when it failed to require its pilots to use navigational charts or maps, which conduct was a proximate cause of the allision with the Queen Isabella Causeway, the accidents, and the deaths and injuries.

11.    Claimants contend Brown Water failed to act as a reasonably prudent owner or operator of a towing vessel when it allowed a pilot inexperienced and uncomfortable in a dangerous area of navigation to pilot the area with four barges in a line in the dark, which conduct was a proximate cause of the allision with the Queen Isabella Causeway, the accidents, and the deaths and injuries.

12.    Claimants contend Brown Water failed to act as a reasonably prudent owner or operator of a towing vessel when it failed to maintain current Notice to Mariners on board the vessel as required by regulations, which conduct was a proximate cause of the allision with the Queen Isabella Causeway, the accidents, and the deaths and injuries.

13.    Claimants contend Brown Water failed to act as a reasonably prudent owner or operator of a towing vessel when it allowed the BROWN WATER V to tow four loaded barges, which conduct was a proximate cause of the allision with the Queen Isabella Causeway, the accidents, and the deaths and injuries.

14.    Claimants contend Brown Water failed to act as a reasonably prudent owner or operator of a towing vessel when it held out the BROWN WATER V as having adequate

horsepower, which conduct was a proximate cause of the allision with the Queen Isabella Causeway, the accidents, and the deaths and injuries.

15.    Claimants contend Captain Fowler was incompetent to navigate the BROWN WATER V under the conditions of September 15, 2001, which conduct was a proximate cause of the allision with the Queen Isabella Causeway, the accidents, and the deaths and injuries.

16.    Claimants contend Captain Fowler was unprepared for the crosscurrents that he encountered when he lost control of his tow and that a competent pilot would have been prepared for the crosscurrents under the same or similar situation, which conduct was a proximate cause of the allision with the Queen Isabella Causeway, the accidents, and the deaths and injuries.

17.    Claimants contend the BROWN WATER V was unseaworthy with privity and knowledge at the time of the allision, which was a proximate cause of the allision with the Queen Isabella Causeway, the accidents, and the deaths and injuries.

18.    Claimants contend the BROWN WATER V did not have enough horsepower to safely tow four loaded barges under the conditions of September 15, 2001, which was a proximate cause of the allision with the Queen Isabella Causeway, the accidents, and the deaths and injuries.

19.    Claimants contend the BROWN WATER V did not have adequate horsepower, which condition was a proximate cause of the allision with the Queen Isabella Causeway, the accidents, and the deaths and injuries.

20.    Claimants contend that the management of Brown Water had privity and knowledge that its pilots, including Captain Fowler, were inadequately trained, incompetent, uncomfortable with navigating in the area, unfamiliar with the area, and not prepared to

meet the conditions, which conduct was a proximate cause of the allision with the Queen Isabella Causeway, the accidents, and the deaths and injuries.

21.   Claimants contend that the management of Brown Water had privity and knowledge that the BROWN WATER V had inadequate horsepower to safely tow four loaded barges under less than ideal conditions, was towing too many barges, lacked navigational aids, lacked current Notice to Mariners, and did not have adequate horsepower, which was a proximate cause of the allision with the Queen Isabella Causeway, the accidents, and the deaths and injuries.

22.   Claimants contend ACBL is not entitled to exoneration.  ACBL is not free from fault or negligence with regard to the allision with the Queen Isabella Causeway, the cause of the accidents, or cause of the deaths and injuries.

23.   Claimants contend ACBL is not entitled to limitation of liability.  ACBL was negligent in its duty to the Claimants with regard to the allision and the accidents and it has not proven lack of privity or knowledge.

24.   Claimants contend ACBL was negligent in hiring Brown Water as its towing contractor and was negligent in entrusting its barges to Brown Water to be navigated under the Queen Isabella Causeway, which conduct was a proximate cause of the allision with the Queen Isabella Causeway, the accidents, and the deaths and injuries.

25.   Claimants contend ACBL violated the Responsible Carrier Program by failing to have written policies and procedures for evaluating contract towers on their ability to provide an acceptable level of safety, which conduct was a proximate cause of the allision with the Queen Isabella Causeway, the accidents, and the deaths and injuries.

26.     Claimants contend ACBL failed to act as a reasonably prudent barge owner in hiring Brown Water as its towing contractor, which conduct was a proximate cause of the allision with the Queen Isabella Causeway, the accidents, and the deaths and injuries.

27.     Claimants contend ACBL failed to act as a reasonably prudent barge owner in hiring a towing contractor without performing any investigation or inquiries of the contractor, including failing to investigate the U.S. Coast Guard incident reports, which conduct was a proximate cause of the allision with the Queen Isabella Causeway, the accidents, and the deaths and injuries.

