IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF TEXAS
BROWNSVILLE DIVISION

| | | |
|---|---|---|
| **IN RE THE COMPLAINT AND** | § | **CIVIL ACTION NO. B-01-157** |
| **PETITION OF BROWN WATER** | § | **Consolidated with** |
| **TOWING I, INC., ET AL.** | § | **CIVIL ACTION NO. B-02-004** |
| | § | **and** |
| | § | **CIVIL ACTION NO. B-02-125** |
| | § | |
| | § | **ADMIRALTY** |

## OPINION AND ORDER

BE IT REMEMBERED that on June 17, 2005, the Court **DENIED** Third-Party Defendant Cameron County's Motion for Summary Judgment. Dkt. No. 380.

**I.   Background**

This admiralty case concerns the allision of the lead of four barges, in tow of the tug BROWN WATER V, with the Queen Isabella Causeway, on September 15, 2001. The impact, which caused a portion of the Causeway to collapse, resulted in the injuries and deaths of several individuals when their vehicles fell through the newly formed chasm. The Causeway spans a navigable waterway and connects Port Isabel and South Padre Island, Texas.

In the months following the allision, the parties associated with the tug and barges involved in the allision[1] filed separate causes of Exoneration from or Limitation of Liability pursuant to the Limitation of Shipowners' Liability Act ("Limitation Act"), 46 App.U.S.C. §§

---

[1]The Court shall refer to the following collectively as "petitioners":  Brown Water Towing I, Inc., Brown Water Marine Service, Inc. (sometimes hereinafter referred to as "Brown Water"); and American Commercial Lines, LLC, American Commercial Barge Line, LLC, Deere Credit, Inc. (formerly Senstar Finance Co.), State Street Bank and Trust Company of Connecticut, National Association, and General Electric Capital Corp (sometimes hereinafter referred to as "ACBL").

181-89. Dkt. No. 1; Dkt. No. 1 in C.A. No. B-02-004; Dkt. No. 1 in C.A. No. B-02-125. The Court eventually consolidated all three causes of action. Dkt. No. 47; Dkt. No. 9 in C.A. No. B-02-125.

On September 6, 2002, Brown Water motioned the Court for leave to assert a third-party complaint against Cameron County, Texas ("County"). Dkt. No. 208. The Court granted the motion on September 13, 2004. Dkt. No. 261. The complaint alleges causes of action for contribution and/or indemnity against the County. Specifically, Brown Water asserts that the County "was responsible for maintaining and operating lights on the Queen Isabella Causeway. Lights that [the] County was responsible for maintaining and operating were not operating on the day of the incident due to [the] County's negligence and/or negligence per se. This negligence and/or negligence per se caused or contributed to the allision and/or caused or contributed to several subsequent deaths and personal injuries." Dkt. No. 269, ¶4.

On April 1, 2005, the County motioned for summary judgment against Brown Water.[2] Dkt. No. 380. Noting that it qualifies as a governmental unit under the Texas Tort Claims Act ("TTCA"), Tex.Civ.Prac.&Rem.Code §§101.001(3)(B), the County argues that it can be held liable only under specific circumstances defined under the TTCA. In relevant part, the TTCA provides:

> A governmental unit in the state is liable for:
> (1) . . . personal injury, and death proximately caused by the wrongful act or omission or the negligence of an employee acting within his scope of employment if:
>> (A) the . . . personal injury, or death arises from the operation or use of a motor-driven vehicle or motor-driven equipment; and
>> (B) the employee would be personally liable to the claimant according to Texas law; and
>
> (2) personal injury and death so caused by a condition or use of tangible personal or real property if the government unit would, were it a private person, be liable to the claimant according to

---

[2]The County's summary judgment motion sought relief against Brown Water and ACBL. However, in an order dated June 17, 2005, this Court granted ACBL's motion for summary judgment resulting in its dismissal from these proceedings. Therefore, the County's motion is moot as to ACBL and the analysis of ACBL's complaint is omitted.

