IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF TEXAS
BROWNSVILLE DIVISION

| | | |
|---|---|---|
| **IN RE THE COMPLAINT AND** | § | **CIVIL ACTION NO. B-01-157** |
| **PETITION OF BROWN WATER** | § | **Consolidated with** |
| **TOWING I, INC., ET AL.** | § | **CIVIL ACTION NO. B-02-004** |
| | § | **and** |
| | § | **CIVIL ACTION NO. B-02-125** |
| | § | |
| | § | **ADMIRALTY** |

## OPINION AND ORDER

BE IT REMEMBERED that on June 17, 2005, the Court considered American Commercial Lines, LLC, American Commercial Barge Line, LLC, Deere Credit, Inc. (formerly Senstar Finance Co.), State Street Bank and Trust Company of Connecticut, National Association, and General Electric Capital Corp.'s ("ACBL") Motion to Dismiss, Dkt. No. 371; Brown Water Towing I, Inc. and Brown Water Marine Service, Inc.'s ("Brown Water") "Motion to Dismiss Third-Party Complaint Against A.G. Hill a/k/a/ JHB Enterprises, Inc.," Dkt. No. 401; and Third-Party Defendant "A.G. Hill Power, Inc., a/k/a JHB Enterprises, Inc.'s," ("JHB Enterprises") Motion for Summary Judgment, Dkt. No. 366, and Motion for Sanctions, Dkt. No. 373.

I.   **Introduction**

This admiralty case concerns the allision of the lead of four barges, in tow of the BROWN WATER V, with the Queen Isabella Causeway, on September 15, 2001. The impact, which caused a portion of the Causeway to collapse, resulted in the injuries and deaths of several individuals either when their vehicles fell through the newly formed chasm or during the ensuing rescue attempts. The Causeway spans a navigable waterway and connects Port Isabel and South Padre Island, Texas.

In the months following the allision, the parties associated with the towboat and barges involved in the allision[1] filed separate causes of Exoneration from or Limitation of Liability pursuant to the Limitation of Shipowners' Liability Act ("Limitation Act"), 46 App.U.S.C. §§ 181-89. Dkt. No. 1; Dkt. No. 1 in C.A. No. B-02-004; Dkt. No. 1 in C.A. No. B-02-125. The Court eventually consolidated all three causes of action. Dkt. No. 47; Dkt. No. 9 in C.A. No. B-02-125.

## II.   Relevant Procedural Background

On September 12, 2003, numerous claimants[2] in the above-styled limitation proceeding filed suit against several defendants[3] in Cameron County, Texas, district court. See, e.g., Dkt. No. 247, Ex. A. The complaints allege that the defendants negligently performed their responsibility in maintaining some aspect of the Causeway, resulting in or contributing to the deaths or injuries of the respective claimants on the night of the allision. Id. In relevant part, the complaints allege that defendant, "A.G. Hill Power, Inc., Now Known as JHB Enterprises, Inc.," was responsible "for the maintenance of the [Queen Isabella Causeway lights] . . . [and] knew of, or should have known of, the defective wiring which caused the portion of the [Causeway] to be dark and therefore dangerous. A.G. Hillpower, Inc. committed acts of omission and commission which, collectively and severally, constituted negligence, gross neglect, and malice, as those terms are defined under Texas Law, which negligence, gross neglect, and malice was a proximate cause of the injuries" to the claimants. Dkt. No. 247, Ex. A, ¶ 5.7, pp.7-8.

---

[1] The Court shall refer to the following collectively as "petitioners": Brown Water Towing I, Inc., Brown Water Marine Service, Inc. (separately referred to as "Brown Water"); and American Commercial Lines, LLC, American Commercial Barge Line, LLC, Deere Credit, Inc. (formerly Senstar Finance Co.), State Street Bank and Trust Company of Connecticut, National Association, and General Electric Capital Corp (separately referred to as "ACBL").

[2] At least 14 different complaints representing numerous plaintiffs were filed.