28.     Claimants contend ACBL failed to act as a reasonably prudent barge owner in hiring a towing contractor without performing a Responsible Carrier Program audit of the contractor, and by failing to provide what information it did learn about the contractor to the persons who make decisions about which contractors to hire on specific jobs, which conduct was a proximate cause of the allision with the Queen Isabella Causeway, the accidents, and the deaths and injuries.

29.     Claimants contend ACBL failed to act as a reasonably prudent barge owner in hiring a towing contractor without contacting other barge owners or local mariners to determine how that contractor performs and that contractor's reputation for safety, which conduct was a proximate cause of the allision with the Queen Isabella Causeway, the accidents, and the deaths and injuries.

30.     Claimants contend ACBL failed to act as a reasonably prudent barge owner in hiring a towing contractor without independently verifying the tugs have the power the contractor has represented, which conduct was a proximate cause of the allision with the Queen Isabella Causeway, the accidents, and the deaths and injuries.

31.    Claimants contend ACBL failed to exercise reasonable care to employ a competent, careful, responsible, and safe contractor to tow its barges, which conduct was a proximate cause of the allision with the Queen Isabella Causeway, the accidents, and the deaths and injuries.

32.    Claimants contend towing barges, especially under bridges such as the Queen Isabella Causeway, is work that involves a risk of physical harm unless it is skillfully and carefully done.

33.    Claimants contend ACBL entrusted its barges to one it knew or should have known would likely use it in a manner involving unreasonable risk of physical harm, which conduct was a proximate cause of the allision with the Queen Isabella Causeway, the accidents, and the deaths and injuries.

34.    Claimants contend their damages will be determined under the laws of Texas, including the Texas Wrongful Death Act and the Texas Survival Statute, because they were non-seamen killed and injured in Texas state territorial waters.

35.    Claimants contend ACBL and Brown Water, as corporate vessel owners, had privity and knowledge, through their managing agents, officers, and supervisory employees, of the conduct and conditions that proximately caused the allision, the accidents, and the deaths and injuries of Claimants.

36.    Claimants contend the deaths and injuries were proximately caused by the negligence and wrongful conduct of Brown Water and ACBL, for which Brown Water and ACBL are jointly and severally responsible.

37.    Claimants contend Anita Harris and Victor Justin Harris are entitled to recover wrongful death damages for past and future pecuniary loss, loss of companionship and society, and

mental anguish arising from the death of Robert V. Harris, and that the estate of Robert V. Harris is entitled to recover survival damages for pain and mental anguish, medical expenses, and funeral and burial expenses, which were proximately caused by the conduct of Petitioners and the allision with the Queen Isabella Causeway.

38.  Claimants contend Raquael Hinojosa, Clarissa Hinojosa, Gaspar Hinojosa II, Rita Hinojosa, and Omar Hinojosa are entitled to recover wrongful death damages for past and future pecuniary loss, loss of companionship and society, and mental anguish arising from the death of Gaspar Hinojosa, and that the estate of Gaspar Hinojosa is entitled to recover survival damages for pain and mental anguish, medical expenses, and funeral and burial expenses, which were proximately caused by the conduct of Petitioners and the allision with the Queen Isabella Causeway.

39.  Claimants contend Carol and Rick Leavell are entitled to recover wrongful death damages for past and future pecuniary loss, loss of companionship and society, and mental anguish arising from the death of Robin Faye Leavell, and that the estate of Robin Faye Leavell is entitled to recover survival damages for pain and mental anguish, medical expenses, and funeral and burial expenses, which were proximately caused by the conduct of Petitioners and the allision with the Queen Isabella Causeway.

40.  Claimants contend Lydia Zamora and Hector Martinez, Sr. are entitled to recover wrongful death damages for past and future pecuniary loss, loss of companionship and society, and mental anguish arising from the death of Hector Martinez, Jr., and that the estate of Hector Martinez, Jr. is entitled to recover survival damages for pain and mental anguish, medical expenses, and funeral and burial expenses, which were proximately caused by the conduct of Petitioners and the allision with the Queen Isabella Causeway.

41.    Claimants contend Juan Antonio Mireles and Soledad Gonzalez Mireles are entitled to recover wrongful death damages for past and future pecuniary loss, loss of companionship and society, and mental anguish arising from the death of Julio Cesar Mireles, and that the estate of Julio Cesar Mireles is entitled to recover survival damages for pain and mental anguish, medical expenses, and funeral and burial expenses, which were proximately caused by the conduct of Petitioners and the allision with the Queen Isabella Causeway.

42.    Claimants contend Esteban and Miriam Rivas are entitled to recover wrongful death damages for past and future pecuniary loss, loss of companionship and society, and mental anguish arising from the death of Stvan Rivas, and that the estate of Stvan Rivas is entitled to recover survival damages for pain and mental anguish, medical expenses, and funeral and burial expenses, which were proximately caused by the conduct of Petitioners and the allision with the Queen Isabella Causeway.