Texas law.

Tex.Civ.Prac.&Rem.Code §§101.021. The County notes that the third-party complaint fails to "complain of any act or omission by an employee" of the County, "any act which would be the proximate cause of any damages as a result of the operation or use of a motor diriven[sic] vehicle or equipment; or any condition or use of tangible personal or real property that was the proximate cause of any damages." Dkt. No. 380, p.4. The County asserts, therefore, that the pleading fails to provide any facts that waive its immunity as defined under the TTCA.

On April 20, Brown Water filed its response to the County's motion arguing that its claims for contribution and/or indemnity arise under maritime law. Dkt. No. 383. Furthermore, Brown Water notes that the protections afforded by Eleventh Amendment of the United States Constitution do not extend to state agencies such as the County. Accordingly, Brown Water argues, because its cause of action arises in admiralty, state law and the TTCA do not apply.

The County replies by arguing that maritime law does not control Brown Water's indemnity/contribution claims since its alleged wrongful conduct bears "no relationship to traditional maritime activity." Dkt. No. 386. The County avers that the claimed wrongful conduct is not a maritime tort since the suit involves the lighting of the Causeway, "which purpose is to light the street, not the waterway." Therefore, the County argues, Texas law applies to Brown Water's claims against the County.

## II.     Standard of Review

The County's grounds for summary judgment focus solely on the sufficiency of Brown Water's complaint. The County contends that the complaint lacks factual allegations concerning the waiver of governmental immunity as prescribed by the TTCA. Neither the County nor Brown Water have pointed to, or provided, any evidence (i.e., affidavits or deposition testimony) outside of the pleadings in support of their briefs. Therefore, the Court shall evaluate the County's motion as a motion to dismiss under Fed.R.Civ.Pro.12(b)(6). See St. Paul Mercury Ins. Co. v. Williamson, 224 F.3d 425, 440 (5th Cir. 2000) ("[W]here a motion for summary judgment is solely based on the pleadings or only challenges the sufficiency of

3

the plaintiff's pleadings, then such a motion should be evaluated in much the same way as a Rule 12(b)(6) motion to dismiss.").[3]

Rule 12(b)(6) allows a defendant to move for dismissal if the plaintiff fails to state a claim upon which relief can be granted. Fed.R.Civ.Pro. 12(b)(6). In assessing a motion pursuant to Rule 12(b)(6), the Court accepts the "complaint's well-pleaded facts as true and view[s] them in the light most favorable to" Brown Water. Johnson v. Johnson, 385 F.3d 503, 529 (5th Cir. 2004). The "motion to dismiss should not be granted unless [Brown Water] would not be entitled to relief under any set of facts that [it] could prove consistent with the complaint." Id.

### III.   Discussion

#### A.   Admiralty Jurisdiction

Brown Water's complaint seeks indemnification and/or contribution under general maritime law from the County for causing the allision and/or the deaths of the claimants in the limitation proceeding. The County's motion for summary judgment presupposes the applicability of state law to Brown Water's third-party claims. Accordingly, the Court must initially determine whether maritime law controls Brown Water's third-party claims.

Title 28 of the United States Code, § 1333(1) provides the district courts with original jurisdiction over "[a]ny civil case of admiralty or maritime jurisdiction . . . ." The Admiralty Extension Act, 46 U.S.C.App. § 740, augments admiralty jurisdiction to "all cases of damage or injury, to person or property, caused by a vessel on navigable waters, notwithstanding that such damage or injury be done or consummated on land." The County does not, nor could it, contest that admiralty jurisdiction exists over Brown Water's limitation proceeding. Jerome B. Grubart, Inc. v. Great Lakes Dredge & Dick Co., 513 U.S. 527, 534 (1995); Scarborough v. Clemco Indus., 391 F.3d 660, 663 (5th Cir. 2004); 46 App.U.S.C. § 740; see In re Amtrak

---

[3] Even if the Court were to err in evaluating the County's motion as a Rule 12(b)(6) motion versus a Rule 12(c) motion ("Motion for Judgment on the Pleadings"), it is of no consequence since the analysis is the same for both. Johnson v. Johnson, 385 F.3d 503, 529 (5th Cir. 2004).