[3] The complaints name the "State of Texas Department of Transportation, County of Cameron, and A.G. Hill Power, Inc., Now Known as JHB Enterprises, Inc." as defendants. See, e.g., Dkt. No. 247, Ex. A, p.1.

Approximately seven months later, on April 8, 2004, ACBL motioned[4] this Court for leave to file a third party complaint against "A.G. Hill Power, Inc. a/k/a JHB Enterprises, Inc." (hereinafter "JHB Enterprises").  Dkt. No. 247.  The Court granted the motion on October 25. Dkt. No. 285.  The third-party complaint seeks indemnity/contribution from JHB Enterprises, alleging it bears at least some responsibility for the allision at issue.  "Specifically, upon information and belief, [JHB Enterprises] was responsible for maintaining the navigational and/or street lights on the Queen Isabella Causeway.  Discovery obtained to date indicates that these lights were not working on the night of the allision.  The failure to maintain or properly operate these lights constitutes negligence and/or negligence per se. . . . Upon information and belief, the acts or omissions of [JHB Enterprises] caused and/or contributed to the allision and/or caused or contributed to several subsequent deaths, personal injuries and property damage."  Dkt. No. 247, ¶IV, p.3.  On November 9, a copy of the summons against JHB Enterprises was filed in this Court.  Dkt. No. 288.

On November 19, JHB Enterprises filed its original answer. Dkt. No. 293. Therein, the third-party defendant denies that it was sued in the correct legal capacity.  Specifically, the answer states that "A.G. Hill, Inc., a/k/a JHB Enterprises, Inc., sold its' [sic] business on October 14, 1996, prior to the accident made the basis of Plaintiff's claim and at the time of the accident was not responsible for maintaining any lights on or around the Queen Isabella Causeway.  The business was sold to First South Utility Construction, Inc., d/b/a A.G. Hill Power [(hereinafter "FSUC")] currently represented in the referenced state court actions by Attorney Augustin Rivera."  Dkt. No. 293, ¶4.

---

[4]On June 6, 2005, the Court ordered certain parties to clarify Brown Water's association and position concerning JHB Enterprises' motion for summary judgment and motion for sanctions.  Dkt. No. 398.  The responses clearly demonstrate that Brown Water's complaint is not viable and, therefore, the Court need not address it when assessing JHB Enterprises' motion for summary judgment.  See Dkt. Nos. 402 & 403.  Furthermore, the submissions further demonstrate that JHB Enterprises' motion for sanctions concerns only ACBL and its counsel. Dkt. No. 403.  As such, any discussion of Brown Water's participation in the matters at issue is omitted.

3

Also on November 19, Mr. David Crago, counsel for third-party defendant, wrote a letter to Mr. Les Cassidy, co-counsel for ACBL, requesting that the "correct party [be] substituted in and us out before I have to ask the federal court for attorney's fees." Dkt. No. 373, Ex.A. Subsequently, on November 29, Mr. Cassidy faxed a letter to Mr. Crago stating, "I understand that your client was improperly served, but the defendant had been properly named. In any event, we are not looking to your client for an answer in this litigation, and we are making arrangement for service on the proper party." Id. at Ex.B. The letter continues, "As explained to me by your client, he sold out his business some time ago and it is the successor corporation that should be served with the lawsuit." Id. Then, on December 1, Mr. Crago sent a letter to all counsel of record in the limitation proceeding stating that Mr. Glenn Goodier and Mr. Cassidy, co-counsel for ACBL, improperly named his client as a third-party defendant. Id. at Ex.C.

On December 2, Mr. Glenn Goodier, co-counsel for ACBL, wrote a letter to Mr. Crago in response to the answer filed with this Court on November 19. Dkt. No. 371, Ex.1. Therein, Mr. Goodier requested particular information from Mr. Crago concerning his client's sale of his business to FSUC, the contact information for FSUC's registered agent for service of process, and "any other documents or information which would show that your client was not responsible for maintaining any lights or navigational aids on the Queen Isabella Causeway as of September 15, 2001 and that this was the responsibility of [FSUC]." Id.