43.    Claimants contend Jacqueline Paddock, William Eugene Kimbrell, and William B. Welch are entitled to recover wrongful death damages for past and future pecuniary loss, loss of companionship and society, and mental anguish arising from the death of Chealsa Welch, and that the estate of Chealsa Welch is entitled to recover survival damages for pain and mental anguish, medical expenses, and funeral and burial expenses, which were proximately caused by the conduct of Petitioners and the allision with the Queen Isabella Causeway.

44.    Claimants contend William Morris Welch and William B. Welch are entitled to recover wrongful death damages for past and future pecuniary loss, loss of companionship and society, and mental anguish arising from the death of Barry Welch, and that the estate of

Barry Welch is entitled to recover survival damages for pain and mental anguish, medical expenses, and funeral and burial expenses, which were proximately caused by the conduct of Petitioners and the allision with the Queen Isabella Causeway.

45.    Claimants contend Brigette Marie Goza, Rene Mata, Gustavo Adolfo Morales, Rolando Lee Moya, Alberto Leroy Moya, Antonio Salinas, Jr., and Roberto Espericueta are entitled to recover personal injury damages for past and future physical pain and mental anguish, disfigurement, physical impairment, loss of earning capacity, and medical expenses, which were proximately caused by the conduct of Petitioners and the allision with the Queen Isabella Causeway.

46.    Claimants contend Frank Mata is entitled to recover property damage caused to his 2001 Ford Mustang, which was proximately caused by the conduct of Petitioners and the allision with the Queen Isabella Causeway.

**The Brown Water Petitioners' contentions:**

On September 15, 2001, the BROWN WATER V, with Captain David Fowler at the helm, was proceeding outbound from Port Isabel, Texas towards Corpus Christi, Texas pushing four barges. Captain David Fowler held the highest license available from the United States Coast Guard for his occupation and was on the third issue of his five year license. As he pushed the barges through the Long Island Swing Bridge, he encountered current conditions caused by a tropical storm in the Gulf of Mexico. He also discovered that the navigational lights on the Queen Isabella Causeway were not functioning. The maintenance of the navigational lights was the responsibility of the State of Texas. The strength of the current surprised Captain Fowler who attempted to hug or navigate his vessel close to the green buoys which marked the perimeter of the channel. The channel markings were off station or in different positions than referenced in

the nautical charts. While inside the buoys near green channel marker 147, the BROWN WATER V "tagged" or touched the channel bottom causing it to lose forward momentum. Due to the strong current, the head or bow of the tow was pushed toward the Port Isabel side of the channel and Captain Fowler was unable to correct the tow's course sufficiently before the lead barge allided with the Queen Isabella Causeway ("Causeway"). The lead barge touched the side of the bridge at less than 1 MPH. Although an allision with the Queen Isabella Causeway was something that had been foreseen by the State of Texas as such allisions are not uncommon, the State of Texas had failed to build a proper fendering system around the Queen Isabella Causeway to withstand even such a low speed impact. As a result, several sections of the causeway fell into the water. Street lights on the causeway that Cameron County was responsible for maintaining were also not operational and had not been operational for months. Despite prior accidents, this problem had not been addressed. As a result, in the darkness, nine vehicles drove off the bridge into the water. Most of the vehicles were returning from South Padre Island after closing time of a local bar, Louie's Backyard, as the incident occurred slightly after 2:00 a.m. The incident resulted in eight deaths, two personal injuries, and one claimed personal injury.

Brown Water Marine Service, Inc., as the bareboat charterer of the vessel and the employer of the crew, and Brown Water Towing I, Inc., as the owner of the vessel, claim an entitlement to exoneration from liability. The excessive tropical activity, combined with the vessel unexpectedly tagging bottom while within the buoys of the channel, caused the accident to occur without negligence by the Brown Water entities or unseaworthiness of the BROWN WATER V. The BROWN WATER V at all times was seaworthy and capable of transiting the channel. Brown Water Marine Service was not negligent. Alternatively and in the unlikely

event that the Court finds that the accident was caused by errors of David Fowler, these mistakes would be navigational errors which occurred without the privity or knowledge of the Brown Water entities. As a result, under the Maritime Law, the Brown Water entities are entitled to limit their liability to the value of the limitation fund.

As to damages, if any, the Petitioners contend that the Claimants' damages are governed by Maritime Law. The Petitioners contend that Rolando Lee Moya, Alberto Leroy Moya, Antonio Salinas, Jr. and Robert Espericueta are not entitled to recover damages as a matter of law. The Petitioners require that the Claimants prove their alleged damages to the fact finder by a preponderance of the evidence.

**ACBL's contentions:**

1.  ACBL seeks exoneration from liability for the collision at issue (hereafter sometimes referred to as ("the Accident") and the resulting claims because it is free from any fault or negligence.

2.  The evidence establishes, and the Claimants do not dispute, that ACBL's four barges, namely the NM-315, VLB-9182, ACL-9933B, and VLB-9173 were in all respects seaworthy and did not cause or contribute to the collision.