"Sunset Limited" Train Crash in Bayou Canot, 121 F.3d 1421, 1426-27 (11th Cir. 1997); S.C. Loveland v. East West Towing, Inc., 415 F. Supp. 596, 604 (S.D.Fla. 1976); see also In re Magnolia Marine Trans. Co., 366 F.3d 1153 (10th Cir. 2004); Folkstone Maritime, Ltd. v. CSX Corp., 64 F.3d 1037 (7th Cir. 1995); In re Complaint Taira Lynn Marine Ltd. No. 5, L.L.C., 349 F. Supp. 2d 1026 (W.D.La. 2004); In re American Milling Co., 270 F. Supp. 2d 1068 (E.D.Mo. 2003); Complaint of J.E. Brenneman Co., 782 F. Supp. 1021 (E.D.Pa. 1992). "'With admiralty jurisdiction, . . . comes the application of substantive admiralty law.'" Yahama Motor Corp., U.S.A. v. Calhoun, 516 U.S. 199, 206 (1996) (quoting East River S.S. Corp. v. Transamerica Delaval Inc., 476 U.S. 858, 864 (1986)).

The County, however, is not a claimant in the limitation proceeding, but rather a third-party defendant to Brown Water's indemnity/contribution claims. The determination that admiralty jurisdiction exists over the limitation proceeding does not resolve which law controls Brown Water's claims against the County. Bernard v. U.S. Lines, Inc., 475 F.2d 1134 (4th Cir. 1973) (stating that Fed.R.Civ.Pro. Rule 14(c) does not create admiralty jurisdiction); St. Paul Fire & Marine Ins. v. United States, 28 F. Supp. 2d 472, 475-77 (E.D. Tenn. 1998) (refusing to extend admiralty jurisdiction over indemnity/contribution claim without separate basis for admiralty jurisdiction); Bradford v. Indiana & Michigan Elec. Co., 588 F. Supp. 708, 712-13 (S.D.W.Va. 1984) (same); see Debellefeuille v. Vastar Offshore, Inc., 139 F. Supp. 2d 821, 824 (S.D.Tex. 2001) (Kent, J.) ("[W]hen a plaintiff has sued multiple defendants, the jurisdictional inquiry must be undertaken for each defendant." (citing Grubart, 513 U.S. at 548 (O'Connor, J., concurring))); see also 2 THOMAS J. SCHOENBAUM, ADMIRALTY & MARITIME LAW §21-8, at p.431 (4th ed. 2004) ("[A] problem in taking full advantage of [admiralty's] liberal third-party practice is the question of jurisdiction over the added claims and parties."); Marathon Pipe Line Co. v. Drilling Rig ROWAN/ODESSA, 761 F.2d 229, 234 (5th Cir. 1985) ("[C]hoice of laws in tort matters is determined separately with respect to each issue."). Therefore, the Court must determine whether Brown Water's claims against the County independently fall within its admiralty jurisdiction. See Alderman v. Pac. Northern Victor, Inc., 95 F.3d 1061, 1063 (5th Cir. 1996) ("To determine whether substantive admiralty law applies, we decide whether this suit comes within the admiralty jurisdiction of the district court."). In

doing so, the Court focuses on what claims the claimants could have brought against the County. Marathon Pipe Line Co., 761 F.2d at 233.[4]

The Supreme Court in Grubart outlined the analysis for determining whether admiralty jurisdiction applies to a tort claim.

> [A] party seeking to invoke federal admiralty jurisdiction . . . over a tort claim must satisfy conditions both of location and of connection with maritime activity. A court applying the location test must determine whether the tort occurred on navigable water or whether injury suffered on land was caused by a vessel on navigable water. The connection test raises two issues. A court, first, must assess the general features of the type of incident involved to determine whether the incident has a potentially disruptive impact on maritime commerce. Second, a court must determine whether the general character of the activity giving rise to the incident shows a substantial relationship to traditional maritime activity.