Approximately six weeks later, on January 14, 2005, Mr. Crago provided Mr. Goodier with a "copy of the October 14, 1996 Asset Purchase Agreement," which Mr. Crago asserts "clearly shows that A.G. Hill a/k/a JHB Enterprises is not a proper party to this suit." Id. at Ex. 2. The correspondence further supplied Mr. Goodier with a first amended original petition from the underlying state suits where FSUC's registered agent is identified and FSUC's state court answer. Id. Lastly, Mr. Crago requested that Mr. Goodier non-suit his client within 30 days. "In the event that you do not, I have been instructed to seek reimbursement of attorney's fees and sanctions and all other remedies as the result of your frivolous pleadings." Id.

On February 2, Mr. Goodier faxed a letter to Mr, Crago stating, "We have received and reviewed your correspondence of January 14, 2005. Based upon your representation that

4

A.G. Hill Power, Inc. now known as JHB Enterprises, Inc. was never a party to any contract regarding work or maintenance on the Queen Isabela [sic] Causeway, we will dismiss our third party complaint." Id. at Ex.3. A proposed joint dismissal motion accompanied the letter. Id. This proposed motion, submitted for ACBL only, requested dismissal of the third-party defendant "with each party to bear its own costs and attorneys' fees," and provided Mr. Crago a signature line to confirm his "no objection" to the motion  Id.

Mr. Crago sent Mr. Goodier a letter dated February 9. Id. at Ex.5. This letter, which Mr. Goodier received on February 14, states,

> We have reviewed your Joint Motion to Dismiss Third-Party Complaint against A.G. Hill Power, Inc. a/k/a JHB Enterprises, Inc. and understand what is says. Of course you can move to dismiss us as we never should have been in the case anyway. We have no problem with each party bearing their taxable court costs.
> However, because of the length of time and repeated requests to nonsuit us in the first place, which were not acted on promptly, my client has incurred attorney's fees in the amount of $13,552.50.
> If you had dismissed us promptly in the beginning as we had requested, we would not have had to do the legal work necessary to prepare our motion for summary judgment and anticipated motion for sanctions. We don't really want to get into the sanctions business but as I'm sure you now realize, my client has incurred attorney's fees which he has to pay out of his own pocket. As such, I'm requesting a check made payable to Jack Bennett and his attorney, David H. Crago, . . . in the amount of $13,552,50. . . .

Id. Mr. Crago, the next day on February 10, sent Mr. Goodier a letter that reduced the total amount of attorney's fees in the February 9, letter to $6,181.70. Id. at Ex.6. Also on February 9, Mr. Crago sent a letter to all counsel involved in the above litigation providing a twenty-one day notice for his client's Motion for Sanctions pursuant to the "Federal Rules of Civil Procedure." Id. at Ex.7.

Before receiving the aforementioned letters from Mr. Crago requesting attorney's fees, Mr. Goodier faxed a follow-up letter on February 11 to his letter of February 2, concerning Mr. Crago's "review and approval of the proposed Motion to Dismiss." Id. at Ex.4. On February 14, after receiving Mr. Crago's correspondences of February 9 and 10, Mr. Goodier faxed another letter to Mr. Crago. Id. at Ex.8. Therein, Mr. Goodier contests Mr. Crago's contention

that he did not act promptly in dismissing his client from the action. Id. Furthermore, Mr Goodier asserts that at "no time did we refuse to dismiss your client nor did you make 'repeated requests' to us to non-suit your client . . . ." Mr. Goodier additionally stated that he could not recommend to his client that it pay any of the requested attorney's fees. Id. The letter concluded by stating, "If you do not agree to bear your own attorneys' fees and costs as to our motion to dismiss your client, please advise us immediately." Id. The letter also included another copy of the proposed motion to dismiss. Id.

On February 16, Mr. Crago faxed a letter to Mr. Goodier stating that he was "unwilling to sign off on" the Joint Motion to Dismiss "due to its failure to have costs and fees assumed by you." Id. at Ex.9. The letter further noted that Mr. Goodier could "file a motion to dismiss without participation or agreement from the defendant.." Id.