3.  The tug BROWN WATER V was owned and operated by an independent towage contractor, Brown Water, for whom ACBL has no liability in law or in fact.

4.  The Claimants do not dispute that Brown Water was an independent contractor and do not seek to hold ACBL liable for the negligence of the independent towage contractor or for any act or omission of Brown Water or its employees during the performance of the towage of ACBL's barges.

5.  The uncontradicted evidence establishes that the towage of ACBL's barges and the navigation of the tug and tow were controlled solely by Brown Water through its management and employees, not ACBL.

6.  ACBL was not negligent as alleged by Claimants and it acted reasonably in contracting with Brown Water to tow its barges on the Intracoastal Waterway (hereinafter "ICW").

7.  Brown Water was an established towing company and had safely and reliably towed hundreds of ACBL's barges, as well as the barges of Brown Water's other customers, in its ten-year history with ACBL.

8.  ACBL has previously submitted its motion for summary judgment and related pleadings and exhibits, including memorandum in support of motion for summary judgment (R. Doc. 307) and its reply memorandum (R. Doc. 375) to the claimants' opposition, detailing its contentions and arguments.  ACBL adopts and incorporates herein those pleadings and its suggested findings of fact and conclusions of law filed herewith.

9.  No court has ever held the tow liable for a collision caused solely by the tug under the theory advanced by Claimants, namely (1) that the tow was "independently negligent" by "negligently hiring" the tower or (2) by "negligently entrusting" its barges to a tower.

10. Claimants have no evidence to substantiate any claim that ACBL was independently negligent in contracting with Brown Water, and the facts and evidence conclusively establish that ACBL was not negligent and is free from fault and is therefore entitled to be exonerated.

11. Brown Water alone decided to use the tug M/V BROWN WATER V to tow ACBL's barges and controlled all aspects of the towage operation.

12. Prior to the collision, ACBL had offered Brown Water three barges for towage from

49477>3026513

21

Brownsville to Boliver and had no knowledge that the BROWN WATER V was underway at the time of the accident, much less than it was towing four barges.

13. No employees or representatives of ACBL were onboard the tug or barges at the time of the towage.

14. The cause of the collision was the operational negligence of the crew of the BROWN WATER V, who failed to properly monitor the weather and tide conditions in the area of the Accident, failed to properly navigate the tug and barges under prevailing conditions, grounding the tug and losing control, causing the tug and tow to leave the navigation channel, and collide with the bridge.

15. Claimants allegations as to the cause of the accident are all negligent acts or omissions attributable to Brown Water.

16. The law does not impose any legal duty upon ACBL to discover and remedy any alleged deficiencies of Brown Water, its tug or its personnel.

17. The evidence establishes that ACBL reasonably believed that Brown Water had the knowledge, skill and proper equipment to tow ACBL's barges.

18. There is no evidence that ACBL actually knew or had reason to believe that Brown Water, an established towing company with substantial experience towing barges in the ICW, was incompetent or otherwise lacked the knowledge, skill or equipment to tow ACBL's barges from Brownsville to Boliver.

19. ACBL is not liable under the theory of negligent hiring or negligent entrustment.

20. There is no evidence of "independent negligence" of ACBL that caused Brown Water's tug to push the uncontested seaworthy barges of ACBL into the Queen Isabella Causeway.

21.    ACBL sustained damages as a result of the Accident and is entitled to recover its damages from Brown Water.

22.    Alternatively, ACBL contends it is entitled to limit its liability to the value of the four barges and their pending freight; any alleged negligence is not within the privity and knowledge of ACBL.

23.    In further alternative, to the extent that any Claimant has a recovery against ACBL, which is denied, then ACBL is entitled to complete indemnity from Brown Water and alternatively contribution from Brown Water.

**ACL's contentions:**

ACL's motion for summary judgment filed on December 13, 2004 is unopposed, and the Court should enter a final decree of exoneration in favor of ACL. ACL was merely the owner of record of Barge VLB-9182 and Barge VLB-9173. Long before the collision, these barges were bareboat chartered and delivered to ACBL, which then became the owner *pro hac vice* of the barges. ACL had no dominion or control over the barges at the time of the accident. ACBL contracted with Brown Water for certain towage services, without any involvement by ACL.

**Deere Credit, GE Capital, And State Street Bank's contentions:**

The motion for summary judgment of Deere Credit, GE Capital, and State Street Bank (hereafter "the Financial Institutions") filed on December 13, 2004 is unopposed, and the Court should enter a final decrees of exoneration in favor of these parties. These parties are financial institutions whose names appear in certain documents on file with the Coast Guard for two of the four barges, namely Barge NM-315 and Barge ACL-9933B, pursuant to certain lease

arrangements that were in place. The Financial Institutions did not operate the barges, had no contractual relationship with Brown Water, and had no dominion or control over the barges. Long before the collision, the NM-315 and ACL-9933B were bareboat chartered to and delivered to ACBL, which then became the owner *pro hac vice* of the barges. ACBL contracted with Brown Water for certain towage services, without any involvement by the Financial Institutions.