513 U.S. at 534 (citations and internal quotations omitted).

### 1. The Location Test

"Under the locality test, the damage or injury must take place on navigable waters or,

---

[4]The Fifth Circuit, employing the Restatement (Second) of Conflicts, § 173 (1971), has held that "the body of law establishing the indemnitee's primary liability governs his claim for indemnity or contribution against a third party." Marathon Pipe Line Co., 761 F.2d at 235. Contrary to this case, however, admiralty jurisdiction extended to both claims in Marathon. Id. Despite certain federalism concerns, some Courts have applied the Marathon holding where admiralty jurisdiction extended only to the indemnitee's primary liability. Lakes of Gum Cove Hunting & Fishing, 182 F. Supp. 2d 537, 547-48 (W.D.La. 2001) (employing Marathon in finding that general maritime law controlled indemnity/contribution claim despite of lack of individual jurisdictional basis); see also In the Matter of Garvey Marine, Inc., 2004 WL 2005824, at *2 (N.D.Ill. 2004) (finding third-party complaint controlled by maritime law since underlying complaint fell within admiralty jurisdiction). Other Courts, however, have hesitated to allow the Restatement to control the question of whether admiralty jurisdiction extends to an indemnity/contribution claim. St. Paul Fire & Marine Ins., 28 F. Supp. 2d at 475-77 (refusing to extend admiralty jurisdiction over indemnity/contribution claim without separate basis for admiralty jurisdiction); Bradford, 588 F. Supp. at 712-13 (same). Because this Court finds that admiralty jurisdiction applies to the claimants' claims against the County, it need not decide whether the Restatement controls the analysis.

if the injury occurred on land, then it must have been caused by a vessel on navigable waters." AGIP Petroleum Co. v. Gulf Island Fabrication, 920 F. Supp. 1330, 1337 (S.D.Tex. 1996) (Hughes, J.); Taghadomi v. United States, 401 F.3d 1080, (9th Cir. 2005) ("[T]he situs of a tort for the purpose of determining admiralty jurisdiction is the place where the injury occurs."); see also In re Motor Ship Pac. Carrier, 489 F.2d 152, 157 (5th Cir. 1974) (focusing on the location of injury in determining admiralty jurisdiction); Scarborough, 391 F.3d at 663-64 (same); 1 SCHOENBAUM, ADMIRALTY & MARITIME LAW §3-5, p.99 ("[I]n applying the locality rule to borderline situations, the courts hold that the tort occurs where the negligent or intentional act takes effect, not where the act occurred."). The injuries in the present case were suffered by the claimants in the channel waters.[5] In addition, these injuries were caused, at least in part, by a vessel operating on navigable water. 46 U.S.C.App. §740 (extending admiralty jurisdiction to "*all* cases of damage or injury, to person or property, caused by a vessel on navigable waters, notwithstanding that such damage or injury be done or consummated on land" (emphasis added)). Therefore, the locality test for admiralty jurisdiction is satisfied. See also In re Motor Ship Pac. Carrier, 489 F.2d 152, 155 (5th Cir. 1974) (finding admiralty jurisdiction existed when land based paper mill's smoke emissions interfered with navigation of vessel causing it to allide with bridge); Southern Pac. Transp. Co. v. Tug Capt. Vick, 443 F. Supp. 722, 736 (E.D.La. 1977) (holding bridge comparatively liable under general maritime law for contributing to maritime allision); 33 C.F.R. § 118.5 ("Any person required to maintain lights and other signals upon any bridge . . . over or in the navigable waters of the United States who fails . . . to maintain such lights and other signals . . . is subject to . . . 14 U.S.C. 85."); id. at § 118.65 ("Lights on fixed bridges.").