Also on February 16, 2005, JHB Enterprises filed for summary judgment against ACBL and Brown Water. Dkt. No. 366. This motion asserts that in 1996, the entity known as "A.G. Hill Power, Inc." sold its assets and name to FSUC. Id. at p.1, n.1. As a result, "JHB Enterprises, Inc. was formed as a separate entity with no ownership interest in A.G. Hill Power, Inc.," and no entity by the name of "A.G. Hill Power, Inc. a/k/a JHB Enterprises, Inc." exists. Id. Therefore, JHB Enterprises argues, ACBL's claim fails since the third-party defendant "never had any obligation or right to maintain the lighting or do any other work on it, and, in fact, never performed any work on the Causeway." Id. at ¶3. In other words, the petitioners sued the wrong entity.

On February 18, Mr, Goodier faxed Mr. Crago a revised joint motion to dismiss stating that each party was to bear its own costs. Dkt. No. 371, Ex.10. The accompanying letter further disagreed with Mr. Crago's contention that ACBL could have unilaterally dismissed Mr. Crago's client. Id. According to Mr. Goodier, "the Federal Rules of Civil Procedure do not allow us to file a motion to dismiss without your consent since you have filed an answer. Therefore, the consent of your client is required for us to file the motion to dismiss them for the case." Id.

On February 21, Mr. Crago faxed Mr. Goodier another letter stating that he and his client had no objection to the filing of a motion to dismiss. Id. at Ex.11. The letter notified Mr.

Goodier, however, that the joint motion for dismissal needed to omit "each party to bear its own costs" before Mr. Crago would sign it. Id.

On February 23, Mr. Goodier faxed a letter and an edited joint motion to dismiss containing the requested modification to Mr. Crago soliciting his signature. Id. at Ex.12. Because Mr. Crago failed to respond immediately, Mr. Goodier faxed another letter requesting confirmation that he would sign the Motion to Dismiss indicating no objection to the dismissal of his client. Id. at Ex.13. On March 2, still with no response from Mr. Crago, ACBL filed its motion to dismiss JHB Enterprises. Dkt. No. 371. On March 3, ACBL filed its "Memorandum Regarding Third Party Defendant, A.G. Hill Power, Inc. a/k/a JHB Enterprises, Inc.'s Motion for Summary Judgment." Dkt. No. 372. Therein, ACBL argues that its motion to dismiss filed the day before renders moot the third-party defendant's motion for summary judgment.

On March 7, third-party defendant filed its motion for sanctions. Dkt. No. 373. The motion argues that JHB Enterprises promptly notified ACBL that it sued the wrong entity, ACBL failed to non-suit the entity in a timely manner causing the accumulation of "substantial" attorney's fees and costs. Lastly, the motion requests $6,181.70 in attorney's fees and costs.

On March 9, JHB Enterprises filed its response to ACBL's motion to dismiss, requesting that the Court consider and grant the motion for sanctions prior granting ACBL's motion to dismiss. Dkt. No. 374. Subsequently, on March 11, ACBL filed its "Joint Motion to Dismiss Third Party Complaint Against" JHB Enterprises. Dkt. No. 376. The motion simply moves to dismiss JHB Enterprises with no mention of costs. Mr, Crago's signature signifying "no objection" is present.

### III. Discussion

The Fed.R.Civ.Pro. Rule 11 "requires attorneys and parties to conduct reasonable investigation into the facts and laws surrounding a case before filing a lawsuit or any other paper before a court." Stanley v. Univ. of Tex. Med. Branch, 296 F. Supp. 2d 736, 738 (S.D.Tex. 2003) (Kent, J.); Fed.R.Civ.Pro. Rule 11(b)(1)–(3). The "purpose of Rule 11 sanctions is to deter rather to compensate . . . ." Advisory Committee Note on Rule 11, 1993

Amendment. The decision to impose sanctions lies within the sound discretion of the district court. Childs v. State Farm Mut. Auto. Ins., 29 F.3d 1018, 1023 (5th Cir. 1994).