**Contentions of Third-Party Defendant Cameron County**

1. Third-Party Defendant Cameron County contends that it is entitled to governmental immunity.

2. Third-Party Defendant Cameron County contends that Petitioners cannot recover directly or indirectly from Third-Party Defendant Cameron County because the Texas Tort Claims Act and the laws of the State of Texas do not allow any state law claims unless Third-Party Defendant Cameron County's governmental immunity has been waived, and Cameron County's governmental immunity has not been waived.

3. Third-Party Defendant Cameron County contends that it is subject to the statutory limits on liability and damages set forth in the Texas Tort Claims Act, Chapter 101 of the Tex. Civ. Prac. & Rem. Code, including those set forth in §§ 101.023, 101.024, and 101.025.

4. Third-Party Defendant Cameron County contends that Petitioners and Claimants seek damages outside the scope of the Texas Tort Claims Act, specifically the limitation on the amount of liability set forth in Tex. Civ. Prac. & Rem. Code § 101.023.

5. Third-Party Defendant Cameron County contends that any alleged damages

suffered by any claimant in their individual capacity are derivative claims and subject to the statutory limitations on damages set forth in TEX. CIV. PRAC. & REM. CODE § 101.023.

6. Third-Party Defendant Cameron County contends that the allision was not caused or contributed to by any fault, neglect, negligence or lack of due care on the part of Cameron County.

7. Third-Party Defendant Cameron County contends that it did not commit any act of negligence in maintaining and operating the street lights on the Queen Isabella Causeway.

8. Third-Party Defendant Cameron County contends, and the parties do not dispute, that the navigational lights on the Queen Isabella Causeway were maintained and operated by the State of Texas.

9. Third-Party Defendant Cameron County contends that Petitioners are not entitled to exoneration or to limitation of liability under the Limitation of Vessel Owner's Liability Act, because the allision was caused by the independent negligence and fault of the owners and management of Petitioners.

10. Third-Party Defendant Cameron County contends that the presumptions afforded by the *Oregon* Rule under admiralty law are applicable to Petitioners because a moving vessel allided with a fixed object and Petitioners have not met their burden to overcome the presumptions by proving that they were without fault, that the stationary object was at fault, or that the allision was the result of an inevitable accident.

11. Third-Party Defendant Cameron County contends that Petitioners are not entitled

49477>3026513

to exoneration or to limitation of liability under the Limitation of Vessel Owner's Liability Act, because the allision was caused by the sole, joint, and/or concurrent negligence and fault of Petitioners, their officers, agents, servants, employees, masters and crews, and by the unseaworthiness of the Petitioners' vessels, all of which was within the privity and knowledge of the owners and management of Petitioners.

12.    Third-Party Defendant Cameron County contends that any loss or damages allegedly sustained by any claimant at the time, place, and occasion mentioned in Petitioners' Third-Party Complaints were caused in whole by the negligence, want of care, or intentional conduct of Petitioners, and not by any negligence or fault or want of care on the part of Cameron County.

13.    Third-Party Defendant Cameron County contends that Claimants' alleged injuries and damages were caused in whole or in part, or contributed to, by the negligence or fault or want of care by parties, persons, or instrumentalities over whom Cameron County exercised no control and for whose acts Cameron County is not legally responsible.

14.    Third-Party Defendant Cameron County contends that in the event that it is determined that Cameron County was in any way at fault in connection with the allision, all of which is expressly denied, then Cameron County contends that such fault was not a substantial and material factor in causing the allision, and that the negligence of the Petitioners was extraordinary and was the intervening and superseding and sole proximate cause of the allision.

15.    Third-Party Defendant Cameron County contends that it did not violate any

statutory rule intended to prevent allisions, and as a result, the presumptions afforded by the *Pennsylvania* Rule under admiralty law do not apply to Cameron County.

16. Third-Party Defendant Cameron County contends that no claim for contribution may be asserted against Cameron County as it possesses governmental immunity both from suit and from liability, to the extent of the partial waiver of immunity given by the Texas Tort Claims Act.

**6.   ADMISSIONS OF FACT:**

1. The BROWN WATER V and its barges allided with the Queen Isabella Causeway at approximately 2:00 a.m., on September 15, 2001.

2. The allision caused two 80-foot sections of the causeway to collapse.

3. As a result of the collapse of the Queen Isabella Causeway, nine vehicles drove off the causeway and into the water through the missing sections of the causeway, resulting in the deaths of Robert Victor Harris, Gaspar Saenz Hinojosa, Robin Faye Leavell, Hector Martinez, Jr., Julio Cesar Mireles, Stvan Francisco Rivas, Barry R. Welch, and Chealsa Louise Welch. Rene Francisco Mata, Gustavo Adolofo Morales and Brigette Marie Goza claim physical injuries.