### 2.     The Connection Test

The connection test has a two part analysis. First, the Court must determine whether "the activity at issue [is] the sort with potential to disrupt maritime commerce." Scarborough,

---

[5]The fact some of the claimants are suing the petitioners derivatively does not alter the Court's analysis. See Scarborough, 391 F.3d at 663-64 (examining where decedent incurred injury in suit filed by surviving spouse and adult children).

391 F.3d at 664 (citing Grubart, 513 U.S. at 534). This prong was propounded in Sisson v. Ruby, 497 U.S. 358 (1990). There, the owner of a private pleasure yacht filed for limitation of liability after a fire, which began on his yacht "in the area of the vessel's washer/dryer unit," spread through neighboring vessels and the marina. Id. at 360. The Supreme Court, in determining that admiralty jurisdiction existed, found that the yacht fire had "a potentially disruptive impact on maritime commerce, as it can spread to nearby commercial vessels or make the marina inaccessible to such vessels." Id. at 362. The Supreme Court rejected the respondent's argument that any possible "effect on maritime commerce in this case was minimal because no commercial vessels happened to be docked at the marina when the fire occurred," reasoning that in order to "determine the potential impact of a given type of incident," the Court must examine "its general character." Id. at 363. Importantly, the inquiry is not to examine the "actual effects on maritime commerce," nor the "particular facts of the incident . . . ." Id. Rather, "a court must assess the general features of the type of incident involved to determine whether such an incident is likely to disrupt commercial activity." Id.; Alderman, 95 F.3d at 1064 ("The correct inquiry is not whether there was an effect on maritime activity, but rather whether there 'potentially' could have been."). In Sisson, the opinion characterized the incident as "a fire on a vessel docked at a marina on navigable waters." 497 U.S. at 363.

      The activity at issue in this case, the alleged negligent light maintenance on a bridge spanning navigable water, poses "more than a fanciful risk to commercial shipping." Grubart, 513 U.S. at 539. Within reason, numerous situations with potential to impact maritime commerce could arise from the negligent maintenance of street lights on a bridge crossing navigable water. Considering the Causeway at issue spans a channel replete with commercial traffic and bears navigational lights used in directing such operations, it is abundantly clear that a car accident caused by a lack of appropriate lighting has a potentially disruptive effect on commercial maritime activity. See Alderman, 95 F.3d at 1064 (supporting a finding of potential maritime impact with scenarios). It is of no consequence that the County's alleged wrongful conduct was purportedly consummated on land. See Scarborough, 391 F.3d at 665 (finding manufacturers/distributors of defective sandblasting equipment that

resulted in death on navigable water presented potential disruption to maritime activity). Furthermore, it matters not that the structure affected by the County's alleged misconduct, the Causeway, spanned over and was not located in/on navigable water. See Grubart, 513 U.S. at 538-39 (holding that damage by a vessel to a structure buried below navigable water presented an incident that could potentially disrupt maritime commerce); In re Motor Ship Pac. Carrier, 489 F.2d at 157 ("We are of opinion that there is no merit in the suggestion to the effect that the asserted claim was kept from being cognizable in admiralty by the circumstance that the thing with which the steamer collided was connected solely with upland beyond the shore or border of the river, no part of it being in or covered by navigable water." (citing cases)). Therefore, the Court finds that the activity at issue potentially could disrupt maritime commerce.

The second prong of the connection test requires the Court to determine "whether the general character of the activity giving rise to the incident shows a substantial relationship to traditional maritime activity." Grubart, 513 U.S. at 539. This test is satisfied "when *at least one alleged tortfeasor* was engaging in activity substantially related to traditional maritime activity and such activity is claimed to have been a proximate cause of the incident." Id. at 541 (emphasis added); Scarborough, 391 F.3d at 665-66. Given that the tug BROWN WATER V, which steered the four barges into the Causeway, was acting pursuant to a towage contract, this prong is easily satisfied. See Grubart, 513 U.S. at 540 ("Navigation of boats in navigable waters clearly falls within the substantial relationship."). Furthermore, the County's Causeway light maintenance enables people and supplies to journey safely between Port Isabel and South Padre Island, Texas. Because ships traditionally accomplished such a task, the Court finds the County's activity individually bears a significant relationship to maritime activity. See Smith v. Pan Air Corp., 684 F.2d 1102, 1112 (5th Cir. 1982) (finding that a helicopter "being used in place of vessel to ferry personnel and supplies to and from offshore drilling structures, bears the type of significant relationship to traditional maritime activity which is necessary to invoke admiralty jurisdiction"); Roberts v. United States, 498 F.2d 520, 524 (9th Cir. 1974) (finding transoceanic transportation of cargo by plane a traditional maritime activity within admiralty jurisdiction); T.J. Falgout Boats, Inc. v. United States, 508 F.2d 855,