Rule 11 requires, however, the moving party to adhere to certain procedural mandates. Relevant to the case at hand is Rule 11's "safe-harbor" provision. Id. at (c)(1)(A). This condition prohibits the moving for sanctions "unless, within 21 days after service of the motion . . ., the challenged [filing] . . . is not withdrawn or appropriately corrected." Id.; Elliott v. Tilton, 64 F.3d 213, 216 (5th Cir. 1995) (finding 21 day "safe-harbor" provision mandatory). Importantly, Rule 11 does not mandate "a formal amendment to pleadings for which evidentiary support is not obtained, but rather calls upon a litigant not thereafter to advocate such claims or defenses." Advisory Committee Note on Rule 11, 1993 Amendment. The "safe-harbor" allows the nonmovant to correct its violation "by withdrawing (whether formally *or informally*) some allegation or contention . . . ." Id. (emphasis added). Furthermore, "a party will not be subject to sanctions on the basis of another party's motion unless, after receiving the motion, it refuses to withdraw that position *or to acknowledge candidly that it does not currently have evidence to support a specified allegation*." Id. (emphasis added).

Rule 11 sanctions are inappropriate in this case for two reasons. First, in his letter dated February 2, 2005, Mr. Goodier explained to Mr. Crago, "We have received and reviewed your correspondence of January 14, 2005. Based upon your representation that A.G. Hill Power, Inc. now known as JHB Enterprises, Inc. was never a party to any contract regarding work or maintenance on the Queen Isabela [sic] Causeway, we will dismiss our third party complaint." Dkt. No. 371, Ex.3. A proposed joint dismissal motion accompanied the letter. Id. Furthermore, Mr. Goodier has explicitly not pursued this claim since obtaining evidence exonerating JHB Enterprises from fault in this case. The Court construes these actions as an informal withdrawal of the complaint and a candid acknowledgment of fault precluding the Court's levying of Rule 11 sanctions. Harding Univ. v. Consulting Servs. Group, L.P., 48 F. Supp. 2d 765, 771-72 (N.D.Ill. 1999) (finding informal telephone call notification of intent to withdraw complaint precludes the filing of Rule 11 motion for sanctions); see Callahan v. Schoppe, 864 F.2d 44, 46 (5th Cir. 1989) (holding sanctions appropriate against plaintiff who sued wrong party *and* persisted in litigation after clear notice of error).

Second, ACBL was served with JHB Enterprises' motion for sanctions on February 14, 2005. Dkt. No. 371, Ex.8. Within 21 days of service, on March 2, 2005, ACBL moved this Court to formally dismiss its complaint against JHB Enterprises. Dkt. No. 371; Rule 11(c)(1)(A) (prohibiting filing of motion for sanctions until 21 days after service of motion). ACBL's filing of a motion to dismiss constitutes a formal withdrawal of its complaint against JHB Enterprises precluding the Court's imposition of Rule 11 sanctions. Aerotech, Inc. v. Estes, 110 F.3d 1523, 1528 (10th Cir. 1997) ("Because [defendant] did not move for Rule 11 sanctions until after [plaintiff] had moved to dismiss its claims against him, . . . Rule 11's cure provision prevents [defendant] from seeking sanctions."); Harding Univ., 48 F. Supp. 2d at 770-71 (finding submission of motion to dismiss formally withdraws complaint precluding filing of Rule 11 motion); Dee-K Enters., Inc. v. Heveafil Sdn. Bhd., 177 F.R.D. 351, 354-55 (E.D.Va. 1998) (finding motion to amend complaint to delete erroneously named defendant constituted withdrawal of complaint precluding filing of Rule 11 motion for sanctions). Therefore, the Court finds that ACBL and its attorneys complied with Rule 11's safe-harbor provision and were immunized from sanction by informally and formally withdrawing the complaint against JHB Enterprises. As such, the Court need not determine whether ACBL's actions violate subsection (b) of Rule 11.