4. Each of the deaths and alleged injuries arising out of the allision with the Queen Isabella Causeway occurred in Texas territorial waters and the navigable waters of the United States.

5. None of the people killed or injured as a result of the allision with the Queen Isabella Causeway were seamen.

6.   Anita Harris was the wife of Robert V. Harris at the time of his death, Victor Justin Harris was the child of Robert V. Harris, and Anita Harris is Representative of the Estate of Robert V. Harris.

7.   Raquel Hinojosa was the wife of Gaspar Hinojosa at the time of his death, Clarissa Hinojosa, Omar Hinojosa, and Gaspar Hinojosa II, were the children of Gaspar Hinojosa, Rita Hinojosa was a parent of Gaspar Hinojosa, and Omar Hinojosa is the Representative of the Estate of Gaspar Hinojosa.

8.   Carol and Rick Leavell are the parents of Robin Faye Leavell and are the Representatives of the Estate of Robin Faye Leavell.

9.   Lydia Zamora and Hector Martinez, Sr. were the parents of Hector Martinez, Jr., and Lydia Zamora is the Representative of the Estate of Hector Martinez, Jr.

10.  Juan Antonio Mireles and Soledad Gonzalez Mireles were the parents of Julio Cesar Mireles and J. Antonio Mireles is the Representative of the Estate of Julio Cesar Mireles.

11.  Esteban and Miriam Rivas were the parents of Stvan Rivas and are the Representatives of the Estate of Stvan Rivas.

12.  William Eugene Kimbrell was the parent of Chealsa Welch, William B. Welch is the son of Chealsa Welch, and Jacqueline Paddock is the Representative of the Estate of Chealsa Welch.

13.  William Morris Welch was the father of Barry Welch, William B. Welch was the son of Barry Welch, and Jacqueline Paddock is the Representative of the Estate of Barry Welch.

14.  Frank Mata was the owner of the 2001 Ford Mustang that sustained damage as a result of the occurrence in question.

15. The BROWN WATER V was owned by Brown Water Towing I, Inc. and bareboat chartered and crewed by Brown Water Marine Service, Inc.

16. Captain David Fowler was an employee of Brown Water Marine Service, Inc. and was acting in the course and scope of such employment at all times pertinent to his conduct related to the subject allision.

17. Captain Rocky Wilson was an employee of Brown Water Marine Service, Inc. and was acting in the course and scope of such employment at all times pertinent to his conduct related to the subject allision.

18. ACBL was the owner *pro hac vice* of the four barges being towed by the BROWN WATER V at the time they allided with the Queen Isabella Causeway.

19. ACBL hired Brown Water, as an independent contractor.

20. The BROWN WATER V was towing/pushing four ACBL barges in a straight line.

21. The BROWN WATER V was equipped with two Detroit Diesel 12v71N engines, with N55 fuel injectors, at the time of the allision with the Queen Isabella Causeway.

22. The value of the BROWN WATER V and its pending freight after the accident was $250,000.00 and $20,000.00, respectively.

23. At the time of the allision, Captain Fowler held a proper United States Coast Guard license that had never been suspended or revoked.

24. At all material times, American Commercial Barge Line, LLC ("ACBL"), a Delaware limited liability company with its principal place of business in Indiana, was the owner *pro hac vice* and bareboat charterer of the NM-315, VLB-9182, ACL-9933B, and VLB-9173.

25.   At all material times, Deere Credit Inc. (formerly Senstar Finance Company), was merely the owner of record of Barge NM-315.

26.   At all material times, State Street Bank and Trust Company of Connecticut, National Association, was merely the Owner Trustee of Barge ACL-9933B.

27.   At all material times, General Electric Capital Credit Corporation was merely the Beneficial Owner of Barge ACL-9933B.

28.   At all material times, American Commercial Lines LLC ("ACL"), a Delaware limited liability corporation with its principal place of business in Indiana, was the owner of record of Barge VLB-9182.

29.   At all material times, American Commercial Lines LLC was the owner of record of Barge VLB-9173.

30.   On September 15, 2001, Barge NM-315 was the lead barge in the tow of the tug BROWN WATER V.

31.   ACL is the parent company of ACBL.

32.   Brown Water is an independent contract tower, based in Rockport, Texas, which had been in the towing business for over 10 years at the time of the Accident and owned and operated 12 tugs.

33.   Brown Water was an independent towage contractor engaged by American Commercial Barge Lines LLC to perform certain towage work.

34.   At all material times and on September 15, 2001, Barges NM-315, VLB-9182, ACL-9933B, and VLB-9173 were documented with the United States Coast Guard.