857 (9th Cir. 1974) (same); Miller v. United States, 725 F.2d 1311, 1315 (11th Cir. 1984) (same). Accordingly, this Court has admiralty jurisdiction over Brown Water's indemnity/contribution claims against the County.

### B. Admiralty Jurisdiction's Effect on the Application of the TTCA

Generally, "'[w]ith admiralty jurisdiction, . . . comes the application of substantive admiralty law.'" Yahama, 516 U.S. at 206 (quoting East River S.S. Corp., 476 U.S. at 864). Nonetheless, the "exercise of admiralty jurisdiction . . . 'does not result in the automatic displacement of state law.'" Id. (quoting Grubart, 513 U.S. at 545). However, "[s]tate law must yield to the needs of a uniform federal maritime law . . . ." Romero v. Int'l Terminal Operating Co., 358 U.S. 354, 373 (1959).

In the present case, the County asks this Court to apply state sovereign immunity as defined by the TTCA to this maritime cause of action. Numerous courts have rejected the application of state defined immunity to maritime causes of action where the protections afforded by the Eleventh Amendment did not inure to the defendant. Dougherty v. Golden Gate Bridge, 31 F. Supp. 2d 724, 728 (N.D.Cal. 1998) (holding that maritime defendant, which was not an "arm of the state" for Eleventh Amendment purposes, could not invoke provisions of California Tort Claims Act); Pelican Marine Carriers, Inc. v. City of Tampa, 791 F. Supp. 845, 856-57 (M.D.Fla. 1992) (finding that in absence of Eleventh Amendment immunity, defendant city could not, "in the interest of uniform application of maritime law, . . . [invoke] local law limiting liability of governmental agencies"); id. at 857 ("State sovereign immunity has no application to a claim brought in federal court under federal law."); Principe Compania Naviera, S.A. v. Bd. of Comms. of the Port of New Orleans, 333 F. Supp. 353, (E.D.La. 1971) (concluding that because Eleventh Amendment did not extend to defendant port, that application of state law limiting liability for certain state subdivisions "would destroy the uniformity admiralty seeks since admiralty law would vary according to the often-conflicting laws of the several states"); see also Raymond Intern. Inc. v. M/T DALZELLEAGLE, 336 F. Supp. 679, 683 (S.D.N.Y. 1971) (finding where Eleventh Amendment immunity did not inure to defendant city, that state law procedural requirement to suit was inapplicable in admiralty).

This Court previously determined that the County is not afforded the protections of the Eleventh Amendment. Dkt. No. 368. Accordingly, in the interest of maintaining maritime law's uniformity, the Court will not apply the restrictions of the TTCA to Brown Water's maritime claims.

### IV.  Conclusion

In considering the County's motion for summary judgment as a motion to dismiss under Fed.R.Civ.Pro. Rule 12(b)(6), the Court holds that Brown Water's claims against the County are governed by maritime law rendering the TTCA inapplicable. Accordingly, the Court **DENIES** the County's motion for summary judgment. Dkt No. 380.

The Court's decision **MOOTS** the County's declaratory judgment action. Dkt. No. 382.

DONE at Brownsville, Texas, this 17th day of June, 2005.

*[signature: Hilda Tagle]*

Hilda G. Tagle
United States District Judge