JHB Enterprises argues that the present case "is not the sort . . . contemplated by Rule 11 in which the safe harbor provision precludes the recovery of sanctions." Dkt. No. 381, p.10. As justification for this position, JHB Enterprises points to the notes of the Advisory Committee Comments on Rule 11, which state in whole:

> Rule 11 motions should not be made or threatened for minor, inconsequential violations of the standards prescribed by subdivision (b). They should not be employed as a discovery device or to test the legal sufficiency or efficacy of allegations in the pleadings; other motions are available for those purposes. Nor should Rule 11 motions be prepared to emphasize the merits of a party's position, to exact an unjust settlement, to intimidate an adversary into withdrawing contentions that are fairly debatable, to increase the costs of litigation, to create a conflict of interest between attorney and client, or to seek disclosure of matters otherwise protected by the attorney-client privilege or the work-product doctrine.

Advisory Committee Notes on Rule 11, 1993 Amendments. JHB Enterprises argues, the "instant motion for sanctions does not fall into any of the above characterizations" and therefore disqualifies the "safe-harbor" provision. Dkt. No. 381, p.10. JHB Enterprises misconstrues Rule 11 and the accompanying Committee notes. Initially, the portion of the Committee Notes JHB Enterprises highlights has nothing to do with the "safe-harbor" provision. Rather, the emphasized section outlines for what purposes the movant, here JHB Enterprises, should *not* file a motion for sanctions. There is nothing in Rule 11 or the accompanying notes that even remotely suggests that the "safe-harbor" provision applies to certain <u>motions</u> for sanctions and not others. <u>See</u> <u>Elliott</u>, 64 F.3d at 216 (finding adherence to 21 day "safe-harbor" provision mandatory before Court can impose sanctions). Therefore, because ACBL adhered to the "safe-harbor" provisions, Rule 11 motion for sanctions are inappropriate in this case.

JHB Enterprises further moves for sanctions under 28 U.S.C. § 1927. This provision allows for the imposition of attorney's fees, costs, and other monetary sanctions, against counsel "who so multiplies the proceedings in any case unreasonably and vexatiously . . . ." <u>Id.</u> In order to grant sanctions under the statute, the Court must find that the subject attorney acted with "bad faith, improper motive, or reckless disregard of the duty owed to the court." <u>Edwards v. General Motor Corp.</u>, 153 F.3d 242, 246 (5th Cir. 1998). JHB Enterprises initially argues that ACBL's attorneys' failure to properly investigate prior to filing the claim constitutes bad-faith conduct. The Court cannot say that ACBL's attorneys acted with "reckless disregard" in emulating the actions of at least 9 other attorneys by filing a complaint against JHB Enterprises. Furthermore, JHB Enterprises maintains that ACBL's attorneys acted in bad faith by delaying for "several months" before dismissing the action although they had been put on notice that they had sued the wrong party. Two weeks after JHB Enterprises filed its answer, Mr. Goodier requested certain documents from Mr. Crago concerning the sale of A.G. Hill Power. Mr. Crago did not respond to Mr. Goodier's letter and did not supply the requested documents for six weeks. Two weeks after Mr. Crago finally responded, Mr. Goodier faxed Mr. Crago a joint order of dismissal. At this point, the complaint could have been dismissed. But, in an attempt to obtain payment from ACBL, Mr. Crago refused to sign the Order for

another four weeks. From these facts, the Court cannot say that ACBL's attorneys' actions evidence "bad faith, improper motive, or reckless disregard of the duty owed to the Court." <u>Id.</u>

## IV. Conclusion

Premises considered, the Court **GRANTS** ACBL's and Brown Water's motion to dismiss their third-party complaints against JHB Enterprises. Dkt. Nos. 371 & 401. The Court **DENIES** as **MOOT** JHB Enterprises' motion for summary judgment. Dkt. No. 366. The Court **DENIES** JHB Enterprises' motion for sanctions. Dkt. No. 373.

DONE at Brownsville, Texas, this 17th day of June, 2005.

_____
Hilda G. Tagle
United States District Judge