35.   The value of the barges, immediately following the Accident, and their pending freight, is not contested or in dispute nor do the parties dispute the form and sufficiency of security

previously filed with the Court. The value of the barges and pending freight after the accident was:

| Barge No. | Value | Pending Freight |
|-----------|-------|-----------------|
| VLB-9182 | $150,000.00 | $26,250.00 |
| VLB-9173 | $150,000.00 | $18,253.00 |
| NM-315 | $110,000.00 | $27,797.00 |
| ACL-9933B | $275,000.00 | $31,179.00 |

36.    Third-Party Defendant Cameron County is a Texas governmental entity.

## 7.    CONTESTED ISSUES OF FACT:

**The Claimants' contested issues of fact:**

1.    A purpose of the Responsible Carrier Program is to provide minimal standards of safe practice that companies in the tow and barge industry should undertake.

2.    One of the standards of the Responsible Carrier Program is that barge owners must have written policies and procedures for evaluating contract towers on their ability to provide an acceptable level of safety.

3.    At the time it hired Brown Water to tow it barges that allided with the Queen Isabella Causeway, ACBL did not have any written policies and procedures to evaluate the competence, care, or safety of its contract towers.

4.    According to the Coast Guard's PSIX database, Brown Water's vessels had been involved in 24 reportable marine casualties within three years before the allision with the Queen Isabella Causeway.

5.    At the time it hired Brown Water to tow the barges at issue, ACBL knew Brown Water was not Responsible Carrier Program certified.

6.    At the time of the allision, the BROWN WATER V was not carrying a current copy of the Notice to Mariners.

7.    The pilots of the BROWN WATER V had not been utilizing the marine charts at the time of the allision with the Queen Isabella Causeway.

8.    At the time ACBL hired it to tow the barges at issue, Brown Water did not have a plan in place for training its pilots.

9.    Before the allision, Captain Fowler had told his superiors at Brown Water that he was uncomfortable navigating barges in the area between Brownsville and the Queen Isabella Causeway.

10.    At the time of the allision, this was Captain Fowler's first time to navigate under the Queen Isabella Causeway at night.

11.    Captain Fowler was not expecting the strong crosscurrent that took control over his tow and had not set up his approach to the Queen Isabella Causeway in anticipation of the crosscurrent.

12.    Captain Fowler did not know the red and green navigation aids between the Long Island Swing Bridge and the Queen Isabella Causeway were outside the channel and thought they marked the edge of the channel.

13.    The engines on the BROWN WATER V could not produce adequate horsepower on the day of the alllision with the Queen Isabella Causeway.

14.    ACBL had a rule of thumb that a towing vessel should have a minimum of 200 horsepower per barge, when navigating under ideal circumstances.

15.    Even after the allision with the Queen Isabella Causeway, ACBL contends it has no basis to question the competence of Brown Water to tow its barges.

16. Even after the allision with the Queen Isabella Causeway, ACBL contends that Brown Water has provided it good service without any major incidents.

17. Brown Water was not free from fault or negligence in the allision.

18. The allision with the Queen Isabella Causeway was not an inevitable accident.

19. Brown Water cannot overcome the *Oregon* presumption or the *Pennsylvania* Rule.

20. Brown Water's violation of Coast Guard regulations by failing to carry a current Notice to Mariners was a contributing cause of the allision.

21. Brown Water had privity and knowledge of the acts of negligence and conditions of unseaworthiness of the BROWN WATER V that caused the allision.

22. Captain Fowler's incompetence caused the allision.

23. The BROWN WATER V's unseaworthiness caused the allision.

24. Brown Water failed to meet its standard of care as a reasonably prudent owner and operator of a towing vessel, which conduct proximately caused the allision, the accidents, and the deaths and injuries.

25. ACBL's negligence in hiring Brown Water and entrusting its barges to Brown Water.

26. ACBL was not free from fault or negligence in the allision.

27. ACBL had privity and knowledge of the acts of negligence that caused the allision.

28. The percentage of responsibility for causing the allision and/or the Claimants' damages, and that Brown Water and ACBL are jointly and severally responsible.

29. As a result of the collapse of the Queen Isabella Causeway, Rolando Lee Moya, Alberto Leroy Moya, Antonio Salinas, Jr., and Roberto Espericueta sustained personal injuries.

30. The amount of damages sustained by Claimants as a result of the allision with the Queen Isabella Causeway and the accidents.

49477>3026513

33

31.   ACBL's employee in charge of hiring Brown Water for the tow at issue would have required at least 250 horsepower per barge, when navigating the Western Intracoastal Waterway, including the area where the allision occurred.

32.   At the time of the allision the red and green buoys between the Long Island Swing Bridge and the Queen Isabella Causeway were in the position charted on nautical chart 11302.

33.   The red and green buoys had been moved to their current positions in 1990, and this fact was duly published to Mariners in the United States Coast Guard Light List.

34.   Brown Water's negligence in failing to require meetings and exchanges of information at watch changes was a cause of the allision, the accidents, and the deaths and injuries of Claimants.

35.   Brown Water's negligence in failing to require that their Masters check anticipated weather, tide, and current conditions on the intended routes before configuring their tows was a cause of the allision, the accidents, and the deaths and injuries of Claimants.

36.   Brown Water's negligence in failing to require that their Masters check anticipated weather, tide, and current conditions on the intended routes before leaving port was a cause of the allision, the accidents, and the deaths and injuries of Claimants.

37.   Tim Chapman, Chad Chapman, Rocky Wilson, and Steve Mosher were managing agents, officers, and supervisory employees of Brown Water, whose knowledge and conduct bind Brown Water, as a corporate owner of a vessel, for purposes of privity and knowledge in this case.

38.   Norb Whitlock, James Farley, Christian Brinkop, Patrick Hoessle, Philllip Timberlake, Peter Kazunas, and Norman Ivey were managing agents, officers, and supervisory

employees of ACBL, whose knowledge and conduct bind ACBL, as a corporate owner of a vessel, for purposes of privity and knowledge in this case.

39.   The managing agents, officers, and supervisory employees of Brown Water personally participated in and brought about the unseaworthy condition of the BROWN WATER V.

40.   The managing agents, officers, and supervisory employees of Brown Water personally participated in and brought about the negligent conduct that proximately caused the allision, the accidents, and the deaths and injuries of Claimants.

41.   The managing agents, officers, and supervisory employees of Brown Water knew and should have known about the unseaworthy condition of the BROWN WATER V.

42.   The managing agents, officers, and supervisory employees of Brown Water knew and should have known about the negligent conduct that proximately caused the allision, the accidents, and the deaths and injuries of Claimants.

43.   The managing agents, officers, and supervisory employees of ACBL personally participated in and brought about the negligent conduct of ACBL in hiring Brown Water to tow its barges, including their day-to-day responsibility for implementing management policies, supervising the persons who made the decision to hire Brown Water, logistical activities of barges and towing vessels, decisions of hiring towing vendors, including Brown Water, and management and responsibility for hiring towing vendors.

44.   The managing agents, officers, and supervisory employees of ACBL knew and should have known about the negligent conduct of ACBL in hiring Brown Water to tow its barges, including their day-to-day responsibility for implementing management policies, supervising the persons who made the decision to hire Brown Water, logistical activities

of barges and towing vessels, decisions of hiring towing vendors, including Brown

Water, and management and responsibility for hiring towing vendors.

**The Brown Water Petitioners' contested issues of fact:**

1. The extent that weather, current and tide conditions caused the accident.

2. The negligence, if any, of any party and whether such alleged negligence was the proximate cause of the allision or of any damages resulting therefrom.

3. Acts of independent and/or intervening negligence and whether they supersede the negligence, if any, of any party.

4. Damages and/or injuries claimed by Claimants and/or proper damage elements comprising any recovery and the cause and extent thereof.

5. Whether Claimants can sustain their burden of proof.

6. Whether any alleged negligence and/or unseaworthiness was causually related to the allision and was within the privity or knowledge of any Petitioner.

7. Whether ACBL is free from fault and entitled to exoneration from liability and/or alternatively limitation of liability.

8. Whether the State of Texas was negligent.

9. Damage mitigation and/or failure to mitigate damages, if any.

10. Whether the Brown Water Towing I, Inc. is entitled to exoneration from liability.

11. Whether the Brown Water Marine Service, Inc. is entitled to exoneration from liability.

12. Whether Brown Water Towing I, Inc. was negligent and whether such negligence, if any, caused the Claimants' alleged injuries.

13. Whether Brown Water Marine Service, Inc. was negligent and whether such negligence,

if any, caused the Claimants' alleged injuries.

14. Whether the BROWN WATER V was unseaworthy on the occasion in question and whether such unseaworthiness, if any, was a proximate cause of the alleged incident and injuries in question.

15. Whether Brown Water Towing I, Inc. had privity or knowledge of any unseaworthiness or negligence resulting in injury to the Claimants.

16. Whether Brown Water Marine Service, Inc. had privity or knowledge of any unseaworthiness or negligence resulting in injury to the Claimants.

17. Whether each Claimant was negligent and whether such negligence, caused or contributed to the alleged injuries in question.

18. Whether Cameron County was negligent and whether such negligence caused or contributed to the Claimants' injuries.

19. The comparative fault, if any, that should be assessed between the Parties.

20. The amount of money, if any, that would fairly and reasonably compensate each Claimant for their injuries, if any, sustained in the incident in question.

21. Whether the incident was the result of an Act of God and/or unavoidable accident.

22. Whether Jacqueline Paddock's parental rights with respect to Chealsa Welch were terminated.

23. On September 15, 2001, the navigation lights on the Queen Isabella Causeway, whose maintenance was the responsibility of the State of Texas, were not in operation as they should have been.


**ACBL's contested issues of fact:**

49477>3026513

37